ELLEN F. ROSENBLUM
Attorney General
RENEE STINEMAN  #994610
Attorney-in-Charge
CARLA A. SCOTT #054725
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Renee.Stineman@doj.state.or.us
        Carla.A.Scott@doj.state.or.us

HARRY WILSON #077214
LAURA R. SALERNO OWENS #076230
Markowitz Herbold PC
1211 SW 5th Ave., Ste 3000
Portland, OR 97204
Telephone: (503) 295-3085
Fax: (503) 323-9105
Email:  HarryWilson@markowitzherbold.com
        LauraSalerno@markowitzherbold.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>      Plaintiff,<br><br>   v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>      Defendant. | Case No. _____<br><br>COMPLAINT FOR DECLARATORY RELIEF |

Page 1 -   COMPLAINT FOR DECLARATORY RELIEF
        CS7/a2c/8655285-v4
                        Department of Justice
                        100 SW Market Street
                        Portland, OR 97201
                        (971) 673-1880 / Fax: (971) 673-5000

## INTRODUCTION

**1.**

Medicaid is a national medical assistance program that provides medical care for low-income and disabled individuals and families. Medicaid is jointly financed by the state and federal government and is administered, at the federal level, by the U.S. Department of Health and Human Services' Centers for Medicare & Medicaid Services (CMS). Oregon's Medicaid program, the Oregon Health Plan (OHP), is administered by Plaintiff Oregon Health Authority (OHA) as the single state Medicaid agency for the State of Oregon.

**2.**

In its role as single state Medicaid agency, OHA contracts with Coordinated Care Organizations (CCOs), which in turn contract with health care providers to provide care under the OHP. Defendant FamilyCare, Inc. (FamilyCare) is one of sixteen CCOs operating in Oregon.

**3.**

In the OHP, CCOs are risk-bearing entities. OHA pays each CCO pursuant to their respective CCO Contract a fixed, per member per month (PMPM) capitation rate for each person served by that CCO. As OHP administrator, OHA determines the PMPM contract rates for each CCO.

**4.**

OHA develops annual CCO PMPM contract rates using an actuarial risk model, prepared by outside actuaries who certify the actuarial soundness of the rates (Actuarial Certification).

**5.**

Federal law and regulations governing Medicaid require OHA to submit the CCO contracts and capitations rates to CMS for approval each year. Without CMS approval, OHA will not obtain federal financial participation (FFP), which is a significant portion of OHP's

Page 2 -   COMPLAINT FOR DECLARATORY RELIEF
CS7/a2c/8655285-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

funding. Once CMS is satisfied that the rates are sound and compliant with federal standards, it will approve the contract amendment containing the new capitation rates.

6.

In *FamilyCare v. OHA*, Marion County Circuit Court Case No. 17CV09226, Defendant FamilyCare is currently invoking Oregon's Administrative Procedures Act (Oregon APA), among other legal theories, to challenge whether its 2017 rates are actuarially sound in compliance with federal Medicaid laws. Based on conduct and statements by FamilyCare and its counsel, OHA reasonably expects that FamilyCare will file in state court a similar challenge to its 2018 rates.

7.

Federal law preempts FamilyCare's attempts to privately challenge, under the Oregon APA or otherwise, whether CCO rates set by OHA for approval by CMS comply with Medicaid laws. The federal government—namely, CMS—is the exclusive, and conclusive, decision maker of whether rates are actuarially sound and in compliance with federal standards. Concomitantly, the *sole* remedy for violation of Medicaid rate requirements rests with the federal government. Federal law provides no basis for FamilyCare to privately challenge, under the Oregon APA or otherwise, whether its rates comply with federal Medicaid laws.

8.

