IN THE CIRCUIT COURT OF THE STATE OF OREGON

IN AND FOR THE COUNTY OF MARION

| | | |
|---|---|---|
| FAMILYCARE, INC., an Oregon<br>non-profit corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 17CV09226 |
| | ) | |
| OREGON HEALTH AUTHORITY, an<br>agency of the State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

VIDEOTAPED DEPOSITION OF

KAREN E. MAINZER

Taken in behalf of Defendant

* * *

February 2, 2018

530 Center Street NE

Suite 725

Salem, Oregon

SINEAD R. WILDER, RPR, CSR, CCR
Court Reporter

Ex. 8 - Simpson Decl.
Page 1 of 24

APPEARANCES:

For the Plaintiff:

MR. THOMAS R. JOHNSON
MS. ALLETTA BRENNER
Perkins Coie LLP
1120 NW Couch Street
Tenth Floor
Portland, OR 97209
503-727-2038
trjohnson@perkinscoie.com
abrenner@perkinscoie.com


For the Defendant:

MS. LAURA SALERNO OWENS
MS. ANNA MARIE JOYCE
MR. MATTHEW A. LEVIN
Special Assistant Attorneys General
Markowitz Herbold PC
1211 SW Fifth Avenue
Suite 3000
Portland, OR 97204
503-295-3085
laurasalerno@markowitzherbold.com
annajoyce@markowitzherbold.com
mattlevin@markowitzherbold.com


For the Witness, Karen E. Mainzer:

MR. AARON M. CROCKETT
Harrang Long Gary Rudnick P.C.
1001 SW Fifth Avenue
16th Floor
Portland, OR 97204
503-242-0000
aaron.crocket@harrang.com

                    APPEARANCES (cont'd):

   The Videographer:

   JULIAN IVORY
   Schmitt Reporting & Video, Inc.
   812 Washington Street
   Suite 500
   Portland, OR 97205
   503-245-4552
   info@schmittreporting.com


   Also Present:  None

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 3 of 24

Karen E. Mainzer, 2/2/2018                FamilyCare, Inc. v. Oregon Health Authority

13

THE WITNESS:  I'm sorry.  I didn't hear it.

MR. CROCKETT:  He just objected to the form.

THE WITNESS:  Okay.

I don't know if they thought it differentiated themselves.  I -- I -- I don't know that.

Q.   (By Ms. Salerno Owens) What was your role in working for FamilyCare?

A.   My husband and I were lobbyists for FamilyCare.

Q.   And as a lobbyist, what does that entail?  What are you -- what are you doing for them?

A.   We meet with and schedule appointments with key legislators on issues that are in front of the legislature that would impact -- have an impact on FamilyCare.

Q.   So you mentioned that you meet with and schedule appointments.

Is all -- is this just an administrative function?  All you're doing is scheduling the appointments?  Or do you actually have substantive discussions with legislators?

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 4 of 24

Karen E. Mainzer, 2/2/2018                FamilyCare, Inc. v. Oregon Health Authority

14

A.    We do both.

Q.    Okay.  So in your substantive discussions, what are you telling these legislators?

A.    It would depend on what -- what bill that we're addressing in that meeting.

Q.    And on behalf of FamilyCare, what were some of the messages that you wanted to get across to the legislators?

A.    FamilyCare had introduced three bills last session.  And we were talking about sending Bill 234, 230 -- 233, 234 and 236.

Q.    What did House Bill 233 pertain to?

A.    The House Bill 233 pertained to transparency and actuarial soundness of rates.

Q.    Did FamilyCare hire you to analyze whether the rates they received were actuarially sound?

A.    No.

Q.    What did they hire you to do with respect to actual soundness of rates?

A.    We were hired to review their legislative agenda.  And so 233 dealt with actuarial soundness and transparency of rate-setting.

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 5 of 24

FamilyCare?

A.   I believe so.  I don't invoice until the end of the month.  So --

Q.   Do you plan on sending FamilyCare an invoice for February?

A.   I plan on having a conversation with them and seeing exactly what they -- what they want us to do and how they want us to handle it.

Q.   Did you have any discussions in January about what you might do in February session for FamilyCare?

A.   No.

Q.   Have you had any discussions at all about what you might do in February session for FamilyCare at any point?

A.   No.  That -- the only thing I had suggested was possibly just meeting some of the new legislators who have replaced legislators who have gone on to other positions.

