

**STOEL RIVES LLP**

ATTORNEYS AT LAW

900 S.W. Fifth Avenue, Suite 2600
Portland, Oregon 97204
main 503.224.3380
fax 503.220.2480
www.stoel.com

JEREMY D. SACKS
*Direct (503) 294-9649*
jeremy.sacks@stoel.com

March 21, 2016

Via Email renee.stineman@doj.state.or.us
Ms. Renee Stineman
Attorney-in-Charge
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

Re:    *FamilyCare, Inc., CCO Contract with Oregon Health Authority*
       **Settlement Communication – Subject to ORE 408**

Dear Renee:

FamilyCare, Inc. ("FC") was disappointed to receive your letter dated March 16, 2016, extending a revised settlement offer to FC on behalf of your client, the Oregon Health Authority ("OHA"). Based on our phone call with Ted Falk during the afternoon of March 14, FC understood that OHA would be providing a proposal for "reformulating" FC's rate settlement offer for 2015 and 2016, with the help of its own actuaries. Our understanding was that the parties would jointly submit this proposal to CMS. OHA's decision to reverse course and instead offer to pay FC $12 million from the general fund without any adjustment to the rates was surprising to FC and is yet another indication that OHA is not making a good faith effort to resolve this matter. FC continues to believe there is a better way to resolve this dispute without taking money from the general fund.

FC is hopeful that the following proposed Settlement Agreement will get the parties back on track to a mutually agreeable resolution. FC asks that OHA respond to the proposal no later than 5:00 pm PDT on Tuesday, March 22, 2016.

This deadline is necessary in light of the fact that OHA has given FC notice of default with a 14-day cure period effective March 30, after which it has threatened termination.

Alaska   California   Idaho
Minnesota   Oregon   Utah   Washington
and Washington, D.C.



Renee Stineman
March 21, 2016
Page 2

OHA and FC agree as follows:

## A.    OHA Undertakings and Obligations:

OHA desires to move forward with health systems transformation as a partner with FC and the other CCOs. Accordingly, OHA agrees as follows:

1.      OHA will discontinue use of a cost-based adjustment factor when determining rates for the ACA population in the future (beginning with 2017);

2.      OHA will comply with all state and federal regulations and laws pertaining to CCO contracts and rates;

3.      OHA will timely pay FC its quality pool payments pertaining to 2015 services, without recovery of any overpayment from the quality pool payments;

4.      OHA will commit to increased transparency and promptness in the rate-setting process. This will include a process whereby OHA's actuaries share analyses and data with the CCOs and suggestions will be solicited from the CCOs. However, the ultimate decisions on rate ranges will remain subject to approval by CMS, OHA, and OHA actuaries;

5.      OHA will pay FC revised rates for the Affordable Care Act ("ACA") population for 2015 and 2016.  The revised rates will be as set forth in the attached chart.  The rates were developed by adopting a 100% payment percentile (i.e., the top of the CMS-approved rate ranges certified by Optumas for 2015 and 2016) with no changes to the cost relativity factor or any other component of rate methodology ("Revised ACA Rates");

> FC Note to OHA regarding this provision:  These Revised ACA Rates have been reviewed by FC's actuary, Peter Davidson, of PricewaterhouseCoopers LLP, who has extensive experience and knowledge working with states, including Oregon, to develop actuarially sound rates.  Mr. Davidson has confirmed the calculations and also confirmed that the Revised ACA Rates are consistent with the State's methodology as set forth in the Optumas 2015 and 2016 rate reports.  In addition, we again spoke with CMS's counsel regarding CMS' February 24, 2016, letter and we have again confirmed that if OHA submits a proposal for rates for FC that are *within the certified rate ranges* (such as those presented in this proposal), it is reasonable to assume that CMS will consider such rates to be actuarially sound.  We have included the certified rate ranges in the attached chart so that you can see that they are *all* within the certified rate ranges.  In addition, we have included a column showing the FC rates as compared to the Health Share rates.  The rates paid to Health Share are still significantly higher in aggregate than the rates paid to



Renee Stineman
March 21, 2016
Page 3

FC. In fact, if FC were paid at Health Share rates based on FC's population, FC estimates that the aggregate difference would be approximately $46 million for 2015 and $32 million for 2016. We believe this proposal addresses OHA's concerns that FC be paid using the existing rate methodology and that FC not be treated differently than other CCOs.

