

**STOEL RIVES** LLP

ATTORNEYS AT LAW

900 S.W. Fifth Avenue, Suite 2600
Portland, Oregon 97204
main 503.224.3380
fax 503.220.2480
www.stoel.com

JEREMY D. SACKS
*Direct (503) 294-9649*
jeremy.sacks@stoel.com

March 24, 2016

**Via Email**
Ms. Renee Stineman
Ms. Sarah Weston
Mr. Theodore Falk
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
renee.stineman@doj.state.or.us
sarah.weston@doj.state.or.us
theodore.falk@doj.state.us

Re:    *FamilyCare, Inc., CCO Contract with Oregon Health Authority*
       **Settlement Communication – Subject to OEC 408**

Dear Renee, Sarah, and Ted:

FamilyCare, Inc. ("FamilyCare") was encouraged to receive Sarah's letter of March 22, 2016, addressing FamilyCare's settlement proposal of March 21, and extending a counteroffer on behalf of your client, the Oregon Health Authority ("OHA") -- particularly its decision to adopt FamilyCare's proposal to pay FamilyCare at the 100th payment percentile with regard to the 2015 ACA rates. That said, there seems to have been some misunderstanding by OHA about FamilyCare's settlement proposals. As you know, *all* of FamilyCare's proposals have included rates for 2015-2016 that fall well within Optumas' certified rate range. And as CMS confirmed in its February 24 letter and its two telephone calls with me, CMS would consider all such rates to be actuarially sound. Similarly, PricewaterhouseCoopers ("PwC"), FamilyCare's consultant and actuary, has confirmed that such rates would be actuarially sound.

In any event, FamilyCare is pleased that OHA agrees with its proposal as applied to the 2015 rates. However, FamilyCare is disappointed with the strings that OHA has attached to its agreement. Although OHA has adopted FamilyCare's proposal for the 2015 rates, it has rejected exactly the same proposal for the 2016 rates. Both parties know that the dispute covers both 2015 and 2016, and that FamilyCare's proposals have all been package deals. FamilyCare

86183092.1 0026097-00036

Alaska   California   Idaho
Minnesota   Oregon   Utah   Washington
and Washington, D.C.



Renee Stineman
Sarah Weston
Theodore Falk
March 24, 2016
Page 2

suggested raising the payment rates within the regional rate range to the upper bound (the 100th percentile) for *both* years to remedy the projected loss of more than $30 million resulting from the rates proposed by OHA for 2016. The loss, calculated by FamilyCare's independent actuary, is a tell-tale sign that the FamilyCare 2016 rates proposed by OHA are not actuarially sound, and addressing it over two years makes it easier for OHA to address its financial implications. The Lund Report quotes Ms. Saxton on March 23 as saying that, "We've worked very hard to create a solid methodology." If that is the case, it does not make any sense to adopt a methodology for 2015 but ignore it for 2016.

- *OHA's methodology for choosing FamilyCare's rates within the actuary's certified rate range is flawed.* Throughout our discussions, FamilyCare has objected to the use of a cost adjustment factor for the ACA population because it compares the relative costs of Health Share ("HS") and FamilyCare without addressing the fact that HS's costs are not comparable to FamilyCare's because of certain related party transactions. Since December 2014, FamilyCare has repeatedly identified related-party concerns with the base data used to develop the 2015 and 2016 rates. As OHA has used the cost adjustment factor in both the 2015 and 2016 rate setting process, OHA's methodology for both years is fundamentally flawed. Any solution must address both years.

- *The better method for addressing the ACA population would be to pay the average regional rate without any risk adjustment or cost adjustment factor.* PwC confirms that other states do not use such adjustment factors because the ACA populations are too new and the data too uncertain. FamilyCare's proposed rates for 2015 and 2016 using the average regional rate are within Optumas' certified rate ranges for both years would be approved by CMS and would avoid application of the flawed cost adjustment factor.

