| | |
|---|---|
| **From:** | Art Suchorzewski |
| **To:** | Jmanning@oregonian.com |
| CC: | Jeff Heatherington; Jack Coleman |
| Sent: | 8/4/2017 3:54:18 PM |
| Subject: | OHA Communications Plan Documents |
| Attachments: | 20170804 FamilyCare release FOIA V5 (DRAFT).docx; FamilyCare Rebuttal to OHA Comms Plan (DRAFT) 8.4.17.docx; JUSTICE-#8367249-v3-Documents_at_issue.pdf; OHA Communications Plan.pdf |

Hi Jeff,

We are planning to post our press release responding to OHA's communications plan early Monday. However, Steve English has requested that we share our documents with you before then. The attached documents are as follows:

1.  E-mails and documents released by OHA/DOJ (several documents are embedded in links/attachments in the OHA e-mails).
2.  OHA communications plan that was last edited on January 26 (this is one of the embedded documents in Word Doc format).
3.  FamilyCare draft rebuttal to the talking points contained in OHA's Communications Plan.
4.  FamilyCare's draft press release.

Please let me know if you have any questions.

Sincerely,

Art

**Artur (Art) Suchorzewski**
Director, Government Affairs
825 NE Multnomah St., Suite 1400
Portland, OR 97232
Direct: 503-345-5755
Cell: 413-244-9711

Facebook | Twitter | App



FCI0200236

Ex. 14 - 2nd Simpson Decl.
Page 1 of 164

**FamilyCare**
Health

FOR IMMEDIATE RELEASE

For more information, please contact:
Jack Coleman
Director, Communications
503-734-3109 | jackc@familycareinc.org

# OHA documents declare intent to harm FamilyCare

PORTLAND, Ore. (Aug. 7, 2017) - In response to a Freedom of Information Act (FOIA) request, the Oregon Health Authority (OHA) recently released documents requested by the *Portland Tribune* that clearly demonstrate OHA's intent to "hurt" and "isolate" FamilyCare Health, the second largest Medicaid health care insurer in Oregon.

This new information follows recently released data by the OHA that provide an inaccurate and misleading picture of cost growth rates at FamilyCare.

OHA's communication document states, *"This is a chance to showcase FamilyCare as an outlier in the CCO system that is more concerned with the bottom line and increasing revenues than the health of Oregonians."* It also reveals that the agency intended to:

1. "Highlight Health Share as a truly inclusive CCO that provides greater access to Oregonians with high cost medical needs."
2. Use "legislators and/or other lobbyists to pitch stories to news media if possible so that OHA can staff [sic] neutral."
3. "Use media to continue to highlight Family Care as outlier and look for opportunities to hurt their credibility in the news."
4. Get a few discreet examples of Medicaid patients with high cost medical issues, such as HIV, who had selected Health Share because FamilyCare couldn't provide the care they need, and pitch their stories to local reporters "off the record."
5. Develop "Stories from OHP members who chose Health Share over Family Care."

E-mails show that OHA's outside actuary, Optumas, who is hired to independently help set rates for all of the CCOs, was included in the communications planning. Multiple Department of Justice employees were also included in the planning discussions.

Health Happens Here

825 NE Multnomah St., Suite 1400, Portland, OR 97232 | P: 503-222-2880 F: 503-345-5720 | www.familycareinc.org

FCI0200237



FamilyCare operates in good standing with OHA. In 2016, FamilyCare earned 95% of possible quality incentive payments through the OHA by meeting or exceeding benchmarks and improvement targets. FamilyCare was the leading CCO in the state for the "prevention quality overall composite" metric, which measures the rate of avoidable hospitalizations for its members.

FamilyCare's attorney, Stephen English says, "The disclosure of this information paints a very troubling picture of a State agency that appears to be operating far beyond the bounds of their duties and responsibilities to the people of Oregon."

### 

About FamilyCare Health
For more than 30 years, FamilyCare Health has been providing patient-centered health care to Oregonians. FamilyCare Health is an Oregon Health Plan Coordinated Care Organization (CCO) and a Medicare Advantage plan serving approximately 115,000 members in Multnomah, Clackamas, Washington, Marion, and Clatsop counties. FamilyCare Health was the first health plan in Oregon to integrate models of physical and mental health and the first CCO in the tri-county area certified by the Oregon Health Authority. More information at http://www.familycareinc.org/



Health Happens Here

825 NE Multnomah St., Suite 1400,  Portland, OR 97232  |  P: 503-222-2880 F: 503-345-5720  |  www.familycareinc.org

FCI0200238



## FamilyCare Section-by-Section Rebuttal to OHA Communications Plan

1. Highlight Family Care as an outlier and only worried about profit margins: This is the second time that Family Care has disputed their rate while every other CCO has managed to work with OHA and modify their business decisions to account for the cost containment measures necessary to keep our commitment to CMS.

   - ➤ Since 1984, FamilyCare's mission has been to provide access to quality health care for Oregon's most vulnerable population.
   - ➤ Unlike other CCOs, FamilyCare is a single corporate entity with no subsidiaries or subcontractors. Therefore, all our revenue and cost is itemized on a single balance sheet with no pass through profits.
   - ➤ Pass through profits at other CCOs are treated as costs by the OHA of that CCO, thereby artificially inflating their premium structure. OHA uses these costs for the base data used to develop capitation rates for each CCO.
   - ➤ The ACA expansion in 2014 saw significant increases in profitability and assets among all of the CCOs and their related parties.
   - ➤ The agency is aware of significant related-party transfers of assets and downstream profitability buried inside our state's Medicaid program but refuses to track or publish them.

2. Highlight Health Share as a truly inclusive CCO that provides greater access to Oregonians with high cost medical needs: By clearly explaining the data behind the risk scores we can highlight that Health Share is taking on more of the riskier pool.

   - ➤ 2016 CAPHS (Consumer Assessment of Healthcare Providers & Systems) Survey results show that FamilyCare and HealthShare have equal access to care.
   - ➤ 2016 CAPHS Survey results show that FamilyCare is in the top 5 CCOs for satisfaction with care, and bests HealthShare by 3 percentage points.
   - ➤ In Q3 2016, FamilyCare's reported complaints per 1,000 members was 2.7, among the lowest in the state, whereas HealthShare reported 7.5 complaints per 1,000 members, the third highest in the state.
   - ➤ FamilyCare's internal analysis of the risk scores generated by OHA and its actuary, Optumas, show that the risk scores used to develop rates in prior

Health Happens Here

825 NE Multnomah St., Suite 1400, Portland, OR 97232 | P: 503-222-2880 F: 503-345-5720 | www.familycareinc.org

FCI0200239



years were wrong. 2018 risk scores show that FamilyCare's population has a similar risk profile to HealthShare's.

    i. For example, preliminary data shows that the 2018 risk scores are .973 for FamilyCare and 1.016 for HealthShare for the ACA 55-64 category. This data is based on the population profile for 2016, when the risk scores used by OHA were .866 for FamilyCare and 1.078 for HealthShare.

3. Get a few discreet examples of OHP members with high cost medical issues (i.e. HIV) who chose Health Share b/c Family Care couldn't provide them the care they need. (Pitch off the record to reporters (e.g. Willamette Week))

    ➢ OHA has an obligation to inform FamilyCare of any quality of care concerns; FamilyCare has received no such notifications and at all times has maintained good standing under its CCO Contract.  This type of unfounded threat was also put forth by OHA during the last dispute.

    ➢ Our provider network includes over 4,000 primary, specialty, and mental health providers serving 120,000 Oregonians in the Tri-County region.

4. Showcase that Family Care is outlier in taking advantage of taxpayer money to give more funding to providers and is now asking for more taxpayer money (i.e. settlement funding) because business model of providing commercial rate reimbursement isn't working.

    ➢ Our own internal analysis show that our investment in primary care lead to reductions in inpatient hospital referrals, specialty care visits, and lab and imaging costs. Overall, this has resulted in small savings (not an increase in costs) which OHA fails to account for when developing our rates.

    ➢ OHA information makes no mention that FamilyCare had the lowest per member per month medical cost for 2016 at $319.15.

    ➢ Average per member, per month medical expenses grew by 6.8% at FamilyCare versus 7.9% at HealthShare between 2015 and 2016.

5. Op-ed to Lund Report from Lynne focused on Q3 leg report that talks about the success of the CCOs and showcases the 3.4% cost containment and the financial strength of the CCOs. Include graph that shows cash and investments from 2014-mid 2016 (Family Care numbers are huge compared to everyone else).

Health Happens Here

825 NE Multnomah St., Suite 1400, Portland, OR 97232 | P: 503-222-2880 F: 503-345-5720 | www.familycareinc.org

FCI0200240



➢ The agency is aware of significant related-party transfers of assets and downstream profitability buried inside our state's Medicaid program but refuses to track or publish them.

➢ For example, OHA fails to disclose the cash and investments of CareOregon, a related-party delegate of HealthShare that manages approximately 62% of HealthShare's physical health members.

➢ In 2015, HealthShare/CareOregon cash and investments total $379,859,261 compared to $281,802,889 for FamilyCare.

➢ Between 2014-2016, HealthShare's cash and investments grew by 74%, compared to a 31% increase at FamilyCare.

Health Happens Here

825 NE Multnomah St., Suite 1400, Portland, OR 97232 | P: 503-222-2880 F: 503-345-5720 | www.familycareinc.org

FCI0200241

Ex. 14 - 2nd Simpson Decl.
Page 6 of 164

| **From:** | Cowie Robb |
|---|---|
| **To:** | Crowell Courtney W |
| **Cc:** | Darby BethAnne |
| **Subject:** | Attorney Client privilege: FC materials |
| **Date:** | Friday, January 06, 2017 9:33:38 AM |
| **Attachments:** | OHA response 03_29_16.docx |
| | Family Care communications plan 03_19_16.docx |
| **Importance:** | High |
| **Sensitivity:** | Confidential |

Fpr your background, here are some of the materials we prepared last year as part of our response to the Family Care litigation.


Robb Cowie
Communications Director
External Relations Division
Oregon Health Authority
robb.cowie@state.or.us
Desk: 503-945-7849
Cell: 503-421-7684
www.oregon.gov/OHA

FCI0200242

DRAFT

Attorney Client Privilege

(Insert reporter's name) / Oregon Legislators

Today the Oregon Health Authority provided a technical response to FamilyCare's latest proposal. As you know, this dispute is about the $55 million rate overpayment FamilyCare received in 2015 and FamilyCare's lack of CMS-approved contracts for 2015 and 2016.

At the most basic level, this disagreement has been driven by Family Care from the start. Family Care (and most other CCOs) objected to OHA's original 2015 rates and asked OHA to revise them to ensure that they were actuarially sound. While OHA was collaborating with FamilyCare and the other CCOs to develop revised 2015 rates, FamilyCare filed a legal suit challenging the original rates.  They demanded that revised rates be developed and retroactive to January 2015. As part of this process, Optumas – the independent actuarial firm setting the rates – determined that FamilyCare and five other CCOs were actually being overpaid, and that others were actually being underpaid. Even though all of the 15 other CCOs have resolved their 2015 contract rate amendment -- including returning all applicable overpayments, Family Care is continuing to demand special treatment. FamilyCare refuses to return its overpayment and continues to contest the 2015 redeveloped rates created through the collaborative and transparent process they demanded.

While we are disappointed FamilyCare rejected OHA's most recent offer, we remain hopeful we can find agreement. Both sides have an interest in a clear, timely resolution. OHA has participated in mediation and negotiation with Family Care for over a year now.  OHA is committed to ending this dispute, despite FamilyCare's combative tone and rhetoric.

With all of this in mind, OHA wants to clarify the key issues and correct some of the statements Family Care has made recently:

- **FamilyCare is not entitled to keep the $55 million in 2015 rate overpayment**: FamilyCare's rates are paid for through state dollars paid by taxpayers, and federal matching funds – i.e., FamilyCare is negotiating to keep public dollars they received in the form of an overpayment. The overpayment was a direct result of a rate redevelopment process FamilyCare and other CCOs initiated in 2015. *In that process, Optumas determined that FamilyCare had enjoyed significant but inflated profits and had failed to deliver medical services meeting minimal medical loss ratio requirements.*  Until the overpayment issue is resolved, FamilyCare does not have a CMS-approved contract for 2016, according to CMS.
- **FamilyCare is not entitled to receive a rate of its own choosing within the CMS-approved rate range for Oregon**: FamilyCare and the other CCOs were assigned rates Optumas developed based on the health risks of each CCO's member population. While FamilyCare contends they should receive 100 percent of the approved range, OHA is obligated to pay CCOs within CMS-approved parameters:

FCI0200243

- o The rates must be actuarially sound for each CCO, according to Optumas.
- o The rates one CCO receives cannot be inequitable in relation to rates paid to other CCOs in the range, otherwise all rates would have to be revised upward. Upward revision to the rates of multiple CCOs jeopardizes OHA's waiver agreement with CMS to stay within a 3.4 percent growth limit.

- **OHA's proposed rates are actuarially sound and do not jeopardize the financial health of any CCOs:** The health and well-being of OHP members depends on the financial strength and stability of the CCOs that serve them. As partners in health care transformation, OHA is committed to the success of all of Oregon's CCOs -- however, we want our CCO partners to be financially sound so they can serve OHP members, not maximize their profit margins. There is no external evidence that FamilyCare's operations are unsustainable, or that Family Care is financially unable to return its overpayment:
  - o In 2014, Family Care's operating margin was greater than 20 percent, by far the highest margin of any CCO (see attached chart).
  - o Through the first nine months of 2015, Family Care's operating margin was approximately 5 percent.
  - o No other CCOs have reported operating deficits under the current CMS-approved rates.
  - o All other CCOs have paid back their 2015 rate overpayments.

  OHA and Optumas are responsible for paying CCOs appropriate rates approved by CMS. *Oregon and its actuaries are not responsible for business decisions CCOs make that affect their operating margin: e.g., provider contracts, operating expenses (including staff compensation and benefits) and other costs.*

- **Family Care's offer to return a portion of its rate overpayment in exchange for federally-funded enhanced rates puts federal funding for Oregon's Medicaid program at risk**: FamilyCare has publicized its offer to repay $47.3 million of its 2015 rate overpayment, in exchange for receiving enhanced rates in 2015 and 2016 for the expanded population eligible for coverage under the ACA. While FamilyCare is correct in stating their enriched rates would not have an impact on the state general fund (since the expansion population is currently paid for 100 percent through federal dollars), FamilyCare's windfall risks pushing Oregon's Medicaid expenses past the 3.4 percent CMS-allowed growth rate, since OHA would be obligated to treat all other CCOs equitably and enrich their rates as well. Exceeding the 3.4 percent growth limit would put federal participation in OHP funding at risk.

If we can't reach an agreement, FamilyCare will be in breach of contract with the state. As we move forward, it is OHA's responsibility to resolve this dispute in a way that protects coverage and benefits for OHP members, maintains federal participation in Oregon's Medicaid program and provides equitable treatment for all CCOs. While we continue to press for a settlement, we can't compromise these principles or allow this process to drag out indefinitely.

FCI0200244

Please let me know if you have questions. If you'd like, I'd be happy to set up a time for you to talk more with Lynne Saxton, OHA Director or Lori Coyner (our state Medicaid director) if you'd like clarification on any of these issues.

FCI0200245

Attorney-Client Privilege

**Family Care Communications Plan**

**Situation analysis**:

OHA is seeking to successfully resolve a rate and contract dispute with Family Care. At risk are the soundness of CCO rates, OHA's reputation, and continued federal matching funds for OHP (as well as $55 million in overpayments to Family Care that OHA is required to recover by CMS). OHA has provided Family Care a 14-day breach of contract notice. The dispute may accelerate and intensify toward a high-stakes and high-visibility resolution in coming weeks.

**Goal:**

1. **Create conditions for successful resolution of Family Care dispute, which meets OHA's priorities.**
   - Key audiences understand and support OHA's efforts to secure appropriate rate repayment from Family Care and protect OHP members and Oregon taxpayers. (Isolate Family Care.)
   - Key audiences understand and support OHA's efforts to resolve current litigation with Family Care.
   - Demonstrate OHA's commitment to resolving Family Care's dispute in a collaborative manner, which maintains the integrity of Oregon's CCOs and health system transformation. (Counter Family Care rhetoric and allegations.)

2. **Minimize disruption and worry for OHP members (if necessary)**.
   - Keep OHP members informed and reassured that OHA will ensure their coverage or benefits will not be interrupted.

3. **Maintain OHA's reputation and advance health system transformation.**
   - Demonstrate OHA's commitment to coordinated care and better health for OHP members.
   - Demonstrate OHA's focus on cost stewardship and the financial integrity of the health system.

**Strategies**

1. **Stay in close communication with legislators:** Generate support for OHA's goals through regular direct contact with legislators.
2. **Tell OHA's story through targeted earned media:** Generate earned media that effectively tells an accurate story through targeted interviews with key reporters and outlets.
3. **Simplify a complex story through easy to understand tools**: Develop clear and compelling informational resources to support accurate media and stakeholder understanding of the issues.

FCI0200246

4. **Immediately counter Family Care's misinformation:** Correct allegations and distortions as soon as they are issued by Family Care through prompt, informal communication with key media.

5. **Provide timely and appropriate member communications**: If necessary, communicate directly with OHP members enrolled with Family Care to keep them informed about their benefits and coverage.

**Tone:** Measured, reasonable, responsible, and settlement-focused.

**Audiences**:

| Audience | Values/Concerns | Think/Feel/Do | Pathways |
|---|---|---|---|
| Legislators | Relationship with Family Care. Financial impact on General Fund. | **Think**: Understand OHA's urgency in securing rate repayment and reaching agreement that finalizes 2015 contract. **Feel**: Comfortable OHA is working to reach reasonable settlement that protects members and GF. **Do**: Avoid intervening on behalf of Family Care. | Meetings Phone Calls Email |
| CCOs | Stability of system. Equity among CCOs. Predictability in rate-setting. Opportunity to expand market share. | **Think**: Understand how OHA is attempting to settle FC dispute in a way that preserves integrity of CCOs and HST; and why we served breach of contract notice. **Feel**: OHA is a fair and transparent business partner. **Do**: Be prepared for successful transition, if necessary. | Meetings Phone calls Email Memos |
| Health care opinion leaders | Better outcomes and lower costs in health care. OHA's effectiveness in leading health system transformation in OR. | **Think**: OHA is effective in managing health system transformation in OR. **Feel**: Confidence in OHA. **Do**: Support OHA. | Media |

FCI0200247

| OHP members | Better health for themselves and their families. Access to coverage and benefits. | **Think**: Know how to access health care coverage and benefits. **Feel**: Confident and calm during any potential transition, if necessary. **Do**: Obtain care without interruption and report positive experience to policymakers/media. | Letters Media Community media Social media Paid media |
|---|---|---|---|

**Tactics and Deliverables**

Italics: Major products and deliverables to be developed.

| Deliverable | OHA solution | Response to FC solution | FC seeks injunction | Post-injunction | Transition |
|---|---|---|---|---|---|
| Legislative outreach | Legislator update (3/15) | Phone calls to legislators | *Legislator update* Phone calls to legislators | *Legislator update* Phone calls to legislators | *Legislator update* Phone calls to legislators |
| Earned media | News release (3/16) Media follow-up (3/17) <br> • PBJ <br> • LR | Continue targeted outreach (3/21): <br> • PBJ <br> • LR <br> • WW <br> • OR <br> • Tribune <br> • OPB | *OHA statement* Continue targeted outreach: <br> • PBJ <br> • LR <br> • WW <br> • OR <br> • Tribune <br> • OPB | *News release* Continue targeted outreach: <br> • PBJ <br> • LR <br> • WW <br> • OR <br> • Tribune <br> • OPB | *News release* News conference Continue targeted outreach: <br> • PBJ <br> • LR <br> • WW <br> • OR <br> • Tribune <br> • OPB |
| Myth-busting/ Transparency | | *Side by side comparison of OHA/FC proposed solutions. (TBD)* ***Rapid response**: Personalized, informal email* | ***Rapid response**: Personalized, informal email to key reporters correcting inaccuracies in FC statements. (TBD)* | ***Rapid response**: Personalized, informal email to key reporters correcting inaccuracies in FC statements. (TBD)* | ***Rapid Response**: Personalized, informal email to key reporters correcting inaccuracies in FC statements. (TBD)* |

FCI0200248

| | | | | | |
|---|---|---|---|---|---|
| | | *to key reporters correcting inaccuracies in FC statements. (TBD)* <br><br> *Update HST web site to show CCO financial position. (TBD)* <br>• *Email link to key media.* | | | |
| CCO outreach | | *Update memo to CCOs who may be affected by transition(TBD):* <br>• *OHA focused on equitable settlement that protects integrity of system.* <br>• *OHA will facilitate smooth transition, if necessary.* | | *Update memo to all CCOs (if OHA prevails).* <br><br> *Update memo to all CCOs affected by transition (if OHA prevails).* <br><br> Conference call with CCOs affected by transition (if OHA prevails). | |
| Member outreach | | | | *Letter to FC members.* <br><br> *Automated calls in home languages.* <br><br> *Hotline for transition questions.* | *Letter to FC members.* <br><br> *Automated calls in home languages.* <br><br> *Hotline for transition questions.* <br><br> *Paid media in community* |

FCI0200249

| | | | | | *news outlets/digital.* |
|---|---|---|---|---|---|
| | | | | | *Sponsored social media.* |

**Metrics**

- Legislators are comfortable with OHA's efforts to settle dispute – based on the number and tenor of calls we receive from legislators.
- Earned media accurately reflects OHA's messages and priorities at every stage of the process.
  - o Prominence: OHA's messages in first 1-2 paragraphs of articles
  - o Placement: coverage reflects OHA's targeted outreach.
  - o Accuracy: Media reports correct Family Care misinformation.
- CCOs are comfortable and informed – based on informal feedback in phone calls/emails.
- Members report little anxiety or disruption – based on a significant increase in calls to Member Services.

FCI0200250

**OHA's settlement solution is fair to FC and protects members and taxpayers.**

- OHA has proposed a settlement that allows repayment over time.
- OHA's offer accounts for disproportionate impact of rate recalculation on FC.

**OHA is forced to serve breach of contract notice to protect integrity of CCO system.**

- CMS: no valid 2015 contract in place.
- With no valid 2015 contract, OR is liable for as much as $500M.
- OHA cannot agree to special treatment for one CCO.

**OHA is working toward a fair settlement with Family Care that protects OHP members and Oregon taxpayers.**

**OHA has proposed a settlement that maintains sound CCO rates and protects state General Fund.**

- State is liable for $55M owed CMS if FC doesn't reimburse rate overpayment.
- State is liable for more than $500M if FC does not agree to 2015 contract.

**OHA's priority is a settlement, but we are prepared to maintain members' coverage and benefits through a transition, if necessary.**

- Proof of urgency and commitment: OR at risk for $500M if FC defaults on contract.
- If no settlement: we are working with other CCOs to cover FC members.

FCI0200251

| From: | Darby BethAnne |
|---|---|
| To: | Crowell Courtney W |
| Cc: | WAHL Jeffrey |
| Subject: | FW: Attorney Client Privilege - Family Care Plan |
| Date: | Monday, January 09, 2017 1:49:00 PM |
| Attachments: | - JUSTICE-#7232668-v1-News_release_- March 16 2016 4pm.docx |
| | - JUSTICE-#7232668-v1-News_release_- March 16 2016 5pm LS FINAL.docx |
| | - Rates and FamilyCare - FAQ - March 2016 copy -4pm.docx |
| | - Rates and FamilyCare - FAQ - March182016.pdf |
| | - Timeline - Rates FamilyCare -- March 16 2016 - 5pm FINAL.docx |
| | 2016-23-03_FAQs_-_FamilyCare_and_OHA_Dispute.pdf |
| | FAQ- Rates and FamilyCare -March 16 2016 -5pm FINAL.docx |
| | OHA response 03_29_16.docx |

Courtney ---As we discussed, attached are most of the docs we created the last time. I am about to send you some of the newer materials. We will want to create a comms plan for Lynne as soon as possible.

