**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Matthew A. Levin, OSB #003054**
MattLevin@MarkowitzHerbold.com
**Renée E. Rothauge, OSB #903712**
ReneeRothauge@Markowitzherbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Tele: (503) 295-3085
Fax:  (503) 323-9105

Special Assistant Attorneys General for Oregon
Health Authority, an agency of the State of Oregon,
and Patrick Allen, both individually and in his official
capacity as director of the Oregon Health Authority

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>Plaintiff,<br><br>v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>Defendant. | Case No. 3:18-cv-00212-MO (Leading)<br>Case No. 6:18-cv-00296-MO (Trailing)<br><br>**PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**<br><br>**Request for Oral Argument** |
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>Plaintiff,<br><br>v. | |

**PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

OREGON HEALTH AUTHORITY, an
agency of the State of Oregon,

Defendants.

## TABLE OF CONTENTS

CERTIFICATION ............................................................................................................... 1

MOTIONS ........................................................................................................................... 1

MEMORANDUM IN SUPPORT OF MOTIONS ............................................................. 1

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 2

III.    LEGAL STANDARDS ............................................................................................. 4

IV.     ARGUMENT ............................................................................................................ 4

        A.      This Court should grant the pending motions to dismiss ......................................... 4

        B.      OHA has a statutory duty to the federal government—but *not* to
                FamilyCare—to establish actuarially sound capitation rates .................................. 5

                1.      Only the federal government can insist upon actuarially sound
                        capitation rates under federal law. ................................................................. 5

                2.      The settlement agreement between the parties confirms that
                        only the federal government, and not FamilyCare, can require
                        OHA to set actuarially sound rates. ............................................................... 7

                3.      State law does not provide a right of action to FamilyCare ........................... 7

        C.      Federal law preempts FamilyCare's APA claims (Claims Four and
                Eleven). .................................................................................................................... 8

        D.      FamilyCare's Section 1983 and 1985 claim for damages is barred by
                the doctrines of sovereign and qualified immunity ................................................. 9

                1.      Sovereign immunity bars FamilyCare's claims against OHA
                        and Allen in his official capacity. ................................................................. 9

                2.      Qualified immunity bars FamilyCare's claim against Allen in
                        personal capacity ...................................................................................... 11

CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Agua Caliente Band of Cahuilla Indians v. Hardin*
223 F. 3d 1041 (2000)...................................................................................... 10

*Alexander v. Sandoval*
  532 U.S. 275 (2001)........................................................................................ 7

*Anderson v. Creighton*
  483 U.S. 635 (1987)...................................................................................... 11

*Armstrong v. Exceptional Child Center, Inc.*
  135 S. Ct. 1378 (2015).............................................................................. 5, 6, 9

*Brosseau v. Haugen*
  543 U.S. 194, (2004).................................................................................... 11

*College Sav. Bank v.  Florida Prepaid Postsecondary Educ. Expense Bd.*
  527 U.S. 666 (1999)...................................................................................... 10

*Emerald Steel Fabricators, Inc. v. Bureau of Labor & Indus.*
  348 Or. 159 (2010)......................................................................................... 8

*Fantasy, Inc. v. Fogerty*
  984 F.2d 1524 (9th Cir. 1993)
  *rev'd on other grounds*, 510 U.S. 517 (1994)................................................... 4

*Fed. Mar. Com'n v. S.C. State Ports Auth.*
  535 U.S. 743 (2002)........................................................................................ 9

*Gonzaga Univ. v. Doe*
  536 U.S. 273 (2002)...................................................................................... 12

*Harlow v. Fitzgerald*
  457 U.S. 800 (1982)...................................................................................... 11

*In re Marriage of McDuffy*
  184 Or. App. 359 (2002)............................................................................... 12

*Indep. Living Ctr. of S. Cal., Inc. v. Maxwell–Jolly*
  572 F.3d 644 (9th Cir.2009) ........................................................................ 10

*Lee v. City of Los Angeles*
  250 F.3d 668 (9th Cir. 2001) ..................................................................... 4, 6

