Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Matthew P. Gordon, *pro hac vice*
MGordon@perkinscoie.com
Brian P. Samuelson, OSB No. 165476
BSamuelson@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official Capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>     Plaintiff,<br><br>  v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>     Defendant. | No. 3:18−cv−00212−MO (LEAD)<br>No. 6:18−cv−00296−MO<br><br>FAMILYCARE, INC.'S MOTION TO DISMISS<br><br>ORAL ARGUMENT REQUESTED |
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>     Plaintiff,<br><br>  v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>     Defendant. | |

FAMILYCARE, INC.'S MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

LOCAL RULE 7-1 CERTIFICATION ............................................................................... 1

MOTION............................................................................................................................. 1

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

LEGAL STANDARD......................................................................................................... 5

ARGUMENT...................................................................................................................... 7

    A.    Judicial review of state agency action is consistent with and critical to the cooperative state-federal regime established by the Medicaid Act ....................... 8

    B.    CMS's ability to withhold funds from a non-compliant state Medicaid plan does not preempt judicial review of state agency action taken under the Act........................................................................................................................ 10

        1.    OHA has not met the high bar of establishing that Congress's clear and manifest purpose was to shield the agency from APA review.......... 10

        2.    *Armstrong* provides no support for OHA's preemption argument ......... 13

CONCLUSION.................................................................................................................. 16

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Altria Group, Inc. v. Good*,
   555 U.S. 70 (2008)..................................................................................................7

*Armstrong v. Exceptional Child Ctr., Inc.*,
   135 S. Ct. 1378 (2015)..................................................................................... passim

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................................6

*Atay v. County of Maui*,
   842 F.3d 688 (9th Cir. 2016) .................................................................................10

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir.1990) ....................................................................................5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 555 (2007)..........................................................................................6

*BT Bourbonnais Care, LLC v. Norwood*,
   866 F.3d 815 (7th Cir. 2017) .................................................................................16

*Chamber of Commerce of U.S. v. Whiting*,
   563 U.S. 582 (2011)................................................................................................11

*Christ the King Manor, Inc. v. Sec'y of Dept. of Health & Human Servs.*,
   730 F.3d 291 (3d Cir. 2013)...................................................................................14

*Douglas v. Indep. Living Ctr. of S. Cal., Inc.*,
   565 U.S. 606 (2012)...............................................................................................2, 8

*English v. General Elec. Co.*,
   496 U.S. 72 (1990)....................................................................................................7

*Florida Lime & Avocado Growers, Inc. v. Paul*,
   373 U.S. 132 (1963)..................................................................................................6

*Gade v. Nat'l Solid Wastes Mgmt. Assn.*,
   505 U.S. 88 (1992)....................................................................................................7

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Hillman v. Maretta*,
   569 U.S. 483 (2013)............................................................................6, 15

*Hillsborough County v. Automated Med. Labs., Inc.*,
   471 U.S. 707 (1985)...............................................................................7

*Hines v. Davidowitz*,
   312 U.S. 52 (1941).................................................................................6

*Huron Portland Cement Co. v. Detroit*,
   362 U.S. 440 (1960)...............................................................................7

*Legacy Cmty. Health Servs., Inc. v. Smith*,
   881 F.3d 358 (5th Cir. 2018) ...............................................................16

*Managed Pharmacy Care v. Sebelius*,
   716 F.3d 1235 (9th Cir. 2013) .............................................................14

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996)...........................................................................7, 12

*Metropolitan Life Ins. Co. v. Massachusetts*,
   471 U.S. 724 (1985)................................................................................7

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
   567 U.S. 519 (2012)................................................................................8

*Pharm. Research and Mfrs. Of Am. v. Walsh*,
   538 U.S. 644 (2003)................................................................................8

*Planned Parenthood of Kansas v. Andersen*,
   882 F.3d 1205 (10th Cir. 2018) ...........................................................16

*Rice v. Norman Williams Co.*,
   458 U.S. 654 (1982)...........................................................................7, 12

*Rice v. Santa Fe Elevator Corp.*,
   331 U.S. 218 (1947)................................................................................7

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir.1984) ............................................................... 5-6

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES
## (continued)

**Page**

*West Virginia Univ. Hosps., Inc. v. Casey*,
   885 F.2d 11 (3d Cir. 1989)..........................................................................................8

*Wilder v. Virginia Hosp. Ass'n*,
   496 U.S. 498 (1990)....................................................................................................2

*Wyeth v. Levine*,
   555 U.S. 555 (2009)..................................................................................................10

**STATUTES**

42 U.S.C. § 1315....................................................................................................................3

42 U.S.C. § 1396a .......................................................................................................... passim

42 U.S.C. § 1396b .......................................................................................................... passim

42 U.S.C. § 1396c ..............................................................................................................2, 11

42 U.S.C. § 1396d ..................................................................................................................2

ORS 183.480...............................................................................................................3, 9, 14

ORS 413.071.............................................................................................................3, 9, 12

**RULES**

Fed. R. Civ. P. 12(b)(6)......................................................................................................1, 5

**REGULATIONS**

42 C.F.R. § 430.10 .................................................................................................................2

42 C.F.R. § 431.10 .................................................................................................................9

42 C.F.R. § 438.4 .............................................................................................................10, 12

42 C.F.R. § 438.5 ........................................................................................................3, 9, 12, 15

OAR 410-141-3010 (15)........................................................................................................3

iv-  FAMILYCARE, INC.'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
(continued)

Page

OTHER AUTHORITIES

U.S. Const. art. VI, cl. 2................................................................................................6

v-   FAMILYCARE, INC.'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**LOCAL RULE 7-1 CERTIFICATION**

In compliance with Local Rule 7-1, the parties made a good faith effort to resolve the dispute, but have been unable to do so.

**MOTION**

Under Federal Rule of Civil Procedure 12(b)(6), FamilyCare, Inc. moves to dismiss the complaint for declaratory relief filed in Case No. 3:18-cv-00212.

**INTRODUCTION**

The Oregon Health Authority's (OHA) persistent failure to set adequate, actuarially sound capitation rates caused FamilyCare to sustain substantial operating losses, ultimately forcing FamilyCare to shutter its Medicaid business and cease providing services to Oregon Health Plan members. After years of disputes and multiple rounds of litigation regarding the sufficiency of the rates paid to FamilyCare, OHA now seeks to shield its rate-making decisions from judicial review on the ground that federal law preempts FamilyCare's claims under the Oregon Administrative Procedure Act (APA). OHA's attempt to avoid judicial scrutiny of its conduct is unsupportable, and its complaint for declaratory relief should be dismissed for two reasons.

First, FamilyCare's APA challenge to OHA's compliance with actuarial soundness requirements imposed by federal and state law is consistent with—and in no way conflicts with—the federal-state framework for administration of the Medicaid program. The Medicaid Act grants the states considerable discretion to administer their Medicaid programs in accordance with certain requirements, including the mandate that capitation payments to managed medical service providers be actuarially sound. Use of state law claims to ensure state agency compliance with the law is entirely consistent with the Medicaid system.

Second, the requirement that the federal Centers for Medicare & Medicaid Services (CMS) review state plans and withhold federal funding from plans that fail to comply with the

1-    FAMILYCARE, INC.'S MOTION TO DISMISS

Medicaid Act does not preempt state law challenges regarding the sufficiency of those plans. Relying on the U.S. Supreme Court's decision in *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015), OHA claims that the Medicaid Act preempts all claims related to a state agency's rate-setting decisions. But the Court's decision in *Armstrong* merely considered whether *federal law* furnished a private right of action to enforce compliance with a section of the Medicaid Act not at issue here. Neither *Armstrong* nor the scant factual allegations in OHA's complaint are sufficient to overcome the strong presumption against preemption.

For these reasons, OHA's complaint for declaratory relief should be dismissed with prejudice.[1]

## BACKGROUND

Medicaid is a cooperative federal-state program that provides health care to needy individuals. *Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 610 (2012). Under the program, the federal CMS provides financial assistance to participating states to reimburse the cost of providing medical care to the states' Medicaid-eligible citizens. *Id.* To qualify for federal funds, a state must submit to CMS a state Medicaid plan that details the nature and scope of the state's Medicaid program, and CMS must approve the plan. *Id; see also* 42 U.S.C. § 1396a(a), (b); 42 C.F.R. § 430.10. The federal government agrees to pay a specified percentage of the state's expenditures for covered services provided by the state under an approved state plan. *See* 42 U.S.C. §§ 1396b(a), 1396c, 1396d(b). Participation is voluntary, but once a state chooses to participate, it must comply with the Medicaid Act and its implementing regulations. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502 (1990).

---

[1] Even if OHA could cure the deficiencies in its complaint—and it cannot—there is no reason to grant OHA leave to amend given that FamilyCare has now asserted an APA claim challenging the 2018 rates, and any unresolved issues regarding preemption of that claim can be addressed through OHA's defense to FamilyCare's claim. Indeed, OHA has moved to dismiss FamilyCare's claims on preemption grounds. *See* Case 3:18-cv-00212, Dkt. 24

2-   FAMILYCARE, INC.'S MOTION TO DISMISS

Oregon's Medicaid Program, known as the Oregon Health Plan, is administered by OHA and operates with federal approval as a "demonstration project" under Section 1115 of the Social Security Act.  ORS 413.032; Case 3:18-cv-00212, Dkt. 1 ("OHA Complaint") ¶ 13-14.  Section 1115 gives CMS the authority to approve experimental state plans, which in turn gives states additional flexibility to design and improve their Medicaid programs for the benefit of their citizens.  42 U.S.C. § 1315; OHA Complaint ¶ 13.  As the agency in charge of administering the Oregon Health Plan, OHA is responsible for developing and implementing policies for the provision of publicly-funded medical care in the state.  ORS 413.032.

FamilyCare is one of 16 Coordinated Care Organizations (CCOs) that have entered into contracts with the Oregon Health Authority to provide health services to Oregon Health Plan members, and OHA sets the reimbursement rates for these 16 CCOs.  OHA Complaint ¶ 11-12. Under these contracts, OHA establishes a per-member, per-month "capitation" payment paid to the CCOs for the management of medical services for Medicaid-eligible Oregonians.  Federal law requires those capitation rates, which are set every year, to be "actuarially sound."  42 U.S.C. § 1396b(m)(2)(A)(iii); 42 C.F.R. § 438.5(b).

Oregon law also imposes the actuarial soundness requirement by mandating that OHA administer federally granted funds consistent with federal law.  *See* ORS 413.071 ("Notwithstanding any other provision of law, federal laws shall govern the administration of federally granted funds."); *see also* OAR 410-141-3010 (15) ("The Authority shall interpret and apply this rule to satisfy federal procurement and contracting requirements in addition to state requirements applicable to contracts with CCOs. The Authority must seek and receive federal approval of CCO contracts.").  OHA's decision to set particular capitation rates is judicially reviewable under Oregon's Administrative Procedure Act.  *See* ORS 183.480 (1) ("[A]ny person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order.")

3-    FAMILYCARE, INC.'S MOTION TO DISMISS

In February 2017, FamilyCare filed a complaint against OHA in Marion County Circuit Court, bringing, among other claims, a claim for judicial review of the 2017 capitation rates under the Oregon Administrative Procedure Act.  (Case 6:18-cv-00296, Dkt. 1-1, p. 1-24). FamilyCare alleges that even though it was the second-largest CCO in Oregon, its rates were the lowest among the 16 Oregon CCOs in 2015, 2016, 2017, and 2018.  *Id.* at 502-503. Over the course of the last five years, OHA has used erroneous data and actuarially unsound methods to continually and systematically reduce FamilyCare's rates.  *Id.*  These rate reductions have caused FamilyCare to sustain substantial operating losses, depleting its reserves and ultimately forcing FamilyCare to shut down its Medicaid business and cease providing services to Oregon Health Plan members.  *Id.*  Dating back to 2015, FamilyCare has repeatedly alerted OHA that basic errors in the data and methodology used to set capitation rates resulted in unsustainable, unfair, and actuarially unsound rates.  *Id.*

OHA systematically ignored FamilyCare's feedback and requests for clarification, knowingly and purposefully refusing to correct the errors. *Id.*  Rather than addressing the numerous problems that FamilyCare had identified, OHA undertook to implement a smear campaign aimed at undermining FamilyCare in the eyes of the public, its providers, its patients, and the Oregon legislature.  *Id.*  This campaign, which sought to falsely portray FamilyCare as an "outlier" that was "more concerned with the bottom line and increasing revenues than the health of Oregonians," was designed to harm FamilyCare's business and prevent it from successfully challenging OHA's unlawful conduct in the setting of Medicaid capitation rates.  *Id.*

In late 2017, with the release of the 2018 rates (and further refusal to correct even the most basic errors), OHA finally succeeded in forcing FamilyCare to exit the Medicaid market and begin shutting down its Medicaid business.  *Id.*  OHA knew that there were material errors in the underlying data used to set FamilyCare's proposed 2018 rates.  *Id.*  OHA also knew that accepting these rates would cause FamilyCare to incur losses in 2018 that exceeded

4-    FAMILYCARE, INC.'S MOTION TO DISMISS

FamilyCare's available reserves. *Id.* This knowledge notwithstanding, OHA and Pat Allen presented FamilyCare with a take-it-or-leave-it contract with just 24 hours' notice, forcing FamilyCare to reject the full 2018 rate amendment and to agree instead to a one-month rate amendment to allow FamilyCare's members extra time to transition to other CCOs. *Id.*

In January 2018, while FamilyCare's suit was pending in state court, OHA filed the present complaint for declaratory relief in this Court, asking for a declaration that "FamilyCare may not assert a private right of action under the Oregon APA, or otherwise, to challenge whether the 2018 CCO capitation rates comply with 42 C.F.R. Part 438." (Case 3:18-cv-00212, Dkt. 1). In February 2018, FamilyCare amended its state court complaint to add a claim for judicial review of the 2018 capitation rates under the Oregon APA, among other amendments. (Case 6:18-cv-00296, Dkt. 1-1, p. 501-555). On the same day that FamilyCare amended its complaint, OHA removed the case to federal court, (Case 6:18-cv-00296, Dkt. 1), where it was consolidated with this declaratory judgment action. (Case 3:18-cv-00212, Dkt. 11 (Order granting motion to consolidate)).

FamilyCare intends to prove at trial that the 2017 and 2018 rates are actuarially unsound and that OHA acted outside the range of its discretion delegated by law, inconsistent with its administrative rules and prior agency practice, and in violation of statute and federal statutes when it established the 2017 and 2018 rates. (Case 6:18-cv-00296, Dkt. 1-1, p. 541-42 (2017 rates); 548-49 (2018 rates)). Through its declaratory judgment action, OHA seeks to prevent judicial review of its rate-setting decisions on the ground that federal law preempts FamilyCare's APA claims.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is required where a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*,

5-    FAMILYCARE, INC.'S MOTION TO DISMISS

749 F.2d 530, 533–34 (9th Cir.1984)).  "[A] plaintiff's obligation to provide the grounds of [its] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).  Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, to survive a motion to dismiss, OHA must plead facts establishing the preemptive effect of federal law—a tall order because preemption is disfavored and will not be found unless preemption was the clear and manifest purpose of Congress.

The general law of preemption is grounded in the Constitution's command that federal law "shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  Under the Supremacy Clause, Congress has the power to preempt state law expressly, *Hillman v. Maretta*, 569 U.S. 483, 490 (2013), but OHA does not allege that the Medicaid Act expressly preempts judicial review of state agency action under the Act.  Rather, OHA's argument is based on the principle of an implied "conflict preemption."  OHA Complaint ¶ 34.

Conflict preemption exists when "compliance with both federal and state regulations is impossible" or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Hillman*, 569 U.S. at 490 (citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963) and *Hines v. Davidowitz*, 312 U.S. 52 (1941)).  In cases involving "purposes and objectives" preemption, courts "must first ascertain the nature of the federal interest" and then determine whether the state law in question "frustrates the deliberate purpose of Congress."  *Id.* at 491, 494 (holding that state law permitting third party claim to insurance proceeds was preempted because it "interferes with Congress' scheme" requiring "that the proceeds belong to the named beneficiary and no other") (internal quotation marks omitted).

6-    FAMILYCARE, INC.'S MOTION TO DISMISS

"[A] high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *Gade v. Nat'l Solid Wastes Mgmt. Assn.*, 505 U.S. 88, 111 (1992) (Kennedy, J., concurring in part and concurring in judgment). "The existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of the state statute." *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982); *see also English v. Gen. Elec. Co.*, 496 U.S. 72, 90 (1990) ("The 'teaching of this Court's decisions ... enjoin[s] seeking out conflicts between state and federal regulation where none clearly exists' " (quoting *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 446 (1960)). "[B]ecause the States are independent sovereigns in our federal system," courts considering preemption challenges begin with the "presum[ption] that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). As such, analysis of conflict preemption begins "with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008) (internal marks omitted) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). "That assumption applies with particular force when Congress has legislated in a field traditionally occupied by the States." *Id.* (citing *Medtronic*, 518 U.S. at 485). And because "health and safety . . . are 'primarily, and historically, . . . matter[s] of local concern,' the 'States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons.'" *Medtronic*, 518 U.S. at 475 (quoting *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 719 (1985) and *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985)).

## ARGUMENT

OHA fails to meet the high threshold required to establish that federal law preempts state-law challenges to OHA's compliance with the actuarial soundness requirements imposed by federal and state law. Judicial review of state agency compliance with the Medicaid Act is an

7-    FAMILYCARE, INC.'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

essential feature of the Medicaid program, and the availability of a private cause of action under state law in no way conflicts with the purposes and objectives of the Medicaid Act.  That CMS may enforce the Medicaid Act's mandates—including the actuarial soundness requirement—through the withholding of funding to a state does not prohibit participating states from otherwise creating mechanisms to ensure compliance with those requirements.  And OHA's reliance on *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015)—a decision that involved neither a preemption claim nor the Medicaid Act provision at issue here—is misplaced. Lacking a factual or legal basis for its claim of entitlement to relief, OHA's complaint must be dismissed.

**A.    Judicial review of state agency action is consistent with and critical to the cooperative state-federal regime established by the Medicaid Act.**

Medicaid is a *cooperative* federal-state program.  *See supra; see also Douglas*, 565 U.S. at 610.  While participating states must adopt plans that comply with requirements imposed by certain federal statutes and regulations, the Supreme Court has made it clear that the Medicaid Act grants states "considerable latitude" to fashion the particular contours of their own programs. *Pharm. Research and Mfrs. Of Am. v. Walsh*, 538 U.S. 644, 666 (2003).  Within this cooperative framework, Medicaid is "'basically administered by each state within certain broad requirements and guidelines.'" *West Virginia Univ. Hosps., Inc. v. Casey*, 885 F.2d 11, 15 (3d Cir. 1989) (quoting House Subcomm. on Health and the Environment, Data on the Medicaid Program: Eligibility, Services, Expenditures Fiscal Years 1967–77, H.R.Rep. No. 10, 95th Cong., 1st Sess. 1)); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 625 (2012) (Ginsburg, J. concurring in part and dissenting in part) ("Medicaid is a prototypical example of federal-state cooperation in serving the Nation's general welfare. Rather than authorizing a federal agency to administer a uniform national health-care system for the poor, Congress offered States the opportunity to tailor Medicaid grants to their particular needs, so long as they remain within bounds set by federal law.").

8-    FAMILYCARE, INC.'S MOTION TO DISMISS

In accordance with the federal-state program established by Congress, OHA has the authority *and the obligation* to administer its own plan. The Medicaid Act requires a state plan to specify "a single state agency established or designated to administer or supervise the administration of the plan." 42 C.F.R. § 431.10(b)(1). The plan must also include a certification by the State Attorney General identifying the legal authority for that state agency to administer the plan and to "[m]ake rules and regulations that it follows in administering the plan or that are binding upon local agencies that administer the plan." *Id.* § 431.10(b)(2). Oregon has designated the Oregon Health Authority as the agency responsible for administering Oregon's Medicaid plan, ORS 413.032, and its decisions are reviewable under Oregon's Administrative Procedure Act. ORS 183.480 (1) ("[A]ny person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form.").

While OHA has broad authority to administer its own plan, it must do so in accordance with federal and state law. Relevant to this case, the State must set "actuarially sound" capitation rates. 42 U.S.C. § 1396b(m)(2)(A)(iii); *see also* 42 C.F.R. § 438.5 (b) ("In setting actuarially sound capitation rates, the State must follow the steps below, in an appropriate order, in accordance with this section, or explain why they are not applicable."). Indeed, Oregon is doubly-bound by the actuarial soundness requirement because Oregon has incorporated federal law into its own statutes governing the administration of federally granted funds. ORS 413.071 ("Notwithstanding any other provision of law, federal laws shall govern the administration of federally granted funds."). After creating the landmark Oregon Health Plan, and thus assuming the burden of administering its own Medicaid plan—including the burden of complying with federal standards of actuarial soundness, subject to judicial review—Oregon should not be heard now to say that this plan is in conflict with the federal regime.

9- FAMILYCARE, INC.'S MOTION TO DISMISS

To be sure, far from conflicting with the federal Medicaid Act, judicial review of OHA's compliance with the actuarial soundness requirement under the APA is critical to Oregon's ability to administer its own Medicaid program.  Plainly, Congress's purpose in requiring that state capitation rates be actuarially sound was to ensure that state capitation rates *be* actuarially sound; a state's decision to provide a private cause of action to help ensure the state agency's compliance with that requirement cannot be said to conflict with Congress's purpose.

**B.**  **CMS's ability to withhold funds from a non-compliant state Medicaid plan does not preempt judicial review of state agency action taken under the Act.**

While OHA's complaint is replete with conclusory statements to the effect that "Medicaid laws preempt FamilyCare's state APA claim because it conflicts with congressional intent to preclude any private right of action to enforce Medicaid rate standards," *see* OHA Complaint ¶ 34, it is all but silent as to the basis for its sweeping claim of preemption.  OHA's claim appears to rest on the fact that CMS must approve the state's proposed capitation rates as actuarially sound, 42 C.F.R. § 438.4(b), and must withhold funding if they are not, 42 U.S.C. § 1396b(m)(2)(A)(iii).  OHA suggests that this renders CMS "the exclusive, and conclusive, decision maker of whether rates are actuarially sound," thus forbidding state law claims regarding capitations rates.  *See* OHA Complaint ¶ 7.  OHA also points to *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015), suggesting that the decision supports a finding of preemption.  *See* OHA Complaint ¶ 35.  OHA is wrong on both counts.

**1.**  **OHA has not met the high bar of establishing that Congress's clear and manifest purpose was to shield the agency from APA review.**

Courts must "assume that a federal law does not preempt the states' police power absent a 'clear and manifest purpose of Congress.'"  *Atay v. County of Maui*, 842 F.3d 688, 699 (9th Cir. 2016) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)).  "Implied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives'; such an endeavor 'would undercut the principle that it is Congress rather than the

10-  FAMILYCARE, INC.'S MOTION TO DISMISS

courts that preempts state law.'" *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (quoting *Gade*, 505 U.S. at 111 (Kennedy, J., concurring in part and concurring in judgment)).  Here, nothing alleged in OHA's complaint establishes that Congress's "clear and manifest purpose" was to preempt the ability of participating states to use their own Administrative Procedure Acts to ensure that the state agencies responsible for administering their programs stayed within the bounds of state and federal law.

OHA's preemption claim rests on the fact that the Medicaid Act requires CMS to review proposed capitation rates for actuarial soundness and withhold funding from state plans that satisfy the actuarial soundness requirement.  *See* OHA Complaint ¶ 35.  But CMS's review and approval is not unique to the rate-setting provisions of the Medicaid Act.  Rather, CMS is required to withhold federal funding if it finds that the state has violated any number of specific program requirements.  *See* 42 U.S.C. § 1396b(m)(2)(A) (setting out conditions under which "no payment shall be made under this subchapter"); *id.* § 1396c (compelling the Secretary to withdraw funding if the state plan fails to comply with any of the requirements of 42 U.S.C. § 1396a).  If CMS's authority to review a state program for compliance with a particular provision of the Medicaid Act and to withhold federal funds for non-compliance were enough to preempt state-law challenges to state agencies' implementation of the provision, *all* state agency action under the Act would be shielded from APA review.  As discussed above, such an outcome would be inconsistent with the federal-state structure of the Medicaid Act.  *See supra.*

That Congress granted CMS the authority to review compliance with the actuarial soundness requirement (and other Medicaid Act requirements) in no way evinces an intent to prohibit states from establishing their own mechanisms to review compliance with that requirement. Indeed, elevating CMS as the sole authority capable of determining whether rates are actuarially sound by preempting review of state agency decisions under state Administrative Procedure Acts would send the delicate balance of the Medicaid Act tumbling.  Not only would

11-  FAMILYCARE, INC.'S MOTION TO DISMISS

it eliminate a state's ability to compel its own agencies to comply with *federal* Medicaid requirements, it would also eliminate a state's ability to compel state agencies to comply with any such requirements that have been incorporated into *state law*.  *See* ORS 413.071.  It would effectively eliminate the states' ability to control their own agencies as they administer the Medicaid Act.

Moreover, the possibility that the same rates might be reviewed at the federal level by CMS and at the state level under Administrative Procedure Acts does nothing to establish preemption.  For one thing, the possibility that such a dual challenge would result in a "conflict" is largely hypothetical, and "[t]he existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of the state statute." *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982).  More importantly, "the purpose of Congress," not the elimination of all potentially inconsistent judicial decisions, "is the ultimate touchstone in every pre-emption case." *Medtronic*, 518 U.S. at 485 (internal quotation marks omitted).  OHA and CMS's complimentary roles in ensuring actuarially sound rates (and thus the availability of APA review against both agencies) is the result of Congress's decision to establish Medicaid as a cooperative state-federal program.  Far from standing as an obstacle to the purpose of Congress, this joint authority is baked into the Act: although CMS is required to review proposed capitation rates for actuarial soundness under 42 C.F.R. § 438.4(b), another section separately requires states to develop actuarially sound capitation rates, and sets out in detail the steps they must follow to do so, 42 C.F.R § 438.5(b).  And Oregon law incorporates federal law into its own statutes governing the administration of federally granted funds.  ORS 413.071 ("Notwithstanding any other provision of law, federal laws shall govern the administration of federally granted funds.").  Both agencies must do their part to ensure that the plan complies with state and federal law, and there is no indication Congress intended to shield either step from judicial review under the appropriate Administrative Procedure Act.  This duet between state and federal agency is precisely the song

12-  FAMILYCARE, INC.'S MOTION TO DISMISS

Congress had in mind when it designed Medicaid as a cooperative federal-state program, and this Court should not disturb it.

> **2.** ***Armstrong* provides no support for OHA's preemption argument.**

OHA asserts that *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015) stands for the proposition that the Medicaid Act "precludes private enforcement" of the Act because the "sole remedy" for a state's failure to comply with Medicaid's requirements is "the withholding of Medicaid funds by the Secretary of Health and Human Services."  OHA Complaint ¶ 35.  This is a dramatic overreading of the Court's decision in *Armstrong*.

*Armstrong* is inapposite to this case for several reasons:  It examined a different provision of the Medicaid Act than the one at issue here, and its reasoning has not been held applicable to other provisions of the Act.  It did not examine a claim brought under the Administrative Procedure Act, and indeed, the Court expressly noted the availability of a federal APA remedy to enforce the Medicaid Act.  And most importantly, it was not a preemption case and did not even consider whether the Medicaid Act preempted a cause of action under state law.  Rather, the only issue in *Armstrong* was whether the plaintiffs had an implied cause of action *under federal law* to enforce § 30(A) of the Medicaid Act.

Specifically, the Court considered whether Medicaid providers had a cause of action against the State of Idaho either under the Supremacy Clause or the courts' inherent equitable power to enforce § (30)(A) of the Medicaid Act, codified at 42 U.S.C. § 1396a(a)(30)(A). *Armstrong*, 135 S. Ct. at 1382.  Section 30(A) requires the state Medicaid agency to:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area . . . .

13-  FAMILYCARE, INC.'S MOTION TO DISMISS

42 U.S.C. § 1396a(a)(30)(A).  Claiming that Idaho violated § 30(A) by reimbursing providers of habilitation services at rates lower than § 30(A) permits, certain providers sued officials in Idaho's Department of Health and Welfare, not under Idaho's Administrative Procedures Act, but on the theory that the Supremacy Clause and the courts' inherent equitable power granted them an implied cause of action under federal law.  *Armstrong*, 135 S. Ct. at 1382.  The District Court found that Idaho had not set its rates in compliance with § 30(A).  *Id.* at 1382-83.  The Ninth Circuit affirmed, holding that the providers had "an implied right of action under the Supremacy Clause to seek injunctive relief against the enforcement or implementation of state legislation."  *Id.*  The Supreme Court reversed, holding that neither the Supremacy Clause nor the courts' inherent power to grant equitable relief conferred an implied right of action to enforce the Act under federal law.  *Id.* at 1383-84.

*Armstrong* is inapposite to this case.  FamilyCare is not bringing a claim under the Supremacy Clause, nor is it invoking the equitable power of this Court to enforce federal law. Rather, it is bringing claims under Oregon's Administrative Procedure Act, a cause of action explicitly granted by Oregon statute.  ORS 183.480 (1).  *Armstrong* was not an APA case and did not hold that state or federal agencies administering a Medicaid plan are insulated from judicial review.  To the contrary, the Court noted the availability of APA review as a remedy available to the petitioners.  *See id.* at 1387; *see also id.* at 1389-90 (Breyer, J., concurring) (noting that a party injured by the agency's administration of the Medicaid Act could seek judicial review of the agency's action under the federal APA); *cf. Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235 (9th Cir. 2013) (reviewing agency action taken under Medicaid Act under federal APA); *Christ the King Manor, Inc. v. Sec'y of Dept. of Health & Human Servs.*, 730 F.3d 291 (3d Cir. 2013) (same).  Indeed, *Armstrong* was not a preemption case at all, and included no discussion of conflict preemption principles.  The Court did not address whether judicial review of state agency action taken under the Act "stands as an obstacle to the accomplishment and execution of

14-  FAMILYCARE, INC.'S MOTION TO DISMISS

the full purposes and objectives of Congress." *Hillman*, 569 U.S. at 490. And it certainly did not hold that the Medicaid Act met the high threshold necessary to preempt state law in an area of traditional state concern. Rather, the Court's decision was focused on the remedies provided under federal law, and its holding was limited to the conclusion that Congress did not intend to allow the §30(A) to be enforced through an implied cause of action under federal law.

Moreover, *Armstrong*'s analysis was limited to § 30(A) of the Medicaid Act—a provision not at issue in this case. Although the Court noted that "the sole remedy Congress provided for a State's failure to comply with Medicaid's requirements . . . is the withholding of Medicaid funds by the Secretary of Health and Human Services," the Court did not hold that such remedy precluded judicial review; the Court explained that "[t]he provision for the Secretary's enforcement by withholding funds might not, *by itself*, preclude the availability of equitable relief." *Id.* at 1385 (emphasis original). Rather, it was the particularly "unadministrable nature of § 30(A)'s text" that informed the Court's decision. *Id.* The Court emphasized that "[i]t is difficult to imagine a requirement broader and less specific than § 30(A)'s mandate that state plans provide for payments that are "consistent with efficiency, economy, and quality of care." *Id.* In contrast, the standards for developing actuarially sound rates under 42 C.F.R. § 438.5 are concrete and verifiable. The regulations require states to follow six specific steps, in order, or explain why they are not applicable. *Id.* These steps include, for example, the command to "identify and develop the base utilization and price data," *id.* § 438.5(b)(1), and to "develop and apply trend factors, including cost and utilization, to base data," *id.* § 438.5(b)(2). These steps must be taken in accordance with generally accepted actuarial principles and practices, and are further defined and explained in the regulations. *See id.* § 438.5(c) (setting out standards for developing base data); *id.* § 438.5(d) (setting out standards for trend factors). These provisions are easily distinguishable from §30(A)'s vague command to provide payments that are "consistent with efficiency, economy, and quality of care." 42 U.S.C. § 1396a(a)(30)(A).

15- FAMILYCARE, INC.'S MOTION TO DISMISS

Although *Armstrong* is of no import here, it is notable that in the wake of the decision, multiple Courts of Appeals courts have held that plaintiffs may bring claims under federal law for violations of other sections of the Medicaid Act. *See Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1229 (10th Cir. 2018) ("Even if § 1396a(a)(30)(A) could fairly be read to display congressional intent to foreclose the availability of equitable relief, § 1396a(a)(23)—the free-choice-of-provider provision—can't be read that way."); *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 820-21 (7th Cir. 2017) ("[N]othing in *Armstrong*, *Gonzaga*, or any other case we have found supports the idea that plaintiffs are now flatly forbidden in section 1983 actions to rely on a statute passed pursuant to Congress's Spending Clause powers.") (finding private right of action under 42 U.S.C. § 1396a(a)(13)(A)); *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 373 (5th Cir. 2018) (plaintiff "has a private right of action, under § 1983, to enforce § 1396a(bb)"). If *Armstrong* cannot be read to preclude federal rights of action to enforce other sections of the Medicaid Act, it certainly cannot be read to preempt state-law claims like FamilyCare's.

In sum, *Armstrong* neither prohibits APA claims challenging state agencies' compliance with the Medicaid Act, nor speaks to provisions at issue in this suit. It offers no support for OHA's assertion that FamilyCare may not bring a claim under the Oregon APA to challenge whether the 2018 capitation rates comply with the federal and state-imposed actuarial soundness requirements.

## CONCLUSION

For the foregoing reasons, OHA's complaint for declaratory relief should be dismissed with prejudice.

16- FAMILYCARE, INC.'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

DATED:  March 15, 2018                    **PERKINS COIE LLP**


By: *s/Stephen F. English*
    Stephen F. English, OSB No. 730843
    SEnglish@perkinscoie.com
    Matthew P. Gordon, *pro hac vice*
    MGordon@perkinscoie.com
    Brian P. Samuelson, OSB No. 165476
    BSamuelson@perkinscoie.com
    Perkins Coie LLP
    1120 N.W. Couch Street, 10th Floor
    Portland, OR  97209-4128
    Telephone:  503.727.2000
    Facsimile:  503.727.2222

*Attorneys for Defendant FamilyCare, Inc.*

17-  FAMILYCARE, INC.'S MOTION TO DISMISS