Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Alletta Brenner, OSB No. 142844
ABrenner@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official Capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>　　　　　　　　Defendant. | No. 3:18−cv−00212−MO (LEAD)<br>No. 6:18−cv−00296−MO<br><br>FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTIONS<br><br>• Motion for leave to conduct additional depositions<br><br>• Motion for setting date certain for discovery compliance<br><br>• Motion to compel de-designation of AEO and Confidential documents<br><br>• Motion to compel production of documents withheld as privileged<br><br>ORAL ARGUMENT REQUESTED |
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>　　　　　　　　Plaintiff, | |

FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTIONS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

v.

OREGON HEALTH AUTHORITY, an
agency of the State of Oregon, and
PATRICK ALLEN, both individually and in
his official capacity as director of the Oregon
Health Authority,

Defendants.

FAMILYCARE, INC.'S OMNIBUS DISCOVERY
MOTION

**TABLE OF CONTENTS**

**Page**

LOCAL RULE 7-1 CERTIFICATION ........................................................................... 1

ORAL ARGUMENT REQUESTED........................................................................... 1

MOTIONS ................................................................................................................. 1

POINTS AND AUTHORITIES ................................................................................. 2

    I.     Motion for Leave to Conduct Additional Depositions ........................................... 2

    II.    Motion for Order Setting Date Certain for Discovery Compliance....................... 2

    III.   Motion for De-Designation, or Down-Designation, of AEO and Confidential Documents ........................................................................................ 4

         A.    Background ................................................................................................5

         B.    Legal Standard ..........................................................................................6

         C.    Argument ..................................................................................................7

             1.    OHA Has Over-Marked Documents................................................ 8

             2.    The CCOs' Requests for Designation are Overbroad. ................... 8

                 (1)    Many of the documents OHA has marked at CCO request involve information that is too general to be of competitive value. ..................................................9

                 (2)    Much of the information is not confidential. .....................11

                 (3)    The regulatory environment of Oregon's Medicaid program significantly limits the competitive value of specific information about how a CCO operates. ..............12

                 (4)    Disclosure would remedy an existing information asymmetry.................................................................13

                 (5)    FamilyCare is no longer a competitor in the Medicaid market. ................................................................14

                 (6)    The public interest favors disclosure. ...............................15

              3.    The document-by-document approach is unworkable.................. 16

    IV.    Motion to Compel, or in the Alternative for *In Camera* Review of Documents .. 18

         A.    Background ................................................................................................18

         B.    OHA has improperly withheld documents related to the Communications Plan. ...............................................................................18

             1.    OHA intentionally disclosed privileged materials. ....................... 20

             2.    The disclosed and undisclosed communications concern the Communications Plan. .................................................................. 21

             3.    The undisclosed documents related to the Communications Plan ought in fairness to be considered with the documents released to the Tribune. .................................................................................. 21

FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTIONS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF CONTENTS**
**(continued)**

**Page**

C.    In the alternative, FamilyCare requests that the Court perform an *in camera* review of the documents identified in Exhibit 19 to the Brenner Declaration. ..................................................................22

CONCLUSION.................................................................................................... 24

ii-    FAMILYCARE, INC.'S OMNIBUS DISCOVERY
       MOTION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arvco Container Corp. v. Weyerhaeuser Co.*,
No. 1:08-CV-548, 2009 WL 311125 (W.D. Mich. Feb. 9, 2009) .............................................4

*Biles v. Dep't of Health and Human Servs.*,
931 F. Supp. 2d 211 (D.D.C. 2013) ............................................................................. passim

*Bittaker v. Woodford*,
331 F.3d 715 (9th Cir. 2003) ...........................................................................................19, 24

*Brandt Indus., Ltd. v. Pitonyak Machinery Corp.*,
No. 1:10-cv-0857-TWP-DML, 2012 WL 3704956 (S.D. Ind. Aug. 27, 2012)..................7, 15

*Center for the Study of Servs. v. U.S. Dep't of Health and Human Servs.*,
130 F. Supp. 3d 1 (D.D.C. 2015) ............................................................................................13

*Del Campo v. Am. Corrective Counseling Serv., Inc.*,
No. C-01-21151JW (PVT), 2007 WL 3306496 (N.D. Cal. Nov. 6, 2007).......................12, 17

*Humphreys v. Regents of Univ. of California*,
No. C-04-03808-SI(EDL), 2006 WL 3302444 (N.D. Cal. Nov. 14, 2006).............................7

*IKON Office Solutions, Inc. v. American Office Products, Inc.*,
178 F. Supp. 2d 1154 (D. Or. 2001) .......................................................................................11

*In Re Grand Jury Subpoena 92-I (SJ)*,
31 F.3d 826 (9th Cir. 1994) ....................................................................................................19

*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*,
357 F.3d 900 (9th Cir. 2004) ..................................................................................................23

*In re ULLICO Inc. Litig.*,
237 F.R.D. 314 (D.D.C. 2006)............................................................................................8, 12

*Lindsey v. Elsevier Inc.*,
No. 16-cv-00959-GPC (DHB), 2016 WL 8731471 (S.D. Cal. Aug. 19, 2016)........................7

*Procaps S.A. v. Patheon Inc.*,
No. 12-24356-CIV-GOODMAN, 2015 WL 4430955 (S.D. Fla. June 20,
2015) .................................................................................................................................7, 17

iii-  FAMILYCARE, INC.'S OMNIBUS DISCOVERY
      MOTIONS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*,
    745 F3d 343 (9th Cir 2014) ....................................................................................................24

*Santella v. Grizzly Indus., Inc.*,
    No. 3:12-mc-00131-SI, 2012 WL 5399970 (D. Or. Nov. 5, 2012) ..........................................9

*Silverberg v. Dep't of Health Human Servs.*,
    Civ. A. No. 89-2743, 1991 WL 633740 (D.D.C. June 14, 1991) ............................................13

*Team Play, Inc. v. Boyer*,
    No. 03 C 7240, 2005 WL 256476 (N. D. Ill. Jan. 31, 2005) ...........................................4, 6, 14

*THK Am., Inc. v. NSK Co. Ltd.*,
    157 F.R.D. 637 (N.D. Ill. 1993)..............................................................................................12

*Triplett v. Bd. of Social Protection*,
    19 Or. App. 408, 528 P.2d 563 (1974).....................................................................................19

*Weil v. Inv./Indicators, Research and Mgmt., Inc.*,
    647 F.2d 18 (9th Cir. 1981) .....................................................................................................19

**STATUTES**

Oregon Administrative Procedures Act .............................................................................................2

ORS 40.280...................................................................................................................................19

ORS 414.679.................................................................................................................................15

**RULES**

Fed. R. Civ. P. 26.............................................................................................................................1

Fed. R. Civ. P. 26 (b)(3).................................................................................................................19

Fed. R. Civ. P. 26(c) ...................................................................................................................9, 10

Fed. R. Civ. P. 30(a)(1)...............................................................................................................1, 2

Fed. R. Civ. P. 30(a)(2)....................................................................................................................1

Fed. R. Civ. P. 30(a)(2)....................................................................................................................2

FRE 502(a)..........................................................................................................................19, 20, 21

FRE 502(c).....................................................................................................................................19

iv-  FAMILYCARE, INC.'S OMNIBUS DISCOVERY
     MOTION

LOCAL RULE 7-1 ............................................................................................................1

Rule 26(b)(1) and (2) ......................................................................................................2

**REGULATIONS**

42 C.F.R. § 438.7(b)(4)..................................................................................................16

v-  FAMILYCARE, INC.'S OMNIBUS DISCOVERY
    MOTION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## LOCAL RULE 7-1 CERTIFICATION

In compliance with Local Rule 7-1, the parties made a good faith effort to resolve the disputed issues described below. Although the parties have been able to resolve other discovery-related issues, they have been unable to resolve those set forth below.

## ORAL ARGUMENT REQUESTED

Oral argument is requested on this motion. FamilyCare estimates that one hour will be required.

## MOTIONS

Under Federal Rule Civil Procedure 26 and 30(a)(2), FamilyCare, Inc. ("FamilyCare") moves:

1.    For leave to conduct additional depositions beyond the initial ten deposition limit set forth in Fed. R. Civ. P. 30(a)(1);

2.    For an Order setting a date certain by which Oregon Health Authority ("OHA") must comply with Judge Sean Armstrong's January 2, 2018 discovery order granting FamilyCare's Motion to Compel;

3.    For an Order requiring OHA to promptly review all documents it has marked as Attorney's Eyes Only ("AEO") or Confidential and de-designate or down-designate all documents unless they contain certain proprietary information as defined by the Court; and

4.    For an Order compelling OHA to produce certain documents related to OHA's development and implementation of a public relations campaign targeting FamilyCare in the press, or in the alternative, to produce these documents for in camera review.

These motions are supported by the points and authorities set forth below, the Declaration of William Murray, and the Declaration of Alletta Brenner.

1- FAMILYCARE, INC.'S OMNIBUS DISCOVERY
MOTIONS

## POINTS AND AUTHORITIES

**I.    MOTION FOR LEAVE TO CONDUCT ADDITIONAL DEPOSITIONS**

FamilyCare seeks leave under FRCP 30(a)(1) to take a total of 25 oral depositions, including third party depositions.  *See* Fed. R. Civ. P. 30(a)(2) ("[a] party must obtain leave of the court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) . . . . ").

This is a complicated case in which FamilyCare, an Oregon non-profit that until recently was the second largest Coordinated Care Organization (CCO) serving members of the Oregon Health Plan, has pleaded twelve claims.  Several of these claims relate to the highly technical question of whether the Medicaid rates that OHA set for FamilyCare were actuarially sound, as required under applicable state and federal law, and free from error and supported by substantial evidence, as required under the Oregon Administrative Procedures Act.  *See generally* ECF 1-1, p. 501-555 (Complaint), ¶¶ 112-118, 152-157.  Issues involved in these determinations include, among others: whether OHA's methodology and process for setting rates was itself sound; whether OHA acted appropriately within its discretion in applying certain policies during that rate-setting process; whether OHA's Arizona-based actuary, Optumas, made errors while calculating FamilyCare's rates; and whether the underlying data on which those rates were based are fundamentally sound.  *Id.*

Despite these complexities, FamilyCare has reduced its list of deponents significantly. FamilyCare's request for 25 depositions is about two depositions per claim.  The requested expansion will provide FamilyCare with fair and reasonable access to witnesses and facts essential to litigating the complex issues presented in this case.

**II.    MOTION FOR ORDER SETTING DATE CERTAIN FOR DISCOVERY COMPLIANCE**

For the past nine months, FamilyCare has sought production of documents from OHA relating to its rate-setting process.  *See* Declaration of Alletta Brenner ("Brenner Dec.") Ex. 1

2-    FAMILYCARE, INC.'S OMNIBUS DISCOVERY
      MOTION

(First RFPs, issued on June 1, 2017).  Obtaining these documents, however, has proven difficult. OHA has outsourced much of its rate-setting work to its actuary, Optumas.  The terms of the OHA-Optumas contract give OHA control over rate-setting-related documents created and possessed by Optumas.

On November 30, 2017, the Hon. Sean Armstrong, who presided over this case in Marion County Circuit Court, issued an order setting out a specific protocol to produce relevant emails generated by Optumas employees.  Brenner Dec. Ex. 2.  In December 2017, FamilyCare filed a motion to compel compliance with the November 30 order.  On January 2, 2018, Judge Armstrong granted the motion, ruling that OHA had legal control over the documents in question and directing OHA to "collect and produce to FamilyCare, *by January 12, 2018*, additional Optumas documents, emails, and communications responsive to FamilyCare's requests for production, without regard to whether those documents, emails, and communications are currently in OHA's possession."  (Emphasis added).  Brenner Dec. Ex. 3.

OHA has still not fully complied with the January 2, 2018 order. OHA has produced some emails, but tens of thousands of additional emails have yet to be produced.[1]  The ongoing delays in OHA's production are hampering FamilyCare's ability to prepare its case.  Considering the tight deadline for expert reports, the Optumas documents may not be produced in time for full expert evaluation.

Therefore, FamilyCare requests an order: (a) requiring OHA by April 16, 2018 to complete the production of Optumas documents in accordance with Judge Armstrong's order;

---

[1] Aside from failing to review and produce tens of thousands of emails that were previously collected in September 2017 and that are potentially responsive to the discovery requests that FamilyCare had issued at the time of Judge Armstrong's January 2, 2018 order, OHA has also failed to update its collection of Optumas documents to ensure that documents have been collected for the entire relevant timeframe.  It is unclear how many additional documents have yet to be reviewed and produced due to this issue.

3-  FAMILYCARE, INC.'S OMNIBUS DISCOVERY
    MOTION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

and (b) requiring OHA to produce any additional Optumas documents that are responsive to FamilyCare's discovery requests.

### III.    MOTION FOR DE-DESIGNATION, OR DOWN-DESIGNATION, OF AEO AND CONFIDENTIAL DOCUMENTS

To date, OHA has marked approximately 19,000 documents as AEO and 54,000 documents as Confidential.  Brenner Dec. ¶ 5.  Given the technical nature of Medicaid rate-setting, FamilyCare's counsel needs to be able to discuss these documents with its client—the single best source of expertise and knowledge on these issues.  *See Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 WL 256476, at *1–2 (N. D. Ill. Jan. 31, 2005) (granting motion to remove "Highly Confidential Attorneys' Eyes Only" designation from documents on basis that it was indiscriminately applied and noting that if designation was not removed, counsel would be severely hindered in discussing case with its client).  This over-designation of documents hinders FamilyCare's ability to litigate this case.  *Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-CV-548, 2009 WL 311125, at *6 (W.D. Mich. Feb. 9, 2009) ("[T]he indiscriminate use of 'attorney's eyes only' protective orders does pose a significant handicap on the restricted litigant. Discovery, trial preparation, and trial are made more difficult and expensive if an attorney cannot make complete disclosure of the facts to the litigant.").

Accordingly, FamilyCare requests that the Court: (1) define and restrict the scope of what kinds of documents may be designated as Confidential, or AEO, in this case; (2) require that OHA review all documents previously marked as AEO or Confidential, and de-designate all but those containing such information, with the de-designation of AEO documents given highest priority; and (3) require that OHA implement those instructions going forward.

The following criteria should guide the application of confidentiality designations in this case:

1.    Because FamilyCare is no longer a competitor of any CCO in Oregon, no documents should be marked AEO;

4-   FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTION

2.      The Confidential designation should be reserved for: (a) confidential information relating to pricing for services at the provider-specific level; (b) other confidential information relating to the specific terms of provider contracts; (c) detailed CCO financial information that is not publicly available in some form; and (d) Protected Health Information ("PHI") for which disclosure is prohibited; and

3.      Consistent with paragraph 4 of Judge Armstrong's November 1, 2017 Protective Order, documents that contain sensitive or competitively valuable information that are to be designated Confidential should be considered for redaction as an alternative to designation of the whole document.

## A.      Background

The Protective Order in this case allows any CCO to designate "documents or categories of documents that it believes are appropriate to be designated as 'Confidential' or [AEO] under this Protective Order" and requires OHA to mark documents in accordance with CCO instructions. Brenner Dec. Ex. 4. at ¶ 5(a) & 5(c). The Protective Order places an independent obligation on OHA to determine whether there is a good faith basis for designation. *Id.* at ¶ 5(c). If a dispute arises as to the propriety of a document's designation, FamilyCare must contact the CCO impacted to confer before taking it to the Court. *Id.* ¶ 5(d).

OHA circulated a chart with 13 broad categories of documents, asking the CCOs to identify which of those categories they believed merited AEO or Confidential designation. For several reasons—including the "good faith basis" requirement in the Protective Order restricting the scope of what could be designated— FamilyCare did not push at that time for greater specificity in the Protective Order as to the scope of what OHA would be permitted to produce with designations. In the end, the CCOs disagreed about which categories merited protection, and to what degree. *See* Brenner Dec. Exs. 5 & 6 (Chart comparing designations and CCO designation letters and instructions).

5-   FAMILYCARE, INC.'S OMNIBUS DISCOVERY
     MOTION

The AEO and Confidential designations have been overused in this case. OHA appears to be marking entire document *families* as Confidential or AEO based on the designation of *one* document within that family. For example, an email with five attachments will be designated as confidential if any one of the attachments is designated as confidential. And many documents are marked even when they do not contain confidential or proprietary information. Among those documents marked as AEO are documents consisting solely of a blank page or the OHA logo; public documents such as drafts of an Oregon Senate bill; and drafts of key parts of the actuarial certification that Optumas prepares and disseminates each year regarding OHA's rates. Brenner Dec. Ex. 7 (OHA later conceded these documents were inappropriately designated and de-designated them).

FamilyCare raised these issues with OHA and later the court. In response, Judge Armstrong put the parties on notice that he would not tolerate bad-faith AEO designations and would not hesitate to impose sanctions:

> If there are bad-faith designations of attorney-eyes only documents, then my view is that that violates the protective order and I'll be imposing swift and strident discovery sanctions on the party that chooses to do that. . . . Up to and including, to be clear, dismissing claims and defenses as necessary to make sure that you, everyone has an opportunity to try a case based on the discovery they actually have.

*Id.* Ex. 2 (hearing transcript). Soon after, OHA notified FamilyCare that it was de-designating or down-designating more than 5,000 AEO documents. Brenner Dec. Ex. 8 (Dec. 6, 2017 email from G. Scott regarding de-designation). This did not solve the problem. OHA has continued to over-designate documents.

FamilyCare seeks Court intervention to: (1) rectify this existing over-designation; and (2) prevent similar problems going forward.

### B.  Legal Standard

Judicial policy favors disclosure. *Team Play, Inc.*, 2005 WL 256476, at *2. "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the

6-  FAMILYCARE, INC.'S OMNIBUS DISCOVERY
      MOTION

litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *Brandt Indus., Ltd. v. Pitonyak Machinery Corp.*, No. 1:10-cv-0857-TWP-DML, 2012 WL 3704956, at *3 (S.D. Ind. Aug. 27, 2012) (internal citation and marks omitted). "Improperly designating documents as confidential places an enormous burden on both the parties and, through the overuse of sealed filings, on the Court." *Humphreys v. Regents of Univ. of California*, No. C-04-03808-SI(EDL), 2006 WL 3302444, at *5 (N.D. Cal. Nov. 14, 2006).

Consequently, a party seeking to set limits on the disclosure of documents, such as through AEO designation, bears the burden of establishing good cause for nondisclosure, and any limiting designation must be made in good faith. *See, e.g.*, *Lindsey v. Elsevier Inc.,* No. 16-cv-00959-GPC (DHB), 2016 WL 8731471, at *2 (S.D. Cal. Aug. 19, 2016) (defendant failed to establish good cause for the inclusion of an AEO provision in the protective order); *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV-GOODMAN, 2015 WL 4430955, at *6 (S.D. Fla. June 20, 2015) ("Many courts have noted that a good faith requirement is 'implicit' in the protective order and its provision for designating documents as confidential or AEO[.]"). The Protective Order in this case incorporates both requirements. *See* Brenner Dec. Ex. 4, ¶ 4, 10.

## C.    Argument

The CCOs' instructions to OHA are overbroad and encompass numerous documents and categories of documents that are ineligible for designation, either because they do not contain confidential or competitive information, or because the potential competitive harm from disclosure would be minimal. OHA has magnified the problem by failing to apply these instructions in a manner that complies with the applicable standards. As a result, FamilyCare has been left to grapple with tens of thousands of documents in this case marked AEO or Confidential—designations that fundamentally undermine its ability to litigate its claims—and a process for resolving those over-designations that imposes an extraordinary and inequitable burden on FamilyCare.

7-   FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTION

### 1.    OHA Has Over-Marked Documents.

OHA has over-designated thousands of documents as AEO or Confidential.  Although OHA has de-designated some documents upon request and, in December, de-designated or down-designated more than 5,000 documents after being warned by Judge Armstrong, the widespread over-marking of documents persists.

Among the documents that OHA marked as AEO are blank pages, the OHA logo, and documents containing information that can be readily, and obviously, found in the public domain. *See* Brenner Dec. Ex. 7 (sample AEO documents).  Many of the documents marked relate to key issues in this case, rate-setting policies and determinations made by OHA and Optumas.  *See, e.g.*, *id.* Ex. 19 (filed under seal).  The sheer number of AEO or Confidential documents that FamilyCare has been able to identify that lack any basis for designation indicates that OHA has failed to exercise its obligations under the Protective Order.  Indeed, the fact that OHA made a "sweeping correction" by changing the designation of more than 5,000 documents in December 2017 illustrates that "non-compliance with the Protective Order occurred on a grand scale."  *In re ULLICO Inc. Litig.*, 237 F.R.D. 314, 318 (D.D.C. 2006) (discussing "sweeping correction" of approximately 4,000 documents).

### 2.    The CCOs' Requests for Designation are Overbroad.

The CCOs have instructed OHA to designate whole categories of documents as AEO or Confidential, asserting that they contain purported trade secrets that Familycare could use to its competitive advantage.  But that approach is flawed.  Because these instructions are based on the type of document rather than on the information contained within it, they are inherently prone to misapplication (and overuse).  Indeed, FamilyCare's review of documents OHA has produced has turned up hundreds of examples of cases where documents appear to have been marked as AEO and/or Confidential not because of their contents, but because of their connection generally to certain subjects relating to these enumerated categories.

8-    FAMILYCARE, INC.'S OMNIBUS DISCOVERY
      MOTION

In any case, to the extent that these categories do relate to specific types of documents, they remain problematic and overbroad for six reasons. *First*, many of the types of documents that the CCOs have identified as containing trade secrets contain only aggregated information, which, on its own, lacks competitive value. *Second*, much of the information contained in the types of documents designated is publicly available, or readily derived from publicly available information. *Third,* given the structure of Oregon's Medicaid Program and how CCOs operate within that program, the extent to which CCOs compete at all is limited. *Fourth*, to the extent that some of the information at issue could have competitive value, corresponding information about FamilyCare's business has already been disseminated by OHA, creating an existing asymmetry that further disclosure would correct. *Fifth,* because FamilyCare is no longer operating as a CCO, it is no longer a competitor of the other CCOs whose data is at issue such that there is any practical reason to prevent FamilyCare from accessing such information. *Sixth,* strong public interests favor disclosure. OHA should remove most of the confidentiality designations it has applied.

### (1)    Many of the documents OHA has marked at CCO request involve information that is too general to be of competitive value.

One of the first considerations in determining whether documents or information should be protected from disclosure under Fed. R. Civ. P. 26(c) is whether it has any intrinsic commercial or competitive value. *See Santella v. Grizzly Indus., Inc.*, No. 3:12-mc-00131-SI, 2012 WL 5399970, at *4 (D. Or. Nov. 5, 2012). As described in further detail in Exhibit A to the Murray Declaration ("Murray Decl."), many of the categories of documents for which AEO designation has been sought lack such value. (Murray Decl., ¶ 6, Ex. A.) Most of them contain only aggregated and summarized versions of that data that are too to general to warrant protection. *See Biles v. Dep't of Health and Human Servs.*, 931 F. Supp. 2d 211, 229, n.24 (D.D.C. 2013) (rejecting argument that disclosure could cause competitive harm where high level of aggregation prevents competitor from effectively using data).

9-   FAMILYCARE, INC.'S OMNIBUS DISCOVERY
MOTION

For example, many CCOs have objected that rate-setting documents containing information on an individual CCO's total medical expenditures by category of aid and service should be treated as a trade secret and marked as AEO.  Brenner Dec. Exs. 5 & 6; Murray Dec. ¶ 11.  But high-level information of that nature is neither a trade secret nor confidential commercial information within the definition of FRCP 26(c).  Even if pricing at the individual provider level may constitute a trade secret, aggregated information about expenditures by category lacks sufficient detail to be of any competitive use or value.  Murray Dec. ¶ 11.  Such information would at most reveal what a CCO paid, on average, for, say, a physician office visit.  But because there are many different physicians with whom a CCO contracts, that information does not show what the CCO paid particular physicians.  *Id.*

The same is true for the many documents referencing such summarized information, which OHA has also marked in many cases as AEO or Confidential at CCO request.  Even if a document refers in some manner to underlying information that *could* be considered competitively valuable (e.g. the terms of a CCO's contractual arrangements with specific providers), that does not make that document inherently appropriate for designation.  Rather, such documents should not be marked unless they *actually reveal* qualifying information.  *See, e.g., Biles v. Dep't of Health and Human Serv.*, 931 F. Supp.2d 211, 229 (D.D.C. 2013) (rejecting argument that disclosure could cause competitive harm where high level of aggregation makes it impossible to discern underlying information).

CCOs have been inconsistent in their instructions as to how certain categories of documents should be designated, underscoring that those documents lack competitive value.  For example, the CCOs have provided inconsistent instructions regarding the Regional Rate Model, a type of document that contains only aggregated information.  While some CCOs have stated that it is a trade secret and should be marked AEO, others have instructed that it should only be marked Confidential, and others that it should not be designated at all.  Brenner Dec. Exs. 5 & 6.

10-  FAMILYCARE, INC.'S OMNIBUS DISCOVERY
     MOTION

Some CCOs have changed their positions as to the designation of this document. In early 2017, Trillium Community Health Plan stated unequivocally that the Regional Rate Model was not a trade secret and lacked competitive value, and it complained that OHA had not disclosed that document during the 2017 rate-setting process. Brenner Dec. Ex. 9. But eight months later, Trillium reversed its position and has now instructed OHA that this type of document should be marked as AEO. *Id.* at Exs. 5 & 6.

Because many of the documents that OHA has designated contain only passing references or summaries that lack any detailed information, the Court should order them de-designated.

### (2)    Much of the information is not confidential.

Designation is inappropriate for documents and information that have been widely disclosed and are therefore not confidential. *See IKON Office Solutions, Inc. v. American Office Products, Inc.*, 178 F. Supp. 2d 1154, 1169–70 (D. Or. 2001) (information readily obtainable from public sources not a trade secret); *see also Biles*, 931 F. Supp. 2d at 225 (considering similar types of data to that at issue in this case and concluding that its public availability was sufficient to defeat claims of competitive harm from disclosure).

Here, many of the documents that have been marked as either AEO or Confidential have been publicly disclosed, either directly in the form of published reports or documents, or indirectly because they are derived from other information that is routinely distributed. *See generally* Murray Dec. ¶¶ 7-12; Brenner Dec. ¶ 19 (document where contents were specifically stated to be posted online, complete with active hyperlink to the location where posted). For example, many CCOs have requested, and OHA has accepted, that a document called the CCO Rate of Growth Tool should be marked as AEO. Brenner Dec. Ex. 6 (CCO instructions). But this type of document is based on information that is readily attainable from each CCO's financial statements, which are publicly available. *See* Murray Dec. ¶ 11 and Ex. A. Similarly,

11- FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTION

some CCOs have requested that CCO financial statements and summaries of plan enrollment and premiums paid should be marked as AEO, even though OHA regularly publishes that information on its website.   *See* Brenner Dec. Ex. 6 (CCO instructions); Murray Dec. ¶ 9and Ex. A (noting sources online and lack of competitive value).  OHA and the CCOs should not be allowed to designate such documents as AEO.  *See In re Ullico Inc., Litig.*, 237 F.R.D. 314, 317 (D.D.C July 2006) (finding party to have "grossly abused" the use of confidentiality designations where it labeled categories of "obviously non-confidential, publicly accessible documents" such as newspaper clips, press releases, tax forms, and newsletters as confidential); *THK Am., Inc. v. NSK Co. Ltd.,* 157 F.R.D. 637, 646 (N.D. Ill. 1993) ("Clearly, *every* public document designated as 'Attorney's Eyes Only' constitutes a flagrant violation of the Protective Order.  And defendants' designation of documents predicated upon or relating to public information as 'Attorney's Eyes Only' suggests misuse of the designation.") (emphasis in original).

      **(3)    The regulatory environment of Oregon's Medicaid program significantly limits the competitive value of specific information about how a CCO operates.**

Weighing further against the broad confidentiality protections that the CCOs have requested, and that OHA has applied, is that little genuine competition exists in Oregon's Medicaid marketplace.  *See Del Campo v. Am. Corrective Counseling Serv., Inc.*, No. C-01-21151JW (PVT), 2007 WL 3306496, *2 (N.D. Cal. Nov. 6, 2007) (finding documents should be de-designated in part due to failure to demonstrate that a competitor would benefit if the documents were disclosed).  First, each of the CCOs that serve Oregon's Medicaid Program operate in defined geographic areas pursuant to a five-year contract with OHA.  Murray Dec. ¶ 8 and Ex. B (map of regions).  Historically, the CCOs operating in each service area have remained relatively stable and, because there is only limited overlap between areas, they largely serve different patient populations.  *Id.*

12- FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTION

Second, even in cases where multiple CCOs serve the same geographic area, the extent to which they can compete for business remains limited.  Unlike commercial insurers, CCOs do not directly compete for members based on price.  *Id.*  Individuals who qualify for coverage under the Oregon Health Plan sign up for their coverage through OHA receive the same set of benefits regardless of plan and pay nothing for their insurance.  The only way CCOs can compete is through the quality of their customer service and provider networks.  *Id.* at 7.

Third, although persons eligible for Medicaid coverage in certain regions may choose between plans based on quality, most do not and are instead randomly assigned. *Id.*  Similarly, once enrolled with a plan, members are usually reenrolled automatically and tend to remain with the same plan.  *Id.; see also Center for the Study of Servs. v. U.S. Dep't of Health and Human Servs.*, 130 F. Supp. 3d 1, 9–10 (D.D.C. 2015) (analyzing trade secrets claim in context of private health insurers offering plans on public exchange under Affordable Care Act and concluding that risk that members might choose another plan that offered superior benefits was not a reliable indicator of competition because most members were automatically re-enrolled for the same plan and therefore did not make any affirmative choice).

Fourth, CCOs do not secure their contracts through a competitive bidding process based on price.  Instead they are paid according to rates that are set by OHA.  *Id.* at ¶ 7; *cf. Biles*, 931 F. Supp. 2d at 225 (concluding that release of Medicaid Advantage plans' medical cost and utilization data did not result in competitive harm, notwithstanding the fact that plans bid competitively for Medicare contracts with the federal government).

**(4)** **Disclosure would remedy an existing information asymmetry.**

Another factor that can impact the appropriateness of confidentiality designation is whether disclosure would create an information asymmetry that would give the receiving party an unfair competitive advantage.  *Silverberg v. Dep't of Health Human Servs.*, Civ. A. No. 89-2743, 1991 WL 633740, at *4 (D.D.C. June 14, 1991); *see also Biles,* 931 F. Supp. 2d at 224

13- FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTION

(observing that the "'harm' aspect of 'competitive harm' is an unfair commercial disadvantage by way of exposure" and finding no competitive harm where disclosure would be symmetrical across entities).

FamilyCare has sought documents relating to OHA's rate-setting process.  Even if any of that data might have competitive value in isolation, the risk of harm from its open disclosure would be diminished by the fact that the same information would be disclosed for every CCO and be ultimately made available to every CCO.  *See Biles*, 931 F. Supp. 2d at 224 (finding that data cannot cause competitive harm where "all competitors are exposed to the same degree of disclosure).

Moreover, rather than creating an information asymmetry to FamilyCare's advantage, disclosure would in this case serve to remedy an existing asymmetry created by OHA's prior disclosures of data specific to FamilyCare to all other CCOs.  In February 2017, OHA sent FamilyCare-specific documents, containing the same type of information identified by the CCOs as trade secrets, to all 15 other CCOs.  Brenner Dec. Ex. 10.  The other CCOs already have access to the same type of information for FamilyCare that they have resisted disclosing themselves.  The fact that disclosure would remedy, not create, an asymmetry, weighs against a finding of competitive harm and in favor of de-designation.

### (5)    FamilyCare is no longer a competitor in the Medicaid market.

In cases where the receiving party is not a competitor of the disclosing party, or where the information at issue is so old that it is not useful, designation is inappropriate.  *See Team Play,* 2005 WL 256476, at *2 (holding that information alleged to be trade secret lacked competitive value because it was outdated and the party at issue was no longer a competitor of the disclosing party); *see also Biles,* 931 F. Supp. 2d at 225-226 (concluding that data claimed to be trade secret should be disclosed, in part because it was too old to be valuable to a competitor).

14- FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

FamilyCare ceased operating as a CCO on January 31, 2018 and has subsequently begun the process of shutting down its Medicaid managed care business.  FamilyCare is no longer a competitor of any CCO in Oregon.  Although it hopes to return as a CCO someday, the earliest it could do so would be 2020, by which time the information at issue here would be stale and of little use.  Murray Dec. ¶ 14[2].

### (6)    The public interest favors disclosure.

Courts should be open to the public and information that is developed in litigation should be freely disclosed unless countervailing interests are sufficiently strong to justify otherwise.  *See Brandt Indus., Ltd.,* 2012 WL 3704956, at *3  ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality.") (internal citation omitted). Here, the information at issue relates to a key function of a public agency, and the use of taxpayer money to provide an important public benefit.

Oregon's CCO system was designed to foster transparency in rate-setting and in the business of CCOs, which serve an important public function.  The disclosure of information about how CCOs operate and provide services to their members is a fundamental part of that transparency.  Indeed, this principle is enshrined in Oregon law:

> Notwithstanding [statutory requirements relating to the confidentiality of Protected Health Information], a coordinated care organization, its provider network and programs administered by the Department of Human Services for seniors and persons with disabilities *shall use and disclose* member information for purposes of service and care delivery, coordination, service planning, transitional services and reimbursement, in order to improve the safety and quality of care, lower the cost of care and improve the health and well-being of the organization's members.

ORS 414.679 (emphasis added).

---

[2] Although some CCOs might argue that former FamilyCare employees could still go to work for other CCOs sooner, taking trade secrets with them, the confidentiality agreements that already apply to these employees would prevent that result.  *See* Murray Dec. ¶ 15.

15-  FAMILYCARE, INC.'S OMNIBUS DISCOVERY
     MOTION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

This public interest in transparency is true even for pricing information at the provider level, for which disclosure is currently increasing to foster competition and put downward pressure on health care costs. *See also* Murray Decl. at ¶ 12 (describing Oregon legislative mandate that certain hospital pricing and utilization data be made public). The Oregon legislature requires OHA to collect and publish information about CCO operations, including their expenditures on primary care. See Murray Decl. at ¶ 10.

Federal law similarly requires the Medicaid rate-setting process to be transparent. Under the Medicaid Managed Care Final Rule, which defines the way states must set rates for managed care organizations like CCOs,

> All adjustments used to develop the capitation rates must be *adequately described with enough detail* so that CMS, or an actuary applying generally accepted actuarial principles and practices, *can understand and evaluate all of the following*: (i) How each material adjustment was developed and the reasonableness of the material adjustment for the enrolled population.

42 C.F.R. § 438.7(b)(4) (emphases added).

Many of the documents at issue here are related to the rate-setting process, and FamilyCare's actuary needs them to assess the actuarial soundness of OHA's rates. The principle of transparency embedded in state and federal law favors disclosure.

### 3. The document-by-document approach is unworkable.

The protective order requires parties to challenge confidentiality designations on a document-by-document basis. Such an approach is inappropriate here. First, too many documents have been designated as Confidential or AEO in this case to challenge them one by one. This point is underscored by the fact that OHA has designated as AEO or Confidential many documents that contain no information relating to any particular CCO, making it all but impossible to challenge their designation under the procedure set forth in the Protective Order.

Second, the document-by-document process process cannot work where the party asserting the protection is outside of the discovery process and lacks information about what has

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

been designated and why. Some CCOs have responded to FamilyCare's recent notice letter, generally expressing frustration with the fact that they lack visibility into OHA's process of marking documents and have noted that they have no way of knowing what documents specifically are at issue, even with a list of specific bates numbers at hand. *See* Brenner Dec. Ex. 11 (CCO response letters).

Third, given these issues, strictly adhering to the process set forth in the Protective Order would be inequitable and have the effect of impermissibly shifting the burden of the producing and designating parties onto FamilyCare. *See Fears*, 2003 WL 21737808, \*1–2 (party seeking to limit disclosure through confidentiality designation bears the burden of establishing good cause for designation); *see also Del Campo,* 2007 WL 3306496, at \*4 (granting plaintiffs' motion to de-designate documents and finding that defendant's massive over-designation of documents warranted sanctions because the defendant's "actions in indiscriminately designating documents had the result of improperly shifting the cost of review of confidentiality to the Plaintiffs"); *Procaps*, 2015 WL 4430955, at \*6 (ordering de-designation of "highly confidential" documents within 10 days and awarding sanctions, noting that noting that indiscriminate designation "should not lead to the result of improperly shifting the cost of review of confidentiality" to the other side) (internal quotation and citation omitted).

In sum, because OHA has not complied with the requirements of the Protective Order and has instead over-marked documents, and because no other resolution is manageable under the circumstances, the Court should decline to enforce the particular process set forth in the Protective Order. Instead, FamilyCare respectfully asks that the Court both define and limit the scope of documents that may be designated in this case, and ensure that OHA (and the CCOs) take appropriate measures to ensure that it is properly applied.

17- FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTION

**IV.    MOTION TO COMPEL, OR IN THE ALTERNATIVE FOR *IN CAMERA* REVIEW OF DOCUMENTS**

While over-marking documents as Confidential or AEO, OHA has selectively disclosed documents that would otherwise have been protected by the attorney-client privilege and/or the work product doctrine.  OHA has waived the privilege over these and related documents, and FamilyCare respectfully requests an order compelling OHA to produce them.

**A.    Background**

In May 2017, the Portland Tribune (the "Tribune") filed a public records request seeking OHA documents relating to OHA's public relations strategy for FamilyCare.  The following month, OHA released a heavily redacted version of the a communications plan (the "Communications Plan") and related emails.  OHA contended these redactions were appropriate because, *inter alia*, the attorney-client privilege protected the documents.  Brenner Dec., Ex. 12 (June 27, 2017 email from BethAnne Darby to Nick Budnick).

But in July 2017, after the Tribune filed an appeal with the Oregon Department of Justice ("DOJ"), OHA voluntarily disclosed the previously redacted documents, this time without redactions.  *See id.* Ex. 13 (July 21, 2017 email from Rob Cowie from Nick Budnick).  The released, unredacted documents included otherwise privileged emails between OHA and DOJ attorneys as well as numerous drafts of the Communications Plan and related documents labeled "Attorney-Client Privilege." Nevertheless, OHA's privilege log reveals scores of documents that have been withheld as privileged that appear similar in every respect—involving the same individuals, timeframe, and subject matter—as those OHA has released and produced

**B.    OHA has improperly withheld documents related to the Communications Plan.**

The attorney-client privilege protects confidential communications between a client seeking legal advice and an attorney providing such advice.  *In Re Grand Jury Subpoena 92-I (SJ)*, 31 F.3d 826, 829 (9th Cir. 1994).  Similarly, the work-product doctrine protects from discovery "documents and tangible things prepared by a party or his representative in

18-  FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTION

anticipation of litigation." FRCP 26 (b)(3). An express waiver of attorney-client privilege occurs when a party discloses protected information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public. *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). Similarly, protection for work product is waived when a party voluntarily releases work product materials to its adversary, or to a third party that is likely to disclose it to the adversary. FRE 502(a). The party asserting attorney-client privilege or work production protection has the burden of proving that it has not waived the privilege. *Weil v. Inv./Indicators, Research and Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

Once privilege is waived, it is up to the court to determine the scope of waiver. In this case, federal law governs the scope of waiver.[3] When a disclosure waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together. FRE 502(a). Subject matter waiver is appropriate for circumstances "in which a party intentionally puts protected information into the litigation in a selective, misleading, and unfair manner." FRE 502(a) Advisory Committee Notes.

For the reasons below, all three FRE 502(a) elements are satisfied, and accordingly OHA should be required to produce all communications and documents related to the Communications Plan.

---

[3] Under FRE 502(c), when the disclosure is made in connection with a state court proceeding, the disclosure does not operate as a waiver in a federal proceeding if the disclosure: (1) would not be a waiver under FRE 502 if it had been made in a federal proceeding; or (2) is not a waiver under the law of the state where the disclosure occurred. In other words, federal law applies whichever waiver standard is stricter. *See* Advisory Committee Notes, Subdivision (c). Under Oregon law, when the holder voluntarily discloses "any significant part" of a privileged communication, the privilege in question is waived as to other communications on the same subject. ORS 40.280; *Triplett v. Bd. of Social Protection*, 19 Or. App. 408, 528 P.2d 563 (1974). As Oregon privilege waiver law lacks the "fairness" element set forth in FRE 502(a)(3), federal law provides stricter waiver protections and thus governs this analysis.

19- FAMILYCARE, INC.'S OMNIBUS DISCOVERY
    MOTION

**1.    OHA intentionally disclosed privileged materials.**

On July 21, 2017, and in response to the Tribune's records request, Rob Cowie—the external communications director for OHA—emailed the Tribune drafts of the Communications Plan and associated emails.  Brenner Dec. Ex. 13.  In his email, Cowie told the Tribune that "[OHA] Director [Lynne] Saxton asked me to send these documents to you."  *Id.*  He further stated that "[w]e are choosing to release the documents to you at this time," even though DOJ was still reviewing the propriety of OHA's assertions of privilege.  *Id.*

The emails and the documents released to the Tribune bear the markers of privilege in multiple ways.  Many of the released emails are marked "Attorney-Client privilege" in the subject line, involve DOJ attorneys, and feature a "confidentiality notice" informing the reader that the email "may contain information that is privileged, confidential, or otherwise exempt from disclosure."  Brenner Dec. Ex. 14 (emails released to the Tribune).  One email from Lynne Saxton, following up on the development of the plan, expressly states that she "wants to clarify next steps" and requests that two DOJ attorneys copied on the email give her a call to discuss.  *Id.* Ex. 14, p. 10 (Jan. 9, 2017 email chain).  One email notes the need to coordinate OHA's messaging with the timing of the dispute resolution process with FamilyCare and asks a DOJ attorney for an update noting it "might help us plan our communications."  *Id.*  Ex. 14, p. 95 (Jan. 26, 2017 email chain beginning with email from C. Crowell to J. Wahl, B. Darby and R. Cowie).  Other emails note the involvement of multiple DOJ attorneys in internal discussions about, and in reviewing drafts of, the Communications Plan.  *See, e.g.*, *id.* Ex. 14, p. 46 (Jan. 17, 2017 email from L. Saxton noting involvement of Jeff Wahl, Ted Falk and Renee Stineman).

Similarly, not only do the Communications Plan documents bear similar privilege notices on their face, versions of the plan itself, and emails from internal OHA staff expressly acknowledge that it was created for a litigation purpose.  *See, e.g.* Brenner Dec. Ex 14, p. 1 (Jan. 6, 2017 email from Robb Cowie forwarding Communications Plan documents and stating "here are some of the materials we prepared last year as part of our response to the Family Care

20-  FAMILYCARE, INC.'S OMNIBUS DISCOVERY
MOTION

litigation"); and *id.* Ex. 14, p. 4 (draft of plan referencing existing contract dispute and its acceleration towards "a high-stakes and high-visibility resolution").

OHA intentionally disclosed privileged materials to the Tribune, and thus the first FRE 502(a) element is satisfied.

### 2. The disclosed and undisclosed communications concern the Communications Plan.

Family Care has identified the documents attached as Exhibit 15 Brenner's Declaration as concerning the same subject matter as the Communications Plan. OHA's privilege log describes these documents as relating to the Communications Plan, and they were created during the time periods during which OHA internally discussed the Communications Plan (i.e., the spring of 2016; January to March 2017; and July and August 2017).

### 3. The undisclosed documents related to the Communications Plan ought in fairness to be considered with the documents released to the Tribune.

Under FRE 502, "a party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation." Advisory Committee Notes, Subdivision (a). This is precisely what OHA has done. OHA voluntarily disclosed *only* a portion of the Communications-Plan-related documents, and then repeatedly—both publicly and in this litigation—contended that the Communications Plan was half-formed, never implemented, and in its nascent stages. OHA's privilege log suggests that this contention is inaccurate.

For example, in its release of Communications Plan documents to the Tribune, OHA stated that "these communications plans . . . were never formally reviewed or approved, or fully implemented," and that the plans "quite frankly [were] never seriously vetted or reviewed." Brenner Dec. Ex. 18. And, in her public apology to the CCOs, Lynne Saxton stated, "This draft plan—developed by OHA in the heat of ongoing litigation—was not implemented or acted on in any way[,]" and further that "[t]hese ideas were shelved in their draft form." Brenner Dec., Ex. 17. In this litigation, OHA has argued that "[a]t most, the [Communications Plan]

21- FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTION

shows that OHA merely *considered* a strategy to defend itself against FamilyCare's repeated attacks against OHA in the press[.]"  (Docket No. 25, Declaration of Harry Wilson, Ex. 1, Pg. 5, Ln. 11-13) (emphasis in original).

FamilyCare has a reasonable, good faith belief that these public statements were and continue to be inaccurate. While the documents released pertaining to the 2017 version of the Communications Plan relate almost exclusively to its drafting (rather than implementation), other documents contained within the release show that at a minimum, an earlier version of the plan developed in 2016 was put into action.  Given that, there is a reason to expect that OHA also implemented the 2017 version of that Plan. The entries on OHA's privilege log confirm that suspicion.  The timing and number of apparently-related documents and communications on the log suggest that the 2017 Communications Plan was indeed more than a passing fancy.

OHA's voluntary disclosures to the Tribune create plausible deniability about the degree to which OHA vetted and implemented the Communications Plan.  It would be inequitable and unjust to allow OHA to voluntarily create the impression that its Communications Plan was in fledgling form while simultaneously allowing OHA to withhold the materials that would debunk this impression.

**C.     In the alternative, FamilyCare requests that the Court perform an *in camera* review of the documents identified in Exhibit 19 to the Brenner Declaration.**

OHA has previously argued during conferral that there was no waiver of attorney-client privilege or work product protection for the documents released to the Tribune, because these documents were allegedly never privileged in the first instance.  To maintain consistency with this position, OHA has produced certain documents related to the Communications Plan over which attorney-client privilege and/or work product protections may potentially otherwise have been claimed.  For example, OHA produced versions of the Communications Plan in draft form with comments in the margins from OHA staff.  OHA also produced subsequent emails related to the emails that OHA voluntarily disclosed to the Tribune.  Brenner Dec. Ex. 20.

22-  FAMILYCARE, INC.'S OMNIBUS DISCOVERY
     MOTION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

As described above, FamilyCare disagrees with OHA's position that the documents released to the Tribune were not privileged.  Several of the emails included in the release bear the classic indicators of privileged communications.  Likewise, even if it were believed that OHA developed its Communications Plan targeting FamilyCare because it was its normal practice to engage in such activities, it is undeniable that "in light of the nature of the document" and the factual context, the plan was prepared and implemented at least in part because of "the prospect of litigation." *See In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.),* 357 F.3d 900, 907 (9th Cir. 2004) (describing rule for "dual purpose" test).

However, should the Court agree with OHA, FamilyCare requests that the Court perform an *in camera* review of the documents identified in Exhibit 19, which appear—at least potentially—to fall into the same category of Communications Plan-related documents that OHA has deemed non-privileged. To allow otherwise would allow OHA to impermissibly benefit from the released documents to support its defense that the Plan was never implemented while avoiding the disclosure of those documents that would reveal otherwise, thereby using the protection of privilege "as both a shield and a sword." *See Bittaker*, 331 F.3d at 719 (describing principle); *cf.* 3 Weinstein & Berger, *Weinstein's Federal Evidence* § 503.41[1], at 503–104.1 to .2 (Joseph M. McLaughlin ed., 2d ed. 2003) (stating rule that a party waives privilege by implication when it takes a position in litigation that makes it unfair to protect that party's attorney-client communications).

There are a substantial number of documents on OHA's privilege log that bear many of the same characteristics as those documents that were released to the Tribune.  Based on the information contained on OHA's privilege log, including the document authors, dates and general subject matter, it appears that these documents are, at a minimum, related in some manner to the development and implementation of the Communications Plan. To the extent that the documents related to the Tribune disclosure are indeed non-privileged, OHA should not be

23- FAMILYCARE, INC.'S OMNIBUS DISCOVERY
    MOTION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

selectively and inconsistently withholding substantially similar, and related, documents as privileged.

FamilyCare's concerns on this point are particularly sharpened given that some of the partially redacted documents produced by OHA suggest a liberal application of the attorney-client privilege. For example, OHA produced a March 3, 2017 email between an OHA employee, Chelsea Guest, and an Optumas employee, Zachary Aters, in which Guest seeks Aters' assistance in responding to an inquiry from a legislator. Brenner Decl., Ex. 21. A DOJ attorney, Jeff Wahl, is copied on the email. *Id.* The entirety of the one-page email is redacted, except for the following parenthetical comment: "(I've copied Jeff to keep this a privileged exchange[.])." *Id.* As this document illustrates, it appears that OHA, at least in some instances, copies counsel for prophylactic reasons rather than for the purpose of obtaining legal advice, then withholds such documents on the incorrect assertion of attorney-client privilege.

Because FamilyCare has a reasonable, good faith belief that *in camera* inspection may reveal evidence that the documents are not privileged, *see Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F3d 343, 353 (9th Cir 2014), FamilyCare requests that the Court conduct an *in camera* review of the documents identified in Exhibit 19 to the Brenner Declaration. FamilyCare requests that, upon concluding its review, the Court order OHA to produce the non-privileged documents, or non-privileged portions of those documents.

## CONCLUSION

For the foregoing reasons, FamilyCare respectfully requests that the Court grant each of its discovery motions.

24- FAMILYCARE, INC.'S OMNIBUS DISCOVERY MOTION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

DATED:  March 16, 2018                    **PERKINS COIE LLP**


By: *s/ Stephen F. English*
　　　Stephen F. English, OSB No. 730843
　　　SEnglish@perkinscoie.com
　　　Thomas R. Johnson, OSB No. 010645
　　　TRJohnson@perkinscoie.com
　　　Douglas R. Pahl, OSB No. 950476
　　　DPahl@perkinscoie.com
　　　Alletta Brenner, OSB No. 142844
　　　ABrenner@perkinscoie.com
　　　Brian P. Samuelson, OSB No. 165476
　　　BSamuelson@perkinscoie.com
　　　Perkins Coie LLP
　　　1120 N.W. Couch Street, 10th Floor
　　　Portland, OR  97209-4128
　　　Telephone:  503.727.2000
　　　Facsimile:  503.727.2222

*Attorneys for Defendant FamilyCare, Inc.*

25- FAMILYCARE, INC.'S OMNIBUS DISCOVERY
　　MOTION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222