Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Alletta Brenner, OSB No. 142844
ABrenner@perkinscoie.com
Brian P. Samuelson, OSB No. 165476
BSamuelson@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

*Attorneys for FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official Capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>    Plaintiff,<br><br>  v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>    Defendant. | No. 3:18−cv−00212−MO (LEAD)<br>No. 3:18-cv-00296-MO<br><br><br><br><br>DECLARATION OF WILLIAM MURRAY IN SUPPORT OF DISCOVERY MOTIONS OF FAMILYCARE, INC. |
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>    Plaintiff, | |

1-   MURRAY DECLARATION IN SUPPORT OF
    DISCOVERY MOTIONS OF FAMILYCARE, INC.

138939489.3

v.

OREGON HEALTH AUTHORITY, an
agency of the State of Oregon, and
PATRICK ALLEN, both individually and in
his official capacity as director of the Oregon
Health Authority,

Defendants.

I, William Murray, state as follows:

1.      I am the Chief Operating Officer of FamilyCare, Inc., ("FamilyCare"), parent company to FamilyCare Health Plans, Inc. and party to the above-captioned cases. I have personal knowledge of the matters stated herein and am competent to testify thereto.

2.      In my role as FamilyCare's Chief Operating Officer, I am responsible for leading the day-to-day operations of the organization, overseeing reporting and monitoring of the organizational performance, and staying abreast of changes in the healthcare industry and adjusting business operations as required. I am also directly involved in preparing and submitting the specific kinds of data and information that FamilyCare was, as a CCO, required to submit to OHA as part of the rate-setting process, and in communicating with OHA about those submissions and the rate-setting process in general.

3.      Prior to joining FamilyCare in 2013, I was Chief Executive Officer with another Oregon Medicaid managed care organization for 10 years. I have also been active in Oregon's administrative and legislative process in the healthcare field, including serving on the Oregon Health Policy Board's Health Incentives and Outcomes Committee that helped develop Oregon's Coordinated Care Organization (CCO) model that is in effect today. I have over 30 years of leadership, business management, information systems, finance and regulatory experience. I began my career as a certified public accountant (CPA) with an international accounting firm and subsequently ran my own healthcare-focused CPA practice for seven years.

2-    MURRAY DECLARATION IN SUPPORT OF
      DISCOVERY MOTIONS OF FAMILYCARE, INC.

138939489.3

4.      Based on this experience, I am familiar with the types of information that CCOs submit to the Oregon Health Authority (OHA) as part of the rate-setting process, and the extent to which that information would be of competitive value to another CCO participating in Oregon's Medicaid Program.

5.      To evaluate and litigate its claims in this case, many of which relate to the soundness of the rates that OHA has set for FamilyCare in recent years, it is necessary for FamilyCare to obtain and analyze a wide range of documents and information related to the rate-setting process.

6.      The other CCOs that operate in Oregon have provided instructions to OHA that some (or in some cases all) of the following categories of documents and information relating to the rate-setting process should be treated as trade secrets and should be designated as Confidential or Attorneys' Eyes Only prior to being produced:

    **a.**  CCO Rate of Growth Tool

    **b.**  Exhibit L Template

    **c.**  Supplemental Rate Templates

    **d.**  Claims and encounter data submissions to OHA

    **e.**  State enrollment data, including premiums paid

    **f.**  Medical Loss Ratio (MLR) Template

    **g.**  Audited CCO Financial Statements

    **h.**  Actuarial Opinions (for individual CCOs)

    **i.**  Special Needs Rate Group (SNRG) Reconciliation

    **j.**  SB 231 Primary Care Template

    **k.**  Records or detail data that would identify prescription drug prices or rates

    **l.**  Regional Rate Model and supporting exhibits

    **m.**  Any other records or detail that would expose encounters, rates, or contractual agreements with physicians, hospitals or any other providers

3-  MURRAY DECLARATION IN SUPPORT OF DISCOVERY MOTIONS OF FAMILYCARE, INC.

138939489.3

Attached as **Exhibit A** is a chart outlining each of these categories and summarizing why, in my professional opinion, the documents and information that would fall within them have at most minimal competitive value, and why many have none.

7.    Although some kinds of information routinely used by CCOs could in some contexts be considered proprietary and valuable, namely specific information about the terms of a contract with an individual medical provider, even that kind of information is of limited value in the context of Oregon's Medicaid program.  One reason for this is the highly structured environment in which Oregon's CCOs operate.  Each of the CCOs that serve Oregon's Medicaid Program operates in a defined geographic area pursuant to a five-year contract with OHA. Historically, the CCOs operating in each service area have remained relatively stable, and because there is only limited overlap between areas, they largely serve different patient populations.  Furthermore, even in cases where multiple CCOs serve the same geographic area, the extent to which they can compete for business remains limited.  Unlike commercial insurers, CCOs do not directly compete for members based on price or covered benefits.  Rather, because individuals who qualify for coverage under the Oregon Health Plan sign up for their coverage through OHA, receive the same set of benefits regardless of plan, and pay nothing for their insurance, the only way that CCOs can compete is through the quality of their customer service and provider networks. And, even that type of competition is limited. Oftentimes, members do not select a plan and are instead randomly assigned and once enrolled, most members tend to be automatically re-enrolled for the same plan year after year.  Similarly, CCOs do not secure their contracts with OHA through a competitive bidding process based on price.  Instead they are paid according to rates that are set by OHA.

8.    Attached as **Exhibit B** is a true and correct map of Oregon's current Medicaid service areas and the CCOs that serve them, showing the overlap (or lack thereof) between CCOs,

4-    MURRAY DECLARATION IN SUPPORT OF
DISCOVERY MOTIONS OF FAMILYCARE, INC.

138939489.3

which was retrieved on March 12, 2018 from OHA's website at: https://aix-xweb1p.state.or.us/es_xweb/DHSforms/Served/le8116.pdf.

9.    The structure of Oregon's CCO system undermines the competitive value of CCO-specific information in other ways. A substantial amount of information about the way that CCOs conduct business is shared publicly. Some examples of CCO-specific information that is routinely made available includes:

a.  **Audited and internal financial statements**: Detailed statements for each CCO are posted online quarterly for internal financial statements and annually for audited statements at: http://www.oregon.gov/oha/FOD/Pages/CCO-Financial.aspx

b.  **Primary Care Spending report to Oregon legislature:** This annual report includes CCO enrollment figures, medical premiums and spending on primary care services by type of payment.  Available online at: http://www.oregon.gov/oha/HPA/CSI-PCPCH/Pages/Reports-Evaluations.aspx

c.  **Community Health Improvement Plans and Progress reports:** This report outlines specific health improvement initiatives, strategies and progress achieving them by CCO. Plans and reports are posted online for each CCO annually at: http://www.oregon.gov/oha/HPA/CSI-TC/Pages/chps-chp-progress-reports.aspx

d.  **CCO Transformation Plans:**  Detailed plans for each CCO's approach to obtaining healthcare transformation goals pursuant to its contract with OHA, including specific benchmarks and milestones achieved.  Posted online at: http://www.oregon.gov/oha/HPA/CSI-TC/Pages/Oregon-CCO-Transformation-Plans.aspx

e.  **CCO Quality Metrics reports:** Compares CCO performance according to a variety of benchmarks.  Posted biannually and available online at: http://www.oregon.gov/oha/HPA/ANALYTICS-MTX/Pages/HST-Reports.aspx

f.  **Oregon Medicaid Waiver reports:** Quarterly and annual reports on Oregon's Medicaid program, providing detailed information on CCO enrollment figures, financial performance, and member complaints and grievances. Posted online at: http://www.oregon.gov/oha/HPA/HP-Medicaid-1115-Waiver/Pages/2017-2022-Quarterly-Annual-Reports.aspx

g.  **OHA Rate Development Reports, Rate Sheets and Actuarial Certification:** Provides information on rates paid to each CCO and certain underlying information.  Available online at: http://www.oregon.gov/oha/HPA/ANALYTICS/Pages/OHP-Rates.aspx

5-  MURRAY DECLARATION IN SUPPORT OF DISCOVERY MOTIONS OF FAMILYCARE, INC.

138939489.3

    **h. OHA Legislative Quarterly Reports:** Provides selective CCO comparative financial and operating data. Available online at: http://www.oregon.gov/oha/Pages/Reports-Data.aspx

In many cases, these publicly available sources contain the same underlying information that some CCOs now assert to be trade secrets. And other purported CCO "trade secrets" can be readily derived using the information contained within these sources and/or from other publicly available sources, such as those identified above.

10. Aside from publicly disseminating information through published reports, OHA regularly provides certain information to CCOs as part of the rate-setting process each year. This shared information similarly overlaps with the types of information that certain CCOs have claimed to be trade secrets.

11. For example, one type of information that some CCOs have claimed to be a trade secret is aggregated information on total expenditures and utilization of medical services by category of service rendered and type of Oregon Health Plan member served (often referred to as the "rate group"). As discussed in the chart attached as **Exhibit A**, such information, while important to rate-setting, is of minimal competitive value because, even assuming for the sake of argument that pricing information at the individual provider level has value, aggregated information at the regional level about what CCOs in that region spend by category of service and type of member neither reveals such pricing information, nor permits one to reverse engineer it. Similarly, because each CCO has its own unique mix of members, information on the utilization of medical services at the regional level is of limited use.

12. Such information is increasingly seen in the healthcare industry as something that is not a trade secret, but information that should be publicly disseminated. To this point, similar types of information on pricing and payments at the provider level is often made public in the commercial insurance context. For example, Oregon hospitals are required to report certain pricing and payment information for common inpatient and outpatient services, which is then

6- MURRAY DECLARATION IN SUPPORT OF DISCOVERY MOTIONS OF FAMILYCARE, INC.

138939489.3

made available to the public.  Much of this information can be accessed online at:

http://www.oregon.gov/oha/HPA/ANALYTICS/Pages/Hospital-Reporting.aspx . Similarly, the

Division of Financial Regulation in Oregon's Department of Consumer and Business Services

publishes data on enrollment, medical claims made and costs per claim for each commercial

medical plan that operates in Oregon. This data can be accessed online at:

http://dfr.oregon.gov/business/report-data/Pages/index.aspx .

13.    The same is true for this type of information in a Medicare context.  Similar

information on medical claims and costs is available in large-scale data sets managed by Center

for Medicare and Medicaid Services (CMS), the agency that administers this program at the

federal level. See: https://www.cms.gov/Research-Statistics-Data-and-Systems/Computer-Data-

and-Systems/MedicaidDataSourcesGenInfo/index.html.

14.    The earliest FamilyCare would be able to recommence operating as a CCO

would be in 2020.  By that time, any CCO-specific data received in this litigation would be stale

and not useful for any competitive purpose.

15.    FamilyCare employees who leave the company to work for another CCO would

be prohibited from taking with them any materials obtained from their work with FamilyCare

and would be likewise prohibited from disclosing or using such information in any way.

*I hereby declare that the above statement is true to the best of my knowledge and belief,
and that I understand it is made for use as evidence in court and is subject to penalty for perjury.*

DATED: March 16, 2018

s/William Murray

William Murray

7-    MURRAY DECLARATION IN SUPPORT OF
      DISCOVERY MOTIONS OF FAMILYCARE, INC.

138939489.3

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222