2017 Base Data and Reimbursement Review



# 2017 Reimbursement Review

## Rate Process Overview

As of September 30, 2016, the Oregon Health Authority has presented the 2017 rates to CCOs and is finalizing the submission to CMS. OHA has continued to contract with Optumas, our Medicaid Actuarial consultant, to develop and certify the 2017 rates. The rate development leverages the regional and risk score methodology used for 2015 and 2016 CCO rates. As part of this development process, Optumas and OHA reviewed the CCO 2015 financial information and created the regional base data, which is the basis for the 2017 rates. The review process included adjustments made based on policy decisions. The following outlines how those adjustments were determined.

## 2015 Financial Picture and Rate Setting

During the 2015 financial review process, Optumas found that some CCOs were reporting a significant increase in per member spending from 2014 to 2015, while others were reporting sustainable or low rates of growth. This is good news for the state that health system transformation is working and investments that are made in the community are resulting in lower rates of growth. However, o**n aggregate, the per member costs from 2014 to 2015 still grew at an implied growth of 8.6% as reported by CCOs (see next page for graphs).**

OHA asked Optumas to explore the drivers for CCOs that were experiencing significant increases, and found some of it was due to business decisions by the CCOs to increase reimbursement and payout surpluses to providers as incentives, along with other drivers of increased pharmacy and A/B hospital costs.

Drivers of increased costs per member from 2014 to 2015
- Increased reimbursement between 2014 to 2015
- Surplus payouts to providers
- Increased pharmacy costs (both generic and brand)
- Increased A/B hospital costs for specific CCOs

While many of these drivers are outside the control of CCOs, such as pharmacy costs and A/B hospital cost increases, OHA asked Optumas to conduct a reimbursement analysis across the program to review for reasonableness and changes over time. The following graphs provide more insight to the landscape of the growth reported by CCOs from 2014 to 2015.

Exhibit 7
Page 1 of 6

ATTORNEYS EYES ONLY

2017 Base Data and Reimbursement Review

## 2014 to 2015 Implied Growth Rate

*CCO reported financial comparison by region and statewide, adjusted for population mix*



## 2014 to 2015 Implied Growth Rate by CCO

*CCO reported financial comparison, adjusted for population mix*



Exhibit 7
Page 2 of 6

ATTORNEYS EYES ONLY

OHA_LIT_00277610

2017 Base Data and Reimbursement Review

## Base Data Policy and Reimbursement Review

Based on the information laid out above, OHA adopted a rate development policy in collaboration with CCOs and Optumas to evaluate the high growth from 2014 to 2015, while still promoting efficiency and the success we've seen with lower growth for some CCOs. Without action, OHA would be in jeopardy of not achieving a sustainable rate of growth in the program. **Please note, these rate adjustments do not result in a CCO-specific rate increase or decrease, due to the regional rate methodology.**

**Policy Principles**:
- Develop a policy that promotes containing costs across a CCO's budget, no matter the reimbursement method or reimbursement level.
- Do not perpetuate CCO business decisions of increased spending in 2015 into 2017, unless they are sustainable and resulted in a return on investment in the CCO's overall growth.

**2017 Base Data Policy**:
- For CCOs, that met a sustainable growth rate, no reimbursement adjustment was made. However, surplus and one-time costs were removed.
- For CCOs that were outliers and above a sustainable growth, and also had increased reimbursement from 2014 to 2015; adjustments were made in claims level reimbursement and/or incentive payments.

After the above policy was applied, the adjusted base data was reduced and resulted in a 4.7% increase in the base from 2014 to 2015. While the sustainable rate of growth was used to evaluate drivers, if CCOs experienced increased costs based on such things as pharmacy, and was not the result of a reimbursement increase, adjustments were not made. **In summary, the base data was not adjusted to attain a sustainable rate of growth, but was evaluated to reveal drivers of growth that are both unsustainable and significantly above national trends.**

| Region | CY14 to CY15 PMPM Rate of Growth - Mix Adjusted | | CY15 Financial Dollars | | |
| | Reported Financials[1] | Adjusted Financials[2] | Reported Financials[1] | Adjusted Financials[2] | Difference |
|---|---|---|---|---|---|
| Tri-County | 8.8% | 5.6% | $ 1,151,175,403 | $ 1,116,762,916 | $ (34,412,487) |
| Northwest | 5.5% | 3.1% | $ 719,413,330 | $ 703,265,950 | $ (16,147,380) |
| Southwest | 10.4% | 3.9% | $ 814,775,774 | $ 766,804,592 | $ (47,971,181) |
| Central/Eastern | 9.7% | 6.4% | $ 502,302,716 | $ 487,321,980 | $ (14,980,736) |
| Statewide | 8.6% | 4.7% | $ 3,187,667,223 | $ 3,074,155,437 | $ (113,511,785) |

## CMS Final Rule

In addition, based on the new Centers for Medicare and Medicaid Services (CMS) Managed Care Rule, states have the discretion to set minimum and maximum reimbursement levels that are reasonable to attain availability and access to services, and additional flexibility to determine which services and models are appropriate for value-based purchasing. (§438.4(b)(3))

**Comment [GCA1]:** Zach – Does this work for the CMS reference?

Exhibit 7
Page 3 of 6

ATTORNEYS EYES ONLY

OHA_LIT_00277611



Exhibit 7
Page 4 of 6

ATTORNEYS EYES ONLY

OHA_LIT_00233576

76th OREGON LEGISLATIVE ASSEMBLY--2011 Regular Session

## Enrolled

# Senate Bill 238

Printed pursuant to Senate Interim Rule 213.28 by order of the President of the Senate in conformance with presession filing rules, indicating neither advocacy nor opposition on the part of the President (at the request of Senate Interim Committee on Health Care)

CHAPTER .................................................

AN ACT

Relating to administrative requirements for persons contracting with the state to provide health services; and declaring an emergency.

Be It Enacted by the People of the State of Oregon:

SECTION 1. (1) As used in this section:

(a) "Outcome measure" means an objective, observable standard for evaluating a patient's access to services, the retention of patients in programs or services, the quality or effectiveness of services, the use of evidence-based practices or the cost-effectiveness of services.

(b) "Patient data" means information concerning a patient or services provided to a patient that must be submitted to the Oregon Health Authority by a provider.

(c) "Provider" means a person that contracts or enters into an agreement with the authority to provide mental health or addiction treatment services.

(2) In order to enable providers to redirect resources from the submission of patient data and information to the authority to the provision of patient services, the authority shall conduct a thorough, line-by-line review of any rules adopted by the authority that relate to mental health and addiction treatment providers to determine:

(a) If excessive requirements and redundancies can be eliminated; and

(b) If the process for collecting patient data can be streamlined.

(3) The authority may require providers to submit patient data and information necessary to evaluate outcome measures as a condition of contracting with the authority. The requirements for the submission of patient data and information may not be duplicative of other reporting requirements.

(4) The authority shall adopt standardized forms for the reporting of patient data and information to the authority and to any licensing board in this state by providers and by individuals who provide the mental health or addiction treatment services.

(5) The authority shall appoint a work group to advise the authority in the review, development, adoption and amendment of rules and forms under subsections (2) to (4) of this section. In selecting the members of the work group, the authority shall seek the advice of and consider any recommendations from an organization representing county mental health programs. The work group must include:

(a) Two individuals who are employed by the authority in a department or division that regulates mental health and addiction treatment services;

Enrolled Senate Bill 238 (SB 238-A)                                                    Page 1

ATTORNEYS EYES ONLY

Exhibit 7
Page 5 of 6

OHA_LIT_00233345

(b) Three individuals who are providers of addiction treatment services or are members of an organization that represents providers of addiction treatment services;

(c) Three individuals who are providers of mental health services or are members of an organization the represents providers of mental health services; and

(d) Two individuals who are consumers of mental health or addiction treatment services.

(6) The authority shall adopt or amend rules and forms described in subsections (2) to (4) of this section no later than January 1, 2012.

(7) The authority shall report to the 2012 regular session of the Legislative Assembly on the effectiveness of rules adopted or amended under subsection (6) of this section in reducing duplicative, redundant or unduly burdensome reporting requirements imposed on providers and on individuals who provide the contracted addiction and mental health treatment services.

SECTION 2. Section 1 of this 2011 Act is repealed January 2, 2013.

SECTION 3. This 2011 Act being necessary for the immediate preservation of the public peace, health and safety, an emergency is declared to exist, and this 2011 Act takes effect on its passage.

————————

Passed by Senate May 3, 2011

......................................................................
Robert Taylor, Secretary of Senate

......................................................................
Peter Courtney, President of Senate

Passed by House June 2, 2011

......................................................................
Bruce Hanna, Speaker of House

......................................................................
Arnie Roblan, Speaker of House

Received by Governor:

.........................M.,........................................., 2011

Approved:

.........................M.,........................................., 2011

......................................................................
John Kitzhaber, Governor

Filed in Office of Secretary of State:

.........................M.,........................................., 2011

......................................................................
Kate Brown, Secretary of State

Enrolled Senate Bill 238 (SB 238-A)                                    Page 2

Exhibit 7
Page 6 of 6

ATTORNEYS EYES ONLY

OHA_LIT_00233346