Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Douglas R. Pahl, OSB No. 950476
DPahl@perkinscoie.com
Matthew P. Gordon, *pro hac vice*
MGordon@perkinscoie.com
Alletta Brenner, OSB No. 142844
ABrenner@perkinscoie.com
Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

*Attorneys for Defendant FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official Capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>    Plaintiff,<br><br> v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>    Defendant.<br><br>———————————————<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>    Plaintiff, | No. 3:18−cv−00212−MO (LEAD)<br>No. 6:18−cv−00296−MO<br><br>FAMILYCARE, INC.'S RESPONSE TO OREGON HEALTH AUTHORITY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS (ECF 19)<br><br>ORAL ARGUMENT REQUESTED |

1- FAMILYCARE, INC.'S RESPONSE TO OREGON HEALTH AUTHORITY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS (ECF 19)

v.

OREGON HEALTH AUTHORITY, an
agency of the State of Oregon, and
PATRICK ALLEN, both individually and in
his official capacity as director of the Oregon
Health Authority,

Defendants.

## INTRODUCTION

OHA's Motion to Compel (ECF 19, "Motion") has no merit.  OHA seeks data it already has and documents that are irrelevant, privileged, or both.  The bulk of the Motion focuses on documents related to FamilyCare's litigation expert, PricewaterhouseCoopers ("PWC").  But OHA has been repeatedly informed that PWC has been engaged only through counsel as an expert in connection with litigation.  The remainder of the Motion addresses materials that have already been produced or are plainly irrelevant. The Motion should be denied outright.

## BACKGROUND

The claims in this lawsuit relate to OHA's and Patrick Allen's conduct—OHA's setting of FamilyCare's Medicaid capitation rates, OHA's smear campaign against FamilyCare, and Mr. Allen's forcing FamilyCare to prematurely decide whether to execute a contract. *See generally* ECF 1-1 (Complaint).  Because OHA chose to file serial motions to dismiss—most of which were denied from the bench—rather than answer, OHA has yet to assert any counterclaims or affirmative defenses putting any additional facts or conduct at issue. Nevertheless, OHA has served 225 requests for production on FamilyCare and more than twenty

2-  FAMILYCARE, INC.'S RESPONSE TO OREGON
HEALTH AUTHORITY'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS (ECF 19)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

document subpoenas on third parties.  In response to these requests, FamilyCare has, to date, produced almost 70,000 documents, consisting of more than 550,000 pages, and third parties have produced more than 17,000 additional documents, totaling nearly 60,000 pages.  *See* Declaration of Matthew J. Mertens ¶ 5.

One of the targets of OHA's multiple discovery requests has been PWC, FamilyCare's retained expert in this litigation.  In addition to serving FamilyCare with document requests related to PWC, OHA served a third-party subpoena on PWC.  On January 23, 2018, counsel for PWC sent a letter to OHA objecting to the subpoena and informing OHA that PWC "was retained by counsel for FamilyCare . . . to provide services on a privileged basis."  *See* Mertens Dec. ¶ 7.  Counsel for PWC subsequently reiterated that message in an email to OHA, informing OHA again that PWC's only work for FamilyCare had been through counsel, who had retained PWC as a litigation expert on a privileged basis.  *See* ECF 20-8 at 1.  During conferral, it was explained again to OHA that PWC's involvement with FamilyCare was limited to two engagements through counsel as an expert in connection with litigation—FamilyCare's then-counsel Stoel Rives LLP engaged PWC as an expert for FamilyCare's prior lawsuit against OHA regarding the 2015 and 2016 rates, and Perkins Coie LLP has engaged PWC as an expert in connection with this litigation.  *See* Declaration of William Murray ¶¶ 6-8. Nevertheless, OHA continues to persist in seeking discovery about PWC, beyond the bounds of what it will ultimately receive through expert discovery.

## LEGAL STANDARD

As the moving party, OHA has the burden to show that "the information sought is within the scope of discoverable information under Rule 26."  *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 6 (D.D.C. 2016).  *See Bangkok Broad. & T.V. Co., LTD. v. IPTV Corp.*, No. CV 09-3803 SJO (SSX), 2010 WL 11523703, at *3 (C.D. Cal. Feb. 12,

3-    FAMILYCARE, INC.'S RESPONSE TO OREGON
      HEALTH AUTHORITY'S MOTION TO COMPEL
      PRODUCTION OF DOCUMENTS (ECF 19)

2010), *order enforced*, 2010 WL 11519581 (C.D. Cal. Mar. 24, 2010) (movant has burden to "demonstrate that the requested discovery is relevant to the parties' claims and defenses").

Rule 26 of Federal Rules of Civil Procedure permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevancy is broadly defined for the purposes of discovery, but it does have "ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (citations omitted).

The guideposts for relevance are the claims or defenses *actually* pled by the parties, not claims or defenses that *might* be pled. *See Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017) ("The role of discovery, however, is to find support for properly pleaded claims, not to find the claims themselves.") (quoting *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009)); Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendment (parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings").

A motion to compel is properly denied if the movant fails to make a showing "that the burdens of production would be minimal and that the requested documents would lead to relevant evidence[.]" *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (affirming district court's denial of the motion to compel). OHA has shown neither.

4-   FAMILYCARE, INC.'S RESPONSE TO OREGON
     HEALTH AUTHORITY'S MOTION TO COMPEL
     PRODUCTION OF DOCUMENTS (ECF 19)

**ARGUMENT**

As an initial matter, the documents that OHA seeks through its Motion are not relevant to any claims or defenses in this litigation. The claims in this case focus on the conduct of OHA and its director, Patrick Allen. There are no defenses because OHA has chosen to file serial motions to dismiss rather than answer. OHA fails in the first instance to satisfy its burden to show why any of the documents sought are relevant, and its Motion should be denied in its entirety on that basis alone.

**A.     PWC documents are irrelevant; they are also privileged and protected by the work-product doctrine, and those protections have not been waived.**

OHA's primary argument, about PWC documents, is based on unsupported speculation about PWC's work for FamilyCare. OHA has been repeatedly informed by counsel that the only services PWC has performed for FamilyCare since 2015 have been two expert engagements, through counsel, in connection with litigation.

Despite being so informed, OHA nonetheless asserts that PWC "performed routine actuarial services for FamilyCare unrelated to litigation," and that FamilyCare and PWC had a "longstanding engagement." Motion at 5. In so arguing, OHA is, in essence, impugning the veracity and credibility of counsel based on unsupported speculation about a few documents that OHA contends show a broader scope of work by PWC. None of those documents offers any support to OHA's claims.

OHA first points to an October 20, 2017 email in which FamilyCare listed vendors, including PWC, with whom FamilyCare had an existing relationship and who "may provide actuarial services." Motion at 2. As previously explained to OHA by PWC counsel, that email responded to a request from OHA to identify "Actuarial vendor relationships" for potential conflicts. *See* ECF 20-8 at 1. FamilyCare obliged by identifying PWC because, as of October

5-   FAMILYCARE, INC.'S RESPONSE TO OREGON
     HEALTH AUTHORITY'S MOTION TO COMPEL
     PRODUCTION OF DOCUMENTS (ECF 19)

20, 2017, this litigation was well under way, and PWC had been engaged by Perkins Coie LLP as an expert in connection with this case. *See* Murray Dec. ¶¶ 7, 9(a). Nothing in the email indicates that PWC was doing or had done anything other than that.

Second, OHA points to a line on a spreadsheet: "PwC estimated member months based on FCI Proforma Member Months." ECF 20-2. That spreadsheet, dated January 26, 2016, is a FamilyCare-created document created during the pendency of the litigation regarding the 2015 and 2016 rates—i.e., during the time period that PWC had been engaged by Stoel Rives LLP. *See* Murray Dec. ¶¶ 6, 9(b).

Third, OHA points to a reference to PWC's "independent analysis of proposed rates" in a spreadsheet attached to a November 10, 2016 email from FamilyCare's Communications Director. ECF 20-9. OHA contends, based on that single phrase, that PWC must have been engaged to analyze the 2017 rates. Motion at 5. But, as the documents cited by OHA demonstrate, PWC independently analyzed the revised rates that FamilyCare *proposed* during the settlement process, and this email refers to those proposed rates. *See* ECF 20-10 at 2; 20-11 at 2; Murray Dec. ¶ 9(c).

Finally, OHA references various documents from March 2016 referring to PWC's analysis of the proposed rates. As OHA knows, those documents related to that prior litigation— and the confidential settlement negotiations in connection with that litigation. Indeed, OHA acknowledges that fact in its briefing. *See* Motion at 6 ("When FamilyCare and OHA were negotiating a settlement of their prior litigation over the 2015 rates…").

None of those documents provides any basis on which to conclude that PWC did anything other than what counsel has repeatedly communicated to OHA. OHA's speculation about the work PWC has performed on behalf of FamilyCare is unfounded. OHA will be entitled to expert discovery related to PWC's retention in this litigation consistent with the

6-  FAMILYCARE, INC.'S RESPONSE TO OREGON
    HEALTH AUTHORITY'S MOTION TO COMPEL
    PRODUCTION OF DOCUMENTS (ECF 19)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Federal Rules of Civil Procedure, but it should not be allowed to obtain additional information through discovery on FamilyCare's expert.[1]

Moreover, documents related to PWC's prior retention, by Stoel Rives, are irrelevant. OHA's argument for relevance is that "the actuarial process underlying OHA's capitated Medicaid reimbursement rates is a core issue in this litigation." Motion at 2. But the "actuarial process" at issue was undertaken by OHA and its actuary, Optumas, not by PWC. PWC had no involvement in "the actuarial process underlying OHA's capitated Medicaid reimbursement rates," and OHA identifies no basis for its conclusory assertion that PWC's documents are relevant to that process.

OHA's contentions about waiver are similarly meritless. OHA cites no authority for its argument that by mentioning that PWC confirmed that the rates FamilyCare proposed in the course of its settlement negotiations with OHA in 2016 were consistent with OHA's methodology, FamilyCare somehow waived the attorney-client privilege, let alone work-product protection. OHA's argument that privilege was waived "through discovery in this case" by the production of a few documents that include brief references to PWC similarly lacks any citing authority, let alone a mention of the relevant rule, Fed. R. Civ. P. 502. And OHA's sweeping claim that by producing documents in discovery, "FamilyCare has waived any privilege with respect to FamilyCare's actuarial services," *See* Motion at 7, is directly at odds with the text and purpose of that rule. *See* Fed. R. Evid. 502 advisory committee notes ("an inadvertent disclosure of protected information can *never* result in a subject matter waiver") (emphasis added).

---

[1] OHA states that it is not requesting documents related to PWC's work as an expert for FamilyCare in this litigation. *See* Motion at 5 n. 1. But, after filing its Motion, OHA served a third-party subpoena on PWC expressly seeking all communications and documents related to this lawsuit. *See* Mertens Dec. ¶ 7.

7- FAMILYCARE, INC.'S RESPONSE TO OREGON
HEALTH AUTHORITY'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS (ECF 19)

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**B.    FamilyCare's Campaign Contributions are Irrelevant.**

OHA also asserts, without reasoned analysis or supporting authority, that FamilyCare's campaign contributions are relevant because FamilyCare alleges that OHA's smear campaign included communications with legislators.  *See* Motion at 8.  The relevancy of FamilyCare's campaign contributions is "not readily apparent," and OHA fails to meet its burden to explain why or how OHA's campaign contributions bear in any way on any claim or defense in this case.  *Bangkok Broad. & T.V. Co.,* 2010 WL 11523703 at *3 (burden is on movant if relevancy of requests "is not readily apparent").

OHA has already had significant discovery into FamilyCare's communications with public officials.  FamilyCare has produced more than 2,500 documents reflecting records of communications with public relations firms and lobbyists, OHA has received additional documents directly from those firms, and OHA has taken multiple depositions of public relations professionals who worked with FamilyCare.  *See* Mertens Dec. ¶¶ 2, 5.  Indeed, OHA already has information about FamilyCare's campaign contributions—OHA references and attaches as an exhibit documents showing such contributions.  *See* ECF 20-13.  OHA does not meet its burden of showing how additional documents related to campaign contributions sought by OHA are relevant.

**C.    FamilyCare's Database of Provider Claims is Irrelevant.**

OHA also seeks a database of claims for reimbursement from healthcare providers, arguing that FamilyCare's provider reimbursements are "a key input into the actuarial analyses that create capitation rates." Motion at 9.  But FamilyCare already submits detailed data about every such claim to OHA each year.  Murray Dec. ¶ 5.

OHA nevertheless argues that access to the database is "key to defending OHA's methodology." Motion at 9.  That is implausible.  OHA's methodology is based on the

8-    FAMILYCARE, INC.'S RESPONSE TO OREGON
HEALTH AUTHORITY'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS (ECF 19)

information that the CCOs routinely submit, such as the claims data FamilyCare has already provided.  By definition, OHA already has all of the inputs into its rate-setting methodology.  To the extent FamilyCare's database included any information not submitted to OHA, such as personal details about providers, that information would not have been considered in "OHA's methodology" and thus cannot be "key" to defending it.  Providing the database would be duplicative of information already produced, it would be highly burdensome, and it would not provide OHA with additional relevant information.  *See* Murray Dec. ¶ 5.

**D.    FamilyCare has already produced the documents disclosed to the media, and documents related to the drafts are privileged.**

OHA's final argument paints an entirely inaccurate picture.  OHA suggests that FamilyCare provided privileged communications to the media and then tried to withhold those communications during discovery.  Motion at 9-10.  In fact, FamilyCare produced to OHA in discovery the exact documents it provided to the media.  And because those documents were not privileged, OHA's argument about waiver is a nonstarter.

OHA contends broadly that "FamilyCare has claimed privilege over documents that it voluntarily disclosed to a reporter."  Motion at 9.  OHA is wrong.  The documents at issue were actually produced by FamilyCare to OHA, as evidenced by the "FCI…" batestamp on those documents; indeed, OHA attached those documents to a declaration in support of its Motion to Compel.  *See* ECF 20-14.

OHA conflates matters by arguing that the voluntary disclosure of such documents to a reporter waived privilege, and OHA asserts, again without supporting analysis, that FamilyCare waived the privilege for "everything relating to the same subject matter" and "to all documents."  Motion at 9-10.  But OHA's argument for waiver fails at the first step.  While voluntary disclosure "of privileged communications" may, in some circumstance, work a waiver, *see* Fed.

9-  FAMILYCARE, INC.'S RESPONSE TO OREGON
    HEALTH AUTHORITY'S MOTION TO COMPEL
    PRODUCTION OF DOCUMENTS (ECF 19)

R. Evid. 502, OHA does not point to any such privileged communications that were disclosed. Instead, OHA points to the press release and talking points that FamilyCare shared with the media—and produced to OHA. OHA appears to be arguing that the provision of a press release to a reporter waives privilege for all documents somehow related to that press release, including draft versions of that document, regardless of what other information they might contain, with whom they were shared, and the purpose for which they were being shared and discussed. But again, OHA provides no support for that contention. Even though they related to a draft version of a press release that was later made public, documents referenced on FamilyCare's privilege log, prepared during the heat of litigation with the involvement of legal counsel, were properly withheld as privileged communications and/or work product. For, just as public filing of a pleading or brief does not waive privilege over all internal discussions and work product related to the end result, the ultimate release of the press release at issue here does not mean that OHA is now entitled to receive discovery over all related privileged documents.

## CONCLUSION

For the foregoing reasons, FamilyCare respectfully requests that OHA's Motion be denied in its entirety.

10-  FAMILYCARE, INC.'S RESPONSE TO OREGON
     HEALTH AUTHORITY'S MOTION TO COMPEL
     PRODUCTION OF DOCUMENTS (ECF 19)

DATED:  March 26, 2018                    **PERKINS COIE LLP**


By: *s/ Stephen F. English*
  Stephen F. English, OSB No. 730843
  SEnglish@perkinscoie.com
  Thomas R. Johnson, OSB No. 010645
  TRJohnson@perkinscoie.com
  Douglas R. Pahl, OSB No. 950476
  DPahl@perkinscoie.com
  Matthew P. Gordon, *pro hac vice*
  MGordon@perkinscoie.com
  Alletta Brenner, OSB No. 142844
  ABrenner@perkinscoie.com
  Perkins Coie LLP
  1120 N.W. Couch Street, 10th Floor
  Portland, OR  97209-4128
  Telephone:  503.727.2000
  Facsimile:  503.727.2222

*Attorneys for Defendant FamilyCare, Inc.*

11- FAMILYCARE, INC.'S RESPONSE TO OREGON
HEALTH AUTHORITY'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS (ECF 19)