**Ellen F. Rosenblum**
Attorney General
**Renee Stineman, OSB #994610**
Attorney-in Charge
Renee.Stineman@doj.state.or.uw
**Carla A. Scott, OSB #054725**
Senior Assistant Attorney General
Carla.A.Scott@doj.state.or.us
DEPARTMENT OF JUSTICE
100 SW Market Street
Portland, OR  97201
Telephone: (971) 673-1880
Fax:  (971) 673-5000

> Attorneys for Patrick Allen, in his official capacity
> as Director of Oregon Health Authority, an agency
> of the State of Oregon

**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Matthew A. Levin, OSB #003054**
MattLevin@MarkowitzHerbold.com
**Renée E. Rothauge, OSB #903712**
RenéeRothauge@Markowitzherbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Tele: (503) 295-3085
Fax:  (503) 323-9105

> Special Assistant Attorneys General for Oregon Health
> Authority, an agency of the State of Oregon, and Patrick
> Allen, both individually and in his official capacity as
> director of the Oregon Health Authority

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>Plaintiff, | Case No. 3:18-cv-00212-MO (Leading)<br>Case No. 6:18-cv-00296-MO(Trailing)<br><br>**OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DISMISS** |

**OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DISMISS**

v.

FAMILYCARE, INC., an Oregon non-profit
corporation,

Defendant.

FAMILYCARE, INC., an Oregon non-profit
corporation,

Plaintiff,

v.

OREGON HEALTH AUTHORITY, an agency
of the State of Oregon, and PATRICK
ALLEN, both individually and in his official
capacity as director of the Oregon Health
Authority,

Defendants.

**OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S
MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 1

MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS ................ 3

I.      The Medicaid laws demonstrate that FamilyCare's Oregon APA claim, if
        allowed to go forward, would interfere with Congress's "sphere" of
        delegated power. ................................................................................................... 4

II.     The Court's reasoning in *Armstrong* further demonstrates that
        FamilyCare's claim is preempted. ........................................................................ 5

        A.      In *Armstrong*, the United States Supreme Court affirmed that the
                exclusive remedy for a state's violation of Medicaid laws, like the
                ones at issue here, is the withholding of federal funds. ....................... 5

        B.      *Armstrong's* reasoning demonstrates that FamilyCare's invocation
                of the Oregon APA is preempted by federal law. ................................. 7

        C.      FamilyCare's attempts to distinguish *Armstrong* fail. ....................... 9

III.    The federal cases that FamilyCare relies upon are consistent with OHA's
        claim that Congress has preempted FamilyCare's Oregon APA claim. ..................... 11

CONCLUSION ............................................................................................................... 12

**PAGE i - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE,
INC.'S MOTION TO DISMISS**

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Armstrong v. Exceptional Child Center, Inc.*
  135 S. Ct. 1378 (2015) ........................................................................... *passim*

*BT Bourbonnais Care, LLC v. Norwood*
  866 F.3d 815 (7th Cir. 2017) ................................................................... 12

*Crosby v. Nat'l Foreign Trade Council*
  530 U.S. 363 (2000) ................................................................................. 3

*Freightliner Corp. v. Myrick*
  514 U.S. 280 (1995) ................................................................................. 3

*Hillman v. Maretta*
  569 U.S. 483 (2013) ................................................................................. 11

*Planned Parenthood of Kansas v. Andersen*
  882 F.3d 1205 (10th Cir. 2018) ........................................................... 11, 12

*Savage v. Jones*
  225 U.S. 501 (1912) ................................................................................. 3


**Statutes and Other Authorities**

42 C.F.R. § 438.4 ..................................................................................... 4, 7, 8

42 C.F.R. § 438.5 ..................................................................................... 7, 8

42 U.S.C. § 1396a .................................................................................... 5, 6, 7, 9

42 U.S.C. § 1396b .................................................................................... 2, 4, 7, 8, 9

42 U.S.C. § 1396c .................................................................................... 5, 9

## INTRODUCTION

Oregon Health Authority's ("OHA") declaratory relief action seeks a declaration that federal law preempts FamilyCare, Inc.'s ("FamilyCare") attempts to use state law to privately enforce Medicaid laws to obtain higher reimbursement rates.  Congress has mandated that in the rate-setting and approval context, the exclusive authority—both as to the actuarial soundness determination and any consequences stemming for a state's failure to provide actuarially sound rates—is the federal government.

Accordingly, allowing FamilyCare's attempt to use state law to enforce the federal Medicaid laws stands as a direct obstacle to that Congressional mandate. Further, allowing FamilyCare to pursue a lawsuit against OHA to obtain different (higher) rates would destabilize the Medicaid program not just in Oregon but across the country, because it would lead to disorderly administration of a highly complex federal program for which Congress purposefully vested exclusive authority to a federal agency.  To ensure consistency and finality in the rate-setting process, federal Medicaid law provides that OHA shall set capitation rates, subject *only* to administrative review and final approval by the Centers for Medicare and Medicaid Services ("CMS") and whatever processes might be available under federal administrative law thereafter.

OHA's complaint thus states a claim for preemption and remedy in the form of a declaratory judgment: FamilyCare may not circumvent the exclusive rate-setting process established by Congress by invoking state law to challenge whether its rates are high enough under federal Medicaid law.  No basis exists to grant FamilyCare's motion to dismiss.

## FACTUAL BACKGROUND

Medicaid is a national medical assistance program that provides medical care for low-income and disabled individuals. (Comp., ¶ 1.[1])  Medicaid is administered at the federal

---

[1] OHA has filed a complaint for declaratory relief related to this matter.  Citations to a Complaint in this brief refer to the complaint filed in that matter.  Dkt. No. 3:18-cv-00212, Complaint Doc. 1.

**PAGE 1 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DISMISS**

level by the Department of Health and Human Services' Centers for Medicare & Medicaid Services (CMS). (*Id.*) In Oregon, OHA administers the Medicaid program. (*Id.*)

In its role as single state Medicaid agency, OHA contracts with Coordinated Care Organizations ("CCOs"), which in turn contract with health care providers to provide care under the Oregon Health Plan ("OHP"). (*Id.* at ¶ 2.) FamilyCare is one of sixteen CCOs operating in Oregon. (*Id.*) In the OHP, CCOs are risk-bearing entities. (*Id.* at ¶ 3.) OHA pays each CCO pursuant to their respective CCO Contract a fixed, per member per month ("PMPM") capitation rate for each person served by that CCO. (*Id.*) As OHP administrator, OHA determines the PMPM contract rates for each CCO. (*Id.*)

Federal law and regulations governing Medicaid require OHA to submit the CCO contracts and capitation rates to CMS for approval each year. Without CMS approval, OHA will not obtain federal financial participation ("FFP"), which is a significant part of OHA's funding. (*Id.* at ¶ 5.) Thus, because—*and only because*—CMS funds a portion of the capitation payments that OHA makes to CCOs under the OHP, the contracts between OHA and CCOs must comply with federal law and regulations. (*Id.* at ¶ 16.) Among other requirements, federal law provides that no payment shall be made to a state unless such payments are provided in accordance with a contract that CMS has approved. 42 U.S.C. § 1396b(m)(2)(A)(iii). (Compl. at ¶ 16.) Thus, to obtain the fiscally critical FFP, each year OHA must submit the CCO contracts and capitation rates together with the actuarial certification of the rates to CMS for approval. (*Id.*) CMS, including its Office of the Actuary, reviews the information contained in the certification to ensure that the rate setting complies with federal law and with principles of actuarial soundness. (*Id.*) If CMS is satisfied that the rates are sound and compliant with federal standards, it will approve the contract amendment containing the new capitation rates. (*Id.*) CMS will not approve a CCO contract unless CMS determines that the rates contained therein are "actuarially sound." (*Id.*)

FamilyCare has filed several lawsuits against OHA in the last two years, challenging the rates in its CCO contract. FamilyCare has alleged that the rates contained therein violate

**PAGE 2 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DISMISS**

Medicaid laws.  (*Id*. at ¶ 20.)   FamilyCare's lawsuits have disputed OHA's rate-setting process for every year since 2015, alleging that the rates violate Medicaid laws.  (*Id.* at ¶ 20.) To limit the continuing disruption to its regulatory responsibilities under those same Medicaid laws, OHA filed this complaint and requested a declaration that federal law preempts FamilyCare from pursuing a private right of action under the Oregon Administrative Procedures Act ("Oregon APA") or any other provision of law.  (*Id*. at ¶ 22.) As explained in greater detail below, the United States Supreme Court has made clear that the exclusive remedy for a state's failure to comply with Medicaid rate requirements like those at issue here is the withholding of federal funds.  (*Id*. at ¶¶ 34, 35.)  FamilyCare's motion to dismiss is therefore without merit.

### MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS

Under the Supremacy Clause of the United States Constitution, federal law preempts state laws in actual conflict with federal law.  *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). An actual conflict exists when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Id*.  What is a sufficient obstacle is "informed by examining the federal statute as a whole and identifying its purpose and intended effects[.]"  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).  "If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power." *Savage v. Jones*, 225 U.S. 501, 533 (1912).

Here, FamilyCare's claims are based on the presumption that OHA has an independent legal obligation *to FamilyCare*, enforceable through Oregon's APA, to provide FamilyCare with actuarially sound rates.  If that presumption were correct (which it is not), it would interfere with the federal government's right under Medicaid law to determine whether OHA had met the conditions of participation in federal Medicaid funding, and would thereby stand as an obstacle to the accomplishment and execution of Medicaid.  Accordingly, this Court should deny FamilyCare's motion to dismiss.

**PAGE 3 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DISMISS**

**I.    The Medicaid laws demonstrate that FamilyCare's Oregon APA claim, if allowed to go forward, would interfere with Congress's "sphere" of delegated power.**

FamilyCare's lawsuit implicates several provisions of the Medicaid statutes and regulations, all of which demonstrate that Congress intended that the federal government—and only the federal government—be empowered to adjudicate issues of actuarial soundness.

Like other Spending Clause legislation, Medicaid "offers the States a bargain: Congress provides federal funds in exchange for the States' agreement to spend them in accordance with congressionally imposed conditions." *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1382 (2015).  Particularly relevant here is the congressionally imposed conditions that a contract between the state and a CCO must be "made on an actuarially sound basis and under which the Secretary must provide prior approval[.]"  42 U.S.C. § 1396b(m)(2)(A)(iii); *see also* 42 C.F.R. § 438.4 (requiring CMS to determine whether the rates are being actuarially sound).  If a state fails to meet that standard of actuarial soundness, "no payment shall be made" to the state.  42 U.S.C. § 1396b(m)(2)(A)(iii).

Those provisions, and the broader structure of the Medicaid program, demonstrate that Congress intended for the federal government to be both the exclusive arbiter of whether the rates provided to CCOs are actuarially sound, as well as the exclusive arbiter of the penalty (withholding of federal funds) for a state's failure to provide such rates.  For a court to allow private enforcement through the Oregon APA or otherwise would not only impose an obstacle to CMS's execution of its Congressional mandate, it would entirely undermine Congress's express determination of how best to accomplish the purpose of § 1396b(m)(2)(A)(iii)—namely, by providing CMS with the authority to review and approve the rates or withhold federal funds.  Therefore, federal law preempts FamilyCare's invocation of the Oregon APA to privately enforce § 1396b(m)(2)(A)(iii).  FamilyCare is not entitled to dismissal of OHA's declaratory relief claim.

**PAGE 4 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DISMISS**

**II.    The Court's reasoning in *Armstrong* further demonstrates that FamilyCare's claim is preempted.**

**A.    In *Armstrong*, the United States Supreme Court affirmed that the exclusive remedy for a state's violation of Medicaid laws, like the ones at issue here, is the withholding of federal funds.**

The United States Supreme Court has affirmed what these Medicaid statutes and regulations make evident: the "sole remedy" for a state's failure to comply with Medicaid requirements regarding rate-setting like those at issue in this case is "the withholding of Medicaid funds by the Secretary of Health and Human Services."[2] *Armstrong*, 135 S. Ct. at 1385.

In *Armstrong*, a health care provider sued the State of Idaho, claiming that its reimbursement rates were lower than what Medicaid permitted in violation of 42 U.S.C. § 1396a(a)(30)(A).  That provision, referred to as § 30(A), requires a state's Medicaid plan to provide for certain "methods and procedures relating to the utilization of, and the payment for, care and services available under the plan * * * as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent" with certain standards.  A state's failure to adhere to that provision will result in no "further payments" being made to the State.  42 U.S.C. § 1396c(2).

The Court rejected the providers' claim that the Supremacy Clause, the Medicaid Act itself, or some other source of law allowed the provider to bring a private right of action against a state to increase its reimbursement rates.  In reaching that conclusion, the Court observed that the Medicaid laws include a provision for withholding of federal funds when a State is not compliant with federal requirements.  *Armstrong*, 135 S. Ct. at 1384-85.  That "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  *Id.* at 1385 (internal citation omitted).

Critical to that conclusion was the "judicially unadministrable nature" of § 30(A).  *Id.* The Court noted that Congress's conferral of responsibility to the Secretary of Health and

---

[2] OHA has filed a motion to dismiss FamilyCare's third amended complaint in the related case, Dkt. No. 6:18-cv-00296.  A significant degree of overlap exists as between the arguments contained herein and that motion to dismiss.

**PAGE 5 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DISMISS**

Human Services to determine compliance with that Medicaid provision would achieve the "expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking[.]" *Id*. at 1385. Making a federal agency and associated federal administrative processes the exclusive decision-making forum for Medicaid rate-setting avoids the "comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action." *Id*.; *see also id*. at 1389 (internal citation omitted) (cautioning against finding a basis in the law for courts to "engage in such direct rate-setting" because it could set a precedent for allowing "other similar actions, potentially resulting in rates set by federal judges (of whom there are several hundred) outside the ordinary channel of federal judicial review[,]" resulting in "increased litigation, inconsistent results, and disorderly administration of highly complex federal programs that demand public consultation, administrative guidance and coherence for their success[.]") (Breyer, J. concurring). In short, the "sheer complexity associated with enforcing [§ 30(A)], coupled with the express provision of an administrative remedy [the withholding of funds], * * * shows that the Medicaid Act precludes private enforcement" by providers. *Id*. at 1385.

Further bolstering the Court's conclusion that the providers had no private right of action was the fact that § 30(A) itself does not contemplate a private right of action. The provision instead is "phrased as a directive to the federal agency charge with approving state Medicaid plans, not as a conferral of the right to use upon the beneficiaries of the State's decision to participate in Medicaid." *Armstrong,* 135 S. Ct. at 1387. The Court emphasized that the intended beneficiaries of the Medicaid program are "the infirm whom the providers were to serve," not the providers themselves. *Id*. at 1387.

Having so concluded, however, the Court noted that the lack of a private right of action did not leave the provider without remedy. To the contrary, the provider's relief "must be sought initially through the Secretary [of Health and Human Services,]" which possesses the ability under federal law to cut off federal funding for lack of compliance with the governing laws. *Id*. at 1387.

**PAGE 6 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE,**
**INC.'S MOTION TO DISMISS**

B.    *Armstrong's* reasoning demonstrates that FamilyCare's invocation of the Oregon APA is preempted by federal law.

*Armstrong* provides a complete answer to FamilyCare's motion to dismiss.  Just as the providers in Idaho had no right to privately enforce § 30(A), FamilyCare's attempt to invoke the Oregon APA to privately enforce § 1396b(m)(2)(A)(iii) fails.  As in *Armstrong*, Congress has provided a "sole remedy" for a state's failure to comply with the Medicaid rate-setting requirements for contract capitation payments to CCOs: the withholding of Medicaid funds.  § 1396b(m)(2)(A)(iii) ("no payment shall be made" if the rates are not actuarially sound).  The provision of that exclusive remedy demonstrates that Congress intended to preclude other, private remedies.  *Armstrong*, 135 S.Ct. at 1385.  Framed slightly differently, FamilyCare's attempt to invoke the Oregon APA stands as an obstacle to Congressional imposition of a singular process and remedy if a state does not pay a CCO actuarially sound rates.

Moreover, determining whether rates are "actuarially sound" is precisely the kind of "judicially unadministrable" determination that underscores why Congress imbued the Secretary—and the Secretary alone—with the ultimate authority to decide whether the rates are, in fact, actuarially sound.[3]  *Armstrong*, 135 S. Ct. at 1389 (although courts may be able to resolve rate-related requests, no easy way exists "to separate in advance the potentially simple sheep from the more harmful rate-making goats.") (Breyer, J., concurring).  As the relevant regulations reflect, the actuarial soundness determination is complex and multi-faceted.  *E.g.*, 42 C.F.R. §§ 438.4, 438.5.  To achieve actuarially sound rates, CMS requires a state to develop base utilization and price data, apply trend factors that include cost and utilization to base data, develop the non-benefit component of the rate to account for reasonable expenses, make appropriate and reasonable adjustments to account for changes to

---

[3]  FamilyCare insists in its motion to dismiss that the determination of actuarial soundness is straightforward.  However, in its motion to compel, FamilyCare more accurately describes the case as a "complex one" that involves "the highly technical question of whether the Medicaid rates that OHA set for FamilyCare were actuarially sound[.]"  Dkt. 3:18-cv-00212-MO, FamilyCare, Inc.'s Omnibus Discovery Motions, Doc 30,  p. 2.

**PAGE 7 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DISMISS**

base data, take into account medical loss ratio, and select a risk adjustment methodology. 42 C.F.R. § 438.5.

The governing regulations also require that actuarially sound capitation rates meet nine different standards, each of which is reviewed, assessed, and approved by CMS. 42 C.F.R. § 438.4. Rates must be appropriate for the populations served, be certified by an actuary, be specific to payments of each rate cell under the contract but without cross-subsidizing for any other rate cell, and meet certain development criteria. Those requirements underscore the complexity of the ratemaking and approval process. The regulation also underscores, quite explicitly, the nonjudicial nature of the determination: the laundry list of requirements is to be assessed and approved not by courts or providers, but by CMS. *Id.* (rates must be "*reviewed and approved by CMS*" under the standards in the regulation). The regulatory framework demonstrates precisely why the "history of ratemaking demonstrates that administrative agencies are far better suited to this task than judges." *Armstrong*, 135 S. Ct. at 1388 (Breyer, J., concurring). The framework further demonstrates that allowing a provider to bring a claim under the Oregon APA would be an obstacle to Congress's intent to place exclusive authority with the Secretary and CMS to review and approve rates.

Moreover, to allow FamilyCare to use state law to enforce § 1396b(m)(2)(A)(iii) would bring to fruition the very problems foreshadowed in *Armstrong*. FamilyCare is just one of 16 CCOs in Oregon. If FamilyCare can bring suit to challenge whether its rates are actuarially sound, the other 15 CCOs could as well. OHA would then be forced to defend against multiple suits in front of multiple courts, conceivably (indeed, likely) leading to inconsistent results. Any court ruling concluding that the rates are not actuarially sound would also jeopardize the state's Medicaid funding and impair the state's ability to provide health care to its low-income and disabled

**PAGE 8 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DISMISS**

citizens.  The problems would cascade if court decisions, in either state or federal court, conflicted with CMS's determination of actuarial soundness.  Similar lawsuits brought in other states would cause state and federal courts across different jurisdictions to construe the law on different evidentiary records, potentially leading to differing legal standards.  That, in turn, would lead to "disorderly administration of highly complex federal programs[.]" *Armstrong*, 135 S. Ct. at 1389 (Breyer, J. concurring.)

Lastly, just as the Medicaid statute at issue in *Armstrong* was phrased as a directive to the federal agency—and not a conferral of rights upon the beneficiaries—the same is true of the provision at issue here.  As described above, § 30(A) is a directive from the federal government to the states opting to participate in the Medicaid program.  The only penalty for failure to comply with that directive is the withholding of federal funds.  42 U.S.C. § 1396c. Likewise, § 1396b(m)(2)(A)(iii) is a directive to the federal government: it "shall" not make any payments to the states if the rates that the state presents to CMS are not actuarially sound. The fact that the statute is framed as a directive to the federal agency confirms that private lawsuits to enforce that law would be preempted, and further confirms that FamilyCare is not entitled to dismissal of OHA's complaint.

C.    **FamilyCare's attempts to distinguish *Armstrong* fail.**

FamilyCare's assertion that *Armstrong* is "inapposite" misapprehends both the contours of that decision and its direct applicability to this case.  FamilyCare first attempts to distinguish *Armstrong* on the basis that the Court did not frame its analysis in terms of preemption.  (Mtn. to Dismiss at 13.)  While true, that point does not aid FamilyCare.  The broader point of *Armstrong* is that when the federal government has provided an exclusive remedy, and where the statute at issue suggests that no right of action is conferred on or was intended to benefit a private party, that private party has no cause of action against the state agency.  *Armstrong, 135 S. Ct.* at 1385 (the "express provision of one method of enforcing a substantive rule suggests that *Congress intended to preclude others*.") (emphasis added) (citation omitted.)  Framed in terms of preemption, FamilyCare's attempt to use state law to

**PAGE 9 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DISMISS**

enforce the federal Medicaid laws stands as an obstacle to CMS's execution of a Congressional mandate.

FamilyCare focuses on the fact that *Armstrong* did not involve a challenge under the Oregon APA and that, "[t]o the contrary, the Court noted the availability of APA review as a remedy available to petitioners." (Mtn. to Dismiss at 14.) To be sure, the providers in *Armstrong* did not bring the case under a state or federal APA. Beyond that procedural fact, however, FamilyCare's repeated emphasis of that distinction has no import. That is because the salient point from *Armstrong* is unaffected by the nature of the challenge's vehicle. Whether a private action is brought under the APA, the Medicaid Act, or some other provision of state or federal law, the outcome is the same: the "sole remedy" for a state's failure to comply with Medicaid's ratemaking and approval requirements for rate setting is the withholding of Medicaid funds by the Secretary of Health and Human Services. *Armstrong,* 135 S. Ct. at 1385.

FamilyCare's reliance on *Armstrong's* discussion of the federal APA is similarly misplaced. The Court did not, as FamilyCare seems to suggest, hold that the federal APA was a vehicle by which providers could directly contest the rates against a state agency. The majority observed that the providers' remedy had to be sought with the Secretary of Health and Human Services. *Id.* at 1387. The concurrence asked why a provider could not ask the federal agency to interpret its rules to the provider's satisfaction and, if a provider is unsatisfied with the interpretation, whether a provider could then sue the federal agency. *Id.* at 1389-90. The concurrence recognized that a provider might have difficulty prevailing on a federal APA claim but that would be because "Congress decided to vest broad discretion in the agency" to enforce and interpret the Medicaid laws. *Id.*

Rather than support FamilyCare's argument, the majority and concurrence's discussion of the federal APA underscores why FamilyCare's motion to dismiss fails. FamilyCare has no remedy against the state agency because Congress has preempted it. At most, FamilyCare could seek redress from the federal agency—CMS—if it is dissatisfied

**PAGE 10 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DISMISS**

with the manner in which CMS has construed or enforced its own rules.  But that potential

federal, administrative remedy in no way translates to a remedy by a CCO against a state

agency.  To the contrary, allowing a CCO to sue a state over the actuarial soundness of rates

would serve only to "frustrate the deliberate purpose of Congress," and thus is preempted.

*Hillman v. Maretta*, 569 U.S. 483, 494 (2013), citing *Wissner v. Wissner*, 338 U.S. 655, 659

(1950).  This Court should therefore deny FamilyCare's motion to dismiss.[4]

### III.    The federal cases that FamilyCare relies upon are consistent with OHA's claim that Congress has preempted FamilyCare's Oregon APA claim.

The post-*Armstrong* federal court cases that FamilyCare relies on do nothing to alter

the inescapable conclusion that FamilyCare is not entitled to dismissal of OHA's claim.  As

an initial matter, none of the cases involve an Oregon APA claim or a preemption analysis.

Moreover, each carefully distinguishes *Armstrong*.  For instance, in *Planned Parenthood of*

*Kansas v. Andersen*, 882 F.3d 1205, 1225 (10th Cir. 2018), the Tenth Circuit concluded that

the Medicaid Act specifically grants Medicaid patients the right to choose their provider for

family-planning services, and thereby confers a private right of action on Medicaid patients.

In reaching that conclusion, the court explicitly distinguished *Armstrong*.  It did so on

the ground that the Medicaid provision at issue in *Armstrong* directs states to adopt rate-

setting plans in accordance with particular standards, whereas the free-choice-of-provider

provision speaks specifically of an individuals' *right* to obtain assistance from any qualified

provider.  *Id*. at 1226.  The choice-of-provider statute thus conferred a right on Medicaid-

eligible persons, whereas in *Armstrong*, the statute at issue was instead "a directive to the

federal agency."  *Id*. at 1228; *see also Armstrong*, 135 S. Ct. at 1387 (stating same).  The

court further distinguished *Armstrong* on the basis that the federal agency withholding funds

provided a remedy to a state's failure to adhere to Medicaid requirements, whereas CMS

---

[4] FamilyCare goes on at length about the "duet" between the state and federal government.  As explained in OHA's motion to dismiss FamilyCare's complaint, FamilyCare fundamentally misconstrues the nature of the state statutes.  Rather than restate those arguments here, OHA incorporates those arguments by reference.  *See* ECF No. 21 (Case No. 6:18-cv-00296) and ECF No. 24 (Case No. 3:18-cv-00212).

**PAGE 11 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE, INC.'S MOTION TO DISMISS**

withholding Medicaid funds would not redress individual patient's claims at issue. *Planned Parenthood*, 882 F.3d at 1229.

Similarly, in *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 820-21 (7th Cir. 2017), the Seventh Circuit concluded that the Medicaid Act provides the plaintiffs, operators of nursing homes, a procedural right to notice and comment. Once again, the court carefully distinguished *Armstrong* on the basis of the provision at issue. The notice and comment provision conferred a right to notice and comment, and nothing more. In *Armstrong*, however, the Medicaid Act conferred no such benefit. *Id*. at 823-24.

The manners in which federal courts have distinguished *Armstrong* are entirely consistent with *Armstrong* and its applicability to the case at issue. Framed slightly differently, FamilyCare's cited cases do nothing to undermine the applicability of *Armstrong's* logic, and indeed reinforce it.

## CONCLUSION

For the foregoing reasons, this Court should deny FamilyCare's motion to dismiss OHA's declaratory relief claim.

DATED this 29th day of March, 2018.

> ELLEN ROSENBLUM
> ATTORNEY GENERAL
> FOR THE STATE OF OREGON
>
>
> By:  */s/ Harry B. Wilson*
> David B. Markowitz, OSB No. 742046
> DavidMarkowitz@MarkowitzHerbold.com
> Matthew A. Levin, OSB No. 003054
> MattLevin@MarkowitzHerbold.com
> Renée E. Rothauge, OSB No. 903712
> RenéeRothauge@Markowitzherbold.com
> Harry B. Wilson, OSB No. 077214
> HarryWilson@MarkowitzHerbold.com
> Laura Salerno Owens, OSB No. 076230
> LauraSalerno@MarkowitzHerbold.com
> *Special Assistant Attorneys General for*
> *Oregon Health Authority, an agency of*
> *the State of Oregon, and Patrick Allen,*
> *both individually and in his official*
> *capacity as director of the Oregon*

**PAGE 12 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE,**
      **INC.'S MOTION TO DISMISS**

*Health Authority*

Renee Stineman, OSB #994610
Attorney-in Charge
Renee.Stineman@doj.state.or.uw
Carla A. Scott, OSB #054725
Senior Assistant Attorney General
Carla.A.Scott@doj.state.or.us

*Attorneys for Patrick Allen, in his
official capacity as Director of Oregon
Health Authority, an agency of the State
of Oregon*

**PAGE 13 - OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE,
INC.'S MOTION TO DISMISS**