Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Matthew P. Gordon, *pro hac vice*
MGordon@perkinscoie.com
Brian P. Samuelson, OSB No. 165476
BSamuelson@perkinscoie.com
Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official Capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>    Plaintiff,<br><br>    v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>    Defendant. | No. 3:18−cv−00212−MO (LEAD)<br>No. 6:18−cv−00296−MO<br><br>PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS<br><br>ORAL ARGUMENT REQUESTED |
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority,<br><br>    Defendants. | |

PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD.......................................................................................................... 8

ARGUMENT ...................................................................................................................... 9

    A.    The motions to dismiss the previous complaint in state court are moot. ............... 9

    B.    FamilyCare is entitled to challenge the actuarial soundness of capitation rates set by OHA through its state-law causes of action..................................... 11

        1.    FamilyCare's APA and contract claims do not depend on the existence of an independently enforceable federal right......................... 13

        2.    *Armstrong* is of no import......................................................................... 16

        3.    FamilyCare's APA claims are not preempted by federal law.................. 18

    C.    Sovereign immunity does not bar FamilyCare's Section 1983 and 1985 claims. .................................................................................................................. 20

        1.    As Defendants acknowledge, FamilyCare's claim for equitable relief is not barred on sovereign immunity grounds. .............................. 21

        2.    Qualified immunity does not bar FamilyCare's claim for damages against Allen in his individual capacity. ................................................. 22

CONCLUSION.................................................................................................................. 26

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Anatomic Research, Inc. v. Adidas Am., Inc.*,
No. Civ. 02-0123-AS, 2002 WL 31654990 (D. Or. Nov. 19, 2002) ......................................10

*Anderson v. Creighton*,
483 U.S. 635 (1987)......................................................................................................23

*Armstrong v. Exceptional Child Center, Inc.*,
135 S. Ct. 1378 (2015)................................................................................ passim

*Atay v. County of Maui*,
842 F.3d 688 (9th Cir. 2016) ........................................................................................19

*Barnes v. District of Columbia*,
42 F. Supp.3d 111 (D.D.C. 2014)...................................................................................9

*Board of Regents v. Roth*,
408 U.S. 564 (1972).................................................................................................24, 26

*Chamber of Commerce of U.S. v. Whiting*,
563 U.S. 582 (2011).....................................................................................................19

*Duncan v. Gegan*,
101 U.S. 810 (1880)......................................................................................................13

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) ........................................................................................8

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers
Local No. 70 of Alameda Country*,
415 U.S. 423 (1974)................................................................................................10, 13

*Hafer v. Melo*,
502 U.S. 21 (1991)........................................................................................................21

*Hope v. Pelzer*,
536 U.S. 730 (2002)......................................................................................................23

*In re Marriage of McDuffy*,
184 Or. App. 359, 56 P.3d 449 (2002)...........................................................................24

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Kellas v. Dep't of Corr.*,
   145 P.3d 139 (Or. 2006) ...................................................................................15

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*,
   535 U.S. 613 (2002)..........................................................................................21

*Malley v. Briggs*,
   475 U.S. 335 (1986)..........................................................................................23

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ...........................................................................8

*No Cost Conference, Inc. v. Windstream Comm'ns, Inc.*,
   940 F. Supp. 2d 1285 (S.D. Cal. 2013)..............................................................9

*Petrus v. NY Life Ins. Co.*,
   No. 14–cv–2268, 2015 WL 3796221 (S.D. Cal. June 18, 2015) ......................9

*Phillips v. Washington Legal Found.*,
   524 U.S. 156 (1998).........................................................................................24

*Planned Parenthood of Gulf Coast, Inc. v. Gee*,
   862 F.3d 445 (5th Cir. 2017) ...........................................................................18

*Rhodes v. Robinson*,
   621 F.3d 1002 (9th Cir. 2010) ...........................................................................9

*Rocky Mountain Health Maint. Org. v. Colo. Dep't of Health Care Policy & Fin.*,
   54 P.3d 913 (Colo. 2001) ...........................................................................16, 18

*Saucier v. Katz*,
   533 U.S. 194 (2001)...................................................................................... 22-23

*Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho*,
   42 F.3d 1278 (9th Cir. 1994) ...........................................................................21

*Soranno's Gasco, Inc. v. Morgan*,
   874 F.2d 1310 (9th Cir. 1989) .....................................................................25, 26

*Speed's Auto Servs. Grp., Inc. v. City of Portland, Or.*,
   No. 3:12-CV-738-AC, 2014 WL 2809825 (D. Or. June 20, 2014) ......................25

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*United States v. Shofner Iron & Steel Works*,
71 F. Supp. 161 (D. Or. 1947) ........................................................................................9

*Wedges/Ledges of California, Inc. v. City of Phoenix*,
24 F.3d 56 (9th Cir. 1994) ............................................................................................24

*Welch v. Bancorp Mgmt. Advisors, Inc.*,
675 P.2d 172 (Or. 1983) ...............................................................................................10

*West Virginia Univ. Hosps., Inc. v. Casey*,
885 F.2d 11 (3d Cir. 1989).............................................................................................19

*Westwood v. City of Hermiston*,
787 F. Supp. 2d 1174 (D. Or. 2011) .........................................................................24, 25

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) ..........................................................................................8

*Wilder v. Virginia Hosp. Ass'n*,
496 U.S. 498 (1990)......................................................................................................14

*Will v. Michigan Dep't of State Police*,
491 U.S. 58 (1989)........................................................................................................21

*WMX Techs., Inc. v. Miller*,
197 F.3d 367 (9th Cir. 1999) .....................................................................................25, 26

*Yamamoto v. Omiya*,
564 F.2d 1319 (9th Cir. 1977) .........................................................................................8

**STATUTES**

42 U.S.C. § 1396a(a)(30)(A) ..............................................................................................16, 18

42 U.S.C. § 1396b(m)(2)(A)(iii)............................................................................................ passim

42 U.S.C § 1983................................................................................................................ passim

42 U.S.C § 1985................................................................................................................ passim

Administrative Procedures Act ........................................................................................1, 16, 19

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Idaho Administrative Procedures Act ...................................................................................16

Medicaid Act .................................................................................................................. passim

Oregon Administrative Procedure Act .........................................................................7, 17

ORS 30.320 .........................................................................................................................15

ORS 183.480 .......................................................................................................................13

ORS 183.484(5) ...................................................................................................................14

ORS 413.071 ...............................................................................................................2, 14, 20

ORS 414.652 ........................................................................................................................6

**RULES**

Fed. R. Civ. P. 8(a)(2) ....................................................................................................10, 11

Fed. R. Civ. P. 12(b)(6) .......................................................................................................8

Fed. R. Civ. P. 12(f) ............................................................................................................8

Or. R. Civ. P. 18(A) ...........................................................................................................10

Or. R. Civ. P. 21 ...............................................................................................................10

**REGULATIONS**

42 C.F.R. § 438.5(b) .................................................................................................2, 14, 18, 20

42 C.F.R. § 438.5(c) ...........................................................................................................18

42 C.F.R. § 438.5(d) ...........................................................................................................18

42 C.F.R. § 438.6(c)(2) ....................................................................................................2, 14

OAR 410-141-3010 (15) ...................................................................................................2, 14

**OTHER AUTHORITIES**

Eleventh Amendment ..........................................................................................................21

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Fourteenth Amendment ....................................................................................................23, 24

5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382
    (3d ed.) .....................................................................................................................................8

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## INTRODUCTION

After managing and coordinating health care services to Oregon's Medicaid population for over 30 years, FamilyCare was forced to shut down its Medicaid business, lay off most of its staff, and all but cease its operations. FamilyCare's demise was no accident. It was the result of Defendants' years'-long campaign to drive FamilyCare from the Medicaid market. Defendants executed their plan by continually and systematically reducing the capitation rates paid to FamilyCare, causing FamilyCare to sustain operating losses and depleting its reserves. Defendants knew FamilyCare was on the brink, and they knew that the proposed 2018 rates were so woefully inadequate that they would push FamilyCare over the edge. Yet, in clear violation of Oregon law and the parties' contract, on December 20, 2017, OHA and Patrick Allen presented FamilyCare with a take-it-or-leave it contract with just 24 hours' notice--a proposal that did not even specify the rates FamilyCare would actually receive in 2018. FamilyCare had no choice but to refuse and to begin the process of dismantling the company.

Defendants now seek to evade any responsibility for their wrongdoing, claiming that the law provides no recourse to FamilyCare. First, they contend that FamilyCare is precluded from challenging the actuarial soundness of the capitation rates set by OHA because the Medicaid Act does not create a right to actuarially sound rates. But Oregon law guarantees FamilyCare's right to contest the legality of rate-setting decisions made by OHA through the Administrative Procedures Act and to seek recourse for OHA's breach of its contractual obligation to provide actuarially sound rates. Contrary to Defendants' suggestion, these state law claims are consistent with—and not preempted by—the Medicaid Act. Second, Defendants claim that they are immune from any liability for their misdeeds. But as they acknowledge, sovereign immunity does not bar FamilyCare's claim for equitable relief under Sections 1983 and 1985. And Patrick Allen's blatant disregard for FamilyCare's rights means that he may not hide behind the shield of qualified immunity. As such, Defendants' motion to dismiss should be denied.

1- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## BACKGROUND

FamilyCare is a non-profit organization dedicated to providing Oregon's neediest citizens with access to affordable health care. Third Amended Complaint ("TAC") ¶ 1. Since 1985, FamilyCare has contracted with the Oregon Health Authority, or its predecessor agency, to manage and coordinate health care services to Oregonians enrolled in the Oregon Health Plan, the State's Medicaid program. *Id.* ¶ 20. Until 2018, FamilyCare was the second-largest Coordinated Care Organization (CCO) in Oregon, managing and coordinating integrated physical, mental, and dental health services for more than 120,000 members in the Tri-County area and in Marion County. TAC ¶ 1.

In 2014, FamilyCare signed a new five-year contract with the Oregon Health Authority to provide health services to members of the Oregon Health Plan. TAC ¶ 20. Under this contract, and similar contracts with 15 other CCOs, OHA establishes annual per-member, per-month "capitation" payment rates for each CCO for the management of medical services for Medicaid-eligible Oregonians. TAC ¶ 11. Federal law requires those capitation rates to be "actuarially sound." 42 U.S.C. § 1396b(m)(2)(A)(iii); 42 C.F.R. § 438.5(b); 42 C.F.R. § 438.6(c)(2). Oregon law also imposes the actuarial soundness requirement by mandating that OHA administer federally granted funds consistent with federal law. *See* ORS 413.071 ("Notwithstanding any other provision of law, federal laws shall govern the administration of federally granted funds."); *see also* OAR 410-141-3010 (15) ("The Authority shall interpret and apply this rule to satisfy federal procurement and contracting requirements in addition to state requirements applicable to contracts with CCOs. The Authority must seek and receive federal approval of CCO contracts.").

Unfortunately, OHA has not honored its obligation to set reasonable, actuarially sound capitation rates. On December 24, 2014, OHA presented FamilyCare with a contract amendment containing the capitation rates for 2015, which represented a 9.7% decrease in FamilyCare's

2- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

rates as compared to 2014.  TAC ¶ 21.  FamilyCare immediately notified OHA that the rates were incorrect, and in May 2015 filed suit in Oregon state court, alleging that the 2015 capitation rates were not actuarially sound.  *Id.* ¶¶ 21, 23.  OHA was eventually forced to concede that the 2015 rates were not actuarially sound and to redevelop the 2015 rates.  *Id.* ¶¶ 21, 25.

In August 2015, OHA presented the redeveloped 2015 rates.  *Id.* ¶ 25.  The redeveloped rates further decreased FamilyCare's capitation rates by $54,485,814, which was an additional 10.9% reduction in FamilyCare's capitation rates as compared to 2014.  *Id.* ¶ 26.  FamilyCare requested that OHA provide the data necessary to confirm that the methodology underlying the redeveloped 2015 Rates is actuarially sound.  *Id.* ¶ 25.  OHA refused.  *Id.*

FamilyCare balked at signing the contract amendment incorporating the redeveloped 2015 rates, and OHA notified FamilyCare of its intent to terminate FamilyCare's contract, instituting administrative proceedings to do so.  *Id.* ¶¶ 27, 29.  FamilyCare sought emergency relief from the Oregon courts, which issued a temporary restraining order to enjoin OHA from terminating FamilyCare's contract.  ¶ 29.

In May 2016, OHA and FamilyCare entered into a settlement agreement to resolve their disputes.  *Id.* ¶ 30.  Under the settlement agreement, FamilyCare agreed to sign the amendment with the redeveloped 2015 rates; in return, OHA agreed to give FamilyCare a $24.8 million settlement credit.  *Id.* ¶ 31.  Critically, the settlement agreement prohibits OHA from "clawing back" this settlement amount by using the settlement credit as a basis for reducing FamilyCare's capitation rates in future years.  *Id.* ¶ 32.

In October 2016, OHA released the 2017 capitation rates for Oregon's CCOs.  *Id.* ¶ 34. Like the rates released for the prior two rate years, FamilyCare's 2017 rates were, on average, the lowest of those offered to all CCOs. Because these rates failed to cover FamilyCare's reasonable cost of providing services under its contract with OHA, they would cause FamilyCare

3- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

to incur significant operating losses in 2017. *Id.* FamilyCare again asked for data sufficient to validate that these rates were actuarially sound; OHA again refused. *Id.*

In December 2016, in an effort to cooperatively resolve the dispute, FamilyCare agreed to enter into a Dispute Resolution Agreement, under which FamilyCare agreed to sign the 2017 contract amendment, but reserved all rights to challenge those rates later. *Id.* ¶ 39. Under the terms of the Dispute Resolution Agreement, OHA agreed to engage in a "free and open discussion" about the actuarial soundness of the 2017 rates. *Id.* ¶ 41. The parties agreed to participate in good faith in at least three substantive discussions, and they agreed to provide each other with the information necessary to allow their actuaries to evaluate the rates. *Id.* Despite signing the agreement, OHA refused to participate in three discussions or to provide FamilyCare with information sought under the agreement. *Id.* ¶ 46.

In July 2017, OHA released documents in response to a public records request revealing why OHA refused to participate in the dispute resolution process as promised: On the first business day after FamilyCare and OHA executed the Dispute Resolution Agreement, then-OHA director Lynne Saxton instructed her subordinates to develop a communications plan for the dispute resolution process. *Id.* ¶¶ 47-48. The communications plan, which was developed while FamilyCare still believed that the parties were engaged in good-faith efforts to resolve the dispute under the Dispute Resolution Agreement, was, in its own words, designed to portray FamilyCare as an "outlier" that is "more concerned with the bottom line and increasing revenues than the health of Oregonians"; use media to "hurt [FamilyCare's] credibility in the news"; "highlight FamilyCare as an outlier and only worried about profit margins"; promote Health Share, the other CCO that operates in FamilyCare's service area, "as a truly inclusive CCO that provides greater access to Oregonians with high cost medical needs"; and use vulnerable Medicaid enrollees as pawns by getting "a few discrete examples of OHP members with high cost medical issues (i.e. HIV) who chose Health Share b/c FamilyCare couldn't provide them

4- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

with the care they need." *Id.* ¶¶ 55-56. The communications plan further specified that OHA would hide its involvement through "off the record" discussions with news media and by using "legislators and/or other lobbyists to pitch stories to news media if possible so that OHA can staff [sic] neutral." *Id.* ¶ 56. On August 8, 2017, shortly after the details of OHA's communications plan became publicly known, Governor Kate Brown announced that Ms. Saxton had resigned, effective August 31, 2017. *Id.* ¶ 57.

On September 1, 2017, following Ms. Saxton's resignation at Governor Brown's request, Patrick Allen assumed leadership of OHA as its new interim director. *Id.* ¶ 60. By the time that Mr. Allen took up this position, the process of setting the 2018 rates was well underway, and already, problems were once again evident. *Id.* The 2018 rates were calculated using the same methods that were used to set the 2017 rates, and the same errors were present. *Id.* ¶ 63.

In addition to its concerns with the soundness of OHA's rate-setting methodology, FamilyCare has also long identified errors in the data used to develop its capitation rates. The rates presented to FamilyCare for 2018 appeared, like the rates offered for prior years, to be riddled with errors that materially impacted the amount that would be paid to FamilyCare and other CCOs. *Id.* ¶ 68. Among other issues, FamilyCare pointed out—as it had in years and months past—that basic errors in enrollment and eligibility data caused many FamilyCare members to be classified in the wrong age or category of aid cohort for purposes of determining the capitation rate at which FamilyCare was compensated for those members. *Id.* Throughout December 2017, FamilyCare continued to request clarification from OHA on this issue and discuss its concerns related to the 2018 rates and the data used to calculate those rates. *Id.*

On December 8, 2017, OHA agreed that the data errors identified by FamilyCare necessitated a redetermination analysis that would materially affect FamilyCare's compensation under the amendment setting forth FamilyCare's 2018 capitation rates (the "2018 Amendment"). *Id.* ¶ 70. Although FamilyCare had repeatedly alerted OHA to these errors for several years and

5- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

requested a prompt assessment of the impact of the errors on the 2018 rates, OHA committed to give FamilyCare a "preliminary analysis" of the necessary redetermination no earlier than December 29, 2017—the last business day of the year and the last day to sign the 2018 Amendment—in order to permit FamilyCare to determine whether the adjusted 2018 rates, based on this re-determination, would allow FamilyCare to sign the 2018 rate amendment and continue providing services to Medicaid patients throughout the full term of FamilyCare's five year contract with OHA. *Id.*

But on December 20, 2017, Allen gave FamilyCare an ultimatum: Allen demanded that FamilyCare decide within 24 hours whether to sign the 2018 rate amendment. *Id.* ¶ 72. In requiring FamilyCare to accept or reject the 2018 Amendment by December 21, 2017, Allen moved the deadline for signing that agreement up by ten days. *Id.* Allen shortened the deadline and made this demand even though OHA had yet to provide any of the promised analysis on what compensation FamilyCare would receive in 2018 once the data errors were corrected, and despite the fact that under ORS 414.652, OHA is required to "give a coordinated care organization at least 60 days' advance notice of any amendments the authority proposes to existing contracts between the authority and the coordinated care organization, or to contracts to be renewed, including the global budget paid to the coordinated care organization under the contract." *Id.*

Faced with actuarially unsound rates that would cause FamilyCare to run a deficit in 2018 exceeding the amount of its available reserves, and lacking any information from OHA about what compensation FamilyCare would actually receive in 2018 upon the correction of its acknowledged data errors impacting CCO capitation rates, FamilyCare was unable to sign the 2018 Amendment on December 21, 2017, as demanded 24 hours earlier by Mr. Allen. *Id.* ¶ 74. Instead, on December 22, 2017, FamilyCare and OHA entered into a shortened one-month 2018 rate amendment to allow FamilyCare to continue serving its Medicaid members during January

6- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

2018 so that those members had time to transition from FamilyCare to other CCOs. *Id.* ¶ 75. Subsequently, FamilyCare began the process of shutting down its Medicaid business. In the course of doing so, it has been forced to lay off approximately 250 employees and transition its 115,000 FamilyCare members to other CCOs, primarily Health Share. *Id.* ¶ 77.

On January 23, 2018, a month after FamilyCare was forced from the Medicaid market, OHA issued a "rate update," stating that the capitation rates paid to CCOs under the 2018 rate amendment would increase by roughly 2-3%. *Id.* ¶ 79. For FamilyCare, this change in its rates would have resulted in an increase of no less than $20 million in additional compensation for 2018 had FamilyCare signed the 2018 Amendment. *Id.* ¶ 79.

FamilyCare seeks redress for its injuries in 2017 and 2018 under the following theories:

- Breach of the five-year contract, under which FamilyCare had an objectively reasonable expectation, based on the contract and applicable law, that OHA would present annual Rate Amendments that were reasonable, unbiased, actuarially sound, and free of errors in underlying data and methodology. *Id.* ¶¶ 146-152 (Tenth claim for relief).

- Breach of the Settlement Agreement, which OHA breached by, among other things, reducing FamilyCare's 2017 and 2018 rates to penalize FamilyCare for the settlement credit. *Id.* ¶¶ 91-111; 119-128 (Second, third, fifth, and sixth claims for relief).

- Breach of the Dispute Resolution Agreement, which required OHA to engage in good faith in the dispute resolution process. *Id.* ¶¶ 129-138 (Seventh and eighth claims for relief).

- Judicial review of the 2017 and 2018 rates under the Oregon Administrative Procedure Act. *Id.* ¶¶ 112-118; 152-157. (Fourth and eleventh claims for relief).

- Intentional interference with business relations arising out of, among other things, OHA's communications plan, which was designed to injury FamilyCare. *Id.* ¶ 139-145 (Ninth claim for relief).

- Civil rights claim under 42 U.S.C §§ 1983 and 1985, seeking equitable relief and monetary damages resulting from the destruction of FamilyCare's business goodwill. *Id.* ¶¶ 82-90 (First claim for relief).

7- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). Accordingly, "[a] motion to dismiss will only be granted if the complaint fails to allege 'enough facts to state a claim to relief that is plausible on its face.'" *Fayer v. Vaughn,* 649 F.3d 1061, 1064 (9th Cir. 2011) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009) (citations omitted)).

Rule 12(f) permits a court to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading so as to avoid litigating "spurious issues." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting Fed. R. Civ. P. 12(f) and *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). However, Rule 12(f) is "neither an authorized nor a proper way to procure the dismissal of all or part of a complaint." *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) (citation omitted). "[T]here appears to be general judicial agreement . . . that [motions to strike] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed.).

8-  PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## ARGUMENT

**A.    The motions to dismiss the previous complaint in state court are moot.**

Defendants ask the Court to rule on their motions to dismiss FamilyCare's Second Amended Complaint, which were pending when FamilyCare filed its Third Amended Complaint and Defendants removed this case to federal court.  But those motions addressed a different version of the complaint under a different pleading standard, and are therefore moot.

First, Defendants' previous motions to dismiss are moot because they do not address the operative complaint.  It is well established that "when a plaintiff files an amended complaint, the amended complaint supercedes the original, the latter being treated thereafter as non-existent." *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967) (internal marks omitted)).  And "[a]s the amended complaint supersedes the original complaint no motion of any kind can now be addressed to the original complaint as it performs no function in the action." *United States v. Shofner Iron & Steel Works*, 71 F. Supp. 161, 162 (D. Or. 1947), *rev'd on other grounds*, 168 F.2d 286 (9th Cir. 1948).  Following this rule, courts routinely deny motions to dismiss as moot if they address a previous version of the operative complaint. *See, e.g.*, *No Cost Conference, Inc. v. Windstream Comm'ns, Inc.*, 940 F. Supp. 2d 1285, 1297 n.5 (S.D. Cal. 2013) ("The Court's conclusion here renders Wind. Inc.'s motion to dismiss the original Complaint moot, as a newly amended complaint supercedes the previously filed complaint and renders it 'non-existent.'"); *Barnes v. District of Columbia*, 42 F. Supp.3d 111, 117 (D.D.C. 2014) ("When a plaintiff files an amended complaint . . . the amended complaint becomes the operative pleading . . . and any pending motion to dismiss becomes moot."); *Petrus v. NY Life Ins. Co.*, No. 14–cv–2268, 2015 WL 3796221, *1 (S.D. Cal. June 18, 2015) ("As the FAC superseded the initial Complaint, those motions to dismiss the initial Complaint are terminated as moot.").  This Court should do the same here, particularly since FamilyCare's Third Amended Complaint added significant new factual allegations bearing on, among other things, the State's continued bad faith conduct and interference with FamilyCare's

9-  PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN
    OPPOSITION TO DEFENDANTS' MOTIONS TO
    DISMISS

business relations. *See, e.g.*, TAC ¶¶ 60-90 (new allegations describing OHA's continuing course of conduct, which has forced FamilyCare to shut down its Medicaid business).

Second, Defendants' previous motions to dismiss are moot because they asked the state court to dismiss FamilyCare's claims under Oregon's more stringent "fact pleading" standard, which no longer applies. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Country*, 415 U.S. 423, 438 (1974) ("The Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court after removal."). Complaints under the Oregon rules must contain a "statement of the ultimate facts constituting a claim for relief." Or. R. Civ. P. 18(A). In contrast, the federal rules follow the notice pleading approach, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he Oregon Rules of Civil Procedure specifically reject the federal approach of notice pleading in favor of the retention of fact pleading." *Welch v. Bancorp Mgmt. Advisors, Inc.*, 675 P.2d 172, 180 (Or. 1983); *see also Anatomic Research, Inc. v. Adidas Am. Inc.*, No. Civ. 02-0123-AS, 2002 WL 31654990, *4 (D. Or. Nov. 19, 2002) ("Oregon courts, unlike federal courts, require 'ultimate fact' pleading.").

Defendants' previous motions to dismiss were brought exclusively under Oregon Rule 21, and Defendants repeatedly invoked Oregon's stringent fact pleading standard to argue that FamilyCare had failed to state proper claims relief. *See, e.g.*, Declaration of Harry B. Wilson ("Wilson Decl."), Ex. 1, p. 1-2 (submitting "the following Rule 21 motions"); *id.* p. 4 (setting out standard for a "motion to dismiss for failure to state ultimate facts"); *id.* ("To state this claim, FamilyCare must plead ultimate facts to establish [each element of the claim]."); Wilson Decl. Ex. 3, p. 1 (arguing that FamilyCare "fails to allege ultimate facts that OHA caused any of its business partners to cease doing business with it"); *id.* p. 1 (arguing that FamilyCare's claim is "unsupported by ultimate facts"); *id.* p. 4 (arguing that FamilyCare's allegations "are insufficient

10- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

under Oregon's ultimate facts standard"). Those arguments are irrelevant now. Defendants did not cite the federal notice pleading standard, nor did they argue that FamilyCare failed to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nor did FamilyCare have the opportunity to argue that the claims in its Second Amended Complaint meet the more lenient federal pleading standard.

Defendants may argue in reply that they *could have* raised at least some of the arguments from their previous motions essentially unchanged under the federal pleading standard. But Defendants did not, in fact, refashion their arguments that way. FamilyCare should not be required to guess what any such arguments might have looked like in light of the amended complaint and under a more lenient pleading standard. If Defendants wished to argue that FamilyCare's sixth, seventh, eighth, and ninth claims for relief in the Third Amended Complaint fail to state claims under the federal pleading standard, it should have presented those arguments squarely, so that FamilyCare would have the opportunity to answer them squarely in return. But they did not, and their state court motions to dismiss the Second Amended Complaint are moot.

If the Court does decide to entertain Defendants' previous motions to dismiss, FamilyCare maintains that the motions should be denied for the reasons stated in its previous opposition briefs.

**B.    FamilyCare is entitled to challenge the actuarial soundness of capitation rates set by OHA through its state-law causes of action.**

OHA's decision to provide FamilyCare with unsustainable, unfair, and actuarially unsound capitation rates was central to its successful scheme to drive FamilyCare out of the managed Medicaid market. OHA's rate-setting decisions contravened Oregon and federal law, were not supported by substantial evidence or reason, exceeded the range of discretion delegated to OHA by law, and breached OHA's contractual obligations to FamilyCare. As such, Oregon law guarantees FamilyCare's right to challenge OHA's rate-setting decisions through its APA and contract causes of action.

11-  PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Defendants claim that because the rates set by OHA violated the actuarial soundness requirement imposed by the Medicaid Act, FamilyCare is powerless to challenge OHA's misconduct. First, they contend that U.S.C. § 1396b(m)(2)(A)(iii) is "not a source of rights for FamilyCare." Mtn. to Dismiss at 6. But FamilyCare's right to challenge OHA's rate-setting decisions is secured by the Oregon APA and common law of contract; whether Medicaid Act's actuarial soundness provision itself creates a privately enforceable right is irrelevant to FamilyCare's claims in this lawsuit. Second, they claim that the Medicaid Act preempts FamilyCare's APA claim. But as detailed in FamilyCare's motion to dismiss Defendants' declaratory judgment action, APA challenges to state agency compliance with the requirements of state and federal law are entirely consistent with the Medicaid Act.

Throughout their motion, Defendants rely heavily on *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015), to argue that the "sole remedy" that the law imposes for a state's failure to comply with the Medicaid Act—that is, for a state's "breach" of the Spending Clause "contract" established by that Act—is the withholding of federal funds. *See* Mtn. to Dismiss at 6. This is a dramatic overreading of *Armstrong*. *Armstrong* examined a different section of the Medicaid Act than the one at issue in this case, and merely held that plaintiffs could not utilize the Supremacy Clause or a federal court's equitable powers to enforce compliance with that particular provision. Indeed, the decision explicitly noted the availability of APA review. The decision in no way forecloses remedies provided by state law to ensure that the state agencies follow the law and live up to their contractual obligations, and thus it has no bearing on the claims at issue in this case.[1]

---

[1] Defendants' motion can be denied on the independent basis that none of FamilyCare's claims relies solely on OHA's failure to set actuarially sound rates. FamilyCare's contract claims (Claims Two, Three, Five, Six, Seven, Eight, Ten) allege that OHA breached a number of express and implied terms of the parties' contract, including but not limited to the requirement that the annual rate adjustments permitted under the contract be actuarially sound. *See* TAC ¶ 149 ("OHA breached its obligations under the Contract by presenting FamilyCare with Rate Amendments for 2017 and 2018 that were unreasonable, biased, actuarially unsound, and based

12- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1.      **FamilyCare's APA and contract claims do not depend on the existence of an independently enforceable federal right.**

Defendants contend that OHA's persistent failure to pay FamilyCare actuarially sound capitation rates cannot support FamilyCare's claims because the Medicaid Act provision requiring actuarially sound capitation rates does not itself create privately enforceable rights. But even assuming that 42 U.S.C. § 1396b(m)(2)(A)(iii) is not susceptible to direct enforcement through *federal* law, this would be of no import to FamilyCare's *state* law claims. FamilyCare's challenge to the legality of OHA's final orders setting capitation rates is proper under the Oregon APA, and its claims that the rates set by OHA breached the parties' contracts are proper under the Oregon common law. Neither of these challenges is dependent on a right-conferring federal statute.

The Oregon APA provides that "any person adversely affected or aggrieved by an order" is entitled to judicial review of that order. ORS 183.480. Here, there is no question that the 2017 and 2018 rate amendments are final agency orders subject to APA review: Before this case was removed to federal court, Judge Armstrong ruled that OHA's rate-setting decisions were agency orders within the meaning of the APA, thus establishing the law of the case on that issue. *See* Declaration of Brian Samuelson Ex. 1, p. 16 (OHA motion to dismiss, arguing that the "2017 Rate Amendment is not a 'final order' under the APA"); *id.*, Ex. 2 (May 31, 2017 order denying OHA's motion to dismiss); *see also, e.g.*, *Granny Goose Foods, Inc.*, 415 U.S. at 436 (quoting *Duncan v. Gegan*, 101 U.S. 810, 812 (1880)) ("After removal, the federal court 'takes the case up where the State court left it off.'").

---

on erroneous data and methodology.")  Similarly, FamilyCare's APA claims (Claims Four and Eleven) allege that "OHA acted outside the range of discretion delegated by law, inconsistent with its administrative rules and prior agency practice and in violation of statute"—including but not limited to by setting actuarially unsound rates. *Id.* ¶ 155.  And FamilyCare's claim under §§ 1983 and 1985 alleges that Defendants' conduct destroyed FamilyCare, depriving it of its goodwill. *Id.* ¶¶ 85, 88.  Therefore, even if Defendants could somehow establish that FamilyCare is precluded from challenging OHA's rate setting decisions on actuarial soundness grounds—and they cannot—this would not provide a basis to dismiss any of FamilyCare's claims.

13-  PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Under the APA, a court may grant relief when an agency order is outside the range of discretion delegated to the agency by law; inconsistent with an agency rule, an officially stated agency position, or prior practice; in violation of a constitutional or statutory provision; or unsupported by substantial evidence in the record. ORS 183.484(5). Here, federal law requires OHA to set actuarially sound rates. *See* 42 U.S.C. § 1396b(2)(m)(A)(iii) (no payment shall be made to a State unless capitation payments "are made on an actuarially sound basis"); 42 C.F.R. § 438.5(b) ("In setting actuarially sound capitation rates, the State must follow the steps below, in an appropriate order, in accordance with this section, or explain why they are not applicable."); 42 C.F.R. § 438.6(c)(2); *see also Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502 (1990) (once a state chooses to participate in the Medicaid program, it must comply with the Medicaid Act and its implementing regulations). Oregon has incorporated these federal requirements into its own statutes governing the administration of federally granted funds. ORS 413.071 ("Notwithstanding any other provision of law, federal laws shall govern the administration of federally granted funds."); *see also* OAR 410-141-3010 (15) ("The Authority shall interpret and apply this rule to satisfy federal procurement and contracting requirements in addition to state requirements applicable to contracts with CCOs."). And even if the actuarial soundness requirement was not imposed by law, FamilyCare would still have a claim that OHA's decision to set actuarially unsound rates was unreasonable, unsupported by substantial evidence, and in violation of an agency rule, officially stated agency position, or past agency practice. *See, e.g.,* TAC ¶ 115 ("OHA erroneously interpreted the laws requiring it to set actuarially sound rates. . . . Additionally, OHA acted outside the range of discretion delegated by law, inconsistent with its administrative rules and prior agency practice, and in violation of statute."); *id.* ¶ 116 ("OHA's 2017 rate-setting order is not supported by substantial evidence or substantial reason.").

14-  PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN
     OPPOSITION TO DEFENDANTS' MOTIONS TO
     DISMISS

Contrary to Defendants' suggestion, the APA does not require a plaintiff to show that the agency's order violated a "right" conferred by statute or otherwise. Indeed, the Oregon Supreme Court has made clear that the APA imposes no standing requirements beyond those explicitly set out in the APA itself. *See Kellas v. Dep't of Corr.*, 145 P.3d 139, 141-42 (Or. 2006) (holding that "the legislature lawfully may authorize any person to seek judicial review to challenge the validity of a government action . . . without a showing that the governmental action or the court's decision will have a practical effect on that person's individual rights or interest" and refusing to impose additional standing requirements to provision of APA).

Similarly, FamilyCare's contract claims do not depend on a federally-conferred right. To the contrary, OHA's right to enforce its contracts against the State is well-established under Oregon law. *See* ORS 30.320 ("A suit or action may be maintained against . . . the State of Oregon by and through and in the name of the appropriate state agency upon a contract . . . made by such agency."). Both the five-year Contract and the parties' prior settlement agreement contain express or implied terms that created the reasonable expectation that OHA would set actuarially sound rates in future years.[2] *See* TAC ¶ 148 ("FamilyCare's Contract with OHA contains an implied covenant of good faith and fair dealing that protects FamilyCare's reasonable contractual expectations. Among other things, FamilyCare had an objectively reasonable expectation, based on the Contract and applicable law, that OHA would present annual Rate amendments that were reasonable, unbiased, actuarially sound, and free of errors in underlying data and methodology."); *id.* ¶¶ 99-102 (Settlement Agreement prohibited OHA from "clawing back" the Settlement Credit by using actuarially unsound methods to reduce FamilyCare's future rates). That the Medicaid Act requires the capitation rates set by OHA to be

---

[2] Defendants contend that the parties' settlement agreement "reflects the regulatory framework" for administration of the Medicaid Act. Mtn. to Dismiss at 7. But in the settlement agreement, OHA explicitly acknowledge that "Medicaid regulations require OHA to establish rates for each rate cell that are adequate for reasonable, appropriate and attainable benefit and non-benefit Medicaid costs." ECF 1-1 at 299.

15- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

actuarially sound does not somehow insulate Defendants from FamilyCare's claim that the rates set by OHA breached the parties' contracts.  *See Rocky Mountain Health Maint. Org. v. Colo. Dep't of Health Care Policy & Fin.*, 54 P.3d 913, 991-20 (Colo. 2001) (affirming damages award against state Medicaid agency for setting actuarially unsound capitation rates in breach of contract with managed care organization).

> **2.    *Armstrong* is of no import.**

Defendants' suggestion that *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015) prevents FamilyCare from bringing APA and contract challenges to OHA's rate setting is without merit.  *Armstrong* is inapposite to this case for several reasons: (1) It examined a different provision of the Medicaid Act than the one at issue here, and its reasoning has not been held applicable to other provisions of the Act; (2) It did not examine a claim brought under the Administrative Procedure Act, and indeed, the Court expressly noted the availability of a federal APA remedy to enforce the Medicaid Act; and (3) Most importantly, it was not a preemption case and did not even consider whether the Medicaid Act preempted a cause of action under state law.  As such, the decision says nothing about the availability of state-law causes of action challenging state agencies' implementation of their Medicaid programs.

In *Armstrong*, the Court considered whether Medicaid providers had a cause of action against the State of Idaho either under the Supremacy Clause or the courts' inherent equitable power to enforce § (30)(A) of the Medicaid Act, a different provision from the one at issue in this case.  *Id.* at 1382.  Claiming that Idaho violated § 30(A) by reimbursing providers of habilitation services at rates lower than § 30(A) permits, certain providers sued officials in Idaho's Department of Health and Welfare, not under Idaho's Administrative Procedures Act, but on the theory that the Supremacy Clause and the courts' inherent equitable power granted them an implied cause of action under federal law.  *Id.* at 1382.  The Supreme Court held that

16- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

neither the Supremacy Clause nor the courts' inherent power to grant equitable relief conferred an implied right of action to enforce the Act under federal law. *Id.* at 1383-84.

Defendants cite *Armstrong* for the proposition that the "sole remedy" for a state's failure to comply with Medicaid's requirements is "the withholding of Medicaid funds by the Secretary of Health and Human Services." Mtn. to Dismiss at 9 (quoting *Armstrong*, 135 S. Ct. at 1385). But those quoted phrases are taken out of context and elide several critical words: As part of the Court's discussion of whether Congress intended to foreclose equitable relief under the Act in federal court, the Court noted that "the sole remedy *Congress provided* for a State's failure to comply with Medicaid's requirements" is the withholding of federal funds. *Armstrong*, 135 S. Ct. at 1385 (emphasis added). The Court did not hold that Congress's provision of that one remedy precluded all other remedies. To the contrary, the Court noted the availability of APA review as a remedy available to the petitioners. *See id.* at 1387. And the Court *certainly* did not hold that remedies provided under state law—like remedies under the Oregon Administrative Procedure Act or common law contractual remedies—were preempted by the Medicaid Act. Indeed, *Armstrong* was not a preemption case at all, and included no discussion of conflict preemption principles. Rather, the Court's decision was focused on the remedies provided under federal law, and its holding was limited to the conclusion that Congress did not intend to allow the §30(A) to be enforced through the Supremacy Clause or an implied cause of action under the courts' equitable powers.

Moreover, *Armstrong*'s analysis was limited to § 30(A) of the Medicaid Act—a provision not at issue in this case—and expressly rested on the especially vague language of that section. The Court explained that "[t]he provision for the Secretary's enforcement by withholding funds might not, *by itself*, preclude the availability of equitable relief." *Id.* at 1385 (emphasis original). Rather, it was the particularly "unadministrable nature of § 30(A)'s text" that informed the Court's decision. *Id.* The Court emphasized that "[i]t is difficult to imagine a requirement

17- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

broader and less specific than § 30(A)'s mandate that state plans provide for payments that are "consistent with efficiency, economy, and quality of care." *Id.* In contrast, the standards for developing actuarially sound rates under 42 C.F.R. §§ 438.4 and 438.5 are concrete and verifiable. The regulations require states to follow six specific steps, in order, or explain why they are not applicable. *Id.* These steps include, for example, the command to "identify and develop the base utilization and price data," *id.* § 438.5(b)(1), and to "develop and apply trend factors, including cost and utilization, to base data," *id.* § 438.5(b)(2). These steps must be taken in accordance with generally accepted actuarial principles and practices, and are further defined and explained in the regulations. *See id.* § 438.5(c) (setting out standards for developing base data); *id.* § 438.5(d) (setting out standards for trend factors). These provisions are easily distinguishable from §30(A)'s vague command to provide payments that are "consistent with efficiency, economy, and quality of care." 42 U.S.C. § 1396a(a)(30)(A). *See Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 461–62 (5th Cir. 2017) (distinguishing *Armstrong* and contrasting § 30(A)'s broad and nonspecific language with the terms in different section of Medicaid Act that are "specific and judicially administrable"); *see also Rocky Mountain Health Maint. Org. v. Colo. Dep't of Health Care Policy & Fin.*, 54 P.3d 913, 991-20 (Colo. 2001) (examining whether State Medicaid agency set actuarially unsound capitation rates).

In sum, *Armstrong* speaks only to the direct enforcement under federal law of a distinct provision of the Medicaid Act, and says nothing about FamilyCare's ability to challenge OHA's rate setting under the Oregon APA or in contract.

### 3.    FamilyCare's APA claims are not preempted by federal law.

As in their Complaint for Declaratory Relief, Defendants claim that the Medicaid Act preempts FamilyCare's APA claims challenging OHA's compliance with the actuarial soundness requirements imposed by federal and state law. FamilyCare's motion to dismiss the Declaratory

18- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Relief complaint (ECF 27) details the many reasons Defendants fail to meet the high threshold required to establish preemption, and FamilyCare incorporates that briefing by reference.

In short, courts must "assume that a federal law does not preempt the states' police power absent a 'clear and manifest purpose of Congress.'" *Atay v. County of Maui*, 842 F.3d 688, 699 (9th Cir. 2016) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). "Implied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives'; such an endeavor 'would undercut the principle that it is Congress rather than the courts that preempts state law.'" *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (quoting *Gade*, 505 U.S. at 111 (Kennedy, J., concurring in part and concurring in judgment)).

Here, Defendants' preemption argument rests on the fact that CMS may withhold federal funding from state plans that fail to satisfy the actuarial soundness requirement, and on the observation in *Armstrong* that the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Mtn. to Dismiss at 9 (quoting *Armstrong*, 135 S. Ct. at 1385). But Defendants must do more than offer an implied "suggestion" that Congress intended to preclude other forms of relief to meet the high bar of establishing the "clear and manifest purpose of Congress." *Atay*, 842 F.3d at 699. And Defendants' motion contains *no* other authority supporting the assertion Congress clearly intended to preempt state common law contractual claims or review of state agency action under a state Administrative Procedure Act.

As explained more fully in FamilyCare's motion to dismiss Defendants' complaint, Medicaid is a cooperative federal-state program, which requires participating states to administer their own plans in accordance with state and federal law. *See West Virginia Univ. Hosps., Inc. v. Casey*, 885 F.2d 11, 15 (3d Cir. 1989) (quoting House Subcomm. on Health and the Environment, Data on the Medicaid Program: Eligibility, Services, Expenditures Fiscal Years 1967–77,

19- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

H.R.Rep. No. 10, 95th Cong., 1st Sess. 1) (Medicaid is "'basically administered by each state within certain broad requirements and guidelines.'").  Under this regime, the State must set "actuarially sound" capitation rates. 42 U.S.C. § 1396b(m)(2)(A)(iii); *see also* 42 C.F.R. § 438.5 (b) ("In setting actuarially sound capitation rates, the State must follow the steps below, in an appropriate order, in accordance with this section, or explain why they are not applicable."). Indeed, Oregon is doubly-bound by the actuarial soundness requirement because Oregon has incorporated federal law into its own statutes governing the administration of federally granted funds. ORS 413.071 ("Notwithstanding any other provision of law, federal laws shall govern the administration of federally granted funds.").  Far from conflicting with the federal Medicaid Act, judicial review of OHA's compliance with the actuarial soundness requirement under the APA is critical to Oregon's ability to administer its own Medicaid program. Plainly, Congress's purpose in requiring that state capitation rates be actuarially sound was to ensure that state capitation rates be actuarially sound; a state's decision to provide a private cause of action to help ensure the state agency's compliance with that requirement cannot be said to conflict with Congress's purpose.

## C.    Sovereign immunity does not bar FamilyCare's Section 1983 and 1985 claims.

In their final attempt to avoid liability for their wrongdoing, Defendants contend that they are immune from FamilyCare's claims brought under 42 U.S.C. §§ 1983 and 1985.  Specifically, Defendants claim that the doctrine of sovereign immunity bars any claim for damages against OHA or Allen in his official capacity, and that Allen is entitled to qualified immunity from FamilyCare's claim against him in his individual capacity.   But FamilyCare's claim against Allen in his *official* capacity merely seeks equitable relief and thus is not barred by sovereign immunity.  And FamilyCare's damages claim against Allen in his *individual* capacity is not barred by qualified immunity because Allen's knowingly illegal conduct deprived FamilyCare of

20- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

its property interest in its goodwill and actuarially sound capitation rates.  As such, Defendants'

motion to dismiss on immunity grounds should be denied.[3]

> **1.      As Defendants acknowledge, FamilyCare's claim for equitable relief is not barred on sovereign immunity grounds.**

Defendants contend that "[s]overeign immunity is a complete bar to FamilyCare's claim

for damages against OHA and Allen in his official capacity."  Mtn. to Dismiss at 10.  Although

FamilyCare disagrees with the premise of Defendants' argument—namely, that there are two

distinct "forms" of sovereign immunity, and that the state waived its "Eleventh Amendment

immunity" but not its "state sovereign immunity" by removing this case to federal court—

FamilyCare agrees that Sections 1983 and 1985 do not permit a claim for *damages* against either

OHA or Allen in his official capacity.  Indeed, the Supreme Court is clear on this point, even if

Defendants' briefing is not.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)

("We hold that neither a State nor its officials acting in their official capacities are 'persons'

under § 1983."); *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002)

(citing *Will*, 491 U.S. at 66) ("Lapides' only federal claim against the State arises under 42 U.S.C.

---

[3] Defendants note that the heading of FamilyCare's First Claim for Relief does not state whether the claim is brought against Allen in his official or individual capacity and that FamilyCare does not "allege anywhere in its claim any specific violations by Allen in his individual capacity."  *See* Mtn. to Dismiss at 11 n. 8.  However, the caption of the complaint states that FamilyCare is suing Allen in both his individual and official capacity, and contrary to Defendants' suggestion, whether a claim is made against an official in his or her official or individual capacity turns on the nature of the claim itself, not the manner in which the officer inflicts the injury.  *Hafer v. Melo*, 502 U.S. 21, 26 (1991); *see also Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1284 (9th Cir. 1994) (citations omitted) ("Where state officials are named in a complaint which seeks damages under 42 U.S.C. § 1983, it is presumed that the officials are being sued in their individual capacities.  Any other construction would be illogical where the complaint is silent as to capacity, since a claim for damages against state officials in their official capacities is plainly barred.").  Thus, FamilyCare's claim for equitable relief is necessarily directed against Allen in his official capacity, whereas its claim for damages is necessarily directed against Allen in his individual capacity.  FamilyCare acknowledges that its First Claim for Relief could have been clearer on this distinction, and if the Court desires clarification, FamilyCare will amend the First Claim for Relief accordingly.

21-  PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

§ 1983, that claim seeks only monetary damages, and we have held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted.").

Equally clear, however, is that § 1983 permits claims for equitable relief against state officials in their official capacity. *See Will*, 491 U.S. at 71, n. 10 (internal citations and quotations omitted) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' This distinction is 'commonplace in sovereign immunity doctrine,' and would not have been foreign to the 19th-century Congress that enacted § 1983."). Indeed, Defendants do not contest that FamilyCare may maintain its claim for equitable relief under § 1983. *See* Mtn. to Dismiss at 10 n. 6.[4] As such, FamilyCare's claim against Allen in his official capacity is not barred by sovereign immunity.

**2.    Qualified immunity does not bar FamilyCare's claim for damages against Allen in his individual capacity.**

As Defendants seem to acknowledge, FamilyCare's damages claim against Allen in his individual capacity may proceed unless Defendants establish that the affirmative defense of qualified immunity applies. Because FamilyCare's constitutional right not to be deprived of property without due process is clearly established, and because Oregon law recognizes FamilyCare's property interest in goodwill and actuarially sound capitation rates, Allen cannot hide behind the shield of qualified immunity.

Qualified immunity is an affirmative defense that operates "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Saucier v. Katz*, 533 U.S.

---

[4] Noting that "sovereign immunity is not a bar to prospective declaratory and injunctive relief," Defendants confirm that they are "not moving to dismiss FamilyCare's claim for declaratory relief." Mtn. to Dismiss at 10 n. 6. To be clear, FamilyCare prays not only for declaratory relief on its §§ 1983 and 1985 claims, but also for "such prospective relief as may be just and equitable, including ancillary relief." TAC at 50. Because Defendants seek only to dismiss FamilyCare's claim for damages under §§ 1983 and 1985, FamilyCare's claim for prospective equitable relief necessarily survives this motion.

22-  PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN
     OPPOSITION TO DEFENDANTS' MOTIONS TO
     DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

194, 206 (2001)*, overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  The doctrine provides that government officers may be held liable for civil damages if their actions "violate[d] 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  For a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (internal citation omitted).  Qualified immunity does not protect "the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Defendants cannot dispute that Patrick Allen knew that his conduct was unlawful.  As detailed above, after taking the helm of OHA in September 2017, Allen doubled down on the agency's illegal and improperly motivated efforts to force FamilyCare out of business.  *See supra.*  This included Allen's December 20, 2017 demand that FamilyCare decide within 24 hours to sign the 2018 rate amendment that he knew included unlawfully low rates that, if accepted, would force FamilyCare out of business.  *See id.*; *see also* TAC ¶ 72.  In doing so, Allen violated FamilyCare's clear statutory and contractual right to 60 days' advance notice of contract amendments, giving FamilyCare a mere day to make a life and death decision about the fate of the company, and, given the uncertainty of the impact of OHA's redetermination analysis, to do so without even knowing what its actual 2018 rates would be.  TAC ¶ 72.  Allen knew that FamilyCare would have no choice but to close its Medicaid business and begin dismantling the company, which is exactly what transpired.  *See id.* ¶¶ 72-77.  There is no question that Allen was "knowingly violating the law."  *Malley*, 475 U.S. at 341.

23- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Nevertheless, Defendants contend that Allen is entitled to qualified immunity because his destruction of FamilyCare's business did not deprive FamilyCare of a recognized property interest. Specifically, they claim that the law does not establish FamilyCare's property interest in its business goodwill or actuarially sound rates. Defendants are wrong on both counts.

A state official violates the due process rights guaranteed by the Fourteenth Amendment when he or she deprives someone of "a liberty or property interest protected by the constitution." *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972)). "Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips v. Washington Legal Found.*, 524 U.S. 156, 164 (1998) (quoting *Roth*, 408 U.S. at 577). Oregon law establishes FamilyCare's property interest in its business goodwill and actuarially sound capitation rates; consequently, Allen's deprivation of those interests violated FamilyCare's Fourteenth Amendment rights.

Federal courts "look to state law to determine if business goodwill is properly characterized as a property interest." *Wedges/Ledges of California, Inc. v. City of Phoenix*, *Ariz.*, 24 F.3d 56, 65 (9th Cir. 1994). Oregon courts define goodwill as the value of a business "over and above the value of its assets," including the "favor or advantage in the way of custom that a business has acquired beyond the mere value of what it sells whether due to the personality of those conducting it, the nature of its location, its reputation for skill or promptitude or any other circumstance incidental to the business and tending to make it permanent." *In re Marriage of McDuffy*, 184 Or. App. 359, 365, 56 P.3d 449 (2002) (internal citations and quotations omitted). Citing this definition, courts in this District have acknowledged that Oregon law recognizes goodwill as a property interest protected by due process. *See Westwood v. City of Hermiston*, 787 F. Supp. 2d 1174, 1197 (D. Or. 2011), *aff'd*, 496 F. App'x 728 (9th Cir. 2012) (recognizing

24- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

that goodwill is a protected property interest but concluding that plaintiff's failure to adduce evidence of goodwill value of business in question meant plaintiff failed to establish that a protectable property interest in business's goodwill); *Speed's Auto Servs. Grp., Inc. v. City of Portland, Or.*, No. 3:12-CV-738-AC, 2014 WL 2809825, at \*9 (D. Or. June 20, 2014), *aff'd sub nom. Speed's Auto Servs. Grp., Inc. v. City of Portland*, *Or.*, 685 F. App'x 629 (9th Cir. 2017) (analyzing due process claim and recognizing that Oregon law recognizes a protectable property interest in goodwill).[5]

FamilyCare plainly alleges a deprivation of its business goodwill.  The actions of Allen and his coconspirators caused FamilyCare to shutter the Medicaid operations that were at the heart of the company's business, forcing it to lay off hundreds of employees, terminate numerous agreements with contractors and providers, and transfer all of its members to other CCOs.  *See supra.*  Defendants' half-hearted suggestion that FamilyCare "alleges little more than an injury to its reputation" is without merit.  *See* Mtn. to Dismiss at 12.  FamilyCare's near-total loss of its business is a far cry from the lone case cited by Defendants, which "only involve[d] allegedly defamatory remarks . . .  that could affect Waste Management's business reputation" and thus did not "satisfy the requirement that a constitutionally protected property interest be at stake."  *See WMX Techs., Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir. 1999).  While FamilyCare's good name has no doubt been sullied by Defendants' smear campaign and other misconduct, FamilyCare is alleging much more than mere defamation and resulting reputational injury.  And as the Ninth Circuit has recognized, where defamatory statements are combined with other misconduct that impairs a company's operations, the plaintiff may state a claim for injury to goodwill.  *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1315-16 (9th Cir. 1989) (injury to property

---

[5] The Ninth Circuit affirmed *Westwood* on the ground that plaintiffs failed to establish a due process claim "because the record contains no evidence of Nookie's goodwill," indicating that where evidence of impairment of goodwill exists, a plaintiff may proceed with a due process claim under Oregon law.  *See* 496 F. App'x at 730.

25- PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

interest in goodwill adequately alleged where county officials engaged in combination of defamation and regulatory misconduct by sending notices to plaintiff's customers stating that the company's operating permit was suspended and that customers risked losing their permits if they continued business with plaintiff); *see also WMX Techs.*, 197 F.3 at 375 (distinguishing *Soranno's* on the basis that the plaintiff in *Sorrano's* alleged a "direct interference with business goodwill").    In sum, FamilyCare has adequately alleged an injury to its goodwill, a property interest protected by Oregon law.

Although the injury to FamilyCare's goodwill is alone sufficient to give rise to its § 1983 claim, Allen's conduct also deprived FamilyCare of its interest in actuarially sound capitation rates.  Defendants claim that because the Medicaid Act does not establish a privately-enforceable federal right to demand actuarially sound rates, FamilyCare has no interest in actuarially sound rates. *See* Mtn. to Dismiss at 12.  But as detailed above, the requirement that OHA set actuarially sound rates is mandated not only by the Medicaid Act, but also by Oregon state law and the parties' contract.  *See supra* Section B.1.  As such, even if federal law does not serve to create a property interest in actuarially sound rates, Oregon state law plainly does. *See Roth*, 408 U.S. at 577 (state law defines scope of constitutionally protected property interests).  Allen and his conspirators were aware of these clearly established requirements and yet chose to ignore them in formulating FamilyCare's rates, thus depriving FamilyCare of its property interest in actuarially sound rates.  This is sufficient to state a claim.

In sum, the complaint adequately alleges that Allen's conduct deprived FamilyCare of a clearly established property interest and thus is not entitled to qualified immunity from FamilyCare's §§ 1983 and 1985 claims.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be denied.

26-  PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN
     OPPOSITION TO DEFENDANTS' MOTIONS TO
     DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

DATED:  March 29, 2018                          **PERKINS COIE LLP**


                                                By: *s/ Stephen F. English*
                                                    Stephen F. English, OSB No. 730843
                                                    SEnglish@perkinscoie.com
                                                    Matthew P. Gordon, *pro hac vice*
                                                    MGordon@perkinscoie.com
                                                    Brian P. Samuelson, OSB No. 165476
                                                    BSamuelson@perkinscoie.com
                                                    Perkins Coie LLP
                                                    1120 N.W. Couch Street, 10th Floor
                                                    Portland, OR  97209-4128
                                                    Telephone:  503.727.2000
                                                    Facsimile:  503.727.2222

                                                *Attorneys for Plaintiff FamilyCare, Inc.*

27-  PLAINTIFF FAMILYCARE, INC.'S RESPONSE IN
     OPPOSITION TO DEFENDANTS' MOTIONS TO
     DISMISS