4/10/2017 1:46:17 PM
17CV09226

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MARION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>      Plaintiff,<br><br>    v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>      Defendant. | Case No. 17CV09226<br><br>DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN<br><br><br>**ORS 20.140 - State fees deferred at filing** |

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 1 of 25

# TABLE OF CONTENTS

UTCR STATEMENT ................................................................................................................ 1

MOTIONS ............................................................................................................................... 1

POINTS AND AUTHORITIES ............................................................................................... 1

    I.      INTRODUCTION ....................................................................................... 1

    II.     FACTUAL AND LEGAL BACKGROUND ................................................ 3

        A.   The Oregon Health Plan and Coordinated Care Organizations ..................................... 3

        B.   OHA's Contracts with CCOs.......................................................................................... 4

        C.   History of FamilyCare's Challenges to Rate Amendments Under its Contract With OHA ............................................................................................................................... 5

            1.   The Contract Requires Annual Rate Amendments as Well as Other Amendments Under Certain Circumstances ................................................................................... 5

            2.   In December 2014, the Contract Was Amended to Effect an Annual Rate Change for 2015 (the Original 2015 Rates) ................................................................ 5

            3.   In March 2015, FamilyCare Filed a Lawsuit Against OHA (FC I) Alleging that the Original 2015 Rates Were Not Actuarially Sound and Demanding Redeveloped, Actuarially Sound Rates for 2015 .................................................... 5

            4.   FamilyCare Then Refused to Sign an Amendment for Redeveloped 2015 Rates .... 6

            5.   In December 2015, OHA and FamilyCare Executed an Amendment of the Contract to Effect an Annual Rate Change for 2016 ........................................... 7

            6.   After Settlement Discussions Failed, OHA Issued a Notice of Breach to Initiate Administrative Contract Termination Proceedings and FamilyCare Filed a Second Lawsuit (FC II) ........................................................................... 7

            7.   The Parties then Entered Into Renewed Settlement Discussions, Which Resulted in a Settlement Agreement ......................................................................... 7

            8.   On December 30, 2016, FamilyCare and OHA Amended the Contract to Include a Rate Amendment for 2017 ...................................................................... 8

            9.   FamilyCare Then Sued OHA for a Third Time (FC III) ...................................... 9

    III.    ARGUMENT....................................................................................................... 10

        A.   FamilyCare's Claim for Specific Performance Should Be Dismissed For Failure to State a Claim Pursuant to ORCP 21 A(8)...................................................................... 10

            1.   Legal Standard for ORCP 21 A(8) Motion to Dismiss......................................... 10

            2.   To Sufficiently Plead a Claim for Specific Performance, FamilyCare Must Allege Ultimate Facts that, if True, Would Prove its Claim by Clear and Convincing Evidence ............................................................................................ 10

            3.   The Complaint Does Not Allege Ultimate Facts that, if True, Would Prove FamilyCare's Claim for Specific Performance....................................................... 11

Page i

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 2 of 25

B.    The APA Claim Should Be Dismissed for Lack of Jurisdiction Because the 2017 Rate Amendment is Not a Final Order Subject to APA Review ......................................... 15

    1.    Legal Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction .... 15

    2.    Only Final Agency Orders Are Subject to APA Review....................................... 15

    3.    The 2017 Rate Amendment is Not a Final Agency Order Because it Does Not Preclude Further Agency Action on the 2017 Rates............................................... 16

C.    The Complaint Contains Numerous Irrelevant, Frivolous, Insufficient, and Sham Allegations that Should Be Stricken Pursuant to ORCP 21 E...................................... 17

    1.    Legal Standard for an ORCP 21 E Motion to Strike ............................................ 17

    2.    FamilyCare's Complaint Pleads Several Matters that Should Be Stricken as Irrelevant, Frivolous, Insufficient or Sham Allegations ........................................ 18

D.    Alternatively, the Court Should Require FamilyCare to Make its Claims more Definite and Certain Pursuant to ORCP 21 D ................................................................................ 20

    1.    Legal Standard for ORCP 21 D Motion ................................................................ 20

    2.    FamilyCare's Claims for Relief are so Indefinite or Uncertain that the Precise Nature of Each Claim is Not Apparent.................................................................... 20

IV.    CONCLUSION.................................................................................................................... 21

Page ii

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 3 of 25

**UTCR STATEMENT**

Pursuant to UTCR 5.050, Defendant Oregon Health Authority requests oral argument and estimates 90 minutes are necessary.  Court reporting services are requested.  Pursuant to UTCR 5.010, the parties have conferred by telephone and email regarding these motions, but were unable to resolve the subject of those motions.

**MOTIONS**

Defendant Oregon Health Authority respectfully submits the following Rule 21 motions:

1.   ORCP 21 A(8) motion to dismiss the claim for specific performance (first claim for relief) for failure to state a claim upon which that relief may be granted.

2.   ORCP 21 A(1) motion to dismiss the petition for judicial review under the Oregon Administrative Procedures Act (third claim for relief) for lack of subject matter jurisdiction;

3.   ORCP 21 E motions to strike irrelevant, frivolous, insufficient, and/or sham allegations;

4.   ORCP 21 D motion to make the claim for declaratory judgment (second claim for relief) more definite and certain; and

5.   To the extent that the Court denies the motions to dismiss the claim for specific performance and APA petition for judicial review, an alternative motion for a more definite statement of those claims pursuant to ORCP 21 D.

**POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Oregon Health Authority (OHA) administers the Oregon Health Plan (OHP), the State's Medicaid program, by contracting with Coordinated Care Organizations (CCOs).  *See* ORS 414.625 (describing CCOs).  Plaintiff FamilyCare, Inc. (FamilyCare), one of 16 CCOs operating in Oregon, contracts with health care providers to provide care under the OHP.  As part of its role as administrator of the OHP, OHA establishes rates in contracts for CCO Payments,

Page 1 -   DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN
RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 4 of 25

whereby CCOs are risk-based entities that are paid a fixed amount per month for each person enrolled.

This is the third lawsuit FamilyCare has filed against OHA seeking higher rates. FamilyCare's first two lawsuits challenged its rates for 2015 (first the original 2015 rates and then the redeveloped 2015 rates). Those lawsuits were resolved with a settlement agreement in which FamilyCare released its claims relating to the 2015 rates in exchange for a credit to be applied against FamilyCare's obligation to pay back excess funds OHA had overpaid FamilyCare because the original 2015 rates were too high and an increase in FamilyCare's rates for 2016.

Alleging that their rates are once again too low, FamilyCare brings this action to force OHA to raise its rates for 2017. The crux of the complaint is that FamilyCare's rates for 2017 violate a term in the settlement agreement providing that OHA would not use the settlement credit or the 2016 rates as a basis for limiting future rates. The complaint alleges three claims for relief: (1) a claim for specific performance to enforce that settlement term; (2) a claim for declaratory judgment regarding the parties rights under that settlement term; and (3) a petition for judicial review under Oregon's Administrative Procedures Act (APA) of the rate amendment for 2017 that FamilyCare and OHA executed on December 30, 2016 (the 2017 Rate Amendment).

As explained below, FamilyCare's claim for specific performance should be dismissed for failure to state a claim upon which the requested relief can be granted because FamilyCare does not allege ultimate facts sufficient to allege a breach of the settlement agreement, let alone facts to entitle it to specific performance. FamilyCare's APA claim should be dismissed for lack of jurisdiction as the 2017 Rate Amendment is not a "final order." In addition, numerous allegations in FamilyCare's complaint are either irrelevant, frivolous, or a sham, and should be stricken. OHA also respectfully asks that this Court require FamilyCare to make its claims more definite and certain so that OHA may fairly respond to them.

Page 2 -   DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO
MAKE MORE DEFINITE AND CERTAIN
RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 5 of 25

## II.    FACTUAL AND LEGAL BACKGROUND[1]

### A.    The Oregon Health Plan and Coordinated Care Organizations.

Medicaid is a national medical insurance program for the poor, which is jointly financed by state and federal government.  The OHP is Oregon's Medicaid program.  The OHP operates pursuant to federal approval as a demonstration project under Section 1115 of the Social Security Act (SSA), 42 U.S.C. § 1315.  Section 1115 gives the Centers for Medicare & Medicaid Services (CMS) authority to approve pilot or demonstration projects that give states additional flexibility to design and improve their Medicaid programs, including by using innovative service delivery systems.  Section 1115 demonstration projects are generally subject to all requirements set forth in Medicaid laws, except as expressly waived or referenced as not applicable.  *See* 42 U.S.C. § 1315(a)(1).

In 2012, CMS approved an amendment to the OHP under which the State shifted the delivery of care from managed care entities to coordinated care organizations (CCOs).[2]  CCOs are defined as community-based comprehensive managed care organizations which operate under a risk contract with the State.[3]

OHA is responsible for administering the OHP under federal and state law, including contracts with CCOs.[4]  Since September 2012, a total of 16 CCOs have entered into contracts with OHA.[5]  FamilyCare is one of those CCOs.[6]  In exchange for the services they provide,

---

[1]Facts included in this motion that are outside those pleaded in the complaint and its exhibits are included only for purposes of OHA's motion to dismiss the APA claim for lack of subject matter jurisdiction.  *See Black v. Arizala*, 337 Or 250, 265 (2004) (courts may consider facts drawn both from the complaint and "matters outside the pleading, including affidavits, declarations and other evidence" in resolving motions to dismiss for lack of subject matter jurisdiction); *Munson v. Valley Energy Inv. Fund*, U.S., LP, 264 Or App 679, 694 (2014) (accord).

[2] Compl. ¶ 9.

[3] *Id*. ¶¶ 3 & 10.

[4] Compl., Exh. 2 at pp. 1 & 3; Declaration of Katherine Cereghino in Support of Motion to Dismiss Third Claim for Relief for Lack of Jurisdiction (Cereghino Decl.) ¶ 2.

[5] Compl. ¶¶ 9-10

[6] *Id*. ¶¶ 3 & 10.

Page 3 -    DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 6 of 25

FamilyCare and other CCOs receive risk-based, actuarially sound capitation payments established by OHA.[7]

**B.    OHA's Contracts with CCOs.**

In order for federal funds to be made available: (1) state payments to managed care entities like CCOs must be made pursuant to contracts approved by CMS; and (2) those contracts may include only rates that are "actuarially sound."  42 C.F.R. § 438.6.[8]  Thus, in contracting with CCOs, Oregon must meet the requirements of 42 C.F.R. Part 438, which are the rules governing the provision of Medicaid services through managed care organizations (MCOs), "unless a requirement of part 438 has been identified in the waiver authorities for this demonstration."

Pursuant to 42 C.F.R. § 438.806, CMS must review and approve all CCO contracts. Federal financial participation (FFP) is not available to the State for a CCO contract that does not have approval from CMS.  42 C.F.R. § 438.806(c); *see also* 42 U.S.C. § 1396b(m)(2)(A)(iii) (providing that "no payment shall be made . . . to a State . . . [for managed care services unless] . . . such services are provided . . . in accordance with a contract" approved by CMS). Part of CMS' review of a contract includes determining whether the rates set forth in the contract satisfy the federal actuarial soundness requirement.[9]

---

[7] Compl. ¶¶ 8 &10 & Exh. 2 at p.3.

[8] Under the CMS rules, actuarially sound capitation rates mean rates that:

"(A)    Have been developed in accordance with generally accepted actuarial principles and practices;

(B)    Are appropriate for the populations to be covered, and the services to be furnished under the contract; and

(C)    Have been certified, as meeting the requirements of this paragraph (c), by actuaries who meet the qualification standards established by the American Academy of Actuaries and follow the practice standards established by the Actuarial Standards Board."

42 C.F.R. 438.6(c)(1)(i).

[9] Compl., Exh. 2 at p. 3.

Page 4 -    DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 7 of 25

**C.    History of FamilyCare's Challenges to Rate Amendments Under its Contract With OHA.**

**1.    The Contract Requires Annual Rate Amendments as Well as Other Amendments Under Certain Circumstances.**

OHA and FamilyCare are parties to a five-year Coordinated Care Organization Contract #143114, as amended and restated at various times (the Contract).[10]  In consideration for FamilyCare's provision of services, OHA agrees to pay FamilyCare a monthly capitation rate for each OHP member enrolled under the Contract.[11]  These rates change as the Contract is amended in the ordinary course each year.[12]  In addition to the planned, annual amendments of rates, the Contract requires amendments in other circumstances.  For example, amendments are required when necessary to conform to federal statutes and regulations.[13]

**2.    In December 2014, the Contract Was Amended to Effect an Annual Rate Change for 2015 (the Original 2015 Rates).**

In December 2014, OHA presented FamilyCare and the other CCOs with an annual amendment that established rate changes for 2015.[14]  FamilyCare executed this amendment but noted it did so under "duress."[15]

**3.    In March 2015, FamilyCare Filed a Lawsuit Against OHA (FC I) Alleging that the Original 2015 Rates Were Not Actuarially Sound and Demanding Redeveloped, Actuarially Sound Rates for 2015.**

In May 2015, FamilyCare filed a lawsuit against OHA in *FamilyCare, Inc. v. Oregon Health Authority,* Marion County Circuit Court Case No. 15CV13782 (FC I).[16]  Among other

---

[10] *See* Compl., Exh. 2 at p.1; ORS 414.652(1)(a) (providing that OHA's contracts with CCOs shall be for a term of five years); Cereghino Decl. ¶ 3 & Exh. 1.

[11] Compl. ¶ 10.

[12] Cereghino Decl. ¶ 4.

[13] Compl., Exh. 2 at p.2;  Cereghino Decl. ¶ 4 & Exh. 1 at p. 10.

[14] Compl., ¶ 22 & Exh. 2 at p. 1.

[15] Compl. ¶ 22

[16] *Id*., Exh. 2 at pp. 1-2.

Page 5 -    DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN
RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 8 of 25

claims, the complaint in FC I alleged a breach of contract claim on the ground that the 2015 Rates were not actuarially sound and sought relief requiring OHA to redevelop those rates and amend them retroactively to January 1, 2015 based on Section VI, D of the Contract.[17]

### 4. FamilyCare Then Refused to Sign an Amendment for Redeveloped 2015 Rates.

To obtain CMS approval and comply with federal law, OHA redeveloped the 2015 Rates and presented all 16 CCOs with contract amendments in August 2015 incorporating redeveloped rates for 2015 (the Redeveloped 2015 Rates), retroactive to January 1, 2015.[18] The 15 other CCOs executed an amendment incorporating their Redeveloped 2015 Rates.[19] FamilyCare refused to sign the amendment.[20] CMS approved the executed amendments incorporating the Redeveloped 2015 Rates, finding that they were actuarially sound.[21] CMS further indicated that it would have been able to approve FamilyCare's redeveloped rates once FamilyCare signed an amendment that included capitation rates for 2015 that were consistent with the approved rate ranges included in the August 2015 actuarial certification.[22] The amendment presented to FamilyCare by OHA, had it been signed by FamilyCare, would have met that requirement for CMS approval.[23]

---

[17] Compl. Exh. 2 at p.1; Declaration of Carla Scott in Support of Motion to Dismiss Third Claim for Relief for Lack of Jurisdiction (Scott Decl.), Exh. 1 (FC I Compl. ¶¶ 19-22, 26-27 demanding that OHA redevelop the original 2015 Rates, and "provide FamilyCare with an amendment to the 2015 contract containing those new rates and applying them retroactively to January 1, 2015")).

[18] Compl., Exh. 2 at p. 2; Scott Decl., Exh. 2 at ¶ 7.

[19] Scott Decl., Exh. 2 at ¶ 7.

[20] Compl., Exh. 2 at p. 2.

[21] *Id.*; Scott Decl., Exh. 2 at ¶ 8.

[22] Compl., Exh. 2 at p. 2; Scott Decl., Exh. 2 at ¶ 8.

[23] Scott Decl., Exh. 2 at ¶ 8.

Page 6 -  DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 9 of 25

**5.    In December 2015, OHA and FamilyCare Executed an Amendment of the Contract to Effect an Annual Rate Change for 2016.**

Notwithstanding the parties' impasse over the amendment implementing the Redeveloped 2015 Rates, at the end of 2015, OHA presented FamilyCare with an amendment for an annual rate change for 2016.  FamilyCare signed that amendment without reservation, but CMS would not approve it because FamilyCare still had not executed the amendment regarding the Redeveloped 2015 Rates.[24]

**6.    After Settlement Discussions Failed, OHA Issued a Notice of Breach to Initiate Administrative Contract Termination Proceedings and FamilyCare Filed a Second Lawsuit (FC II).**

When OHA and FamilyCare were unable to resolve their dispute regarding the Redeveloped 2015 Rates in settlement discussions, OHA notified FamilyCare that it was in breach of the Contract for refusing to sign the amendment to accept the Redeveloped 2015 Rates.[25]  FamilyCare responded by filing a second lawsuit for declaratory relief regarding OHA's right to terminate the Contract in *FamilyCare, Inc. v. Oregon Health Authority,* Marion County Circuit Court Case No. 16CV10253 (FC II), and obtained a temporary restraining order enjoining OHA only from terminating the Contract until the court could resolve FamilyCare's motion for a preliminary injunction and OHA's motion to dismiss.[26]

**7.    The Parties then Entered Into Renewed Settlement Discussions, Which Resulted in a Settlement Agreement.**

Renewed settlement discussions regarding the Original and Redeveloped 2015 Rates at issue in FC I and II ultimately resulted in a settlement agreement dated May 22, 2016 (the Settlement Agreement).[27]

---

[24] Compl. Exh. 2 at p. 2; Scott Decl., Exh. 2 at ¶ 8.

[25] Compl., Exh. 2 at p. 2.

[26] *Id.* ¶ 28 & Exh. 2 at p. 3.

[27] *Id.* ¶ 29 & Exh. 2 at p. 4.

Page 7 -    DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 10 of 25

In the Settlement Agreement, the parties acknowledge, among other things, that "OHA has the authority to set the CCO rates under which OHA contracts with CCOs, subject to CMS approval" and that "OHA is not obligated to adjust the rates paid to any CCO to ensure that such rates cover all costs that a CCO has incurred during a rate year."[28]

Among other things, the Settlement Agreement provides as follows:

- FamilyCare would sign the amendment regarding the Redeveloped 2015 Rates in exchange for a settlement credit of $24,800,000 (because the Redeveloped 2015 Rates were $54,485,814 less than the amount OHA paid FamilyCare in 2015, the difference resulted in an overpayment, which was resolved by the settlement credit);[29]

- OHA would execute and deliver an amendment to increase the 2016 rates (estimated to be an increase of approximately $2,726,662) under the Contract for the Affordable Care Act (ACA) population;[30] and

- "Other than application of the terms of the Section 1115 Demonstration Project to aggregate state expenditures, OHA shall not use rates paid to FamilyCare for 2016 or the Settlement Credit as a basis for limiting the amount that can be paid to FamilyCare in future rate years."[31]

**8.      On December 30, 2016, FamilyCare and OHA Amended the Contract to Include a Rate Amendment for 2017.**

On November 1, 2016, OHA sent FamilyCare an annual rate amendment for 2017 (the 2017 Rate Amendment).[32]  Before FamilyCare executed the 2017 Rate Amendment on

---

[28] Compl., Exh. 2 at p. 4.

[29] *Id.* ¶ 30 & Exh. 2 at p. 4.

[30] *Id.*, Exh. 2 at p. 4

[31] *Id.* ¶ 31 & Exh. 2 at p. 6.

[32] *Id.* ¶ 34.

Page 8 -   DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 11 of 25

December 30, 2016,[33] OHA and FamilyCare entered into a Dispute Resolution Agreement regarding the 2017 rates.[34] The protocol for the Dispute Resolution Agreement provided that FamilyCare would sign the 2017 Rate Amendment before December 31, 2016, but that by so signing, FamilyCare will not waive any rights to contest—or any grounds for contesting—the 2017 rates."[35]

### 9.    FamilyCare Then Sued OHA for a Third Time (FC III).

On February 27, 2017, FamilyCare filed the complaint in this case (FC III). The complaint alleges three claims for relief: (1) specific performance of the Settlement Agreement's prohibition on using the settlement credit or the 2016 rates as a basis for limiting the amount that can be paid to FamilyCare in future rate years; (2) declaratory judgment regarding that term in the Settlement Agreement; and (3) a petition for judicial review under the APA of the 2017 Rate Amendment.

FamilyCare's primary basis for all of its claims for relief is a vague, conclusory allegation that the 2017 Rate Amendment is somehow an impermissible "clawback" of money covered by the Settlement agreement. All three claims seek the same relief: an order from this Court preventing OHA from what FamilyCare calls "clawing back" that money by way of the 2017 Rate Amendment.

---

[33] Cereghino Decl., Exh. 1. FamilyCare alleges that the 2017 Rate Amendment is a "final order" subject to APA review. As explained below on pages 15-17, it is not.

[34] Compl. ¶ 38.

[35] *Id.*

Page 9 -    DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 12 of 25

## III.    ARGUMENT

### A.    FamilyCare's Claim for Specific Performance Should Be Dismissed For Failure to State a Claim Pursuant to ORCP 21 A(8).

#### 1.    Legal Standard for ORCP 21 A(8) Motion to Dismiss.

When analyzing a motion to dismiss under ORCP 21 A(8), the court accepts all well-pleaded allegations in the complaint as true and gives the nonmoving party the benefit of all favorable inferences that may be reasonably drawn from the facts alleged. *Scovill v. City of Astoria*, 324 Or 159, 164 (1996). To survive a motion to dismiss for failure to state facts constituting a claim for relief, a complaint must include an allegation of material fact regarding every element of the claim. *See Suess Builders Co. v. City of Beaverton*, 294 Or 254, 264 (1982). The court may accept as true all well-pleaded factual allegations, but it should ignore legal conclusions. *Huang v. Claussen*, 147 Or App 330, 332 (1997).

#### 2.    To Sufficiently Plead a Claim for Specific Performance, FamilyCare Must Allege Ultimate Facts that, if True, Would Prove its Claim by Clear and Convincing Evidence.

A party seeking specific performance must prove its claim by clear and convincing evidence. *Murray v. Laugsand*, 179 Or App 291, 294 (2002). To plead its claim for specific performance, FamilyCare must, therefore, plead ultimate facts that show it is entitled to specific performance by clear and convincing evidence.

Specific performance is not available when an award of damages would adequately compensate the injured party. *Wagner v. Savage, as Adm'r*, 195 Or 128, 149–150 (1952), *overruled on other grounds by Dean v. Exotic Veneers, Inc.,* 271 Or 188, 200, (1975). Specific performance is appropriate only when obtaining a suitable substitute for the promised performance, through damages, would be difficult or impossible. *Alsea Veneer, Inc. v. State of Oregon*, 318 Or 33, 43 (1993). In addition, if a contract is subject to two contradictory readings concerning a material term, courts should not order specific performance. *Tallman v. Floren*, 53 Or App 65, 70 (1981). Finally, a court should not award specific performance when the term

Page 10 -    DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 13 of 25

to be enforced is not capable of or does not lend itself to judicial supervision.  *See McDonough v. S. Or. Min. Co.*, 177 Or 136 (1945) (the difficulties of supervision of specific performance gravitate against granting it).

### 3.    The Complaint Does Not Allege Ultimate Facts that, if True, Would Prove FamilyCare's Claim for Specific Performance.

Taking the well-pleaded factual allegations in the complaint as true, they do not allege a breach of the Settlement Agreement that would give rise to any right of specific performance.

The complaint alleges that OHA breached the provision in the Settlement Agreement providing that "[o]ther than application of the terms of the Section 1115 Demonstration Project to aggregate state expenditures, OHA shall not use rates paid to FamilyCare for 2016 or the Settlement Credit as a basis for limiting the amount that can be paid to FamilyCare in future rate years."[36]  As best OHA can discern, the material allegations in support of FamilyCare's claim that OHA breached this settlement term[37] are as follows:

- In October 2016, "OHA released the 2017 capitation rates for Oregon's CCOs.  In connection with this release, OHA made available the CCO Rate Development Actuarial Certification (the 'Certification') that was prepared by OHA's outside actuarial firm, Optumas."  Compl. ¶ 33 (attaching the Certification as Exhibit 3).

- "The Certification states that 'OHA asked Optumas to explore the drivers for CCOs that experienced significant [cost] increases.'"  *Id.*

---

[36] Compl. ¶ 54.

[37] Within its claim for specific performance, FamilyCare also alleges that its 2017 rates are not actuarially sound and that the rates somehow violate an Oregon law prohibiting retroactive rate amendments in certain circumstances.  *See* Compl. ¶¶ 53, 56-58.  Those allegations need not be addressed here, because even if true (and they are not), these allegations provide no basis to conclude that OHA breached the Settlement Agreement by using either the settlement credit or the 2016 rates to limit the 2017 rates.

Page 11 -  DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 14 of 25

- "OHA then used the information gathered by Optumas to target FamilyCare for the Clawback and/or to cap FamilyCare's 2017 rates for primary care services at an amount below FamilyCare's reimbursement rate."  *Id*. at ¶ 55.

- "OHA represented to FamilyCare that it had made a *policy* decision to reduce OHA's payments to FamilyCare because of the amount that FamilyCare pays to primary care providers for preventative care services.  OHA represented to FamilyCare that it had made a *policy* decision to limit the increase of primary payments to 1.5% per year." *Id.* at ¶ 48 (emphasis added).

- "OHA proposes to reduce FamilyCare's payments by at least $34 million in 2017 (the "Clawback") because, according to OHA, FamilyCare has paid and continues to pay too much to primary care providers to deliver preventative care services to Oregon's Medicaid-eligible population.  In addition the Clawback will affect bonus payments that are due to certain primary care providers who achieve quality incentive metrics in 2017." *Id.* at ¶ 52.

- "The Clawback is an attempt to penalize FamilyCare for the rates it received from OHA in 2016 and/or for the Settlement Credit that FamilyCare received pursuant to the Agreement." *Id.* at ¶ 54.

These allegations are conclusory, not well-pleaded, and are insufficient to establish to establish either that OHA has breached the settlement term regarding use of the settlement credit or 2016 rates to limit future rates or that FamilyCare has sufficiently pleaded other facts to meet its burden to entitle it to specific performance to enforce that term.

Nothing in the complaint or its exhibits supports a conclusion that FamilyCare's 2017 rates were based in any way on the settlement credit or FamilyCare's 2016 rates.  Rather, the complaint and its exhibits show that these allegations lack any basis.  The Certification explains in detail how FamilyCare's 2017 rates were calculated.  In summary, the state is divided into regions; within each region, members are divided into cohorts (cohorts are populations or

Page 12 -  DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO
        MAKE MORE DEFINITE AND CERTAIN
        RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 15 of 25

specific groups of members, *e.g.* Children in Adoptive, Substitute, or Foster Care or Poverty Level Medical Female Adults).[38] Each cohort in each region is assigned a regional cohort rate and each CCO is assigned a CCO specific risk score intended to reflect the CCO's specific risk factors for each cohort.[39] To determine the CCO's specific rate for each cohort, the CCO's risk score for each cohort is applied to the commensurate regional cohort rate (if the CCOs in the region all had the same risk score, they would have the same rates).[40]

The Certification details the data and other information that was used to develop FamilyCare's 2017 rates.[41] The rates were developed based on encounter data (i.e. paid claims) and other expenditures from 2014 and 2015 (data provided by both OHA and the CCO), 2015 membership eligibility information, and 2015 and 2016 (January through June) pharmacy information (used to discern trends). Rates from prior years were not used in the rate setting. Therefore, neither the 2016 rates nor the settlement credit adjusting the 2015 rates played any role in setting the 2017 rates.[42]

FamilyCare makes various allegations about Optumas' evaluation of drivers of increased costs and the resulting policy decision to reduce or disallow some costs claimed by some CCOs. Those allegations in no way prove FamilyCare's claim that OHA violated the Settlement Agreement. Indeed, the Certification, upon which the complaint relies, directly refutes any link between these allegations and FamilyCare's claim that OHA used either the settlement credit or the 2016 rates to somehow limit its 2017 rates.

The Certification describes OHA's policy to mitigate unsustainable cost increases as follows:

---

[38] *See* Compl., Exh. 3 at pp. 7-12.

[39] *Id.* at pp. 7- 12, 25-27.

[40] *Id.* at pp. 7-12, 25-27, 46-59.

[41] *Id.* at pp. 10-11.

[42] *Id.* at pp. 14 & 150.

Page 13 -  DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 16 of 25

- "As part of this rate development process, Optumas and OHA reviewed the CCO 2015 financial information submitted by CCOs and created the regional base data, which is the basis for the 2017 rates."
- "OHA adopted a rate development policy to mitigate the high rate of growth from 2014 to 2015. . . . Without action, the State of Oregon would be in jeopardy of not achieving the 3.4% sustainable rate of growth agreed upon with CMS."
- The policy is geared to contain "costs across a CCO's budget, no matter the reimbursement method or reimbursement level."
- Notes that "these rate adjustments do not result in a CCO-specific rate increase or decrease, due to the regional rate methodology."
- Summarizes that "the base data was not adjusted to attain a sustainable rate of growth, but was evaluated to reveal drivers of growth that are both unsustainable and significantly above national trends and Oregon's sustainable rate of growth of 3.4%."

Compl., Exh. 3 at pp. 150-52.

The evaluation and resulting policy is focused entirely on prior years' (2014 and 2015) costs and the sustainability of those costs and related trends going forward. Put simply, the Certification makes clear that the 2017 rates were based on *cost data* from 2014 and 2015, *not* the settlement credit or the 2016 rates. FamilyCare has not sufficiently alleged any factual basis to conclude otherwise.

In addition, the complaint fails to satisfy FamilyCare's high burden of establishing by clear and convincing evidence that it is entitled to specific performance even if the complaint sufficiently alleged a breach of the settlement agreement. First, FamilyCare has not established that monetary damages would be inadequate (for example, FamilyCare accepted monetary relief under the Settlement Agreement to resolve its claims in FC I & II that the Original and Redeveloped 2015 Rates were not actuarially sound).[43] Moreover, the settlement provision

---

[43] Compl., Exh. 2.

Page 14 -  DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 17 of 25

FamilyCare seeks to enforce via specific performance does not lend itself to judicial supervision. Indeed, the relief FamilyCare requests would put this Court in the untenable position of establishing rate-setting policy reserved to OHA under federal and state law.[44]

**B.      The APA Claim Should Be Dismissed for Lack of Jurisdiction Because the 2017 Rate Amendment is Not a Final Order Subject to APA Review.**

**1.      Legal Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction.**

ORCP 21A(1) provides for dismissal of a complaint for lack of subject matter jurisdiction.  In ruling on a motion to dismiss for lack of subject matter jurisdiction, this Court may consider facts drawn both from the complaint and "matters outside the pleading, including affidavits, declarations and other evidence."  *Black v. Arizala*, 337 Or 250, 265 (2004); *Munson v. Valley Energy Inv. Fund, U.S., LP*, 264 Or App 679, 694 (2014).

**2.      Only Final Agency Orders Are Subject to APA Review.**

"Jurisdiction for judicial review of orders in other than a contested case is proper when, among other things, a party files a petition for review within 60 days of a 'final order.' ORS 183.480 and ORS 183.484(2)."  *Inbound, LLC v. Dep't of* Forestry, 241 Or App 619, 626-27 (2011).  A "final order" is defined as follows:

> "Final order" means final agency action expressed in writing. "Final order" does not include any tentative or preliminary agency declaration or statement that:
>
> (A)      Precedes final agency action; or
>
> (B)      Does not preclude further agency consideration of the subject matter of the statement or declaration.

---

[44] *See* Compl., Exh. 2 at p.2.  Indeed, as noted in the Certification, a new CMS Rule "gives states discretion to set minimum and maximum reimbursement levels that are reasonable to attain access to services, and gives states additional flexibility to determine which services and models are appropriate for value-based purchasing.  This new guidance supports OHA's ability to conduct reimbursement analyses and develop policy related to business models that affect reimbursement and incentives."  Compl., Exh. 3 at p. 152 (citing 42 C.F.R. § 438.4(b)(3)).

Page 15 -  DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 18 of 25

ORS 183.310(6)(b).  As the Oregon Court of Appeals has consistently explained, a "final order"

*must preclude further agency action* on the issue raised in a petition for judicial review:

> [A] final order expresses final agency action and is in writing. A final order is neither tentative nor preliminary but is the complete statement of the agency's decision on the matter before it. ORS 183.310(6)(b)(A) and (B) describe characteristics that indicate that a written order is tentative or preliminary and thus is not a final order.  [U]nder the statutory definition, an order is not final if it *either precedes final agency action or does not preclude further agency consideration of the subject matter of the agency statement.*

*Inbound LLC*, 241 Or App at 627 (emphasis added).

**3.    The 2017 Rate Amendment is Not a Final Agency Order Because it Does Not Preclude Further Agency Action on the 2017 Rates.**

As between OHA and FamilyCare, the bi-lateral 2017 Rate Amendment is not a "final order" under the APA.  First, as illustrated by the very recent history of prior disputes between FamilyCare and OHA over rate amendments summarized above at pages 6-9, the 2017 Rate Amendment may be amended for a variety of reasons.  For example, both the 2015 Rate Amendment and the 2016 Rate Amendment were amended by the Settlement Agreement.  The bi-lateral 2017 Rate Amendment it is not by itself a final administrative decision vis-à-vis FamilyCare.[45]  Second, the 2017 Rate Amendment contemplates further agency action, such as implementation of its terms and amendments as may be necessary to conform to federal law.  Third, either party may challenge the 2017 Rate Amendment via a breach of contract claim, as

---

[45]Aside from the contents of a contract not amounting to a final order as between the contracting parties, the execution of a contract may in some circumstances signal a final agency decision (such as to award the contract to a particular bidder or proposer, for example) that could trigger the commencement of the 60-day period for instituting judicial review of a "final order in other than a contested case" under ORS 183.484(2).  This has occurred in cases involving challenges to certain contract awards brought by disappointed challengers who believed that they should have received the contract instead.  *See, e.g., Inbound,* 241 Or App at 627-30*; Lake Cty. v. State,* 142 Or. App. 162, 165 (1996).  In other words, if the *effect* of a contract's signing adversely affects another's interest in obtaining the contract with finality, then courts might regard the execution of the contract as a final order.

Page 16 -  DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 19 of 25

FamilyCare did in FC I regarding the Original 2015 Rates.[46]  For all of these reasons, FamilyCare's APA claim should be dismissed for lack of jurisdiction.

**C.    The Complaint Contains Numerous Irrelevant, Frivolous, Insufficient, and Sham Allegations that Should Be Stricken Pursuant to ORCP 21 E.**

**1.    Legal Standard for an ORCP 21 E Motion to Strike.**

ORCP 21 E provides several grounds on which courts may strike any part of a pleading. Frivolous, sham, or irrelevant pleadings may be stricken under ORCP 21 E(1) and insufficient pleadings may be stricken under ORCP 21 E(2).  *See, e.g., Kashmir Corp. v. Nelson,* 37 Or App 887, 892 (1978) (proper to strike a pleading as sham "when its allegations appear false on the face of the pleading" and proper to strike as frivolous when pleading "does not raise any issue in the proceeding") (quoting *Randall v. Simmons*, 40 Or 554, 67 P 513 (1902) and *Andrysek v. Andrysek*, 280 Or 61, 69, n. 8 (1977)); *see also In re Marriage of Ross*, 240 Or App  435, 440, ("[a] sham plea is one good in form but false in fact; it is a pretense because it is not pleaded in good faith. . . . A frivolous pleaded is one which, although true in its allegations, is totally insufficient in substance") (internal quotations omitted); *Lane v. Maass*, 309 Or 671, 675, 790 P 2d 1137 (1990) (discussing the overlap between ORCP 21 E and ORCP 21 A and stating that "[a] legally insufficient allegation . . . is, in effect, a nullity, and may be stricken as either frivolous or irrelevant" under ORCP 21 E) (internal quotations omitted).  Motions to strike pursuant to ORCP 21 E may be used to raise challenges similar to those raised by a motion to dismiss for failure to state a claim pursuant to ORCP 21 A.  *See Masse v. Department of Revenue*, 18 Or. Tax 100, 104, 2004 WL 2978290, *2 (Or.Tax Div. 2004) (citing, among other cases, *Lane v. Maas*, 309 Or at 675).

---

[46] Indeed, FamilyCare's first lawsuit against OHA alleged breach of the 2015 Contract on the ground that the 2015 rates were not actuarially sound.  *See* page 6 above.

Page 17 -  DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 20 of 25

**2.     FamilyCare's Complaint Pleads Several Matters that Should Be Stricken as Irrelevant, Frivolous, Insufficient or Sham Allegations.**

The following irrelevant, frivolous, insufficient or sham allegations should be stricken now so that they do not become a time-consuming distraction in this case.  Pursuant to UTCR 5.020(2), a copy of the complaint with the allegations subject to this motion noted in parentheses is attached to this motion.

| Allegation | Grounds for Motion to Strike | Ruling |
|---|---|---|
| The complaint is fraught with allegations of OHA's intent and/or desire to "single out" or "target" FamilyCare to put it out of business.  *See* Compl. ¶¶ 13, 55, 61 and Heading II. | These allegations should be stricken because they are irrelevant, frivolous, and insufficient.  None of FamilyCare's claims for relief involve or in any way relate to OHA's mental state.  Whether or not OHA desires to have fewer CCOs or to put FamilyCare out of business is entirely irrelevant to the alleged claims for relief.  Nor has the complaint properly pleaded any actionable claim based on the allegations of OHA's intent or motive. | Granted _____<br><br>Denied _____ |
| The complaint includes numerous allegations regarding past and present public records requests that FamilyCare has made to OHA and OHA's responses to those requests.  These allegations also refer to and attach as an exhibit a letter from CMS regarding how that agency has handled trade secrets in response to a Freedom of Information Act (FOIA) request in an unrelated matter.  Compl. ¶¶ 21, 23-24, 35-36, Heading IV, Exh. 1 (letter from OHA to FamilyCare's former counsel regarding public records requests) & Exh. 4 (letter from CMS regarding disclosure in response to a FOIA request in an unrelated matter). | FamilyCare's public records requests and discovery requests in a prior case are not at issue in this case.  FamilyCare does not allege that it petitioned for Attorney General review of OHA's decisions on its public records requests under the Public Records law, nor does FamilyCare allege it ever moved to compel responses to any discovery requests in prior cases.  This is not a public records case, and the allegations regarding public records requests cannot give rise to any possible claim for relief in this forum at this time.  Allegations regarding these requests and OHA's responses to them are irrelevant to any well-pleaded claim for relief here and should be stricken as irrelevant and insufficient.  For the same reasons, FamilyCare's reference to how CMS handled a FOIA request in an unrelated matter should also be stricken. | Granted _____<br><br>Denied _____ |

Page 18 -   DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 21 of 25

| Allegation | Grounds for Motion to Strike | Ruling |
|---|---|---|
| "OHA baited FamilyCare into signing and executing an incomplete 2017 Agreement on December 30, 2016, with an empty promise that OHA would provide FamilyCare with the data it had been requesting for months. . . OHA withheld certain attachments to FamilyCare's contract amendment for 2017 so that FamilyCare will be forced to sign the contract amendment without having a meaningful opportunity to negotiate contract terms." Compl. ¶ 59 and Heading V. | This allegation is not supported by evidence, but is rather demonstrably false, has been included to harass, delay or increase the cost of litigation,[47] is misleading, not to mention frivolous and irrelevant to any of FamilyCare's claims for relief.  FamilyCare does not allege that the 2017 Rate Amendment is void or voidable based on these allegations. | Granted _____  Denied _____ |
| "While simultaneously requiring FamilyCare to sign the incomplete 2017 Amendment, OHA entered into a Dispute Resolution Agreement" Compl. ¶ 37-39. | This allegation should be stricken for the same reasons set forth above. | Granted _____  Denied _____ |
| All allegations regarding the parties December 30, 2016 Dispute Resolution Agreement and of OHA's "flagrant" disregard of what it required. Compl. ¶¶ 40-45. | The December 30, 2016 Dispute Resolution Agreement is also not relevant to any claim for relief in this case.  FamilyCare has not alleged any claim for relief for breach of the Dispute Resolution Agreement, nor could it in good faith do so.  These allegation should be stricken as irrelevant and insufficient. | Granted _____  Denied _____ |

[47] Counsel for OHA has informed counsel for FamilyCare that OHA intends to seek sanctions pursuant to ORCP 17 in the event these allegations are not removed from the complaint.

Page 19 -  DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 22 of 25

| Allegation | Grounds for Motion to Strike | Ruling |
|---|---|---|
| Allegation of "empty promise" OHA made to issue 2017 Rate Amendment concurrently with the rates.  Compl. ¶ 34. (FamilyCare alleges that OHA issued the 2017 rates on 10/11/16 but did not circulate the contract amendment (the 2017 Rate Amendment) until 11/1/16. Compl. ¶ 33). | This allegation is also not relevant to any claim for relief and is insufficient to form a basis for any claim for relief and should, therefore, be stricken. | Granted _____ <br> Denied _____ |

**D.  Alternatively, the Court Should Require FamilyCare to Make its Claims more Definite and Certain Pursuant to ORCP 21 D.**

**1.  Legal Standard for ORCP 21 D Motion.**

ORCP 21 D authorizes this Court to "require the pleading to be made definite and certain by amendment when the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge, defense, or reply is not apparent."

**2.  FamilyCare's Claims for Relief are so Indefinite or Uncertain that the Precise Nature of Each Claim is Not Apparent.**

For the same reasons stated above, OHA is unable to discern the basis for FamilyCare's claim that the 2017 Rate Amendment is somehow an impermissible "clawback" of the settlement credit or the 2016 rates.  Accordingly, OHA respectfully asks that this Court to order FamilyCare to make its claim for declaratory judgment more definite and certain, and to require the same of FamilyCare's specific performance and APA claims to the extent that they survive OHA's motions to dismiss.

Similarly, to the extent any of the allegations OHA has moved to strike survive, OHA ask that the FamilyCare be required to make the allegations more definite and certain so that OHA can understand the relevant of those allegations as relates to any surviving claims.

Pursuant to UTCR 5.020(2), a copy of the complaint with the allegations subject to this motion underlined is attached to this motion.

Page 20 -  DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN

RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 23 of 25

**IV.    CONCLUSION**

For the reasons set forth above, OHA respectfully asks that this Court:

(1)    Dismiss FamilyCare's claim for specific performance for failure to state a claim upon which the requested relief can be granted.

(2)    Dismiss FamilyCare's APA claim for lack of jurisdiction as the 2017 Rate Amendment is not a "final order."

(3)    Require FamilyCare to make its claim for declaratory judgment more definite and certain so that OHA may fairly respond to it, and require the same for FamilyCare's specific performance claim and APA claim to the extent those claims survive the motions to dismiss.

(4)    Strike allegations in FamilyCare's complaint that are irrelevant, frivolous, or a sham.

DATED April _10_, 2017.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

_____s/ Carla A. Scott_____
RENEE STINEMAN #994610
Attorney-in-Charge
CARLA A. SCOTT #054725
Senior Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880/Fax (971) 673-5000
Renee.Stineman@doj.state.or.us
Carla.A.Scott@doj.state.or.us
Of Attorneys for Plaintiff

Page 21 -   DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO
MAKE MORE DEFINITE AND CERTAIN
RS7/rh2/8084036-v4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 24 of 25

**CERTIFICATE OF SERVICE**

I certify that on April  10 , 2017, I served the foregoing DEFENDANT'S MOTIONS TO DISMISS, MOTION TO STRIKE, AND MOTION TO MAKE MORE DEFINITE AND CERTAIN upon the parties hereto by the method indicated below, and addressed to the following:

Stephen F. English                         ___ HAND DELIVERY
Courtney Rian Peck                        _x_ MAIL DELIVERY
Meredith M. Price                          ___ OVERNIGHT MAIL
Thomas Russell Johnson              _x_ SERVED BY E-FILING
Perkins Coie LLP
1120 NW Couch 10th Flr
Portland, OR  97209
 *Of Attorneys for Plaintiff*


           *s/ Carla A. Scott*
RENEE STINEMAN #994610
Attorney-in-Charge
CARLA A. SCOTT #054725
Senior Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880/Fax (971) 673-5000
Renee.Stineman@doj.state.or.us
Carla.A.Scott@doj.state.or.us
Of Attorneys for Plaintiff

Page 1 -   CERTIFICATE OF SERVICE
        RS7/rh2/8084159-v1

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 1
Page 25 of 25