

**Kevin E. O'Malley**
Attorney
Direct: (602) 530-8430
Email: kevin.omalley@gknet.com

Hon. Sean Armstrong
Marion County Circuit Court
P.O. Box 12869
Salem, OR 97309
Tracy.M.Chance@ojd.state.us

Re: FamilyCare, Inc. v. Oregon Health Authority, Marion County Case No. 17CV09226

Dear Judge Armstrong:

We represent Optumas and are writing regarding the steps that Optumas has taken to comply with the Court's Order Granting FamilyCare, Inc.'s Motion to Compel dated January 2, 2018 and the need for a protective order. A proposed protective order is attached as Exhibit 1.

## I.    Optumas' Production of Responsive Emails.

Optumas has been diligently working to comply with the Court's order. In December 2017, Optumas produced to OHA approximately 30,000 of emails from the following seven custodians previously identified by the parties: Steve Schramm, Zach Aters, Jessica Grado, Barry Jordan, Martin McNamara, Joshua Laventis, and Chris Dickerson. And as we understand it, OHA has produced those documents to FamilyCare. Upon receipt of the Court's order, Optumas collected and delivered the entire email mailboxes of the seven custodians for the relevant time frame to its eDiscovery vendor. Collectively, these mailboxes constituted over 600,000 records, which were reduced to approximately 280,000 records after deduplication.

Because these custodians perform work on Optumas' projects in other states,[1] a vast majority of these emails are unrelated to Oregon rate-setting and have no relevance to the issues in this case. Besides being irrelevant and nonresponsive, the emails concerning projects in other states contain confidential information belonging to other third parties, such as managed care entities ("MCEs"), in other states. Similar to the CCOs in this case, the MCEs in other states submitted data to Optumas pursuant to an agreement which prohibits Optumas from distributing that information to others. Accordingly, Optumas has been trying to find a way to meet this Court's deadlines for production and also comply with its obligations to protect the confidentiality of data belonging to MCEs in other states. It is our understanding that FamilyCare has also expressed that it would prefer Optumas produce only responsive information, rather than producing tens or hundreds of thousands of non-responsive documents.

Unfortunately, the search terms in Appendix B to the Court's Order were not effective in weeding out communications related to Optumas' non-Oregon projects. Well before the entry of the Court's recent order, in letters and conference calls with FamilyCare's counsel throughout November and December 2017, Optumas repeatedly raised its concerns that FamilyCare's broad, non-Oregon-related search terms would

---

[1] Optumas is currently the Actuary of Record for the States of Alabama, Arkansas, Colorado, Kansas, Maryland, Nebraska, North Dakota, and Oregon. Optumas also performs actuarial work for governmental entities in Iowa, New York, Ohio, and Vermont.

Ex 2 - Levin Decl
Page 1 of 24
FCI0519676

January 12, 2018
Page 2

return tens (if not hundreds) of thousands of non-responsive documents. Completely ignoring Optumas' warnings, FamilyCare's list of terms was not designed to be Oregon-specific and included common actuarial terms like "rate", "model", "summary", and "actuar*". Although OHA struck the majority of the overbroad terms, FamilyCare's list was drafted in such a way that no matter which 15 terms were struck, excessively broad terms would remain. Even after OHA went through the list, the terms "rate setting", "data book" and "2015 /10 rate!" (and "2016 /10 rate!" and "2017 /10 rate!") remained. Two search terms have proven especially unlikely to return responsive emails: Term No. 32, which essentially boils down to *Optumas* AND ("rate*" OR "actuar*" OR "438.6" OR "438.4" OR "capitat*" OR "base data"); and Term No. 46, which also includes Optumas AND (actuar* w/2 sound*). Because every email from Optumas is guaranteed to include the term Optumas, these terms will return any email with the common actuarial descriptors.

After running FamilyCare's search terms, Optumas was still left with approximately 200,000 records (down from 280,000 total records). Because these search terms used generic terms common to actuarial work, the vast majority of the results do not appear to be related in any way to the Oregon CCO rate-seting process. It would be impossible with the deadlines in the Court's order, not to mention unduly burdensome, for Optumas to individually review each of the 200,000 records that were returned to determine if it related to Oregon rate-setting or not. Accordingly, Optumas has used exclusionary terms made up of email addresses and domain names of government entities and third parties who were involved only in Optumas' non-Oregon projects to identify and exclude non-Oregon related work.[2] Third parties who may have been involved in both Oregon and non-Oregon projects were not run as exclusionary terms. The exclusionary terms narrowed the results considerably, to 63,807 records.

Even with this further narrowing, it would take considerably more time than provided in the Order to manually review each of the 63,807 records for relevance. Accordingly, with the help of its eDiscovery vendor, Optumas has identified 32 of the search terms that it believes in good faith are most likely to yield responsive documents. The list of these terms is attached as Exhibit 2. Optumas is producing all of the records that hit these 32 terms in any way, amounting to 51,498 records.[3] Even with the use of the extensive exclusionary terms discussed above, the overly broad search terms are likely to produce between 10,000 and 20,000 records related to Oregon but unrelated to Oregon CCO rate setting. Optumas believes that the remaining 12,309 records are most likely non-responsive because they did not hit any of the Oregon-related terms in Exhibit 2, e.g., FamilyCare, Family Care, FCI, Health Share, CCO, OHA, Oregon Health Authority, state.or.us. However, Optumas will further manually review[4] these 12,309 records for responsiveness and will produce any responsive documents as soon as possible.

---

[2] We can provide an electronic copy of the exclusionary domain names if requested.

[3] Optumas' eDiscovery vendor is currently working to produce these documents in the specific format requested by FamilyCare. It is our understanding that rolling production of these documents directly to FamilyCare will begin today, January 12, and that production will continue to tomorrow, January 13, due to the large volume of the documents being produced.

[4] Based on industry standards, it is estimated that review of these remaining documents will involve hundreds of man-hours.

GK

January 12, 2018
Page 3


## II.     A Protective Order Is Needed to Protect Review of Optumas' Trade Secret Information by a Competitor.

Pursuant to the Court's Order, Optumas submitted a draft protective order to FamilyCare on January 9, 2018. However, despite multiple calls and emails on the matter over the past few days, the parties were not able to agree on a proposed form of protective order. Thus, Optumas respectfully requests that the Court enter the attached proposed protective order.

The attached draft is an amended version of the protective order entered by this Court with respect to the CCO data.[5] Most of the changes were minor in nature, such as inserting Optumas. The main substantive changes are to Paragraph 10 regarding the review of attorneys' eyes only documents. In this paragraph, Optumas proposes a limitation that any person who reviews Optumas attorneys' eyes only documents would not compete with Optumas in a formal procurement process for state government Medicaid rate-setting projects through 2021. The draft order makes clear that this restriction is limited only to the specific individuals or teams that reviewed the information; it would not prohibit an entity who employed that individual from competing with Optumas so long as the employer took adequate steps to ensure that the individual given access to Optumas' confidential information would not share that information with others working to compete with Optumas. Essentially, this provision simply requested an ethical wall be placed around the individuals who review Optumas' trade-secret information to prevent Optumas' competitors from using it to Optumas' disadvantage in formal procurements for state Medicaid rate-setting work. This provision does not place additional restrictions on the expert's ability to perform work for MCEs in any other states. Moreover, Optumas would bear the burden of timely notifying FamilyCare's expert of any RFP in which intends to participate so that the expert could arrange for non-conflicted actuaries to perform the work. Optumas' order also amends Exhibit A to the protective order to include an agreement by anyone who receives attorneys' eyes only documents to not use any attorneys' eyes only information or documents and any information derived therefrom for any purpose other than litigation of this case.

FamilyCare did not agree with a provision limiting competition in other states and asserted that Optumas' trade-secret information would only give its expert a competitive advantage in Oregon. FamilyCare misunderstands both the nature of the trade-secret information at issue and the risk faced by Optumas if an expert who is hired to review, digest, and analyze Optumas' trade-secret information can then directly compete with Optumas for other state Medicaid rate-setting work. No one can unlearn information. Thus, the expert would know Optumas' trade-secret when trying to compete directly with Optumas. As a non-party to this case, Optumas should not bear this risk; it should be protected from even inadvertent use of its trade-secret material.

---

[5] Given that some of the Optumas documents also contain CCO data, counsel for PrimaryHealth requested that the court issue an amended protective order, rather than a separate order. PrimaryHealth did not take any position with regard to whether the additional protections were appropriate.

G|K

January 12, 2018
Page 4

## A. The Trade-Secret Information at Issue.

Any assertion by FamilyCare that no expert will remember the data at issue here is a red herring. Optumas is not claiming any specific numbers or values as trade-secret. Rather, Optumas' trade-secret is in its approach, as reflected in models that use unique methods for data summarization, data normalization, and regression techniques. FamilyCare's expert who reviews the material will learn that method, and indeed has been hired to exhaustively review the way that Optumas analyzes data and find what FamilyCare believes may be weaknesses in Optumas' work. It is unlikely that the expert would simply forget Optumas' unique methods and approach at the conclusion of the litigation.

Optumas' trade-secret models and spreadsheets were developed years ago, independently of its work in Oregon. These models are valuable not solely in connection with Oregon rate-setting. Rather, the models are used as the starting point for <u>all of Optumas' Medicaid Managed Care rate development work across the country</u>. Indeed, absent from FamilyCare's prior declaration is an assertion from its expert that the models and formulas claimed as trade-secret would not have value in other states. The absence of this statement speaks loudly. Because the models have value for work performed in other states, the protective order must apply to competition with Optumas in other states.

This does not mean that all of Optumas' models or spreadsheets contain trade-secret information. To the contrary, for each step in the CMS/OACT required methodology, Optumas develops spreadsheets that it shares with its clients and their CCOs or MCEs, which contain all of the necessary information to understand the steps taken and determine whether the rate development methodology results in actuarially sound capitation rates. In fact, every actuary who has reviewed the rates (other than FamilyCare's expert) has determined that Optumas' methodology is actuarially sound without access to the trade-secret models that FamilyCare claims are critical. This includes more than a dozen other CCOs and their actuaries. It also includes CMS/OACT, who have reviewed Optumas' work and determined the rates to be actuarially sound. Moreover, contrary to FamilyCare's unsupported allegations, Lewis & Ellis were not provided with Optumas' trade-secret information. Lewis & Ellis were given documents for the 2018 rates analogous to what has already been produced by Optumas. With this information alone, Lewis & Ellis concluded that Optumas followed generally acceptable actuarial methods in developing the 2018 capitation rates and that the methodology appears to be actuarially sound. It was Lewis & Ellis' opinion that the methodology was executed in a manner that is consistent and unbiased across all CCOs.

Modification to the CCO protective order was necessary to accommodate the difference between Optumas' trade-secret information and that belonging to the CCOs. To be clear, Optumas' trade-secret information is entirely different from the encounter data, e.g., networks and reimbursement rates that CCOs typically consider proprietary. That data may become stale relatively quickly, even as soon as the next year starts. Optumas' trade-secret information, on the other hand, retains its value for a much longer period, perhaps up to 5 years. However, recognizing that a time limitation of 5 years may not be acceptable to some experts if they currently work in this field, Optumas believes a three-year time limit is reasonable. Indeed, the CCO protective order approved a three year limit on competition.



January 12, 2018
Page 5

### B. The Risk of Inadvertent Disclosure.

FamilyCare's proposed order simply does not guard against the risk of inadvertent disclosure – a major concern in this case.

Courts have repeatedly recognized that "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."[6] *F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980); *see also U.S. Gypsum Co. v. Lafarge N. Am., Inc.*, No. 03 C 6027, 2004 WL 816770, at *1 (N.D. Ill. Mar. 2, 2004) ("Although a person may, in good faith, attempt to segregate knowledge learned in confidentiality during litigation, it would be difficult for a person ... to segregate any knowledge gained in this case from future analyses provided in his role as a consultant."); *Fed. Trade Comm'n v. Advocate Health Care Network*, 162 F. Supp. 3d 666, 669–70 (N.D. Ill. 2016) (once an expert "learns the confidential information that is being sought, that individual cannot rid himself of the knowledge he has gained; he cannot perform a prefrontal lobotomy on himself"). Accordingly, courts have protected against disclosure of a company's trade secret material to its competitors. *See BASF Corp. v. United States*, 28 C.I.T. 414, 321 F. Supp. 2d 1373 (Ct. Int'l Trade 2004) (recognizing "the likelihood of inadvertent disclosure of highly confidential commercial information to a direct competitor" and denying motion for leave to show documents to expert with on-going relationship with producing party's competitor).

Here, FamilyCare's expert has been engaged to review each aspect of Optumas' work and critically evaluate any perceived weaknesses or flaws in Optumas' approach or use of certain factors, including Optumas' trade-secret information. It is unreasonable to suggest that the expert could then unlearn or segregate that knowledge when he or she is later engaged in direct competition with Optumas. Otherwise, the expert may be put in a situation where he or she is trying to explain the superiority of his or her approach but segregate the very knowledge he or she has learned in this case. There is a serious risk that even despite the expert's best intentions, the knowledge gleaned from review of Optumas' trade-secret models will color that expert's future approach to Medicaid rate-setting. *See Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.*, 129 F.R.D. 528, 531 (E.D. Wis. 1990) ("Once an expert has digested this confidential information, it is unlikely that the expert will forget. The expert's raison d'etre is to assimilate information in his or her chosen field and formulate that material into various theories."). To assume that FamilyCare's expert would promptly forget what it may consider weaknesses in Optumas' approach when later competing with Optumas is unreasonable and ignores human nature.

### C. Optumas' Trade-Secret Information Is Not Necessary to Determine Actuarial Soundness.

Here, as shown by the fact that many other actuaries have determined that the rates are actuarially sound without access to Optumas' trade-secret information, the trade-secret information is not necessary for

---

[6] This argument is not meant in any way to impugn FamilyCare or its experts, it is simply a matter of human nature that information once learned, cannot be un-learned. *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 237 F.R.D. 405 (N.D. Ill. 2006) ("To question the efficacy of a protective order in the context of a case like this is not in any way to question the integrity of counsel or, indeed, of the experts they plan to employ.")

G|K

January 12, 2018
Page 6

a determination of actuarial soundness. As admitted by FamilyCare's expert, the process of rate-setting is not simply a mathematical exercise. *See* Declaration of Stephen English dated December 6, 2017. Rate-setting involves an exercise of actuarial judgment beyond plugging numbers into a model, indeed actuarial judgment could be exercised in a way that rejects numbers provided by certain models. To determine actuarial soundness, an actuary only needs the same initial data given to Optumas (which was produced to FamilyCare months ago). The actuary can then use its own judgment to determine if the rates are actuarially sound, as has been done by the CCOs and their actuaries. Accordingly, Optumas, a non-party, should not bear the risk that its trade-secret information could be used by a competitor to its disadvantage. *See Litton,* 129 F.R.D. at 531 (quashing subpoena to non-party); *Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Elecs., Inc.,* No. 14 C 3731, 2014 WL 2808984, at *4–5 (N.D. Ill. June 20, 2014) (refusing to subject non-party to risk of disclosure of confidential information).

### D. The Contract Between OHA and Optumas Does Not Waive All of Optumas' Trade-Secret Protections.

FamilyCare has previously claimed that Optumas has no right to claim trade-secret protection, arguing that, pursuant to the contract between OHA and Optumas, OHA either owns the documents or has an irrevocable license to use the information. But FamilyCare neglects the fact that the contract defines "Work Product" to mean "every invention, discovery, work of authorship, trade secret or other tangible or intangible item and all intellectual property rights therein <u>that Contractor is required to deliver to OHA pursuant to the Work</u>." Contract, Exhibit B § 8(a)(3) (emphasis added). OHA only has ownership and license rights to "Work Product." Contract, Exhibit B §§ 8(b), (c). Optumas' trade-secret material was developed independently of its work in Oregon; it was not part of the deliverable to OHA – as shown by the fact that it was not delivered to OHA. OHA has never at any time asserted that Optumas has breached the contract by failing to deliver required work product. Thus, becayse Optumas' independent trade-secret information is not part of the deliverable to OHA, it is not "Work Product."

### E. An Evidentiary Hearing Will Resolve Any Remaining Questions.

If the Court has any questions regarding the nature of Optumas' trade-secret information and the necessity of the attached protective order, we would propose that the Court schedule an evidentiary hearing on the matter to allow a representative of Optumas to appear and answer the Court's questions.

In conclusion, Optumas has been diligently complying with the Court's order and has proposed reasonable protections for its core trade-secret information to prevent use of that information, even inadvertent use, by Optumas' competitor. Optumas respectfully requests that the Court enter the protective order attached as Exhibit 1.



January 12, 2018
Page 7

Very truly yours,

GALLAGHER & KENNEDY, P.A.

By: Kevin E. O'Malley

KEO

6415827v1/28355-0001

G|K

# Exhibit 1

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MARION

| | |
|---|---|
| FAMILYCARE, INC., an Oregon non-profit corporation, | Case No. 17CV09226 |
| Plaintiff, | JUDGE: SEA |
| v. | |
| OREGON HEALTH AUTHORITY, an agency of the State of Oregon, | **AMENDED PROTECTIVE ORDER** |
| Defendant, | |
| and | |
| ALLCARE CCO, INC., an Oregon corporation; CASCADE HEALTH ALLIANCE, LLC, an Oregon limited liability company; COLUMBIA PACIFIC CCO, LLC, an Oregon limited liability company; EASTERN OREGON COORDINATED CARE ORGANIZATION, LLC, an Oregon limited liability company; INTERCOMMUNITY HEALTH PLANS, INC., an Oregon corporation doing business as INTERCOMMUNITY HEALTH NETWORK — COORDINATED CARE ORGANIZATION; JACKSON COUNTY CCO, LLC, an Oregon limited liability company doing business as JACKSON CARE CONNECT; PACIFICSOURCE COMMUNITY | |

6415369v1/28355-0001

SOLUTIONS, an Oregon nonprofit; PRIMARYHEALTH OF JOSEPHINE COUNTY, LLC, an Oregon limited liability company; TRILLIUM COMMUNITY HEALTH PLAN, INC., an Oregon corporation; UMPQUA HEALTH ALLIANCE, LLC, an Oregon limited liability company; WESTERN OREGON ADVANCED HEALTH, LLC, an Oregon limited liability company; WILLAMETTE VALLEY COMMUNITY HEALTH, LLC, an Oregon limited liability company; AND, YAMHILL COMMUNITY CARE ORGANIZATION, INC., an Oregon corporation,

Joint Intervenors.

This action concerns information that may be considered confidential, trade secret, proprietary, commercially-sensitive information of the parties and third-parties, or protected health information as that term is defined in 45 CFR §160.103 and 164.501 (collectively, "confidential information") and, in the course of this litigation, the parties expect to exchange and obtain from third-parties confidential information and documents referencing or containing confidential information (collectively, "confidential materials").

1.    All documents, testimony, and other materials produced by the parties and any subpoenaed party and labeled "Confidential" or "Attorneys' Eyes Only" and subject to this Amended Protective Order shall be used only in this proceeding.

2.    Use of any information or documents labeled "Confidential" or "Attorneys' Eyes Only" and subject to this Amended Protective Order, including all information derived therefrom, shall be restricted solely to the litigation of this case

2

6415369v1/28355-0001

and shall not be used by any party or any person listed under paragraphs 9(b), (c), or (d) for any business, commercial, or competitive purpose.

3.    This Amended Protective Order does not restrict the disclosure or use of any information or documents lawfully obtained by the receiving party from any source other than the party claiming confidentiality or through means or sources outside of this litigation. Should a dispute arise as to any specific information or document, the burden shall be on the party claiming that such information or document was lawfully obtained through means and sources outside of this litigation.

4.    Producing parties, including third parties and subpoenaed parties, may designate as "Confidential" or "Attorneys' Eyes Only" documents, testimony, written responses, or other materials produced in this case if they contain information that the producing party has a good faith basis for asserting is confidential under the applicable legal standards. As used herein, "designating party" shall refer to the party or third party designating any document, testimony or other materials as "Confidential" or "Attorneys' Eyes Only" under this Amended Protective Order. The designating party shall designate each page of the document with a stamp identifying it as "Confidential" or "Attorneys' Eyes Only," unless impractical to do so.

5.    The parties acknowledge and agree that some amount of the third-party information produced by the Oregon Health Authority in this litigation will contain information that other Coordinated Care Organizations ("CCOs") in Oregon or Schramm Health Partners LLC dba Optumas ("Optumas") may consider confidential or proprietary. Thus, to ensure that the Other CCOs and Optumas have adequate opportunity to protect such information, the parties,   the CCOs, and

3

6415369v1/28355-0001

Optumas have agreed to the following protocol for third-party information produced by the Oregon Health Authority:

      a.     The CCOs and Optumas have received FamilyCare, Inc's ("Family Care's) first, second, third, and fourth sets of document requests served on the Oregon Health Authority ("OHA") and a copy of the Court's Order dated January 2, 2018 regarding production by OHA of documents in Optumas' possession. By January 19, 2018, Optumas may simultaneously identify, in addition to any documents previously identified, in writing to both OHA and FamilyCare any documents or categories of documents that it believes are appropriate to be designated as "Confidential" or "Attorneys' Eyes Only" under this Amended Protective Order.

      b.     FamilyCare will provide the CCOs and Optumas with any future requests for production of documents it serves on the OHA, on the same date that it serves those requests on OHA. Within ten (10) days of FamilyCare's service of future document requests on OHA, any CCO or Optumas may identify to both OHA and FamilyCare any documents or categories of documents that it believes are responsive to the requests and appropriate to be designated as "Confidential" or "Attorneys' Eyes Only" under this Amended Protective Order.

      c.     When producing documents to FamilyCare, OHA will abide by any such reasonable request from a CCO or Optumas to designate a document or type of document as "Confidential" or "Attorneys' Eyes Only." All provisions of this Amended Protective Order will apply to documents designated as "Confidential" or "Attorneys' Eyes Only" pursuant to this paragraph 5.

      d.     If FamilyCare believes a document has been erroneously designated as "Confidential" or "Attorneys' Eyes Only" pursuant to this paragraph

4

6415369v1/28355-0001

5, FamilyCare will send a letter to the appropriate CCO(s) and Optumas (with a copy to OHA) requesting re-designation and explaining its position why the document has been erroneously designated, and the CCOs or Optumas will have five (5) business days from receipt of the letter to respond to such letter and explain why the designation is proper. If FamilyCare and the CCOs and/or Optumas are unable to reach an agreement, both letters will be forwarded to the Court for hearing at an appropriate time considering the Court's schedule. The CCO(s) and Optumas may appear before the Court and speak in defense of the designation if the matter is brought before the Court.

6.    If portions of documents or other materials deemed "Confidential" or "Attorneys' Eyes Only" or any papers containing or making reference to such materials are filed with the Court, the party seeking to file the confidential materials shall first move the court pursuant to UTCR 5.160. Upon approval by the court the party shall file the confidential materials under seal, marked as follows or in substantially similar form:

> CONFIDENTIAL - IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS CONFIDENTIAL AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 9 OF THE PROTECTIVE ORDER.

> *or*

> ATTORNEYS' EYES ONLY - IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS FOR ATTORNEYS' EYES ONLY AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN PARAGRAPH 10 OF THE PROTECTIVE ORDER.

5

6415369v1/28355-0001

7.    Any portion of a transcript of the deposition of any party or witness in this case in which "Confidential" or "Attorney Eyes Only" information or documents are discussed shall be designated "Confidential" or "Attorney Eyes Only" accordingly.    If the designation of the document under discussion as "Confidential" or "Attorney Eyes Only" is withdrawn or successfully challenged, the relevant portion of the transcript shall no longer be considered "Confidential" or "Attorney Eyes Only." If a portion of a transcript designated as "Confidential" or "Attorney Eyes Only" is filed with the Court, it shall be filed under seal and marked in the manner described in paragraph 5.

8.    "Confidential" or "Attorneys' Eyes Only" information and documents subject to this Amended Protective Order shall not be filed with the Court or included in whole or in part in pleadings, motions, briefs, etc., filed in this case, except when any portion(s) of such pleadings, motions, briefs, expert reports or files, documents, etc. have been filed under seal by counsel and marked in the same manner as described in paragraph 5 above.   Such sealed portion(s) of pleadings, motions, briefs, expert reports or files, documents, etc., shall be opened only by the Court or by personnel authorized to do so by the Court.

9.    Use of any information, documents, or portions of documents marked "Confidential," including all information derived therefrom, shall be restricted solely to the following persons, who agree to be bound by the terms of this Amended Protective Order, unless additional persons are stipulated by counsel or authorized by the Court:

a.    Outside counsel of record for the parties, and the administrative staff of outside counsel's firms.

6

6415369v1/28355-0001

b.    In-house counsel for the parties, and the administrative staff for each in house counsel.

c.    Any party to this action and any employee, director, officer, or manager of any party, as such party's counsel may deem reasonable for purposes of this litigation.

d.    Independent consultants or expert witnesses (including partners, associates and employees of the firm which employs such consultant or expert) retained by a party or its attorneys for purposes of this litigation, as such party's counsel may deem reasonable for purposes of this litigation.

e.    The Court and its personnel, including, but not limited to, stenographic reporters regularly employed by the Court and stenographic reporters not regularly employed by the Court who are engaged by the Court or the parties during the litigation of this action,

f.    The authors and the original recipients of the documents.

g.    Any court reporter or videographer reporting a deposition.

h.    Employees of copy services, microfilming or database services, trial support firms and/or translators who are engaged by the parties during the litigation of this action.

10.    Use of any information, documents, or portions of documents marked "Attorneys' Eyes Only," including all information derived therefrom, shall be restricted solely to the persons listed in paragraphs 9(a), 9(d), 9(e), 9(f), 9(g) and 9(h), unless additional persons are stipulated by counsel or authorized by the court. Any person listed in paragraph 9(d) shall not be an employee of FamilyCare and the parties agree that any person who reviews "Attorneys Eyes Only" documents or information from another party will not assist (1) Family Care, (2) any CCO, or

7

6415369v1/28355-0001

(3) any entity who seeks to compete with FamilyCare or a CCO (or who assists such an entity) with Medicaid program rate setting, including contract bids, in Oregon through the rate-setting process for 2021 rates.  In addition, any person listed in paragraph 9(d) who receives or reviews "Attorneys Eyes Only" documents or information from another party will not assist with any entity who seeks to compete with a CCO related entity as identified in Exhibit B in the rate region in which the related entity provides services through the rate setting process for 2018 rates or with contract bidding during 2018.  Further, any person listed in paragraph 9(d) who receives or reviews "Attorneys Eyes Only" documents or information provided by Optumas for production, either directly or through OHA, will not compete with or assist any entity who seeks to compete with Optumas to provide actuarial services to any governmental entity involving Medicaid program rate setting through the rate-setting process for 2021 rates. This restriction only applies to a formal procurement process initiated by a state or state agency seeking actuarial services.  Further, this restriction will only apply if Optumas provides written notice to those persons listed in paragraph 9(d) who have received or reviewed "Attorneys Eyes Only" documents or information provided by Optumas within five (5) business days of the issuance of the request for proposals or other solicitation document by the state or state agency.  The notice shall be provided to counsel of record for Family Care during the pendency of this case. This restriction does not prohibit those persons listed in paragraph 9(d) who receive or review "Attorneys Eyes Only" documents or information from providing actuarial services to CCOs and is instead limited solely to competing with Optumas to provide actuarial services to the procuring state or state agency.

8

This prohibition applies to any person or member of a team who reviews or receives "Attorneys Eyes Only" documents or information, but would not preclude a firm or entity who employs that individual or team from competing with Optumas in rate-setting projects so long as the entity takes adequate steps to ensure that the individual who reviews or receives "Attorneys Eyes Only" documents or information or other members of the team with whom the individual works will not share any information learned as a result of the review of the "Attorneys Eyes Only" documents or information with other employees of the entity who will compete with Optumas. Prior to being shown any documents produced by another party marked "Confidential" or "Attorneys' Eyes Only," any person listed under paragraph 9(c) or 9(d) shall agree to be bound by the terms of this Order by signing the agreement attached as Exhibit A. Upon entry of a judgment on the merits of this case, or the execution of any agreement between the parties to resolve amicably and settle this case, Family Care shall, within five (5) business days, notify Optumas of all persons listed in paragraph 9(d) who received or reviewed "Attorneys Eyes Only" documents or information provided by Optumas. Whenever information designated as "Confidential" or "Attorneys' Eyes Only" pursuant to this Amended Protective Order is to be discussed by a party or disclosed in a deposition, hearing, pre-trial, dispute resolution, trial, or appellate proceeding, the parties present must exclude from the room any person, other than persons designated in paragraphs 9 and 10, as appropriate, for that portion of the deposition, hearing, pre-trial, dispute resolution, trial, or appellate proceeding, unless additional persons are stipulated by counsel for the designating party or as authorized by the court. Each party reserves the right to dispute the confidential status claimed by any other party or subpoenaed party in accordance with this Amended Protective Order. If a party believes that any

9

6415369v1/28355-0001

documents or materials have been inappropriately designated by another party or subpoenaed party, that party shall confer with counsel for the designating party. As part of that conferral, the designating party must assess whether redaction is a viable alternative to complete non-disclosure. If the parties are unable to resolve the matter informally, a party may file an appropriate motion before the Court requesting that the Court determine whether the Amended Protective Order covers the document in dispute. Regardless of which party files the motion, the party seeking to protect a document from disclosure bears the burden of establishing good cause for why the document should not be disclosed. A party who disagrees with another party's or subpoenaed parties' designation must nevertheless abide by that designation until the matter is resolved by agreement or by order of the Court.

11.    The inadvertent failure to designate a document, testimony, or other material as "Confidential" or "Attorneys' Eyes Only" prior to disclosure shall not operate as a waiver of the party's or subpoenaed party's right to later designate the document, testimony, or other material as "Confidential" or "Attorneys' Eyes Only." The receiving party or its counsel shall not disclose such documents or materials if that party or counsel knows or reasonably should know that a claim of confidentiality would be made by the producing party. Promptly after receiving notice from the producing party of a claim of confidentiality, the receiving party or its counsel shall inform the producing party of all pertinent facts relating to the prior disclosure of the newly-designated documents or materials, and shall make reasonable efforts to retrieve such documents and materials and to prevent further disclosure.

12.    Designation by a party or subpoenaed party of information or documents as "Confidential" or "Attorneys' Eyes Only," or failure to so designate,

10

Ex 2 - Levin Decl
Page 18 of 24
FCI0519693

will not constitute an admission that information or documents are or are not confidential or trade secrets. Neither party may introduce into evidence in any proceeding between the parties, other than a motion to determine whether the Amended Protective Order covers the information or documents in dispute, the fact that the other party designated or failed to designate information or documents as "Confidential" or "Attorneys' Eyes Only."

13.     A large volume of documents may be exchanged through discovery in this lawsuit, and the parties want to expedite the review and delivery of such documents. It is agreed that if a party or subpoenaed party discloses privileged information and/or protected trial preparation materials, there will be no waiver of privilege and/or protection. A party or subpoenaed party may assert the privilege and/or protection at any time in the litigation. After being notified of the privilege or protection, the other parties (a) must promptly return the specified information, and any copies in its possession, custody, or control, (b) must make reasonable efforts to retrieve and to prevent disclosure of the information, if a party disclosed it before being notified, and (c) may not further use or disclose the information. A party opposing the claim of privilege and/or protection must promptly present the information to the court under seal for a determination of the claim. Absent an expressed intent to waive, the presumption will be in favor of privilege and/or protection.

14.     Upon the request of the producing party or subpoenaed party, within 30 days after the entry of a final judgment no longer subject to appeal on the merits of this case, or the execution of any agreement between the parties to resolve amicably and settle this case, the parties and any person authorized by this Amended Protective Order to receive confidential information shall return to the producing

11

6415369v1/28355-0001

party or third party, or destroy, all information and documents subject to this Amended Protective Order. Returned materials shall be delivered in sealed envelopes marked "Confidential" or "Attorneys' Eyes Only" as appropriate to respective counsel. Notwithstanding the foregoing, counsel for a party may retain archival copies of all confidential documents.

15. This Amended Protective Order shall not constitute a waiver of any party's or non-party's right to oppose any discovery request or object to the admissibility of any document, testimony or other information.

16. Nothing in this Amended Protective Order shall prejudice any person or party from seeking amendments to expand or restrict the rights of access to and use of confidential information, or other modifications, subject to order by the Court.

The restrictions on disclosure and use of confidential information shall survive the conclusion of this action and this Court shall retain jurisdiction of this action after its conclusion for the purpose of enforcing the terms of this Amended Protective Order.

_____

Submitted by:

GALLAGHER AND KENNEDY

By:_____

12

6415369v1/28355-0001

**EXHIBIT A**

I, _____, have been advised by counsel of record for

_____ in FamilyCare, Inc. v. Oregon Health Authority,

Case No. 17CV09226, Marion County, Oregon, of the protective order governing

the delivery, publication, and disclosure of confidential documents and

information produced in this litigation.  I have read a copy of the protective order.

I agree to abide by all terms of the protective order. If I receive or review any

documents marked "Confidential" or "Attorney's Eyes Only," I will not use such

information other than for litigation of this case.  I understand that failure to abide

by the terms of the protective order could result in sanctions.


_____
Signed Name

_____
Printed Name

_____
Date

6415369v1/28355-0001

1

DATED: January 12, 2018          GALLAGHER & KENNEDY, P.A.

By */s/ Kevin E. O'Malley*
Kevin E. O'Malley AZ Bar No. 006420
Hannah Porter AZ Bar No. 029842
2575 E. Camelback Road, Suite 1100
Phoenix, AZ 85016

Attorneys for Optumas

1

6415369v1/28355-0001

# Exhibit 2

FCI0519698

## SEARCH TERMS

1.  FamilyCare
2.  "Health Share"
3.  "Family Care"
4.  HealthShare
5.  "Health Share" AND capitat*
6.  Heatherington
7.  FCI
8.  (enroll OR enrolled OR enrolling OR enrollment) AND (HSO OR TCMC OR "Tri-County Medicaid Collaborative")
9.  "health plan" AND (HSO OR TCMC OR "Tri-County Medicaid Collaborative")
10. model AND (HSO OR TCMC OR "Tri-County Medicaid Collaborative")
11. certif* AND (HSO OR TCMC OR "Tri-County Medicaid Collaborative")
12. allocat* AND (HSO OR TCMC OR "Tri-County Medicaid Collaborative")
13. capacity AND (HSO OR TCMC OR "Tri-County Medicaid Collaborative")
14. MCO AND (HSO OR TCMC OR "Tri-County Medicaid Collaborative")
15. assig* AND (HSO OR TCMC OR "Tri-County Medicaid Collaborative")
16. operation AND (HSO OR TCMC OR "Tri-County Medicaid Collaborative")
17. structure AND (HSO OR TCMC OR "Tri-County Medicaid Collaborative")
18. "business model" AND (HSO OR TCMC OR "Tri-County Medicaid Collaborative")
19. state.or.us
20. CCO
21. OHA
22. "Oregon Health Authority"
23. Saxton
24. ("Oregon Health Authority" OR OHA) AND ("settlement agreement" OR agreement OR contract)
25. 438* AND (FamilyCare OR CCO OR OHA)
26. OHA AND ((rates w/5 2016) OR (contract w/5 2016))
27. OHA w/10 contract
28. CFR AND (FamilyCare OR CCO OR OHA)
29. OHA w/5 contract
30. OHA w/3 contract
31. "Dispute Resolution Agreement"
32. C.F.R. AND (FamilyCare OR CCO OR OHA)