**GREGORY A. CHAIMOV, OSB #822180**
gregorychaimov@dwt.com
**CHRISTOPHER F. MCCRACKEN, OSB #894002**
christophermccracken@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

     Attorneys for Non-Party Health Share of Oregon

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official Capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>          Plaintiff,<br><br>   v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>          Defendant. | Case No. 3:18-cv-00212-MO (LEAD)<br>Case No. 6:18-cv-00296-MO<br><br>**NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OR DOWN-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS** |
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>          Plaintiff,<br><br>   v.<br><br>OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority,<br><br>          Defendants. | |

Page 1 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO
      COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

    A.  Background of the Dispute ................................................................... 2

    B.  The Current Dispute .............................................................................. 7

II.  ARGUMENT ...................................................................................................... 9

    A.  FamilyCare's Motion to De-Designate or Down-Designate AEO and Confidential Documents Should Be Denied for Failing to Confer in Good Faith ........................ 9

    B.  FamilyCare's Motion to De-Designate or Down-Designate AEO and Confidential Documents Should Be Denied Because FamilyCare Has Not Demonstrated a Substantial Risk of Prejudice and Health Share Will Suffer Specific Prejudice and Harm if the AEO and Confidential Designations Are Removed .......................... 10

        1.  Legal Standard ....................................................................... 12

        2.  FamilyCare Has Not Demonstrated a Substantial Risk of Prejudice If the AEO Designation Option Is Available and Used to Protect Commercially Sensitive Information .............................. 14

        3.  Health Share Will Suffer Specific Prejudice or Harm If the AEO Designation is Removed .................................................. 16

            a.  FamilyCare could use the commercially sensitive information to greatly disrupt and even terminate Health Share's relationships with local medical providers such as dentists, doctors, and hospitals .................................. 18

            b.  FamilyCare could use the commercially sensitive information to its advantage with OHA ....................... 19

            c.  FamilyCare employees cannot lock up trade secrets in their minds .................................................. 19

III.  CONCLUSION .................................................................................................. 20

Page i – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown Bag Software v. Symantec Corp.*
  960 F.2d 1465 (9th Cir. 1992) ...............................................................................................13, 19

*Nike, Inc. v. Enter Play Sports, Inc.*
  305 F.R.D. 642 (D. Or. Mar. 24, 2015) ......................................................................................12

*Tinn v. EMM Labs, Inc.*
  556 F. Supp. 2d 1191 (D. Or. Apr. 30, 2008) .......................................................................13, 17

*Wanke Cascade Distribution Ltd v. Forbo Flooring, Inc.*
  2014 WL 12648465 (D. Or. Apr. 11, 2014) .........................................................................13, 14, 19

**Statutes**

ORS 192.501(2) ..............................................................................................................................16

ORS 192.501(5) ..............................................................................................................................16

ORS 192.502(4) ..............................................................................................................................16

**Rules**

FRCP 26(b)(2)(C)(iii) ....................................................................................................................12

FRCP 26(c)(1)................................................................................................................................12

Local Rule 7-1.........................................................................................................................8, 9, 20

Local Rule 26–4 ................................................................................................................................6

ORCP 36 ........................................................................................................................................12

ORCP 36 C ....................................................................................................................................12

ORCP 36 C(7)................................................................................................................................12

**Regulations**

42 C.F.R. § 438.4(a)........................................................................................................................14

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**Other Authorities**

https://www.bizjournals.com/portland/news/2017/12/21/why-portlandhealth-care-
    providers-could-suffer.html ........................................................................................................2

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## I.     INTRODUCTION

Health Share of Oregon ("Health Share") requests that this Court uphold the protections applicable to information of a sensitive nature and enforce the process set forth in the Protective Order, which were negotiated by the interested parties and carefully crafted by Hon. Sean Armstrong of the Marion County Circuit Court.  Through its Omnibus Discovery Motions [30], FamilyCare, Inc. ("FamilyCare") seeks, among other relief, to de-designate and down-designate Attorneys' Eyes Only ("AEO") and Confidential documents, thereby allowing FamilyCare employees to obtain the sensitive business information of other Coordinated Care Organizations ("CCO").   If that information is obtained, Health Share would suffer significant competitive harm because (1) FamilyCare could use the information when, as FamilyCare intends, it reenters the market, and (2) FamilyCare's employees would carry the knowledge with them to other competitors, including new market entrants.

There are two sides to every story.  FamilyCare's side is that the Oregon Health Authority ("OHA") underpaid FamilyCare (*i.e.* the rates that OHA paid FamilyCare are not actuarially sound).  OHA has its own story to tell.  A part of OHA's story is told in its pending Motions to Dismiss [21] that, if granted, would make FamilyCare's Omnibus Discovery motions moot.[1]

For purposes of FamilyCare's current Motion, however, the most important point is that whether FamilyCare was underpaid does not involve the confidential business records of any other CCO.  Whether OHA's payments were lawful is a decision made simply through an analysis of the particular CCO's records, not through a comparison with other CCOs' records and finances.  The CCOs' side of the story is that, having failed to remain solvent perhaps

---

[1] The flurry of pending motions and responses including OHA's Opposition to FamilyCare's Motion to Dismiss [41] reveal that this case may be decided solely on an issue of law making FamilyCare's motion to de-designate and down-designate Attorneys' Eyes Only ("AEO") and Confidential documents moot.

Page 1 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO
   COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

4841-0763-3760v.10 0095765-000004

because paying providers too much,[2] FamilyCare is using the litigation against OHA to reverse-engineer the business models of its competitors so FamilyCare, when reentering the market, can do so successfully and at the expense of the successful CCOs.

### A.        Background of the Dispute

Non-Party Health Share is an Oregon non-profit corporation and a certified CCO. Soderberg Decl. ¶ 2.  As a CCO, Health Share contracts with the State of Oregon, through OHA, to coordinate physical, mental, and dental health services for Medicaid-eligible individuals insured under the Oregon Health Plan ("OHP") in the Tri-County Region of Multnomah, Clackamas, and Washington Counties.  Soderberg Decl. ¶ 2.

Until January 31, 2018, FamilyCare and Health Share were the only two CCOs providing services in the Tri-County Region and, therefore, directly competed with each other.  Soderberg Decl. ¶ 3.  Effective February 1, 2018, FamilyCare withdrew from providing services under the OHP.  Soderberg Decl. ¶ 4.  But FamilyCare is not gone.  As FamilyCare stated in its Omnibus Discovery Motions, "it hopes to return as a CCO someday, the earliest it could do so would be by 2020."  [30] at 22.  That is not the distant future.  Preparations are already underway to begin the 2020 contract procurement process and the process will formally begin in only a few months. Soderberg Decl. ¶ 9.

Health Share is not a party to FamilyCare's long-running disputes with OHA.  And it does not want to be.  Soderberg Decl. ¶ 5.  The dispute over OHA's payments to FamilyCare— and FamilyCare's efforts to obtain the commercially sensitive information of competitors—has been going on for years.  Chaimov Decl. ¶ 2.

In 2015, FamilyCare sued OHA, and in the course of that case, sought information about

---

[2] *Why Portland health care providers could suffer from FamilyCare's demise* (Portland Business Journal Dec. 21, 2017) ("Some say their revenue will be cut by 60 percent if they shift to another CCO, since FamilyCare had the most generous reimbursement rates") https://www.bizjournals.com/portland/news/2017/12/21/why-portlandhealth-care-providers-could-suffer.html

4841-0763-3760v.10 0095765-000004
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Health Share's finances and rates. *See* First Request for Production of Documents, *FamilyCare, Inc. v. Oregon Health Authority*, Marion County Circuit Court Case No. 15CV13782 (July 31, 2015) (Chaimov Decl. ¶ 3.).

In 2016, FamilyCare tried to get the sensitive information of CCOs, including Health Share, from OHA through a request under the Oregon Public Records Act. Health Share informed OHA that disclosure: "would give FamilyCare unprecedented insight into Health Share's operations. Disclosure of the requested information could produce a competitive edge for a provider contracting with one CCO, diminish returns of payment innovation and healthy internal competition within the CCO's network, as well as disclose critical insight into any outside party looking to pursue CCO activities within the tri-county region." Chaimov Decl. ¶ 4. OHA declined to disclose the information.

In late February 2017, FamilyCare filed its complaint in state court. On July 7, 2017, FamilyCare served a document subpoena on Health Share, which sought Health Share's commercially sensitive information including data related to capitation rates from 2014 through 2017.[3] Chaimov Decl. ¶ 5. Health Share issued objections to the subpoena. Chaimov Decl. ¶ 5. Health Share nonetheless cooperated with FamilyCare after receiving the subpoena, including discussing protocols for gathering and review of electronically stored information and proposals for a protective order with an "Attorneys Eyes Only" designation, under which FamilyCare's actuary expert in the case could review documents, but FamilyCare's employees could not. FamilyCare also served multiple sets of document requests on OHA requesting documents in OHA's possession containing commercially sensitive information of Health Share and other CCOs. Chaimov Decl. ¶ 6.

---

[3] After receiving the subpoena, Health Share contacted a leading vendor for electronic discovery services. The vendor estimated the cost of gathering, processing, and hosting potentially available electronically stored information ("ESI") at over $250,000. Soderberg Decl ¶ 5.. Those costs do not include Health Share's internal costs or the costs of Health Share's outside counsel. Soderberg Decl ¶ 5.

Page 3 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

On August 3, 2017, FamilyCare moved the state court to compel OHA to produce documents. Chaimov Decl. ¶ 7. On August 7, 2017, OHA moved for a protective order to exclude from its production of documents, documents containing the CCOs' commercially sensitive information. Chaimov Decl. ¶ 7. On August 10, 2017, the CCOs—other than Health Share, which already had standing to appear and object based on its receipt of a third-party subpoena—moved to intervene for the limited purpose of protecting their commercially sensitive and confidential information. Chaimov Decl. ¶ 9.

With motions pending, OHA, FamilyCare, Health Share, and the other CCOs continued to negotiate a protective order with AEO protections. Eventually, Health Share and the other CCOs filed motions for protective orders blocking discovery. Chaimov Decl. ¶ 10. Health Share asserted two main arguments. First, Health Share urged the state court to quash the subpoena served on Health Share in its entirety on the grounds that the information FamilyCare sought regarding Health Share's and the other CCOs' was not relevant to FamilyCare's claims. Health Share offered the opinion of its actuary, David Neiman (who is submitting a declaration with this Response), that the determination of whether the capitation rates developed by OHA for a particular CCO (*e.g.* FamilyCare) are actuarially sound is not a comparative exercise between CCOs. FamilyCare does not need data, costs, or member information for other CCOs (such as Health Share) to determine whether its own rates are actuarially sound. Second, Health Share explained through the declaration of its Director of Finance, Larry Soderberg, why particular documents were commercially sensitive and should not be produced to employees of Health Share's direct competitor, FamilyCare. Chaimov Decl. ¶ 11. The other CCOs asserted similar arguments in connection with their motion for protective order.

When opposing the CCOs' motion to intervene, FamilyCare argued that intervention was unnecessary because FamilyCare had sent the CCOs a draft protective order "under which they would be allowed to designate documents as confidential or Attorney's Eyes Only," and urged that the motion to intervene be "denied in favor of an amended protective order providing [AEO

Page 4 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS
4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

and confidential] protections." Chaimov Decl. ¶ 12. Further, in a supplemental brief filed the day before the September 28, 2017, hearing on document discovery, FamilyCare continued to praise the "robust" protections for the CCO's information that would be contained in the protective order:

> FamilyCare is currently negotiating a protective order with robust protections for documents that the CCOs believe to contain confidential information or trade secrets * * *. Although an agreement has not been reached on the final form of the protective order as of this submission, FamilyCare believes the parties are close, and has agreed to significant protections, including an Attorneys' Eyes Only provision and an agreement that anyone viewing Attorney's Eyes Only documents will not do rate-setting work for FamilyCare through the 2020 rate-setting process.

Chaimov Decl. ¶ 13.

After that hearing, the parties and the court continued to work out who could—and could not—see AEO documents. FamilyCare's employees could not. And *all* parties and Judge Armstrong agreed that the information was so sensitive that FamilyCare's actuary or other expert should only see the AEO documents if the actuary or expert did not assist FamilyCare or another CCO in future OHP contract bids or OHP rate-setting proceedings for a period of years. Chaimov Decl. ¶ 14. The parties disputed how long the FamilyCare's expert should be sidelined from helping FamilyCare or another CCO compete. Ultimately, after an additional hearing, Judge Armstrong ruled that FamilyCare's actuary or other expert witnesses could only see AEO documents if the expert did:

> not assist (1) FamilyCare, (2) any CCO, or (3) any entity who seeks to compete with FamilyCare or a CCO (or who assist such an entity) with Medicaid program rate-setting, including contract bids, in Oregon through the rate-setting process for 2021 rates. In addition, any [expert] who receives or reviews "Attorneys Eyes Only" documents or information from another party will not assist any entity who seeks to compete with a CCO-related entity as identified in Exhibit B [a list of several dozen CCO affiliates in Oregon and other states] in the rate region in which the related entity provide services through the rate-setting process for 2018 rates or with contract bidding during 2018.

*See* Brenner Declaration in Support of Discovery Motions of FamilyCare, Inc. ("Brenner Decl.")

Page 5 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

[32-4] at 7 (Protective Order).  The Protective Order was entered by Judge Armstrong on November 1, 2017.  *See* Brenner Decl. [32-4] (Protective Order).

FamilyCare and Health Share reached an agreement over FamilyCare's subpoena to Health Share.  FamilyCare stayed the subpoena and Health Share stayed the motion for protective order to allow FamilyCare to first review the documents FamilyCare would receive from OHA before seeking documents from Health Share.  Health Share documents and information in OHA's possession were to be subject to the amended Protective Order.  Chaimov Decl. ¶ 15.

Although the Protective Order was prepared while the case was in state court, its structure and content are generally consistent with the District of Oregon's model form for a two-tier protective order, which provides for an "Attorney's Eyes Only" category.  *See* District of Oregon Local Rule 26–4.  The CCOs and Health Share complied with the document designation procedures spelled out in paragraph five of the Protective Order.   They reviewed FamilyCare's four sets of document requests to OHA and, as directed by the Protective Order, identified in writing to both OHA and FamilyCare "any documents or categories of documents that [they] believe[] are appropriate to be designated as 'Confidential' or 'Attorney Eyes Only' under this Protective Order."  *See* Brenner Decl. [32-4] at 3 (Protective Order).  OHA prepared a chart with thirteen categories of documents and asked the CCOs to identify which of those categories merited AEO or Confidential designation.  Health Share provided its response to both OHA and FamilyCare's counsel on October 13, 2017.  *See* Brenner Decl. [32-6] at 15-21.  The other CCOs also provided responses designating the categories meriting AEO or Confidential designation.  *See* Brenner Decl. [32-6].[4]

---

[4] FamilyCare also issued a document subpoena to Health Share on January 19, 2018.  Chaimov Decl. ¶ 16.  Health Share issued objections to the subpoena, but Health Share is cooperating with FamilyCare to define the scope of documents sought and reach an amicable agreement to allow production.  Chaimov Decl. ¶ 16.

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

### B.    The Current Dispute

On March 6, 2018, without previous notice, FamilyCare wrote Health Share that on April 6, 2018, FamilyCare "intends to raise the use of Attorneys Eyes' Only ("AEO") for certain documents produced in discovery in this case."  FamilyCare opined that over-designations resulted from the CCOs' instructions to OHA.  In sending this letter, FamilyCare did not follow the Protective Order's procedures.  FamilyCare's letter did not identify any specific documents FamilyCare felt were improperly designated as required by paragraph 5(d) of the Protective Order.  FamilyCare did not explain how the alleged over-designation hampered FamilyCare's prosecution of its case.  And FamilyCare did not explain what FamilyCare wanted Health Share (or any other CCO) to do in response to its letter, or what relief FamilyCare intended to seek from the Court on April 6.  Chaimov Decl. ¶ 17, Ex. 1.  The other CCOs received identical letters from FamilyCare.

Health Share's counsel spoke with FamilyCare's counsel on Tuesday, March 13, 2018, in an effort to understand the scope and nature of FamilyCare's concerns.  During that conversation, FamilyCare's counsel stated that FamilyCare would be filing a motion to compel against OHA, that FamilyCare wanted the Court to "explore" the AEO designations, but FamilyCare was still uncertain whether FamilyCare would be filing a motion to amend the Protective Order.  Chaimov Decl. ¶ 18.  Health Share responded with a letter dated March 15, 2018.  Chaimov Decl. ¶ 18, Ex. 2.  Given the vagueness of FamilyCare's request, Health Share stated that more conferral was required prior to filing any motion:

> On behalf of Health Share, we are happy to discuss mutually acceptable amendments to the Protective Order, or any procedure you wish to propose for reviewing whether the "AEO" documents should be re-designated.  But at this point you have not proposed any specific language or process.  We believe you should do so under the meet and confer requirements of the local rules prior to seeking relief from the Court.  FamilyCare, OHA, Health Share and the others CCOs cooperated extensively in drafting the current Protective Order and we believe everyone would consider in good faith any specific fix you want to propose to the language of the Protective Order, or procedures for reviewing the designated documents.  We owe it to the Court to try prior to filing any

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

motion.[5]

Chaimov Decl. ¶ 18, Ex. 2.

The final terms of the Protective Order reflect a balance.  First, the Protective Order allows FamilyCare to obtain a broad range of its competitors' sensitive business and financial information.  Many of the CCOs' commercially sensitive documents that are not applicable to determining the core issue—the actuarial soundness of FamilyCare's rates—have been produced. Health Share believes the scope is much broader than it should be; nevertheless, it acquiesced because the broad scope was balanced against robust protections.

To be clear—FamilyCare's outside counsel and expert witnesses (*i.e.* the actuaries) have seen and will see the CCOs' commercially sensitive documents.  Health Share does not oppose that outcome.  The dispute is simply whether FamilyCare's ***employees*** should be allowed to see the CCOs' commercially sensitive documents (*i.e.* whether the Court should remove the availability of AEO designation).

This Court should deny FamilyCare's Motion for De-Designation, or Down-Designation, of AEO and Confidential Documents.[6]  First, FamilyCare's Motion to De-Designate or Down-Designate AEO and Confidential documents should be denied based on FamilyCare's failure to meaningfully confer in good faith pursuant to Local Rule 7-1.  In addition or in the alternative, FamilyCare's Motion to De-Designate or Down-Designate AEO and Confidential documents

---

[5] On March 15, 2018, at Health Share's invitation FamilyCare provided Health Share (a) a chart with the categories of documents Health Share had in October 2017 identified for confidentiality designations, and (b) FamilyCare's position as to each category.  Chaimov Decl. ¶ 19 Ex. 3.  But FamilyCare then proceeded to file its motion without conferring further with Health Share or any other CCO.  On March 26, 2018, Health Share provided FamilyCare with Health Share's views on FamilyCare's concerns about the specific categorical designations and again invited FamilyCare to confer about the issues.  Chaimov Decl. ¶ 20 Ex. 4.  As of the filing of this Response, FamilyCare has not responded to the invitation.

[6] Health Share is not a party of this case.  At this time, FamilyCare's Motion for Leave to Conduct Additional Depositions, Motion for Order Setting Date Certain for Discovery Compliance, and Motion to Compel, or in the Alternative for *In Camera* Review of Documents do not clearly involve Health Share.

Page 8 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO
COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS
4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

should be denied because FamilyCare has not demonstrated a substantial risk of prejudice if the AEO designation is available and used to protect commercially sensitive information and Health Share will suffer specific prejudice and harm if the AEO designation is removed and its commercially sensitive information is shared with FamilyCare employees.

This response is supported by the declarations of Health Share's Chief Financial Officer, Larry Soderberg, Health Share's actuary, David A. Neiman, FSA, MAAA, of Wakely Consulting Group, and Health Share's attorney, Gregory Chaimov.

## II.    ARGUMENT

### A.    FamilyCare's Motion to De-Designate or Down-Designate AEO and Confidential Documents Should Be Denied for Failing to Confer in Good Faith.

Pursuant to Local Rule 7-1, "the first paragraph of every motion must certify that:  (a) In compliance with this Rule, the parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so" or meet other requirements not applicable here.  FamilyCare did not make a good faith effort to resolve the issues with the real parties in interest, Health Share and the other CCOs.

On March 6, 2018, FamilyCare for the first time advised Health Share and the other CCOs  that FamilyCare believed that OHA had designated too many of OHA's documents as AEO, *i.e.,* documents FamilyCare's employees could not see.  FamilyCare did not follow the Protective Order's procedures.  For example, FamilyCare's letter did not identify any specific documents FamilyCare felt were improperly designated.  FamilyCare did not explain how the alleged over-designation hampered FamilyCare's prosecution of its case.  Chaimov Decl. ¶ 17. Health Share offered—repeatedly—to discuss mutually acceptable changes to the Protective Order or procedures for reviewing the documents that had been marked AEO.  Instead of conferring further, FamilyCare filed its Omnibus Discovery Motions.  Chaimov Decl. ¶ 19. This Court should not reward the behavior.

Health Share, the other CCOs, OHA, and FamilyCare are in the best position to sort

Page 9 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

through the designation issues. They have been doing it for years at this point. Even if unable to resolve all issues, they could have narrowed the issues to present to the Court. It is not just a good, efficient idea—it is the process ***required*** by the Protective Order. *See* Brenner Decl. [32-4] (Protective Order) ¶ 5d. Even though FamilyCare did not follow the procedures the Protective Order prescribes for resolving disputes, Health Share has done so, including by providing explanations to FamilyCare for why Health Share considers information worthy of protection from review by FamilyCare's employees. *See e.g.* Chaimov Decl. ¶ 20. Yet, FamilyCare has not asked the Court to address those specific documents or document categories. Instead, it asks the Court to simply gut the protections of the Protective Order through new broad categorical rules.

**B.     FamilyCare's Motion to De-Designate or Down-Designate AEO and Confidential Documents Should Be Denied Because FamilyCare Has Not Demonstrated a Substantial Risk of Prejudice and Health Share Will Suffer Specific Prejudice and Harm if the AEO and Confidential Designations Are Removed**

FamilyCare's Motion to De-Designate or Down-Designate AEO and Confidential documents should be denied because FamilyCare has not demonstrated a substantial risk of prejudice if the AEO designation is used to protect commercially sensitive information and Health Share will suffer specific prejudice and harm if the AEO designation is removed. Essentially, FamilyCare is asking the Court to let FamilyCare keep the benefit of the broad production Judge Armstrong ordered from OHA, while stripping away the protections Judge Armstrong provided the CCOs and, then, to require OHA to follow the new rules. In FamilyCare's words, FamilyCare "requests that the Court: (1) define and restrict the scope of what kinds of documents may be designated as Confidential, or AEO, in this case; (2) require that OHA review all documents previously marked as AEO or Confidential, and de-designate all but those containing such information, with the de-designation of AEO documents given highest priority; and (3) require that OHA implement those instructions going forward." Omnibus Motion [30] at 11.

Rather than address the specific documents or document categories, FamilyCare has

Page 10 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

asked the Court to apply the new general rules:

1.  Because FamilyCare is no longer a competitor of any CCO in Oregon, no documents should be marked AEO;

2.  The Confidential designation should be reserved for: (a) confidential information relating to pricing for services at the provider-specific level; (b) other confidential information relating to the specific terms of provider contracts; (c) detailed CCO financial information that is not publicly available in some form; and (d) Protected Health Information ("PHI") for which disclosure is prohibited.

3.  Consistent with paragraph 4 of Judge Armstrong's November 1, 2017 Protective Order, documents that contain sensitive or competitively valuable information that are to be designated Confidential should be considered for redaction as an alternative to the designation of the whole document.

Omnibus Motion [30] at 11.

FamilyCare makes its reason for these motions clear:  "Given the technical nature of Medicaid rate-setting, FamilyCare's counsel needs to be able to discuss [the AEO documents and Confidential documents] with its client—the single best source of expertise and knowledge on these issues." [30] at 11.  First, FamilyCare's counsel is welcome to discuss the documents marked Confidential with its client.  The Protective Order allows for that.  Second, the purpose of the AEO designation is specifically to ***prohibit*** FamilyCare's employees from seeing Health Share's sensitive business information to prevent the significant competitive harm that would necessarily follow.  If FamilyCare were allowed to down-designate documents in categories 2(a), (b), and (c) above, FamilyCare employees would have access to Health Share's (a) confidential information relating to pricing for services at the provider-specific level; (b) other confidential information relating to the specific terms of provider contracts; (c) detailed CCO financial information that is not publicly available in some form.  These are textbook examples of commercially sensitive information.

Boldly, FamilyCare takes the position that "[b]ecause FamilyCare is no longer a competitor of any CCO in Oregon, ***no*** documents should be marked AEO."  [30] at 11(emphasis

Page 11 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

added).  Yet, FamilyCare only left the market two months ago and has revealed its intent to return and compete.  Soderberg Decl. ¶ 11.

### 1.    Legal Standard

Known as the "rule of proportionality," the court must limit the extent of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  Fed.R.Civ.P. 26(b)(2)(C)(iii)."  *See Nike, Inc. v. Enter Play Sports, Inc.* 305 F.R.D. 642 (D. Or. Mar. 24, 2015).  In addition, pursuant to FRCP 26(c)(1),[7] "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
> (E) designating the persons who may be present while the discovery is conducted;
>
> (F) requiring that a deposition be sealed and opened only on court order;

---

[7] When this case was in state court, the applicable discovery rules included Oregon Rule of Civil Procedure 36, which is very similar.  Oregon Rule of Civil Procedure 36 C provides:

> [T]he court * * * may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; [and] (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place[.]

ORCP 36 C(7) provides that the court may order "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way * * *."

Page 12 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

To "maintain a protective order, a party must be able to show 'for each particular document it seeks to protect * * * that specific prejudice or harm will result if no protective order is granted.'" *Tinn v. EMM Labs, Inc.* 556 F. Supp. 2d 1191, 1196 (D. Or. Apr. 30, 2008)(quoting *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). When determining whether protective orders for trade secrets are appropriate, the court must balance the risk to the disclosing party of inadvertent disclosure of trade secrets to competitors against the risk to the party requesting disclosure that protection of the disclosing party's trade secrets will impair prosecution of its claims. *See Brown Bag Software v. Symantec Corp.* 960 F.2d 1465, 1470 (9th Cir. 1992); *see also Wanke Cascade Distribution Ltd v. Forbo Flooring, Inc.* 2014 WL 12648465 (D. Or. Apr. 11, 2014). The party seeking disclosure of trade secrets bears the burden of demonstrating a substantial risk of prejudice if the AEO designation is available. *See Wanke Cascade Distribution Ltd*, 2014 WL 12648465 at *3.

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

### 2.    FamilyCare Has Not Demonstrated a Substantial Risk of Prejudice If the AEO Designation Option Is Available and Used to Protect Commercially Sensitive Information

FamilyCare failed to establish that the AEO or Confidential designations would result in a substantial risk of prejudice to FamilyCare.  As described by OHA, FamilyCare's allegations in this case "are permeated with a single premise:  the rates that OHA pays FamilyCare under contracts to provide services through the Medicaid program in Oregon are 'actuarially unsound.'" *See* Patrick Allen and OHA's Motions to Dismiss [21] at 6.  The documentation already available to FamilyCare is sufficient for them to determine whether the rates are actuarially sound.  Neiman Decl. ¶ 5.  The determination of whether the capitation rates developed by OHA are actuarially sound is not a comparative exercise between Coordinated Care Organizations.  Neiman Decl. ¶ 5.  FamilyCare does not need additional data, costs, or member information for other CCOs to determine whether FamilyCare's rates are actuarially sound.  Neiman Decl., ¶ 5.

The language of the regulations on which FamilyCare relies also support this conclusion.  The capitation rates for a given CCO, like FamilyCare, must be "projected to provide for all reasonable, appropriate, and attainable costs that are required under the terms of [that CCO's] contract and for the operation of the [CCO] for the time period and the population covered under the terms of the contract."  42 C.F.R. § 438.4(a).

Under the Protective Order, FamilyCare's expert witness (*e.g.* the actuary) and outside counsel have access to all of the documents, including Health Share's commercially sensitive information.  This is not a case where a party has been unable to retain an expert to review the disputed information.  *See e.g. Wanke Cascade Distribution Ltd.* 2014 WL 12648465 *3.

FamilyCare complains that "aggregated information" is not confidential information, but aggregation of information without more does not establish lack of harm to the sources of the information.  In some instances aggregate information may be harmless, but in other instances, such as aggregated information from the Tri-County region where the aggregated data is of only

Page 14 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

two entities—FamilyCare and Health Share—FamilyCare could easily back out its own data from the aggregated data and arrive at Health Share's data.  Soderberg Decl. ¶ 19.  If FamilyCare believes that a data set is aggregated in such a way as to render the data incapable of disclosing sensitive business information, then the Protective Order—as it should—requires FamilyCare to identify that data for OHA and the CCOs to review.  Until FamilyCare makes such an effort, there is no reason for this Court to intervene.

FamilyCare's complaint that the designations "impose[] an extraordinary and inequitable burden on FamilyCare" is a burden of its own creation.  FamilyCare simply does not need Health Share's commercially sensitive information (or the commercially sensitive information of every CCO in this State) to prosecute its claims.  *See* Neiman Decl. ¶¶ 3-5.  FamilyCare made the bed in which it must now sleep.  Because FamilyCare insisted on OHA's producing a large volume of irrelevant documents, it now has them.  The burden of the volume of documents is not prejudice to FamilyCare.

The designation of documents by categories is also of FamilyCare's own doing.  In light of the volume of documents FamilyCare sought, the parties agreed to designate documents by category.  Regarding the categorical designations, FamilyCare has acknowledged it "did not push at the time for greater specificity in the Protective Order as to the scope of what OHA would be permitted to produce with designations."  Omnibus Motions [30] at 12.  Although FamilyCare claims that OHA has over-designated thousands of documents as AEO or Confidential, it has not identified a single document that has been marked AEO or Confidential that should not have been marked in such a way and that has caused prejudice.[8]

---

[8] Throughout FamilyCare's motions there are general complaints that documents designated AEO or Confidential are "based on" or "derived from" publicly disclosed documents and, therefore, the designations are inappropriate.  The logic is flawed.  CCOs make a significant amount of information public.  Soderberg Decl. ¶ 14.  But they are not required to make every document public.  Soderberg Decl. ¶ 14.  Health Share and the other CCOs are only trying to protect information that would cause competitive harm.  Public policy may, as a general rule, favor transparency, but the Public Records Act has dozens of exemptions from disclosure because of

Page 15 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

4841-0763-3760v.10 0095765-000004

### 3. Health Share Will Suffer Specific Prejudice or Harm If the AEO Designation is Removed

The Protective Order and the protections afforded by the AEO designation of commercially sensitive information are necessary to prevent significant competitive harm to Health Share. Health Share and FamilyCare were direct competitors until February 1, 2018, and FamilyCare has stated its intent to reenter the market as early as 2020. Soderberg Decl. ¶¶ 4, 11. Until January 31, 2018, Health Share and FamilyCare were the only two CCOs to operate in the Tri-County Region of Multnomah, Clackamas, and Washington Counties. Soderberg Decl. ¶ 3. Health Share and FamilyCare competed when contracting with local medical providers such as dentists, doctors, and hospitals to provide healthcare services to their members and in enrolling new members who participate in the Oregon Health Plan.

Notwithstanding that the commercially sensitive information is irrelevant, Health Share agreed that it could be disclosed ***so long as*** it went to those people qualified to address the issue of actuarial soundness (*i.e.* the expert actuary) and not the employees of its competitor. This is critical because the commercially sensitive information that Health Share has provided to OHA includes:

- costs and rates Health Share has negotiated with providers of medical, dental, and mental health services including the amount that Health Share will pay providers for specific procedures;

- costs Health Share has negotiated and incurred to purchase medications for its

the recognition that there is information in the hands of the public's representatives that, if made available to certain persons could harm the providers of the information and the public. These exemptions protect trade secrets, production records, and information provided to the government in good faith with the understanding the government would keep the information confidential. ORS 192.501(2), (5); ORS 192.502(4). By citing these provisions, Health Share is not taking the position that the Oregon Public Records Act is relevant to this Court's decision. Health Share's point is that, even within a public policy favoring transparency in government, there are accommodations made to protect the confidentiality of different kinds of sensitive business information.

Page 16 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

members;

- claims and encounter data that reflect the costs Health Share has negotiated and paid for individual claims and office visits;

- Health Share's proprietary payment structures such as incentives payment structures and sub-capitation rates negotiated with providers; and

- information about Health Share's business strategy, such as its strategy for reducing costs or, at least, decreasing the rate of cost growth in the future.

Soderberg Decl. ¶ 15.

Like the *EMM Labs* case, the documents at issue here contain "sensitive pricing information." 556 F. Supp. 2d at 1196. FamilyCare has requested the following categories be down-designated to Confidential, allowing its employees to review the documents: (a) confidential information relating to pricing for services at the provider-specific level; (b) other confidential information relating to the specific terms of provider contracts; (c) detailed CCO financial information that is not publicly available in some form. Health Share and FamilyCare often negotiated contracts with the same providers. Soderberg Decl. ¶ 20. For example, Health Share and FamilyCare had identical dental networks, approximately 75% of Health Share's mental health network also contracted with FamilyCare, and approximately 97% of FamilyCare's members were assigned to a primary care provider that also contracted with Health Share. Soderberg Decl. ¶ 20. Disclosure of commercially sensitive information to FamilyCare employees would raise concerns including but not limited to undercutting pricing and putting business relationships at risk, which are similar to the concerns that resulted in AEO designation in the *EMM Labs* case.

Health Share's commercially sensitive information is so valuable and its disclosure would be so harmful that Health Share even limits who within Health Share has access to the information. Health Share stores its provider information on a secured electronic platform that can be accessed only by a small number of individuals. Soderberg Decl. ¶ 17. Health Share

Page 17 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

limits access to those who have a "need to know" such as Health Share's finance team, rate-setting team, actuaries, and CEO.  Soderberg Decl. ¶ 17.  When Health Share is required to provide such information to OHA for rate-setting proceedings, OHA maintains the confidentiality of the information including not sharing the information with other CCOs.  Soderberg Decl. ¶ 17.

> a.      **FamilyCare could use the commercially sensitive information to greatly disrupt and even terminate Health Share's relationships with local medical providers such as dentists, doctors, and hospitals**

A very significant harm that would result from de-designation of AEO documents is that FamilyCare could use the commercially sensitive information to greatly disrupt and even terminate Health Share's relationships with local medical providers such as dentists, doctors, and hospitals.  Soderberg Decl. ¶ 20.  Provider networks are the main way that CCOs compete for members.  Soderberg Decl. ¶ 21.  FamilyCare would learn how to undercut Health Share's pricing with the local medical providers such as dentists, doctors, and hospitals providing healthcare services to Health Share members.  Soderberg Decl. ¶ 21.  In addition to undercutting the pricing (*i.e.* paying the providers more than its competitor), FamilyCare would learn of Health Share's proprietary payment structures such as incentives payment structures and sub-capitation rates negotiated with providers and, therefore, know how to pay the providers in a similar way.  Health Share has spent considerable time and effort adjusting and refining its pay structures (incentive, capitation, and sub-capitation structures) with managed care entities and providers in its network.  Soderberg Decl. ¶ 16.  FamilyCare could use Health Share's commercially sensitive information to offer to pay providers more than Health Share pays and under a structure more favorable to providers so that the providers would choose to take more FamilyCare members into their practices than Health Share members or simply be induced to terminate their contracts with Health Share and no longer provide services to Health Share members.  Soderberg Decl. ¶ 18.

Page 18 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

#### b. FamilyCare could use the commercially sensitive information to its advantage with OHA

Another significant harm that would result from de-designation of AEO documents is that FamilyCare could use Health Share's commercially sensitive information to its advantage in a procurement process with OHA.  For example, OHA releases competitive Requests for Proposals or Requests for Applications asking managed care entities, including existing CCOs, to submit proposals to provide Oregon Health Plan services in a defined service area.  If FamilyCare had access to Health Share's commercially sensitive information including but not limited to its provider contracts then it would know how to submit a lower cost or otherwise more competitive proposal to OHA and be awarded the contract.  Soderberg Decl. ¶ 22.

#### c. FamilyCare employees cannot lock up trade secrets in their minds

FamilyCare employees cannot reasonably be expected to lockup Health Share's trade secrets in their minds.  *See Wanke Cascade Distribution Ltd*, 2014 WL 12648465 at *2 ("As with the in-house counsel in *Brown Bag*, Forbo's general manager cannot reasonably be expected to 'lock-up' Wanke's trade secrets in his mind to prevent inadvertent disclosure in his role as Forbo's general manager.")  If FamilyCare employees receive Health Share's commercially sensitive information they cannot help but take it with them to a new employer including other CCOs or new market entrants.  Soderberg Decl. ¶ 23.  There is no requirement that only the existing 15 CCOs can compete for future contracts.  Soderberg Decl. ¶ 8.  FamilyCare claims it is on the verge of collapse.  Its employees may soon be seeking jobs elsewhere in the industry. FamilyCare employees could be hired by one of the existing 15 CCOs or they could be hired any potential new market entrant.  The harm that would follow is not speculative—its importance was so great that it was addressed in the Protective Order by the insertion of additional protections.  According to the Protective Order, none of FamilyCare's employees could see AEO documents and any other person who received or reviewed the AEO documents of another party (*e.g.* expert actuary) was prohibited from assisting "(1) FamilyCare, (2) any CCO, or (3) any

4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

entity who seeks to compete with FamilyCare or a CCO (or who assist such an entity) with Medicaid program rate-setting, including contract bids, in Oregon through the rate-setting process for 2021 rates." Brenner Decl. [32-4] (Protective Order). ¶ 10.

### III.    CONCLUSION

This Court should deny FamilyCare's Motion for De-Designation, or Down-Designation, of AEO and Confidential Documents. First, FamilyCare's Motion to De-Designate or Down-Designate AEO and Confidential documents should be denied for FamilyCare's failure to meaningfully confer in good faith pursuant to Local Rule 7-1. In addition or in the alternative, FamilyCare's Motion to De-Designate or Down-Designate AEO and Confidential documents should be denied because FamilyCare has not demonstrated a substantial risk of prejudice if the AEO designation is available and used to protect commercially sensitive information and Health Share will suffer specific prejudice and harm if the AEO designation is removed and its commercially sensitive information is shared with FamilyCare employees.

DATED this 30th day of March, 2018.

### DAVIS WRIGHT TREMAINE LLP

By  s/GREGORY A. CHAIMOV
Gregory A. Chaimov, OSB #822180
gregorychaimov@dwt.com
Christopher F. McCracken, OSB #894002
christophermccracken@dwt.com
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

Attorneys for Non-Party Health Share of Oregon

Page 20 – NON-PARTY HEALTH SHARE OF OREGON'S RESPONSE TO FAMILYCARE'S MOTION TO COMPEL DE-DESIGNATION OF AEO AND CONFIDENTIAL DOCUMENTS
4841-0763-3760v.10 0095765-000004

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax