**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Matthew A. Levin, OSB #003054**
MattLevin@MarkowitzHerbold.com
**Renée E. Rothauge, OSB #903712**
ReneeRothauge@Markowitzherbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Tele: (503) 295-3085
Fax:  (503) 323-9105

      Special Assistant Attorneys General for Oregon Health
      Authority, an agency of the State of Oregon, and Patrick
      Allen, both individually and in his official capacity as
      director of the Oregon Health Authority

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>                     Plaintiff,<br><br>    v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>                    Defendant. | Case No. 3:18-cv-00212-MO (Leading)<br>Case No. 6:18-cv-00296-MO(Trailing)<br><br>**OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE'S MOTION FOR A PROTECTIVE ORDER** |
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>                    Plaintiff,<br><br>    v. | |

**OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE'S MOTION
FOR A PROTECTIVE ORDER**

OREGON HEALTH AUTHORITY, an agency
of the State of Oregon, and PATRICK
ALLEN, both individually and in his official
capacity as director of the Oregon Health
Authority,

Defendants.

## INTRODUCTION

Stephen English is an important witness to events that are central to FamilyCare's seventh and eighth claims for relief.  Those claims allege that the Oregon Health Authority ("OHA") breached the Dispute Resolution Agreement ("Agreement"), a contract between OHA and FamilyCare.  English has relevant, non-privileged information regarding the meaning of the Agreement, the parties' performance of its terms, and FamilyCare's alleged damages flowing from its breach.  Furthermore, FamilyCare has failed to make the specific showing of harm necessary to obtain a protective order preventing the deposition.  OHA respectfully requests, therefore, that the Court deny FamilyCare's motion for a protective order.

## ARGUMENT

**I.      English possesses non-privileged information that is relevant to the claims and defenses regarding breach of the Dispute Resolution Agreement.**

In general, parties may seek discovery of "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  A party may depose "any person" with discoverable information.  Fed. R. Civ. P. 30(a)(1).  "[N]either the federal rules of procedure nor the federal rules of evidence prohibit taking the deposition of any opposing party's attorney."  *In re Interactive Network, Inc.*, 243 B.R. 766, 768 (Bankr. N.D. Cal. 2000).

English is subject to deposition because he possesses non-privileged information that is relevant to FamilyCare's claims regarding breach of the Dispute Resolution Agreement and OHA's defenses to those claims.  The Agreement was a protocol for resolving FamilyCare's concerns with the 2017 rate-setting process.  (12/30/16 Dispute Resolution Agreement, Declaration of Harry B. Wilson in Support of Oregon Health Authority's Opposition to FamilyCare's Motion for a Protective Order ("Wilson Decl."), Ex. 1.)  FamilyCare alleges that OHA breached the Agreement's express and implied terms by: (1) failing to "work

**Page 1 -    OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE'S
MOTION FOR A PROTECTIVE ORDER**

cooperatively" toward providing all information requested by FamilyCare; (2) failing to produce an actuary for attendance at the second dispute resolution meeting; and (3) drafting a plan for communications with legislators and the media regarding the dispute while simultaneously negotiating with FamilyCare. (Third Am. Compl. ¶¶ 45-47.) English possesses information related to the meaning of the Agreement, the parties' performance of its terms, and FamilyCare's alleged damages flowing from its breach.

A.   **English is an important fact witness regarding the meaning of the Agreement.**

In interpreting a contract under Oregon law, the court seeks "to implement the intent of the parties to the contract by considering the contract terms in their context." *James v. Clackamas Cty.*, 353 Or. 431, 441 (2013). When the terms of an agreement are ambiguous, the court examines extrinsic evidence to determine the intent of the parties. *Yogman v. Parrott*, 325 Or. 358, 363 (1997) ("Because the contractual provision at issue is ambiguous, we . . . examine extrinsic evidence of the contracting parties' intent."). OHA must develop extrinsic evidence of the parties' intent in entering the Agreement to prepare its defenses.

English is a fact witness to the parties' intent. English himself initiated the negotiations that led to the Agreement. On or about December 17, 2016, English placed a phone call to Oregon Department of Justice ("DOJ") attorney Theodore Falk, seeking a lawyer-only meeting to set a protocol for resolving the rate-setting dispute. (12/17/16 email from Theodore C. Falk to Stephen F. English, Wilson Decl., Ex. 2.) English and Falk had two conversations regarding the dispute resolution procedures. (12/19/16 email from Stephen F. English to Theodore C. Falk, Wilson Decl., Ex. 3.) Following the conversations, attorneys for FamilyCare and OHA met on December 23, 2016, in English's office. (*Id.*) English circulated the first draft of what would become the Agreement shortly thereafter. (12/27/16 letter from Stephen F. English to Renee Stineman, Wilson Decl., Ex. 4.)

English's first draft contained several provisions that are at issue now. For instance, the draft stated that "[t]he parties would agree that they would work cooperatively to provide information that either the State's actuary or FamilyCare's actuary believes relevant and

necessary to set actuarial rates." (12/27/16 English letter, Wilson Decl., Ex. 4.)  This obligation to "work cooperatively" in providing information survived to the final Agreement and is quoted throughout FamilyCare's complaint as a basis for breach.  (Third Amd. Compl. ¶¶ 41, 44, 46, 47.)

**B.      English is an important witness regarding performance of the Agreement.**

English will also be an important fact witness as to performance of the Agreement.  In particular, English will be the witness best situated to speak to FamilyCare's allegation that OHA "stonewall[ed]" FamilyCare's attempts to gather information pursuant to the Agreement. English represented FamilyCare at the January 17 and February 6 negotiation sessions held pursuant to the Agreement.  (Third Am. Compl. ¶ 49) (noting that "FamilyCare's counsel," *i.e.* English, presented FamilyCare's concerns and information requests at the first dispute resolution meeting).)

Steve English was the point person and lead attorney for FamilyCare for the communications leading up to and during the dispute resolution process.  (Declaration of Renee R. Stineman in Support of Oregon Health Authority's Opposition to FamilyCare's Motion for a Protective Order ("Stineman Decl.") ¶ 3.)  English appeared to be the architect of FamilyCare's process and strategies to resolve the dispute between FamilyCare and OHA.  (Stineman Decl. ¶ 3.)  As part of the dispute resolution process, English had in-person conversations with DOJ attorney Renee Stineman regarding the dispute and process for resolution.  (Stineman Decl. ¶ 4.) English and Stineman also communicated by email, letter, and phone to discuss the exchange of documents pursuant to the Agreement.  (*See, e.g.*, 01/25/17 letter from Stephen F. English to Renee Stineman, Wilson Decl., Ex. 5; 02/27/17 letter from Renee Stineman to Stephen F. English, Wilson Decl. Ex., 6; 02/16/17 email from Stephen F. English to Renee Stineman, Wilson Decl., Ex. 7 (describing prior phone call regarding exchange of documents and follow-up tasks).)  Although other individuals may have overheard Stineman and English's conversations, or read Stineman and English's written communications, English is the only FamilyCare witness who can testify about what Stineman and English said to each other and their conversations taken as a whole.  (Stineman Decl. at ¶ 4.)

**Page 3 -    OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE'S
             MOTION FOR A PROTECTIVE ORDER**

FamilyCare's complaint also makes clear that English was an important actor in the events underlying FamilyCare's claims based on the Agreement, even if it does not mention him by name. For example, the complaint describes the January 17, 2017 meeting that took place at English's office (Third Am. Compl. ¶¶ 42, 49); describes the preparation of the presentation English participated in at the meeting (*id.* ¶ 49); describes conversations between English, his colleagues, and DOJ attorneys regarding the presentation (*id.* ¶¶ 49-50); describes a January 25 letter sent by English (*id.* ¶ 42; 01/25/17 letter from Stephen English to Renee Stineman, Wilson Decl., Ex. 5); describes communications on February 3 between English and DOJ attorneys (Third Am. Compl. ¶ 42; 02/03/17 email from Renee Stineman to Stephen F. English and Theodore C. Falk, Wilson Decl., Ex. 8); describes a February 6 negotiation session between FamilyCare and OHA with English representing FamilyCare (Third Am. Compl. ¶ 43); describes a February 6 letter sent by English (*id.;* 02/06/17 letter from Stephen F. English to Renee Stineman, Wilson Decl., Ex. 9); describes a February 8 letter sent to English (Third Am. Compl. ¶ 43*;* 02/08/17 letter from Theodore C. Falk to Stephen F. English, Wilson Decl., Ex. 10); describes a February 9 letter from English (Third Am. Compl. ¶ 44; 02/09/17 letter from Stephen F. English to Theodore C. Falk, Wilson Decl., Ex. 11); and describes a February 21 letter to English (Third Am. Compl. ¶ 45; 02/21/17 letter from Renee Stineman to Stephen F. English, Wilson Decl., Ex. 12). English has important information regarding each of these events, including the meaning of his letters and OHA's response to him. Although DOJ attorneys were also present for many of these events, FamilyCare could call English to rebut their testimony. OHA is entitled to depose English regarding his recollection of the events described in the complaint.

English is also an important fact witness regarding FamilyCare's allegations about OHA's attendance at a second dispute resolution meeting. The parties agree that a second negotiation session took place. (Third Am. Compl. ¶ 43.) FamilyCare alleges that this session did not constitute a "meeting" because "OHA's actuary was not present" and because of "counsel for OHA's statement that it was a status conference." (*Id.* ¶ 45.) But the "statement" that FamilyCare cites came after English left a voicemail and sent emails to DOJ attorneys

**Page 4 -   OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE'S**
                **MOTION FOR A PROTECTIVE ORDER**

requesting that actuaries not attend the second meeting and instead that the parties use the meeting as a "status conference." (02/03/17 Stineman email, Wilson Decl., Ex. 8.) Stineman, one of OHA's attorneys at DOJ, replied to English's voicemail and agreed to English's request that actuaries not attend. (*Id.*) Emails from other attorneys at English's firm show that the other members of FamilyCare's negotiation team were not even aware of English's request. (02/03/17 email from Matthew P. Gordon to Renee Stineman and Theodore C. Falk, Wilson Decl., Ex. 13) (exchange with other Perkins Coie attorney seeking to confirm the attendance of actuaries at the meeting). Thus, English is an important witness to testify to FamilyCare's intent in requesting that actuaries not attend the second meeting.

### C.    English is an important witness regarding damages.

English is also an important witness on the issue of damages. FamilyCare seeks to recover for the "time, money, and resources [expended] in negotiating, preparing for, and participating in the dispute resolution process," including the money spent on attorney's fees. (Third Amd. Compl. ¶¶ 131-32, 137.) English initiated the dispute resolution process and signed the Agreement himself. He was not only an important actor throughout, as senior partner he would have been responsible for directing the nature, amount, and scope of the work his firm performed representing FamilyCare. Presumably, he was also responsible for reviewing the bills submitted to FamilyCare. His testimony is important to determining the reasonableness of the "time, money, and resources" FamilyCare elected to spend on the process. Because English has non-privileged, relevant testimony, he is subject to deposition.

## II.    FamilyCare has not met its burden of establishing good cause to issue a protective order quashing the subpoena of Stephen English.

### A.    FamilyCare's fear of strain on the attorney-client relationship does not justify quashing the subpoena to English.

Federal Rule 26(c)(1) states "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "Under the liberal discovery principles of the Federal Rules," the party seeking a protective order bears the "heavy burden" of establishing "good cause" for limiting discovery. *Blankenship v.*

*Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted."  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).

Here, FamilyCare has failed to meet its burden of showing specific prejudice or harm from the deposition of Stephen English.  FamilyCare cites the strain on the attorney-client relationship that will come from compelling English to attend a deposition.  (Motion for Protective Order at 4.)  But courts often permit depositions of attorneys with relevant factual information to testify notwithstanding their obligations to the party in the pending suit.  *See, e.g.*, *Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990) ("In cases where the attorney's conduct itself is the basis of a claim or defense, there is little doubt that the attorney may be examined as any other witness."); *Pastrana v. Local 9509, Commc'ns Workers of Am., AFL-CIO*, No. CIV. 06CV1779 W AJB, 2007 WL 2900477, at *3 (S.D. Cal. Sept. 28, 2007).

Further, FamilyCare exposed itself to the possibility that its lead trial attorney would be deposed by choosing as lead trial attorney the same individual who negotiated the Agreement and represented FamilyCare in performing its obligations under the Agreement.  *Frazier v. Se. Pennsylvania Transp. Auth.*, 161 F.R.D. 309, 314 (E.D. Pa. 1995) (permitting the deposition of trial counsel where need for deposition "was completely foreseeable at the time [counsel] filed this action"); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249 (D. Kan. 1995) ("When a party employs counsel to represent it in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested.").

In addition, FamilyCare's concern about English's disqualification is not a specific enough harm to justify preventing his deposition.  (Motion for a Protective Order at 4.)  Until it takes his deposition, OHA does not know whether FamilyCare is likely to rely on English as a fact witness at trial (including as a rebuttal witness) or whether it would seek to call English

**Page 6 -    OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE'S
           MOTION FOR A PROTECTIVE ORDER**

itself.  Thus, it is premature for FamilyCare to raise the specter of disqualification.[1]  Moreover, FamilyCare could have prevented the possibility of disqualification by choosing lead trial counsel who was not also a fact witness.  *See Premium Payment Plan v. Shannon Cab Co.*, 268 F.R.D. 203, 206 (E.D. Pa. 2010) (holding that burden of disqualification is not "undue" within the meaning of the Federal Rules where attorney is also a fact witness).  Accordingly, FamilyCare has failed to allege a harm significant enough to justify quashing English's subpoena.

**B.     The Eighth Circuit's *Shelton* factors are inapplicable.**

OHA seeks to depose English because he is a fact witness.  In its motion, FamilyCare erroneously relies on authority that applies to discovery of litigation strategy.  FamilyCare argues that its motion should be decided pursuant to the Eighth Circuit's framework developed in *Shelton v. American Motors Corp.*  In *Shelton*, the district court ordered sanctions when counsel refused to answer deposition questions regarding the conduct of discovery in the pending litigation.  805 F.2d 1323, 1327 (8th Cir.1986).  The Eighth Circuit analyzed the following three factors in reversing the sanctions award: whether: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.*

But the Ninth Circuit has not adopted the *Shelton* factors, and there is a circuit split on whether the heightened inquiry adopted by the Eighth Circuit in *Shelton* is ever appropriate.  *In re Allergan, Inc*, No. 14CV02004DOCKES, 2016 WL 5922717, at *3 (C.D. Cal. Sept. 23, 2016) ("[T]he Ninth Circuit has never adopted the Shelton framework . . . ."); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (Sotomayor, J.) (rejecting *Shelton*).

In any event, the Eighth Circuit itself has limited *Shelton*'s application to situations in which a party seeks to inquire into opposing counsel's strategy in the pending litigation, not

---

[1]  Earlier in this case, FamilyCare agreed that it was premature to discuss disqualification prior to discovery.  It dismissed concerns of disqualification, stating that without discovery regarding English's testimony, it was "premature to conclude that substitution of counsel will be required in this case."  (Plaintiff FamilyCare Inc.'s Reply in Support of its Motion for Leave to Amend at 4.)

**Page 7 -    OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE'S
             MOTION FOR A PROTECTIVE ORDER**

situations in which the attorney was also a fact witness to the subject matter of the litigation.  *See Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002).  In *Pamida*, the defendant in an indemnity action sought to depose plaintiff's counsel, who also represented plaintiff in the suit for which plaintiff sought indemnity, regarding the reasonableness of fees in the prior litigation.  The Eighth Circuit rejected application of *Shelton* to these facts.  *See Pamida, Inc.*, 281 F.3d at 730.  The court reasoned that *Shelton* was "intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy. . . [it] was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial." *Id.*

Consistent with *Pamida*, district courts in the Ninth Circuit have declined to apply *Shelton* where a party seeks to depose counsel regarding his participation in the subject matter of litigation prior to the litigation itself.  *See Rapid Funding Grp., Inc. v. Keybank Nat. Ass'n*, No. CV 07-1348-PK, 2008 WL 4681611, at *1 (D. Or. Oct. 22, 2008) (Mosman, J.) (permitting deposition of in-house counsel to determine circumstances surrounding termination of employee alleged to have defrauded plaintiff); *Am. Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 588–89 (S.D. Cal. 1995) (permitting deposition of insured's counsel in insurance bad faith case to determine circumstances surrounding default judgment entered against insured).  Here, OHA seeks to depose English regarding his personal knowledge of the facts underlying dozens of allegations in FamilyCare's complaint.  OHA does not intend to inquire into English's strategy in the pending litigation.  Because the Ninth Circuit has not adopted it, and district courts have rejected its application to similar facts, *Shelton* is inapposite.

C.    **Even if this Court applies the *Shelton* factors, it should not quash the subpoena to English.**

In any event, the *Shelton* factors militate in favor of allowing the deposition here.  Under *Shelton*, a deposition of opposing counsel should be permitted where "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant

Page 8 -    OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE'S
              MOTION FOR A PROTECTIVE ORDER

and nonprivileged, and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327. Each factor weighs in favor of permitting the deposition.

First, no other means exist to obtain information regarding the Agreement. As described above, English negotiated, signed, and performed the Agreement on behalf of FamilyCare. English's action on behalf of FamilyCare included in-person conversations and telephone calls with DOJ attorneys. (Stineman Decl. ¶ 4; (12/19/16 email from Stephen F. English to Theodore C. Falk, Wilson Decl. Ex. 3).) At times, FamilyCare's other attorneys sometimes seemed uninformed about English's discussions with DOJ attorneys. (2/03/17 Gordon email, Wilson Decl. Ex., 14.) Further, English would likely have been responsible for directing his firm's work and reviewing legal bills to FamilyCare and therefore is the sole source of information regarding damages. Thus, English has unique information that cannot be gathered from other sources.

Second, this information is relevant and non-privileged. Most of the information that OHA seeks from English involved his discussions with OHA leading to and during the dispute resolution process. Discussions with an adverse party are not privileged. Nor is attorney billing information privileged. *See Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 130 (9th Cir. 1992). Regardless, FamilyCare waived any privilege that may have attached to its attorneys' bills by seeking to recover attorney's fees.

Finally, the information OHA seeks is crucial to defending against FamilyCare's claims of breach. FamilyCare claims that OHA breached an Agreement negotiated and signed by English, and bases its claims of breach on various communications between DOJ attorneys and English. (*See* Third Amd. Compl. ¶¶ 41-46, 53-54; Stineman Decl. ¶ 2-4.) Therefore, OHA must be allowed to depose English in order to defend against FamilyCare's claims.

///

///

///

///

///

///

**Page 9 -  OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE'S
            MOTION FOR A PROTECTIVE ORDER**

## CONCLUSION

This Court should deny FamilyCare's motion for a protective order.

DATED this 5th day of April, 2018.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON


By:     */s/ Harry B. Wilson*

David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Matthew A. Levin, OSB #003054
MattLevin@MarkowitzHerbold.com
Renée E. Rothauge, OSB #903712
ReneeRothauge@Markowitzherbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com
*Special Assistant Attorneys General for Oregon Health Authority, an agency of the State of Oregon, and Patrick Allen, both individually and in his official capacity as director of the Oregon Health Authority*

712630

**Page 10 -   OREGON HEALTH AUTHORITY'S OPPOSITION TO FAMILYCARE'S
          MOTION FOR A PROTECTIVE ORDER**