# PERKINScoie

1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

☎ +1.503.727.2000
📠 +1.503.727.2222
PerkinsCoie.com

December 27, 2016

Stephen F. English
SEnglish@perkinscoie.com
D. +1.503.727.2003

Renee Steinman
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301

Re:     **FamilyCare v. OHA: Mediation Strategy**

Dear Renee:

Thank you again for taking the time to meet with us last week. As promised, I am getting this to you today so that you can circulate it today and hopefully get it back to me sometime tomorrow to let me know if FamilyCare and OHA can try to put something together to work through FamilyCare's concerns and issues. FamilyCare would like to have a binding agreement in place by Thursday, December 29, 2016, on the next steps and protocol.

The following is the suggested protocol:

1.    The parties would agree that FamilyCare will sign the 2017 Amendment before December 31, 2016, but that by so signing, FamilyCare will not waive any rights to contest—or any grounds for contesting—the 2017 rates and that, should the mediation process prove unsuccessful, FamilyCare may challenge its 2017 rates and if necessary, seek retroactive changes to those rates.

2.    Appointment of a mediator who would allow a free and open discussion between FamilyCare and the State regarding the appropriate application of actuarial rates including such issues as appropriateness of the methodology, discussion as to whether geographic areas come in to play with respect to methodology, and in general an examination of why FamilyCare believes the actuarial rates are unsound and an explanation by the State as to why the State believes the rates are, in fact, sound.

3.    Actuaries for the State and actuaries for FamilyCare should be present at any such meeting and in the same room so that there can be an actuary-to-actuary discussion with appropriate questions posed by counsel for the State or counsel for FamilyCare.

4.    An agreement that there will be no contact with the press, legislatures, or CMS, by either party until after the mediation has been concluded.

5.    The mediation would take place within the first two weeks of January at the first available date for all parties. The parties agree that they will work cooperatively to select

99999-0374/31603250.2

Perkins Coie LLP

Renee Steinman
December 27, 2016
Page 2

a mediator as quickly as possible. (In this regard, someone such as former Chief Justice Paul DeMuniz would be a strong selection).

6.    The parties would agree that they would work cooperatively to provide information that either the State's actuary or FamilyCare's actuary believes is relevant and necessary to set actuarial rates.

7.    The mediation can take place at a mutually agreeable location, Perkins Coie will make available it's office as necessary to accommodate both parties.

8.    The mediation protocol envisioned by FamilyCare would be a presentation by FamilyCare through a combination of its actuary and counsel, which would outline and demonstrate why the actuarial methodology is unsound.

9.    You have requested an identification of why the arguments are different "this time around" and the following addresses that issue:

- The proposed 2017 rates violates the settlement agreement between OHA and FamilyCare. Under the agreement, OHA covenanted that it would "not use rates paid to FamilyCare under the 2016 contract or the settlement credit as a basis for limiting the amount that can be paid to FamilyCare in future rate years," unless required by the Section 1115 Demonstration Project ("Waiver").

  OHA's proposal to reduce FamilyCare's payments by at least $34 million in 2017 because of the reimbursement amount FamilyCare has paid to primary care providers since November 2014 is a clawback of the settlement credit and a claim by OHA to recover amounts paid to FamilyCare before the proposed 2017 rates were issued. The clawback not only violates the Agreement, but is a retroactive rate amendment in violation of Oregon law, and the Wavier does not require OHA to implement the clawback.

- The proposed 2017 rates further violate the settlement agreement, as well as the contract and federal law, because they are not actuarially sound for two reasons.

  First, actuarial soundness requires that rates be sufficient to cover the CCO's expected expenses. But the 2017 rates are insufficient to cover FamilyCare's proposed expenses for the upcoming year.

  Second, actuarial soundness requires that rates be developed using actuarially sound methodologies. While the precise details of the methodology utilized by OHA remain unclear, OHA's proposal to pay significantly different rates for the two CCOs

Renee Steinman
December 27, 2016
Page 3

serving the same population in the TriCounty region indicates that its methodology is unsound. Problems with the methodology include, but are not necessarily limited to, the inconsistent application of various methods, including selectively and inconsistently switching between cost-relativity and risk-scoring methods across different categories and changing the basis for rate components between statewide data, regional data, and plan-specific data. implement the clawback.

At bottom, OHA's justification for the difference in rates between the two TriCounty CCOs does not make sense. OHA states that the 16% difference in the proposed 2017 rates for FamilyCare and Health Share results from a higher-risk profile among Health Share's members. But that seems implausible, given that the two CCOs serve the same geographic area, that both have significant numbers of members, and that those members are, for the most part, randomly assigned between the two CCOs.

10.   The parties would agree that the mediation will be conducted with the actuaries present, counsel for the parties present, and top level executives of FamilyCare and the State (for example: Jeff Heatherington, and Bill Murray for FamilyCare, and their counterparts from OHA. The parties agree that any mediation and face-to-face discussions will be conducted at the highest level of professionalism and courtesy, all with the goal toward accomplishing a resolution satisfactory to both parties.

11.   You have requested identification of claims, which will be made in the FamilyCare lawsuit. Specifically, the complaint alleges claims for specific performance, for declaratory relief, and for judicial review under ORS 183.480(3), *as follows:*

- The first claim is for specific performance of the settlement agreement. As discussed above, the proposed 2017 rates violate the settlement agreement because OHA's proposal to reduce FamilyCare's payments by at least $34 million in 2017 is a clawback of the settlement credit.

- The second claim is for a declaration enjoining OHA from implementing the clawback or from using actuarially unsound methods based on the rates paid to FamilyCare in 2016 to limit the amounts paid to FamilyCare in 2017.

- The third claim seeks an order compelling OHA to comply with the settlement agreement.

- In addition to the violations of the settlement agreement's prohibition on using 2016 or prior rates as a basis for limiting future rates to FamilyCare, the complaint also alleges that the 2017 rates further violate the settlement agreement and federal law because they are actuarially unsound, and that the 2017 rate

Renee Steinman
December 27, 2016
Page 4

amendment violates the prohibitions on multiple amendments and on retroactive amendments.

I hope this letter is sufficient in detail to allow you to determine whether a mediation with FamilyCare would make sense from the State's perspective. From the perspective of FamilyCare we are willing to make a good faith effort to resolve our differences and, all things considered, would prefer not moving forward with the lawsuit if we can reach an agreement. Thank you for your consideration.

Very truly yours,

Stephen F. English

SFE

cc:    Theodore Falk; Jeff Heatherington; Bill Murray; Tom Johnson; Melanie Curtice; Matt Gordon