PERKINSCOIE

1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

● +1.503.727.2000
● +1.503.727.2222
PerkinsCoie.com

January 25, 2017

Stephen F. English
SEnglish@perkinscoie.com
D.   +1.503.727.2003

Renee Stineman
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

**VIA EMAIL to renee.stineman@doj.state.or.us**

**Re:    FamilyCare-OHA Dispute Resolution**

Dear Renee:

Thank you for attending the January 17 meeting between my client, FamilyCare, Inc., and the Oregon Health Authority, the first of what is anticipated to be several meetings in the Dispute Resolution Process detailed in the Dispute Resolution Agreement that our respective clients executed on December 30, 2016.

This letter has two purposes: (1) to address whatever reluctance exists regarding FamilyCare's access to information necessary to evaluate the rate development process; and (2) to otherwise move the discussion forward in the Dispute Resolution Process so that subsequent meetings can be more productive.

*FamilyCare's Request for Information*

At the January 17 meeting, FamilyCare requested information its actuary, Ben Diederich of Milliman, needs in order to analyze the rate methodology.  This information includes data that allows Mr. Diederich to begin to evaluate why FamilyCare's 2017 CCO rates are meaningfully lower than the rates for the other 15 CCOs in Oregon and to understand at what point in the rate development methodology the 2017 FamilyCare rates became disconnected from its costs. Despite executing a Dispute Resolution Agreement that called for the sharing of such information, OHA has indicated that it would continue to resist providing FamilyCare with that information.

If OHA does not share the requested information, we believe it would be contrary to the parties' Dispute Resolution Agreement, counter-productive, and contrary to Governor Brown's stated commitment to increasing transparency.  It would also be short-sighted, because if perpetuated, it will leave litigation as the only option.  And, if litigation ensues, I believe we can convince a court that all of the information requested by FamilyCare—and much more—should be discoverable.

*Not Privileged, Confidential, or Subject to Rule 408 of the Oregon Evidence Code*

134244742.1

Perkins Coie LLP

OHA_LIT_00327486

Renee Stineman
January 25, 2017
Page 2

We remain committed to this discussion process to try to avoid litigation by working cooperatively and sharing information regarding the 2017 rates. The Dispute Resolution Agreement contemplated that the parties would conduct a "free and open discussion between them regarding the appropriate application of actuarial rates," which discussion would include, among other things, the "appropriateness of the methodology," the "actuarial soundness of the rates," an explanation from OHA about why it believes the rates to be sound, and any alternative methodology proposed by FamilyCare. To facilitate the discussion, OHA agreed that it would "work cooperatively" with FamilyCare and would provide information that FamilyCare's actuary "believes is relevant and necessary to evaluate actuarial rates, subject to protection of confidential information such as trade secrets[.]"

Consistent with that agreement, at the January 17 meeting, FamilyCare and Milliman detailed some of the questions they had about the "appropriateness of the methodology," and Mr. Diederich explained what information he believed was "relevant and necessary to evaluate actuarial rates." We also clarified that FamilyCare was willing to enter into an agreement to shield any information that OHA believed to be confidential from all eyes but those of FamilyCare's attorneys and actuary. As stated at the meeting, I routinely handle litigation matters in which the most sensitive of business information—source code, e.g.—is produced subject to such confidentiality agreements, and I know that DOJ does also.

OHA responded that there were limitations on what OHA could do with data it has received from the CCOs. But OHA has not identified those limitations, what the source of the limitations might be, or why the confidentiality agreement proposed by FamilyCare would not address OHA's concerns about such limitations. OHA previously stated that some of the information sought by FamilyCare cannot be released because it purportedly constitutes trade secret information. We disagree with this position, for three reasons.

First, the data FamilyCare has requested is not a trade secret. FamilyCare seeks data about CCOs' average utilization and average unit costs by category of service and about the adjustments that OHA/Optumas made to that data. A CCO's average unit cost is aggregate data that does not reveal anything that could reasonably be considered a trade secret. For example, even if a CCO maintained that its contracted price for a particular provider, for a particular unit of service, was a trade secret, the data requested by FamilyCare would not reveal that information; rather, such data merely shows the average amount that the CCO pays all providers for a particular unit of service. Milliman also needs to have the information necessary to understand and evaluate the "triangulation" process that Optumas employed, as well as the other adjustments Optumas made to the data. Of course, OHA cannot contend that any such information is a trade secret.

Second, even if the information were a trade secret, it will be discoverable under Oregon's broad scope of discovery if litigation results. In Oregon, as in most states, the bar for discovery is low:

134244742.1
Perkins Coie LLP

Ex 5 - Jindal Decl
Page 2 of 5

OHA_LIT_00327487

Renee Stineman
January 25, 2017
Page 3

information need only appear to be "reasonably calculated to lead to the discovery of admissible evidence." ORCP 36 B(1). Any claim of 'trade secret' would, at most, lead to production of such information pursuant to a protective order that limited the information to attorneys and actuaries, and the burden of establishing "good cause" for such an order would rest squarely on OHA. *See, e.g.*, *Pfizer Inc. v. Oregon Dep't of Justice ex rel. Kroger*, 254 Or. App. 144, 159, 294 P.3d 496, 505 (2012). As a result, our current offer—to agree to a confidentiality agreement for any information OHA feels ought to be protected, without requiring OHA to establish "good cause"—provides an easier opportunity for protection than OHA could achieve if this matter is litigated.

Third, OHA's approach undermines the letter and the spirit of the Dispute Resolution Agreement. FamilyCare needs the information it has requested to understand how Optumas developed the Medicaid capitation rates, the assumptions that Optumas made during the rate development process, and how the final rates became disconnected from FamilyCare's actual cost experience. The purpose of the Dispute Resolution Agreement is to facilitate a "free and open discussion between them regarding the appropriate application of actuarial rates." But such discussion is not possible without the information FamilyCare has requested—this is data that Milliman "believes is relevant and necessary to evaluate actuarial rates"; under the terms of the Dispute Resolution Agreement, OHA is obligated to provide it.

Please understand that FamilyCare does not desire litigation. Indeed, FamilyCare has already invested significant time, money, and resources into the Dispute Resolution Process with hopes of avoiding litigation. But if OHA continues to resist transparency, FamilyCare will have no choice but to file a lawsuit and obtain this information through discovery, a process that will be much more time-consuming and expensive for OHA and the state.

### *The Dispute Resolution Process*

The Dispute Resolution Agreement contemplated a quick process, and it is in nobody's interest to have unproductive meetings, particularly considering the considerable time and cost being expended. At the first meeting, after we explained the dilemma faced by FamilyCare, the questions that we had about the rate development, and the data that Milliman believes is relevant and necessary to evaluate the rates, you informed us that our request was surprising and that OHA could not address it without more time to prepare. You also indicated that OHA was expecting FamilyCare to present a dollar figure that it felt was necessary to make the 2017 rates acceptable.

I fully appreciate your willingness to get to a "bottom line" issue. From my perspective, however, getting to this number may not give us the understanding or guidance necessary to avoid future disagreements with OHA about capitation rates. That requires a more searching evaluation of the rate-setting process so that FamilyCare can understand how the final rates

134244742.1
Perkins Coie LLP

OHA_LIT_00327488

Renee Stineman
January 25, 2017
Page 4

became unmoored from its costs and evaluate what needs to be done to reconnect the two so that FamilyCare is not facing ever-increasing shortfalls. While FamilyCare can, and will, provide OHA with a particular number for 2017, focusing solely on that number at the expense of addressing the underlying root cause of the annual rate problems would be shortsighted.

To make future meetings more productive, I propose the following:

1. FamilyCare hopes to be in a position to present its analysis of the rate methodology at the February 6 meeting. That, however, requires that OHA provide the requested information well in advance of the meeting. Please let me know, as soon as possible, whether OHA will be willing to provide the information FamilyCare has requested, and if so, when.

2. If OHA intends to continue to resist providing the requested information, please so inform us, at least one week before the February 6 meeting, and provide detailed explanations for that decision, including any legal authority supporting the position. Please note that any claim by OHA that it will not provide information because Optumas believes it to be unnecessary will be counter to the express terms of OHA's promise, in the Dispute Resolution Agreement, to provide information that Mr. Diederich "believes is relevant and necessary to evaluate actuarial rates."

3. Meanwhile, I see no reason to delay OHA/Optumas's presentation as to why it believes the rates to be actuarially sound. Please let us know whether you will make that presentation at the next meeting.

4. FamilyCare provided OHA with the amount of its projected shortfall in 2017, and it will provide additional numbers before the February 6 meeting.

5. Please let us know, preferably one week before the February 6 meeting, whether there are other matters that you would like to discuss that day.

134244742.1
Perkins Coie LLP

Ex 5 - Jindal Decl
Page 4 of 5

OHA_LIT_00327489

Renee Stineman
January 25, 2017
Page 5


In closing:  FamilyCare prefers to not litigate this matter, but would rather resolve this through the agreed-upon Dispute Resolution Process.  That process will be quicker, less time-consuming, and far less costly to the parties and the taxpayers.  But a fundamental premise of that Process is that OHA will provide the information FamilyCare's actuary believes is necessary to evaluate the capitation rates.   FamilyCare will not shy from litigation if left with no other choice, but, at this point, there still is another option.

Thank you for your consideration.  Best regards.

Very truly yours,

Stephen F. English


cc:    Theodore Falk; Jeff Wahl; Carla Scott; Tom Johnson; Melanie Curtice; Matt Gordon;
       Meredith Price

134244742.1
Perkins Coie LLP

OHA_LIT_00327490