

ELLEN F. ROSENBLUM
Attorney General

FREDERICK M. BOSS
Deputy Attorney General

# DEPARTMENT OF JUSTICE
TRIAL DIVISION

February 27, 2017

*Via email only:  SEnglish@perkinscoie.com*

Stephen F. English
Perkins Coie
1120 NW Couch St 10th Fl
Portland, OR  97209-4128

Re:     FamilyCare-OHA Dispute Resolution

Dear Mr. English:

Your February 27, 2017, letter was received after the following was prepared.  We understand from that letter that FamilyCare has decided to stop participating in dispute resolution talks and sue OHA.  In light of this development, OHA does not intend to write separately to address the many inaccuracies in that letter.  OHA is confident in its rate setting process and, while it is unfortunate that FamilyCare has chosen to escalate the situation, OHA is prepared to defend Oregon's Health Plan against FamilyCare's attacks.

This letter responds to your email to me of February 16, 2017, and your letter to Ted Falk of February 20, 2017, regarding the ongoing dispute resolution discussions between FamilyCare and OHA.  Many of the statements in your email and letter are restatements of prior communications and have been addressed in my February 22, 2016 letter to you or at other times.  I revisit those points here only as appropriate.

At the core of this dispute, FamilyCare complains again, without specifying potential claims for relief,[1] that it is not being paid enough.  It is true that:  (1) because its rates were too high, in one instance, FamilyCare's rates were lowered (for the ACA population only; in that same year, its rates for the non-ACA population were raised); (2) due to its failure to meet the required ratio of medical to overall expenditures (MLR), FamilyCare is obligated to pay a rebate of federal Medicaid dollars; and (3) because its base data included irregular costs that were not sustainable, in one instance, FamilyCare's base data was adjusted.

---

[1] In responding to our request that you describe the legal claims for FamilyCare's threatened lawsuit regarding the 2017 rates, you provided a list of the types of *relief* FamilyCare may seek in court.  But you have not adequately set forth the *legal basis* upon which FamilyCare might be entitled to any relief in court related to the 2017 rates.

Ex 6 - Jindal Decl
Page 1 of 5

OHA_LIT_00077784

Stephen F. English
February 27, 2017
Page 2

These adjustments were all allowed by law and necessary and appropriate because FamilyCare has historically been overpaid.  FamilyCare has resisted each of these adjustments with actual or threatened litigation.  OHA has and will continue to openly consider concerns raised by FamilyCare, but OHA remains unaware of any reason to believe that FamilyCare has not been appropriately compensated under its contract.  Further, FamilyCare has been treated fairly and with the same scrutiny as all other CCOs.

Your email and letter express frustration on behalf of FamilyCare with what it apparently perceives as lack of progress in the dispute resolution process and with OHA's insistence on following the appropriate process for handling FamilyCare's numerous public records requests for certain potentially confidential information of other coordinated care organizations (CCOs).  Any lack of progress is due to FamilyCare's scattershot approach.   OHA's handling of the public records request is both appropriate and required by applicable laws.

1.    **FamilyCare's approach to the dispute resolution process has prevented progress.**

Throughout, FamilyCare has erected a number of hurdles slowing progress.  For example, FamilyCare has insisted that it cannot proceed further until it receives data of other CCOs that may be trade secret or otherwise exempt from production under Oregon's public records laws (leading to what you call the "status meeting," discussed below).  FamilyCare has made several overlapping and overbroad informational requests, which OHA has determined encompasses several terabytes of information which would cost hundreds of thousands of dollars to process.  Without withdrawing those requests, after several efforts by OHA's counsel to explain the complications presented by those requests, on February 6, FamilyCare issued yet another, albeit narrower request.  That request again seeks data potentially protected from disclosure.  OHA continues work necessary to respond to all pending requests, but has prioritized (with your agreement) the response to the February 6 request.

FamilyCare's counsel has presented numerous and changing topics for discussion, which are not consistent with the framework set out by the Dispute Resolution Agreement.  OHA is attempting to accommodate FamilyCare and work within the changing construct it presents.  But a large part of what FamilyCare demands of OHA is an explanation or "defense" of the soundness of its rates and methodology.  If what FamilyCare seeks is support for the soundness of the rates and methodology presented in a vacuum, it can review the rate certification for each rate year.  OHA understood that its presentation was to be directed to respond to concerns raised, and alternatives presented by, FamilyCare.  OHA has also been informed that FamilyCare cannot complete its presentation of its concerns or alternatives until after it receives the potentially confidential data of other CCOs.  Nonetheless, FamilyCare insists that OHA made a presentation defending its rates.  This circular approach is entirely unreasonable and inconsistent with the Dispute Resolution Agreement.  There is no reason to speed through the dispute resolution discussions when a methodical approach is more likely to lead to meaningful and productive conversations.

Stephen F. English
February 27, 2017
Page 3

The process has also been waylaid by a series of lengthy and unnecessarily antagonistic written communications from FamilyCare's counsel requiring detailed responses from OHA's counsel. And FamilyCare has itself embarked on a misleading public relations campaign, which is not productive and is time-consuming for OHA to address. A more disciplined dispute resolution process would progress more rapidly.

With regard to the meetings, the January 17 meeting had no announced agenda, which did not surprise OHA in light of prior discussions about how the meeting would be an informal "actuary to actuary" discussion. OHA was surprised to find the meeting room filled with lawyers, who guided a PowerPoint presentation. The form of presentation allowed only intermittent and guided comments by FamilyCare's actuary and setting up what appeared to be an expectation that FamilyCare's counsel would direct questions at OHA's actuary (in a deposition-like approach). Going into the meeting, there was no reason for OHA to have prepared its own presentation. OHA needed time to consider FamilyCare's formally prepared presentation, which it had just heard for the first time.

To the extent you complain about the February 6 meeting being conducted as a "status meeting," that was *your* suggestion, made, as you explained, because your client did not have the data of the other CCOs. As discussed in my February 21 letter to you, the meeting became substantive. For example, the parties exchanged information regarding the scope of the actuarially sound standard as it applies to the 2017 rates—indeed, FamilyCare's actuary listened to and confirmed the scope of that standard for those rates as explained by Mr. Falk during that meeting. Nonetheless, while I was not available to meet on the dates you proposed (February 15 and 16) we have suggested that another meeting be held in March, after OHA has made a determination regarding the February 6 public records request. Also, OHA has provided a written, narrative explanation of the reimbursement adjustment, most of which it has already provided to FamilyCare in previous communications with OHA.

### 2.    OHA continues to properly process FamilyCare's requests.

Since our initial meeting, we have explained that responding to FamilyCare's overbroad and unclear public records request is time consuming and costly. OHA continues processing the requests, but it is clear that due to their breadth and expense, a response will take more time and be expensive as the requests implicate over several terabytes of information. OHA will shortly present FamilyCare with an initial estimate of the costs that will be charged for processing the request, as permitted under Oregon's public records laws. If FamilyCare is willing to make the required deposit and pay the costs on the payment schedule OHA proposes, OHA will continue processing the request by hiring a consultant and other vendors as necessary to assist in collecting and reviewing records for the broader requests.

Stephen F. English
February 27, 2017
Page 4

Neither DOJ nor OHA has a preconceived notion of the right answer to the question of whether the data that FamilyCare requests is subject to disclosure or not, beyond extrapolation from answers received to a similar inquiry in the past. As discussed before, OHA has no stake in whether potentially confidential information of other CCOs is ultimately deemed trade secret or otherwise exempt from production. This is supported by the fact that when the rate setting process was revamped in 2015, the matter of what, if any, CCO specific information would be kept confidential to the producing CCO was left entirely to the CCOs. The CCOs, as a group, determined that certain information would not be shared. The information that OHA is evaluating for possible exemption under the public records laws is information of the same kind. If the CCOs had decided to share everything (which they could have done), the trade secret analysis that is underway would not be required.

Your letter suggests that OHA's letter and accompanying questionnaire is insufficient for a proper analysis of the nature of the information requested. These are used as a starting point, additional information may be sought by OHA, if necessary, and in some instances CCOs have already provided additional information. If it is FamilyCare's position that OHA should issue a supplemental request along the lines outlined in your letter, please let us know immediately so we can consider that option.

It is our understanding that FamilyCare does not claim that its version of the data described in its February 6 request are trade secrets or otherwise exempt from disclosure under the public records law. In fact, I specifically asked you, twice, at the February 6 meeting, whether FamilyCare was willing to share its data with other CCOs, and the answer was unequivocally: Yes. Consistent with that position, and with the knowledge that OHA would contact each CCO to obtain their positions regarding release of the data sought, FamilyCare attached, as explanatory examples, some of its data to its February 6 public records request addressed to DOJ (that request, in and of itself, being a public record). Naturally, OHA included those attached examples when it provided copies of FamilyCare's request to the other CCOs. While FamilyCare still does not appear to claim its data is confidential, it seeks to rely on the fact that other CCOs now have that information as leverage in an effort to force OHA to short circuit its review process and handover to FamilyCare the data of the other CCOs, claiming a resulting disparity in information. That result is not supported by the cases you cite. FamilyCare cannot trigger a disparity of information (to the extent such a disparity exists) and then use it to undermine the expectations of other CCOs.

You accuse OHA of using a biased trade secret questionnaire instrument and of tilting the analysis towards a pre-determined conclusion that trade secret protection should apply. Absent from your discussion is any mention of why OHA would adhere to this objective. In the end, OHA will make the best decision it can based on the information available and DOJ advice. If the decision is to exempt some information from disclosure, FamilyCare certainly may avail itself of the usual Public Records Order appeal process.

OHA_LIT_00077787

Stephen F. English
February 27, 2017
Page 5

       In sum, we disagree with your characterization of the events and the processing of FamilyCare's public records requests.  FamilyCare has set unreasonable preconditions and created unnecessary confusion in dispute resolution discussions.  FamilyCare has no basis to complain about any resulting slowdown of the process.  Further, OHA's processing of the various public records requests is appropriate and FamilyCare prompted the release of its data. FamilyCare has no basis to complain about either.


                          Sincerely,

                          *s/ Renee Stineman*

                          Renee Stineman
                          Attorney-in-Charge

8068220-v5/RS7/rh2

cc:      *(via email only)*
        Theodore Falk
        Jeff Wahl
        Carla Scott
        Melanie Curtice (MCurtice@perkinscoie.com)
        Matthew Gordon (mgordon@perkinscoie.com)
        Thomas Johnson (trjohnson@perkinscoie.com)
        Meredith Price (mprice@perkinscoie.com)

OHA_LIT_00077788