**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Matthew A. Levin, OSB #003054**
MattLevin@MarkowitzHerbold.com
**Renée E. Rothauge, OSB #903712**
ReneeRothauge@Markowitzherbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Tele: (503) 295-3085
Fax:  (503) 323-9105

Special Assistant Attorneys General for Oregon Health
Authority, an agency of the State of Oregon, and Patrick
Allen, both individually and in his official capacity as
director of the Oregon Health Authority

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>Plaintiff,<br><br>v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>Defendant. | Case No. 3:18-cv-00212-MO (Leading)<br>Case No. 6:18-cv-00296-MO(Trailing)<br><br>**REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTION TO DISMISS** |
| FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>Plaintiff,<br><br>v. | |

**REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTION TO DISMISS**

OREGON HEALTH AUTHORITY, an agency
of the State of Oregon, and PATRICK
ALLEN, both individually and in his official
capacity as director of the Oregon Health
Authority,

                                    Defendants.

**REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S
MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

MEMORANDUM IN SUPPORT OF REPLY TO FAMILYCARE'S OPPOSITION
TO OHA AND ALLEN'S MOTION TO DISMISS ................................................... 3

I.    Neither the Oregon APA nor the parties' contract provides FamilyCare with a
      right to sue OHA to obtain rates greater than those provided for in the contract
      or approved by the federal government. ........................................................... 3

      A.    FamilyCare's Oregon APA claims are preempted by federal law. ........................ 3

      B.    The parties' contracts do not, either expressly or impliedly, provide a
            basis for FamilyCare's claims. ................................................................... 3

II.   Patrick Allen is entitled to qualified immunity. .................................................. 6

CONCLUSION ............................................................................................................... 9

## TABLE OF AUTHORITIES

Page

**Cases**

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)...................................................................................... 8

*Berg v. Hirschy*
  206 Or. App. 472 (2006)............................................................................... 7

*County of Sacramento v. Lewis*
  523 U.S. 833 (1998)...................................................................................... 8

*Crystal Communs., Inc. v. Dep't of Revenue*
  19 Or. Tax 524 (2009) .................................................................................. 7

*Hinrichs and Hinrichs*
  37 Or App 833 (1978).................................................................................. 7

*Lankford v. Lankford*
  79 Or. App. 742 (1986)................................................................................ 7

*In re Marriage of McDuffy*
  184 Or. App. 359 (2002).......................................................................... 6, 7

*In the Matter of Marriage of Maxwell*
  128 Or. App. 565 (1994).......................................................................... 6, 7

*Pareto v. F.D.I.C.*
  139 F.3d 696 (9th Cir. 1998) ....................................................................... 3

*Soranno's Gasco v. Morgan*
  874 F.2d 1310 (9th Cir. 1989) ..................................................................... 8

*Speed's Auto Servs. Grp. Inc. v. City of Portland, Or.*
  No 3:12-cv-738-AC, 2014 WL 2809825 (D. Or. June 20, 2014)............... 6, 7

*Stevens v. Foren*
  154 Or. App. 52 (1998)................................................................................ 4

*Swartz v. KPMG LLP*
  476 F.3d 756 (9th Cir. 2007) ....................................................................... 4

*Westwood v. City of Hermiston*
  787 F. Supp.2d 1174 (D. Or. 2011) .......................................................... 6, 7

*WMX Tech., Inc. v. Miller*
  197 F.3d 367 (9th Cir. 1999) ....................................................................... 8

**Statutes and Other Authorities**

42 C.F.R. § 438.5.............................................................................................. 4

42 C.F.R. § 438.6.............................................................................................. 4

**Page ii - REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH
    AUTHORITY'S MOTION TO DISMISS**

42 U.S.C. § 1396b ................................................................................................... 1, 4

ORS 183.310 .............................................................................................................. 3

Webster's Third New Int'l Dictionary (unabridged ed 1993) ................................... 7

**Page iii -REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH**
**AUTHORITY'S MOTION TO DISMISS**

## INTRODUCTION

Medicaid law offers states a bargain: if a state develops actuarially sound rates for its managed care organizations, the federal government will provide funds to the state's Medicaid program. 42 U.S.C. § 1396b(m)(2)(A)(iii). Medicaid law does not *require* states to set actuarially sound rates; states may set whatever rates they choose. A state must be prepared, however, to forego federal funds if it develops rates that the Center for Medicare and Medicaid Systems ("CMS") finds are actuarially unsound.

Again and again, throughout its opposition, FamilyCare misapprehends those tenets of Medicaid law. FamilyCare repeatedly insists that "Federal law requires . . . capitation rates to be 'actuarially sound.'" (FamilyCare's Opp'n at 2; *see also* 11 ("OHA's rate-setting decisions contravened Oregon and federal law"); 12 ("the rates set by OHA violated the actuarial soundness requirement imposed by Medicaid Act"); 14 ("federal law requires OHA to set actuarially sound rates"); 15-16 ("the Medicaid Act requires the capitation rates set by OHA to be actuarially sound").) FamilyCare then contends that Oregon state law imposes the same "actuarial soundness" requirement because it "mandate[s] that OHA administer federally granted funds consistent with federal law." (*Id*. at 2.)

But FamilyCare is wrong: federal law does not require OHA to set actuarially sound rates and, therefore, Oregon law does not, by adoption, impose the same requirement. Accordingly, each of FamilyCare's claims premised on a supposed statutory right to "actuarially sound" rates fails. FamilyCare's Oregon Administrative Procedures Act ("APA") claims fail because they allege that OHA sets rates "in contravention with" Oregon and federal law. (Third Amended Complaint ("T.A.C.") ¶¶ 115, 155.) FamilyCare's Section 1983 claim fails because FamilyCare does not have a statutory right to "actuarially sound" rates. (*Id*. ¶ 87.) And FamilyCare's breach of implied covenant of good faith and fair dealing claims fail because FamilyCare cannot have a reasonable expectation to a right that does not exist. (*Id*. ¶ 148.)

**Page 1 -  REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH
          AUTHORITY'S MOTION TO DISMISS**

Those claims not only fail because federal Medicaid law does not require OHA to set actuarially sound rates, they also fail because federal Medicaid law preempts those claims. Indeed, were FamilyCare permitted to challenge whether OHA has set actuarially sound rates according to federal law, the results could throw the national Medicaid system into havoc. Managed care organizations nationwide would mount challenges and federal and state courts could enter judgments contradicting CMS and each other, making the determination of which states receive federal Medicaid funds impossible to administer. Medicaid's purpose could not be accomplished if FamilyCare is permitted to challenge a decision that belongs solely and exclusively to CMS.

In a last ditch effort to save its actuarial soundness claims, FamilyCare argues that the parties' five-year contract and the 2016 settlement agreement contain express and implied terms creating a contractual right to actuarially sound rates. (FamilyCare's Opp'n at 15.) But FamilyCare's argument is unmoored both from the terms of the contract and the allegations in its Third Amended Complaint. FamilyCare does not allege—because it cannot—that the contract contains express terms guaranteeing FamilyCare "actuarially sound" rates. And FamilyCare's contention that such a term is implied into the duty of good faith and fair dealing is founded on FamilyCare's erroneous contention that federal law guarantees it a right to actuarially sound rates.

All told, no federal statute or rule, no state statute or rule, and no contractual provision, express or implied, provides FamilyCare a right to "actuarially sound" rates. Accordingly, this Court should dismiss or strike each of FamilyCare's claims and allegations that contend FamilyCare has a right to actuarially sound rates.

FamilyCare likewise cannot establish that Patrick Allen ("Allen"), director of OHA, violated a clearly established right, because such a right does not exist either as to FamilyCare's goodwill or its purported entitlement to actuarially sound rates (as FamilyCare would define that term). This Court should therefore grant OHA and Allen's motions to dismiss.

**Page 2 - REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH
AUTHORITY'S MOTION TO DISMISS**

**MEMORANDUM IN SUPPORT OF REPLY TO FAMILYCARE'S OPPOSITION TO OHA AND ALLEN'S MOTION TO DISMISS**

**I.    Neither the Oregon APA nor the parties' contract provides FamilyCare with a right to sue OHA to obtain rates greater than those provided for in the contract or approved by the federal government.**

**A.    FamilyCare's Oregon APA claims are preempted by federal law.**

FamilyCare argues that its Oregon APA claims do not depend upon the existence of an independently enforceable federal right. And yet, they necessarily do. FamilyCare's attempts to invoke state law cannot be extricated from federal law. That is because to the extent that FamilyCare alleges that the Oregon APA provides it with a vehicle to sue OHA to obtain a particular rate, that claim is preempted by federal law. *See* OHA's Motion to Dismiss at 2; *see also* Opposition to FamilyCare's Motion to Dismiss at 3-4. The Oregon APA cannot serve as an end-run around an otherwise federally preempted claim. Accordingly, OHA is entitled to dismissal of FamilyCare's APA claims.

**B.    The parties' contracts do not, either expressly or impliedly, provide a basis for FamilyCare's claims.**

To the extent that FamilyCare relies on the parties' contracts to establish a right to actuarially sound rates different than those submitted to and approved by CMS, that claim fails as well.[1] In its support of its claim for violation of the implied covenant of good faith and fair dealing, FamilyCare broadly asserts that "based on the Contract and applicable law," FamilyCare had a reasonable expectation that OHA would present actuarially sound rates. (T.A.C. ¶ 148.) FamilyCare has not alleged, anywhere in its complaint, which parts of the over 300-page contract

---

[1] FamilyCare incorrectly asserts that the parties' contracts in which OHA sets forth the rates it will pay FamilyCare constitute "final orders" for purposes of the Oregon APA. ORS 183.310(6)(b) (defining a "final order" as "final agency action expressed in writing.") The rates contained in the contracts cannot reflect OHA's "complete statement of the agency's decision[,]" because CMS—not OHA—is the final arbiter of the rates. Until that point, OHA's rates are provisional, and do not qualify as a final order. And although FamilyCare maintains that the state trial court already determined that the 2017 Rate Amendment was a final order, to the extent that the trial court found otherwise, this court should disregard that conclusion. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 n. 1 (9th Cir. 1998) ("[W]e reject Pareto's argument that the district court was required to follow the decisions of the state court prior to removal, even when those decision were legally erroneous.").

**Page 3 -  REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTION TO DISMISS**

give rise to such an expectation. FamilyCare's opposition brief suggests for the first time that the contract's provision of "capitation" payments forms the basis for its claim that it is entitled to sue OHA to obtain actuarially sound rates. (Opp. at 2.) Notably, FamilyCare does not allege that the contract *itself* requires those capitation payments to be actuarially sound (hence the breach of the *implied* covenant of good faith claim). Instead, FamilyCare attempts to bootstrap a reasonable expectation to actuarially sound rates into the contract by referencing the federal law that requires CMS to approve rates as being actuarially sound *Id*., citing 42 U.S.C. § 1396b(m)(2)(A)(iii), 42 C.F.R. § 438.5(b), 438.6(c)(2).

But FamilyCare cannot co-opt the exclusive enforcement authority that the federal government possesses and transmogrify it into a substantive right held by FamilyCare. Again, there is no federal *requirement* that OHA provide FamilyCare with actuarially sound rates. Furthermore, federal law provides that the federal government is the exclusive arbiter of actuarial soundness. *See* OHA and Patrick Allen's Motions to Dismiss at p. 5-9; OHA's Opposition to Motion to Dismiss at p. 4-9. In light of that regulatory framework, FamilyCare has no basis to claim that it has a reasonable expectation of obtaining rates greater than those approved by CMS. Framed more starkly, FamilyCare cannot reasonably expect something that it is not entitled to as a matter of law.

Nor can FamilyCare have a reasonable expectation of a right under a contract that contradicts an express contract term. *Stevens v. Foren*, 154 Or. App. 52, 58 (1998). Yet that is precisely what FamilyCare is attempting to do, in several respects. First, the contract provides that the "consideration described in [the contract] is the total consideration payable to Contractor for all work performed under this Contract." (Decl. of Harry B. Wilson in Support of Patrick Allen and Oregon Health Authority's Reply in Support of Motion to Dismiss ("Wilson Reply Decl.") Ex. 1, p. 4); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (a court may consider "a writing referenced in a complaint but not explicitly incorporated herein if the complaint relies on the document and its authenticity is unquestioned.") Having expressly

**Page 4 -  REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTION TO DISMISS**

agreed to the consideration, *i.e.*, the rates, provided in the contract, FamilyCare cannot now maintain an implied right to something greater.

Second, the contract expressly excludes the actuarial report that OHA and its actuary, Optumas, create to submit to CMS for approval of the rates' actuarial soundness. More specifically, the contract provides that OHA develops "actuarially set Adjusted Per Capita Costs (Capitation Rates) to reimburse plans for providing the Covered Services." (Wilson Reply Decl. Ex. 1, p. 5.) The contract further explains that a "full description of the methodology used to calculate per capita costs may be found in" the actuarial report, available on OHA's website. That report in turn details how OHA and its actuaries arrived at the rates that it submits to CMS and certifies the actuarial soundness of the rates. That report is the only document that expressly reflects OHA's obligations to provide CMS with actuarial sound rates. But critically, the contract also expressly provides that the "[a]ctuarial report *is not part of this Contract*[.]" (*Id.*) (emphasis added.)

That express provision is fatal to FamilyCare's claim that the parties' contract forms the basis for FamilyCare's reasonable expectation of actuarially sound rates. OHA and its actuaries work to set actuarially sound rates to submit to CMS for approval, but that process takes place— by the express terms of the contract and consistent with the regulatory framework—outside of the parties' contract. And because the contract expressly provides that the actuarial report cannot be used to construe the contract, FamilyCare cannot successfully claim an implied right or reasonable expectation of actuarially sound rates.

Third, the contract itself incorporates a preemption provision of sorts that reflects the parties' intent that federal Medicaid law and regulations reign supreme and ultimately dictate many aspects of the contract. If "any provision of this Contract is in conflict with applicable federal Medicaid or CHIP statutes or regulations that CMS has not waived for the OHP, the Parties shall amend this Contract to conform to the provision of those laws or regulations." (*Id.* p. 2.) FamilyCare's claim that it is entitled to sue OHA to obtain rates greater than those approved by CMS runs directly contrary to "applicable federal Medicaid" laws and regulations.

**Page 5 - REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTION TO DISMISS**

In sum, FamilyCare's attempts to invoke the implied covenant of good faith and fair dealing runs headlong into the express terms of the parties' contracts, and should be dismissed.

**II.    Patrick Allen is entitled to qualified immunity.**

FamilyCare has failed to demonstrate that the law clearly establishes a constitutionally protected property interest in its goodwill or to actuarially sound rates.  This Court should dismiss the claims against Allen in his personal capacity.

FamilyCare's contention that Oregon law recognizes a goodwill property interest is based on language from two cases that only assume as much.  Opp. at 24-25; *Westwood v. City of Hermiston*, 787 F. Supp.2d 1174, 1997 (D. Or. 2011); *Speed's Auto Servs. Grp. Inc. v. City of Portland, Or.*, No 3:12-cv-738-AC, 2014 WL 2809825 at * 9 (D. Or. June 20, 2014).  Both opinions are unclear whether that conclusion was a matter in dispute, and neither case engages in significant analysis.  A careful review of Oregon law reveals no such constitutionally protected property interest exists and, in any event, is not so clearly established as to avoid qualified immunity.

Both of the cited cases rely on identical language from Oregon marriage dissolution cases to reach the conclusion that, "[u]nder Oregon law, "a business will normally have a value, 'over and above the value of its assets, known as goodwill value.'" *Westwood*, 787 F. Supp.2d at 1197 (citing *In re Marriage of McDuffy*, 184 Or. App. 359, 365 (2002) (quoting *In the Matter of Marriage of Maxwell*, 128 Or. App. 565, 568 (1994)); *see also Speed's Auto Servs. Grp. Inc.*, 2014 WL 2809825 at *9.  However, these Oregon cases do not address goodwill as property, but rather how to value a business in order to divide up marital assets and determine future earnings and spousal support.  The language quoted—"a value over and above the value of a business's assets"—is not some specialized concept of "goodwill," but rather a standard mechanism of determining the overall value of any and every business, the sum being worth more than adding up the value of its parts. Oregon courts use the term "goodwill" as shorthand to describe this valuation formula, not as an independently protected amount of property.

///

**Page 6 -  REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH
        AUTHORITY'S MOTION TO DISMISS**

Reviewing FamilyCare's cited cases confirms as much. *Maxwell* does indeed use the term "goodwill" to describe the "value over and above [a business's] assets." *In re Maxwell*, 128 Or. App. at 568. To support this statement, *Maxwell* cites a single case, *Hinrichs and Hinrichs*, 37 Or App 833, 836, (1978). *Id*. *Hinrichs*, in turn, explains that "valuation of the business must be as a going concern, which, generally, is greater than its asset value." *Hinrichs,* 37 Or App at 836 (emphasis added). *Hinrichs* does not refer to this method of assessing the value of the sum-greater-than-the-parts of a business as "goodwill." In fact, the opinion does not mention the word goodwill at all. Oregon courts frequently use the term "going concern" to describe the value of a business beyond its physical assets, and use the term interchangeably with "goodwill." *See, e.g. Lankford v. Lankford*, 79 Or. App. 742, 745 (1986) (referring to "goodwill" as the "income generating potential of the business."); *Crystal Communs., Inc. v. Dep't of Revenue*, 19 Or. Tax 524, 537 (2009) (using "goodwill" and "going concern value" interchangeably); *Berg v. Hirschy*, 206 Or. App. 472, 474 (2006) (discussing, in the context of the valuation of a business, "what is commonly described as 'goodwill' and/or 'going concern' value").

A term used generally to refer to the overall value of a business does not create a property interest. Many circumstances call upon a court to determine the value of a business, but the fact that the court answers the call or uses the term "goodwill" when doing so does not grant constitutional protections to each component of the business.

Indeed, the dictionary definition of "goodwill" used by the Oregon court, and that is quoted in both *Westwood* and *Speed's Auto* reinforces this conclusion. *See Westwood*, 787 F. Supp. 2d at 1197; *Speed's Auto*, 2014 WL 2809825 at *9. The definition includes

> favor or advantage in the way of custom that a business has acquired beyond the mere value of what it sells whether due to the personality of those conducting it, the nature of its location, its reputation for skill or promptitude or any other circumstance incidental to the business and tending to make it permanent.

*Id*. (quoting *McDuffy*, 184 Or. App. at 365, quoting Webster's Third New Int'l Dictionary, 979 (unabridged ed 1993)). Under this broad definition, things such as the "nature of a business's location" amounts to its "goodwill." Accordingly, governmental action affecting a business's

**Page 7 -  REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH
        AUTHORITY'S MOTION TO DISMISS**

neighborhood could trigger due process protections. Oregon law has simply not recognized such an expansive property right.

In contrast, California recognizes a narrowly defined, statutorily codified interest in goodwill. *See Soranno's Gasco v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989) (recognizing a property interest in California's statutory definition of goodwill, California Business & Professions Code, § 14100, as "the expectation of continued public patronage"). Accordingly, the Ninth Circuit has recognized a limited property right that could be implicated when the government directly interferes with "continue public patronage," such as by sending letters to a California business's customers informing them that the company could no longer perform its work. *WMX Tech., Inc. v. Miller*, 197 F.3d 367, 375 (9th Cir. 1999) (citing *Soranno's Gasco*, 874 F.2d at 1313). The Ninth Circuit has since explained that this decision relied heavily on the narrow and precise language of California's statutory definition of "goodwill." *See id*. This Court has no such precise language to evaluate, other than a far-reaching dictionary definition. The constitution protects state-defined property interests, not dictionary definitions.

Even if Oregon law provides for a property right to business goodwill, FamilyCare has not alleged facts—as opposed to legal conclusions couched as factual allegations—that would allow the Court to draw the reasonable inference that defendants violated FamilyCare's right. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put another way, the complaint does not adequately allege loss of actual business goodwill directly caused by Allen's conduct that was so clearly arbitrary or irrational that it shocks the conscience, as required to state a substantive due process claim. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 n.8 (1998) (for conduct to be "arbitrary in a constitutional sense," it must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience").

Allen is thus entitled to dismissal of the claims against him in his personal capacity.

///

///

///

///

**Page 8 - REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH AUTHORITY'S MOTION TO DISMISS**

**CONCLUSION**

For the foregoing reasons, this Court should grant OHA and Allen's motions to dismiss.

DATED this 12th day of April, 2018.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON


By:    */s/ Harry B. Wilson*

David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Matthew A. Levin, OSB #003054
MattLevin@MarkowitzHerbold.com
Renée E. Rothauge, OSB #903712
ReneeRothauge@Markowitzherbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com
*Special Assistant Attorneys General for*
*Oregon Health Authority, an agency of the*
*State of Oregon, and Patrick Allen, both*
*individually and in his official capacity as*
*director of the Oregon Health Authority*

**Page 9 -  REPLY IN SUPPORT OF PATRICK ALLEN AND OREGON HEALTH
      AUTHORITY'S MOTION TO DISMISS**