Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Douglas R. Pahl, OSB No. 950476
DPahl@perkinscoie.com
Matthew P. Gordon, *pro hac vice*
MGordon@perkinscoie.com
Brian Samuelson, OSB No. 165476
BSamuelson@perkinscoie.com
Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official Capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>        Plaintiff,<br><br>    v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>        Defendant.<br><br>────────────────────────<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>        Plaintiff,<br><br><br><br>    v. | No. 3:18−cv−00212−MO (LEAD)<br>No. 6:18-cv-00296-MO<br><br>PLAINTIFF FAMILYCARE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS |

1-  FAMILYCARE, INC.'S REPLY IN SUPPORT OF
    MOTION TO DISMISS

OREGON HEALTH AUTHORITY, an
agency of the State of Oregon, and
PATRICK ALLEN, both individually and in
his official capacity as director of the Oregon
Health Authority,

          Defendants.

2-  FAMILYCARE, INC.'S REPLY IN SUPPORT OF
    MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

      A.      OHA erroneously conflates preclusion of a judge-made equitable remedy with preemption of a state statute ............................................................ 2

      B.      OHA cites *no* authority that the Medicaid Act preempts Oregon law ................... 5

      C.      Congress's provision of one remedy does not preclude all other remedies ........... 6

      D.      Review of state agency decisions is consistent with Congress's intent to establish an agency-enforced Medicaid regime, cooperatively administered by state and federal agencies .......................................................... 9

CONCLUSION .................................................................................................................... 12

i- FAMILYCARE, INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arkansas Dep't of Human Res. v. Schroder*,
  122 S.W.3d 10 (Ark. 2003)................................................................................12

*Armstrong v. Exceptional Child Center, Inc.*,
  135 S. Ct. 1378 (2015)............................................................................... passim

*Ball v. Rodgers*,
  492 F.3d 1094 (9th Cir. 2007) .............................................................................8

*Bible v. United Student Aid Funds, Inc.*,
  799 F.3d 633 (7th Cir. 2015) ...............................................................................4

*Blessing v. Freestone*,
  520 U.S. 329 (1997)..............................................................................................3

*BT Bourbonnais Care, LLC v. Norwood*,
  866 F.3d 815 (7th Cir. 2017) ............................................................................8, 9

*Chamber of Commerce of U.S. v. Whiting*,
  563 U.S. 582 (2011)....................................................................................... 3-4, 5

*Cook v. Glover*,
  761 S.E.2d 267 (Ga. 2014)..................................................................................12

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*,
  841 F.3d 133 (2d Cir. 2016)..................................................................................3

*Hegadorn v. Dep't of Human Servs. Dir.*,
  904 N.W.2d 904 (Mich. App. 2017)...................................................................12

*Hillman v. Maretta*,
  569 U.S. 483 (2013)..............................................................................................3

*Joseph A. v. Ingram*,
  275 F.3d 1253 (10th Cir. 2002) ...........................................................................7

*Kentucky v. RiverValley Behavioral Health*,
  465 S.W.3d 460 (Ky. App. 2015) .......................................................................12

*Legacy Cmty. Health Servs., Inc. v. Smith*,
  881 F.3d 358 (5th Cir. 2018) ...............................................................................8

ii-    FAMILYCARE, INC.'S REPLY IN SUPPORT OF
         MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996)........................................................................................................3

*Mik v. Fed. Home Loan Mortgage Corp.*,
743 F.3d 149 (6th Cir. 2014) ........................................................................................4

*Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*,
699 F.3d 962 (7th Cir.2012) ..........................................................................................7

*Planned Parenthood of Kan. v. Andersen*,
882 F.3d 1205 (10th Cir. 2018) .....................................................................................8

*Rocky Mountain Health Maint. Org. v. Colo. Dep't of Health Care Policy & Fin.*,
54 P.3d 913 (Colo. 2001)........................................................................................11, 12

*Stowell v. Ives*,
976 F.2d 65 (1st Cir. 1992)............................................................................................8

*Suter v. Artist M.*,
503 U.S. 347 (1992)......................................................................................................7, 8

*Virginia Office for Protection and Advocacy v. Stewart*,
563 U.S. 247 (2011)........................................................................................................7

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) .........................................................................................4

*Wilder v. Va. Hosp. Ass'n*,
496 U.S. 498 (1990).............................................................................................. 7, 10-11

**STATUTES**

42 U.S.C. § 1320a-2...........................................................................................................8

42 U.S.C. § 1396a(a)(13)(A) ...........................................................................................10

42 U.S.C. § 1396a(a)(30)(A) ................................................................................... passim

42 U.S.C. § 1396b(m)(2)(A)(iii).............................................................................1, 5, 6, 9

42 U.S.C. § 1396p............................................................................................................12

42 U.S.C. § 1396r-5 .........................................................................................................12

iii-   FAMILYCARE, INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

42 U.S.C. § 1983 ................................................................................................ passim

ORS 183.480 .........................................................................................................6

ORS 413.071 .........................................................................................................9

**OTHER AUTHORITIES**

42 C.F.R. § 438.4 ................................................................................................10

42 C.F.R. § 438.5 ..............................................................................................9, 10

42 C.F.R. § 447.253(b)(1)(i) ...............................................................................12

iv- FAMILYCARE, INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**INTRODUCTION**

OHA's opposition to FamilyCare's Motion to Dismiss rests on one presupposition and one case. The presupposition—that the only possible remedy for a state agency's violation of the Medicaid Act or its implementing regulations is the Secretary's withholding of federal funds—is wrong, and the case—*Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015)—only proves it so.

OHA's argument in support of declaratory relief boils down to this: "42 U.S.C. § 1396b(m)(2)(A)(iii) is similar to 42 U.S.C. § 1396a(a)(30)(A), and the Supreme Court said in *Armstrong* that the sole remedy for enforcing § 30(A) is the withdrawal of federal funds." Setting aside that § 30(A) and § 1396b(m)(2)(A)(iii) are in fact quite different, *Armstrong* did *not* hold that the withdrawal of federal funds was the sole remedy to enforce § 30(A), merely the sole remedy *provided by Congress*. It did not hold that the Congressional provision of one remedy necessarily precluded all others. And it certainly did not hold that by providing a federal remedy, Congress preempted a cause of action provided by state law. All that *Armstrong* said is that *some* federal remedies are unavailable to enforce *one* provision of the Medicaid Act. That decision has no bearing on FamilyCare's claims, which invoke the Oregon Administrative Procedures Act and the common law of contracts to enforce OHA's compliance with the requirement that it set actuarially sound capitation rates.

Neither *Armstrong* nor any other case cited by OHA held that a state law cause of action was preempted by the Medicaid Act. The lack of any such authority is telling. It is also unsurprising, because Medicaid is a *cooperative* federal-state program, the Act explicitly delegates to states the responsibility for developing and setting capitation rates, and a state's provision of a remedy to ensure the state's compliance with the Act's requirements is consistent with the Medicaid system. Indeed, *Armstrong* makes clear that Medicaid is an *agency-enforced* scheme. It follows that Congress intended to preserve, not destroy, the full machinery of the administrative state, including judicial review of any final agency actions, state or federal, under

1-    FAMILYCARE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

the Act.  OHA points to nothing suggesting that in delegating rate setting to a state agency, Congress manifested a clear intent to abrogate the provisions of state administrative law necessary to ensure that the state agency sets rates in accordance with the Medicaid Act and state law.  As such, FamilyCare's claims are not preempted, and OHA's complaint for declaratory judgment should be dismissed.

## ARGUMENT

### A.    OHA erroneously conflates preclusion of a judge-made equitable remedy with preemption of a state statute.

OHA's repeated insistence that Congress intended to preclude "private remedies" to enforce the Medicaid Act's actuarial soundness requirements fails to distinguish between *preclusion of federal remedies* and *preemption of state statutes*.  *See* Oregon Health Authority's Opposition to FamilyCare, Inc.'s Motion to Dismiss ("Opp.") at 4, 7.  Indeed, OHA asserts that "the salient point from *Armstrong* is unaffected by the nature of the challenge's vehicle. Whether a private action is brought under the APA, the Medicaid Act, or some other provision of state or federal law, the outcome is the same."  Opp. at 10.

But whether a remedy is precluded does, in fact, depend on the nature of the remedy. *Armstrong* itself illustrates this point.  In *Armstrong*, the Court held that federal equitable relief was precluded, noted that federal APA relief was not precluded, did not reach the question whether relief under § 1983 was available, and failed to command a majority for the part of the opinion holding that the Medicaid Act itself did not create a private right of action.  *Armstrong*, 135 S. Ct. at 1385-87.  OHA's assertion that the outcome of the preclusion analysis "is unaffected by the nature of the challenge's vehicle" is simply incorrect.

Moreover, the Supreme Court has articulated very different standards for preclusion of different remedies.  The power of federal courts of equity to enjoin unlawful executive action, for example, is a "judge-made remedy," and therefore "subject to express and implied statutory limitations."  *Id.* at 1384, 1385.  In *Armstrong*, the Court considered two factors to determine

2-  FAMILYCARE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

whether Congress intended to foreclose such equitable relief: (1) Congress's provision of a single statutory remedy for violation of the provision at issue; and (2) the judicially unadministrable nature of the statutory text. *Id.* at 1385; *see also, e.g.*, *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 145-47 (2d Cir. 2016) (applying two-part *Armstrong* test to determine whether Congress intended to foreclose equitable relief).

In contrast, a different test determines whether a statutory provision may be enforced using 42 U.S.C. § 1983:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) (internal citations omitted).

And yet another test determines whether a *state* statutory remedy is preempted under the principle of "conflict preemption." Courts "must first ascertain the nature of the federal interest" and then determine whether the state law in question "frustrates the deliberate purpose of Congress." *Hillman v. Maretta*, 569 U.S. 483, 491, 494 (2013). And because preemption of state law by definition curtails the sovereign power of the state, the standard for finding such preemption is especially high: "[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Unlike preclusion of federal judge-made remedies, "a high threshold must be met if a state law is to be preempted for

3- FAMILYCARE, INC.'S REPLY IN SUPPORT OF
   MOTION TO DISMISS

conflicting with the purposes of a federal Act." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011).

The distinction between preclusion of *federal* remedies and preemption of *state* remedies is critical because "a violation of federal law can support a state law claim, even when—or perhaps, *especially* when—there is no private right of action under a federal statute." *Mik v. Fed. Home Loan Mortgage Corp.*, 743 F.3d 149, 166 (6th Cir. 2014) (emphasis original) (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 554 (7th Cir. 2012)). In *Wigod*, a homeowner brought claims under Illinois law against her home mortgage servicer, Wells Fargo, for failing to modify her loan under the Home Affordable Mortgage Program (HAMP), a federally-administered program designed to help homeowners avoid foreclosure. *Wigod*, 673 F.3d at 554. Relying on the fact that there was no private right of action under HAMP, Wells Fargo brought a motion to dismiss based on the "novel assumption" that "where Congress does not create a private right of action for violation of a federal law, no right of action may exist under state law, either." *Id.* at 581. The Seventh Circuit rejected this argument, noting that "Wells Fargo and the district court [which granted the motion to dismiss] appear to have conflated two distinct lines of cases—one involving the existence of a federal private right of action . . . and the other about federal preemption of state law." *Id.* The Seventh Circuit explained, "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law. . . . To find otherwise would require adopting the novel presumption that where Congress provides no remedy under federal law, state law may not afford one in its stead." *Id.*; *see also Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 654 (7th Cir. 2015) (rejecting theory that "the lack of a private right of action under a regulatory statute necessarily preempts or otherwise displaces a state law cause of action that makes the violation of that regulatory statute an element of the claim").

In short, "Congress's decision not to supply a remedy under federal law does not necessarily mean that it also intended to displace state law remedies." *Bible*, 799 F.3d at 654-55.

4- FAMILYCARE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

Therefore, even granting OHA's argument that Congress intended to preclude all federal remedies for the actuarial soundness requirement of the Medicaid Act (which as explained in Section C below is flawed), OHA's failure to present authority that Congress intended to preempt state law remedies is fatal to its claim.

**B.**      **OHA cites *no* authority that the Medicaid Act preempts Oregon law.**

OHA fails to cite a single case in which a state law cause of action was preempted by the Medicaid Act.  Indeed, it fails to cite any case in any context in which judicial review of a state agency action under a state Administrative Procedure Act was preempted by federal law.  And it cites no case supporting its assertion that "Congress intended for the federal government to be both the exclusive arbiter of whether the rates provided to CCOs are actuarially sound, as well as the exclusive arbiter of the penalty (withholding of federal funds) for a state's failure to provide such rates."  Opp. at 4.  *Cf. Whiting*, 563 U.S. at 607 ("Implied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives'; such an endeavor 'would undercut the principle that it is Congress rather than the courts that preempts state law.'").

*Armstrong* does not help OHA's position.  *Armstrong* was not a preemption case, and did not consider whether Congress expressed a "clear and manifest purpose" in the Medicaid Act to abrogate the power of states to hold their own administrative agencies accountable through judicial review.  Instead, as OHA seems to acknowledge in its brief, *Armstrong*'s preclusion analysis focused on whether § 30(A) was "judicially administrable," a factor relevant only to whether a judge-made federal equitable remedy is appropriate, not to whether a state statute is preempted.[1]  (Indeed, *Armstrong* affirmed the availability of a federal APA remedy, and

---

[1] As explained in FamilyCare's motion and discussed below, *Armstrong*'s reasoning does not apply to § 1396b(m)(2)(A)(iii) for the independent reason that the actuarial soundness requirement, unlike § 30(A), is not "judicially unadministrable."

5-   FAMILYCARE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

§ 1396b(m)(2)(A)(iii) is no less administrable under Oregon's APA than the federal one.) *Armstrong* is OHA's only answer to FamilyCare's motion to dismiss, but it is no answer at all.

**C.      Congress's provision of one remedy does not preclude all other remedies.**

Setting aside OHA's failure to distinguish between preclusion of federal remedies and preemption of state law (and its failure to show that the high standard for preemption has been met), OHA's argument that *any* remedies have been precluded rests on its repeated assertion that the "sole remedy" for a state's failure to comply with Medicaid rate-setting requirements is "the withholding of Medicaid funds by the Secretary of Health and Human Services."  Opp. at 5; *see also id.* at 7, 10 (all quoting *Armstrong*, 135 S. Ct. at 1385).   But OHA's quotations to *Armstrong* omit critical words: the Court in fact said "the sole remedy *Congress provided* for a State's failure to comply with Medicaid's requirements" is the withholding of federal funds. *Armstrong*, 135 S. Ct. at 1385 (emphasis added).  OHA contends that because Congress said that CMS may withhold funding from non-compliant state Medicaid programs, all other remedies are foreclosed, regardless of the sources of law—including state statutes like ORS 183.480.  That contention is wrong: it is well settled that Congress's mere decision to permit a federal agency to withhold funding does not automatically foreclose other federal remedies to enforce compliance.

Contrary to OHA's argument, *Armstrong* did not hold that Congress's provision of one remedy necessarily precludes all other remedies.  *See* Opp. at 7.  Indeed, the language of the decision indicates just the opposite—that the statutory remedy did not, by itself, foreclose other remedies.  When analyzing whether Congress intended to foreclose equitable relief under § 30(A) of the Act, the Court noted that "[t]he provision for the Secretary's enforcement by withholding funds might not, *by itself*, preclude the availability of equitable relief."  *Armstrong*, 135 S. Ct. at 1385 (emphasis original).  Rather, it was the provision of one remedy "*combined with* the judicially unadministrable nature of § 30(A)'s text" that led the Court to conclude that Congress intended to preclude federal equitable relief.  *Id.* (emphasis added)*; see also* Opp. at 5

6-   FAMILYCARE, INC.'S REPLY IN SUPPORT OF
      MOTION TO DISMISS

                                        **Perkins Coie LLP**
                              1120 N.W. Couch Street, 10th Floor
                                    Portland, OR  97209-4128
                                     Phone:  503.727.2000
                                      Fax:  503.727.2222

(noting that judicially unadministrable nature of § 30(A) was "critical" to preclusion of federal equitable remedy).

Indeed, as the Supreme Court has recognized (and reaffirmed in *Armstrong*) "[t]he fact that the Federal Government can exercise oversight of a federal spending program and even withhold or withdraw funds—which are the chief statutory features respondents point to—does not demonstrate that Congress has 'displayed an intent not to provide the more complete and more immediate relief that would otherwise be available under *Ex parte Young*.'" *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 256 n.3 (2011) (cited in *Armstrong*, 135 S. Ct. at 1385). Agency authority over funding, even when coupled with the "availability of an action against [an agency] under the APA," does not provide a "sufficiently comprehensive" scheme to bar other avenues of relief. *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 522 & n. 19 (1990). Thus, "[c]ourts have consistently held that statutory schemes that merely give oversight and funding control to the federal government do not foreclose § 1983 claims." *Joseph A. v. Ingram*, 275 F.3d 1253, 1263 (10th Cir. 2002); *see also Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 974–75 (7th Cir.2012) (agency's "power to shut off all or part of a state's funding is not a comprehensive enforcement scheme" (internal marks omitted)).

Congress, too, has rejected the notion that its provision for the Secretary's enforcement of the Medicaid Act by withholding funds is by itself enough to preclude other forms of relief. In *Suter v. Artist M.*, the Supreme Court held that plaintiffs could not use 42 U.S.C. § 1983 to enforce a provision of the Adoption Assistance and Child Welfare Act, which is part of the Social Security Act (which also houses the Medicaid Act). *Suter v. Artist M.*, 503 U.S. 347, 350 (1992). The analysis in *Suter* emphasized the fact that the particular provision at issue there required a state to compile a sixteen-feature plan and submit it for approval to the Secretary of Health and Human Services before it could "obtain federal reimbursement." *Id.* at 358. In the wake of *Suter*, some courts held that the key lesson from that decision was that "when a

7- FAMILYCARE, INC.'S REPLY IN SUPPORT OF
   MOTION TO DISMISS

provision in a statute fails to impose a direct obligation on the States, instead placing the onus of [ensuring] compliance with the statute's substantive provisions on the federal government, no cause of action cognizable under section 1983 can flourish." *Stowell v. Ives*, 976 F.2d 65, 70 (1st Cir. 1992). Congress acted decisively to correct this misconception and reestablish the private right of action as it existed before *Suter*, enacting 42 U.S.C. § 1320a-2, which provides:

> In an action brought to enforce a provision of [the Social Security Chapter of the United States Code], *such provision is not to be deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan.* This section is not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in *Suter v. Artist M.* . . . .

(Emphasis added.)

Since the adoption of this provision, commonly referred to as the "*Suter* fix," "courts around the country have relied on it in holding some Medicaid Act rights enforceable under § 1983 even where the statute's 'rights-creating' language is embedded within a requirement that a state file a plan or that that plan contain specific features." *Ball v. Rodgers*, 492 F.3d 1094, 1111-12 (9th Cir. 2007) (citing such cases). Congress's direct action on this point indicates that Congress did not intend the Secretary's enforcement power to preclude all other remedies.

Consistent with Congress's guidance that CMS's ability to withhold federal funds does not necessarily preclude other forms of relief, several courts have held, post-*Armstrong*, that plaintiffs may bring claims under federal law for violations of other sections of the Medicaid Act, each of which could also have been enforced by CMS by withholding federal funds. *See Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1229 (10th Cir. 2018); *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 373 (5th Cir. 2018); *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 820-21 (7th Cir. 2017). OHA points out that those cases examined different provisions of the Medicaid Act and distinguished *Armstrong*, Opp. at 11-12, but that is precisely the point. Such distinctions would be impossible if the lesson from *Armstrong* was that

8-  FAMILYCARE, INC.'S REPLY IN SUPPORT OF
    MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

CMS's ability to withhold federal funds from non-conforming plans is enough to "demonstrate[] that Congress intended to preclude other, private remedies." Opp. at 7. As the Seventh Circuit noted in *BT Bourbonnais Care, LLC*, "nothing in *Armstrong*, *Gonzaga*, or any other case we have found supports the idea that plaintiffs are now flatly forbidden in section 1983 actions to rely on a statute passed pursuant to Congress's Spending Clause powers." 866 F.3d at 820-21.

The most that can be said about *Armstrong*, then, is that it held that Congress precluded *some* federal remedies for violation of *one* provision of the Medicaid Act. *Cf. BT Bourbonnais Care,* LLC, 866 F.3d at 823 ("Each part of the statute must be evaluated on its own."). OHA must do more than point to CMS's authority to withdraw federal funds from non-conforming plans to show that state administrative remedies have been preempted by the Medicaid Act.

**D.      Review of state agency decisions is consistent with Congress's intent to establish an agency-enforced Medicaid regime, cooperatively administered by state and federal agencies.**

If anything, *Armstrong* supports the view that Congress intended to establish an *agency-enforced* Medicaid regime. *See Armstrong*, 135 S. Ct. at 1385 (Congress sought to achieve "the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking" (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 292 (2002)). It follows that Congress intended to preserve, not destroy, the full machinery of the administrative state, including judicial review of any final agency actions, state or federal, under the Act. Preempting state administrative remedies would eliminate a state's ability to compel its own agencies to comply with federal Medicaid requirements and with any such requirements that have been incorporated into state law. *See* ORS 413.071 ("Notwithstanding any other provision of law, federal laws shall govern the administration of federally granted funds."). It would effectively eliminate the states' ability to control their own agencies as they administer the Medicaid Act.

OHA argues that "Congress intended for the federal government to be . . . the exclusive arbiter of whether the rates provided to CCOs are actuarially sound." Opp. at 4. But as

9-  FAMILYCARE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

discussed in FamilyCare's motion to dismiss, Medicaid is a *cooperative* federal-state program, and the Act explicitly gives states the frontline role in developing and setting capitation rates. *See* 42 U.S.C. § 1396b(m)(2)(A)(iii); *see also* 42 C.F.R. § 438.5(b) ("In setting actuarially sound capitation rates, the State must follow the steps below, in an appropriate order, in accordance with this section, or explain why they are not applicable."). Congress deliberately did not give CMS the authority to set capitation rates directly. There is no indication that Congress intended to delegate rate setting to a state agency while simultaneously abrogating those provisions of state administrative law necessary to ensure that the state agency sets rates in accordance with the Medicaid Act and state law. Nor does OHA explain how review of its rate-setting decisions infringes on CMS's authority to give the thumbs-up or thumbs-down to whatever rates cross its desk.

OHA argues that determining whether rates are actuarially sound is "judicially unadministrable." Opp. at 7-8. As a preliminary matter, the actuarial soundness requirement is easily distinguishable from the vague rate-setting standard addressed in *Armstrong*. Whereas the Court remarked that "[i]t is difficult to imagine a requirement broader and less specific than § 30(A)'s mandate that state plans provide for payments that are 'consistent with efficiency, economy, and quality of care,'" *Armstrong*, 135 S. Ct. at 1385, the actuarial soundness requirements require states to follow specific, concrete, and verifiable steps to set their capitation rates. *See* 42 C.F.R. § 438.5. Indeed, *Armstrong* contrasted the wording of § 30(A) with that of former 42 U.S.C. § 1396a(a)(13)(A), known as the Boren Amendment, which, like the actuarial soundness mandate, required rates for nursing facility services to be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." *Armstrong*, 135 S. Ct. at 1386; *see* 42 C.F.R. § 438.4 (defining actuarially sound capitation rates as rates "projected to provide for all reasonable, appropriate, and attainable costs" for the operation of the CCO). The Court noted that the vague language of § 30(A) is "nowhere near identical" to that of the Boren Amendment. *Armstrong*, 135 S. Ct. at 1386; *see also Wilder v.*

10- FAMILYCARE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Virginia Hosp. Ass'n*, 496 U.S. 498, 519 (1990) (rejecting argument that "reasonable and adequate" rate standard is "too 'vague and amorphous' to be judicially enforceable").

In support of its assertion that actuarial soundness is judicially unadministrable, OHA argues that "the actuarial soundness determination is complex and multi-faceted." Opp. at 7. But "complex and multi-faceted" is not the same thing as "judicially unadministrable." Courts frequently resolve "complex and multi-faceted" disputes. Indeed, other courts have had no trouble assessing the actuarial soundness of capitation rates. *See Rocky Mountain Health Maint. Org. v. Colo. Dep't of Health Care Policy & Fin.*, 54 P.3d 913, 919-20 (Colo. 2001) (affirming damages award against state Medicaid agency for setting actuarially unsound capitation rates in breach of contract with managed care organization).

But more importantly, analysis of whether a provision is judicially administrable is at most relevant to whether Congress intended to preclude a federal equitable remedy, but not whether a state statute is preempted by federal law. *See* Section A above. And for all OHA's argument that actuarial soundness is not administrable, OHA acknowledges that a court may review actuarial soundness pursuant to the federal Administrative Procedures Act. *See* Opp. 10-11. Rate setting determinations are no less judicially administrable under a state APA than the federal counterpart.

Finally, OHA argues that allowing FamilyCare to go forward with its state APA claims will lead to a parade of horribles for OHA and Medicaid. Opp. at 8-9. Most of them seem to be the natural consequence of requiring OHA to stand and justify its rate setting decisions in court. While undoubtedly undesirable from OHA's point of view, these problems are not in themselves a reason to preempt a state statute explicitly providing for such review. OHA's concern that courts in different jurisdictions may construe the law in different ways is adequately addressed by the longstanding principles of issue preclusion and claim preclusion. And while it may have been more "orderly" to establish a scheme in which CMS was entirely responsible for rate-setting, that is not the scheme Congress established. In any case, these fears are overblown—

11- FAMILYCARE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

other courts have long entertained state APA actions seeking to compel state Medicaid agencies to comply with the requirements of the Medicaid Act without causing the widespread problems of which OHA warns. *See, e.g.*, *Cook v. Glover*, 761 S.E.2d 267 (Ga. 2014) (reviewing state agency action under Georgia Administrative Procedure Act for compliance with 42 U.S.C. § 1396p); *Hegadorn v. Dep't of Human Servs. Dir.*, 904 N.W.2d 904 (Mich. App. 2017) (reviewing denial of Medicaid benefits for compliance with federal law); *Arkansas Dep't of Human Res. v. Schroder*, 122 S.W.3d 10, 17 (Ark. 2003) (denial of Medicaid benefits did not comply with 42 USC § 1396r-5); *Kentucky v. RiverValley Behavioral Health*, 465 S.W.3d 460, 468-69 (Ky. App. 2015) (state methodology for calculating Medicaid reimbursement rates failed to comply with 42 CFR § 447.253(b)(1)(i), which requires rates to be "reasonable and adequate"); *see also Rocky Mountain Health Maint. Org. v. Colo. Dep't of Health Care Policy & Fin.*, 54 P.3d 913, 919-20 (Colo. 2001) (affirming damages award against state Medicaid agency for setting actuarially unsound capitation rates in breach of contract with managed care organization).

## CONCLUSION

For the foregoing reasons, OHA's complaint for declaratory relief should be dismissed with prejudice.[2]

---

[2] OHA did not dispute FamilyCare's observation that even if OHA could cure the deficiencies in its complaint—and it cannot—there is no reason to grant OHA leave to amend given that FamilyCare has now asserted an APA claim challenging the 2018 rates, and any unresolved issues regarding preemption of that claim can be addressed through OHA's defense to FamilyCare's claim. *See* FamilyCare, Inc.'s Motion to Dismiss at 2, n.1.

12- FAMILYCARE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

DATED:  April 12, 2018                    **PERKINS COIE LLP**


                                          By: *s/ Stephen F. English*
                                               Stephen F. English, OSB No. 730843
                                               SEnglish@perkinscoie.com
                                               Matthew P. Gordon, *pro hac vice*
                                               MGordon@perkinscoie.com
                                               Brian P. Samuelson, OSB No. 165476
                                               BSamuelson@perkinscoie.com
                                               Perkins Coie LLP
                                               1120 N.W. Couch Street, 10th Floor
                                               Portland, OR  97209-4128
                                               Telephone:  503.727.2000
                                               Facsimile:  503.727.2222

                                          *Attorneys for Plaintiff FamilyCare, Inc.*

13- FAMILYCARE, INC.'S REPLY IN SUPPORT OF
    MOTION TO DISMISS