OHA brings this action to obtain clarity and finality regarding the rate setting process for contract capitation rates for CCOs for calendar year 2018, specifically whether FamilyCare may or may not privately challenge whether its 2018 contract capitation rates for January 2018 comply with federal Medicaid laws. If FamilyCare proceeds to file a lawsuit in state court (as OHA reasonably expects it will) to challenge whether its January 2018 rates comply with federal Medicaid laws, OHA will face uncertainty regarding *all* CCO contract capitation rates for 2018 (not just those for FamilyCare). OHA requires certainty and finality on this issue to ensure

Page 3 -    COMPLAINT FOR DECLARATORY RELIEF
CS7/a2c/8655285-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

continuity in providing health care benefits to the neediest of Oregonians without risking the loss of federal funds.

## JURISDICTION AND VENUE

**9.**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201(a). Whether FamilyCare's expected challenge to the legality of its 2018 CCO rates is preempted by federal law presents a justiciable controversy involving a federal question.

**10.**

Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2). FamilyCare has its principal place of business in Multnomah County, within the District of Oregon, and a substantial part of the events giving rise to this claim occurred in Marion County, also within the District of Oregon.

## PARTIES

**11.**

OHA is an agency of the State of Oregon, and its principal place of business is in Marion County. OHA contracts with certified CCOs, including FamilyCare, for the provision and coordination of health services to OHP members.

**12.**

FamilyCare is an Oregon non-profit corporation and certified CCO. FamilyCare provides and coordinates health services for certain OHP members in the Tri-County area and in Marion County.

## GENERAL ALLEGATIONS

### CMS Oversight Over the Oregon Health Plan and Coordinated Care Organizations

**13.**

Oregon's Medicaid program, OHP, operates pursuant to federal approval as a demonstration project under Section 1115 of the Social Security Act, 42 U.S.C. § 1315.

Page 4 -   COMPLAINT FOR DECLARATORY RELIEF
CS7/a2c/8655285-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Section 1115 gives CMS authority to approve pilot or demonstration projects that give states additional flexibility to design and improve their Medicaid programs, including by using innovative service delivery systems. Section 1115 demonstration projects are generally subject to all requirements set forth in Medicaid laws, except as expressly waived or referenced as not applicable. See 42 U.S.C. § 1315(a)(1).

**14.**

In 2012 and again in 2017, CMS approved an amendment to the OHP, in the form of a waiver under Section 1115, under which Oregon shifted the delivery of care to CCOs and was allowed to enroll nearly all Medicaid beneficiaries in CCOs. As noted above, CCOs are community-based comprehensive managed care organizations which operate under a risk-based contract with the State. Under federal regulations, such organizations are described as Managed Care Organizations (MCOs). 42 C.F.R. § 438.2.

**15.**

The rate development process to determine the 2018 contract capitation rates for 2018 began in approximately April 2017 and culminated with rates established for each CCO (the 2018 Rates). The 2018 Rates were delivered to each CCO, including FamilyCare, on or about October 31, 2017.

**16.**

Because, *and only because*, CMS funds a portion of the capitation payments OHA makes to CCOs under the OHP, the contracts between OHA and CCOs must comply with federal law and regulations. Among other requirements, federal law provides that no payment shall be made to a state unless such payments are provided in accordance with a contract that CMS has approved. 42 U.S.C. § 1396b(m)(2)(A)(iii). Thus, in order to obtain FFP, each year OHA submits the CCO contracts and capitation rates together with the Actuarial Certification of the rates to CMS for approval. CMS, including its Office of the Actuary, reviews the information contained in the certification to ensure that the rate setting complies with federal law and with

Page 5 -    COMPLAINT FOR DECLARATORY RELIEF
           CS7/a2c/8655285-v4
                              Department of Justice
                              100 SW Market Street
                              Portland, OR 97201
                              (971) 673-1880 / Fax: (971) 673-5000

principles of actuarial soundness.  Once CMS is satisfied that the rates are sound and compliant with federal standards, it will approve the contract amendment containing the new capitation rates.  CMS will not approve a CCO contract unless CMS determines that the rates contained therein are "actuarially sound."

### 17.

OHA submitted contract amendments for the 2018 Rates and the related Actuarial Certification to CMS on November 1, 2017.

### OHA's Annual Rate Amendments and FamilyCare's Litigious Responses

### 18.

OHA and FamilyCare are parties to a five-year Coordinated Care Organization Contract #143114, as amended and restated at various times (the Contract).  The Contract became effective on January 1, 2014, and will expire by its terms on January 31, 2018.  Pursuant to the Contract, in consideration for FamilyCare's provision of services, OHA agrees to pay FamilyCare a monthly capitation rate for each OHP member enrolled under the Contract.  As provided by the Contract, the capitation rates change annually, and the new rates are implemented through an amendment to the Contract in the ordinary course each year.  In the event the parties do not agree to terms for an annual rate amendment, the Contract will expire on its own terms.

### 19.

New rates go into effect on January 1 of each year.  In order to have rates prepared by January, OHA begins the process of setting capitation rates in the preceding April, with the goal of finalizing them in time to provide the plans with at least a 60-day review period to determine whether they intend to continue to participate in the program at the newly-established rates.

### 20.

In the last two years, FamilyCare has filed three lawsuits against OHA challenging FamilyCare's capitation rates, all of which have challenged whether the underlying methodology

Page 6 -    COMPLAINT FOR DECLARATORY RELIEF
         CS7/a2c/8655285-v4
                          Department of Justice
                          100 SW Market Street
                          Portland, OR 97201
                          (971) 673-1880 / Fax: (971) 673-5000

used to develop those rates complies with federal Medicaid laws. FamilyCare's first two lawsuits challenged its capitation rates for 2015. OHA and FamilyCare resolved those suits with a settlement agreement in which FamilyCare released its claims relating to the 2015 rates in exchange for a credit to be applied against FamilyCare's obligation to pay back excess funds OHA had overpaid FamilyCare because the original 2015 rates were too high, and a slight increase in FamilyCare's capitation rates for 2016. FamilyCare's third lawsuit alleges that its 2017 rates are, once again, too low, in violation of federal Medicaid laws. That lawsuit is pending in Marion County Circuit Court.

### 21.

The FamilyCare lawsuits have disrupted OHA's rate setting process for several years, and have caused diversion of significant resources that OHA needs to meet the health care needs of Oregon's most vulnerable citizens, including children, the disabled, and the chronically ill. Each challenge to the rates not only affects FamilyCare's rates, but all CCO rates. OHA uses the same methodology to set rates for all CCOs, and thus the operations of all 15 other Oregon CCOs.

### 22.

OHA needs certainty going forward and thus requests a declaration that federal law preempts FamilyCare from pursuing a private right of action under the Oregon APA (or otherwise) to challenge whether its rates comply with federal Medicaid laws, or that OHA's rate-setting methodology complies with federal Medicaid laws, or both.

**FamilyCare's Statements and Actions Establish it Plans to Challenge Whether its 2018 Rates Comply With Federal Medicaid Laws**

### 23.

Under Oregon's current methodology, while a separate capitation rate is established for each CCO, the specific rates depend, in part, on data from the other CCOs in the region and statewide. At the beginning of the annual rate setting process, OHA asks each CCO to report

Page 7 -    COMPLAINT FOR DECLARATORY RELIEF
CS7/a2c/8655285-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

certain of its costs and other financial data in using a template provided by OHA and its outside actuaries.

24.

OHA also requires CCOs to submit financial statements attached to their financial template.  The data reported in the financial template should balance with the financial statements; if it does not, any discrepancy should be explained by the reporting CCO.

25.

In addition, the financial template requires the CCO to certify the accuracy of its reported data.  The certification is necessary because OHA will rely on the reported data in setting rates pursuant to OHA's rate-setting methodology.

26.

After receiving the completed template and financial statements from the CCOs, OHA and its actuaries compare actual claims data with data reported by each CCO.  This process establishes "base data" for the CCOs' expenditures for the relevant period, in this case, calendar year 2016.  The 2016 "base data" is a key component of the information that was used for setting the 2018 Rates.  OHA finalized the base data by early June 2017 to be on track to develop final 2018 Rates by September 1, 2017.

27.

In October 2016, OHA provided the financial report template and instructions to the CCOs for the report they were required to submit for the 2018 rate setting process.  The instructions required each CCO to certify as follows: "I, the undersigned, hereby attest that I have authority to certify the data and information and I, the undersigned, hereby certify based on best knowledge, information, and belief that the data and information is accurate, complete and truthful."

Page 8 -   COMPLAINT FOR DECLARATORY RELIEF
CS7/a2c/8655285-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**28.**

Fifteen of the sixteen CCOs followed OHA's instructions and submitted their report with the requested certification. FamilyCare did not. On or about May 2, 2017, FamilyCare submitted its financial report template with the following qualification to its certification:

> The certification of this Data Template is provided subject to the statements set forth in this CCO Scratch Sheet. Specifically, by signing the certification, FamilyCare, Inc. only certified that, to the best of FamilyCare's understanding and given the limitations of the data template and instructions provided by OHA, the data summaries included in this template have been completed as instructed, and all data and information provided in this report are accurate, appropriate, and only include services for FamilyCare, Inc. experienced during the incurred time period of January 1, 2016 - December 31, 2016. **Given the limitations of the template, OHA's current methodology for setting rates, and the issues identified by FamilyCare on this CCO Scratch Sheet, FamilyCare expressly does not certify that the data provided are adequate for purposes of rate-setting consistent with actuarial standards**.

(Emphasis added, identifying qualifying language added by FamilyCare). FamilyCare's modification and qualification of the certification language has caused OHA to reasonably conclude that it once again intends to challenge the validity of OHA's rate setting methodology under federal law with respect to the 2018 Rates.

**29.**

At a public meeting of the Oregon Health Policy Board on December 5, 2017, FamilyCare stated that the 2018 Rates are not actuarially sound as required by federal law.

**30.**

By the end of December 2017, all of the other 15 CCOs signed full-year rate amendments incorporating the 2018 Rates but FamilyCare did not. FamilyCare instead signed a contract for January 2018 only, with a reservation of rights. FamilyCare refused to sign the January 2018 extension of its contract unless the following proviso was inserted:

> By entering into this Contract, neither party waives or otherwise compromises any claim, defense, or argument asserted, or which could be asserted, in FamilyCare, Inc. v. Oregon Health Authority,

Page 9 -    COMPLAINT FOR DECLARATORY RELIEF
CS7/a2c/8655285-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Case No. 17-cv-09226, or any claim or argument which Contractor could assert, in any appropriate court, relating to the rate-setting process for rates in 2018, as well as any claim for the loss of enterprise or value as a result of OHA's or others' actions with respect to the rate-setting process in those years.

In addition, FamilyCare bargained for a provision in its January 2018 contract that it will get the benefit of any subsequent adjustment to 2018 rates, but *only if the adjustment increases its rates*:

OHA will retroactively increase Capitation Rates to reflect any material changes to Contractor's Capitation Rates arising from the combined impact of the following analyses to be completed in early 2018: updated redetermination analysis, changes to the Substance Abuse Disorder Fee-Schedule, the change in continuous glucose monitoring on the prioritized line list, and analysis of the impact of enrollment categorization due to age or category of eligibility determination. OHA will document any such retroactive increases in an amendment to the Actuarial Report. OHA will not decrease Contractor's Capitation Rates.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment That Federal Law Preempts FamilyCare's Expected Attempt to Challenge its 2018 CCO Rates Based on Violation of Federal Medicaid Laws)**

**31.**

There is a substantial controversy, between OHA and FamilyCare, having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**32.**

Among other things, FamilyCare contends in its modification of the financial template for 2018 rate setting that the 2018 rate methodology is "not consistent with actuarial standards" as required by federal Medicaid laws. And FamilyCare's counsel has communicated its intent to file a new claim in state court to challenge its rates for January 2018.

**33.**

FamilyCare has filed three lawsuits in the past two years challenging the rates set by OHA. OHA is reasonably at legal risk of another lawsuit by FamilyCare because of an unresolved dispute over whether OHA's 2018 rate methodology complies with federal Medicaid laws.

Page 10 -   COMPLAINT FOR DECLARATORY RELIEF
            CS7/a2c/8655285-v4
                                        Department of Justice
                                        100 SW Market Street
                                        Portland, OR 97201
                                    (971) 673-1880 / Fax: (971) 673-5000

**34.**

Federal law preempts FamilyCare from invoking the Oregon APA or other private legal theories to alter the 2018 CCO rates on grounds that they are not actuarially sound within the meaning of federal Medicaid laws, namely 42 U.S.C. § 1396b(m)(2)(A)(iii).  Under the Supremacy Clause of the United States Constitution, federal law preempts state laws in actual conflict with federal law.  An actual conflict exists when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Here, Medicaid laws preempt FamilyCare's state APA claim because it conflicts with congressional intent to preclude any private right of action to enforce Medicaid rate standards.

**35.**

The United States Supreme Court has affirmed that the "sole remedy" for a state's failure to comply with Medicaid's requirements regarding provider payments is "the withholding of Medicaid funds by the Secretary of Health and Human Services."  *Armstrong v. Exceptional Child Center, Inc*., 135 S Ct 1378, 1385 (2015).  In *Armstrong*, a health care provider that provided services under Medicaid sued the State of Idaho, claiming that its reimbursement rates were lower than what Medicaid permitted.  In finding that the provider did not have a cause of action, the Court observed that the Medicaid laws include a provision for withholding of federal funds when a State is not compliant with federal requirements.  *Id.* at 1384-85.  That "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  *Id*. at 1385 (internal citation omitted).  Underscoring that fact is the "judicially unadministrable nature" of the Medicaid laws.  *Id.*  In other words, the complexity of enforcing the Medicaid laws, combined with the express provision of an administrative remedy, demonstrates that the Medicaid Act "precludes private enforcement[.]"  *Id.*

**36.**

For a court to allow private enforcement through state law would not only impose an obstacle to CMS' execution of its Congressional mandate, it would entirely undermine

Page 11 -  COMPLAINT FOR DECLARATORY RELIEF
          CS7/a2c/8655285-v4
                                    Department of Justice
                                    100 SW Market Street
                                    Portland, OR 97201
                                    (971) 673-1880 / Fax: (971) 673-5000

Congress's express determination of how best to accomplish the purpose of 42 U.S.C. § 1396b(m)(2)(A)(iii).  Therefore, FamilyCare's invocation of the Oregon APA to privately enforce 42 U.S.C. § 1396b(m)(2)(A)(iii) is preempted because Congress has precluded private enforcement of the provision.

**37.**

A declaration that FamilyCare may not privately challenging its 2018 CCO capitation rates as non-compliant with federal Medicaid laws will provide needed certainty to OHA in developing and implementing the 2018 CCO rates; in securing FFP in its contract payments; and in ensuring continuity of care for OHP members.

**PRAYER FOR RELIEF**

Wherefore, OHA prays that the Court:

a. Declare that FamilyCare may not assert a private right of action under the Oregon APA, or otherwise, to challenge whether the 2018 CCO capitation rates comply with 42 C.F.R. Part 438; and

b. Award such additional relief as justice may require.

DATED January 31, 2018.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

_s/ Renee Stineman_
RENEE STINEMAN #994610
Attorney-in-Charge
CARLA A. SCOTT #054725
Senior Assistant Attorney General
Trial Attorneys
Renee.Stineman@doj.state.or.us
Carla.A.Scott@doj.state.or.us
Of Attorneys for Plaintiff

HARRY WILSON #077214
LAURA R. SALERNO OWENS #076230
Markowitz Herbold PC
harrywilson@markowitzherbold.com
laurasalerno@markowitzherbold.com
Of Attorneys for Plaintiff

Page 12 -  COMPLAINT FOR DECLARATORY RELIEF
CS7/a2c/8655285-v4
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000