But nothing has been agreed on.

Q.   So you told me earlier that your main role as a lobbyist is to meet and schedule appointments with legislators; is that right?

A.   Yes, yes.

Q.   Did FamilyCare hire you to analyze the

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 6 of 24

Karen E. Mainzer, 2/2/2018                FamilyCare, Inc. v. Oregon Health Authority

31

strength or weaknesses of its lawsuit against OHA?

A.   No.

Q.   Does FamilyCare rely on you to communicate with their lawyers?

A.   No.

Q.   Okay.  Do you think that part of your job is to effectuate legal services between FamilyCare and their lawyers?

A.   No.

MR. CROCKETT:  I object.

But it's okay.  It's okay.

Q.   (By Ms. Salerno Owens) Okay.  I'm going to hand you what we'll mark as Exhibit 1.

(Deposition Exhibit Number 1 marked for identification.)

THE COURT REPORTER:  Put it before the witness?

MS. SALERNO OWENS:  Yes, please.

Q.   (By Ms. Salerno Owens) Okay.  I'm handing you an email from December of 2016.  And I'd like to direct your attention towards the center of the page.  This is from Republican Nosse?

A.   Representative Nosse.

Q.   Sorry.  Representative Nosse.  Rob

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 7 of 24

49

Q.   Did you have any conversations with Cindy Becker about this action from OHA?

A.   I'm sure I did.

Q.   Okay.  Do you recall what conversations you may have had?

A.   Again, just the -- the gist of the issue, that OHA had sent letters out to FamilyCare providers about possibly having them, you know, switch, if needed, to another CCO.

Q.   Okay.  And you mentioned earlier that this didn't necessarily touch on your lobbying work; is that correct?

A.   Yes.

Q.   Okay.  Because you were hired for bringing issues to the legislature; is that right?

A.   Yes.

Q.   Okay.  So did FamilyCare hire you at all to bring issues to -- like, in their lawsuit or anything related to their litigation with OHA?

A.   No.

Q.   Okay.  So did you have any discussions with Jeff Heatherington about this action by OHA to send out the letter to the providers?

A.   I don't recall that.  It was primarily Cindy.

Karen E. Mainzer, 2/2/2018          FamilyCare, Inc. v. Oregon Health Authority

109

Q.    Do you know whether FamilyCare may have worked with its lawyers in drafting this letter?

A.    I have no role.  I have no idea who they worked with.

Q.    Okay.  Do you have an understanding that FamilyCare occasionally would work with lawyers to draft letters, to let them go to legislators?

A.    Honestly, I'm not aware of whether they did or they didn't use the lawyers specifically for drafting letters to legislators.

Q.    Did you ever work with FamilyCare's lawyers on any projects at all?

A.    No.

Q.    Okay.  Are you authorized to seek legal advice on behalf of FamilyCare?

A.    No.

Q.    Are you authorized to act on legal advice given to FamilyCare by their lawyers?

MR. CROCKETT:  Objection.

THE WITNESS:  If FamilyCare asked me to do something, I don't know if it came from their lawyer or not.  So --

Q.    (By Ms. Salerno Owens) Have you ever received direction from FamilyCare's lawyers directly?

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 9 of 24

Karen E. Mainzer, 2/2/2018          FamilyCare, Inc. v. Oregon Health Authority

110

A.    No.

Q.    Are you being paid by FamilyCare's lawyers?  Did they hire Gallant?

A.    No.

Q.    Okay.  And you mentioned you don't receive direction from FamilyCare's lawyers.  Who do you receive direction from on matters with respect to FamilyCare?

A.    Depending on the year, it would either be Cindy Becker, Heather Raeburn, Art Suchorzewski, Bill Murray and Jeff Heatherington.

Q.    And am I correct that Cindy, Heather and Art are government relations people --

A.    Yes.

Q.    -- with FamilyCare?

A.    Yes.

Q.    Does that mean that the direction they give you is for external communications that FamilyCare will have with legislators?

A.    Yes.

Q.    Okay.  And with respect to your conversations with Jeff Heatherington and Bill Murray, are those also related to external communications that FamilyCare will have with legislators?

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 10 of 24

Karen E. Mainzer, 2/2/2018                FamilyCare, Inc. v. Oregon Health Authority

111

A.    Yes.

Q.    Okay.    So these are all communications intended for third parties; is that right?

A.    Yes.

Q.    Okay.    Are you aware that recently, in the last five months or so, whenever Pat Allen has taken over for OHA, that Director Allen has engaged two independent reviews of the rate-setting process?

A.    Yes, I'm aware of that.

Q.    Okay.    What do you know about that?

A.    Minimal.    That he hired a third party to look at the actuarial soundness of the rate development process.

Q.    And who -- who specifically at FamilyCare have you had --

A.    Oh.

Q.    -- conversations with about that topic?

A.    Probably, primarily Art.

Q.    And what have you discussed?

A.    I believe that -- take it -- take it back a step.

I actually did -- did receive some information, reading the Lund Report, that the -- my understanding is that both reviews show that

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 11 of 24

121

Q.   Is any of this legwork related to FamilyCare's litigation or legal strategy?

A.   No.

I will add one thing.  You say legislature.  We also do this work while -- with the Governor's office and the state agencies involved.  I don't -- it's not just with the legislature.

Q.   All right.  So the Governor's office. What are the other state agencies involved?

A.   Primarily, the Health Authority and the Department of Human Services.

Q.   So tell me about the work you do on behalf of FamilyCare for the Governor's office.

A.   Well, just with the -- like with a legislator, you want the Governor's office to be aware of the legislation that you're putting forward, or concerns on legislation that you have, so that they're informed and in the loop and understand what FamilyCare's doing.

Q.   So when you go to talk to someone at the Governor's office, who is your target?  Who's your connection at the Governor's office?

A.   I -- right now?  It's Tina Edlund.

Q.   Okay.  So if you're about to go have a

legislation is, where there's been some hiccups, what we need to do as next steps.

With Jeff it's more of, when he wants to -- you know, he has an idea, or he has a question, he'll pick up the phone, ask the question, present the idea, get our opinion, and then we're done.

Q.   Can you think of any example of a specific idea that -- when he called you?

A.   No.  I mean, I can give a hypothetical. I'm trying to come up with just one actual.

Oftentimes it has to do with, I'm going to be out of town at a conference.  Can you cover this fundraiser and this meeting?

Usually a lot of scheduling-type stuff. Or he will tell us he ran into a particular legislator at an event the night before, and this is the conversation, and would we please follow up with this and get the information.

Q.   Has Jeff ever told you about conversations he's had with his attorneys?

MR. JOHNSON:  Object to the form of the question.

THE WITNESS:  No.  No.

Q.   (By Ms. Salerno Owens) Has anyone at

Karen E. Mainzer, 2/2/2018          FamilyCare, Inc. v. Oregon Health Authority

155

FamilyCare told you about conversations they've had with their attorneys?

MR. JOHNSON:  I -- I mean, to the extent --

MS. SALERNO OWENS:  I'm not asking for the substance.  I'm just asking if there's been that --

MR. JOHNSON:  Okay.

THE WITNESS:  I know that they were meeting with them.  If we were on a conference call, and the lawyers came in, the conference call ended.  So we wouldn't be participating in it.

So I mean, if that's considered telling me about a meeting with the -- the lawyers, yes. But -- I would know when they were meeting.

But no, they were very particular about a firewall between us and lawyers, as far as I can tell.

Q.    (By Ms. Salerno Owens) And do you understand why they were particular about maintaining that firewall?

A.    My understanding is the attorney-client privilege.

I'm not an attorney.  But my basic understanding is that attorney-client privilege

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 14 of 24

may not apply to Scott and I.  So therefore, we don't have the access to the lawyers.

Q.    Okay.  What about Bill Murray?  Do you have specific conversations that you had with Bill Murray?  Can you think of any examples?

A.    Bill was -- is the numbers guy, very good with all of the numbers.  So he would do some of the presentations before committees.

So working -- I mean, obviously, he knew what he wanted to say.  But we might work with him to say, Okay.  This is a great presentation.  But you don't have 20 minutes.  You have seven.  And so what do we -- what do we want to get -- know within that time frame.

Bill and I would just sort of -- kind of hash things out strategy-wise, who we should talk to first, and then talk to this person.  Oh.  No, maybe we should talk to a different person next, or something like that.

But Bill was -- we really, unless it was a set strategy meeting, where everybody in the team was coming together, didn't have a lot of conversations directly with Bill.

Q.    Would you ever have conversations with Bill about the substance of his presentations to

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 15 of 24

Karen E. Mainzer, 2/2/2018                FamilyCare, Inc. v. Oregon Health Authority

163

FamilyCare's lawyers in developing arguments related to these bills?

A. No.

Q. Okay. Did FamilyCare -- without knowing what they said, did FamilyCare ever tell you what any of their lawyers said about these bills?

A. I -- I don't recall. There may be emails that are chain-long, and there might be something in there.

But no, we didn't really talk about lawyer advice. We really dealt more with strategy and how to get a bill through the process.

Q. Okay. I'm going to hand you what we'll mark as Exhibit 25.

(Deposition Exhibit Number 25 marked for identification.)

Q. (By Ms. Salerno Owens) Okay. I'm handing you what's been marked as Exhibit 25. This is an email chain involving Nick Budnick.

Do you know who Nick Budnick is?

A. He's a reporter -- a newspaper reporter. I believe he's with the Portland Tribune.

Q. Okay.

A. I don't know that for sure.

Q. I'd like to turn your attention to page

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

225

school?

THE WITNESS:  No.

MR. JOHNSON:  Okay.  Do you understand the principles of the attorney-client privilege?

THE WITNESS:  Somewhat.

MR. JOHNSON:  What do you understand about the attorney-client privilege?

THE WITNESS:  That what you say to your attorney that you've retained is confidential between the attorney and the client.

MR. JOHNSON:  And do you understand that while Gallant was -- I think I'm loud enough.

Do you understand that while Gallant was retained by FamilyCare, litigation was going on between FamilyCare and the Oregon Health Authority?

THE WITNESS:  Yes.

MR. JOHNSON:  Okay.  And do you understand that Stoel Rives was a law firm that was retained by FamilyCare for purposes of one of those law firms -- lawsuits?

THE WITNESS:  Yes.

MR. JOHNSON:  Okay.  And do you understand that Jeremy Sacks was a lawyer that works -- is a partner at Stoel Rives who was, I

Karen E. Mainzer, 2/2/2018                FamilyCare, Inc. v. Oregon Health Authority

226

think, the lead lawyer on that case?

THE WITNESS:  I didn't.  But I -- I
mean, I see it now.  But --

MR. JOHNSON:  And do you understand that
sometimes you were included on conversations
relating to that litigation?

THE WITNESS:  Email conversations?

MR. JOHNSON:  Yes.

THE WITNESS:  Yes.

MR. JOHNSON:  Okay.  And did you
understand that when you were included on those
conversations, that you had an obligation to keep
those conversations or those discussions
confidential?

THE WITNESS:  Yes.

MR. JOHNSON:  And did you disclose those
conversations to any person outside of Gallant or
the attorneys or FamilyCare?

THE WITNESS:  No.

MR. JOHNSON:  Okay.  And did you
understand that sometimes you were being included
on conversations for the purpose of knowing what
was going on in the litigation, to the extent it
would inform you about your legislative efforts?

THE WITNESS:  Yes.

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 18 of 24

Karen E. Mainzer, 2/2/2018                    FamilyCare, Inc. v. Oregon Health Authority

227

MR. JOHNSON:  Okay.  I object to any questions about the substance of any of these emails.

MS. SALERNO OWENS:  Okay.

Q.  (By Ms. Salerno Owens) I have a question for you.

MR. JOHNSON:  And I would, as FamilyCare's lawyer, instruct her not to answer --

MS. SALERNO OWENS:  All right.

MR. JOHNSON:  -- any questions about the substance of those conversation.

MS. SALERNO OWENS:  Okay.  I understand. I'm not asking about the substance.

Q.  (By Ms. Salerno Owens) Can you tell me how communications strategy -- hold on.

The subject matter of a communications strategy, did you understand that to be related to the litigation?

MR. JOHNSON:  That is -- I'm instructing her not to answer that question.

Q.  (By Ms. Salerno Owens) That's a yes or no.  You don't have to tell me --

MR. JOHNSON:  I'm instructing the witness not to answer.

MR. CROCKETT:  I'm instructing the

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 19 of 24

Karen E. Mainzer, 2/2/2018                FamilyCare, Inc. v. Oregon Health Authority

228

witness not to answer.

MR. JOHNSON: If you want to take that up with the Court later, that's fine. But I'm instructing the witness not to answer those questions.

Because you are asking for the substance of these conversations.

MS. SALERNO OWENS: I am not asking for the substance of the conversation.

I'm asking whether she understood a communication strategy to be related to litigation. That's not to the substance.

MR. JOHNSON: What communication strategy? What are you talking about?

MS. SALERNO OWENS: That's the description, Talking point strategy.

MR. JOHNSON: That's a description that was put together by the lawyer.

MS. SALERNO OWENS: Yeah.

MR. JOHNSON: So you can ask the lawyer, before this deposition, what that email is about. And we can have those conversations.

But to ask the witness about something that Mr. Crockett did is -- is completely objectionable.

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Karen E. Mainzer, 2/2/2018                    FamilyCare, Inc. v. Oregon Health Authority

229

MS. SALERNO OWENS:  Yes.  That's what I note --

MR. JOHNSON:  And I'm instructing the witness not to answer that --

MS. SALERNO OWENS:  I understand your objection.

MR. JOHNSON:  -- because it's FamilyCare's privilege.

MS. SALERNO OWENS:  So you're instructing the witness to not testify about the subject matter of a communication?

MR. JOHNSON:  If you want to ask questions, or if you want to challenge this, the time to do that was before this deposition.

You're asking the witness -- I have never seen a lawyer ask questions about a privilege log and ask her about how a lawyer describes a -- an email or a privileged document on a privilege log.

How is the witness supposed to know what that is?  She doesn't know what this email is. And Mr. Crockett is the person that put this privilege log together.

MS. SALERNO OWENS:  My question for the witness is whether she understood the subject

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 21 of 24

Karen E. Mainzer, 2/2/2018                    FamilyCare, Inc. v. Oregon Health Authority

230

matter of this email to be related to litigation, or to be part of facilitating legal services in any way.

MR. JOHNSON:   How could she possibly know what this email is about?

MS. SALERNO OWENS:   Well, she was on the email.

MR. CROCKETT:   She was on --

MR. JOHNSON:   She's on --

MR. CROCKETT:   -- literally tens of thousands of emails.

MR. JOHNSON:   -- thousands of emails, like you are all the time.

MS. SALERNO OWENS:   And the subject of this email is, Communications strategy.  The subject title is, Talking point strategy.

And I want to know, without knowing the substance of the email, if the talking point strategy was somehow related to litigation.

MR. JOHNSON:   I'm going to -- I would instruct the witness -- I would ask that you instruct the --

MR. CROCKETT:   Yeah.  I will.

MR. JOHNSON:   -- instruct your client not to answer that question.

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 22 of 24

Karen E. Mainzer, 2/2/2018          FamilyCare, Inc. v. Oregon Health Authority

231

MR. CROCKETT:  In accordance with FamilyCare's counsel, I'm going to advise you not to answer any questions regarding the contents.

And I -- and I believe that was a question asked of the contents.

MS. SALERNO OWENS:  Is it your instruction that this witness cannot answer any questions related to the privilege log, as Mr. Johnson previously stated?

MR. CROCKETT:  She -- she can testify to what she knows is not privileged.  Which is basically what you see on the privilege log.

MS. SALERNO OWENS:  Okay.  My question is, are you going to instruct this witness not to answer any questions about the emails or communications on this privilege log?

MR. CROCKETT:  I'm going to probably strenuously object to many questions, definitely anything having to do with the contents of any these messages.

MS. SALERNO OWENS:  Okay.  I want to make it clear, I'm not going to ask about the contents of this.  I'm asking about the subject matter.

Q.  (By Ms. Salerno Owens) So as to my

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554

Ex. 8 - Simpson Decl.
Page 23 of 24

234

C E R T I F I C A T E

STATE OF OREGON          )
                         )  ss.
COUNTY OF MULTNOMAH      )

I, Sinead R. Wilder, a Notary Public for Oregon, do hereby certify that, pursuant to stipulation of counsel for the respective parties hereinbefore set forth, KAREN E. MAINZER personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in Stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and that the foregoing transcript, pages 1 to 233, both inclusive, constitutes a full, true and accurate record of all such testimony adduced and oral proceedings had, and of the whole thereof.

Witness my hand and notarial seal at Portland, Oregon, this 8th of February, 2018

Sinead R Wilder

SINEAD R. WILDER
Certified Shorthand Reporter
Certificate No. 13-0426
My Commission Expires 12/31/18

Schmitt Reporting & Video, Inc.
(360) 695-5554 -- (503) 245-4552 -- (855) 695-5554