6. OHA will offer FC a revised contract amendment for 2015 retroactive to January 1, 2015 containing the 2015 Revised ACA Rates ("Revised 2015 Contract Amendment"). All other terms not inconsistent with this Settlement Agreement, including the rates for the non-ACA populations, in the Revised 2015 Contract Amendment will be the same as those set forth in the August 2015 contract amendment (Contract No. 143114-6). The Revised 2015 Contract Amendment will be signed by both parties subject to CMS approval;

7. OHA will offer FC a revised contract amendment for 2016 retroactive to January 1, 2016 containing the 2016 Revised ACA Rates ("Revised 2016 Contract Amendment"). All other terms not inconsistent with the terms of this Settlement Agreement including the rates for the non-ACA populations in the Revised 2016 Contract Amendment will be the same as those set forth in the 2016 contract amendment previously signed by FC (Contract No. 143114-7). The Revised 2016 Contract Amendment will be signed by both parties subject to CMS approval;

8. OHA will sign and submit the Revised 2015 Contract Amendment and the Revised 2016 Contract Amendment (jointly, "Revised Contract Amendments") to CMS for approval along with any additional support from its actuary that OHA deems helpful to obtain approval from CMS of the Revised Contract Amendments. OHA will make a good faith effort to obtain CMS approval of the Revised Contract Amendments, including without limitation, responding to any questions CMS may have regarding the Revised Contract Amendments and providing any additional supporting documentation required by CMS. OHA will copy FC on all written communications with CMS concerning the Revised Contract Amendments;

9. Upon receipt of CMS approval of the Revised 2016 Contract Amendment, OHA will pay FC the difference between amounts already paid to FC pursuant to the current 2016 contract (No. 143114-7) and amounts owing based on the Revised 2016 Contract Amendment (the "Underpayment"). Payment of the Underpayment will be made no later than ten (10) calendar days after OHA's receipt of notice of CMS approval. Thereafter, OHA will pay FC according to the Revised 2016 Contract Amendment; and

10. Upon signing of this Settlement Agreement, OHA will immediately withdraw in writing its March 14, 2016 notice of breach.



Renee Stineman
March 21, 2016
Page 4

**B.    FamilyCare Undertakings and Obligations:**

FC desires to move forward with health systems transformation as a partner with OHA and the other CCOs. Accordingly, FC agrees as follows:

1.    FC will sign the Revised Contract Amendments, subject to CMS approval.  If CMS does not approve *both of* the Revised Contract Amendments, both of the Revised Contract Amendments will be considered null and void as if never signed by the parties;

2.    Within ten (10) business days of receipt of written notice that CMS has approved *both of* the Revised Contract Amendments, FC will pay to OHA an amount equal to forty-seven million, three hundred and twenty-three thousand, six hundred and sixty-four dollars ($47,323,664.00) ("Overpayment").  For purposes of clarity, the Overpayment is the difference between the amounts paid by OHA to FC under the existing 2015 contract (Contract No. 143114-4) and the amount owed under the Revised 2015 Contract Amendment, net of Hospital Reimbursement Adjustment amounts.  The attached chart shows the calculation of this Overpayment amount.  Payment of the Overpayment amount will be considered full and final satisfaction of all amounts FC owes OHA pursuant to the Revised 2015 Contract Amendment;

3.    Promptly after receipt of written notice that CMS has approved both of the Revised Contract Amendments, FC will dismiss its lawsuit against OHA with prejudice and without an award of costs or fees to either party.  OHA will cooperate with FC in obtaining this dismissal including, without limitation, refraining from pursuing an award of costs or fees; and

4.    Upon receipt of notice of CMS approval of *both of* the Revised Contract Amendments, FC will retract in writing its signed notices of breach of contract pertaining to the 2014 and  2015 contract amendments and refrain from filing a notice of breach related to the 2016 contract rates.

**C.    Mutual Undertakings and Obligations:**

The parties further mutually agree as follows:

1.    The parties will cooperate fully and professionally with one another in Heath Systems Transformation;

2.    This proposal does not waive or alter any terms or conditions of FC's CCO Contracts except as expressly provided herein;



Renee Stineman
March 21, 2016
Page 5

    3.    Upon receipt of notice from CMS of approval of the Revised Contract Amendments, FC and OHA will promptly execute the attached Release Agreement which is fully incorporated herein.

    4.    If CMS provides notice that it will not approve either of the Revised Contract Amendments, then:

    i)   The Revised Contract Amendments will both be considered null and void as if never signed by the parties

    ii)  All remaining obligations under the Settlement Agreement will be considered null and void;

    iii) The parties will negotiate in good faith (including at least one in-person meeting) for a period seven (7) calendar days to determine if they can reach an alternative resolution of their dispute; and

    iv) If the parties are unable to reach resolution at the end of the seven (7) calendar day period, OHA may reissue its notice of breach with a new 14 day cure period, if desired.

By 5:00 pm PDT on Tuesday, March 22, 2016,(the "Acceptance Deadline"), OHA will confirm in writing its acceptance of all the terms of this proposal, by returning a countersigned copy of this proposal with no qualifications, deletions, or additions. This proposal is open until revoked, rejected, or the Acceptance Deadline, whichever occurs first. It is an offer to compromise pursuant to ORS 40.190, OEC 408.

Sincerely,

Jeremy D. Sacks
JDS:ipc

cc:    Sarah Weston
        Theodore Falk



Renee Stineman
March 21, 2016
Page 6

**Agreed and Accepted:**

**FamilyCare, Inc.**

By:    _____
          Jeff Heatherington
          Chief Executive Officer

Date:    _____

**State of Oregon**
**Oregon Health Authority**

By:    _____
          Lynne Saxton
          Chief Executive Officer

Date:    _____