- *FamilyCare's March 21 counteroffer reformulated prior proposals to accommodate OHA's cost adjustment factor and to mitigate some of the losses FamilyCare will sustain over the two year period from OHA's use of the flawed cost adjustment factor methodology.* The proposal was a package deal. FamilyCare's March 21 proposal still would require a repayment to OHA of $47 million for 2015 and cause FamilyCare to incur a loss of $3.6 million in 2016. OHA's proposal to do nothing for 2016 would mean a loss of $31.6 million for FamilyCare in 2016. FamilyCare cannot sustain both a $47 million payment in 2015 *and* a $31.6 million loss in 2016.

86183092.1 0026097-00036



Renee Stineman
Sarah Weston
Theodore Falk
March 24, 2016
Page 3

- *The same problem with OHA's rate setting methodology exists in 2016 as exists in 2015 because OHA's methodology is the same.* In 2016, OHA amplified the harm to FamilyCare caused by the cost adjustment factor when it selected the 10th percentile in the Tri-County region even though other regions were paid at higher percentiles. By accepting FamilyCare's proposal to resolve the 2015 rates, OHA has now acknowledged that setting FamilyCare's rates at the 100th percentile is consistent with OHA's methodology. OHA has always emphasized that it seeks to address FamilyCare's rates consistently. OHA should be consistent and resolve the 2016 problems as well.

The March 22 letter next suggests several reasons why OHA will not agree to make any changes to FamilyCare's 2016 rates. Each of these reasons is flawed.

- Although OHA allowed FamilyCare to participate in meetings concerning the 2016 rate-setting process in form, in substance FamilyCare's objections (consistently asserted throughout the process) were ignored by OHA. And while FamilyCare had 60 days to review the contract, it was told by OHA that if it failed to sign, asserted that it signed under duress, or asserted any objection to the rates, FamilyCare's contract would be terminated.

- The notion that FamilyCare has had time to adjust its operations to mitigate impending losses in 2016 ignores the real issue. As a result of OHA's rate-setting methodology, FamilyCare's overall rates have decreased more than any other CCO (by down by 18.2% since 2014) and its ACA rates have fallen even more in comparison to the other CCOs (down by 30% since 2014). Moreover, as noted above, the 2016 rates for FamilyCare are flawed and not actuarially sound. The table below compares existing 2016 rates for FamilyCare to the revised 2015 rates OHA now accepts:

| CCO-A | 2015 | 2016 | Chg % |
|-----------|----------|----------|-------|
| ACA 19-44 | $346.15 | $348.03 | 0.5% |
| ACA 45-54 | $567.23 | $579.00 | 2.1% |
| ACA 55-64 | $619.72 | $620.34 | 0.1% |

- The 2016 rates now show minimal increase over 2015 and no longer reflect Optumas' assumed price/utilization trend factors and other factors (ACA duration adjustment) used to estimate the change in the cost of services expected to occur over this time period. Optumas projected trend factors for the ACA populations over this time period that

86183092.1 0026097-00036



Renee Stineman
Sarah Weston
Theodore Falk
March 24, 2016
Page 4

ranged from approximately 5.0% (lower bound) to 7.5% (upper bound) and the additional ACA duration adjustment ranged from 5.0% (lower bound) to 10% (upper bound). OHA's suggestion that FamilyCare might be able to mitigate some of its losses does not absolve OHA of its obligation to set actuarially sound rates. And it certainly does not support health care transformation.

- It is not true that increasing FamilyCare's rates for 2016 would increase the Medicaid budget at the state and federal level. FamilyCare's proposal relates only to the ACA rates, which are fully federally funded in 2016. The March 22 letter implies that OHA may not be able to meet the sustainable rate of growth commitments under its Medicaid waiver if it agrees to the 2016 rates FamilyCare has proposed. This assertion is not credible. OHA's annual spend on the OHP program alone is about $5 billion, and its sustainable rate of growth commitments apply to a five-year period that includes additional programs other than OHP. An increase in FamilyCare's 2016 rates of the size at issue here would have at most a negligible effect on OHA's Medicaid budget and would not prevent OHA from meeting its commitments under the Medicaid waiver.

- Finally, you note that the 2016 rate ranges are still under actuarial review and claim that a change to FamilyCare's 2016 rates would "require justification for the change, recertification by the consulting actuary and commensurate changes for CCOs within the same region and potentially all CCOs." This assertion is wrong. In our March 14 meeting, Ms. Saxton stated that the rates for 2016 were very close to approval by CMS, which was expected soon. If it is a matter of timing and wanting to wait until CMS approves Optumas' certified rate ranges for 2016, we can address that contingency in the settlement agreement. More fundamentally, there is no reason that CMS's position on FamilyCare's 2016 rates would differ from its position on FamilyCare's 2015 rates. If OHA can agree that FamilyCare's proposal for 2015 is consistent with its methodology, there is no reason why that same proposal would not be approved for 2016. FamilyCare's proposal is within the approved rate ranges and would not require a change in their submission.

For all of these reasons, we urge OHA to reconsider its position on FamilyCare's 2016 rate proposal. To resolve this matter, the parties must address both 2015 and 2016 in a manner that addresses the impending losses caused by OHA's flawed methodology. The choice is simple: Either address the issue by agreeing to a consistent treatment of the 2015-2016 rates as proposed by FamilyCare, or address it in a financially equivalent manner. FamilyCare prefers the simplicity and consistency of its March 21 proposal for the 2015-2016 rates. And FamilyCare's

86183092.1 0026097-00036



Renee Stineman
Sarah Weston
Theodore Falk
March 24, 2016
Page 5

proposal has no impact on state general fund dollars. Given Ms. Saxton's statement to the Lund Report, quoted above, it seems as though OHA should as well. Again, here are the key terms:

- **FamilyCare's Proposal.**[1]

    A.    2015 rates: OHA to pay FamilyCare at 100th percentile within the FamilyCare-specific rate range.

    B.    2016 rates: OHA to pay FamilyCare at 100th percentile within the FamilyCare-specific proposed rate range.

    C.    Cash: No payment by OHA to FamilyCare of $8 million, <u>saving the state $8 million in general funds compared to OHA's March 22 proposal.</u>

    D.    Agreement Not to Challenge Rates: FamilyCare agrees not to challenge rates for 2016; FamilyCare reserves its rights to challenge the rates for 2017-18. (To be clear: FamilyCare will not agree, <u>under any scenario</u>, to give up its right to challenge rates in 2017-18, the methodology for which has not yet been established. OHA's inclusion of this term is a non-starter.)

    E.    Mutual releases along the lines FamilyCare has proposed and OHA has agreed.

    F.    OHA and FamilyCare to issue a joint press release.

If OHA persists in rejecting a consistent methodology for both 2015 and 2016, please tell us why in writing. And if OHA would rather FamilyCare accept a cash payment for 2016, we encourage OHA to find an additional sum that, together with the $8 million suggested in your March 22 letter, will offset FamilyCare's projected losses in 2016 stemming from the actuarially unsound rates. As noted above, resolution of the rate issues can be accomplished with no impact on state general fund.

FamilyCare's proposal, restated herein, will resolve this dispute in a manner that addresses the significant projected losses under OHA's proposed 2016 rates for FamilyCare. Please let us

---

[1] FamilyCare does not restate that proposal here in its entirety, but it remains open for OHA to accept.

86183092.1 0026097-00036



Renee Stineman
Sarah Weston
Theodore Falk
March 24, 2016
Page 6

know in a written response whether OHA will agree.  This proposal expires on Friday, March 25, at 5:00 pm PDT (the "Acceptance Deadline") and remains open until revoked, rejected, or the Acceptance Deadline, whichever comes first.  It is an offer to compromise pursuant to ORS 40.190, OEC 408.

Finally, your March 22 letter extends the 14-day cure period for the notice of breach and default to 5 pm on April 5.  It is FamilyCare's understanding that FamilyCare's rejection of OHA's March 22 proposal in this letter does not change or affect the cure period now ending on April 5.  Please advise us immediately in writing if OHA has a different understanding.

Sincerely,

Jeremy D. Sacks
JDS

86183092.1 0026097-00036