Thank,s

**BethAnne Darby**
Director, External Relations Division
OREGON HEALTH AUTHORITY
BethAnne.Darby@state.or.us
503-798-7100
www.oregon.gov/OHA

---

**From:** Saxton Lynne
**Sent:** Tuesday, January 03, 2017 10:16 AM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>; Black Jeston J <JESTON.J.BLACK@dhsoha.state.or.us>; Cowie Robb <ROBB.COWIE@dhsoha.state.or.us>; Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>; Chauhan Varsha <VARSHA.CHAUHAN@dhsoha.state.or.us>; Coyner Lori A <LORI.A.COYNER@dhsoha.state.or.us>; Zachary Aters <zachary.aters@optumas.com>; Busek Rhonda J <RHONDA.J.BUSEK@dhsoha.state.or.us>
**Cc:** SCOTT Carla A <Carla.A.SCOTT@doj.state.or.us>; STINEMAN Renee <Renee.STINEMAN@doj.state.or.us>; Falk Theodore C <theodore.falk@doj.state.or.us>; WAHL Jeffrey <Jeffrey.WAHL@doj.state.or.us>; Souza Theresa <THERESA.SOUZA@dhsoha.state.or.us>
**Subject:** RE: Attorney Client Privilege - Family Care Plan

Hi all – I am asking BethAnne to develop our communication plan for the dispute resolution process; Theresa, I need a 15 minute call with BethAnne to start this process following the work last week. Thank you.

---

**From:** Saxton Lynne
**Sent:** Friday, December 23, 2016 8:03 AM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>; Black Jeston J <JESTON.J.BLACK@dhsoha.state.or.us>; Cowie Robb <ROBB.COWIE@dhsoha.state.or.us>; Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>; Chauhan Varsha

FCI0200252

<VARSHA.CHAUHAN@dhsoha.state.or.us>; Coyner Lori A <LORI.A.COYNER@dhsoha.state.or.us>;
Zachary Aters <zachary.aters@optumas.com>; Busek Rhonda J
<RHONDA.J.BUSEK@dhsoha.state.or.us>
**Cc:** SCOTT Carla A <Carla.A.SCOTT@doj.state.or.us>; STINEMAN Renee
<Renee.STINEMAN@doj.state.or.us>; Falk Theodore C <theodore.falk@doj.state.or.us>; WAHL
Jeffrey <Jeffrey.WAHL@doj.state.or.us>; Souza Theresa <THERESA.SOUZA@dhsoha.state.or.us>
**Subject:** Attorney Client Privilege - Family Care Plan

Thank you all for your time. I want to clarify next steps. We will discuss further at our 1:30 call, if not earlier. Again, Carla and Ted, please feel free to step out of the meeting and call my cell.

Mark: Ensure BethAnne's team have all the slides Jeff and Zach shared yesterday; they need to be formatted so they can be used with the media.  Also, I don't have the email referenced on the call this morning regarding FC's other issue so please forward that. Theresa, I will need both an electronic and print set of these slides by COB today.

BethAnne: your team will need to be prepared for a press release today should FC decide to go to court today. I would like your recommendation on a proactive strategy for that possibility.

Varsha: I need to know how many contracts are signed from CCOS and I will need a continuous update on this. Thank you.

Going to another meeting – will follow up.

FCI0200253

**Oregon Health Authority proposes resolution to 2015 rate dispute**

The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

OHA has also provided FamilyCare a notice of breach of contract in the event the two sides are unable to reach an agreement. OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without a CMS-approved agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region or to receive federal funding for those services. Despite the lack of CMS-approved contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Lynne Saxton, director of the Oregon Health Authority said, "This is a reasonable solution that allows FamilyCare and OHA to move forward and focus on serving members Oregon Health Plan members."

**Federal government calls for sound FamilyCare rates**

At the request of Oregon's coordinated care organizations and with the approval of the Centers for Medicare and Medicaid Services (CMS), OHA redeveloped the 2015 rate methodology and in August 2015 issued revised rates. Based on those rates, FamilyCare was liable to return more than $55 million in overpayments. All other 15 CCOs have signed the 2015 contracts with revised rates based on the new rate-setting methods. Family Care is the only CCO that has not reimbursed, or began a plan to reimburse, the state and federal government for its 2015 overpayment.

OHA, in consultation with CMS, has been attempting to resolve this matter with FamilyCare. In late February, CMS issued a letter calling for the state to finalize its 2015 contract with FamilyCare based on the new rate methodology, certification and rates. If FamilyCare doesn't sign a 2015 contract with CMS approved rates, the state will be liable for repayment of federal funds already paid to FamilyCare.

"We have a responsibility to protect the health and well-being of Oregon's most vulnerable citizens --- Oregon Health Plan members," said Lynne Saxton, director of the Oregon Health Authority. "OHA's proposal is in line with the expectations of Oregon's federal partners, as well

FCI0200254

as the long-term financial sustainability of our health care system.  Now it's time to move forward and prevent any further worry or disruption for OHP members."

Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds. Funding for a settlement is not available through federal dollars.

###

FCI0200255

**Oregon Health Authority proposes resolution to 2015 rate dispute**

The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 for providing care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address FamilyCare's dispute that it had the most significant rate difference, when revised 2015 rates were implemented to address concerns with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different rate methodology than other CCOs.

OHA has also provided FamilyCare a notice of breach of contract in the event the two sides are unable to reach an agreement. OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without a CMS-approved agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region or to receive federal funding for those services. Despite the lack of CMS-approved contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Lynne Saxton, director of the Oregon Health Authority said, "This is a reasonable solution that allows FamilyCare and OHA to move forward and focus on serving Oregon Health Plan members."

**Federal government calls for sound FamilyCare rates**

At the request of Oregon's coordinated care organizations and with the approval of the Centers for Medicare and Medicaid Services (CMS), OHA redeveloped the 2015 rate methodology and in August 2015 issued revised rates. Based on those rates, FamilyCare was liable to return more than $55 million in overpayments. All other 15 CCOs have signed the 2015 contracts with revised rates based on the new rate-setting methods.  Family Care is the only CCO that has not reimbursed, or began a plan to reimburse, the state and federal government for its 2015 overpayment.

OHA, in consultation with CMS, has been attempting to resolve this matter with FamilyCare. In late February, CMS issued a letter calling for the state to finalize its 2015 contract with FamilyCare based on the new rate methodology, certification and rates. If FamilyCare doesn't sign a 2015 contract with CMS approved rates, the state will be liable for repayment of federal funds already paid to FamilyCare.

 "We have a responsibility to protect the health and well-being of Oregon's most vulnerable citizens --- Oregon Health Plan members," said Lynne Saxton, director of the Oregon Health Authority. "OHA's proposal is in line with the expectations of Oregon's federal partners, as well

FCI0200256

as the long-term financial sustainability of our health care system.  Now it's time to move forward and prevent any further worry or disruption for OHP members."

Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds. Funding for a settlement is not available through federal dollars.

###

FCI0200257



# Rates and FamilyCare – Frequently asked questions

## Updated March 18, 2016

**How is OHA trying to resolve the overpayment issue with FamilyCare?**
The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

**What is the role of CMS?**

The Center for Medicare and Medicaid Services is the third party to Oregon's Medicaid contract with the federal government. Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds.

OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without an agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region. Despite the lack of contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

**Why didn't OHA accept the proposed solution that FamilyCare offered?**

After analyzing FamilyCare's proposed solution, OHA concluded FamilyCare's proposed solution would:

- Be inconsistent with CMS approved 2015 and 2016 rate methodologies;
- Treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS; and
- Require addition taxpayer dollars to pay FamilyCare instead of benefiting some of Oregon's most vulnerable citizens-- Oregon Health Plan members.

June 28, 2017
Page **1** of **3**

FCI0200258

Ex. 14 - 2nd Simpson Decl.
Page 23 of 164



### How many CCOs have signed 2015 contract amendments?

To date, 15 of 16 CCOs have signed their 2015 rate amendments. Those rates were approved by CMS in December 2015. The February 2016 letter from CMS confirmed that FamilyCare does not have an approved contract for 2015 or 2016.

### How many OHP members are enrolled in FamilyCare? What's their capacity?

Approximately 128,000 OHP members are enrolled in FamilyCare. They are approved to serve up to 240,000 members.

### Has FamilyCare had a chance to review their rates with OHA?

OHA remains committed to transparency and this was a priority during the 2015 rate redevelopment process. Individuals meetings were held with all the CCOs, including FamilyCare, to review the methodology and answer any questions.

### Why were rates redeveloped?

In January 2015, eleven of Oregon's coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates were flawed.

In particular, the issues raised were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency. The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review.

### How long will OHA use the same rate methodology?

Now that OHA knows that it has an actuarially sound rate methodology, it will continue to use the same methodology for the foreseeable future as the foundation for future rates. This methodology is consistent with CMS's proposed guidelines. OHA used the redeveloped 2015 rate methodology to determine 2016 rates and will use it again for 2017 rates. By statute, all CCOs (including FamilyCare) have 60 days to review and negotiate proposed rates prior to signing the annual contract rate amendment. Oregon's waiver requires that rates stay within 3.4% sustainable rate of growth.

### How did the lawsuit between OHA and FamilyCare develop?

FamilyCare notified OHA that the 2015 rates were not actuarially sound and needed to be redeveloped by law March 2016, prior to seeing the revised 2015 rates. Their lawsuit was filed in May 2015. FamilyCare sued asking for the rates to be redeveloped, which OHA had begun at that time – and then completed in August 2015.

### How did OHA work with Oregon's CCOs to redevelop the rates?

In March 2015, OHA convened Oregon's coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification.

June 28, 2017
Page **2** of **3**

FCI0200259



At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates in April 2015, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 and beyond. OHA hired Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates, as well develop a methodology that could be applied to future rates.

OHA, coordinated care organizations, and Optumas developed the new methodology through a transparent, intensive process. This process included over 100 meetings between coordinated care organizations, OHA staff, and Optumas. Close coordination, partnership, and transparency with CCOs and their actuaries were key to this successful process. A revised rate methodology and certification for 2015 was completed in August and the same methodology is used for the 2016 rates.

**Did FamilyCare participate in the rate redevelopment meetings with CCOs?**
A representative from FamilyCare attended all group meetings. For 2015, FamilyCare attended five individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended three individual meetings and six group meetings, for a total of nine meetings.

**What is an overpayment?**
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA Contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

**Would the federal government cover the cost of a settlement?**
Funding for a settlement is not available through federal dollars.

June 28, 2017
Page **3** of **3**

FCI0200260



# Rates and FamilyCare – Frequently asked questions

# Updated March 18, 2016

How is OHA trying to resolve the overpayment issue with FamilyCare?

The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

What is the role of CMS?

The Center for Medicare and Medicaid Services is the third party to Oregon's Medicaid contract with the federal government. Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds.

OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without an agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region. Despite the lack of contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Why didn't OHA accept the proposed solution that FamilyCare offered?

After analyzing FamilyCare's proposed solution, OHA concluded FamilyCare's proposed solution would:

- Be inconsistent with CMS approved 2015 and 2016 rate methodologies;
- Treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS; and
- Require addition taxpayer dollars to pay FamilyCare instead of benefiting some of Oregon's most vulnerable citizens-- Oregon Health Plan members.

March 18, 2016
Page **1** of **3**

FCI0200261

Ex. 14 - 2nd Simpson Decl.
Page 26 of 164



### How many CCOs have signed 2015 contract amendments?

To date, 15 of 16 CCOs have signed their 2015 rate amendments. Those rates were approved by CMS in December 2015. The February 2016 letter from CMS confirmed that FamilyCare does not have an approved contract for 2015 or 2016.

### How many OHP members are enrolled in FamilyCare? What's their capacity?

Approximately 128,000 OHP members are enrolled in FamilyCare. They are approved to serve up to 240,000 members.

### Has FamilyCare had a chance to review their rates with OHA?

OHA remains committed to transparency and this was a priority during the 2015 rate redevelopment process. Individuals meetings were held with all the CCOs, including FamilyCare, to review the methodology and answer any questions.

### Why were rates redeveloped?

In January 2015, eleven of Oregon's coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates were flawed.

In particular, the issues raised were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency.  The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review.

### How long will OHA use the same rate methodology?

Now that OHA knows that it has an actuarially sound rate methodology, it will continue to use the same methodology for the foreseeable future as the foundation for future rates.  This methodology is consistent with CMS's proposed guidelines.  OHA used the redeveloped 2015 rate methodology to determine 2016 rates and will use it again for 2017 rates.  By statute, all CCOs (including FamilyCare) have 60 days to review and negotiate proposed rates prior to signing the annual contract rate amendment. Oregon's waiver requires that rates stay within 3.4% sustainable rate of growth.

### How did the lawsuit between OHA and FamilyCare develop?

FamilyCare notified OHA that the 2015 rates were not actuarially sound and needed to be redeveloped by law March 2016, prior to seeing the revised 2015 rates. Their lawsuit was filed in May 2015. FamilyCare sued asking for the rates to be redeveloped, which OHA had begun at that time – and then completed in August 2015.

### How did OHA work with Oregon's CCOs to redevelop the rates?

In March 2015, OHA convened Oregon's coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification.

March 18, 2016
Page **2** of **3**

FCI0200262



At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates in April 2015, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 and beyond. OHA hired Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates, as well develop a methodology that could be applied to future rates.

OHA, coordinated care organizations, and Optumas developed the new methodology through a transparent, intensive process. This process included over 100 meetings between coordinated care organizations, OHA staff, and Optumas. Close coordination, partnership, and transparency with CCOs and their actuaries were key to this successful process. A revised rate methodology and certification for 2015 was completed in August and the same methodology is used for the 2016 rates.

**Did FamilyCare participate in the rate redevelopment meetings with CCOs?**
A representative from FamilyCare attended all group meetings. For 2015, FamilyCare attended five individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended three individual meetings and six group meetings, for a total of nine meetings.

**What is an overpayment?**
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA Contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

**Would the federal government cover the cost of a settlement?**
Funding for a settlement is not available through federal dollars.

March 18, 2016
Page **3** of **3**

FCI0200263

OHA Rate Development Timeline

**July 2014**
OHA receives a corrective action from CMS stating that OHA needed to change its rate methodology and no longer use the cost template methodology.

**Fall 2014**
The 2015 capitation rates are developed by OHA in-house actuaries using a CCO-specific methodology that was certified by OHA's internal actuary.

**December 24, 2014**
CCOs received final 2015 rates included in their contracts for 2015. They had six days to sign without a comment period.

**January 2015**
Eleven of Oregon's sixteen coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates are flawed. In particular, the issues were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency. The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review and provide input.

Family Care meets with OHA to object to rate methodology used in 2014 for 2015 rates.

**March 2015**
FamilyCare notifies OHA that they believe the 2015 rates are not actuarially sound, need to be corrected, and made retroactive to January 1, 2015.

OHA convenes Oregon's all 16 coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification. The effective date of those rates was not determined.

OHA received a letter from CMS that requested the certifying in-house actuary answer 103 questions regarding the original 2015 capitation rates.

**April 2015 through August 2015**
At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 rates and beyond.

OHA commits to hiring Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates as well develop a methodology that could be applied to future rates.

OHA, the coordinated care organizations, and Optumas make progress on developing the new methodology through a transparent, intensive process that included over 100 meetings between

FCI0200264

coordinated care organizations, OHA staff, and Optumas, OHA's actuarial contractor. Close coordination, partnership, and transparency with CCOs were key to this successful process. Revised rate methodology and certification for 2015 was completed in August and the same methodology was used for the 2016 rates. FamilyCare attended all group meetings. For 2015, FamilyCare attended 5 individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended 3 individual meetings and 6 group meetings, for a total of 9.

**May 2015**
Family Care sues OHA, based on their March 2015 intent to file a lawsuit (prior to new rate methodology being determined). The lawsuit demands that OHA re-develop the 2015 rates to satisfy federal law requirements that they be actuarially sound, and also demanded that OHA apply the re-developed rates retroactive to January 1, 2015.

**July 13, 2015**
OHA and Optumas released the regional rate ranges to the CCOs for the redeveloped 2015 rates.

**July 21, 2015**
OHA and Optumas released the payment rates within the rate ranges to each CCO. The payment rate was chosen within the rate range by OHA, in conjunction with Optumas, after analyzing sustainable growth targets of 3.4% and waiver requirements. At this time, OHA had scheduled meetings with CMS to discuss the effective date of the rates.

**July 27, 2015 and August 10, 2015**
OHA had calls with CMS to discuss the effective date of the redeveloped rates. CMS advised OHA their preference was to approve only one rate methodology for 2015 and gave verbal acknowledgement that the redeveloped rates were consistent with CMS/OACT regulations and proposed rules.

**August 19, 2015**
OHA and Optumas released the payment rates within the rate ranges to each CCO with an effective date of January 1, 2015.

The agency accomplished both requirements of the Family Care lawsuit with its August rate setting: 1) actuarially sound rates; and 2) retroactive to January 1, 2015.

**August 21, 2015**
OHA received a formal letter from CMS regarding the redeveloped rates and the preferred effective date of January 1, 2015.

**August 28, 2015**
OHA submitted the 2015 redeveloped rate methodology, certification, and rates to CMS for review and approval. The actuarial certification and contract rate sheets are available on the OHP rates website: www.oregon.gov/oha/analytics/Pages/OHPrates.aspx.

**August 31, 2015**

FCI0200265

CCOs received their executable 2015 contract amendment with the redeveloped 2015 rates.

**September 2015**
Legislative days focus on rates and health system transformation. CCOs see 2016 rate ranges.

**October 2015**
15 out of 16 CCOs sign their 2015 contract amendments containing redeveloped rates. These annual amendments are required in the CCO's contract.

**November 2015**
FamilyCare fails to sign the 2015 contract amendment containing redeveloped rates. CMS sends letter signaling intent to approve 2015 redeveloped rate methodology, certification, and rates; OHA begins mediation with FamilyCare. OHA sends Letter of Interest request to certified CCOs to ensure members are served in 2016 regardless of the lawsuit. FamilyCare confirms they are interested in serving members in 2016.  OHA sends CCOs 2016 contracts with 60 day notice.

**December 2015**
The Centers for Medicare and Medicaid Services approve the 2015 redeveloped rate methodology, certification, and contracts. OHA continues mediation efforts with Family.Care. FamilyCare signs the 2016 contract, which is based on the same methodology as the 2015 rates.

**February 2016**
OHA receives a letter from CMS regarding FamilyCare's unapproved and unapprovable 2015 and 2016 contracts. The CMS letter indicates that FamilyCare's refusal to accept the rates approved by CMS have put at risk the state's ability to draw down federal funds for 2015 and 2016.

**March 2016**
OHA reviews FamilyCare's proposal and concludes that it would: 1) violate CMS-approved 2015 and 2016 rate methodologies and certifications (OHA has not yet received CMS approval of the 2016 rate methodology and certification, but anticipates it based on the similar, approved 2015 rate methodology); and 2) treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS. For these actuarial, financial, and policy reasons, OHA does not accept FamilyCare's proposal.

The Oregon Health Authority issues a 14-day breach of contract notice to FamilyCare to resolve the overpayment in rates FamilyCare received for 2015.  OHA requests that FamilyCare sign their 2015 contract amendment; repay the overpayment; and withdraw their lawsuit.

*Definition of overpayment:*
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments

FCI0200266

received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

FCI0200267

Ex. 14 - 2nd Simpson Decl.
Page 32 of 164



## FAMILYCARE HEALTH'S DISPUTE WITH THE OREGON HEALTH AUTHORITY (OHA) -

## FREQUENTLY ASKED QUESTIONS

### What is FamilyCare?

FamilyCare is an Oregon Not for Profit Corporation. It was founded in 1984 and has been serving the Medicaid population for the last 32 years.

### What are the basic issues at hand?

There are two issues: 1) the methodology used by the OHA to set the reimbursement rates paid to the Coordinated Care Organizations (CCOs) for services provided to Oregon Health Plan members; and 2) the unfair treatment of FamilyCare in the process.

### How was FamilyCare treated differently?

The state developed 2015 and 2016 rates based on costs, but costs were not counted the same for all CCOs.  Unlike several of the CCO's, FamilyCare is a single corporate entity, with no subsidiaries or sub-contractors. As a result, all of FamilyCare's revenues and costs are itemized on a single balance sheet, and are not passed through to subsidiaries and sub-contractors (related entities). OHA's rate methodology only calculates the profits of the CCO contractor. Profits that are passed through to related entities (i.e. sub-contractors, partners, risk accepting entities) are treated as costs, thereby inflating their premium structure and negatively impacting FamilyCare's premium structure. It is estimated that approximately $400 million in CCO profits were actually counted as costs in 2014.

### Why did FamilyCare file a lawsuit?

FamilyCare filed a lawsuit in May, 2015 after months of attempts to engage OHA in a dialog about the 2015 rate setting process, resulting in a 9% decrease of FamilyCare's rates as compared to 2014.  This was greater than any other plan. It is important to note that CMS had similar concerns which were transmitted in a list of 100+ questions to OHA in March, 2015.

### Why was FamilyCare asked to pay back money?

OHA decided to redo the rate setting process in the summer of 2015 and apply the new rates retroactively (claw back) to January, 2015. The rates were recalculated using a regional rate range versus the individual rate plan methodology OHA used previously.  OHA made the final decision on where CCOs rates fell within the regional range.

OHA issued a contract amendment in September requiring CCOs to pay back funds if their new rates were lower than their original 2015 rates.  The new rates reduced FamilyCare's reimbursement by another 11% for a total reduction of 19.2% compared to 2014 rates.



Health Happens Here

825 NE Multnomah St., Suite 1400, Portland, OR 97232 | P: 503-222-2880 F: 503-345-5720 | www.familycareinc.org

FCI0200268



## Why didn't FamilyCare sign the contract amendment?

Oregon law requires CCO premium rates to be established "prospectively." An opinion by Oregon Legislative Council affirmed OHA's lack of authority to retroactively apply revised rates and claw back overpayments based on those rates. Additionally, there were no requirements from CMS to retroactively apply the revised rates.

## Why does FamilyCare bring up transparency concerns?

OHA has consistently not responded to, and refused requests made by FamilyCare and its attorneys for information:

- OHA claimed information that was previously publicly available is now proprietary.
- OHA asked CCO's to "vote" on what they wanted to release in response to FamilyCare's request.
- OHA has outstanding public records requests from FamilyCare that date back to January 2015.

All of these requests relate to data included in the rate calculations for 2015 and how pass-through profits to related entities were treated.

## What about all the meetings OHA had with CCOs to develop the rates?

Several meetings does not equate to transparency or collaboration.  FamilyCare has participated in meetings, raising concerns and requesting information.  OHA failed to respond. Concerns expressed by FamilyCare, still unanswered, relate to inconsistency in OHA reporting requirements, incomplete data validation and fair treatment of related party transactions.

## What about Mediation?

FamilyCare entered into mediation with OHA in late 2015; OHA terminated mediation on March 14, 2016 and demanded FamilyCare sign their settlement proposal without modification. Three days later, OHA delivered a revised demand letter to FamilyCare.  Subsequent counter-proposals have been offered by both parties.

## What is FamilyCare's current proposal?

FamilyCare's most recent proposal, offered on Monday March 21, would require FamilyCare to repay OHA $47.3 million for 2015 and its rates for 2015 and 2016 would be increased for the ACA population. This increase would be fully funded by the federal government and have *no impact* on the state general fund.

Contrary to OHA's statements that FamilyCare's prior proposal is inconsistent with CMS-approved rates, FamilyCare received confirmation from PricewaterhouseCoopers that the proposal is "consistent with the approved rate ranges" as required by CMS's February 24, 2016 letter to OHA. As such, FamilyCare's prior proposal would have allowed OHA to avoid a loss of over $500 million in matching federal funds.



825 NE Multnomah St., Suite 1400, Portland, OR 97232 | P: 503-222-2880 F: 503-345-5720 | www.familycareinc.org

FCI0200269



The same is true of FamilyCare's current proposal.  It proposes rates within the CMS-approved rate ranges and would allow OHA to obtain full federal funding to avoid the projected $500 million loss.  Additionally, the current proposal employs the exact same rate methodology adopted by OHA.

Under the current 2016 OHA rates, FamilyCare expects to incur a loss of $31.6 million.  The expected 2016 loss has been confirmed by Milliman, an independent actuarial firm. To FamilyCare's knowledge, no other CCO is projecting a loss for 2016, based on their OHA rates.

## Correcting the Record on OHA Statements

1. *FamilyCare is asking to be treated differently than other CCO's*. Contrary to OHA's statements, FamilyCare filed the lawsuit last year claiming that OHA was treating it differently in its rate setting process.  OHA's most recent (March 22) proposal acknowledges that the 2015 and 2016 reimbursement rates for FamilyCare were calculated using a flawed methodology.

2. *FamilyCare's proposals are inconsistent with CMS approved 2015 and 2016 rate methodologies*. Contrary to OHA's statements that FamilyCare's proposals are inconsistent with CMS-approved rates, FamilyCare received confirmation from PricewaterhouseCoopers that FamilyCare's proposals are "consistent with the approved rate ranges" as required by CMS's February 24, 2016 letter to OHA. As such, FamilyCare's proposals allow OHA to avoid a loss of over $500 million in matching federal funds.  OHA's most recent proposal agrees to accept FamilyCare's suggested revisions to its 2015 rates.  However, the new proposal does not include a revision to 2016 rates.  OHA previously indicated the rate methodology must be consistent for both years.

3. *CMS required OHA to redo the rate setting process for 2015.* Contrary to OHA's statements, CMS never rejected the original 2015 rates submitted by OHA.  They only submitted a lengthy list of questions.  OHA unilaterally decided to completely redo the rates and apply them retroactively.

4. *FamilyCare does not have a valid 2015 or 2016 contract in place.* Contrary to OHA's statements, FamilyCare has contracts for 2015 and 2016, both of which have been signed by OHA and FamilyCare.  OHA drafted the language for both contracts.

5. *FamilyCare's settlement proposals cannot be funded through federal dollars.* Our settlement proposals are revisions to the rates within the CMS approved rate ranges and add no cost to the state general fund. OHA has proposed a lump sum payment from the state general fund. FamilyCare is requesting a rate revision, consistent with the OHA rate methodology, not a lump sum payment.



825 NE Multnomah St., Suite 1400, Portland, OR 97232 | P: 503-222-2880 F: 503-345-5720 | www.familycareinc.org

FCI0200270



6.  *FamilyCare had a chance to review their rates with OHA.*  Contrary to OHA's statements, FamilyCare attended meetings.  However, information requested was not distributed, nor released.  This information was critical for FamilyCare to adequately understand how OHA was developing the rates.  Without this information, FamilyCare could not raise informed questions or challenges to the process.

7.  *The 2015 and 2016 rates are actuarially sound <u>for FamilyCare</u>*. The actuarial opinion certified by Optumas states clearly that the <u>rate ranges</u> for each region are actuarially sound, <u>but the rates for each CCO may not be actuarially sound</u>. Rates cannot be sound if they produce a prospective deficit. Under the current 2016 OHA rates, Milliman, an independent actuarial firm, predicts that FamilyCare will incur a loss of $31.6 million in 2016. To FamilyCare's knowledge, no other CCO is projecting a loss for 2016, based on their OHA rates.  Prior to 2015, rates were developed and certified as actuarially sound for each CCO at the individual level.  In the development of the 2015 rates, OHA and Optumas, changed the process to certify rates as actuarially sound only at the regional level, versus CCO level.  It's unclear why the process was changed in this manner.



Health Happens Here

825 NE Multnomah St., Suite 1400,  Portland, OR 97232  |  P: 503-222-2880 F: 503-345-5720  |  www.familycareinc.org

FCI0200271

Rates and FamilyCare – Frequently asked questions – March 2016

How is OHA trying to resolve the overpayment issue with FamilyCare?
The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

What is the role of CMS?

The Center for Medicare and Medicaid Services is the third party to Oregon's Medicaid contract with the federal government.

OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without an agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region. Despite the lack of contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Why didn't OHA accept the proposed solution that FamilyCare offered?

After analyzing FamilyCare's proposed solution, OHA concluded FamilyCare's proposed solution would:

- Be inconsistent with CMS approved 2015 and 2016 rate methodologies;
- Treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS; and
- Require addition taxpayer dollars to pay FamilyCare instead of benefiting some of Oregon's most vulnerable citizens-- Oregon Health Plan members.

How many CCOs have signed 2015 contract amendments?
To date, 15 of 16 CCOs have signed their 2015 rate amendments. Those rates were approved by CMS in December 2015. The February 2016 letter from CMS confirmed that FamilyCare does not have an approved contract for 2015 or 2016.

How many OHP members are enrolled in FamilyCare? What's their capacity?
Approximately 128,000 OHP members are enrolled in FamilyCare. They are approved to serve up to 240,000 members.

FCI0200272

**Has FamilyCare had a chance to review their rates with OHA?**

OHA remains committed to transparency and this was a priority during the 2015 rate redevelopment process. Individuals meetings were held with all the CCOs, including FamilyCare, to review the methodology and answer any questions.

**Why were rates redeveloped?**

In January 2015, eleven of Oregon's coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates were flawed.

In particular, the issues raised were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency. The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review.

**How did the lawsuit between OHA and FamilyCare develop?**

FamilyCare notified OHA that the 2015 rates were not actuarially sound and needed to be redeveloped by law March 2016, prior to seeing the revised 2015 rates. Their lawsuit was filed in May 2015. FamilyCare sued asking for the rates to be redeveloped, which OHA had begun at that time – and then completed in August 2015.

**How did OHA work with Oregon's CCOs to redevelop the rates?**

In March 2015, OHA convened Oregon's coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification.

At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates in April 2015, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 and beyond. OHA hired Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates, as well develop a methodology that could be applied to future rates.

OHA, coordinated care organizations, and Optumas developed the new methodology through a transparent, intensive process. This process included over 100 meetings between coordinated care organizations, OHA staff, and Optumas. Close coordination, partnership, and transparency with CCOs and their actuaries were key to this successful process. A revised rate methodology and certification for 2015 was completed in August and the same methodology is used for the 2016 rates.

**Did FamilyCare participate in the rate redevelopment meetings with CCOs?**

A representative from FamilyCare attended all group meetings. For 2015, FamilyCare attended five individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development. For 2016, FamilyCare attended three individual meetings and six group meetings,

FCI0200273

Ex. 14 - 2nd Simpson Decl.
Page 38 of 164

for a total of nine meetings.

**What is an overpayment?**
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

**Would the federal government cover the cost of a settlement?**
Funding for a settlement is not available through federal dollars.

FCI0200274

DRAFT

Attorney Client Privilege

(Insert reporter's name) / Oregon Legislators

Today the Oregon Health Authority provided a technical response to FamilyCare's latest proposal. As you know, this dispute is about the $55 million rate overpayment FamilyCare received in 2015 and FamilyCare's lack of CMS-approved contracts for 2015 and 2016.

At the most basic level, this disagreement has been driven by Family Care from the start. Family Care (and most other CCOs) objected to OHA's original 2015 rates and asked OHA to revise them to ensure that they were actuarially sound. While OHA was collaborating with FamilyCare and the other CCOs to develop revised 2015 rates, FamilyCare filed a legal suit challenging the original rates.  They demanded that revised rates be developed and retroactive to January 2015. As part of this process, Optumas – the independent actuarial firm setting the rates – determined that FamilyCare and five other CCOs were actually being overpaid, and that others were actually being underpaid. Even though all of the 15 other CCOs have resolved their 2015 contract rate amendment -- including returning all applicable overpayments, Family Care is continuing to demand special treatment. FamilyCare refuses to return its overpayment and continues to contest the 2015 redeveloped rates created through the collaborative and transparent process they demanded.

While we are disappointed FamilyCare rejected OHA's most recent offer, we remain hopeful we can find agreement. Both sides have an interest in a clear, timely resolution. OHA has participated in mediation and negotiation with Family Care for over a year now.  OHA is committed to ending this dispute, despite FamilyCare's combative tone and rhetoric.

With all of this in mind, OHA wants to clarify the key issues and correct some of the statements Family Care has made recently:

- **FamilyCare is not entitled to keep the $55 million in 2015 rate overpayment**: FamilyCare's rates are paid for through state dollars paid by taxpayers, and federal matching funds – i.e., FamilyCare is negotiating to keep public dollars they received in the form of an overpayment. The overpayment was a direct result of a rate redevelopment process FamilyCare and other CCOs initiated in 2015. *In that process, Optumas determined that FamilyCare had enjoyed significant but inflated profits and had failed to deliver medical services meeting minimal medical loss ratio requirements*.  Until the overpayment issue is resolved, FamilyCare does not have a CMS-approved contract for 2016, according to CMS.
- **FamilyCare is not entitled to receive a rate of its own choosing within the CMS-approved rate range for Oregon**: FamilyCare and the other CCOs were assigned rates Optumas developed based on the health risks of each CCO's member population. While FamilyCare contends they should receive 100 percent of the approved range, OHA is obligated to pay CCOs within CMS-approved parameters:

FCI0200275

- o The rates must be actuarially sound for each CCO, according to Optumas.
- o The rates one CCO receives cannot be inequitable in relation to rates paid to other CCOs in the range, otherwise all rates would have to be revised upward. Upward revision to the rates of multiple CCOs jeopardizes OHA's waiver agreement with CMS to stay within a 3.4 percent growth limit.

- **OHA's proposed rates are actuarially sound and do not jeopardize the financial health of any CCOs:** The health and well-being of OHP members depends on the financial strength and stability of the CCOs that serve them. As partners in health care transformation, OHA is committed to the success of all of Oregon's CCOs -- however, we want our CCO partners to be financially sound so they can serve OHP members, not maximize their profit margins. There is no external evidence that FamilyCare's operations are unsustainable, or that Family Care is financially unable to return its overpayment:
  - o In 2014, Family Care's operating margin was greater than 20 percent, by far the highest margin of any CCO (see attached chart).
  - o Through the first nine months of 2015, Family Care's operating margin was approximately 5 percent.
  - o No other CCOs have reported operating deficits under the current CMS-approved rates.
  - o All other CCOs have paid back their 2015 rate overpayments.

  OHA and Optumas are responsible for paying CCOs appropriate rates approved by CMS. *Oregon and its actuaries are not responsible for business decisions CCOs make that affect their operating margin: e.g., provider contracts, operating expenses (including staff compensation and benefits) and other costs.*

- **Family Care's offer to return a portion of its rate overpayment in exchange for federally-funded enhanced rates puts federal funding for Oregon's Medicaid program at risk**: FamilyCare has publicized its offer to repay $47.3 million of its 2015 rate overpayment, in exchange for receiving enhanced rates in 2015 and 2016 for the expanded population eligible for coverage under the ACA. While FamilyCare is correct in stating their enriched rates would not have an impact on the state general fund (since the expansion population is currently paid for 100 percent through federal dollars), FamilyCare's windfall risks pushing Oregon's Medicaid expenses past the 3.4 percent CMS-allowed growth rate, since OHA would be obligated to treat all other CCOs equitably and enrich their rates as well. Exceeding the 3.4 percent growth limit would put federal participation in OHP funding at risk.

If we can't reach an agreement, FamilyCare will be in breach of contract with the state. As we move forward, it is OHA's responsibility to resolve this dispute in a way that protects coverage and benefits for OHP members, maintains federal participation in Oregon's Medicaid program and provides equitable treatment for all CCOs. While we continue to press for a settlement, we can't compromise these principles or allow this process to drag out indefinitely.

FCI0200276

Please let me know if you have questions. If you'd like, I'd be happy to set up a time for you to talk more with Lynne Saxton, OHA Director or Lori Coyner (our state Medicaid director) if you'd like clarification on any of these issues.

FCI0200277

| From: | Darby BethAnne |
|---|---|
| To: | Crowell Courtney W |
| Cc: | WAHL Jeffrey |
| Subject: | FC: Atty / Client Privilege |
| Date: | Monday, January 09, 2017 2:26:00 PM |
| Attachments: | Re FamilyCare v. OHA Mediation Strategy.msg |
| | 20161230 Dispute Resolution Agreement (fully executed).pdf |
| | CCO Margin Comparison.pdf |
| | TriCounty Summary Final.xlsx |
| | TriCounty Summary Final.pdf |

For use preparing the comms plan... thanks!

**BethAnne Darby**
Director, External Relations Division
OREGON HEALTH AUTHORITY
BethAnne.Darby@state.or.us
503-798-7100
www.oregon.gov/OHA

FCI0200278

| From: | Darby BethAnne |
|---|---|
| To: | Crowell Courtney W |
| Cc: | Cowie Robb |
| Subject: | FW: slide deck |
| Date: | Tuesday, January 17, 2017 2:11:00 PM |
| Attachments: | Deck for FCI-OHA Meeting v 3.pptx |
| | ATT00001.htm |

FYI --- Thoughts on an eta for a comms plan for FC?  Thanks,

**BethAnne Darby**
Director, External Relations Division
OREGON HEALTH AUTHORITY
BethAnne.Darby@state.or.us
503-798-7100
www.oregon.gov/OHA

**Assistant: MiKayla Marcott (MiKayla.Marcott@state.or.us)**

**From:** Saxton Lynne
**Sent:** Tuesday, January 17, 2017 11:23 AM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>
**Cc:** Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>
**Subject:** Fwd: slide deck

BethAnne - here is the slide deck for today's dispute resolution process. First, this is a good heads up about the sophistication of their communication. Second, this will be helpful to us in developing our communication strategy and timeline. Please let us know when you would like to schedule discussion of our strategy. Mark, Lori, Zach and Jeff Wahl should be include in the first discussion and Ted and Renee after we have reviewed a draft internally. Thank you.

Sent from my iPad

Begin forwarded message:

> **From:** Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>
> **Date:** January 17, 2017 at 11:15:12 AM PST
> **To:** Saxton Lynne <LYNNE.SAXTON@dhsoha.state.or.us>
> **Subject: Fwd: slide deck**
>
> Of interest and still in session but will call around noonish
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> > **From:** "Fairbanks Mark R"
> > <MARK.R.FAIRBANKS@dhsoha.state.or.us>
> > **To:** "GUEST Chelsea A" <Chelsea.A.GUEST@dhsoha.state.or.us>,
> > "Fritsche Jeffrey P" <JEFFREY.P.FRITSCHE@dhsoha.state.or.us>,

FCI0200279

| | |
|---|---|
| **From:** | Crowell Courtney W |
| **To:** | Darby BethAnne |
| **Cc:** | WAHL Jeffrey |
| **Subject:** | Attorney-Client privilege: Family Care Comms Plan |
| **Date:** | Friday, January 20, 2017 2:54:02 PM |
| **Attachments:** | Family Care Comms Plan.docx |

BethAnne,

Here is a first draft of the Family Care communications plan. I don't really know the timeline so this is focused more on the near term. Let me know if you want to talk more about this or have suggestions on how to improve.

Thanks,
Courtney

**Courtney Warner Crowell**
*Communications Officer*
External Relations Division
Portland, Oregon
Courtney.w.crowell@state.or.us
cell: 971-712-6503



CONFIDENTIALITY NOTICE
This email may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this email in error, please advise me immediately by reply email, keep the contents confidential, and immediately delete the message and any attachments from your system.

FCI0200280

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



## Background/Situation Analysis:

OHA is seeking to successfully resolve a second rate and contract dispute with Family Care. This is the second year in which Family Care has disputed their rate and requested dispute resolution and possible settlement.  This is also an opportunity to showcase OHA's transparency, the actuarial soundness of the CCO rates, the success of the CCO model both on health outcomes and financial soundness and commitment to Oregon's most vulnerable residents.

This is also a chance to showcase Family Care as an outlier in the CCO system that is more concerned with the bottom line and increasing revenues than the health of Oregonians (OHA's mission). Also a chance to show the patterned behavior of moving to litigation when they don't get the rate they want, instead of modifying budget to work within the cost containment measures that OHA has negotiated with CMS.

## Time Frame of Plan:

January 2017-?

## Goals:

- **Showcase OHA's mission is to help Oregon Health Plan members**
- **Highlight FamilyCare as an outlier and only worried about profit margins**
- **Immediately counter Family Care's misinformation:** Correct allegations and distortions as soon as they are issued by Family Care through prompt, informal communication with key media.

## Strategies:

While pitching reporters on the Q3 Legislative report alert them (off the record) to Family Care dispute and showcase the financial section of report (particularly the cash and investments page).

- Jeff Manning- The Oregonian
- Nigel Jaquiss- Willamette Week
- Nick Budnick- Portland Tribune

Work with Janell and Kate to have data prepared and ready to provide to reporters about Family Care financial information (if asked).

Op-ed to Lund Report from Lynne focused on Q3 leg report that talks about the success of the CCOs and showcases the 3.4% cost containment and the financial strength of the CCOs. Include graph that shows cash and investments from 2014-mid 2016 (Family Care numbers are huge compared to everyone else).

1

FCI0200281

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



## Audiences:

| Audience | Values/Concerns at Play | Communication Objectives and Messaging | Pathways and Tools | Messengers or Information |
|---|---|---|---|---|
| Legislators | Transparency Political implications | Showcase success of CCOs and position Family Care as outlier | Earned Media | OHA Leadership |
| CCOs | Stability of the system. Equity among CCOs. Predictability in rate-setting. | Transparency around dispute resolution. | CCO Bulletin Calls Meetings | OHA Leadership |
| Health Care opinion leaders | Better outcomes and lower costs in health care. OHA's effectiveness in leading health system transformation in OR. | Showcase success of CCO system and position Family Care as outlier. | Earned Media | OHA leadership |
| | | | | |
| | | | | |

## Timeline and Tactics:

**Jan and Early Feb**
Work with Kath Nass and Janell Evans to have data prepped and ready to provide to reporters about Family Care financial info

**Week of January 23rd-**
While pitching reporters on the Q3 Legislative report alert them (off the record) to Family Care dispute and showcase the financial section of report (particularly the cash and investments page).
- Jeff Manning- The Oregonian
- Nigel Jaquiss- Willamette Week
- Nick Budnick- Portland Tribune

**January 31st**
Op-ed from Lynne in Lund Report

## Products and Deliverables:
Data prepped and ready
Op-ed from Lynne for Lund Report

2

FCI0200282

Ex. 14 - 2nd Simpson Decl.
Page 47 of 164

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



## Metrics:

- Legislators are comfortable with OHA's efforts to settle dispute – based on the number and tenor of calls we receive from legislators.
- Earned media on financial strength of Family Care and its focus on profits.
- Media reports correct Family Care misinformation.
- CCOs are comfortable and informed – based on informal feedback in phone calls/emails.
- Members report little anxiety or disruption – based on a significant increase in calls to Member Services.

3

FCI0200283

| From: | Darby BethAnne |
|---|---|
| To: | Crowell Courtney W |
| Cc: | WAHL Jeffrey |
| Subject: | RE: Attorney-Client privilege: Family Care Comms Plan |
| Date: | Friday, January 20, 2017 5:52:00 PM |
| Attachments: | Fwd slide deck.msg |

JEFF --- IS there a calendar for the discussion? I mean do we know when you discuss which subjects? That might help us plan our communications...

HI Courtney –

I think we are talking about a session-long strategy (through May or so). The Legislature will be a key audience, and the goal will be to ensure that they have enough information that they want to stay out of the dispute both through legislation and committee hearings--- we should assume that FC will be trying to pull them in and will have an active lobbying strategy that will focus on that OHA is targeting them based on the last settlement... I think I sent you a the presentation they put together for the dispute resolution process that will give you the themes.

Our goal will be to create enough information buzz that it causes the legislature to question what FC is trying to sell.. Last cycle, FC was able to build a great deal of legislative empathy and thus pressure on that agency, until we started communicating our own perspective.

We should consider that our comms strategy needs an "in-the-builidng" strategy as well as an external comms strategy...

**BethAnne Darby**
Director, External Relations Division
OREGON HEALTH AUTHORITY
BethAnne.Darby@state.or.us
503-798-7100
www.oregon.gov/OHA

*Assistant: MiKayla Marcott (MiKayla.Marcott@state.or.us)*

**From:** Crowell Courtney W
**Sent:** Friday, January 20, 2017 2:54 PM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>
**Cc:** WAHL Jeffrey <Jeffrey.WAHL@doj.state.or.us>
**Subject:** Attorney-Client privilege: Family Care Comms Plan

BethAnne,

Here is a first draft of the Family Care communications plan. I don't really know the timeline so this is focused more on the near term. Let me know if you want to talk more about this or have suggestions on how to improve.

FCI0200284

Thanks,
Courtney

**Courtney Warner Crowell**
*Communications Officer*
External Relations Division
Portland, Oregon
Courtney.w.crowell@state.or.us
cell: 971-712-6503



CONFIDENTIALITY NOTICE
This email may contain information that is privileged, confidential, or otherwise exempt from
disclosure under applicable law. If you are not the addressee or it appears from the context or
otherwise that you have received this email in error, please advise me immediately by reply email,
keep the contents confidential, and immediately delete the message and any attachments from
your system.

FCI0200285

| From: | Wahl Jeffrey |
|-------|-------------|
| To: | Darby BethAnne; Crowell Courtney W |
| Subject: | RE: Attorney-Client privilege: Family Care Comms Plan |
| Date: | Monday, January 23, 2017 8:44:59 AM |

The next meeting that is scheduled with FC is Feb 6. Nothing has been scheduled after that but there is likely to be at least one more meeting. Then there is the possibility of mediation after that.

**Jeff Wahl**

Oregon Department of Justice

503.947.4432    Fax:  503.378.3784

OHA/DHS Office:  503.945.7668 (M-Th a.m)

**From:** Darby BethAnne [mailto:BETHANNE.DARBY@dhsoha.state.or.us]
**Sent:** Friday, January 20, 2017 5:52 PM
**To:** Crowell Courtney W
**Cc:** Wahl Jeffrey
**Subject:** RE: Attorney-Client privilege: Family Care Comms Plan

JEFF --- IS there a calendar for the discussion? I mean do we know when you discuss which subjects? That might help us plan our communications...

HI Courtney –

I think we are talking about a session-long strategy (through May or so).  The Legislature will be a key audience, and the goal will be to ensure that they have enough information that they want to stay out of the dispute both through legislation and committee hearings--- we should assume that FC will be trying to pull them in and will have an active lobbying strategy that will focus on that OHA is targeting them based on the last settlement... I think I sent you a the presentation they put together for the dispute resolution process that will give you the themes.

Our goal will be to create enough information buzz that it causes the legislature to question what FC is trying to sell.. Last cycle, FC was able to build a great deal of legislative empathy and thus pressure on that agency, until we started communicating our own perspective.

We should consider that our comms strategy needs an "in-the-builidng" strategy as well as an external comms strategy...

**BethAnne Darby**
Director, External Relations Division
OREGON HEALTH AUTHORITY
BethAnne.Darby@state.or.us
503-798-7100
www.oregon.gov/OHA

*Assistant: MiKayla Marcott (MiKayla.Marcott@state.or.us)*

FCI0200286

**From:** Crowell Courtney W
**Sent:** Friday, January 20, 2017 2:54 PM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>
**Cc:** WAHL Jeffrey <Jeffrey.WAHL@doj.state.or.us>
**Subject:** Attorney-Client privilege: Family Care Comms Plan

BethAnne,

Here is a first draft of the Family Care communications plan. I don't really know the timeline so this is focused more on the near term. Let me know if you want to talk more about this or have suggestions on how to improve.

Thanks,
Courtney

**Courtney Warner Crowell**
*Communications Officer*
External Relations Division
Portland, Oregon
Courtney.w.crowell@state.or.us
cell: 971-712-6503



CONFIDENTIALITY NOTICE
This email may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this email in error, please advise me immediately by reply email, keep the contents confidential, and immediately delete the message and any attachments from your system.

FCI0200287

| | |
|---|---|
| **From:** | Crowell Courtney W |
| **To:** | WAHL Jeffrey; Darby BethAnne; Cowie Robb |
| **Subject:** | RE: Attorney-Client privilege: Family Care Comms Plan |
| **Date:** | Thursday, January 26, 2017 10:40:00 AM |
| **Attachments:** | Family Care Comms Plan.docx |

Here's an updated draft.

Thanks,
Courtney

**Courtney Warner Crowell**
*Communications Officer*
External Relations Division
Portland, Oregon
Courtney.w.crowell@state.or.us
cell: 971-712-6503



CONFIDENTIALITY NOTICE
This email may contain information that is privileged, confidential, or otherwise exempt from
disclosure under applicable law. If you are not the addressee or it appears from the context or
otherwise that you have received this email in error, please advise me immediately by reply email,
keep the contents confidential, and immediately delete the message and any attachments from
your system.

**From:** Wahl Jeffrey [mailto:jeffrey.wahl@doj.state.or.us]
**Sent:** Monday, January 23, 2017 8:45 AM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>; Crowell Courtney W
<COURTNEY.W.CROWELL@dhsoha.state.or.us>
**Subject:** RE: Attorney-Client privilege: Family Care Comms Plan

The next meeting that is scheduled with FC is Feb 6. Nothing has been scheduled after that but there
is likely to be at least one more meeting. Then there is the possibility of mediation after that.

Jeff Wahl
Oregon Department of Justice

503.947.4432   Fax: 503.378.3784
OHA/DHS Office: 503.945.7668 (M-Th a.m)

FCI0200288

**From:** Darby BethAnne [mailto:BETHANNE.DARBY@dhsoha.state.or.us]
**Sent:** Friday, January 20, 2017 5:52 PM
**To:** Crowell Courtney W
**Cc:** Wahl Jeffrey
**Subject:** RE: Attorney-Client privilege: Family Care Comms Plan

JEFF --- IS there a calendar for the discussion? I mean do we know when you discuss which subjects? That might help us plan our communications...

HI Courtney –

I think we are talking about a session-long strategy (through May or so). The Legislature will be a key audience, and the goal will be to ensure that they have enough information that they want to stay out of the dispute both through legislation and committee hearings--- we should assume that FC will be trying to pull them in and will have an active lobbying strategy that will focus on that OHA is targeting them based on the last settlement... I think I sent you a the presentation they put together for the dispute resolution process that will give you the themes.

Our goal will be to create enough information buzz that it causes the legislature to question what FC is trying to sell.. Last cycle, FC was able to build a great deal of legislative empathy and thus pressure on that agency, until we started communicating our own perspective.

We should consider that our comms strategy needs an "in-the-builidng" strategy as well as an external comms strategy...

**BethAnne Darby**
Director, External Relations Division
OREGON HEALTH AUTHORITY
BethAnne.Darby@state.or.us
503-798-7100
www.oregon.gov/OHA

*Assistant: MiKayla Marcott (MiKayla.Marcott@state.or.us)*

---

**From:** Crowell Courtney W
**Sent:** Friday, January 20, 2017 2:54 PM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>
**Cc:** WAHL Jeffrey <Jeffrey.WAHL@doj.state.or.us>
**Subject:** Attorney-Client privilege: Family Care Comms Plan

BethAnne,

Here is a first draft of the Family Care communications plan. I don't really know the timeline so this is focused more on the near term. Let me know if you want to talk more about this or have suggestions on how to improve.

FCI0200289

Thanks,
Courtney

**Courtney Warner Crowell**
*Communications Officer*
External Relations Division
Portland, Oregon
Courtney.w.crowell@state.or.us
cell: 971-712-6503



CONFIDENTIALITY NOTICE
This email may contain information that is privileged, confidential, or otherwise exempt from
disclosure under applicable law. If you are not the addressee or it appears from the context or
otherwise that you have received this email in error, please advise me immediately by reply email,
keep the contents confidential, and immediately delete the message and any attachments from
your system.

FCI0200290

| | |
|---|---|
| **From:** | Darby BethAnne |
| **To:** | Saxton Lynne; Crowell Courtney W; Cowie Robb |
| **Cc:** | WAHL Jeffrey |
| **Subject:** | FW: Attorney-Client privilege: Family Care Comms Plan |
| **Date:** | Thursday, January 26, 2017 11:03:00 AM |
| **Attachments:** | Family Care Comms Plan.docx |

Lynne --- Please review the attached draft. Courtney conferred with Janell, Kate and Jeff Fritsche in building it out. She also use the slides that FC presented at the last session, as well as the materials from last cycle.

Thanks,

BethAnne

**From:** Crowell Courtney W
**Sent:** Thursday, January 26, 2017 10:40 AM
**To:** WAHL Jeffrey <Jeffrey.WAHL@doj.state.or.us>; Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>; Cowie Robb <ROBB.COWIE@dhsoha.state.or.us>
**Subject:** RE: Attorney-Client privilege: Family Care Comms Plan

Here's an updated draft.

Thanks,
Courtney

**Courtney Warner Crowell**
*Communications Officer*
External Relations Division
Portland, Oregon
Courtney.w.crowell@state.or.us
cell: 971-712-6503



CONFIDENTIALITY NOTICE
This email may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this email in error, please advise me immediately by reply email, keep the contents confidential, and immediately delete the message and any attachments from your system.

**From:** Wahl Jeffrey [mailto:jeffrey.wahl@doj.state.or.us]

FCI0200291

**Sent:** Monday, January 23, 2017 8:45 AM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>; Crowell Courtney W <COURTNEY.W.CROWELL@dhsoha.state.or.us>
**Subject:** RE: Attorney-Client privilege: Family Care Comms Plan

The next meeting that is scheduled with FC is Feb 6. Nothing has been scheduled after that but there is likely to be at least one more meeting. Then there is the possibility of mediation after that.

Jeff Wahl
Oregon Department of Justice

503.947.4432    Fax:  503.378.3784
OHA/DHS Office:  503.945.7668 (M-Th a.m)

---

**From:** Darby BethAnne [mailto:BETHANNE.DARBY@dhsoha.state.or.us]
**Sent:** Friday, January 20, 2017 5:52 PM
**To:** Crowell Courtney W
**Cc:** Wahl Jeffrey
**Subject:** RE: Attorney-Client privilege: Family Care Comms Plan

JEFF --- IS there a calendar for the discussion? I mean do we know when you discuss which subjects? That might help us plan our communications…

HI Courtney –

I think we are talking about a session-long strategy (through May or so).  The Legislature will be a key audience, and the goal will be to ensure that they have enough information that they want to stay out of the dispute both through legislation and committee hearings--- we should assume that FC will be trying to pull them in and will have an active lobbying strategy that will focus on that OHA is targeting them based on the last settlement… I think I sent you a the presentation they put together for the dispute resolution process that will give you the themes.

Our goal will be to create enough information buzz that it causes the legislature to question what FC is trying to sell.. Last cycle, FC was able to build a great deal of legislative empathy and thus pressure on that agency, until we started communicating our own perspective.

We should consider that our comms strategy needs an "in-the-builidng" strategy as well as an external comms strategy…

**BethAnne Darby**
Director, External Relations Division
OREGON HEALTH AUTHORITY
BethAnne.Darby@state.or.us
503-798-7100
www.oregon.gov/OHA

FCI0200292

*Assistant: MiKayla Marcott (MiKayla.Marcott@state.or.us)*

**From:** Crowell Courtney W
**Sent:** Friday, January 20, 2017 2:54 PM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>
**Cc:** WAHL Jeffrey <Jeffrey.WAHL@doj.state.or.us>
**Subject:** Attorney-Client privilege: Family Care Comms Plan

BethAnne,

Here is a first draft of the Family Care communications plan. I don't really know the timeline so this is focused more on the near term. Let me know if you want to talk more about this or have suggestions on how to improve.

Thanks,
Courtney

**Courtney Warner Crowell**
*Communications Officer*
External Relations Division
Portland, Oregon
Courtney.w.crowell@state.or.us
cell: 971-712-6503



CONFIDENTIALITY NOTICE
This email may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this email in error, please advise me immediately by reply email, keep the contents confidential, and immediately delete the message and any attachments from your system.

FCI0200293

| From: | Saxton Lynne |
|---|---|
| To: | Darby BethAnne; Marcott Mikayla |
| Cc: | Crowell Courtney W; Cowie Robb; WAHL Jeffrey |
| Subject: | Re: Attorney-Client privilege: Family Care Comms Plan |
| Date: | Saturday, February 18, 2017 3:19:29 PM |

Hi all - I had the chance to review this on the plane. There are some new developments that I think will build on the already good start you have outlined. Please have Mikayla convene us for a conversation. It does not need to be the coming week. Please embed this attachment in the invite, Mikayla. Thank you!

Sent from my iPad

On Jan 26, 2017, at 11:03 AM, Darby BethAnne
<BETHANNE.DARBY@dhsoha.state.or.us> wrote:

> Lynne --- Please review the attached draft. Courtney conferred with Janell, Kate and Jeff Fritsche in building it out. She also use the slides that FC presented at the last session, as well as the materials from last cycle.
>
> Thanks,
>
> BethAnne
>
> ---
>
> **From:** Crowell Courtney W
> **Sent:** Thursday, January 26, 2017 10:40 AM
> **To:** WAHL Jeffrey <Jeffrey.WAHL@doj.state.or.us>; Darby BethAnne
> <BETHANNE.DARBY@dhsoha.state.or.us>; Cowie Robb
> <ROBB.COWIE@dhsoha.state.or.us>
> **Subject:** RE: Attorney-Client privilege: Family Care Comms Plan
>
> Here's an updated draft.
>
> Thanks,
> Courtney
>
> **Courtney Warner Crowell**
> *Communications Officer*
> External Relations Division
> Portland, Oregon
> Courtney.w.crowell@state.or.us
> cell: 971-712-6503
>
> <image002.jpg>

FCI0200294

CONFIDENTIALITY NOTICE
This email may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this email in error, please advise me immediately by reply email, keep the contents confidential, and immediately delete the message and any attachments from your system.

---

**From:** Wahl Jeffrey [mailto:jeffrey.wahl@doj.state.or.us]
**Sent:** Monday, January 23, 2017 8:45 AM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>; Crowell Courtney W <COURTNEY.W.CROWELL@dhsoha.state.or.us>
**Subject:** RE: Attorney-Client privilege: Family Care Comms Plan

The next meeting that is scheduled with FC is Feb 6. Nothing has been scheduled after that but there is likely to be at least one more meeting. Then there is the possibility of mediation after that.

Jeff Wahl
Oregon Department of Justice

503.947.4432   Fax: 503.378.3784
OHA/DHS Office: 503.945.7668 (M-Th a.m)

---

**From:** Darby BethAnne [mailto:BETHANNE.DARBY@dhsoha.state.or.us]
**Sent:** Friday, January 20, 2017 5:52 PM
**To:** Crowell Courtney W
**Cc:** Wahl Jeffrey
**Subject:** RE: Attorney-Client privilege: Family Care Comms Plan

JEFF --- IS there a calendar for the discussion? I mean do we know when you discuss which subjects? That might help us plan our communications...

HI Courtney –

I think we are talking about a session-long strategy (through May or so). The Legislature will be a key audience, and the goal will be to ensure that they have enough information that they want to stay out of the dispute both through legislation and committee hearings--- we should assume that FC will be trying to pull them in and will have an active lobbying strategy that will focus on that OHA is targeting them based on the last settlement... I think I sent you a the presentation they put together for the dispute resolution process that will give you the themes.

Our goal will be to create enough information buzz that it causes the legislature to question what FC is trying to sell.. Last cycle, FC was able to build a great deal of legislative empathy and thus pressure on that agency, until we started communicating our own perspective.

FCI0200295

We should consider that our comms strategy needs an "in-the-builidng" strategy as well as an external comms strategy...

**BethAnne Darby**
Director, External Relations Division
OREGON HEALTH AUTHORITY
BethAnne.Darby@state.or.us
503-798-7100
www.oregon.gov/OHA

*Assistant: MiKayla Marcott (MiKayla.Marcott@state.or.us)*

**From:** Crowell Courtney W
**Sent:** Friday, January 20, 2017 2:54 PM
**To:** Darby BethAnne <BETHANNE.DARBY@dhsoha.state.or.us>
**Cc:** WAHL Jeffrey <Jeffrey.WAHL@doj.state.or.us>
**Subject:** Attorney-Client privilege: Family Care Comms Plan

BethAnne,

Here is a first draft of the Family Care communications plan. I don't really know the timeline so this is focused more on the near term. Let me know if you want to talk more about this or have suggestions on how to improve.

Thanks,
Courtney

**Courtney Warner Crowell**
*Communications Officer*
External Relations Division
Portland, Oregon
Courtney.w.crowell@state.or.us
cell: 971-712-6503

<image004.jpg>

CONFIDENTIALITY NOTICE
This email may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this email in error, please advise me immediately by reply email, keep the contents confidential, and immediately delete the message and any attachments from your system.

FCI0200296

Ex. 14 - 2nd Simpson Decl.
Page 61 of 164

<Family Care Comms Plan.docx>

**Oregon Health Authority proposes resolution to 2015 rate dispute**

The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

OHA has also provided FamilyCare a notice of breach of contract in the event the two sides are unable to reach an agreement. OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without a CMS-approved agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region or to receive federal funding for those services. Despite the lack of CMS-approved contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Lynne Saxton, director of the Oregon Health Authority said, "This is a reasonable solution that allows FamilyCare and OHA to move forward and focus on serving members Oregon Health Plan members."

**Federal government calls for sound FamilyCare rates**

At the request of Oregon's coordinated care organizations and with the approval of the Centers for Medicare and Medicaid Services (CMS), OHA redeveloped the 2015 rate methodology and in August 2015 issued revised rates. Based on those rates, FamilyCare was liable to return more than $55 million in overpayments. All other 15 CCOs have signed the 2015 contracts with revised rates based on the new rate-setting methods. Family Care is the only CCO that has not reimbursed, or began a plan to reimburse, the state and federal government for its 2015 overpayment.

OHA, in consultation with CMS, has been attempting to resolve this matter with FamilyCare. In late February, CMS issued a letter calling for the state to finalize its 2015 contract with FamilyCare based on the new rate methodology, certification and rates. If FamilyCare doesn't sign a 2015 contract with CMS approved rates, the state will be liable for repayment of federal funds already paid to FamilyCare.

 "We have a responsibility to protect the health and well-being of Oregon's most vulnerable citizens --- Oregon Health Plan members," said Lynne Saxton, director of the Oregon Health Authority. "OHA's proposal is in line with the expectations of Oregon's federal partners, as well

FCI0200298

as the long-term financial sustainability of our health care system.  Now it's time to move forward and prevent any further worry or disruption for OHP members."

Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds. Funding for a settlement is not available through federal dollars.

###

FCI0200299



# Rates and FamilyCare – Frequently asked questions

## Updated March 18, 2016

How is OHA trying to resolve the overpayment issue with FamilyCare?
The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

What is the role of CMS?

The Center for Medicare and Medicaid Services is the third party to Oregon's Medicaid contract with the federal government. Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds.

OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without an agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region. Despite the lack of contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Why didn't OHA accept the proposed solution that FamilyCare offered?

After analyzing FamilyCare's proposed solution, OHA concluded FamilyCare's proposed solution would:

- Be inconsistent with CMS approved 2015 and 2016 rate methodologies;
- Treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS; and
- Require addition taxpayer dollars to pay FamilyCare instead of benefiting some of Oregon's most vulnerable citizens-- Oregon Health Plan members.

DATE
Page **1** of **3**

FCI0200300

Ex. 14 - 2nd Simpson Decl.
Page 65 of 164



How many CCOs have signed 2015 contract amendments?
To date, 15 of 16 CCOs have signed their 2015 rate amendments. Those rates were approved by CMS in December 2015. The February 2016 letter from CMS confirmed that FamilyCare does not have an approved contract for 2015 or 2016.

How many OHP members are enrolled in FamilyCare? What's their capacity?
Approximately 128,000 OHP members are enrolled in FamilyCare. They are approved to serve up to 240,000 members.

Has FamilyCare had a chance to review their rates with OHA?
OHA remains committed to transparency and this was a priority during the 2015 rate redevelopment process. Individuals meetings were held with all the CCOs, including FamilyCare, to review the methodology and answer any questions.

Why were rates redeveloped?
In January 2015, eleven of Oregon's coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates were flawed.

In particular, the issues raised were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency. The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review.

How long will OHA use the same rate methodology?
Now that OHA knows that it has an actuarially sound rate methodology, it will continue to use the same methodology for the foreseeable future as the foundation for future rates. This methodology is consistent with CMS's proposed guidelines. OHA used the redeveloped 2015 rate methodology to determine 2016 rates and will use it again for 2017 rates. By statute, all CCOs (including FamilyCare) have 60 days to review and negotiate proposed rates prior to signing the annual contract rate amendment. Oregon's waiver requires that rates stay within 3.4% sustainable rate of growth.

How did the lawsuit between OHA and FamilyCare develop?
FamilyCare notified OHA that the 2015 rates were not actuarially sound and needed to be redeveloped by law March 2016, prior to seeing the revised 2015 rates. Their lawsuit was filed in May 2015. FamilyCare sued asking for the rates to be redeveloped, which OHA had begun at that time – and then completed in August 2015.

How did OHA work with Oregon's CCOs to redevelop the rates?
In March 2015, OHA convened Oregon's coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification.

DATE
Page **2** of **3**

FCI0200301



At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates in April 2015, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 and beyond. OHA hired Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates, as well develop a methodology that could be applied to future rates.

OHA, coordinated care organizations, and Optumas developed the new methodology through a transparent, intensive process. This process included over 100 meetings between coordinated care organizations, OHA staff, and Optumas. Close coordination, partnership, and transparency with CCOs and their actuaries were key to this successful process. A revised rate methodology and certification for 2015 was completed in August and the same methodology is used for the 2016 rates.

Did FamilyCare participate in the rate redevelopment meetings with CCOs?
A representative from FamilyCare attended all group meetings. For 2015, FamilyCare attended five individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended three individual meetings and six group meetings, for a total of nine meetings.

What is an overpayment?
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA Contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

Would the federal government cover the cost of a settlement?
Funding for a settlement is not available through federal dollars.

DATE
Page **3** of **3**

FCI0200302



# Rates and FamilyCare – Frequently asked questions

# Updated March 18, 2016

How is OHA trying to resolve the overpayment issue with FamilyCare?
The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

What is the role of CMS?

The Center for Medicare and Medicaid Services is the third party to Oregon's Medicaid contract with the federal government. Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds.

OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without an agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region. Despite the lack of contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Why didn't OHA accept the proposed solution that FamilyCare offered?

After analyzing FamilyCare's proposed solution, OHA concluded FamilyCare's proposed solution would:

- Be inconsistent with CMS approved 2015 and 2016 rate methodologies;
- Treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS; and
- Require addition taxpayer dollars to pay FamilyCare instead of benefiting some of Oregon's most vulnerable citizens-- Oregon Health Plan members.

FCI0200303



### How many CCOs have signed 2015 contract amendments?

To date, 15 of 16 CCOs have signed their 2015 rate amendments. Those rates were approved by CMS in December 2015. The February 2016 letter from CMS confirmed that FamilyCare does not have an approved contract for 2015 or 2016.

### How many OHP members are enrolled in FamilyCare? What's their capacity?

Approximately 128,000 OHP members are enrolled in FamilyCare. They are approved to serve up to 240,000 members.

### Has FamilyCare had a chance to review their rates with OHA?

OHA remains committed to transparency and this was a priority during the 2015 rate redevelopment process. Individuals meetings were held with all the CCOs, including FamilyCare, to review the methodology and answer any questions.

### Why were rates redeveloped?

In January 2015, eleven of Oregon's coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates were flawed.

In particular, the issues raised were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency.  The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review.

### How long will OHA use the same rate methodology?

Now that OHA knows that it has an actuarially sound rate methodology, it will continue to use the same methodology for the foreseeable future as the foundation for future rates.  This methodology is consistent with CMS's proposed guidelines.  OHA used the redeveloped 2015 rate methodology to determine 2016 rates and will use it again for 2017 rates.  By statute, all CCOs (including FamilyCare) have 60 days to review and negotiate proposed rates prior to signing the annual contract rate amendment. Oregon's waiver requires that rates stay within 3.4% sustainable rate of growth.

### How did the lawsuit between OHA and FamilyCare develop?

FamilyCare notified OHA that the 2015 rates were not actuarially sound and needed to be redeveloped by law March 2016, prior to seeing the revised 2015 rates. Their lawsuit was filed in May 2015. FamilyCare sued asking for the rates to be redeveloped, which OHA had begun at that time – and then completed in August 2015.

### How did OHA work with Oregon's CCOs to redevelop the rates?

In March 2015, OHA convened Oregon's coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification.

March 18, 2016
Page **2** of **3**

FCI0200304



At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates in April 2015, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 and beyond. OHA hired Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates, as well develop a methodology that could be applied to future rates.

OHA, coordinated care organizations, and Optumas developed the new methodology through a transparent, intensive process. This process included over 100 meetings between coordinated care organizations, OHA staff, and Optumas. Close coordination, partnership, and transparency with CCOs and their actuaries were key to this successful process. A revised rate methodology and certification for 2015 was completed in August and the same methodology is used for the 2016 rates.

### Did FamilyCare participate in the rate redevelopment meetings with CCOs?
A representative from FamilyCare attended all group meetings. For 2015, FamilyCare attended five individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended three individual meetings and six group meetings, for a total of nine meetings.

### What is an overpayment?
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA Contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

### Would the federal government cover the cost of a settlement?
Funding for a settlement is not available through federal dollars.

March 18, 2016
Page **3** of **3**

FCI0200305

OHA Rate Development Timeline

July 2014
OHA receives a corrective action from CMS stating that OHA needed to change its rate methodology and no longer use the cost template methodology.

Fall 2014
The 2015 capitation rates are developed by OHA in-house actuaries using a CCO-specific methodology that was certified by OHA's internal actuary.

December 24, 2014
CCOs received final 2015 rates included in their contracts for 2015. They had six days to sign without a comment period.

January 2015
Eleven of Oregon's sixteen coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates are flawed. In particular, the issues were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency.  The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review and provide input.

Family Care meets with OHA to object to rate methodology used in 2014 for 2015 rates.

March 2015
FamilyCare notifies OHA that they believe the 2015 rates are not actuarially sound, need to be corrected, and made retroactive to January 1, 2015.

OHA convenes Oregon's all 16 coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification.  The effective date of those rates was not determined.

OHA received a letter from CMS that requested the certifying in-house actuary answer 103 questions regarding the original 2015 capitation rates.

April 2015 through August 2015
At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 rates and beyond.

OHA commits to hiring Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates as well develop a methodology that could be applied to future rates.

OHA, the coordinated care organizations, and Optumas make progress on developing the new methodology through a transparent, intensive process that included over 100 meetings between

FCI0200306

coordinated care organizations, OHA staff, and Optumas, OHA's actuarial contractor. Close coordination, partnership, and transparency with CCOs were key to this successful process. Revised rate methodology and certification for 2015 was completed in August and the same methodology was used for the 2016 rates. FamilyCare attended all group meetings. For 2015, FamilyCare attended 5 individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended 3 individual meetings and 6 group meetings, for a total of 9.

May 2015
Family Care sues OHA, based on their March 2015 intent to file a lawsuit (prior to new rate methodology being determined). The lawsuit demands that OHA re-develop the 2015 rates to satisfy federal law requirements that they be actuarially sound, and also demanded that OHA apply the re-developed rates retroactive to January 1, 2015.

July 13, 2015
OHA and Optumas released the regional rate ranges to the CCOs for the redeveloped 2015 rates.

July 21, 2015
OHA and Optumas released the payment rates within the rate ranges to each CCO. The payment rate was chosen within the rate range by OHA, in conjunction with Optumas, after analyzing sustainable growth targets of 3.4% and waiver requirements. At this time, OHA had scheduled meetings with CMS to discuss the effective date of the rates.

July 27, 2015 and August 10, 2015
OHA had calls with CMS to discuss the effective date of the redeveloped rates. CMS advised OHA their preference was to approve only one rate methodology for 2015 and gave verbal acknowledgement that the redeveloped rates were consistent with CMS/OACT regulations and proposed rules.

August 19, 2015
OHA and Optumas released the payment rates within the rate ranges to each CCO with an effective date of January 1, 2015.

The agency accomplished both requirements of the Family Care lawsuit with its August rate setting: 1) actuarially sound rates; and 2) retroactive to January 1, 2015.

August 21, 2015
OHA received a formal letter from CMS regarding the redeveloped rates and the preferred effective date of January 1, 2015.

August 28, 2015
OHA submitted the 2015 redeveloped rate methodology, certification, and rates to CMS for review and approval. The actuarial certification and contract rate sheets are available on the OHP rates website: www.oregon.gov/oha/analytics/Pages/OHPrates.aspx.

August 31, 2015

FCI0200307

CCOs received their executable 2015 contract amendment with the redeveloped 2015 rates.

September 2015
Legislative days focus on rates and health system transformation. CCOs see 2016 rate ranges.

October 2015
15 out of 16 CCOs sign their 2015 contract amendments containing redeveloped rates. These annual amendments are required in the CCO's contract.

November 2015
FamilyCare fails to sign the 2015 contract amendment containing redeveloped rates. CMS sends letter signaling intent to approve 2015 redeveloped rate methodology, certification, and rates; OHA begins mediation with FamilyCare. OHA sends Letter of Interest request to certified CCOs to ensure members are served in 2016 regardless of the lawsuit. FamilyCare confirms they are interested in serving members in 2016.  OHA sends CCOs 2016 contracts with 60 day notice.

December 2015
The Centers for Medicare and Medicaid Services approve the 2015 redeveloped rate methodology, certification, and contracts. OHA continues mediation efforts with Family.Care. FamilyCare signs the 2016 contract, which is based on the same methodology as the 2015 rates.

February 2016
OHA receives a letter from CMS regarding FamilyCare's unapproved and unapprovable 2015 and 2016 contracts. The CMS letter indicates that FamilyCare's refusal to accept the rates approved by CMS have put at risk the state's ability to draw down federal funds for 2015 and 2016.

March 2016
OHA reviews FamilyCare's proposal and concludes that it would: 1) violate CMS-approved 2015 and 2016 rate methodologies and certifications (OHA has not yet received CMS approval of the 2016 rate methodology and certification, but anticipates it based on the similar, approved 2015 rate methodology); and 2) treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS. For these actuarial, financial, and policy reasons, OHA does not accept FamilyCare's proposal.

The Oregon Health Authority issues a 14-day breach of contract notice to FamilyCare to resolve the overpayment in rates FamilyCare received for 2015.  OHA requests that FamilyCare sign their 2015 contract amendment; repay the overpayment; and withdraw their lawsuit.

*Definition of overpayment:*
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments

FCI0200308

received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

FCI0200309

Ex. 14 - 2nd Simpson Decl.
Page 74 of 164

**Oregon Health Authority proposes resolution to 2015 rate dispute**

The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 for providing care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address FamilyCare's dispute that it had the most significant rate difference, when revised 2015 rates were implemented to address concerns with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different rate methodology than other CCOs.

OHA has also provided FamilyCare a notice of breach of contract in the event the two sides are unable to reach an agreement. OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without a CMS-approved agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region or to receive federal funding for those services. Despite the lack of CMS-approved contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Lynne Saxton, director of the Oregon Health Authority said, "This is a reasonable solution that allows FamilyCare and OHA to move forward and focus on serving Oregon Health Plan members."

**Federal government calls for sound FamilyCare rates**

At the request of Oregon's coordinated care organizations and with the approval of the Centers for Medicare and Medicaid Services (CMS), OHA redeveloped the 2015 rate methodology and in August 2015 issued revised rates. Based on those rates, FamilyCare was liable to return more than $55 million in overpayments. All other 15 CCOs have signed the 2015 contracts with revised rates based on the new rate-setting methods. Family Care is the only CCO that has not reimbursed, or began a plan to reimburse, the state and federal government for its 2015 overpayment.

OHA, in consultation with CMS, has been attempting to resolve this matter with FamilyCare. In late February, CMS issued a letter calling for the state to finalize its 2015 contract with FamilyCare based on the new rate methodology, certification and rates. If FamilyCare doesn't sign a 2015 contract with CMS approved rates, the state will be liable for repayment of federal funds already paid to FamilyCare.

 "We have a responsibility to protect the health and well-being of Oregon's most vulnerable citizens --- Oregon Health Plan members," said Lynne Saxton, director of the Oregon Health Authority. "OHA's proposal is in line with the expectations of Oregon's federal partners, as well

FCI0200310

Ex. 14 - 2nd Simpson Decl.
Page 75 of 164

as the long-term financial sustainability of our health care system.  Now it's time to move forward and prevent any further worry or disruption for OHP members."

Oregon's Medicaid program is funded approximately three-quarters through federal taxpayer dollars and one-quarter through state funds. Funding for a settlement is not available through federal dollars.

###

FCI0200311

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



## Background/Situation Analysis:

OHA is seeking to successfully resolve a second rate and contract dispute with Family Care. This is the second year in which Family Care has disputed their rate and requested dispute resolution and possible settlement. This is also an opportunity to showcase OHA's transparency, the actuarial soundness of the CCO rates, the success of the CCO model both on health outcomes and financial soundness and commitment to Oregon's most vulnerable residents.

This is also a chance to showcase Family Care as an outlier in the CCO system that is more concerned with the bottom line and increasing revenues than the health of Oregonians (OHA's mission). Also a chance to show the patterned behavior of moving to litigation when they don't get the rate they want, instead of changing business practices (like other CCOs have had to do) to work within the cost containment measures that OHA has negotiated with CMS. Finally, it is an opportunity to explain that it is their business model and business decisions that is affecting their rates and not the actions of OHA.

## Time Frame of Plan:

January- June 2017

## Goals:

- **Showcase OHA's mission is to help Oregon Health Plan members**
- **Highlight Family Care as an outlier and only worried about profit margins:** This is the second time that Family Care has disputed their rate while every other CCO has managed to work with OHA and modify their business decisions to account for the cost containment measures necessary to keep our commitment to CMS.
- **Immediately counter Family Care's misinformation:** Correct allegations and distortions as soon as they are issued by Family Care through prompt, informal communication with key media.
- **Highlight Health Share as a truly inclusive CCO that provides greater access to Oregonians with high cost medical needs:** By clearly explaining the data behind the risk scores we can highlight that Health Share is taking on more of the riskier pool.

## Strategies:

While pitching reporters on the Q3 Legislative report alert them (off the record) to Family Care dispute and showcase the financial section of report (particularly the cash and investments page).

- Jeff Manning- The Oregonian
- Nigel Jaquiss- Willamette Week
- Nick Budnick- Portland Tribune

1

FCI0200312

Ex. 14 - 2nd Simpson Decl.
Page 77 of 164

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



Work with OHA staff to have data prepared and ready to provide to reporters about Family Care financial information (if asked).

Identify key legislators to target and get background information and data to them as soon as possible. Then use those legislators and/or other lobbyists to pitch stories to news media if possible so that OHA can staff neutral.

Key data to include:

- Q2 & Q3 Legislative report – highlight financial section.
- Audited CCO financial reports.
- Data to explain risk scores:
  - Provider charts that show amount of providers and breakdown of specialty providers for Health Share vs. Family Care.
  - Get a few discreet examples of OHP members with high cost medical issues (i.e. HIV) who chose Health Share b/c Family Care couldn't provide them the care they need. (Pitch off the record to reporters (e.g. Willamette Week))
  - Pull quotes/video of Jeff Heatherington saying that Family Care gives their providers the commercial reimbursement rate.
    - Showcase that Family Care is outlier in taking advantage of taxpayer money to give more funding to providers and is now asking for more taxpayer money (i.e. settlement funding) because business model of providing commercial rate reimbursement isn't working.

Op-ed to Lund Report from Lynne focused on Q3 leg report that talks about the success of the CCOs and showcases the 3.4% cost containment and the financial strength of the CCOs. Include graph that shows cash and investments from 2014-mid 2016 (Family Care numbers are huge compared to everyone else).

## Audiences:

| Audience | Values/Concerns at Play | Communication Objectives and Messaging | Pathways and Tools | Messengers or Information |
|---|---|---|---|---|
| Legislators | Transparency Political implications | Showcase success of CCOs and position Family Care as outlier | Earned Media | OHA Leadership |
| CCOs | Stability of the system. Equity among CCOs. Predictability in rate-setting. | Transparency around dispute resolution. | CCO Bulletin Calls Meetings | OHA Leadership |
| Health | Better outcomes and | Showcase success of | Earned Media | OHA |

2

FCI0200313

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



| Care opinion leaders | lower costs in health care. OHA's effectiveness in leading health system transformation in OR. | CCO system and position Family Care as outlier. | | leadership |
|---|---|---|---|---|
| | | | | |
| | | | | |

## Timeline and Tactics:

**Jan and Early Feb**
Work with Kath Nass, Janell Evans, Chelsea Guest and Jeff Fritsche to have data prepped and ready to provide to reporters about Family Care financial info. - already started process

Identify key legislators to start providing key information to about Family Care practices and financial information. – work with Jeston

**Week of January 23rd-**
While pitching reporters on the Q3 Legislative report alert them (off the record) to Family Care dispute and showcase the financial section of report (particularly the cash and investments page).
- Jeff Manning- The Oregonian
- Nigel Jaquiss- Willamette Week
- Nick Budnick- Portland Tribune

**January 31st**
Op-ed from Lynne in Lund Report

**February-May**
Offensive plan within Capitol to get good data, information and stories distributed about Family Care. Use legislators, legislative staff and lobbyists to spread info and stories.

Use media to continue to highlight Family Care as outlier and look for opportunities to hurt their credibility in the news (i.e. try to get an investigative reporter (e.g. Nigel Jaquiss) to look into key areas of business).

## Products and Deliverables:
Data prepped and ready
Op-ed from Lynne for Lund Report
Stories from OHP members who chose Health Share over Family Care

3

FCI0200314

Ex. 14 - 2nd Simpson Decl.
Page 79 of 164

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



## Metrics:

- Legislators are comfortable with OHA's efforts to settle dispute – based on the number and tenor of calls we receive from legislators.
- Earned media on financial strength of Family Care and its focus on profits.
- Media reports correct Family Care misinformation.
- CCOs are comfortable and informed – based on informal feedback in phone calls/emails.
- Members report little anxiety or disruption – based on a significant increase in calls to Member Services.

4

FCI0200315

Ex. 14 - 2nd Simpson Decl.
Page 80 of 164

DRAFT

Attorney Client Privilege

(Insert reporter's name) / Oregon Legislators

Today the Oregon Health Authority provided a technical response to FamilyCare's latest proposal. As you know, this dispute is about the $55 million rate overpayment FamilyCare received in 2015 and FamilyCare's lack of CMS-approved contracts for 2015 and 2016.

At the most basic level, this disagreement has been driven by Family Care from the start. Family Care (and most other CCOs) objected to OHA's original 2015 rates and asked OHA to revise them to ensure that they were actuarially sound. While OHA was collaborating with FamilyCare and the other CCOs to develop revised 2015 rates, FamilyCare filed a legal suit challenging the original rates.  They demanded that revised rates be developed and retroactive to January 2015. As part of this process, Optumas – the independent actuarial firm setting the rates – determined that FamilyCare and five other CCOs were actually being overpaid, and that others were actually being underpaid. Even though all of the 15 other CCOs have resolved their 2015 contract rate amendment -- including returning all applicable overpayments, Family Care is continuing to demand special treatment. FamilyCare refuses to return its overpayment and continues to contest the 2015 redeveloped rates created through the collaborative and transparent process they demanded.

While we are disappointed FamilyCare rejected OHA's most recent offer, we remain hopeful we can find agreement. Both sides have an interest in a clear, timely resolution. OHA has participated in mediation and negotiation with Family Care for over a year now.  OHA is committed to ending this dispute, despite FamilyCare's combative tone and rhetoric.

With all of this in mind, OHA wants to clarify the key issues and correct some of the statements Family Care has made recently:

- **FamilyCare is not entitled to keep the $55 million in 2015 rate overpayment**: FamilyCare's rates are paid for through state dollars paid by taxpayers, and federal matching funds – i.e., FamilyCare is negotiating to keep public dollars they received in the form of an overpayment. The overpayment was a direct result of a rate redevelopment process FamilyCare and other CCOs initiated in 2015. *In that process, Optumas determined that FamilyCare had enjoyed significant but inflated profits and had failed to deliver medical services meeting minimal medical loss ratio requirements*.  Until the overpayment issue is resolved, FamilyCare does not have a CMS-approved contract for 2016, according to CMS.
- **FamilyCare is not entitled to receive a rate of its own choosing within the CMS-approved rate range for Oregon**: FamilyCare and the other CCOs were assigned rates Optumas developed based on the health risks of each CCO's member population. While FamilyCare contends they should receive 100 percent of the approved range, OHA is obligated to pay CCOs within CMS-approved parameters:

FCI0200316

- o The rates must be actuarially sound for each CCO, according to Optumas.
- o The rates one CCO receives cannot be inequitable in relation to rates paid to other CCOs in the range, otherwise all rates would have to be revised upward. Upward revision to the rates of multiple CCOs jeopardizes OHA's waiver agreement with CMS to stay within a 3.4 percent growth limit.
- **OHA's proposed rates are actuarially sound and do not jeopardize the financial health of any CCOs:** The health and well-being of OHP members depends on the financial strength and stability of the CCOs that serve them. As partners in health care transformation, OHA is committed to the success of all of Oregon's CCOs -- however, we want our CCO partners to be financially sound so they can serve OHP members, not maximize their profit margins. There is no external evidence that FamilyCare's operations are unsustainable, or that Family Care is financially unable to return its overpayment:
  - o In 2014, Family Care's operating margin was greater than 20 percent, by far the highest margin of any CCO (see attached chart).
  - o Through the first nine months of 2015, Family Care's operating margin was approximately 5 percent.
  - o No other CCOs have reported operating deficits under the current CMS-approved rates.
  - o All other CCOs have paid back their 2015 rate overpayments.

  OHA and Optumas are responsible for paying CCOs appropriate rates approved by CMS. *Oregon and its actuaries are not responsible for business decisions CCOs make that affect their operating margin: e.g., provider contracts, operating expenses (including staff compensation and benefits) and other costs.*

- **Family Care's offer to return a portion of its rate overpayment in exchange for federally-funded enhanced rates puts federal funding for Oregon's Medicaid program at risk**: FamilyCare has publicized its offer to repay $47.3 million of its 2015 rate overpayment, in exchange for receiving enhanced rates in 2015 and 2016 for the expanded population eligible for coverage under the ACA. While FamilyCare is correct in stating their enriched rates would not have an impact on the state general fund (since the expansion population is currently paid for 100 percent through federal dollars), FamilyCare's windfall risks pushing Oregon's Medicaid expenses past the 3.4 percent CMS-allowed growth rate, since OHA would be obligated to treat all other CCOs equitably and enrich their rates as well. Exceeding the 3.4 percent growth limit would put federal participation in OHP funding at risk.

If we can't reach an agreement, FamilyCare will be in breach of contract with the state. As we move forward, it is OHA's responsibility to resolve this dispute in a way that protects coverage and benefits for OHP members, maintains federal participation in Oregon's Medicaid program and provides equitable treatment for all CCOs. While we continue to press for a settlement, we can't compromise these principles or allow this process to drag out indefinitely.

FCI0200317

Ex. 14 - 2nd Simpson Decl.
Page 82 of 164

Please let me know if you have questions. If you'd like, I'd be happy to set up a time for you to talk more with Lynne Saxton, OHA Director or Lori Coyner (our state Medicaid director) if you'd like clarification on any of these issues.

FCI0200318

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



## Background/Situation Analysis:

OHA is seeking to successfully resolve a second rate and contract dispute with Family Care. This is the second year in which Family Care has disputed their rate and requested dispute resolution and possible settlement. This is also an opportunity to showcase OHA's transparency, the actuarial soundness of the CCO rates, the success of the CCO model both on health outcomes and financial soundness and commitment to Oregon's most vulnerable residents.

This is also a chance to showcase Family Care as an outlier in the CCO system that is more concerned with the bottom line and increasing revenues than the health of Oregonians (OHA's mission). Also a chance to show the patterned behavior of moving to litigation when they don't get the rate they want, instead of changing business practices (like other CCOs have had to do) to work within the cost containment measures that OHA has negotiated with CMS. Finally, it is an opportunity to explain that it is their business model and business decisions that is affecting their rates and not the actions of OHA.

## Time Frame of Plan:

January- June 2017

## Goals:

- **Showcase OHA's mission is to help Oregon Health Plan members**
- **Highlight Family Care as an outlier and only worried about profit margins:** This is the second time that Family Care has disputed their rate while every other CCO has managed to work with OHA and modify their business decisions to account for the cost containment measures necessary to keep our commitment to CMS.
- **Immediately counter Family Care's misinformation:** Correct allegations and distortions as soon as they are issued by Family Care through prompt, informal communication with key media.
- **Highlight Health Share as a truly inclusive CCO that provides greater access to Oregonians with high cost medical needs:** By clearly explaining the data behind the risk scores we can highlight that Health Share is taking on more of the riskier pool.

## Strategies:

While pitching reporters on the Q3 Legislative report alert them (off the record) to Family Care dispute and showcase the financial section of report (particularly the cash and investments page).

- Jeff Manning- The Oregonian
- Nigel Jaquiss- Willamette Week
- Nick Budnick- Portland Tribune

1

FCI0200319

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



Work with OHA staff to have data prepared and ready to provide to reporters about Family Care financial information (if asked).

Identify key legislators to target and get background information and data to them as soon as possible. Then use those legislators and/or other lobbyists to pitch stories to news media if possible so that OHA can staff neutral.

Key data to include:

- Q2 & Q3 Legislative report – highlight financial section.
- Audited CCO financial reports.
- Data to explain risk scores:
  - Provider charts that show amount of providers and breakdown of specialty providers for Health Share vs. Family Care.
  - Get a few discreet examples of OHP members with high cost medical issues (i.e. HIV) who chose Health Share b/c Family Care couldn't provide them the care they need. (Pitch off the record to reporters (e.g. Willamette Week))
  - Pull quotes/video of Jeff Heatherington saying that Family Care gives their providers the commercial reimbursement rate.
    - Showcase that Family Care is outlier in taking advantage of taxpayer money to give more funding to providers and is now asking for more taxpayer money (i.e. settlement funding) because business model of providing commercial rate reimbursement isn't working.

Op-ed to Lund Report from Lynne focused on Q3 leg report that talks about the success of the CCOs and showcases the 3.4% cost containment and the financial strength of the CCOs. Include graph that shows cash and investments from 2014-mid 2016 (Family Care numbers are huge compared to everyone else).

## Audiences:

| Audience | Values/Concerns at Play | Communication Objectives and Messaging | Pathways and Tools | Messengers or Information |
|---|---|---|---|---|
| Legislators | Transparency Political implications | Showcase success of CCOs and position Family Care as outlier | Earned Media | OHA Leadership |
| CCOs | Stability of the system. Equity among CCOs. Predictability in rate-setting. | Transparency around dispute resolution. | CCO Bulletin Calls Meetings | OHA Leadership |
| Health | Better outcomes and | Showcase success of | Earned Media | OHA |

2

FCI0200320

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



| Care opinion leaders | lower costs in health care. OHA's effectiveness in leading health system transformation in OR. | CCO system and position Family Care as outlier. | | leadership |
|---|---|---|---|---|
| | | | | |
| | | | | |

## Timeline and Tactics:

**Jan and Early Feb**
Work with Kath Nass, Janell Evans, Chelsea Guest and Jeff Fritsche to have data prepped and ready to provide to reporters about Family Care financial info. - already started process

Identify key legislators to start providing key information to about Family Care practices and financial information. – work with Jeston

**Week of January 23rd-**
While pitching reporters on the Q3 Legislative report alert them (off the record) to Family Care dispute and showcase the financial section of report (particularly the cash and investments page).
- Jeff Manning- The Oregonian
- Nigel Jaquiss- Willamette Week
- Nick Budnick- Portland Tribune

**January 31st**
Op-ed from Lynne in Lund Report

**February-May**
Offensive plan within Capitol to get good data, information and stories distributed about Family Care. Use legislators, legislative staff and lobbyists to spread info and stories.

Use media to continue to highlight Family Care as outlier and look for opportunities to hurt their credibility in the news (i.e. try to get an investigative reporter (e.g. Nigel Jaquiss) to look into key areas of business).

## Products and Deliverables:
Data prepped and ready
Op-ed from Lynne for Lund Report
Stories from OHP members who chose Health Share over Family Care

3

FCI0200321

Ex. 14 - 2nd Simpson Decl.
Page 86 of 164

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



## Metrics:

- Legislators are comfortable with OHA's efforts to settle dispute – based on the number and tenor of calls we receive from legislators.
- Earned media on financial strength of Family Care and its focus on profits.
- Media reports correct Family Care misinformation.
- CCOs are comfortable and informed – based on informal feedback in phone calls/emails.
- Members report little anxiety or disruption – based on a significant increase in calls to Member Services.

4

FCI0200322



## FAMILYCARE HEALTH'S DISPUTE WITH THE OREGON HEALTH AUTHORITY (OHA) -

## FREQUENTLY ASKED QUESTIONS

### What is FamilyCare?

FamilyCare is an Oregon Not for Profit Corporation. It was founded in 1984 and has been serving the Medicaid population for the last 32 years.

### What are the basic issues at hand?

There are two issues: 1) the methodology used by the OHA to set the reimbursement rates paid to the Coordinated Care Organizations (CCOs) for services provided to Oregon Health Plan members; and 2) the unfair treatment of FamilyCare in the process.

### How was FamilyCare treated differently?

The state developed 2015 and 2016 rates based on costs, but costs were not counted the same for all CCOs.  Unlike several of the CCO's, FamilyCare is a single corporate entity, with no subsidiaries or sub-contractors. As a result, all of FamilyCare's revenues and costs are itemized on a single balance sheet, and are not passed through to subsidiaries and sub-contractors (related entities). OHA's rate methodology only calculates the profits of the CCO contractor. Profits that are passed through to related entities (i.e. sub-contractors, partners, risk accepting entities) are treated as costs, thereby inflating their premium structure and negatively impacting FamilyCare's premium structure. It is estimated that approximately $400 million in CCO profits were actually counted as costs in 2014.

### Why did FamilyCare file a lawsuit?

FamilyCare filed a lawsuit in May, 2015 after months of attempts to engage OHA in a dialog about the 2015 rate setting process, resulting in a 9% decrease of FamilyCare's rates as compared to 2014.  This was greater than any other plan. It is important to note that CMS had similar concerns which were transmitted in a list of 100+ questions to OHA in March, 2015.

### Why was FamilyCare asked to pay back money?

OHA decided to redo the rate setting process in the summer of 2015 and apply the new rates retroactively (claw back) to January, 2015. The rates were recalculated using a regional rate range versus the individual rate plan methodology OHA used previously.  OHA made the final decision on where CCOs rates fell within the regional range.

OHA issued a contract amendment in September requiring CCOs to pay back funds if their new rates were lower than their original 2015 rates.  The new rates reduced FamilyCare's reimbursement by another 11% for a total reduction of 19.2% compared to 2014 rates.



Health Happens Here

825 NE Multnomah St., Suite 1400, Portland, OR 97232 | P: 503-222-2880 F: 503-345-5720 | www.familycareinc.org

FCI0200323



### Why didn't FamilyCare sign the contract amendment?

Oregon law requires CCO premium rates to be established "prospectively." An opinion by Oregon Legislative Council affirmed OHA's lack of authority to retroactively apply revised rates and claw back overpayments based on those rates. Additionally, there were no requirements from CMS to retroactively apply the revised rates.

### Why does FamilyCare bring up transparency concerns?

OHA has consistently not responded to, and refused requests made by FamilyCare and its attorneys for information:

- OHA claimed information that was previously publicly available is now proprietary.
- OHA asked CCO's to "vote" on what they wanted to release in response to FamilyCare's request.
- OHA has outstanding public records requests from FamilyCare that date back to January 2015.

All of these requests relate to data included in the rate calculations for 2015 and how pass-through profits to related entities were treated.

### What about all the meetings OHA had with CCOs to develop the rates?

Several meetings does not equate to transparency or collaboration. FamilyCare has participated in meetings, raising concerns and requesting information. OHA failed to respond. Concerns expressed by FamilyCare, still unanswered, relate to inconsistency in OHA reporting requirements, incomplete data validation and fair treatment of related party transactions.

### What about Mediation?

FamilyCare entered into mediation with OHA in late 2015; OHA terminated mediation on March 14, 2016 and demanded FamilyCare sign their settlement proposal without modification. Three days later, OHA delivered a revised demand letter to FamilyCare. Subsequent counter-proposals have been offered by both parties.

### What is FamilyCare's current proposal?

FamilyCare's most recent proposal, offered on Monday March 21, would require FamilyCare to repay OHA $47.3 million for 2015 and its rates for 2015 and 2016 would be increased for the ACA population. This increase would be fully funded by the federal government and have *no impact* on the state general fund.

Contrary to OHA's statements that FamilyCare's prior proposal is inconsistent with CMS-approved rates, FamilyCare received confirmation from PricewaterhouseCoopers that the proposal is "consistent with the approved rate ranges" as required by CMS's February 24, 2016 letter to OHA. As such, FamilyCare's prior proposal would have allowed OHA to avoid a loss of over $500 million in matching federal funds.

Health Happens Here

825 NE Multnomah St., Suite 1400, Portland, OR 97232 | P: 503-222-2880 F: 503-345-5720 | www.familycareinc.org

FCI0200324



The same is true of FamilyCare's current proposal. It proposes rates within the CMS-approved rate ranges and would allow OHA to obtain full federal funding to avoid the projected $500 million loss. Additionally, the current proposal employs the exact same rate methodology adopted by OHA.

Under the current 2016 OHA rates, FamilyCare expects to incur a loss of $31.6 million. The expected 2016 loss has been confirmed by Milliman, an independent actuarial firm. To FamilyCare's knowledge, no other CCO is projecting a loss for 2016, based on their OHA rates.

### Correcting the Record on OHA Statements

1.  *FamilyCare is asking to be treated differently than other CCO's*. Contrary to OHA's statements, FamilyCare filed the lawsuit last year claiming that OHA was treating it differently in its rate setting process. OHA's most recent (March 22) proposal acknowledges that the 2015 and 2016 reimbursement rates for FamilyCare were calculated using a flawed methodology.

2.  *FamilyCare's proposals are inconsistent with CMS approved 2015 and 2016 rate methodologies*. Contrary to OHA's statements that FamilyCare's proposals are inconsistent with CMS-approved rates, FamilyCare received confirmation from PricewaterhouseCoopers that FamilyCare's proposals are "consistent with the approved rate ranges" as required by CMS's February 24, 2016 letter to OHA. As such, FamilyCare's proposals allow OHA to avoid a loss of over $500 million in matching federal funds. OHA's most recent proposal agrees to accept FamilyCare's suggested revisions to its 2015 rates. However, the new proposal does not include a revision to 2016 rates. OHA previously indicated the rate methodology must be consistent for both years.

3.  *CMS required OHA to redo the rate setting process for 2015.* Contrary to OHA's statements, CMS never rejected the original 2015 rates submitted by OHA. They only submitted a lengthy list of questions. OHA unilaterally decided to completely redo the rates and apply them retroactively.

4.  *FamilyCare does not have a valid 2015 or 2016 contract in place.* Contrary to OHA's statements, FamilyCare has contracts for 2015 and 2016, both of which have been signed by OHA and FamilyCare. OHA drafted the language for both contracts.

5.  *FamilyCare's settlement proposals cannot be funded through federal dollars.* Our settlement proposals are revisions to the rates within the CMS approved rate ranges and add no cost to the state general fund. OHA has proposed a lump sum payment from the state general fund. FamilyCare is requesting a rate revision, consistent with the OHA rate methodology, not a lump sum payment.

FCI0200325



6.      *FamilyCare had a chance to review their rates with OHA.*  Contrary to OHA's statements, FamilyCare attended meetings.  However, information requested was not distributed, nor released.  This information was critical for FamilyCare to adequately understand how OHA was developing the rates.  Without this information, FamilyCare could not raise informed questions or challenges to the process.

7.      *The 2015 and 2016 rates are actuarially sound <u>for FamilyCare</u>.* The actuarial opinion certified by Optumas states clearly that the <u>rate ranges</u> for each region are actuarially sound, <u>but the rates for each CCO may not be actuarially sound</u>. Rates cannot be sound if they produce a prospective deficit. Under the current 2016 OHA rates, Milliman, an independent actuarial firm, predicts that FamilyCare will incur a loss of $31.6 million in 2016. To FamilyCare's knowledge, no other CCO is projecting a loss for 2016, based on their OHA rates.  Prior to 2015, rates were developed and certified as actuarially sound for each CCO at the individual level.  In the development of the 2015 rates, OHA and Optumas, changed the process to certify rates as actuarially sound only at the regional level, versus CCO level.  It's unclear why the process was changed in this manner.



825 NE Multnomah St., Suite 1400,  Portland, OR 97232  |  P: 503-222-2880 F: 503-345-5720  |  www.familycareinc.org

FCI0200326

**PERKINSCOIE**

1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

● +1.503.727.2000
● +1.503.727.2222
PerkinsCoie.com

December 30, 2016

Stephen F. English
SEnglish@perkinscoie.com
D.  +1.503.727.2003

Renee Stineman
Attorney-in-Charge, Special Litigation Unit
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301

Re:    **FamilyCare v. OHA: Dispute Resolution Agreement**

Dear Renee:

Thank you again for taking the time to meet with us last week.  FamilyCare, Inc. ("FamilyCare") would like to have a binding agreement in place on the next steps and protocol for resolution of its disputes (the "Dispute Resolution") with the Oregon Health Authority ("OHA") regarding the rates under the 2017 amendment to FamilyCare's CCO Contract (the "2017 Amendment" to the "Contract").

The following is the protocol for the Dispute Resolution:

1.  FamilyCare and OHA (together, the "parties") agree that FamilyCare will sign the 2017 Amendment before December 31, 2016, but that by so signing, FamilyCare will not waive any rights to contest—or any grounds for contesting—the 2017 rates and that, should the Dispute Resolution process prove unsuccessful, FamilyCare may challenge its 2017 rates and if necessary, seek retroactive changes to those rates.  Similarly, by signing the 2017 Amendment, OHA will not waive any rights with respect to the Contract or any claims or allegations brought by FamilyCare.  OHA will present the 2017 Amendment to the Centers for Medicare and Medicaid Services ("CMS") for approval.  OHA may represent to CMS that the 2017 Amendment is binding under state law.

2.  The parties intend to conduct a free and open discussion between them regarding the appropriate application of actuarial rates including such issues as appropriateness of the methodology, whether geographic areas come in to play with respect to methodology, the actuarial soundness of the rates, an explanation by OHA as to why OHA believes the rates are sound in light of CMS approvals, and any alternative actuarially sound methodology proposed by FamilyCare.

3.  Actuaries for OHA and actuaries for FamilyCare should be present at any such meeting and in the same room so that there can be an actuary-to-actuary discussion with appropriate questions posed by counsel for OHA or counsel for FamilyCare.  Each of the

123045-0001/134026738.2

Perkins Coie LLP

FCI0200327

Renee Stineman
December 30, 2016
Page 2

parties will designate in advance the actuaries who will be present for the duration of the Dispute Resolution.

4. The Dispute Resolution will begin at the first date reasonably available for both parties and their actuaries and attorneys. Subsequent meetings will be scheduled at the first dates reasonably available for both parties and their actuaries and attorneys.

5. The parties commit to participating in good faith in at least three substantive Dispute Resolution discussions starting during the next 30 days with the first discussion occurring no later than January 17, 2017 and the second discussion occurring no later than 30 days following that date. If the parties have not resolved the dispute after engaging in those Dispute Resolution discussions, the parties may agree to negotiate and enter into a formal Mediation Agreement to move the Dispute Resolution into a mediation. The parties agree that they will work cooperatively to select a mediator as quickly as possible. (In this regard, someone such as former Chief Justice Paul DeMuniz or former judge Janice Wilson would be a strong selection). FamilyCare will pay the cost of the mediator.

6. The parties agree that they will work cooperatively and provide information that either OHA's actuary or FamilyCare's actuary believes is relevant and necessary to evaluate actuarial rates, subject to protection of confidential information such as trade secrets, personal or private health information, or other information not subject to disclosure under Oregon's public records law ("Confidential Information"). If the parties conclude that the Dispute Resolution requires review of Confidential Information, the parties will cooperatively work toward an agreement for protection of Confidential Information (by, for example, providing Confidential Information to an independent third-party expert).

7. The Dispute Resolution can take place at a mutually agreeable location. Perkins Coie will make available its office as necessary to accommodate both parties.

8. The Dispute Resolution protocol would include a presentation by FamilyCare through a combination of its actuary and counsel to outline and demonstrate why the actuarial methodology is unsound and to provide a specific alternative proposal based on a methodology within the limits of OHA's waiver, a response by OHA through a combination of its actuary and counsel, and a mutual attempt to understand and if possible resolve the differences. OHA understands and agrees that if it does not provide the information that FamilyCare's actuary believes is relevant and necessary to establish actuarial rates, then FamilyCare's ability to provide a specific alternative proposal will be limited.

9. FamilyCare believes that:

123045-0001/134026738.2
Perkins Coie LLP

Renee Stineman
December 30, 2016
Page 3

- The proposed 2017 rates violate the settlement agreement between OHA and FamilyCare. Under the agreement, OHA covenanted that it would "not use rates paid to FamilyCare under the 2016 contract or the settlement credit as a basis for limiting the amount that can be paid to FamilyCare in future rate years," unless required by the Section 1115 Demonstration Project ("Waiver").

  OHA's proposal to reduce FamilyCare's payments by at least $34 million in 2017 because of the reimbursement amount FamilyCare has paid to primary care providers since November 2014 is a clawback of the settlement credit and a claim by OHA to recover amounts paid to FamilyCare before the proposed 2017 rates were issued. The clawback not only violates the Agreement, but is a retroactive rate amendment in violation of Oregon law, and the Waiver does not require OHA to implement the clawback.

- The proposed 2017 rates further violate the settlement agreement, as well as the Contract and federal law, because they are not actuarially sound for two reasons.

  First, actuarial soundness requires that rates be sufficient to cover the CCO's expected expenses. But the 2017 rates are insufficient to cover FamilyCare's proposed expenses for the upcoming year.

  Second, actuarial soundness requires that rates be developed using actuarially sound methodologies. While the precise details of the methodology utilized by OHA remain unclear, OHA's proposal to pay significantly different rates for the two CCOs serving the same population in the TriCounty region indicates that its methodology is unsound. Problems with the methodology include, but are not necessarily limited to, the inconsistent application of various methods, including selectively and inconsistently switching between cost-relativity and risk-scoring methods across different categories and changing the basis for rate components between statewide data, regional data, and plan-specific data.

  At bottom, OHA's justification for the difference in rates between the two TriCounty CCOs does not make sense. OHA states that the 16% difference in the proposed 2017 rates for FamilyCare and Health Share results from a higher-risk profile among Health Share's members. But that seems implausible, given that the two CCOs serve the same geographic area, that both have significant numbers of members, and that those members are, for the most part, randomly assigned between the two CCOs.

10. The parties:

123045-0001/134026738.2
Perkins Coie LLP

Renee Stineman
December 30, 2016
Page 4

    a. Agree that the Dispute Resolution will be conducted with the actuaries present, counsel for the parties present, and top level executives of FamilyCare and OHA.

    b. Agree that any Dispute Resolution and face-to-face discussions will be conducted at the highest level of professionalism and courtesy, all with the goal toward accomplishing a prompt resolution satisfactory to both parties.

11. You have requested identification of claims, which will be made in the FamilyCare lawsuit. Specifically, the complaint alleges claims for specific performance, for declaratory relief, and for judicial review under ORS 183.480(3), as follows:

- The first claim is for specific performance of the settlement agreement. As discussed above, the proposed 2017 rates violate the settlement agreement because OHA's proposal to reduce FamilyCare's payments by at least $34 million in 2017 is a clawback of the settlement credit.

- The second claim is for a declaration enjoining OHA from implementing the clawback or from using actuarially unsound methods based on the rates paid to FamilyCare in 2016 to limit the amounts paid to FamilyCare in 2017.

- The third claim seeks an order compelling OHA to comply with the settlement agreement.

- In addition to the violations of the settlement agreement's prohibition on using 2016 or prior rates as a basis for limiting future rates to FamilyCare, the complaint also alleges that the 2017 rates further violate the settlement agreement and federal law because they are actuarially unsound, and that the 2017 Amendment violates the prohibitions on multiple amendments and on retroactive amendments.

12. The parties agree that the following obligations will survive termination of the Dispute Resolution:

    a. All written and oral communications relating to the Dispute Resolution between December 23, 2016 through conclusion of any mediation will be considered settlement communications governed by Oregon Evidence Code Rule 408 (ORS 40.190).

    b. The parties will not subpoena or otherwise examine or seek to compel discovery of any internal communications (including but not limited to communications with a

123045-0001/134026738.2
Perkins Coie LLP

Renee Stineman
December 30, 2016
Page 5

party's officers, board members, or expert advisers) regarding the Dispute
Resolution between December 23, 2016 through conclusion of any mediation.

I hope this letter is sufficient in detail to allow you to determine whether a Dispute Resolution
with FamilyCare would make sense from OHA's perspective. From the perspective of
FamilyCare we are willing to make a good faith effort to resolve our differences and, all things
considered, would prefer not moving forward with the lawsuit if we can reach an agreement.
Thank you for your consideration.

If the foregoing is acceptable, please confirm OHA's acceptance by your signature below.

Very truly yours,

Stephen F. English

Accepted:

Renee Stineman

cc:    Theodore Falk; Jeff Wahl; Carla Scott; Jeff Heatherington; Bill Murray; Tom Johnson;
       Melanie Curtice; Matt Gordon

123045-0001/134026738.2
Perkins Coie LLP

FCI0200331





**CCO Operating Margin Percent**

* CareOregon is the owner of Columbia Pacific and Jackson Care Connect and is one of the partners of Health Share of Oregon

Annual Through December 31, 2013  Annual Through December 31, 2014  Annual Through December 31, 2015  Year to Date Through September 30, 2016

FCI0200333

Ex. 14 - 2nd Simpson Decl.
Page 98 of 164



FCI0200334

Ex. 14 - 2nd Simpson Decl.
Page 99 of 164

**Family Care and Health Share**
**Margins based on underlying costs**
**For the Year Ending December 31, 2015**

|  | Family Care | Health Share |
|---|---|---|
| Total Operating Revenues | 543,255,599 | 1,078,101,773 |
| Medical Related Costs (1) | 430,568,193 | 939,250,245 |
| Administrative Costs (2) | 35,210,931 | 85,768,060 |
| Total Expenses | 465,779,124 | 1,025,018,304 |
| Operating Margin | 77,476,475 | 53,083,468 |
| **Components of Total Operating Revenues** |  |  |
| Medical Related Costs | 79.3% | 87.1% |
| Administrative Expenses | 6.5% | 8.0% |
| Operating Margin | 14.3% | 4.9% |
| Total | 100.0% | 100.0% |
| Member Months | 1,459,336 | 2,901,025 |
| Total Expenses PMPM | 319.17 | 353.33 |

(1) Based on Underlying Costs reported in rates template
(2) Excludes Premium Deficiency Reserve recorded by Family Care
(2) Includes Admin. Costs reported to Health Share by their RAEs



FCI0200335



FCI0200336
Ex. 14 - 2nd Simpson Decl.
Page 101 of 164

## Dispute Resolution Ground Rules

The parties agreed to at least three substantive dispute resolution discussions, followed by mediation if necessary

The parties agreed to a "free and open discussion" regarding:

- The appropriate application of actuarial rates
- The appropriateness of the methodology used by Optumas
- Whether geographic areas come into play
- The actuarial soundness of the rates

2  Perkins Coie LLP | PerkinsCoie.com

PERKINSCOIE

2

FCI0200337

# Dispute Resolution Ground Rules

The parties agreed that the Dispute Resolution Process would include:

- An explanation by OHA why it believes the rates are sound
- Any alternative sound methodology proposed by FamilyCare

The parties agreed to:

- Work cooperatively
- Provide information "that either OHA's or FamilyCare's actuary believes is relevant and necessary to evaluate actuarial rates, subject to protection of confidential information"

3  Perkins Coie LLP | PerkinsCoie.com

PERKINSCOIE

3

FCI0200338

## Dispute Resolution Process

### FCI's goals for this meeting:

- Establish what information FCI's actuary, Milliman, believes is relevant and necessary

- Establish when and how that information will be provided to FCI

    - Establish any necessary protections for confidential information

- Establish a framework for future meetings

4   Perkins Coie LLP  |  PerkinsCoie.com

PERKINSCOIE

4

FCI0200339

## Dispute Resolution Process

### Going forward:

- Upon receipt of the requested information, Milliman will evaluate rate development

- FCI will present its analysis and, per the Dispute Resolution Agreement, any suggested alternative

- FCI will consider, in good faith, OHA's explanation about why it considers the 2017 rates to be actuarially sound

- FCI will continue to work cooperatively with OHA

5  Perkins Coie LLP  |  PerkinsCoie.com

PERKINSCOIE

5

FCI0200340

Ex. 14 - 2nd Simpson Decl.
Page 105 of 164

## FamilyCare, Inc.

### FCI has been an MCO since 1985

- Currently the second-largest CCO
- Serves more than 120,000 members
    - FCI serves 13% of Oregon Medicaid
- FCI's business model has proven successful at delivering high-quality health services to Oregon residents for 30 years

6  Perkins Coie LLP | PerkinsCoie.com

PerkinsCoie

6

FCI0200341

## The Problem

### FCI's 2017 rates are too low to cover expenses

- 2017 is the third year in a row where rates are below projected costs
- 2017 operating loss is projected at $55 million
- Unsustainable trajectory for FCI

### • FCI's rates have been the lowest of all CCOs since 2014

- FCI is the only plan that has a proposed operating loss
- FCI rates: 15.5% lower than 3 other large plans ($64 million)

7  Perkins Coie LLP  |  PerkinsCoie.com

PerkinsCoie

7

FCI0200342

## The Questions:

- How did we get here?

    - Do FCI's 2017 rates as constructed indicate that FCI is incapable of providing appropriate care to its members efficiently?

    - Or is there some other explanation?

- Where in the rate development process did rates become disconnected from FCI's costs?

8  Perkins Coie LLP  |  PerkinsCoie.com

PerkinsCoie

8

FCI0200343

## FCI's Dilemma

- FCI needs to evaluate whether the rates are too low because:

    - FCI has a different business model from other CCOs; or

    - The rate development process disfavors FCI

- But information provided to FCI to date is insufficient

9. Perkins Coie LLP  |  PerkinsCoie.com

PERKINSCOIE

9

FCI0200344

## Background

### Before 2015

- Each CCO developed an "Experience Rate," based on its own experience, for review by OHA

### 2015-2017

- Methodology changed:
  - OHA developed a "Risk Adjusted Community Rate"
  - OHA presented rates to CCOs

10  Perkins Cole LLP  |  PerkinsCole.com

PerkinsCoie

10

FCI0200345

## Background: Legal Framework

### Global Budget– ORS § 414.620

- **Goal:** encourage CCOs to innovate to reduce costs and improve care
    - Intent: flexibility in spending
    - Allows profitability (CCO can keep profits earned within global budget)
- Reasonable inflation in rates for planning and stability
- Anticipates actuarially sound rates for each CCO

11  Perkins Cole LLP  |  PerkinsCole.com

PerkinsCoie

11

FCI0200346

## Background: Legal and Historical Practice

### Clawback Prohibition

- Limits on retroactive amendments
- Enacted in 2016 — HB 4107

### Transparency

- Pre-July 2014, all data available in statewide data book
- Since July 2014: Trade secret claim (ORS § 192.501)

### CMS Regulations and the 1115 Waiver

- Recent approval of waiver renewal
- "Actuarially sound" defined in regulations

12  Perkins Coie LLP | PerkinsCoie.com

PerkinsCoie

12

FCI0200347

## Background: Settlement Agreement

- **Executed May 2016 to resolve dispute over 2015 and 2016 rates**
- **Included Settlement Credit reducing amount payable by FCI**
- **The parties agreed that:**
  - **OHA shall not use either (1) rates paid to FCI under the 2016 Contract or (2) the Settlement Credit to limit the amount paid to FCI in future rate years**
  - **OHA will establish a process for CCOs to request verification from an Independent Consulting Actuary**

13  Perkins Coie LLP  |  PerkinsCoie.com

PerkinsCoie

13

FCI0200348

## Questions about Rate Development Process

Overall question: Why are FCI's 2017 rates insufficient to provide for FCI's projected costs?

Answer requires a detailed understanding of:
- How the 2017 rates were developed
- Data that was used
- Policy decisions that were made

14   Perkins Coie LLP  |  PerkinsCoie.com

PerkinsCoie

14

FCI0200349

# Questions about Rate Development Process

## The starting point:  Regional Base Data

- Unusual approach—inconsistent with other comparable states (*e.g.*, WA, HI, UT), which use statewide, not regional, average
- Potentially penalizes plans in a region where health care is delivered more efficiently
  - Superior performance should lead to better earnings (*see* Global Budget concept)
  - But this approach leads to a cycle: lower costs→ reduced regional average→ reduced adjustments → lower rates
  - And could discourage plans in other regions from lowering costs
- Unclear: whether implicit rate adjustments were checked for appropriateness?

15  Perkins Coie LLP  |  PerkinsCoie.com

PerkinsCoie

15

## Questions about Rate Development Process

### Adjustments to Regional Base Data to Create Regional Base Rate

- Some adjustments are made using a percentage of regional base data, so adjustments compound the impact of starting with a lower base
- Unclear whether this step includes appropriate checks on impact of regional adjustments

### Risk Adjustment

- Tri-County ACA population was randomly assigned between FCI and HealthShare
- But FCI's ACA population was calculated as less risky in every age group – need to understand why

16  Perkins Coie LLP | PerkinsCoie.com                                    PERKINSCOIE

16

## Questions about Rate Development Process

Adjustments to Costs

- "Reimbursement review" for increased costs

- "Adjusted Financials"
  - FCI's increased payment to providers = $34MM decrease in contribution to Regional Base Data

- "Reimbursement adjustment" for CCOs that were "outliers and above a sustainable growth"

17  Perkins Coie LLP  |  PerkinsCoie.com

perkinscoie

17

FCI0200352

## Information FCI's actuary believes is relevant and necessary to evaluate actuarial rates

- Data to determine impact of starting with regional base rate

- Utilization and unit cost details for all regions

- Encounter-based files for all regions

- Raw concurrent risk scores

- Details of adjustments to regional base data

- Policy decisions regarding rate development

18  Perkins Coie LLP  |  PerkinsCoie.com

PERKINSCOIE

18

FCI0200353

## Next Steps

- Timeline for production of information to Milliman

- Presentation by OHA regarding actuarial soundness of 2017 rates

- Presentation by FCI regarding results of analysis of 2017 rate development and potential alternative approach

19  Perkins Coie LLP  |  PerkinsCoie.com

PERKINSCOIE

19

FCI0200354

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



## Background/Situation Analysis:

OHA is seeking to successfully resolve a second rate and contract dispute with Family Care. This is the second year in which Family Care has disputed their rate and requested dispute resolution and possible settlement.  This is also an opportunity to showcase OHA's transparency, the actuarial soundness of the CCO rates, the success of the CCO model both on health outcomes and financial soundness and commitment to Oregon's most vulnerable residents.

This is also a chance to showcase Family Care as an outlier in the CCO system that is more concerned with the bottom line and increasing revenues than the health of Oregonians (OHA's mission). Also a chance to show the patterned behavior of moving to litigation when they don't get the rate they want, instead of modifying budget to work within the cost containment measures that OHA has negotiated with CMS.

## Time Frame of Plan:

January 2017-?

## Goals:

- **Showcase OHA's mission is to help Oregon Health Plan members**
- **Highlight FamilyCare as an outlier and only worried about profit margins**
- **Immediately counter Family Care's misinformation:** Correct allegations and distortions as soon as they are issued by Family Care through prompt, informal communication with key media.

## Strategies:

While pitching reporters on the Q3 Legislative report alert them (off the record) to Family Care dispute and showcase the financial section of report (particularly the cash and investments page).

- Jeff Manning- The Oregonian
- Nigel Jaquiss- Willamette Week
- Nick Budnick- Portland Tribune

Work with Janell and Kate to have data prepared and ready to provide to reporters about Family Care financial information (if asked).

Op-ed to Lund Report from Lynne focused on Q3 leg report that talks about the success of the CCOs and showcases the 3.4% cost containment and the financial strength of the CCOs. Include graph that shows cash and investments from 2014-mid 2016 (Family Care numbers are huge compared to everyone else).

1

FCI0200355

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



## Audiences:

| Audience | Values/Concerns at Play | Communication Objectives and Messaging | Pathways and Tools | Messengers or Information |
|---|---|---|---|---|
| Legislators | Transparency Political implications | Showcase success of CCOs and position Family Care as outlier | Earned Media | OHA Leadership |
| CCOs | Stability of the system. Equity among CCOs. Predictability in rate-setting. | Transparency around dispute resolution. | CCO Bulletin Calls Meetings | OHA Leadership |
| Health Care opinion leaders | Better outcomes and lower costs in health care. OHA's effectiveness in leading health system transformation in OR. | Showcase success of CCO system and position Family Care as outlier. | Earned Media | OHA leadership |
| | | | | |
| | | | | |

## Timeline and Tactics:

**Jan and Early Feb**
Work with Kath Nass and Janell Evans to have data prepped and ready to provide to reporters about Family Care financial info

**Week of January 23rd-**
While pitching reporters on the Q3 Legislative report alert them (off the record) to Family Care dispute and showcase the financial section of report (particularly the cash and investments page).
- Jeff Manning- The Oregonian
- Nigel Jaquiss- Willamette Week
- Nick Budnick- Portland Tribune

**January 31st**
Op-ed from Lynne in Lund Report

## Products and Deliverables:
Data prepped and ready
Op-ed from Lynne for Lund Report

2

FCI0200356

Ex. 14 - 2nd Simpson Decl.
Page 121 of 164

**Attorney-Client Privilege**
**[Family Care Dispute Resolution]**
**COMMUNICATIONS PLAN**



## Metrics:

- Legislators are comfortable with OHA's efforts to settle dispute – based on the number and tenor of calls we receive from legislators.
- Earned media on financial strength of Family Care and its focus on profits.
- Media reports correct Family Care misinformation.
- CCOs are comfortable and informed – based on informal feedback in phone calls/emails.
- Members report little anxiety or disruption – based on a significant increase in calls to Member Services.

3

FCI0200357

Attorney-Client Privilege

## Family Care Communications Plan

**Situation analysis:**

OHA is seeking to successfully resolve a rate and contract dispute with Family Care. At risk are the soundness of CCO rates, OHA's reputation, and continued federal matching funds for OHP (as well as $55 million in overpayments to Family Care that OHA is required to recover by CMS). OHA has provided Family Care a 14-day breach of contract notice. The dispute may accelerate and intensify toward a high-stakes and high-visibility resolution in coming weeks.

**Goal:**

1. **Create conditions for successful resolution of Family Care dispute, which meets OHA's priorities.**
   - Key audiences understand and support OHA's efforts to secure appropriate rate repayment from Family Care and protect OHP members and Oregon taxpayers. (Isolate Family Care.)
   - Key audiences understand and support OHA's efforts to resolve current litigation with Family Care.
   - Demonstrate OHA's commitment to resolving Family Care's dispute in a collaborative manner, which maintains the integrity of Oregon's CCOs and health system transformation. (Counter Family Care rhetoric and allegations.)

2. **Minimize disruption and worry for OHP members (if necessary).**
   - Keep OHP members informed and reassured that OHA will ensure their coverage or benefits will not be interrupted.

3. **Maintain OHA's reputation and advance health system transformation.**
   - Demonstrate OHA's commitment to coordinated care and better health for OHP members.
   - Demonstrate OHA's focus on cost stewardship and the financial integrity of the health system.

**Strategies**

1. **Stay in close communication with legislators:** Generate support for OHA's goals through regular direct contact with legislators.
2. **Tell OHA's story through targeted earned media:** Generate earned media that effectively tells an accurate story through targeted interviews with key reporters and outlets.
3. **Simplify a complex story through easy to understand tools:** Develop clear and compelling informational resources to support accurate media and stakeholder understanding of the issues.

FCI0200358

4.  **Immediately counter Family Care's misinformation:** Correct allegations and distortions as soon as they are issued by Family Care through prompt, informal communication with key media.
5.  **Provide timely and appropriate member communications**: If necessary, communicate directly with OHP members enrolled with Family Care to keep them informed about their benefits and coverage.

**Tone:** Measured, reasonable, responsible, and settlement-focused.

**Audiences:**

| Audience | Values/Concerns | Think/Feel/Do | Pathways |
|---|---|---|---|
| Legislators | Relationship with Family Care. Financial impact on General Fund. | **Think:** Understand OHA's urgency in securing rate repayment and reaching agreement that finalizes 2015 contract. **Feel**: Comfortable OHA is working to reach reasonable settlement that protects members and GF. **Do**: Avoid intervening on behalf of Family Care. | Meetings Phone Calls Email |
| CCOs | Stability of system. Equity among CCOs. Predictability in rate-setting. Opportunity to expand market share. | **Think:** Understand how OHA is attempting to settle FC dispute in a way that preserves integrity of CCOs and HST; and why we served breach of contract notice. **Feel**: OHA is a fair and transparent business partner. **Do**: Be prepared for successful transition, if necessary. | Meetings Phone calls Email Memos |
| Health care opinion leaders | Better outcomes and lower costs in health care. OHA's effectiveness in leading health system transformation in OR. | **Think:** OHA is effective in managing health system transformation in OR. **Feel**: Confidence in OHA. **Do**: Support OHA. | Media |
| OHP members | Better health for themselves | **Think**: Know how to | Letters |

FCI0200359

| | | |
|---|---|---|
| and their families. Access to coverage and benefits. | access health care coverage and benefits. **Feel**: Confident and calm during any potential transition, if necessary. **Do**: Obtain care without interruption and report positive experience to policymakers/media. | Media Community media Social media Paid media |

## Tactics and Deliverables

Italics: Major products and deliverables to be developed.

| Deliverable | OHA solution | Response to FC solution | FC seeks injunction | Post-injunction | Transition |
|---|---|---|---|---|---|
| Legislative outreach | Legislator update (3/15) | Phone calls to legislators | *Legislator update*<br><br>Phone calls to legislators | *Legislator update*<br><br>Phone calls to legislators | *Legislator update*<br><br>Phone calls to legislators |
| Earned media | News release (3/16) Media follow-up (3/17)<br>• PBJ<br>• LR | Continue targeted outreach (3/21):<br>• PBJ<br>• LR<br>• WW<br>• OR<br>• Tribune<br>• OPB | *OHA statement*<br><br>Continue targeted outreach:<br>• PBJ<br>• LR<br>• WW<br>• OR<br>• Tribune<br>• OPB | *News release*<br><br>Continue targeted outreach:<br>• PBJ<br>• LR<br>• WW<br>• OR<br>• Tribune<br>• OPB | *News release*<br><br>News conference<br><br>Continue targeted outreach:<br>• PBJ<br>• LR<br>• WW<br>• OR<br>• Tribune<br>• OPB |
| Myth-busting/ Transparency | | *Side by side comparison of OHA/FC proposed solutions. (TBD)*<br><br>***Rapid response***: *Personalized, informal email to key reporters correcting* | ***Rapid response***: *Personalized, informal email to key reporters correcting inaccuracies in FC statements. (TBD)* | ***Rapid response***: *Personalized, informal email to key reporters correcting inaccuracies in FC statements. (TBD)* | ***Rapid Response***: *Personalized, informal email to key reporters correcting inaccuracies in FC statements. (TBD)* |

FCI0200360

| | | | | | |
|---|---|---|---|---|---|
| | | *inaccuracies in FC statements. (TBD)*<br><br>*Update HST web site to show CCO financial position. (TBD)*<br>• *Email link to key media.* | | | |
| CCO outreach | | *Update memo to CCOs who may be affected by transition(TBD):*<br>• *OHA focused on equitable settlement that protects integrity of system.*<br>• *OHA will facilitate smooth transition, if necessary.* | | *Update memo to all CCOs (if OHA prevails).*<br><br>*Update memo to all CCOs affected by transition (if OHA prevails).*<br><br>Conference call with CCOs affected by transition (if OHA prevails). | |
| Member outreach | | | | *Letter to FC members.*<br><br>*Automated calls in home languages.*<br><br>*Hotline for transition questions.* | *Letter to FC members.*<br><br>*Automated calls in home languages.*<br><br>*Hotline for transition questions.*<br><br>*Paid media in community news outlets/digital.*<br><br>*Sponsored social media.* |

**Metrics**

FCI0200361

- Legislators are comfortable with OHA's efforts to settle dispute – based on the number and tenor of calls we receive from legislators.
- Earned media accurately reflects OHA's messages and priorities at every stage of the process.
    - Prominence: OHA's messages in first 1-2 paragraphs of articles
    - Placement: coverage reflects OHA's targeted outreach.
    - Accuracy: Media reports correct Family Care misinformation.
- CCOs are comfortable and informed – based on informal feedback in phone calls/emails.
- Members report little anxiety or disruption – based on a significant increase in calls to Member Services.

FCI0200362

**OHA's settlement solution is fair to FC and protects members and taxpayers.**

- OHA has proposed a settlement that allows repayment over time.
- OHA's offer accounts for disproportionate impact of rate recalculation on FC.

**OHA is forced to serve breach of contract notice to protect integrity of CCO system.**

- CMS: no valid 2015 contract in place.
- With no valid 2015 contract, OR is liable for as much as $500M.
- OHA cannot agree to special treatment for one CCO.

**OHA is working toward a fair settlement with Family Care that protects OHP members and Oregon taxpayers.**

**OHA has proposed a settlement that maintains sound CCO rates and protects state General Fund.**

- State is liable for $55M owed CMS if FC doesn't reimburse rate overpayment.
- State is liable for more than $500M if FC does not agree to 2015 contract.

**OHA's priority is a settlement, but we are prepared to maintain members' coverage and benefits through a transition, if necessary.**

- Proof of urgency and commitment: OR at risk for $500M if FC defaults on contract.
- If no settlement: we are working with other CCOs to cover FC members.

FCI0200363

Rates and FamilyCare – Frequently asked questions – March 2016

How is OHA trying to resolve the overpayment issue with FamilyCare?
The Oregon Health Authority (OHA) presented FamilyCare with a plan for resolving the more than $55 million in rate overpayment FamilyCare received in 2015 to provide care to Oregon Health Plan (OHP) members. OHA offered a monetary settlement to address concerns that FamilyCare had the most significant rate difference when revised 2015 rates were implemented to address issues with the original 2015 rates. This plan would also allow FamilyCare to have an extended period to make the necessary repayments, through December of 2018.

In exchange, FamilyCare would agree to reimburse Oregon for the remaining overpayments; drop its lawsuit challenging OHA to revise rates set for FamilyCare; and agree that they should not have a separate or different methodology than other CCOs.

What is the role of CMS?

The Center for Medicare and Medicaid Services is the third party to Oregon's Medicaid contract with the federal government.

OHA has been advised by the federal government's Center for Medicare and Medicaid Services (CMS) that FamilyCare does not have a valid 2015 or 2016 contract in place. Without an agreement in place, FamilyCare is not in compliance with its state contract to provide coordinated care to Oregon Health Plan (OHP) members in the tri-county metro region. Despite the lack of contract, OHP members will continue to receive their health plan benefits and are not at risk of losing coverage.

Why didn't OHA accept the proposed solution that FamilyCare offered?

After analyzing FamilyCare's proposed solution, OHA concluded FamilyCare's proposed solution would:

- Be inconsistent with CMS approved 2015 and 2016 rate methodologies;
- Treat FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS; and
- Require addition taxpayer dollars to pay FamilyCare instead of benefiting some of Oregon's most vulnerable citizens-- Oregon Health Plan members.

How many CCOs have signed 2015 contract amendments?
To date, 15 of 16 CCOs have signed their 2015 rate amendments. Those rates were approved by CMS in December 2015. The February 2016 letter from CMS confirmed that FamilyCare does not have an approved contract for 2015 or 2016.

How many OHP members are enrolled in FamilyCare? What's their capacity?
Approximately 128,000 OHP members are enrolled in FamilyCare. They are approved to serve up to 240,000 members.

FCI0200364

Has FamilyCare had a chance to review their rates with OHA?
OHA remains committed to transparency and this was a priority during the 2015 rate redevelopment process. Individuals meetings were held with all the CCOs, including FamilyCare, to review the methodology and answer any questions.

Why were rates redeveloped?
In January 2015, eleven of Oregon's coordinated care organizations sent a letter to Governor Kitzhaber saying 2015 rates were flawed.

In particular, the issues raised were that the rates varied widely without explanation for CCOs within the same region and that 2015 rates had been developed without transparency.  The coordinated care organizations also expressed concern that the 2015 final rates were not presented until late in December 2014 and without adequate opportunity to review.

How did the lawsuit between OHA and FamilyCare develop?
FamilyCare notified OHA that the 2015 rates were not actuarially sound and needed to be redeveloped by law March 2016, prior to seeing the revised 2015 rates. Their lawsuit was filed in May 2015. FamilyCare sued asking for the rates to be redeveloped, which OHA had begun at that time – and then completed in August 2015.

How did OHA work with Oregon's CCOs to redevelop the rates?
In March 2015, OHA convened Oregon's coordinated care organizations to discuss the challenges and opportunities of redeveloping rates. The outcome of the meeting was that OHA would contract with the actuarial consultant, Optumas, to redevelop the 2015 rates using a revised 2015 rate methodology and certification.

At the request of Oregon's coordinated care organizations and with the consent of the Centers for Medicare and Medicaid Services, OHA began redeveloping 2015 rates in April 2015, seeking not only to address the 2015 methodological issues but also to establish a solid financial foundation for Oregon's health system in 2016 and beyond. OHA hired Optumas as its actuarial consultant to redevelop the 2015 rate methodology and the 2015 rates, as well develop a methodology that could be applied to future rates.

OHA, coordinated care organizations, and Optumas developed the new methodology through a transparent, intensive process. This process included over 100 meetings between coordinated care organizations, OHA staff, and Optumas. Close coordination, partnership, and transparency with CCOs and their actuaries were key to this successful process. A revised rate methodology and certification for 2015 was completed in August and the same methodology is used for the 2016 rates.

Did FamilyCare participate in the rate redevelopment meetings with CCOs?
A representative from FamilyCare attended all group meetings. For 2015, FamilyCare attended five individual meetings and 16 group meetings, for a total of 21 meetings on 2015 rate development.  For 2016, FamilyCare attended three individual meetings and six group meetings,

FCI0200365

for a total of nine meetings.

What is an overpayment?
As defined in OAR 410-120-0000, overpayment "means a payment made by the Authority to a provider in excess of the correct Authority payment amount for a service. Overpayments are subject to repayment to the Authority."

OHA contracts with Coordinate Care Organizations specifically define overpayments as "Any payments received by Contractor from OHA under this Contract, and any other payments received by Contractor from OHA, or any other source to which Contractor is not entitled under the terms of this Contract shall be considered an overpayment and may be recovered by OHA from Contractor."

Would the federal government cover the cost of a settlement?
Funding for a settlement is not available through federal dollars.

FCI0200366

| From: | Saxton Lynne |
|---|---|
| To: | Darby BethAnne |
| CC: | Fairbanks Mark R |
| Sent: | 1/17/2017 11:23:04 AM |
| Subject: | Fwd: slide deck |
| Attachments: | ATT00001.htm; Deck for FCI-OHA Meeting v 3.pptx |

BethAnne - here is the slide deck for today's dispute resolution process. First, this is a good heads up about the sophistication of their communication. Second, this will be helpful to us in developing our communication strategy and timeline. Please let us know when you would like to schedule discussion of our strategy. Mark, Lori, Zach and Jeff Wahl should be include in the first discussion and Ted and Renee after we have reviewed a draft internally. Thank you.

Sent from my iPad

Begin forwarded message:

**From:** Fairbanks Mark R <MARK.R.FAIRBANKS@dhsoha.state.or.us>
**Date:** January 17, 2017 at 11:15:12 AM PST
**To:** Saxton Lynne <LYNNE.SAXTON@dhsoha.state.or.us>
**Subject: Fwd: slide deck**

Of interest and still in session but will call around noonish

Sent from my iPhone

Begin forwarded message:

**From:** "Fairbanks Mark R" <MARK.R.FAIRBANKS@dhsoha.state.or.us>
**To:** "GUEST Chelsea A" <Chelsea.A.GUEST@dhsoha.state.or.us>, "Fritsche Jeffrey P" <JEFFREY.P.FRITSCHE@dhsoha.state.or.us>, "Jones Kayla" <KAYLA.JONES@dhsoha.state.or.us>
**Subject: Fwd: slide deck**

Sent from my iPhone

Begin forwarded message:

**From:** "Falk Theodore C" <theodore.falk@doj.state.or.us>
**To:** "Coyner Lori A" <LORI.A.COYNER@dhsoha.state.or.us>, "Fairbanks Mark R" <MARK.R.FAIRBANKS@dhsoha.state.or.us>, "Chauhan Varsha" <VARSHA.CHAUHAN@dhsoha.state.or.us>, "Zachary Aters" <zachary.aters@optumas.com>, "Barry Jordan" <barry.jordan@optumas.com>
**Cc:** "WAHL Jeffrey" <Jeffrey.WAHL@doj.state.or.us>, "STINEMAN Renee" <Renee.STINEMAN@doj.state.or.us>, "SCOTT Carla A" <Carla.A.SCOTT@doj.state.or.us>
**Subject: Fwd: slide deck**

For today's meeting

Ted Falk
Oregon Department of Justice
503-947-4430<tel:503-947-4430> (Salem office); 971-673-1980<tel:971-673-1980> (Portland office);

FCI0200367

Ex. 14 - 2nd Simpson Decl.
Page 132 of 164

503-931-0517<tel:503-931-0517> (mobile)
Please note changed DOJ mobile number: 503-931-0517<tel:503-931-0517>

Begin forwarded message:

From: "Gordon, Matthew P. (Perkins Coie)"
<MGordon@perkinscoie.com<mailto:MGordon@perkinscoie.com>>
To: "Falk Theodore C" <theodore.falk@doj.state.or.us<mailto:theodore.falk@doj.state.or.us>>
Subject: slide deck

Matthew Gordon | Perkins Coie LLP
COUNSEL
D. +1.206.359.3552
F. +1.206.359.4552
E. MGordon@perkinscoie.com<mailto:%20MGordon@perkinscoie.com>

_____

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

FCI0200368



FCI0200369
Ex. 14 - 2nd Simpson Decl.
Page 134 of 164

## Dispute Resolution Ground Rules

The parties agreed to at least three substantive dispute resolution discussions, followed by mediation if necessary

The parties agreed to a "free and open discussion" regarding:

- The appropriate application of actuarial rates
- The appropriateness of the methodology used by Optumas
- Whether geographic areas come into play
- The actuarial soundness of the rates

2  Perkins Coie LLP  |  PerkinsCoie.com

PERKINSCOIE

2

FCI0200370

## Dispute Resolution Ground Rules

The parties agreed that the Dispute Resolution Process would include:

- An explanation by OHA why it believes the rates are sound
- Any alternative sound methodology proposed by FamilyCare

The parties agreed to:

- Work cooperatively
- Provide information "that either OHA's or FamilyCare's actuary believes is relevant and necessary to evaluate actuarial rates, subject to protection of confidential information"

3  Perkins Coie LLP | PerkinsCoie.com

PerkinsCoie

3

## Dispute Resolution Process

### FCI's goals for this meeting:

- Establish what information FCI's actuary, Milliman, believes is relevant and necessary

- Establish when and how that information will be provided to FCI

  - Establish any necessary protections for confidential information

- Establish a framework for future meetings

4   Perkins Coie LLP  |  PerkinsCoie.com

PERKINSCOIE

4

FCI0200372

## Dispute Resolution Process

### Going forward:

- Upon receipt of the requested information, Milliman will evaluate rate development

- FCI will present its analysis and, per the Dispute Resolution Agreement, any suggested alternative

- FCI will consider, in good faith, OHA's explanation about why it considers the 2017 rates to be actuarially sound

- FCI will continue to work cooperatively with OHA

5  Perkins Coie LLP | PerkinsCoie.com

PERKINSCOIe

5

FCI0200373

Ex. 14 - 2nd Simpson Decl.
Page 138 of 164

## FamilyCare, Inc.

### FCI has been an MCO since 1985

- Currently the second-largest CCO
- Serves more than 120,000 members
  - FCI serves 13% of Oregon Medicaid
- FCI's business model has proven successful at delivering high-quality health services to Oregon residents for 30 years

6  Perkins Coie LLP | PerkinsCoie.com

PerkinsCOie

6

FCI0200374

## The Problem

### FCI's 2017 rates are too low to cover expenses

- 2017 is the third year in a row where rates are below projected costs
- 2017 operating loss is projected at $55 million
- Unsustainable trajectory for FCI

### • FCI's rates have been the lowest of all CCOs since 2014

- FCI is the only plan that has a proposed operating loss
- FCI rates: 15.5% lower than 3 other large plans ($64 million)

7    Perkins Coie LLP  |  PerkinsCoie.com

PerkinsCoie

7

FCI0200375

## The Questions:

- How did we get here?

  - Do FCI's 2017 rates as constructed indicate that FCI is incapable of providing appropriate care to its members efficiently?

  - Or is there some other explanation?

- Where in the rate development process did rates become disconnected from FCI's costs?

8   Perkins Coie LLP  |  PerkinsCoie.com

PERKINSCOIE

8

FCI0200376

## FCI's Dilemma

- FCI needs to evaluate whether the rates are too low because:

    - FCI has a different business model from other CCOs; or

    - The rate development process disfavors FCI

- But information provided to FCI to date is insufficient

9   Perkins Coie LLP  |  PerkinsCoie.com

PerkinsCoie

9

FCI0200377

## Background

### Before 2015

- Each CCO developed an "Experience Rate," based on its own experience, for review by OHA

### 2015-2017

- Methodology changed:
  - OHA developed a "Risk Adjusted Community Rate"
  - OHA presented rates to CCOs

10  Perkins Cole LLP  |  PerkinsCole.com

PerkinsCoie

FCI0200378

# Background: Legal Framework

## Global Budget– ORS § 414.620

- **Goal:** encourage CCOs to innovate to reduce costs and improve care

  - Intent: flexibility in spending
  - Allows profitability (CCO can keep profits earned within global budget)

- Reasonable inflation in rates for planning and stability

- Anticipates actuarially sound rates for each CCO

11  Perkins Coie LLP | PerkinsCoie.com

PerkinsCoie

11

FCI0200379

# Background: Legal and Historical Practice

**Clawback Prohibition**

- Limits on retroactive amendments
- Enacted in 2016 — HB 4107

**Transparency**

- Pre-July 2014, all data available in statewide data book
- Since July 2014: Trade secret claim (ORS § 192.501)

**CMS Regulations and the 1115 Waiver**

- Recent approval of waiver renewal
- "Actuarially sound" defined in regulations

12  Perkins Coie LLP  |  PerkinsCoie.com                                    PERKINSCOIE

12

FCI0200380

## Background: Settlement Agreement

- **Executed May 2016 to resolve dispute over 2015 and 2016 rates**
- **Included Settlement Credit reducing amount payable by FCI**
- **The parties agreed that:**
  - **OHA shall not use either (1) rates paid to FCI under the 2016 Contract or (2) the Settlement Credit to limit the amount paid to FCI in future rate years**
  - **OHA will establish a process for CCOs to request verification from an Independent Consulting Actuary**

13  Perkins Coie LLP  |  PerkinsCoie.com

PerkinsCoie

13

FCI0200381

## Questions about Rate Development Process

Overall question: Why are FCI's 2017 rates insufficient to provide for FCI's projected costs?

Answer requires a detailed understanding of:
- How the 2017 rates were developed
- Data that was used
- Policy decisions that were made

14 Perkins Coie LLP | PerkinsCoie.com

PERKINSCOIE

14

FCI0200382

## Questions about Rate Development Process

### The starting point:  Regional Base Data

- Unusual approach—inconsistent with other comparable states (*e.g.*, WA, HI, UT), which use statewide, not regional, average

- Potentially penalizes plans in a region where health care is delivered more efficiently
    - Superior performance should lead to better earnings (*see* Global Budget concept)
    - But this approach leads to a cycle: lower costs→ reduced regional average→ reduced adjustments → lower rates
    - And could discourage plans in other regions from lowering costs

- Unclear: whether implicit rate adjustments were checked for appropriateness?

15  Perkins Coie LLP  |  PerkinsCoie.com

PerkinsCoie

15

FCI0200383

## Questions about Rate Development Process

### Adjustments to Regional Base Data to Create Regional Base Rate

- Some adjustments are made using a percentage of regional base data, so adjustments compound the impact of starting with a lower base

- Unclear whether this step includes appropriate checks on impact of regional adjustments

### Risk Adjustment

- Tri-County ACA population was randomly assigned between FCI and HealthShare

- But FCI's ACA population was calculated as less risky in every age group – need to understand why

16  Perkins Coie LLP  |  PerkinsCoie.com

PERKINSCOIe

16

FCI0200384

# Questions about Rate Development Process

Adjustments to Costs
- "Reimbursement review" for increased costs

- "Adjusted Financials"
  - FCI's increased payment to providers = $34MM decrease in contribution to Regional Base Data

- "Reimbursement adjustment" for CCOs that were "outliers and above a sustainable growth"

17   Perkins Coie LLP | PerkinsCoie.com

PERKINSCOIE

17

FCI0200385

## Information FCI's actuary believes is relevant and necessary to evaluate actuarial rates

- Data to determine impact of starting with regional base rate

- Utilization and unit cost details for all regions

- Encounter-based files for all regions

- Raw concurrent risk scores

- Details of adjustments to regional base data

- Policy decisions regarding rate development

18  Perkins Coie LLP  |  PerkinsCoie.com

PerkinsCoie

18

FCI0200386

## Next Steps

- Timeline for production of information to Milliman
- Presentation by OHA regarding actuarial soundness of 2017 rates
- Presentation by FCI regarding results of analysis of 2017 rate development and potential alternative approach

19  Perkins Coie LLP  |  PerkinsCoie.com

PERKINSCOIE

19

FCI0200387

DRAFT

Attorney Client Privilege

(Insert reporter's name):

I wanted to give you an update on OHA's negotiations with Family Care. As you know, this dispute is about the $55 million rate overpayment Family Care received in 2015 and Family Care's lack of CMS-approved contracts for 2015 and 2016.

At the most basic level, this disagreement has been driven by Family Care from the start. Family Care objected to its 2015 rates and asked that rates be redeveloped. While OHA was collaborating with Family Care and the other CCOs to develop new rates, Family Care filed suit. In the meantime, Optumas – the independent actuarial firm setting the rates – determined Family Care and other CCOs were actually being overpaid. Now, Family Care has refused to return its overpayment and continues to contest its rates (despite having agreed to 2016 rates), based on a rate redevelopment process they demanded.

While we are disappointed Family Care rejected OHA's most recent offer, we remain hopeful we can find an agreement. Both sides have an interest in a clear, timely resolution. OHA has participated in mediation and negotiation with Family Care for a year now, despite a tone and rhetoric Family Care has employed which is combative and personally demeaning toward OHA's leadership. OHA is committed to ending this dispute.

Given the current impasse, I want to clarify the key issues and correct some of the statements Family Care has made in recent weeks:

- **Family Care is not entitled to keep the $55 million in 2015 rate overpayments**: Family Care's rates are paid for through state dollars and federal matching funds – i.e., Family Care is negotiating over public dollars they received in the form of an overpayment. The overpayment was a direct result of a rate redevelopment process Family Care and other CCOs initiated in 2015. Until the overpayment issue is resolved, Family Care does not have a CMS-approved contract for 2016, according to CMS.
- **Family Care is not entitled to receive a rate of its choosing within the CMS-approved rate range**: Family Care and the other CCOs were assigned rates Optumas developed based on the health risks of each CCO's member population. While Family Care contends they should receive 100 percent of the approved range, OHA is obligated to pay CCOs within CMS-approved parameters:
    o The rates must be actuarially sound for each CCO, according to Optumas.
    o The rates one CCO receives cannot be inequitable in relation to rates paid to other CCOs in the range, otherwise all rates would have to be revised upward. Upward revision to the rates of multiple CCOs jeopardizes OHA's waiver agreement with CMS to stay within a 3.4 percent growth limit.

FCI0200388

- **OHA's proposed rates are actuarially sound and do not jeopardize the financial health of any CCOs:** The health and well-being of OHP members depends on the financial strength and stability of the CCOs that serve them. As partners in health care transformation, OHA is committed to the success of all of Oregon's CCOs – the actuarially sound rates approved by Optumas are designed to ensure CCOs are able to serve OHP members profitably. There is no external evidence that Family Care's rates are unsustainable, or that Family Care is financially unable to return its overpayment:
  - In 2014, Family Care's operating margin was greater than 20 percent, by far the highest margin of any CCO (see attached chart).
  - Through the first nine months of 2015, Family Care's operating margin was approximately 5 percent.
  - No other CCOs have reported operating deficits under the current CMS-approved rates.
  - All other CCOs have paid back their 2015 rate overpayments.

  OHA and Optumas are responsible for paying CCOs appropriate rates approved by CMS. *Oregon and its actuaries are not responsible for business decisions CCOs make that affect their operating margin: e.g., provider contracts, operating expenses (including staff compensation and benefits) and other costs.*

- **Family Care's offer to return a portion of its rate overpayment in exchange for federally-funded enhanced rates puts federal funding for Oregon's Medicaid program at risk**:  Family Care has publicized its offer to repay $47.3 million of its 2015 rate overpayment, in exchange for receiving enhanced rates in 2016 and 2017 for the expanded population eligible for coverage under the ACA. While Family Care is correct in stating their enriched rates would not have an impact on the state general fund (since the expansion population is currently paid for 100 percent through federal dollars), Family Care's windfall risks pushing Oregon's Medicaid expenses past the 3.4 percent CMS-allowed growth rate, since OHA would be obligated to treat all other CCOs equitably and enrich their rates as well. Exceeding the 3.4 percent growth limit would put federal participation in OHP funding at risk.

If we can't reach an agreement, Family Care will be in breach of contract with the state. As we move forward, it is OHA's responsibility to resolve this dispute in a way that protects coverage and benefits for OHP members, maintains federal participation in Oregon's Medicaid program and provides equitable treatment for all CCOs. While we continue to press for a settlement, we can't compromise these principles or allow this process to drag out indefinitely.

Please let me know if you have questions. If you'd like, I'd be happy to set up a time for you to talk more with Lynne or Lori Coyner (our state Medicaid director) if you'd like clarification on any of these issues.

FCI0200389

---

| From: | Saxton Lynne |
|---|---|
| To: | Falk Theodore C |
| CC: | Jones Kayla; Chauhan Varsha; Fairbanks Mark R; VANDEHEY Jeremy * GOV; Darby BethAnne; WAHL Jeffrey; STINEMAN Renee; WAHL Jeff *OHA; Zachary Aters; SCOTT Carla A; McFetridge Christopher R; Marcott Mikayla; OGAN Sadie L * GOV; Souza Theresa |
| Sent: | 12/30/2016 3:46:29 PM |
| Subject: | Re: FamilyCare v. OHA: Mediation Strategy |
| Attachments: | image001.jpg |

Thank you. Good outcome - appreciate everyone's efforts here! Theresa, please get appropriate dates on the schedule as soon as possible.

Sent from my iPad

> On Dec 30, 2016, at 12:26 PM, Falk Theodore C
>
> Lynne,
>
> We have arrived at closure with FamilyCare counsel on the Dispute Resolution Agreement. Renee and Steve English will sign it when we meet at the Perkins Coie office at 2pm.
>
> Version 1G shows todays changes, and version 1H is clean. The only other change before signature will be to remove the December 29, 2016 reference in the first paragraph.
>
> As I explained to you this morning, the draft we delivered to FamilyCare yesterday evening mistakenly did not include all of the changes OHA intended. That was corrected in this morning's draft. Here is where we ended up on the key issues:
>
>
> 1. Timing. The first discussion will occur by January 17, and the second within 30 days. There may be a third discussion, but it is not scheduled.
>
> 2. Mediation. Mediation is optional, not mandatory. FamilyCare will pay for the mediator.
>
> 3. Communications. No restrictions. Confidential information may be exchanged through an independent third party.
>
> FamilyCare plans to sign and deliver its 2017 Amendment through normal channels once the Dispute Resolution Agreement is signed.
>
> Let me know if you have any questions.
>
> Ted
>
> Ted Falk
> Oregon Department of Justice
> Today's phone: 971-673-1980 (Portland office)
> Alternate phones: 503-947-4430 (Salem office); 503-931-0517 (mobile)
> Please note changed DOJ mobile number: 503-931-0517
>
> From: Falk Theodore C
> Sent: Friday, December 30, 2016 8:02 AM
> To: Saxton Lynne
> Cc: 'Jones Kayla'; 'Chauhan Varsha'; 'Fairbanks Mark R'; VANDEHEY Jeremy * GOV; 'Darby BethAnne'; Wahl Jeffrey; Stineman Renee; 'WAHL Jeff *OHA'; 'Zachary Aters'; Scott Carla A; 'McFetridge Christopher R'; 'Marcott Mikayla'; OGAN Sadie L * GOV
> Subject: FW: FamilyCare v. OHA: Mediation Strategy
>
> Lynne,
>
> Below is FamilyCare's response. Their #1 is fine. Their #2, however, requires your decision as to what timing is acceptable for the dispute resolution sessions.

FCI0200390

>
> Renee can live with their #2. However, I don't know why only Steve English's schedule should count. Scheduling three sessions in six weeks could be a strain for DOJ, OHA, and Optumas, and could move things toward mediation in the second half of February. I suggest countering:
>
> "We have serious scheduling problems on our end as well. As to #2 we suggest: 'with the first discussion occurring no later than January 17, 2017 and the second discussion occurring no later than 30 days following that date.' With Steve's schedule as tight as you have indicated, mediation wouldn't be able to begin in the second half of February anyway. We also think time may be necessary to fulfill informational requests that arise from the initial two discussion sessions."
>
> Let us know whether to accept their language or to counteroffer along these lines. If we go with a counteroffer for #2, I expect FC may want a hard outer date for the discussion sessions to be completed; if so I suggest March 31.
>
> Ted
>
> Ted Falk
> Oregon Department of Justice
> Phones: 971-673-1980 (Portland office); 503-947-4430 (Salem office); 503-507-8335 (mobile)
> Today I am out of the office. Please connect via email.
>
> From: MCurtice@perkinscoie.com<mailto:MCurtice@perkinscoie.com> [mailto:MCurtice@perkinscoie.com]
> Sent: Thursday, December 29, 2016 5:45 PM
> To: Falk Theodore C
> Cc: Johnson, Thomas R., Jr. (Perkins Coie); Gordon, Matthew P. (Perkins Coie); English, Stephen F. (Perkins Coie); Wahl Jeffrey; Scott Carla A; Stineman Renee
> Subject: RE: FamilyCare v. OHA: Mediation Strategy
>
> Ted,
>
> We are close to agreement on the language. We have the following two requested changes:
>
> (1) Item #1. Revise the sentence "FamilyCare understands and agrees that OHA may represent to CMS that the 2017 Amendment is binding under state law" to read OHA may represent to CMS that the 2017 Amendment is binding under state law.
>
> (2) Item #6. Add the following phrase after the sentence that ends with "during the next 30 days" ", with the first discussion occurring no later than January 17, 2017 and the remaining discussions occurring no later than 30 days following that date." Steve has a serious timing issue if these discussions go past that date. He is mediating 42 cases out of state, beginning in mid- to late February.
>
> We accept the other changes in your mark-up.
>
> If these changes are agreeable and we can finalize the agreement, Jeff will come to the office tomorrow and sign the agreement and the 2017 contract. Steve is available until 10:30 tomorrow morning and then again after 12:30. It probably makes sense schedule a time for you, Renee, Jeff, and Steve to meet for signing.
>
> Thank you again for your responsiveness and availability.
>
> --Melanie
>
> Melanie K. Curtice | Perkins Coie LLP
> PARTNER
> D. +1.206.359.3092
> F. +1.206.359.4092
> C: +1.206.714.6069
> 1201 Third Avenue, Suite 4900
> Seattle, WA 98101
> E. MCurtice@perkinscoie.com<mailto:%20MCurtice@perkinscoie.com>
>
> From: Falk Theodore C [mailto:theodore.falk@doj.state.or.us]
> Sent: Thursday, December 29, 2016 4:41 PM
> To: Curtice, Melanie K. (SEA)
> Cc: Johnson, Thomas R., Jr. (POR); Gordon, Matthew P. (SEA); English, Stephen F. (POR); Wahl Jeffrey; Scott Carla A;

FCI0200391

Stineman Renee

> Subject: RE: FamilyCare v. OHA: Mediation Strategy

>

> Melanie,

>

> Here are the changes we request.

>

> I will be in my PDX office tomorrow and am also willing to come over to your office. Jeff Wahl will be out. Renee Stineman is standing by to sign once the language is final.

>

> Ted

>

> Ted Falk

> Attorney-in-Charge | Health and Human Services Section | General Counsel Division

> Phones: 971-673-1980 (Portland office); 503-947-4430 (Salem office); 503-931-0517 (mobile)

> Please note changed DOJ mobile number: 503-931-0517

>

> From: MCurtice@perkinscoie.com<mailto:MCurtice@perkinscoie.com> [mailto:MCurtice@perkinscoie.com]

> Sent: Thursday, December 29, 2016 2:13 PM

> To: Falk Theodore C; Stineman Renee

> Cc: Johnson, Thomas R., Jr. (Perkins Coie); Gordon, Matthew P. (Perkins Coie); English, Stephen F. (Perkins Coie); Wahl Jeffrey; Scott Carla A

> Subject: RE: FamilyCare v. OHA: Mediation Strategy

>

> Thank you.

>

> Melanie K. Curtice | Perkins Coie LLP

> PARTNER

> D. +1.206.359.3092

> F. +1.206.359.4092

> C: +1.206.714.6069

> 1201 Third Avenue, Suite 4900

> Seattle, WA 98101

> E. MCurtice@perkinscoie.com<mailto:%20MCurtice@perkinscoie.com>

>

> From: Falk Theodore C [mailto:theodore.falk@doj.state.or.us]

> Sent: Thursday, December 29, 2016 2:12 PM

> To: Curtice, Melanie K. (SEA); Stineman Renee

> Cc: Johnson, Thomas R., Jr. (POR); Gordon, Matthew P. (SEA); English, Stephen F. (POR); Wahl Jeffrey; Scott Carla A

> Subject: RE: FamilyCare v. OHA: Mediation Strategy

>

> Melanie, I am acknowledging receipt. We will be back in touch before COB today. Ted

>

> Ted Falk

> Attorney-in-Charge | Health and Human Services Section | General Counsel Division

> Phones: 971-673-1980 (Portland office); 503-947-4430 (Salem office); 503-931-0517 (mobile)

> Please note changed DOJ mobile number: 503-931-0517

>

> From: MCurtice@perkinscoie.com<mailto:MCurtice@perkinscoie.com> [mailto:MCurtice@perkinscoie.com]

> Sent: Thursday, December 29, 2016 1:39 PM

> To: Falk Theodore C; Stineman Renee

> Cc: Johnson, Thomas R., Jr. (Perkins Coie); Gordon, Matthew P. (Perkins Coie); English, Stephen F. (Perkins Coie); Wahl Jeffrey; Scott Carla A

> Subject: RE: FamilyCare v. OHA: Mediation Strategy

>

> Dear Ted and Renee,

>

> I am following up on Steve's behalf.

>

> Thank you for sending the marked version of the strategy document. We accepted your changes, and then marked that version with additional requested changes and that version is attached. We believe the intent of your changes is preserved, while at the same time clarified a couple of points.

>

FCI0200392

> If you and OHA agree with the changes, the letter, now characterized as an agreement, can be finalized for signatures.
>
> We sincerely appreciate your efforts to move this process to the next phase.
>
> Best regards,
> Melanie
>
> Melanie K. Curtice | Perkins Coie LLP
> PARTNER
> D. +1.206.359.3092
> F. +1.206.359.4092
> C: +1.206.714.6069
> 1201 Third Avenue, Suite 4900
> Seattle, WA 98101
> E. MCurtice@perkinscoie.com<mailto:%20MCurtice@perkinscoie.com>
>
> From: Falk Theodore C [mailto:theodore.falk@doj.state.or.us]
> Sent: Wednesday, December 28, 2016 3:29 PM
> To: English, Stephen F. (POR)
> Cc: Johnson, Thomas R., Jr. (POR); Gordon, Matthew P. (SEA); Curtice, Melanie K. (SEA); Stineman Renee; Wahl Jeffrey; Scott Carla A
> Subject: RE: FamilyCare v. OHA: Mediation Strategy
>
> Steve,
>
> I am attaching your letter, marked with the changes we suggest. Perhaps the most important of these would commit the parties to at least three dispute resolution discussions before entering into formal mediation.
>
> In general, we have preserved the tone and approach of your letter. Please let us know if these changes are acceptable.
>
> Ted
>
> Ted Falk
> Oregon Department of Justice
> Today's phone: 971-673-1980 (Portland office)
> Alternate phones: 503-947-4430 (Salem office); 503-931-0517 (mobile)
> Please note changed DOJ mobile number: 503-931-0517
>
> From: Anderson, Diane M. (Perkins Coie) [mailto:DAnderson@perkinscoie.com] On Behalf Of English, Stephen F. (Perkins Coie)
> Sent: Tuesday, December 27, 2016 3:45 PM
> To: Falk Theodore C; Stineman Renee; 'billm@familycareinc.org'; 'JeffH@familycareinc.org'
> Cc: Johnson, Thomas R., Jr. (Perkins Coie); Gordon, Matthew P. (Perkins Coie); MCurtice@perkinscoie.com<mailto:MCurtice@perkinscoie.com>; English, Stephen F. (Perkins Coie)
> Subject: FamilyCare v. OHA: Mediation Strategy
>
> Attached is a pdf copy of a letter sent today from Steve English to Renee Steinman regarding suggested mediation protocol in the referenced matter.
>
> Sincerely,
>
> Diane
>
> Diane Anderson | Perkins Coie LLP
> LEGAL SECRETARY
> 1120 N.W. Couch Street Tenth Floor
> Portland, OR 97209-4128
> D. +1.503.727.2107
> F. +1.503.727.2222
> E. DAnderson@perkinscoie.com<mailto:%20DAnderson@perkinscoie.com>
> [cid:image001.jpg@01D26058.249E0510]
>
>

FCI0200393

> _____
>
> NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.
> *****CONFIDENTIALITY NOTICE*****
>
> This e-mail may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this e-mail in error, please advise me immediately by reply e-mail, keep the contents confidential, and immediately delete the message and any attachments from your system.
>
> *********************************
>
> _____
>
> NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.
>
> _____
>
> NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.
>
> _____
>
> NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.
> <image001.jpg>
> <JUSTICE-#7947726-v1H-FamilyCare-OHA_Protocol_December_2016.docx>
> <JUSTICE-#7947726-v1G-FamilyCare-OHA_Protocol_December_2016.DOCX>

FCI0200394

Ex. 14 - 2nd Simpson Decl.
Page 159 of 164

PERKINSCOIE

FCI0200395

## Family Care Rate Change Summary

| COA | May 2015 MMs | 2014 Rate | 2015 Rate | 1H 2016 Rate | 2H 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| TANF | 7,024 | $ 332.50 | $ 349.41 | $ 351.51 | $ 361.69 | $ 341.51 |
| PLMA | 2,844 | $ 323.15 | $ 430.80 | $ 416.87 | $ 419.60 | $ 337.84 |
| CHILD 00-01 | 4,176 | $ 476.10 | $ 526.53 | $ 527.94 | $ 527.97 | $ 567.96 |
| CHILD 01-05 | 15,083 | $ 123.09 | $ 121.86 | $ 124.04 | $ 132.87 | $ 134.80 |
| CHILD 06-18 | 29,954 | $ 144.06 | $ 140.33 | $ 140.07 | $ 141.01 | $ 146.57 |
| DUAL-MEDS | 1,615 | $ 199.16 | $ 245.11 | $ 256.15 | $ 266.52 | $ 326.09 |
| ABAD & OAA | 3,029 | $ 820.80 | $ 1,079.79 | $ 1,150.65 | $ 1,161.33 | $ 1,238.10 |
| CAF | 1,591 | $ 625.37 | $ 517.83 | $ 517.89 | $ 520.47 | $ 525.29 |
| ACA 19-44 | 40,359 | $ 508.08 | $ 296.93 | $ 308.65 | $ 316.49 | $ 304.56 |
| ACA 45-54 | 10,806 | $ 518.34 | $ 479.58 | $ 502.66 | $ 515.46 | $ 552.11 |
| ACA 55-64 | 9,038 | $ 549.08 | $ 512.94 | $ 538.97 | $ 550.05 | $ 583.17 |
| Maternity | 151 | $ 9,626.57 | $ 9,120.77 | $ 9,288.99 | $ 9,288.99 | $ 9,127.76 |
| Total (Non-ACA) | 65,315 | $ 255.22 | $ 272.32 | $ 276.36 | $ 280.86 | $ 285.46 |
| Total (ACA) | 60,203 | $ 516.08 | $ 362.14 | $ 378.05 | $ 387.26 | $ 390.82 |
| Total | 125,518 | $ 380.34 | $ 315.40 | $ 325.13 | $ 331.89 | $ 335.99 |

1) All rates shown are net of HRA.
2) SNRG rates not shown
3) ACA includes ACA 19-44, ACA 45-54, ACA 55-64
4) 2H 2016 reflects mid-year policy changes
5) Totals reflect weighted average using May 2015 Member Months (MMs)
6) Premium (Rates) do not include any settlement amounts from 2015 mediation

| COA | May 2015 MMs | 2014 Rate | 2015 Rate | 1H 2016 Rate | 2H 2016 Rate | 2017 Rate |
|---|---|---|---|---|---|---|
| Total (Non-ACA) | 65,315 | $ 255.22 | $ 272.32 | $ 276.36 | $ 280.86 | $ 285.46 |
| % Change | | | 6.7% | 1.5% | 1.6% | 1.6% |
| Total (ACA) | 60,203 | $ 516.08 | $ 362.14 | $ 378.05 | $ 387.26 | $ 390.82 |
| % Change | | | -29.8% | 4.4% | 2.4% | 0.9% |
| Total | 125,518 | $ 380.34 | $ 315.40 | $ 325.13 | $ 331.89 | $ 335.99 |
| % Change | | | -17.1% | 3.1% | 2.1% | 1.2% |







FCI0200396

# ACA Rates vs Actual Medical Cost

| COA | May 2015 MMs | 2014 Rate | 2014 Medical Cost | 2015 Rate | 2015 Medical Cost |
|---|---|---|---|---|---|
| ACA 19-44 | 40,359 | $ 508.08 | $ 221.40 | $ 296.93 | $ 261.12 |
| ACA 45-54 | 10,806 | $ 518.34 | $ 356.87 | $ 479.58 | $ 449.23 |
| ACA 55-64 | 9,038 | $ 549.08 | $ 387.08 | $ 512.94 | $ 492.76 |
| Total (ACA) | 60,203 | $ 516.08 | $ 270.59 | $ 362.14 | $ 329.66 |
| Implied MLR | | | 52.4% | | 91.0% |

1) Rates are shown net of HRA

2) Total (ACA) is calculated using May 2015 MMs for weighting

3) 2014/2015 Actual cost is based on submitted financial template
   The 2014 Medical cost column includes 2015 dental rates as a placeholder,
   since those costs are omitted from FC 2014 template.

4) Implied MLR is just an estimate using the submitted financial template





FCI0200397

Ex. 14 - 2nd Simpson Decl.
Page 162 of 164

# Medical PMPMs

| Medical PMPMs | FamilyCare | HealthShare |
|---|---|---|
| CY2014 | $ 243.79 | $ 324.88 |
| CY2015 | $ 294.67 | $ 334.29 |
| CY2016 (Through March) | $ 327.85 | $ 336.75 |
| Growth Rates | FamilyCare | HealthShare |
| 2014/2015 | 20.9% | 2.9% |
| 2015/2016 | 11.3% | 0.7% |



1)  Medical PMPMs are based on Income Statements provide to OHA



FCI0200398

# Risk Factor Summary

| COA | FamilyCare | HealthShare | Diff |
|---|---|---|---|
| TANF | 0.95 | 1.03 | -8.4% |
| PLMA | 1.00 | 1.00 | 0.0% |
| CHILD 00-01 | 1.00 | 1.00 | 0.0% |
| CHILD 01-05 | 0.97 | 1.01 | -3.9% |
| CHILD 06-18 | 1.01 | 1.00 | 1.6% |
| ABAD & OAA Duals | 1.00 | 1.00 | 0.0% |
| ABAD & OAA Medicaid Only | 0.86 | 1.03 | -16.2% |
| CAF | 1.00 | 1.00 | 0.0% |
| ACA 19-44 | 0.94 | 1.04 | -9.4% |
| ACA 45-54 | 0.94 | 1.04 | -9.1% |
| ACA 55-64 | 0.95 | 1.03 | -8.0% |
| BCCP | 1.00 | 1.00 | 0.0% |



1) Risk Factors are normalized across Tri-County region
2) A risk factor of 1.0 reflects average risk for COAs that are risk adjusted
3) The following COAs are not risk adjusted:  BCCP, CAF, ABAD&OAA Duals, PLMA and Child 00-01



FCI0200399