*Mitchell v. Forsyth*
  472 U.S. 511 (1985)...................................................................................... 11

*Pearson v. Callahan*
  555 U.S. 223 (2009)................................................................................. 11, 12

*Pennhurst State Sch. & Hosp. v. Halderman*
  465 U.S. 89 (1984)........................................................................................ 10

**Page ii -  PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO
       DISMISS**

*Quern v. Jordan*
    440 U.S. 332 (1979).............................................................................................. 11

*Seminole Tribe of Fla. v. Florida*
    517 U.S. 44 (1996).............................................................................................. 10

*Soranno's Gasco, Inc. v. Morgan*
    874 F.2d 1310 (9th Cir. 1989) ............................................................................ 13

*Stewart v. North Carolina*
    393 F. 3d 484 (4th Cir. 2005) ............................................................................. 10

*Swartz v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007) ............................................................................... 4

*Will v. Michigan Dep't of State Police*
    491 U.S. 58 (1989).......................................................................................... 10, 11

*WMX Technologies, Inc. v. Miller*
    197 F.3d 367 (9th Cir. 1999) ............................................................................. 12

## Statutes and Other Authorities

28 U.S.C. § 1450 ...................................................................................................... 4

42 C.F.R. § 438.4 ................................................................................................... 3, 6

42 C.F.R. § 438.6 ...................................................................................................... 6

42 U.S.C. § 1396b ............................................................................................... 3, 6, 9

LR 7-1(a)(1) ............................................................................................................. 1

Fed. R. Civ. P. 12 ................................................................................................... 1, 4

Fed. Rules Evid. Rule 201 ....................................................................................... 4

OAR 410-141-3010(15)............................................................................................ 8

ORS 414.625 ............................................................................................................. 8

## CERTIFICATION

Pursuant to LR 7-1(a)(1), the parties have made a good faith effort to resolve this dispute and have been unable to do so.

## MOTIONS

Pursuant to Rule 12(b)(6), Rule 12(f), and Rule 12(h)(3) of the Federal Rules of Civil Procedure, the Oregon Health Authority ("OHA") and Patrick Allen ("Allen") move this Court to dismiss as follows:

1.      To grant the motions to dismiss that were pending before the case was removed to this Court (Claims Six, Seven, Eight, and Nine in the Third Amended Complaint);

2.      To dismiss each claim that depends upon FamilyCare, Inc.'s ("FamilyCare") allegation that it has a right or entitlement to sue OHA because it believes its contract rates are actuarially unsound in violation of federal Medicaid law and, alternatively, to strike all such allegations;

3.      To dismiss Claims Four and Eleven of FamilyCare's Third Amended Complaint, alleging violations of the Oregon Administrative Procedures Act, because those claims are preempted by federal law; and

4.      To dismiss and/or strike the First Claim for Relief as to damages, because FamilyCare's claim for damages against OHA and Allen in his official capacity is barred by sovereign immunity and Allen is entitled to qualified immunity as to any claim against him in his individual capacity.

## MEMORANDUM IN SUPPORT OF MOTIONS

## I.      INTRODUCTION

FamilyCare's Third Amended Complaint includes eleven claims that, while varying in their particulars, are permeated with a single premise: the rates that OHA pays FamilyCare under contracts to provide services through the Medicaid program in Oregon are "actuarially unsound." FamilyCare's premise implicates the fundamental (and well-regulated) relationship between the federal and state government, thereby creating a question of significant federal importance:  does

**Page 1 -   PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO
            DISMISS**

a managed care organization like FamilyCare have the same rights and entitlements as the federal government to enforce Medicaid regulations?  More specifically framed, does FamilyCare have the authority to sue OHA because it believes that its contracts contain actuarially unsound rates?

As explained below, the answer is no.  OHA has a statutory duty to the federal government—but not to FamilyCare—to establish actuarially sound rates.  OHA is committed to fulfilling that statutory requirement and the federal government, in 2017, concluded that OHA had in fact established actuarially sound rates.  But the federal government is the *exclusive* authority with respect both to the conditions relating to actuarial soundness as well as the consequences imposed on a state that does not comply with those conditions.  The federal government has the right to insist upon actuarially sound rates; FamilyCare does not.  This Court should therefore dismiss all of FamilyCare's allegations and claims that rely on the fallacy that FamilyCare has a right to challenge or enforce the actuarial soundness of its rates.

To the extent that FamilyCare alleges that the state Administrative Procedures Act ("APA") somehow creates a right that does not otherwise exist under federal law, that claim is preempted for the same reasons: only the federal government can require OHA to use actuarially sound rates, only the federal government determines whether the rates are, in fact, actuarially sound, and only the federal government can penalize OHA if it determines that the rates are not sound.

Finally, the qualified immunity doctrine bars FamilyCare's First Claim for Relief against Allen in his individual capacity, and sovereign immunity bars that same claim for damages against OHA and Allen in his official capacity.

## II.    BACKGROUND

Medicaid is a joint federal and state program that provides federal funds to states that maintain a medical assistance program for the elderly and disabled, and for families with dependent children.  (Third Amended Complaint ("T.A.C.") ¶ 7.)  In Oregon, OHA administers the Medicaid program.  (*Id*. at ¶ 2.)  OHA does not directly provide health care to low-income

**Page 2 -   PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

individuals.  Instead, OHA contracts with Coordinated Care Organizations ("CCO"), which in turn contract with health care providers to provide direct patient care.  (*Id*. at ¶ 9.)

OHA pays for the cost of providing those services under the contracts by making per month, per member "capitation payments."  (*Id*. at ¶ 11.)   The federal government, through the Centers for Medicare and Medicaid Services ("CMS"), in turn provides funds to states, like Oregon, which participate in Medicaid.   (*Id*. at ¶ 12.)

FamilyCare is one of 16 CCOs in Oregon.  (T.A.C. ¶ 11.)  OHA and FamilyCare are parties to a five-year Coordinated Care Organization Contract (the Contract).  (T.A.C. ¶ 20.)  The Contract became effective in 2014, and OHA implements new rates for capitation payments each subsequent year through an amendment to the Contract.  (*Id*.)

Shortly after entering into the Contract, FamilyCare began complaining that its rates were not "actuarially sound."  (*Id*. at ¶¶ 21, 23.)   "Actuarial soundness" in the Medicaid context has its origins in federal law.  The precise contours of those laws will be explored in greater detail below, but in broad strokes, because CMS funds a portion of the capitation payments, CMS requires that the states only pay CCOs rates that are actuarially sound.  (*Id*. at ¶¶ 11, 12.); 42 C.F.R. § 438.4(b) ("[c]apitation rates for MCOs[1] . . .  must be reviewed and approved by CMS as actuarially sound."); 42 U.S.C. § 1396b(m)(2)(A)(iii).

FamilyCare's complaints about the actuarial soundness of the rates contained in annual rate amendments culminated in a series of lawsuits, including this one.  This lawsuit arose out of a rate amendment that the parties executed on December 30, 2016 (the "2017 Rate Amendment").  FamilyCare then amended its complaint to bring claims involving the one-month rate amendment that the parties executed in 2018.  (*Id*. ¶¶ 39, 75.)  FamilyCare alleges that the rates in these two rate amendments are actuarially unsound, impacting FamilyCare's bottom line. (*Id*. ¶¶ 4, 65.)  As explained below, FamilyCare has no right to sue OHA to enforce Medicaid laws; that right rests exclusively with the federal government.

---

[1] MCO stands for "Managed Care Organization."  CCOs are a form of MCO.

**Page 3 -   PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

## III.    LEGAL STANDARDS

A court must dismiss a claim if the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may strike any immaterial matter from a pleading. Fed. R. Civ. P. 12(f). "Immaterial" matter is "that which has no essential or important relationship to the claim for relief[.]" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). A court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice[,]" but a court may also consider "a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). A court may also consider and take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), citing Fed. R. Civ. P. 12(b)(6), Fed. Rules Evid. Rule 201.

## IV.    ARGUMENT

### A.    This Court should grant the pending motions to dismiss.

Before this case was removed to federal court, OHA had filed motions to dismiss four of FamilyCare's claims in its Second Amended Complaint: (1) breach of implied covenant of good faith and fair dealing (settlement agreement); (2) breach of the dispute resolution agreement; (3) breach of the implied covenant of good faith and fair dealing (dispute resolution agreement); and (4) intentional interference with economic relations. The motion, opposition, and reply are attached herein. (Declaration of Harry B. Wilson ("Wilson Decl."), Exs. 1-3.)

FamilyCare's Third Amended Complaint makes substantively identical claims.[2] The parties have fully briefed the motions to dismiss, and the trial court heard oral argument on November 27, 2017. OHA respectfully requests that this Court rule on those pending motions. 28 U.S.C. § 1450 (when an action is removed, "other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.").

---

[2] The claims have been renumbered. In the Second Amended Complaint, those claims were Fifth, Sixth, Seventh and Eighth claims for relief. In the Third Amended Complaint, those claims are now the Sixth, Seventh, Eighth, and Ninth claims for relief.

**Page 4 -    PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

**B.**      **OHA has a statutory duty to the federal government—but *not* to FamilyCare—to establish actuarially sound capitation rates.**

**1.**      **Only the federal government can insist upon actuarially sound capitation rates under federal law.**

As noted above, threaded throughout FamilyCare's Third Amended Complaint is the central premise that FamilyCare was entitled to actuarially sound capitation rates. *E.g.* First Claim for Relief (FamilyCare has a legitimate claim of entitlement to "actuarially sound capitation rates"); Third Claim for Relief (OHA's use of actuarially unsound rates violates the Settlement Agreement); Tenth Claim for Relief (FamilyCare had a reasonable expectation to, among other rights, actuarially sound rates).  But because FamilyCare has no right to sue OHA to enforce the laws that it perceives OHA to have violated, every allegation in which FamilyCare relies upon a right to sue OHA to obtain what it believes to be actuarially sound rates must be dismissed.

FamilyCare admits that federal law is the genesis of its allegations that it is entitled to sue OHA to obtain actuarially sound rates: "because CMS funds a portion of the capitation payments, the payments must comply with federal law and regulations.  Under federal law and regulations, OHA's payment rates to the CCOs, including FamilyCare, must be actuarially sound."  (T.A.C. ¶ 12.)  From that, FamilyCare extrapolates that if the rates that OHA sets are actuarially unsound, FamilyCare has a legal claim against OHA.

FamilyCare's extrapolation fundamentally misunderstands the contours of the legal relationship between OHA and the federal government.  Medicaid "offers the States a bargain: Congress provides federal funds in exchange for the States' agreement to spend them in accordance with congressionally imposed conditions." *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1382 (2015).  One of those "congressionally imposed conditions" is that a contract between a state and a CCO must be "made on an actuarially sound basis and under

///

///

///

**Page 5 -   PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

which the Secretary must provide prior approval[.]" 42 U.S.C. § 1396b(2)(m)(A)(iii).[3] 42 C.F.R. § 438.4(b) similarly requires that "[c]apitation rates for MCOs . . . be reviewed and approved by CMS as actuarially sound[,]" providing nine standards by which CMS must review rates to determine whether they are actuarially sound.

But the "sole remedy" that the law imposes for a state's failure to comply with those requirements—"for the State's 'breach' of the Spending Clause contract—is the withholding of Medicaid funds by the Secretary of Health and Human Services." *Armstrong*, 135 S. Ct. at 1385; *see also* 42 U.S.C. § 1396b(m)(2)(A) (if the state does not comply with the requirement of actuarially sound rates, "no payment shall be made" by the federal government). The federal government thus both holds the carrot and wields the stick: if the state provides Medicaid services to its citizens, Congress will provide federal funds, but if the state fails to abide by congressionally imposed conditions, Congress—and *only* Congress—may withhold those funds. *Armstrong*, 135 S. Ct. at 1385 ("sole remedy" for noncompliance with federal law is the withholding of Medicaid funds).[4]

Contrary to FamilyCare's allegations, however, the federal law described above is not a source of rights *for* FamilyCare. The law does not create a parallel right for a coordinated care organization, like FamilyCare, to demand that the state set actuarially sound rates in its contractual dealings. Rather, the laws regulate, exclusively, the relationship between the federal government and the state. The rights that the federal government has to take action against a state do not trickle down to a coordinated care organization, nor can a coordinated care

---

[3] "Actuarially sound" rates are in turn defined as those which are "projected to provide for all reasonable, appropriate, and attainable costs that are required under the terms of the contract and for the operation of the MCO, PIHP, or PAHP for the time period and the population covered under the terms of the contract, and such capitation rates are developed in accordance with the requirements in paragraph (b) of this section." 42 CFR § 438.4.

[4] In fact, that regulatory structure can be seen in the events of this case. In accordance with its obligations to submit its rates to CMS for approval, OHA did so. CMS approved the capitation rates in accordance with 42 C.F.R. § 438.6, which, among other requirements, includes a requirement that rates be actuarially sound. (Wilson. Decl., Ex. 4, March 27, 2017 Letter from CMS. OHA asks this Court to take judicial notice of this document as one that is a matter of public record. *Lee*, 250 F. 3d 669 (a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment).

**Page 6 -   PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

organization stand in the shoes of the government and assert rights that only the federal government has. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (rejecting idea that a private party can enforce federal law against a state in the absence of Congressional approval).

Because that is precisely what FamilyCare seeks to do, this Court should dismiss and strike all allegations in FamilyCare's complaint where FamilyCare asserts that it is entitled to any form of relief deriving from purported actuarially unsound rates.

**2.      The settlement agreement between the parties confirms that only the federal government, and not FamilyCare, can require OHA to set actuarially sound rates.**

The parties' own transactional documents reflect the regulatory framework just described. In 2016, the parties entered into a settlement agreement. Although the majority of the granular details of that agreement are not germane to this motion, several provisions bear note. First, the settlement agreement expressly provides that that OHA has the authority to set the rates "subject to CMS approval[.]" (T.A.C., Ex. 2, p. 3.) It further provides that OHA "must establish to the satisfaction of CMS that the rates are actuarially sound," in accordance with federal law and regulations. (*Id*.) In signing the agreement, the parties also acknowledged that "CMS approves CCO contracts and the rates contained therein that *CMS finds* to be actuarially sound and developed in accordance with Actuarially Sound Principles[.]" (*Id*.) (emphasis added.) Finally, the agreement specifies that "OHA is not obligated to adjust the rates paid to any CCO to ensure that such rates cover all costs that a CCO has incurred during a rate year[.]" (*Id*.)

The settlement agreement thus reflects the legal landscape that overlays the relationship between OHA and FamilyCare: OHA has the authority to set the rates, and CMS is the ultimate arbiter of the soundness of those rates. FamilyCare has no legal right to insist upon more.

**3.      State law does not provide a right of action to FamilyCare.**

FamilyCare also invokes state law in an attempt to devise a private right of action, a right that, as just described, does not otherwise exist under federal law. (T.A.C. ¶¶ 115, 155.) Yet the provisions it relies upon fall well short of establishing a right of action for FamilyCare.

**Page 7 -   PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

For instance, ORS 414.625 provides a laundry list of requirements for CCOs. It mandates that OHA adopt rules setting qualification criteria and requirements for CCOs. But that statute does not suggest that a CCO can bring suit against OHA if a CCO believes that the rates in its contract are actuarially unsound. Likewise, ORS 414.652 addresses OHA's contracting authority with CCOs. It states generally that CCO contracts shall be for a five-year term with a single amendment permitted each year. It also provides OHA the right to cancel a contract if the CCO is in breach. Once again, nothing permits FamilyCare to sue OHA in an attempt to impose FamilyCare's vision of "actuarially sound" rates.

OAR 410-141-3010(15) requires OHA to obtain federal approval of CCO contracts: "The Authority shall interpret and apply this rule to satisfy federal procurement and contracting requirements in addition to state requirements applicable to contracts with CCOs. The Authority must seek and receive federal approval of CCO contracts." That rule simply underscores the point made above: CMS, and not OHA, has the ultimate authority to approve contracts and the actuarial soundness of the rates therein.

Finally, FamilyCare's reliance on Actuarial Standard of Practice 49 ("ASOP 49") is similarly unavailing. (*See* T.A.C. ¶¶ 115, 155.) That standard is, as its name suggests, nothing more than a guideline that "provides guidance to actuaries when performing professional services related to Medicaid . . . capitation rates." (Wilson Decl., Ex. 5 at 1.1.) The document fails to establish a private right of action to FamilyCare to enforce Medicaid regulations.

      **C.**     **Federal law preempts FamilyCare's APA claims (Claims Four and Eleven).**

For many of the same reasons that FamilyCare cannot co-opt the federal government's right to insist upon actuarially sound rates, FamilyCare's attempt to invoke the state APA also fails. More precisely, federal law preempts FamilyCare's claims under the APA. This Court should therefore dismiss the Fourth and Eleventh Claims for Relief.

Federal law preempts state laws that are in actual conflict with federal law. *Emerald Steel Fabricators, Inc. v. Bureau of Labor & Indus.*, 348 Or. 159, 172–73 (2010). An actual conflict exists when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 175 (quoting *Freightliner Corp. v. Myrick*, 514 U.S.

**Page 8 -**  **PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

280, 287 (1995)).  Here, Medicaid laws preempt FamilyCare's state APA claims because they conflict with congressional intent to preclude any private right of action to enforce that statute.[5]

As described above, the United States Supreme Court has affirmed that the "sole remedy" for a state's failure to comply with Medicaid's requirements is "the withholding of Medicaid funds by the Secretary of Health and Human Services."  *Armstrong*, 135 S. Ct. at 1385.  In *Armstrong*, a company that provided services under Medicaid sued Idaho, claiming that the reimbursement rates were lower than what Medicaid permitted.  In rejecting the company's claim, the Court observed that the Medicaid laws provide for the withholding of Medicaid funds by the federal government.  *Id*. at 1384-85.  That "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  *Id*. at 1385 (internal citation omitted).  Underscoring that fact is the "judicially unadministrable nature" of the Medicaid laws.  *Id*.  In other words, the complexity of enforcing the Medicaid laws, combined with the express provision of an administrative remedy, demonstrates that the Medicaid Act "precludes private enforcement[.]"  *Id*.

For a court to allow private enforcement through state law would not only impose an obstacle to CMS' execution of its Congressional mandate, it would entirely undermine Congress's express determination of how best to accomplish the purpose of § 1396b(m)(2)(A)(iii).  Federal law thus preempts FamilyCare's attempted invocation of the APA to create a private right of action to enforce § 1396b(m)(2)(A)(iii).

**D.      FamilyCare's Section 1983 and 1985 claim for damages is barred by the doctrines of sovereign and qualified immunity.**

**1.      Sovereign immunity bars FamilyCare's claims against OHA and Allen in his official capacity.**

Axiomatically, a state and its officials are immune from suit by private parties in federal court, absent a valid abrogation of immunity by Congress or an express waiver of immunity by the state.  *Fed. Mar. Com'n v. S.C. State Ports Auth.*, 535 U.S. 743, 753 (2002) (recognizing two

---

[5] FamilyCare raises two separate APA claims, one based on the 2017 rates and one on the 2018 rates.  The arguments with respect to preemption apply identically to both claims.  (T.A.C. ¶¶ 112-118, 152-157.)

**Page 9 -    PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

forms of sovereign immunity: (1) sovereign immunity under the Eleventh Amendment, which bars federal lawsuits against states and (2) sovereign immunity under the broader doctrine of state sovereign immunity, which shields a state from liability in both federal and state court unless it has consented to be sued); *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell–Jolly*, 572 F.3d 644, 660 (9th Cir.2009) (broader doctrine of state sovereign immunity predates the Constitution). Simply put, "federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (internal citations omitted). That immunity extends to state agencies and departments. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Despite that fundamental, well-established principle of law, FamilyCare's First Claim for Relief alleges civil rights violations and conspiracy to commit civil rights violations based on a theory that defendants "deprived and conspired to deprive FamilyCare of its constitutionally protected property interests, without due process of law." (T.A.C. ¶ 88). FamilyCare seeks $50,000,000 in damages. (*Id*. at ¶ 90.) FamilyCare also seeks declaratory relief.[6] (*Id*. at p. 49.)

Sovereign immunity is a complete bar to FamilyCare's claim for damages against OHA and Allen in his official capacity. Although the state waived Eleventh Amendment immunity by virtue of removal to federal court, *see College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999), it did not waive its state sovereign immunity. *Stewart v. North Carolina*, 393 F. 3d 484, 490-91 (4th Cir. 2005) (a state does not waive its state sovereign immunity by virtue of removal to federal court). OHA has not consented to being sued in this Court. Nor has Congress abrogated that immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (Section 1983 provides a "federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a

---

[6] OHA is not moving to dismiss FamilyCare's claim for declaratory relief, both because sovereign immunity is not a bar to prospective declaratory and injunctive relief, *see Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F. 3d 1041, 1045 (2000), and because FamilyCare's claim for declaratory relief presents questions both of fact and law, rendering the claim less susceptible to a motion to dismiss.

**Page 10 - PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

remedy against a State for alleged deprivations of civil liberties.");[7] *Quern v. Jordan*, 440 U.S. 332, 341 (1979) (court was "unwilling to believe, on the basis of such slender 'evidence,' that Congress intended by the general language of Section 1983 to override the traditional sovereign immunity of the states."). Thus, sovereign immunity plainly applies and this Court lacks jurisdiction to entertain FamilyCare's claim for damages against OHA and Allen in his official capacity.

### 2. Qualified immunity bars FamilyCare's claim against Allen in personal capacity.

FamilyCare's Sections 1983 and 1985 claim against Allen in his individual capacity fails under the doctrine of sovereign immunity.[8] Qualified immunity shields government officials from suit when they make decisions that, even if constitutionally deficient, reasonably misapprehend the law governing the circumstances confronted. *Brosseau v. Haugen*, 543 U.S. 194, 202 (2004); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Officials lose qualified immunity only when "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity is immunity from suit, not merely a defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Like absolute immunity, qualified immunity is immunity from suit that is effectively lost if a case is erroneously permitted to go to trial. *Id*.

To determine whether an official enjoys qualified immunity, the court must consider whether the public official violated a constitutional right and whether that right was "clearly established" at the time of the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the answer to either inquiry favors the official, the defendant is entitled to

---

[7] Perhaps more precisely, the Court held that sovereign immunity bars a §1983 claim against the state, because a state (or an official acting in his or her official capacity) is not a "person" as §1983 uses that term. *Id*. at 64-66.

[8] FamilyCare's heading to its First Claim for Relief states that the claim is as against "Defendants Patrick Allen and Oregon Health Authority". (T.A.C. at p. 33.) FamilyCare does not specify whether the claim is against Allen in an individual capacity, nor does FamilyCare allege anywhere in its claim any specific violations by Allen in his individual capacity.

**Page 11 - PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

qualified immunity. *Id.* at 236 (explaining that district courts should be permitted to exercise discretion to consider which qualified immunity prong to consider first).

FamilyCare alleges that Allen violated its right not to be deprived of its property interests without due process. FamilyCare identifies two specific property interests of which it was purportedly deprived, namely, its "goodwill" and its "legitimate claim of entitlement to" actuarially sound rates. (T.A.C. ¶¶ 85-88.) As established above, however, FamilyCare has no private right to enforce the Medicaid laws; OHA's duty to create actuarially sound rates runs only to the federal government. Framed slightly differently, the only entity with a "legitimate claim of entitlement to" actuarially sound rates is the federal government. FamilyCare thus fails to demonstrate that it has such a right—let alone a clearly established right—to insist upon actuarially sound rates. *See also Gonzaga Univ. v. Doe,* 536 U.S. 273, 292 (2002) (Section 1983 cannot be used as a vehicle to enforce violations of the Medicaid Act). FamilyCare's claim to deprivation of that alleged property right therefore fails.

Similarly, a party has no clearly established right to a party's constitutionally protected interest in its goodwill. FamilyCare's complaint alleges little more than an injury to its reputation. *See* T.A.C. at ¶¶ 85-86 (alleging that goodwill is comprised of, among other things, a company's reputation, and alleging that FamilyCare's goodwill was a product of "FamilyCare's commitment to providing high-quality, low-cost preventative care with reasonable reimbursement for providers."). While a business's reputation is one component of goodwill, it is not a constitutionally protected property right. *WMX Technologies, Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir. 1999) (en banc) ("damage to the reputation of a business, without more, does not rise to the level of a constitutionally protected property interest"). Thus, FamilyCare cannot show that Allen violated any right, let alone a clearly established one.

Even if FamilyCare's complaint could be construed to allege a property interest in its goodwill above and beyond its reputation, FamilyCare still fails to state a claim. That is because no clearly established right to goodwill (beyond reputation) exists under Oregon law. Although Oregon courts have defined what goodwill means, *see In re Marriage of McDuffy*, 184 Or. App. 359, 365 (2002), Oregon law has never recognized a constitutional right to goodwill. *Cf.*

**Page 12 - PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

*Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989) (finding a property interest in California's statutory definition of goodwill to create a protected property interest).  In the absence of a clearly established right to goodwill, FamilyCare cannot demonstrate that Allen violated any clearly established right to which FamilyCare is entitled.

In short, no clearly established law exists of which Allen should have been aware.  Allen is therefore entitled to dismissal of the claim against him in an individual capacity.

## CONCLUSION

For the reasons stated herein, this Court should grant relief as follows:

1.    Dismiss Claims Six, Seven, Eight, and Nine for the reasons set forth in OHA's motion to dismiss the Second Amended Complaint;

2.    Dismiss each claim and allegation in FamilyCare's complaint to the extent that the claim depends on an alleged right to (and deprivation of) actuarially sound rates (Claims One, Two, Three, Four, Five, Six, Eight, Ten and Eleven);

3.    Dismiss Claims Four and Eleven on the additional, independent ground that federal law preempts them;

4.    Dismiss the Section 1983 claim against the State (including against Patrick Allen in his official capacity) for damages (Claim One) on sovereign immunity grounds, and dismiss the Section 1983 claim for damages against Patrick Allen in his individual capacity (also First Claim for Relief) should be dismissed based on qualified immunity on qualified immunity grounds.

DATED this 15th day of March, 2018.

> ELLEN ROSENBLUM
> ATTORNEY GENERAL
> FOR THE STATE OF OREGON
>
>
> By:    */s/ Matthew A. Levin*
>     David B. Markowitz, OSB #742046
>     DavidMarkowitz@MarkowitzHerbold.com
>     Matthew A. Levin, OSB #003054
>     MattLevin@MarkowitzHerbold.com
>     Renée E. Rothauge, OSB #903712
>     ReneeRothauge@Markowitzherbold.com

**Page 13 - PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**

Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com
*Special Assistant Attorneys General for*
*Oregon Health Authority, and Patrick*
*Allen, both individually and in his official*
*capacity as director of the Oregon Health*
*Authority*

**Page 14 - PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS**