IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FAMILYCARE, INC., an Oregon )
non-profit corporation, )
)
      Plaintiff, ) Case No. 6:18-cv-00296-MO
)
  v. )
)
OREGON HEALTH AUTHORITY, an )
agency of the State of Oregon, )
and PATRICK ALLEN, both )
individually and in his )
official capacity as director )
of the Oregon Health Authority,)
)
      Defendants. )
------------------------------)
PATRICK ALLEN, in his official )
capacity as director of Oregon )
Health Authority, an agency of )
the State of Oregon, )
)
      Plaintiff, ) Case No. 3:18-cv-00212-MO
)
  v. )
) April 20, 2018
FAMILYCARE, INC., an Oregon )
non-profit corporation, )
)
      Defendant. ) Portland, Oregon
_____)

**Oral Argument**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT CHIEF JUDGE

APPEARANCES


FOR FAMILYCARE, INC:        Mr. Stephen F. English
                           Mr. Brian P. Samuelson
                           Ms. Alletta S. Brenner
                           Perkins Coie, LLP
                           1120 N.W. Couch Street, 10th Floor
                           Portland, OR 97209-4128


                           Mr. Matthew P. Gordon
                           Perkins Coie, LLP
                           1201 Third Avenue, Suite 4800
                           Seattle, WA 98101-3099



FOR OREGON HEALTH
AUTHORITY and PATRICK
ALLEN:                     Mr. David Markowitz
                           Mr. Matthew A. Levin
                           Markowitz Herbold PC
                           1211 S.W. Fifth Avenue, Suite 3000
                           Portland, OR 97204



                           Ms. Carla Scott
                           Oregon Department of Justice
                           100 S.W. Market Street
                           Portland, OR 97201




COURT REPORTER:            Bonita J. Shumway, CSR, RMR, CRR
                           United States District Courthouse
                           1000 S.W. Third Ave., Room 301
                           Portland, OR  97204
                           (503) 326-8188

(P R O C E E D I N G S)

(April 20, 2018)

THE CLERK:  Your Honor, this is the time set for oral argument in Case No. 3:18-cv-00212-MO, Allen v. FamilyCare, Inc.; and Case No. 6:18-cv-296-MO, FamilyCare, Inc. v. Oregon Health Authority, et al.

Counsel, please state your name for the record.

MR. ENGLISH:  Stephen English on behalf of FamilyCare, Your Honor.  Argument today will be handled by my colleagues, Brian Samuelson, Matt Gordon, and Alletta Brenner.

THE COURT:  Thank you.

MR. LEVIN:  Good morning, Your Honor.  Matt Levin on behalf of OHA and Mr. Allen.  Argument will be handled by me and by my colleague, Mr. Markowitz, and we also have Carla Scott here from the Department of Justice.

THE COURT:  Thank you.

I'd like to take oral argument in pieces, and some of those pieces are tentative -- and I'll give you my tentative views -- and some are not.

So OHA has moved to dismiss, and one of its initial -- I might call it sort of a threshold theory -- is that there is -- that FamilyCare simply doesn't have a right to actuarially sound rates, and therefore Claims 1 through 6, 8, and 10 through 11 should go on that basis.

And there's quite a bit of heat over the *Armstrong*

case, which I view as simply holding that neither the supremacy clause, the equitable powers of the federal courts, or the Medicaid Act give plaintiffs like the plaintiffs in *Armstrong* a private right of action, and admittedly, but inferentially, maybe not a private right of action to plaintiffs like ours under those three bases:  supremacy clause, equitable powers of the federal courts, or the Medicaid Act itself.

In my view, of course, none of our claims arise under any of those three foundations, and therefore *Armstrong* doesn't really control the result.  And I think it's more important to note that the three at least initial foundations for claims here are Section 1983, state APA, and contract.  And therefore I think it's more helpful, even though we'll eventually get -- we'll be driven to the question of the right or expectation vel non of a cause of action under the Medicaid Act and the -- its provisions about actuarially sound rates, I think it's more helpful to take up these claims under the rubric that they come to me under; that is, as I said, 1983, APA, and contract.  And so I want to discuss today, then, the viability of these claims in those three categories one at a time.

So let me give you then my tentative thoughts on the 1983 claims.  And I've emailed you about that previously, but I think we have to look at three basic concepts.  One is, again, a sort of a predicate concept.  1983 here is the violation said to have occurred under color of state law as a violation of the

Fifth Amendment right to due process as applied to the states through the Fourteenth Amendment.  And so that is a protection of either liberty or property interests.  No liberty interest here, so we're looking at property interests.  And so we look to whether the claimant here, FamilyCare, has a property interest in play through these claims.

And I think there are two potential property interests asserted.  One is business goodwill.  And so we look to Oregon state law to determine whether that is a recognized property interest in Oregon.  And you've discussed *Westwood* and *Speed's* and I think other cases about whether it is or isn't, and I'll hear more on that.

I guess I have to say my tentative conclusion is I think Oregon recognizes goodwill if it's properly described as such.  Interestingly, I think neither *Westwood* or *Speed's* actually found goodwill to exist in those cases but recognized that it was possible to state a claim for goodwill as a property interest.  But there you have it.  One is is that a property interest.

The second is a little more complicated, and that is can you have a property interest -- well, specifically does FamilyCare have a property interest in actuarially sound rates.

And here I think the dominant case to think about is *Wedges/Ledges* and what it states about how to find or not find a property interest in procedural protections as against

decision makers.

So that's phase one, is there a property interest. But that doesn't answer the question entirely, you know. One is is there a property interest, and then there are at least two other questions.

So even with a property interest, and this I think is highlighted most in this morning's email from OHA, but in the briefs already but I think highlighted there, and that is even with a property interest, was there a deprivation.

And here, if I understand OHA's argument, it's that if there is a post-deprivation procedural avenue for challenging deprivation, then that's enough process, at least in a setting like this, and therefore no deprivation.

And then the last element is fundamental to everything I've just discussed, and that's the qualified immunity overlay over all of this. And here's where I think cases speak in mushy language and sometimes cause us to talk about it in mushy or at least not helpful language.

So, for example, here it would be silly to ask the question, you know, should OHA or Allen -- should OHA have known, was it clearly established that to take someone's property without any procedural protections violates the Fifth Amendment. That's a silly question. That's like asking if it violates the Fourth Amendment to arrest someone without probable cause. We never ask the question at that level of

generality.

I think instead what we do is we're not really looking at the contours of the right, even though it's sometimes phrased that way, we're looking at whether the facts in a particular case should be known to violate the right in question; is it clearly established that such conduct violates the right in question.

So the real question is do the following things -- and here we list whatever plaintiff says OHA did wrong.  Do the following things, is there something that clearly establishes that conduct like that violates FC's due process rights, and then that gets plugged into 1983.

So that's what I'll be looking at, is there something that would have told defendant here, yeah, if you do this, if you do what you did in December, you should know, based on a case that tells you that, that that conduct violates this well-known right.  At least that's how I think about qualified immunity, and that is in so many ways, if I think it, then I think it's right.  So that's -- just ask my kids.

So that's how I'd like to approach it today, is does the conduct that was complained of here, should OHA or Mr. Allen in particular have known that that conduct would violate this well-known right.

So those questions -- property, post-deprivation process, and qualified immunity -- I think are the dominant

three questions on the claims under 1983, and I'd like to take that up first.  And then I think we'll just go plaintiff-defendant here to start.

MR. GORDON:  Your Honor, would you like me to stand at the podium or --

THE COURT:  Wherever you are near a microphone.

MR. GORDON:  Is this near enough?

THE COURT:  Is that all right, Ms. Shumway?

THE COURT REPORTER:  (Nods head.)

THE COURT:  All right.  Go ahead.

MR. GORDON:  Thank you, Your Honor.

I'd like to start with the first question the Court highlighted, which is about goodwill and whether goodwill is a property interest under Oregon state law.  This has been briefed, but I wanted to bring the Court's attention to an additional case that is very relevant to this question, and that case is a case from the Ninth Circuit, *Lance*, 268 Fed Appendix 548.

I have copies of the case for the Court and for opposing counsel, if that would be helpful.

THE COURT:  Please forward them now.

MR. GORDON:  (Complies.)

And, Your Honor, the reason I start with *Lance* is because it is a Ninth Circuit case.  It is a memorandum decision.  But in that case, the Court directly addressed the

question of whether a state law property right, property right in goodwill, was sufficiently clearly established for qualified immunity purposes, and it held that it was.

That case addressed the question of goodwill under Nevada law, and Nevada law --

THE COURT:  Under what?

MR. GORDON:  Under Nevada law.

But in holding that property interest and goodwill was clearly established, the Court looked to two sources of authority:  first, it looked to the *Soranno's* case, the Ninth Circuit case which was cited in our briefing.  OHA tries to distinguish *Soranno's* by saying in *Soranno's* they were dealing with California law, and California has a state statute that directly talks about goodwill equates to property interest.

But what's notable here is that the Ninth Circuit in *Lance*, that's the case they cite as to -- for the proposition that in Nevada state law, goodwill is established as a property interest.

The second thing the Court cites, then, and they also cite, they cite a Nevada statute that classifies goodwill as intangible personal property for the purposes of taxation. There is a statute in Oregon that is directly analogous to this.  This is ORS 307.020(1)(a)(D).  And it says, like the Nevada statute:  As used in the property tax laws of this state, intangible personal property includes but is not limited

to goodwill.

And then the Court cites two Nevada cases, and one of those cases is directly analogous to one of the cases that we cited in our briefing.  It's a case called *Ford v. Ford*, where the Nevada Supreme Court held that -- or treated, I should say, treated goodwill as property in the context of a dissolution proceeding.

And that's -- there's case law in Oregon directly on point there as well.  *Marriage of McDuffy* treats goodwill as property in the context of a dissolution proceeding.

So based on those authorities, *Soranno's* and then those Nevada specific authorities which have direct analogues in Oregon, the Ninth Circuit found that the property right to goodwill was clearly established in Oregon and qualified immunity did not apply.  So I think *Lance* answers the question.

THE COURT:  Don't we have to do two things:  show that goodwill can be property; and then show in the complaint, allege enough in the complaint that the particular goodwill that you're asserting here is property, qualifies as goodwill/property?  I mean, the cases make clear that you can have what you think is property, but it doesn't just -- it doesn't sufficiently rise to the level of anything above the value of the business to be goodwill, right?

MR. GORDON:  Well, the value -- and this is -- I think OHA's briefing kind of went down this path and started to

talk about goodwill and going concern.  And I don't know that that --

THE COURT:  I'm not concerned about that distinction really much.  I'm more concerned about the question -- so, for example, in *Westwood*, it acknowledges the possibility that goodwill can be a property right but doesn't find it satisfied in that case.  Don't you have to do something in your complaint to show that you have goodwill?

MR. GORDON:  I think the goodwill -- I think we have shown that.  FamilyCare has been in business for 30-plus years prior to January of 2018.  It was an ongoing concern.  It had developed relationships in the community with providers, it had --

THE COURT:  You have specific paragraphs in which you feel the complaint adequately asserts the existence of goodwill as property?

MR. GORDON:  If you give me a moment.

(There is a pause in the proceedings.)

MR. GORDON:  So paragraphs 85 and 86 I think are most directly on point, Your Honor.  There are allegations sprinkled throughout that talk about the history of FamilyCare and what it's done in Oregon over the past 30 years, but paragraph 85 talks about goodwill, and then paragraph 86 talks about FamilyCare enjoying substantial goodwill among members and providers that was the product of, among other things,

FamilyCare's commitment to providing high-quality, low-cost preventive care with reasonable reimbursement for providers. Those are the paragraphs most directly on point.

THE COURT:  Thank you.

And are you done with that particular topic?

MR. GORDON:  I am, Your Honor.

THE COURT:  And what about on actuarially sound rates as a form of property?

MR. GORDON:  So as a predicate, I would say that I don't think it's required that we have a property interest in both goodwill and actuarially sound rates.  We do here, but just to make clear, I think that we only need one or the other to establish the deprivation of a property right.

But specifically to the question about --

THE COURT:  Right.  I agree with that, except that if you did assert a property interest in actuarially sound rates and I found that isn't property or for some other reason it fails, then that theory of your case wouldn't go forward, right?

MR. GORDON:  Well, the Section 1983 claim would still go forward.

THE COURT:  That's why I didn't ask you if your 1983 claim would go forward.  I asked you if that theory of 1983 would go forward.  It wouldn't, right?

MR. GORDON:  If there's -- if a theory --

THE COURT:  Your goodwill theory under 1983 would go forward and that claim would survive on that basis but it would fail on the other basis, right?

MR. GORDON:  On a basis that there was a protected -- if there's no protected property interest, if the Court finds there's no protected property interest in actuarially sound rates, then the 1983 claim predicated on that property interest would fail.

THE COURT:  So if all you're telling me is that if one theory of 1983 fails and the other survives, I shouldn't dismiss your entire 1983 claims, I agree.

MR. GORDON:  Fair enough.

THE COURT:  All right.

MR. GORDON:  On the specific question about whether state law established a statutory interest or right that constitutes a property interest -- I think that was the language that the Court used in its email -- the answer is yes, and here's why.  As the Court noted, *Wedges/Ledges* is the case that I think really controls the inquiry, and what *Wedges/Ledges* talks about is a distinction between procedural safeguards that are actual safeguards, where the discretion of the agency is very limited or is very bounded by law; on the other hand, a process where there is really no bound, it's not cabined, and the agency has unfettered authority.

We're in the former situation, and we're in the

former situation for a couple of reasons.  We have the federal actuarially soundness requirements which mandate that a state do certain things, including setting actuarially sound rates, and says things, for example, in setting actuarially sound rates --

THE COURT:  Could I interrupt you for just a moment.

So I understand where that argument is going, and it's solid as far as it goes.  Let me just raise my two concerns about *Wedges/Ledges*, if I could, the ways in which that case is different than ours and whether those differences matter.  I'm not sure they do, but I'd like to hear from you.

So one is that *Wedges/Ledges*, that licensing scheme was what I call bilateral.  You know, you have a licensing agency and someone who is being granted or not granted a license.  So it's just a bilateral relationship, I'm going to give you a license or I'm not, and the reasons that I'm going to grant it or deny it are fairly cabined.

That is concern number one.  Ours is not bilateral. It's not one entity seeking something from HHS.  It's at least trilateral.  And whether that makes a difference is of some concern to me.

And the second -- I'll have you deal with both at once.  The second is that the licensing agency in *Wedges/Ledges* is an agency that was under obligation to grant or deny a license to everyone that asked for one.  And that's not exactly

true here, in terms of what HHS has to do.  They, you know, they can deal with some entities or not others.  Even, you know, OHA can deal with some entities and not others.  So it's less cabined in that way, in terms of what the decision making has to involve.

So those two differences which, as I've said, I'm not sure entirely matter, are the biggest factual differences between our case and that.  What do you make of them?

MR. GORDON:  They don't matter for the following reasons.  So the trilateral versus bilateral I think is unimportant here because Oregon statutes incorporate the federal laws, and they require that OHA follow these federal laws related to actuarial soundness.  So it's not the case -- so that's why I think it's -- the presence of federal law and CMS here I think is unimportant in the bilateral and triliteral distinction.

THE COURT:  Because you think state law makes OHA essentially the regulator that you deal with, and that relationship is bilateral?

MR. GORDON:  Yes, that's right.  And OHA has an independent obligation, independent of CMS, to set actuarially sound rates.  Certainly CMS reviews those rates, but it's OHA's obligation in the first instance to set those rates and to do so in a very specific fashion that's mandated by CMS and by the Oregon statute that incorporates federal law.

THE COURT: All right.

MR. GORDON: On the second point, I believe the Court was asking about the fact that in *Wedges/Ledges*, the agency -- it was just a licensing decision and they were just dealing with the entity that came forward for a license and whether that was --

THE COURT: Yes.

MR. GORDON: Here we're dealing with a situation where OHA, if we went back in time, perhaps when OHA was letting this contract out for bid, perhaps there would be a distinction there between OHA and -- I'm sorry, between these facts and *Wedges/Ledges*. But here --

THE COURT: Because OHA was free to simply not enter into a contract, right?

MR. GORDON: Correct.

But at this point in time, we're years into a multiyear contract, and the amendment that comes out each year always includes rates for the upcoming year. So there's already this binding relationship between OHA and FamilyCare and the other CCOs. And so for that reason, I think that distinction is unimportant.

THE COURT: Thank you.

So that's the two property interests, right?

MR. GORDON: Correct.

THE COURT: And the third issue, which again was

discussed in the briefs but amplified in today's email -- and first I'll ask if you've had a chance to read it and assimilate it.

MR. GORDON:  I have, Your Honor.  And we didn't submit because we didn't construe the Court's questions as an invitation to submit additional briefing.

THE COURT:  It wasn't.

MR. GORDON:  Okay.

THE COURT:  But I'm just curious, then.  So the third issue -- the next issue, maybe not the third.  I'm going to lose track of the counting if I try to count here, so I'll just say the next issue is the issue about even granting property interests, what's -- an element required in a claim like this is deprivation, and was there deprivation if there's an opportunity for post-hearing -- post-deprivation challenge.

MR. GORDON:  And here there is not a meaningful opportunity for post-deprivation challenge.  And the reason for that is because we're not just talking about a simple breach of contract and then we go back -- and we have, of course, asserted claims for breach of contract, but the conduct at issue here is conduct that puts us out of business.  And so there's no opportunity to go back and -- on the breach of contract claim to say that we're going to get our damages for the company as a going concern based on the breach of contract.

And there's more importantly --

THE COURT:  Isn't that often the case with property deprivations?  If I grant a license three years in a row, and then the fourth year I say, I'm not going to give you a license this year, and your remedy is to challenge my decision denying you a license, I mean, in the interim you don't have a license, you're out of business, right?

MR. GORDON:  Well, yes, but that assumes that -- well, you may or may not be out of business.  So the case law establishes that when a vendor, an entity's economic survival is in jeopardy, the property interests at issue become heightened, and in fact become a liberty interest.  So that's the space that we're in here.

THE COURT:  I'd be really interested in a case that says it becomes a liberty interest.  I doubt that.  But you don't need that to win, so let's just go with --

MR. GORDON:  I have a case if you'd like, but I'll go ahead with property interest, Your Honor.

The point is that what we're talking about here is a company that's been in business for 30 years.  It has hundreds of employees and all these members.

THE COURT:  So if I could just ask then what is the case that says that post-deprivation hearing is inadequate process in cases where the property deprivation puts you out of business?

MR. GORDON:  *Baird* is the case.  This is *Baird v.*

*Board of Education for Warren Community United School District* out of the Seventh Circuit, Your Honor. This is the case that distinguishes *Lujan*, which is the case relied on by OHA on post deprivation, and this is in a contract context.

And then there's other authority that establishes that OHA was entitled to process here and that the deprivation of process on the front end -- because remember there was no process afforded FamilyCare with respect to Director Allen's ultimatum to them. He told them, you have 24 hours, but he also said we're already implementing the transition plan to transition your members, and during that 24-hour period they did not -- OHA refused to give them what the final rates would be. So there was no -- there was no notice and no opportunity to be heard.

The *Chalkboard* case and the *Old Dominion* case -- which I have copies for the Court as well. *Chalkboard* is Ninth Circuit and *Old Dominion* is out of the D.C. Circuit. Both of those cases establish that in these types of situations where economic survival is the case, is at issue, due process is due, and the absence of any due process constitutes a violation of a claim under 1983.

THE COURT: Then the last issue is the qualified immunity issue, and again what I'm looking for there is not whether it's clearly established that you can't take someone's property without notice and a hearing, since I already know the

answer to that question.  It's what would tell Mr. Allen that the factual conduct he engaged in would amount to a constitutional deprivation of property as opposed to just, you know, something else?

MR. GORDON:  So we've alleged that Mr. Allen and OHA knew that if FamilyCare was forced to sign this contract, they would go out of business.  So that's -- those are the key facts here, I think, that --

THE COURT:  And I accept the importance of that allegation, and then I'm not sure my next question -- I'm not sure the answer drives the result or not.  I'm still thinking about it.

But one of the questions, when we get this far in 1983 cases, especially on QI, one of the questions that we often ask is what case would tell Mr. Allen that what he did was unconstitutional?

MR. GORDON:  So I think the case that would most speak to that is the *Chalkboard* case, which I have copies of as well.  And that's a case that involves an agency putting a company out of business and doing it without any notice, and the Court held that that violates the clearly established rights and that that violates their due process rights.

THE COURT:  So you have copies of that right there?

MR. GORDON:  I do, Your Honor.

THE COURT:  Go ahead.

MR. GORDON:  (Handing.)

And the other issue here, of course, is there's a state statute that tells Mr. Allen that he can't do what he did, the statute that requires that OHA -- that CCOs have 60 days' notice.  It's crystal clear to Mr. Allen --

THE COURT:  You can know you're violating a state statute without knowing you're violating the Constitution, right?

MR. GORDON:  That is correct.  But the whole idea of qualified immunity is that it protects people who do not knowingly violate the law.

THE COURT:  No, it protects people who do not knowingly violate the particular law in question, here the Fifth Amendment.

MR. GORDON:  Well, I think that the Supreme Court has said it protects those who are not knowingly violating the law, without distinguishing among that.

THE COURT:  I'm just helping the Supreme Court out a little bit here.

So you agree, right, that you could -- you could knowingly violate a state law and have no idea you were violating the Constitution for Fifth Amendment purposes, theoretically, right?

MR. GORDON:  Yes, I agree with that.

THE COURT:  Your state statute has to point Mr. Allen

in his head to the idea that this not only violates state law, it violates the Constitution.  Otherwise, you don't have a 1983 claim.

MR. GORDON:  I don't agree with that necessarily.  I don't think that -- the point about the violation of the state statute is that he knows he's violating the law when he does this.  The question is -- that you're, I think, getting at is does he know that he's also violating the constitutionally protected property interest.  And *Chalkboard* is the case that establishes that he is or he should have known.

THE COURT:  All right. thank you.

MR. GORDON:  Thank you, Your Honor.

THE COURT:  Mr. Markowitz?

MR. MARKOWITZ:  Thank you, Your Honor.

I'd like to start with the issue of whether there is a constitutionally protected property interest in actuarially sound rates, because I believe that all of the FamilyCare claims are based on that premise, and it is a false premise that there is any such right.

We've raised in our briefs several times the argument that there is no federal or state statute, rule or regulation, and no contract, express or implied, which imposed that right or granted that right, imposed that obligation on the state or granted that right to the CCO -- in this case FamilyCare -- and none in response to that argument has been cited.

The only basis that has been asserted by FamilyCare for its alleged right to a contract that includes actuarially sound rates is the subsection of the Medicare Act which governs the payments that will be permissible, the reimbursement for payments that will be permissible to managed care organizations over a particular size, and that that subsection, Subsection (m)(2)(A)(iii), states that there is a requirement that in order for there to be federal reimbursement to the state of the per-month, per-member capitation rate payment to the CCO, it has to be pursuant to a CMS approval which was based on the CMS finding that there were actuarially sound rates included within the contracts.  That is the only time that actuarially sound rates comes into any statute, rule, regulation or case.

And what it says is the only thing that can be lawfully paid in order for CMS to then reimburse the state for that payment is the rate that CMS has approved as being actuarially sound.

There is no contention in this case that CMS failed to pay that rate.  In fact, the implicit assumption and agreement within their pleadings in both cases is that CMS granted to FamilyCare -- excuse me, that the state granted to FamilyCare precisely the rates that CMS had approved.  There is no way that the obligation on the part of the state to get CMS approval, which it followed and did get, can be transformed into a property right to an actuarial soundness finding by any

other party under any other circumstances.

THE COURT:  So I want to make sure I understand the distinction.  I'm not going to ask you to, but you might acknowledge that a person in FamilyCare's position would have such an expectation of doing business with OHA under HHS-approved rates, that failure to do that would be a breach of something, a contract or a property interest or the like, but that's it.  You say that what they have an expectation in is that CMS will approve the rates and they won't have to do business with OHA on unapproved or disapproved rates.  And that's a distinction between that expectation, which may have legs, and the expectation that they otherwise, under some other measurement than CMS approval, are actuarially sound.  Is that the distinction you're making?

MR. MARKOWITZ:  Yes, Your Honor.  In this case, according to the pleadings, OHA hired an actuarial firm outside the state, an actuarial expert, Optumas, to develop rates.  Ultimately those rates were reviewed by a different actuarial firm in order to confirm the Optumas rates were, in fact, actuarially sound, and those rates were then incorporated into a proposal that went to CMS, where the federal agency, including the Office of the Actuary, did its own review.  There is only one decision maker given the power to determine what the appropriate rates are, and that is CMS.

THE COURT:  So if we, on your argument, analogize to

*Wedges/Ledges*, then the cabining, the limiting that *Wedges/Ledges* talks about here is the limitation that business can only be done up and down this chain on CMS-approved rates?

MR. MARKOWITZ:  Absolutely, if the federal government's money is involved, which under this program it must be, some 90 percent of the funds, even more for the ACA expanded portion of the funds, all of this is coming substantially from the federal government.  And the money that is going to flow can only flow if there is compliance with subsection (m) and its requirement that CMS approval be obtained.

THE COURT:  All right.

MR. MARKOWITZ:  So getting back to the 1983 first argument that they have a property interest in an actuarially sound rate, that is simply not correct.  The property interest, the underlying property interest is in a contract rate which has been approved by CMS.  That is what they have for 2017 and earlier years.  They entered into contracts that provided for those rates, and there is no allegation that those rates were not paid.

They chose not to enter into the same process, the same contract in 2018 because of their own decision that their business would not survive if they entered into that contract, but there is no right to a different rate other than that which the federal Medicaid statute has provided.

THE COURT:  Do you, just so I understand the contours of 1983 as it applies here, would you agree with the proposition that it's not so much where they sit in the chain -- that is, where FC sits in the chain -- of disbursement and contracting that matters?  In other words, they could theoretically have both a property interest and a 1983 claim under a theory that, say, CMS hadn't approved the rates.  It's rather the nature of the legitimate expectation they had or didn't have, here your argument being that their only expectation is in approved rates not actuarially sound rates.

MS. SCOTT:  Correct, the rates that they have actually placed in the contract.  They have an expectation they're going to be paid.

THE COURT:  Thank you.

Then I'd like you for a moment to assume a property interest, and you've submitted something today on post-deprivation process being adequate and not -- excuse me, yes, post-deprivation process being adequate and not a deprivation.  And I don't know if the cases just forwarded to me this morning are already familiar to you or not, but I'm curious whether you have any further argument in addition to what you submitted in writing.

MR. MARKOWITZ:  Yes.  I think those cases, in the context of this case, fall neatly into what is in the Court's opinion and in the concurring opinion in the *Armstrong*

decision.  And what the *Armstrong* -- the last part of the decision of the Court, in which Justice Breyer didn't concur, and in Justice Breyer's concurring opinion, what they both say is that there is a remedy and relief available in that case to the disgruntled provider of services against the state agency.

THE COURT:  Well, what I'm hearing this morning, though, is an exception to that rule, where it puts you out of business.  What's your take on whether there exists such an exception to the idea that otherwise post-deprivation opportunity to challenge is sufficient?

MR. MARKOWITZ:  Well, being put out of business is -- may be the damage, but there's no right in and of itself to a claim simply because you go out of business.  Businesses fail every day.  In order for there to be a claim, it has to have an underlying right, and in the 1983 context, it has to be constitutionally protected.

There's no underlying right here, and it's not constitutionally protected, and as the cases we cited say, the right is adequately addressed through a contract action, and as *Armstrong* says, the right is adequately addressed through a direct relief with the agency -- in this case CMS -- and administrative procedures granted after the agency has made its decisions.

THE COURT:  All right.  Finally, your qualified immunity argument.  Anything you wish to add to what you've

already submitted?

MR. MARKOWITZ:  No.  I think the briefing and my addition here is sufficient.

THE COURT:  All right.  Thank you.

Let's turn to the APA claims.  And the dominant issue there is preemption.  And I think I understand the methodology by which one looks at preemption, as laid out in various cases.

One of the things that requires me to do is to look at the specific congressional purpose.  I guess I'd like to reformulate the congressional purpose a little here.  OHA has contended that it's the congressional purpose to preclude any private right of action to enforce the actuarial soundness requirement, or something essentially to that effect.

It's not much of a change, but I think it helps me think about it more clearly.  I think, rather, the congressional purpose I have to look at in play here is the purpose to have the secretary determine as a final matter the actuarial soundness of the rates.  And with that purpose, the question I'm being asked on preemption is whether state law here, the application of state law, including a judicial decision applying state law, would run afoul of that congressional purpose.

What's FC have to say about preemption here?

MR. GORDON:  Thank you, Your Honor.

On the preemption issue, if I may start by addressing

the point Mr. Markowitz raised, because it's relevant here to the actuarial soundness piece.

So Mr. Markowitz said that all of our claims are based on the notion that we have a constitutional right in actuarially sound rates. That's not accurate. The Section 1983 claim is based in part on that, but more to the point, counsel said that there is no provision in the contract or in the law that gives us a right to actuarially sound rates. As I understood the argument, it was that we only have a right to rates that have been approved by Medicaid -- I'm sorry, by CMS.

And that's not accurate, Your Honor. The federal regulations -- the federal regulations on point impose this --

THE COURT: This is going to come up on your contract claims. I'm not sure it's helping me a lot on preemption.

MR. GORDON: I can save it if you'd like. I thought it was relevant but I'm happy to move on.

THE COURT: Let's talk about preemption.

MR. GORDON: So preemption, I agree with the Court that on both our motion to dismiss for the declaratory judgment and their motion to dismiss APA claims both hinge on OHA's argument about preemption. What is notable is that OHA has cited no case where there's a preemption of a state APA action or any case holding that the provision of the Medicaid Act preempts state law. Instead, their argument is -- basically hinges on *Armstrong* and uses the language of *Armstrong* in a

different way than is actually in the case to say that when *Armstrong* talks about the sole remedy provided by Congress, what *Armstrong* means is that that remedy is the exclusive remedy.

And *Armstrong* doesn't even hold that.  So *Armstrong* is not a case that deals with federal preemption, and *Armstrong* does not hold that because Congress has provided the remedy through CMS, that that is necessarily the sole and exclusive remedy.

And there's good -- there's case law that we have cited in our briefing, the *Mik* case and the -- I believe it was the *Wigod* case that postdate *Armstrong* that draw that distinction, and there's also Supreme Court authority talking about the *Ex parte Young* doctrine and how the provision of a remedy under the Medicaid Act does not preclude relief under *Ex parte Young*.

THE COURT:  Wouldn't I still have to ask, even if one acknowledged the possibility of state remedies in addition to any federal remedies under the Medicaid Act, wouldn't I still have to ask the question as to a particular application of state law, whether it was preempted under conflict preemption?

MR. GORDON:  Yes.

THE COURT:  All right.  So here is it the right question to ask whether in this case application of the state APA might run afoul of the -- might be conflict preemption as

to the congressional purpose I just stated?

MR. GORDON:  I don't think the right question is to ask whether it might be.  There's a high bar against preemption.  There's a presumption against preemption, and the Court has said that it's not a free-moving judicial inquiry into whether --

THE COURT:  Yeah, I really like that quote a lot.  I promise not to be freewheeling, whatever that means.  I'll be sober and serious almost the entire morning.

MR. GORDON:  I wasn't suggesting anything to the contrary, Your Honor.  I apologize if it came out that way.

But the point is that there has to be express congressional intent signaling preemption, and we don't have that, and OHA has identified nothing.  All they've identified is the fact that Congress provided a remedy, and that fact alone has been held by numerous courts to not be sufficient, including *Armstrong* itself.  *Armstrong* says the fact that Congress provided a remedy does not by itself -- or may not by itself compel the conclusion that federal remedies are -- the judicial equitable remedies are precluded.

THE COURT:  I guess I feel like we're talking about, you know, on cross purposes about two different doctrines.

So let's assume for a moment that I acknowledge that there's not classic, you know, "occupy the field" preemption here but just conflict preemption.

MR. GORDON:  Sure.

THE COURT:  And that means that all of your arguments that you could have a state remedy and that's not preempted don't get you over the goal line.  You still have to deal with the argument that if the secretary here has approved the rates as actuarially sound, then applying state law to the point that I would rule that they're not actuarially sound would be conflict preemption.

What do you make of that?

MR. GORDON:  What I make of that is Medicaid is a cooperative federal and state program --

THE COURT:  Well, let me ask just the last question first, and then I will let you make your whole argument.

But isn't it conflict preemption to have on the table a federal court ruling under state law that the rates here are not actuarially sound and a secretary's ruling that they are?  Isn't that conflict preemption?

MR. GORDON:  It's not conflict preemption, and we've seen this -- this is not a novel case.  We've seen in the *Rocky Mountain* case, the Colorado Supreme Court ruled that rates were not actuarially sound.  So these types of cases have been brought before and litigated up through the courts.

The other point is that we don't understand here -- or I should say it's not in the record here the contours of CMS's review of what OHA did.  So this is not -- this is not,

you know, agency decision making, you know, promulgation of rules, et cetera, that type of decision making.  All we know is that CMS reviewed -- all we have is a letter from CMS saying that they're actuarially sound.  We don't know the contours of that review.

THE COURT:  Why does that matter?

MR. GORDON:  Why does that matter?  Because to the extent that the Court is concerned about whether a decision here might conflict or might be in tension with a decision CMS made, the nature of the decision that CMS made I think is important.

THE COURT:  Why would that be true?  If the secretary says "A" and I say "not A," then how we got there doesn't matter much, right?  It's just are "A" and "not A" in conflict with each other.

MR. GORDON:  I think it depends on what "A" and "not A" are.

THE COURT:  "A" is actuarially sound and "not A" is not actuarially sound.  Why aren't those in conflict with each other?

MR. GORDON:  There could be -- if this Court reaches a ruling that the rates were not actuarially sound, that may be in tension with it, but that could be based on --

THE COURT:  That's exactly what you want me to do, right?

MR. GORDON:  That is correct.

THE COURT:  You want me to do something that would be in conflict with the secretary's decision, don't you?

MR. GORDON:  Well, it's -- it could be in tension with what the CMS review of the submitted rates were.  Yes, it could be.  But, again, we don't know the contours of that.  We don't know what facts CMS looked at, and we don't know whether CMS really --

THE COURT:  So are you suggesting that if the process by which CMS approved the actuarial soundness of the proposed rates was sloppy and mine is nuanced, that there's no conflict?

MR. GORDON:  It's not about necessarily -- I'm not suggesting it was sloppy.  I'm suggesting that it may not have been a thorough view.

THE COURT:  So if it lacked information that would have made a better informed decision and mine is better informed, then that makes "A" and "not A" not in conflict because I knew more than the original decision maker?

MR. GORDON:  No, the ultimate outcome is still in conflict.  I agree with that.

THE COURT:  Then why does -- I guess I'm still lost on why the process -- why our uncertainty about the thoroughness of the rate-approving process by CMS matters.

MR. GORDON:  Well, I think it matters in the extent to which we may or may not give deference to that process.  And

again there's no indication that the mere fact that CMS reviews the rates that are submitted and gives them a thumbs up or thumbs down, that that's meant to preclude any other inquiry into whether the rates are, in fact, actuarially sound.

THE COURT:  This isn't about, you know, *Chevron* or *Auer* deference, is it?

MR. GORDON:  No, it's not at this point.  You're right, Your Honor.

THE COURT:  All right.  Well, I think I at least understand your argument.

MR. GORDON:  And I think my last point is my main point is that there's nothing to indicate -- there's a high bar against preemption, the notion of preempting state law remedies here, and nothing in the briefing, there's no authority that's been cited that I think establishes that we have any type of preemption at issue here.

THE COURT:  Well, so a high bar is interesting, but the bar is, isn't it, that I have to find that what you want me to do here by way of applying state law would result in a conflict with the secretary's decision that -- in such a way that it would thwart the purposes of Congress, right?

MR. GORDON:  You're saying in such a way that would thwart the purpose --

THE COURT:  So Congress -- I think you accept -- I'm not sure you do.  Maybe I should ask.

The starting point is what is the congressional purpose that state law might conflict with here.  And I've stated it as to have the secretary determine as a final matter the actuarial soundness of the rates.  Do you disagree with that as the congressional purpose in play here?

MR. GORDON:  I guess I have not seen anything indicating that the purpose is to have the secretary determine that as a final matter.  There is certainly congressional intent that indicates that the secretary -- or at least there's in the regulations that the secretary will review the rates.  But the question of whether that review is determined as a final matter, that -- I haven't seen anything in the statute or the regulations that does that.  And I think that's kind of what I was trying to get at by saying that this is not a conclusive end-all-and-be-all determination by CMS.

Can I have one moment, Your Honor?

(There is a pause in the proceedings.)

MR. GORDON:  Apologies, Your Honor.

THE COURT:  All right.  So that's an important point of divergence, because if there is a congressional purpose to either preclude private rights of action or to have the secretary make the final determination on actuarial soundness, then it's difficult to avoid the conclusion that we, at the end of the day, are -- we've maybe jumped over a pretty high bar if I end up having to decide differently than the secretary.  It's

almost definitional.  If the secretary is supposed to make the final decision and I make a different decision, then we're in trouble.

But if it's, as you assert, that that's not a congressional purpose that is evidenced here, instead that it's something more like the secretary will simply make the rate determination in regards to OHA and others with no mention of its exclusivity, then we don't have conflict, right?

MR. GORDON:  And there's also --

THE COURT:  A lot of it depends on how you frame the congressional purpose.

MR. GORDON:  I think it does depend on how you frame the congressional purpose.

THE COURT:  What do you think the congressional purpose is in play here?

MR. GORDON:  I think the congressional purpose is to make sure that the state set actuarially sound rates.

And to the point that I was starting with, there is -- there is a contractual right to these actuarially sound rates, and it's not just about a contractual right or a right to rates that have been approved by CMS.  And it's two sides of the same coin, I think.

THE COURT:  All right.  Thank you.

MR. GORDON:  If I may, Your Honor.  The one other thing is my understanding is that CMS really looks at the rates

as a whole here and may not be doing an inquiry into whether -- the FamilyCare specific rates.  They're looking at the program rates as a whole.  And, again, we don't --

THE COURT:  I'll just tell you that that argument is of zero usefulness if this congressional purpose I tentatively set forth a minute ago is the congressional purpose.  It helps you not at all.

MR. GORDON:  Understood.

THE COURT:  And if your congressional purpose is the correct one, then you probably don't need that point because there is no conflict.

MR. GORDON:  The other thing I would add is that there are a legion of cases where providers, NCOs, beneficiaries are challenging Medicaid rates.  I cited one that's specific to actuarial soundness requirements, but there's many others.  There's been extensive litigation.

THE COURT:  With holdings on preemption?

MR. GORDON:  I don't know if preemption has been raised, but the point is that this --

THE COURT:  The point is that if preemption has been raised, then I want to hear the holding on preemption, and if it wasn't raised, then it doesn't matter.

MR. GORDON:  I guess the point was that the notion that the Court might reach a different result on a rate that's been set by an agency is -- that's something that has happened

hundreds of times.

THE COURT:  It can happen hundreds of times, and then if somebody conclusively determines that there's a preemption problem, then 100 cases were wrong.

MR. GORDON:  Understood.

THE COURT:  Thank you.

On preemption?

MR. MARKOWITZ:  I'll respond to the Court's preemption questions, but I'd like to start by disputing counsel's representation of the holding of *Armstrong*. *Armstrong* is a Medicaid rate-setting case, and the challenge was that the state agency had failed to follow the Medicaid law directives about how the particular rate should have been set. And when that argument got traction in the district court and in the Ninth Circuit, it was ultimately reversed by the Supreme Court.  And the specific holding was that the Medicaid Act implicitly precludes private enforcement.  It could not be much more specific than that.  It stated that the attempt of the respondents to utilize the court system to make the challenge under the equitable powers of the court circumvent Congress's exclusion of private enforcement, reading from the opinion of the Court.

THE COURT:  And so that's where you derive the congressional purpose of precluding private rights of action?

MR. MARKOWITZ:  That, and continuing with the opinion

of the Court, the statement was, "The sheer complexity associated with enforcing Section 30(A)" -- which was the Medicaid rate section in play -- "coupled with the express provision of an administrative remedy in Section 1396c, shows that the Medicaid Act precludes private enforcement in the courts."

We are in the same situation here.  We have a different position in this Section 1396b, a 50-page statute setting forth the guidance of how the secretary through CMS and through the Office of the Actuary is to make these very complex decisions on a nationally consistent basis for the administration, as the Court points out, for the benefit of 60 million Medicaid recipients.  They are the intended beneficiaries of the congressional intent, and that is to be accomplished -- their benefits are to be accomplished through a consistently applied national decision making through the CMS and the Office of the Actuary.

THE COURT:  I need to determine congressional purpose here based on something.  Is your main source for determining the congressional purpose here *Armstrong*, or do you have congressional language?

MR. MARKOWITZ:  And the language of the act I think is cited in *Armstrong*, both in the initial and in the Breyer concurrence.

THE COURT:  All right.

MR. MARKOWITZ:  I'd like to spend a moment talking about this complexity issue.

THE COURT:  I don't think that will help me.

MR. MARKOWITZ:  All right.

THE COURT:  I appreciate that it is complex.

MR. MARKOWITZ:  I think the consequences, though, of the relief sought in this case helps to demonstrate why preemption is present, and that is if the Court were to allow the consideration in this matter of the actuarial soundness of the rates that CMS approved, what is to happen when that decision gets made?  We have 16 CCOs in this state, 15 of whom are receiving their payments pursuant to the CMS-approved rates, and now we have a 16th or 17th that has a judgment saying it's entitled to some different rate.  That rate cannot be paid without CMS funding, and federal law precludes that funding unless it's pursuant to the CMS approval.  It would create such conflict of enforcement both as to the other CCOs within the state and to the ability to fund the program that in Oregon benefits nearly a million people.

It is exactly the kind of circumstance where a single federal voice subject to the administrative review process set forth in the statute is exactly what should be the only voice in this arena.

THE COURT:  Thank you.

MR. GORDON:  Response, Your Honor?

THE COURT:  Yes.

MR. GORDON:  So just quickly on several points raised by counsel.  First counsel confirmed that all they're relying on here is *Armstrong* for congressional intent.

THE COURT:  No, he didn't say that.

MR. GORDON:  Then I misunderstood.  I heard him point to *Armstrong* and the statute cited in *Armstrong*.

THE COURT:  Well, that's not *Armstrong*.  That's *Armstrong* and the statute.

MR. GORDON:  What I meant is *Armstrong* and the statute cited -- and *Armstrong's* interpretation of that statute.

THE COURT:  We've just doubled the number of sources.  Maybe if we keep talking, it will go up further.

MR. GORDON:  I'll stop talking about that, then.

Importantly, the Court held not that Medicaid Act precludes private enforcement in the courts, it was specific to Section 38.  And what the Court said about Section 38 is the Court said, "The provision for the secretary's enforcement by withholding funds might not by itself preclude the availability of equitable relief."

So even *Armstrong* says that the provision, the congressional provision here is not sufficient even just to preclude equitable remedies under the federal court's power.

The second point, Your Honor, is I understood counsel

to say that these Medicaid rates are nationally set and nationally determined.  And that's not accurate.  The states set the capitation rates individually, and then they are submitted -- they submit them to CMS for review.  So there's no national coordination of the rate setting.  It happens on a state-by-state level.

The third point I wanted to make is counsel talked about kind of the parade of horribles or echoed the parade of horribles in the briefing about the consequences of a decision here and what could happen.

A couple things to keep in mind.  First of all, what is being challenged are rates that are under a contract 2017 that has already passed and under a contract 2018 that's already in play and that will be done by the time of trial in this court.  So because the rates are set each year, it's not necessarily the case that a determination that the rates set for FamilyCare in 2017 means either that the rates that would have been set in 2020 or 2021 going forward is also actuarially unsound.  Certainly if they're repeating the same errors, you might get there.  And it's not necessarily a determination that the rates that were set for the other 15 CCOs were actuarially sound.

The other point is that -- and this is alleged in the complaint --

THE COURT:  You mean as to future or present years?

MR. GORDON:  As to present or future years.

THE COURT:  You can't mean that about the past, right?  I mean, if you win on 2017, and I say they were actuarially unsound in 2017, then that calls into question the rates paid to the other CCOs, right?

MR. GORDON:  It could, it could.  But we have alleged that OHA has specifically targeted FamilyCare.  Remember FamilyCare is getting the lowest rates here, and we allege and we believe that OHA has done things in the rate-setting process to specifically single out FamilyCare, and if we established that, that does not necessarily mean that the rates they were paid, the higher rates that were paid to other CCOs are similarly problematic.

THE COURT:  Thank you.

MR. GORDON:  The other point is that this has happened before.  It's not the case that catastrophe ensues if CMS has to revisit the rates.  And this is the genesis of much of the dispute between the parties here.  Back in 2014-2015, OHA set rates, CMS said -- I'm sorry, FamilyCare and some of the other CCOs said we don't think these are sound for X, Y and Z reasons, OHA realized they were right, and they had to go back to CMS.

So there's a history here of going back to CMS and changing rates.  And so just as a factual matter, this parade of horribles I don't think is grounded in really how this

program is administered or the history here.

THE COURT:  All right.

I'll try not to worry about the parade of horribles too much.  My motto has always been "fiat justicia ruat caelum."  So we'll see where that goes.

Give me one second here.

(There is a pause in the proceedings.)

THE COURT:  All right.  Thank you very for your helpful oral arguments here.  I will try to get you an answer as soon as possible.

I'm confident that some claims will go forward, so to the degree that we're in the middle of discovery, I think it ought to continue.  And we'll outline the exact contours of what goes forward as quickly as possible, but I just didn't want anyone to sort of sit on their hands the entire time.

Anything further from plaintiffs today?

MR. ENGLISH:  Your Honor, with respect to the current 1983 claim, it is our intention to actually add a paragraph, and I don't know where that should be added because I'm not sure if it relates to your ruling or not, but it would be our intention to add.  DO you want us to submit something at this point?

THE COURT:  Why don't you move to amend it, submit the proposed language, and then -- I just don't know, but I'll see whether it adjusts in any way my decision on the 1983

claim.

MR. ENGLISH:  Thank you, Your Honor.  As I said, I'm not sure if it relates to some of the issue you're raising today either, but with your okay, we will move to amend and do so accordingly.

THE COURT:  Thank you.

Anything further from defendants?

MR. MARKOWITZ:  No, Your Honor.

THE COURT:  Thank you.  We'll be in recess.

THE CLERK:  Court is in recess.

(Proceedings concluded.)

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


/s/Bonita J. Shumway                    May 4, 2018
_____             _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter

**MR. ENGLISH: [3]** 3/7 45/16 46/1
**MR. GORDON: [76]**
**MR. LEVIN: [1]** 3/11
**MR. MARKOWITZ: [14]** 22/13 24/14 25/3 25/12 26/22 27/10 28/1 39/7 39/24 40/21 40/25 41/3 41/5 46/7
**MS. SCOTT: [1]** 26/10
**THE CLERK: [2]** 3/2 46/9
**THE COURT REPORTER: [1]** 8/8
**THE COURT: [95]**

**-**

**--o0o [1]** 47/2

**/**

**/s/Bonita [1]** 47/9

**1**

**10 [1]** 3/24
**100 [2]** 2/18 39/4
**1000 [1]** 2/23
**10th [1]** 2/6
**11 [1]** 3/24
**1120 [1]** 2/6
**1201 [1]** 2/9
**1211 [1]** 2/14
**1396b [1]** 40/8
**1396c [1]** 40/4
**15 [2]** 41/11 43/21
**16 [1]** 41/11
**16th [1]** 41/13
**17th [1]** 41/13
**1983 [23]** 4/12 4/18 4/22 4/24 7/12 8/1 12/20 12/22 12/23 13/1 13/7 13/10 13/11 19/21

20/14 22/9 25/13 26/2 26/6 27/15 29/6 45/18 45/25

**2**

**20 [2]** 1/15 3/2
**2014-2015 [1]** 44/18
**2015 [1]** 44/18
**2017 [5]** 25/17 43/12 43/17 44/3 44/4
**2018 [6]** 1/15 3/2 11/11 25/22 43/13 47/9
**2020 [1]** 43/18
**2021 [1]** 43/18
**24 [1]** 19/9
**24-hour [1]** 19/11
**268 [1]** 8/17

**3**

**30 [3]** 11/22 18/19 40/2
**30-plus [1]** 11/10
**3000 [1]** 2/14
**301 [1]** 2/23
**307.020 [1]** 9/23
**3099 [1]** 2/9
**326-8188 [1]** 2/24
**38 [2]** 42/18 42/18
**3:18-cv-00212-MO [2]** 1/13 3/4

**4**

**4128 [1]** 2/6
**4800 [1]** 2/9

**5**

**50-page [1]** 40/8
**503 [1]** 2/24
**548 [1]** 8/18

**6**

**60 [1]** 21/4
**60 million [1]** 40/13
**6:18-cv-00296-MO [1]**

**6:18-cv-296-MO [1]** 3/5

**8**

**8188 [1]** 2/24
**85 [2]** 11/19 11/22
**86 [2]** 11/19 11/23

**9**

**90 percent [1]** 25/6
**97201 [1]** 2/18
**97204 [2]** 2/15 2/23
**97209-4128 [1]** 2/6
**98101-3099 [1]** 2/9

**A**

**ability [1]** 41/18
**about [48]**
**above [2]** 10/22 47/6
**above-entitled [1]** 47/6
**absence [1]** 19/20
**Absolutely [1]** 25/4
**ACA [1]** 25/6
**accept [2]** 20/9 35/24
**accomplished [2]** 40/15 40/15
**according [1]** 24/16
**accordingly [1]** 46/5
**accurate [3]** 29/5 29/11 43/2
**acknowledge [2]** 24/4 31/23
**acknowledged [1]** 30/18
**acknowledges [1]** 11/5
**act [11]** 4/3 4/7 4/15 23/3 29/23 30/15 30/19 39/16 40/5 40/22 42/16
**action [8]** 4/4 4/5 4/15 27/19 28/12 29/22 36/21 39/24
**actual [1]** 13/21

**actually [4]** 5/16 26/12 30/1 45/18

**actuarial [13]** 15/13 23/25 24/16 24/17 24/18 28/12 28/18 29/2 34/10 36/4 36/22 38/15 41/9

**actuarially [36]** 3/23 4/16 5/22 12/7 12/11 12/16 13/6 14/2 14/3 14/4 15/21 22/16 23/2 23/11 23/12 23/17 24/13 24/20 25/14 26/10 29/5 29/8 32/6 32/7 32/16 32/21 33/4 33/18 33/19 33/22 35/4 37/17 37/19 43/18 43/21 44/4

**Actuary [3]** 24/22 40/10 40/17

**add [4]** 27/25 38/12 45/18 45/21

**added [1]** 45/19

**addition [3]** 26/21 28/3 30/18

**additional [2]** 8/16 17/6

**addressed [4]** 8/25 9/4 27/19 27/20

**addressing [1]** 28/25

**adequate [2]** 26/17 26/18

**adequately [3]** 11/15 27/19 27/20

**adjusts [1]** 45/25

**administered [1]** 45/1

**administration [1]** 40/12

**administrative [3]** 27/22 40/4 41/21

**admittedly [1]** 4/4

**afforded [1]** 19/8

**afoul [2]** 28/21 30/25

**afoul of [1]** 30/25

**after [1]** 27/22

**again [6]** 4/23 16/25 19/23 34/6 35/1 38/3

**against [5]** 5/25 27/5 31/3 31/4 35/13

**agency [16]** 1/7 1/12 13/22 13/24 14/14 14/23 14/24 16/3 20/19 24/21 27/5 27/21 27/22 33/1 38/25 39/12

**ago [1]** 38/6

**agree [8]** 12/15 13/11 21/20 21/24 22/4 26/2 29/18 34/20

**agreement [1]** 23/20

**ahead [3]** 8/10 18/17 20/25

**al [1]** 3/6

**all [31]** 6/16 8/8 8/10 13/9 13/13 16/1 18/20 22/11 22/17 25/7 25/12 27/24 28/4 29/3 30/23 31/14 32/2 33/2 33/3 35/9 36/15 36/15 36/19 37/23 38/7 40/25 41/4 42/3 43/11 45/2 45/8

**allegation [2]** 20/10 25/19

**allegations [1]** 11/20

**allege [2]** 10/18 44/8

**alleged [4]** 20/5 23/2 43/23 44/6

**alleged in [1]** 43/23

**ALLEN [13]** 1/7 1/11 2/13 3/4 3/13 6/20 7/22 20/1 20/5 20/15 21/3 21/5 21/25

**Allen's [1]** 19/8

**Alletta [2]** 2/5 3/10

**allow [1]** 41/8

**almost [2]** 31/9 37/1

**alone [1]** 31/16

**already [8]** 6/8 16/19 19/10 19/25 26/20 28/1 43/13 43/14

**also [7]** 3/14 9/19 19/10 22/8 30/13 37/9 43/18

**always [2]** 16/18 45/4

**am [1]** 12/6

**amend [2]** 45/23 46/4

**amendment [7]** 5/1 5/2 6/23 6/24 16/17 21/14 21/22

**among [3]** 11/24 11/25 21/17

**amount [1]** 20/2

**amplified [1]** 17/1

**analogize [1]** 24/25

**analogous [2]** 9/22 10/3

**analogues [1]** 10/12

**and Nevada [1]** 9/5

**answer [5]** 6/3 13/17 20/1 20/11 45/9

**answers [1]** 10/15

**any [15]** 4/9 6/22 19/20 20/20 22/19 23/13 23/25 24/1 26/21 28/11 29/23 30/19 35/3 35/15 45/25

**anyone [1]** 45/15

**anything [7]** 10/22 27/25 31/10 36/6 36/12 45/16 46/7

**APA [6]** 4/12 4/18 28/5 29/20 29/22 30/25

**Apologies [1]** 36/18

**apologize [1]** 31/11

**APPEARANCES [1]** 2/2

## A

**Appendix [1]** 8/18
**application [3]** 28/20 30/20 30/24
**applied [2]** 5/1 40/16
**applies [1]** 26/2
**apply [1]** 10/15
**applying [3]** 28/21 32/6 35/19
**appreciate [1]** 41/5
**approach [1]** 7/20
**appropriate [1]** 24/24
**approval [5]** 23/10 23/24 24/13 25/10 41/16
**approve [1]** 24/9
**approved [13]** 23/16 23/22 24/6 25/3 25/17 26/7 26/10 29/10 32/5 34/10 37/21 41/10 41/12
**approving [1]** 34/23
**April [2]** 1/15 3/2
**are [44]** 3/18 3/19 4/12 5/7 6/4 7/25 8/6 11/19 11/20 12/3 12/5 13/21 14/17 15/7 20/7 21/16 22/18 24/13 24/24 26/20 29/3 31/19 31/20 32/15 32/16 33/14 33/17 34/9 35/2 35/4 36/24 38/13 38/14 40/7 40/13 40/15 41/12 43/1 43/3 43/12 43/12 43/15 44/12 44/20
**aren't [1]** 33/19
**arena [1]** 41/23
**argument [22]** 1/20 3/4 3/9 3/13 3/17 6/10 14/7 22/20 22/25 24/25 25/14 26/9 26/21 27/25

29/9 29/21 29/24 32/5 32/13 35/10 38/4 39/14
**arguments [2]** 32/2 45/9
**arise [1]** 4/8
**Armstrong [27]** 3/25 4/3 4/9 26/25 27/1 27/20 29/25 29/25 30/2 30/3 30/5 30/5 30/6 30/12 31/17 31/17 39/10 39/11 40/20 40/23 42/4 42/7 42/7 42/8 42/9 42/10 42/22
**Armstrong's [1]** 42/11
**arrest [1]** 6/24
**as [57]**
**ask [14]** 6/19 6/25 7/19 12/22 17/2 18/21 20/15 24/3 30/17 30/20 30/24 31/3 32/12 35/25
**asked [3]** 12/23 14/25 28/19
**asking [2]** 6/23 16/3
**assert [2]** 12/16 37/4
**asserted [3]** 5/8 17/20 23/1
**asserting [1]** 10/19
**asserts [1]** 11/15
**assimilate [1]** 17/2
**associated [1]** 40/2
**assume [2]** 26/15 31/23
**assumes [1]** 18/7
**assumes that [1]** 18/7
**assumption [1]** 23/19
**at [34]** 4/11 4/20 4/23 5/4 6/4 6/12 6/18 6/25 7/3 7/4 7/13 7/17 8/5 14/19 14/22 16/16 17/20 18/10 19/19 22/7 28/7 28/9 28/16 34/7 35/7 35/9 35/16 36/9

36/14 36/23 37/25 38/2 38/7 45/21
**attempt [1]** 39/18
**attention [1]** 8/15
**Auer [1]** 35/6
**authorities [2]** 10/11 10/12
**authority [9]** 1/6 1/9 1/12 2/12 3/6 13/24 19/5 30/13 35/14
**authority: [1]** 9/10
**authority: first [1]** 9/10
**availability [1]** 42/20
**available [1]** 27/4
**Ave [1]** 2/23
**avenue [3]** 2/9 2/14 6/11
**avoid [1]** 36/23

## B

**back [7]** 16/9 17/19 17/22 25/13 44/18 44/22 44/23
**Baird [2]** 18/25 18/25
**bar [5]** 31/3 35/12 35/17 35/18 36/24
**based [9]** 7/15 10/11 17/24 22/18 23/10 29/4 29/6 33/23 40/19
**bases: [1]** 4/6
**bases: supremacy [1]** 4/6
**basic [1]** 4/23
**basically [1]** 29/24
**basis [6]** 3/24 13/2 13/3 13/4 23/1 40/11
**be [55]**
**be based [1]** 33/23
**because [18]** 8/24 15/11 15/17 16/13 17/5 17/18 19/7 22/17 25/22

**because... [9]** 27/13 29/1 30/7 33/7 34/18 36/20 38/10 43/15 45/19

**become [2]** 18/10 18/11

**becomes [1]** 18/14

**been [19]** 8/14 11/10 18/19 22/25 23/1 25/17 29/10 31/16 32/21 34/14 35/15 37/21 38/16 38/18 38/20 38/25 39/13 43/18 45/4

**before [3]** 1/22 32/22 44/16

**behalf [2]** 3/8 3/13

**being [8]** 14/14 23/16 26/9 26/17 26/18 27/11 28/19 43/12

**believe [4]** 16/2 22/17 30/11 44/9

**below [1]** 47/4

**beneficiaries [2]** 38/14 40/14

**benefit [1]** 40/12

**benefits [2]** 40/15 41/19

**better [2]** 34/16 34/16

**between [7]** 13/20 15/8 16/11 16/11 16/19 24/11 44/18

**bid [1]** 16/10

**biggest [1]** 15/7

**bilateral [6]** 14/13 14/15 14/18 15/10 15/15 15/19

**binding [1]** 16/19

**bit [2]** 3/25 21/19

**Board [1]** 19/1

**Bonita [3]** 2/22 47/9

47/10

**both [11]** 1/7 12/11 14/22 19/17 23/20 26/6 27/3 29/19 29/20 40/23 41/17

**bound [1]** 13/23

**bounded [1]** 13/22

**breach [5]** 17/18 17/20 17/22 17/24 24/6

**Brenner [2]** 2/5 3/10

**Breyer [2]** 27/2 40/23

**Breyer's [1]** 27/3

**Brian [2]** 2/4 3/10

**briefed [1]** 8/15

**briefing [8]** 9/11 10/4 10/25 17/6 28/2 30/11 35/14 43/9

**briefs [3]** 6/8 17/1 22/20

**bring [1]** 8/15

**brought [1]** 32/22

**business [17]** 5/8 10/23 11/10 17/21 18/6 18/8 18/19 18/24 20/7 20/20 24/5 24/10 25/2 25/23 27/8 27/11 27/13

**Businesses [1]** 27/13

**but [55]**

## C

**cabined [3]** 13/24 14/17 15/4

**cabining [1]** 25/1

**caelum [1]** 45/5

**California [2]** 9/13 9/13

**call [2]** 3/21 14/13

**called [1]** 10/4

**calls [1]** 44/4

**came [2]** 16/5 31/11

**can [14]** 5/21 10/17 10/20 11/6 15/2 15/3 21/6 23/14 23/24 25/3

25/9 29/15 36/16 39/2

**can't [3]** 19/24 21/3 44/2

**cannot [1]** 41/14

**capacity [2]** 1/8 1/11

**capitation [2]** 23/9 43/3

**care [2]** 12/2 23/5

**Carla [2]** 2/17 3/14

**case [63]**

**cases [18]** 5/11 5/16 6/17 10/2 10/3 10/3 10/20 18/23 19/18 20/14 23/20 26/19 26/23 27/18 28/7 32/21 38/13 39/4

**catastrophe [1]** 44/16

**categories [1]** 4/20

**cause [4]** 4/15 6/17 6/25 47/6

**CCO [2]** 22/24 23/9

**CCOs [8]** 16/20 21/4 41/11 41/17 43/21 44/5 44/12 44/20

**certain [1]** 14/3

**certainly [3]** 15/22 36/8 43/19

**certified [1]** 47/7

**certify [1]** 47/4

**cetera [1]** 33/2

**chain [3]** 25/3 26/4 26/4

**Chalkboard [4]** 19/15 19/16 20/18 22/9

**challenge [6]** 17/15 17/17 18/4 27/10 39/11 39/19

**challenged [1]** 43/12

**challenging [2]** 6/12 38/14

**chance [1]** 17/2

**change [1]** 28/14

**changing [1]** 44/24

**Chevron [1]** 35/5
**CHIEF [1]** 1/23
**chose [1]** 25/21
**Circuit [9]** 8/17 8/24
 9/11 9/15 10/13 19/2
 19/17 19/17 39/15
**circumstance [1]**
 41/20
**circumstances [1]**
 24/1
**circumvent [1]** 39/20
**cite [3]** 9/16 9/20 9/20
**cited [11]** 9/11 10/4
 22/25 27/18 29/22
 30/11 35/15 38/14
 40/23 42/7 42/11
**cites [2]** 9/19 10/2
**claim [15]** 5/17 12/20
 12/23 13/2 13/7 17/13
 17/23 19/21 22/3 26/6
 27/13 27/14 29/6 45/18
 46/1
**claimant [1]** 5/5
**claims [16]** 3/23 4/8
 4/11 4/17 4/19 4/22 5/6
 8/1 13/11 17/20 22/18
 28/5 29/3 29/14 29/20
 45/11
**classic [1]** 31/24
**classifies [1]** 9/20
**clause [2]** 4/2 4/6
**clear [3]** 10/20 12/12
 21/5
**clearly [9]** 6/21 7/6
 7/10 9/2 9/9 10/14
 19/24 20/21 28/15
**CMS [47]** 15/15 15/21
 15/22 15/24 23/10
 23/10 23/15 23/16
 23/18 23/20 23/22

23/23 24/9 24/13 24/21
 24/24 25/3 25/10 25/17
 26/7 27/21 29/10 30/8
 33/3 33/3 33/9 33/10
 34/5 34/7 34/8 34/10
 34/23 35/1 36/15 37/21
 37/25 40/9 40/16 41/10
 41/12 41/15 41/16 43/4
 44/17 44/19 44/22
 44/23
**CMS's [1]** 32/25
**CMS-approved [2]**
 25/3 41/12
**Coie [2]** 2/5 2/8
**coin [1]** 37/22
**colleague [1]** 3/14
**colleagues [1]** 3/10
**color [1]** 4/25
**Colorado [1]** 32/20
**come [2]** 4/17 29/13
**comes [2]** 16/17 23/13
**coming [1]** 25/7
**commitment [1]** 12/1
**community [2]** 11/12
 19/1
**company [3]** 17/24
 18/19 20/20
**compel [1]** 31/19
**complained [1]** 7/21
**complaint [5]** 10/17
 10/18 11/7 11/15 43/24
**complex [2]** 40/10 41/5
**complexity [2]** 40/1
 41/2
**compliance [1]** 25/9
**complicated [1]** 5/20
**Complies [1]** 8/22
**concept [1]** 4/24
**concepts [1]** 4/23
**concern [5]** 11/1 11/11
 14/18 14/21 17/24
**concerned [3]** 11/3

**concerns [1]** 14/9
**concluded [1]** 46/11
**conclusion [3]** 5/13
 31/19 36/23
**conclusive [1]** 36/15
**conclusively [1]** 39/3
**concur [1]** 27/2
**concurrence [1]** 40/24
**concurring [2]** 26/25
 27/3
**conduct [8]** 7/6 7/11
 7/16 7/21 7/22 17/20
 17/21 20/2
**confident [1]** 45/11
**confirm [1]** 24/19
**confirmed [1]** 42/3
**conflict [19]** 30/21
 30/25 31/25 32/8 32/14
 32/17 32/18 33/9 33/14
 33/19 34/3 34/11 34/17
 34/20 35/20 36/2 37/8
 38/11 41/17
**conformed [1]** 47/7
**Congress [6]** 30/2 30/7
 31/15 31/18 35/21
 35/24
**Congress's [1]** 39/20
**congressional [26]**
 28/9 28/10 28/11 28/16
 28/22 31/1 31/13 36/1
 36/5 36/8 36/20 37/5
 37/11 37/13 37/14
 37/16 38/5 38/6 38/9
 39/24 40/14 40/18
 40/20 40/21 42/4 42/23
**consequences [2]** 41/6
 43/9
**consideration [1]** 41/9
**consistent [1]** 40/11
**consistently [1]** 40/16
**constitutes [2]** 13/16

constitutes... [1] 19/20
Constitution [3] 21/7 21/22 22/2
constitutional [2] 20/3 29/4
constitutionally [4] 22/8 22/16 27/16 27/18
construe [1] 17/5
contended [1] 28/11
contention [1] 23/18
context [5] 10/6 10/10 19/4 26/24 27/15
continue [1] 45/13
continuing [1] 39/25
contours [6] 7/3 26/1 32/24 33/4 34/6 45/13
contract [23] 4/12 4/18 16/10 16/14 16/17 17/19 17/20 17/23 17/24 19/4 20/6 22/22 23/2 24/7 25/16 25/22 25/23 26/12 27/19 29/7 29/13 43/12 43/13
contracting [1] 26/5
contracts [2] 23/12 25/18
contractual [2] 37/19 37/20
contrary [1] 31/11
control [1] 4/10
controls [1] 13/19
cooperative [1] 32/11
coordination [1] 43/5
copies [4] 8/19 19/16 20/18 20/23
corporation [2] 1/3 1/16
correct [8] 16/15 16/24 21/9 25/15 26/11 34/1 38/10 47/5

cost [1] 12/1
Couch [1] 2/6
could [15] 14/6 14/9 18/21 21/20 21/20 26/5 32/3 33/21 33/23 34/4 34/6 39/17 43/10 44/6 44/6
counsel [7] 3/7 8/20 29/7 42/3 42/3 42/25 43/7
counsel's [1] 39/10
count [1] 17/11
counting [1] 17/11
couple [2] 14/1 43/11
coupled [1] 40/3
course [3] 4/8 17/19 21/2
court [41] 1/1 1/23 2/22 8/12 8/19 8/25 9/9 9/19 10/2 10/5 13/5 13/17 13/18 16/2 19/16 20/21 21/15 21/18 27/2 29/18 30/13 31/5 32/15 32/20 33/8 33/21 38/24 39/14 39/16 39/19 39/20 39/22 40/1 40/12 41/8 42/16 42/18 42/19 43/15 46/10 47/11
court's [5] 8/15 17/5 26/24 39/8 42/24
Courthouse [1] 2/22
courts [6] 4/2 4/7 31/16 32/22 40/6 42/17
create [1] 41/17
cross [1] 31/22
CRR [2] 2/22 47/10
crystal [1] 21/5
CSR [2] 2/22 47/10
curious [2] 17/9 26/21
current [1] 45/17
cv [4] 1/4 1/13 3/4 3/5

D.C [1] 19/17
damage [1] 27/12
damages [1] 17/23
DATE [1] 47/10
David [1] 2/13
day [2] 27/14 36/24
days' [1] 21/5
deal [5] 14/22 15/2 15/3 15/18 32/4
dealing [3] 9/12 16/4 16/8
deals [1] 30/6
December [1] 7/15
decide [1] 36/25
decision [25] 6/1 8/25 15/4 16/4 18/4 24/23 25/22 27/1 27/2 28/21 33/1 33/2 33/8 33/9 33/10 34/3 34/16 34/18 35/20 37/2 37/2 40/16 41/11 43/9 45/25
decisions [2] 27/23 40/11
declaratory [1] 29/19
defendant [3] 1/17 7/14 8/3
defendants [2] 1/10 46/7
deference [2] 34/25 35/6
definitional [1] 37/1
degree [1] 45/12
demonstrate [1] 41/7
deny [2] 14/17 14/24
denying [1] 18/4
Department [2] 2/17 3/15
depend [1] 37/12
depends [2] 33/16 37/10

**deprivation [19]**  6/9 6/11 6/12 6/13 7/24 12/13 17/14 17/14 17/15 17/17 18/22 18/23 19/4 19/6 20/3 26/17 26/18 26/19 27/9

**deprivations [1]**  18/2

**derive [1]**  39/23

**described [1]**  5/14

**determination [5]**  36/15 36/22 37/7 43/16 43/20

**determine [6]**  5/9 24/23 28/17 36/3 36/7 40/18

**determined [2]**  36/11 43/2

**determines [1]**  39/3

**determining [1]**  40/19

**develop [1]**  24/17

**developed [1]**  11/12

**did [10]**  7/9 7/15 10/15 12/16 19/12 20/15 21/4 23/24 24/22 32/25

**didn't [7]**  12/22 17/4 17/5 26/9 27/2 42/5 45/14

**difference [1]**  14/20

**differences [3]**  14/10 15/6 15/7

**different [9]**  14/10 24/18 25/24 30/1 31/22 37/2 38/24 40/8 41/14

**differently [1]**  36/25

**difficult [1]**  36/23

**direct [2]**  10/12 27/21

**directives [1]**  39/13

**directly [7]**  8/25 9/14 9/22 10/3 10/8 11/20 12/3

**director [3]**  1/8 1/11 19/8

**disagree [1]**  36/4

**disapproved [1]**  24/10

**disbursement [1]**  26/4

**discovery [1]**  45/12

**discretion [1]**  13/21

**discuss [1]**  4/19

**discussed [3]**  5/10 6/15 17/1

**disgruntled [1]**  27/5

**dismiss [4]**  3/20 13/11 29/19 29/20

**dispute [1]**  44/18

**disputing [1]**  39/9

**dissolution [2]**  10/6 10/10

**distinction [9]**  11/3 13/20 15/16 16/11 16/21 24/3 24/11 24/14 30/13

**distinguish [1]**  9/12

**distinguishes [1]**  19/3

**distinguishing [1]**  21/17

**district [6]**  1/1 1/2 1/23 2/22 19/1 39/14

**divergence [1]**  36/20

**do [31]**  7/2 7/8 7/9 7/14 7/15 10/16 11/7 12/11 14/3 14/11 15/1 15/8 15/23 20/24 21/3 21/10 21/12 24/6 24/9 26/1 28/8 32/9 33/24 34/2 35/19 35/25 36/4 37/14 40/20 45/21 46/4

**doctrine [1]**  30/14

**doctrines [1]**  31/22

**does [13]**  5/21 7/20 22/6 22/8 30/7 30/15 31/18 33/6 33/7 34/21 36/13 37/12 44/11

**doesn't [9]**  3/22 4/9 6/3 10/21 10/22 11/6 30/5 33/13 38/22

**doing [3]**  20/20 24/5 38/1

**dominant [3]**  5/23 7/25 28/5

**Dominion [2]**  19/15 19/17

**don't [30]**  10/16 11/1 11/7 12/10 15/9 18/5 18/15 22/2 22/4 22/5 26/19 31/2 31/13 32/4 32/23 33/4 34/3 34/6 34/7 34/7 37/8 38/3 38/10 38/18 41/3 44/20 44/25 45/19 45/23 45/24

**done [5]**  11/22 12/5 25/3 43/14 44/9

**doubled [1]**  42/13

**doubt [1]**  18/14

**down [3]**  10/25 25/3 35/3

**draw [1]**  30/12

**driven [1]**  4/14

**drives [1]**  20/11

**due [6]**  5/1 7/11 19/19 19/19 19/20 20/22

**during [1]**  19/11

**E**

**each [4]**  16/17 33/15 33/19 43/15

**earlier [1]**  25/18

**echoed [1]**  43/8

**economic [2]**  18/9 19/19

**Education [1]**  19/1

**effect [1]**  28/13

**either [4]**  5/3 36/21 43/17 46/4

**element [2]** 6/14 17/13
**else [1]** 20/4
**email [3]** 6/7 13/17 17/1
**emailed [1]** 4/22
**employees [1]** 18/20
**end [4]** 19/7 36/15 36/23 36/25
**end-all-and-be-all [1]** 36/15
**enforce [1]** 28/12
**enforcement [6]** 39/17 39/21 40/5 41/17 42/17 42/19
**enforcing [1]** 40/2
**engaged [1]** 20/2
**English [2]** 2/4 3/8
**enjoying [1]** 11/24
**enough [4]** 6/12 8/7 10/18 13/12
**ensues [1]** 44/16
**enter [2]** 16/13 25/21
**entered [2]** 25/18 25/23
**entire [3]** 13/11 31/9 45/15
**entirely [2]** 6/3 15/7
**entities [2]** 15/2 15/3
**entitled [3]** 19/6 41/14 47/6
**entity [2]** 14/19 16/5
**entity's [1]** 18/9
**equates [1]** 9/14
**equitable [6]** 4/2 4/6 31/20 39/20 42/21 42/24
**errors [1]** 43/19
**especially [1]** 20/14
**essentially [2]** 15/18 28/13
**establish [2]** 12/13

**established [10]** 6/21 7/6 9/2 9/9 9/17 10/14 13/15 19/24 20/21 44/10
**establishes [5]** 7/10 18/9 19/5 22/10 35/15
**et [2]** 3/6 33/2
**et cetera [1]** 33/2
**even [11]** 4/13 6/6 6/8 7/3 15/2 17/12 25/6 30/5 30/17 42/22 42/23
**eventually [1]** 4/13
**every [1]** 27/14
**everyone [1]** 14/25
**everything [1]** 6/15
**evidenced [1]** 37/5
**Ex [2]** 30/14 30/15
**exact [1]** 45/13
**exactly [4]** 14/25 33/24 41/20 41/22
**example [3]** 6/19 11/5 14/4
**except [1]** 12/15
**exception [2]** 27/7 27/9
**exclusion [1]** 39/21
**exclusive [2]** 30/3 30/8
**exclusivity [1]** 37/8
**excuse [2]** 23/21 26/17
**exist [1]** 5/16
**existence [1]** 11/15
**exists [1]** 27/8
**expanded [1]** 25/7
**expectation [8]** 4/14 24/5 24/8 24/11 24/12 26/8 26/10 26/12
**expert [1]** 24/17
**express [3]** 22/22 31/12 40/3
**extensive [1]** 38/16
**extent [2]** 33/8 34/24

**fact [9]** 16/3 18/11 23/19 24/19 31/15 31/15 31/17 35/1 35/4
**facts [4]** 7/4 16/12 20/7 34/7
**factual [3]** 15/7 20/2 44/24
**fail [3]** 13/3 13/8 27/13
**failed [2]** 23/18 39/12
**fails [2]** 12/18 13/10
**failure [1]** 24/6
**Fair [1]** 13/12
**fairly [1]** 14/17
**fall [1]** 26/24
**false [1]** 22/18
**familiar [1]** 26/20
**FAMILYCARE [26]** 1/3 1/15 2/4 3/4 3/5 3/9 3/22 5/5 5/22 11/10 11/21 11/24 16/19 19/8 20/6 22/17 22/24 23/1 23/21 23/22 38/2 43/17 44/7 44/8 44/10 44/19
**FamilyCare's [2]** 12/1 24/4
**far [2]** 14/8 20/13
**fashion [1]** 15/24
**FC [2]** 26/4 28/23
**FC's [1]** 7/11
**Fed [1]** 8/17
**federal [23]** 4/2 4/7 14/1 15/12 15/12 15/14 15/25 22/21 23/8 24/21 25/4 25/8 25/25 29/11 29/12 30/6 30/19 31/19 32/11 32/15 41/15 41/21 42/24
**feel [2]** 11/15 31/21
**fiat [1]** 45/4
**field [1]** 31/24

## F

**Fifth [5]** 2/14 5/1 6/22 21/14 21/22
**final [7]** 19/12 28/17 36/3 36/8 36/12 36/22 37/2
**Finally [1]** 27/24
**find [4]** 5/24 5/24 11/6 35/18
**finding [2]** 23/11 23/25
**finds [1]** 13/5
**firm [2]** 24/16 24/19
**first [9]** 8/2 8/12 9/10 15/23 17/2 25/13 32/13 42/3 43/11
**Floor [1]** 2/6
**flow [2]** 25/9 25/9
**follow [2]** 15/12 39/12
**followed [1]** 23/24
**following [3]** 7/8 7/10 15/9
**forced [1]** 20/6
**Ford [2]** 10/4 10/4
**foregoing [1]** 47/4
**form [1]** 12/8
**former [2]** 13/25 14/1
**forth [3]** 38/6 40/9 41/22
**forward [10]** 8/21 12/18 12/21 12/23 12/24 13/2 16/5 43/18 45/11 45/14
**forwarded [1]** 26/19
**found [3]** 5/16 10/13 12/17
**foundations [2]** 4/9 4/11
**Fourteenth [1]** 5/2
**fourth [2]** 6/24 18/3
**frame [2]** 37/10 37/12
**free [2]** 16/13 31/5

**free-moving [1]** 31/5
**freewheeling [1]** 31/8
**front [1]** 19/7
**fund [1]** 41/18
**fundamental [1]** 6/14
**funding [2]** 41/15 41/16
**funds [3]** 25/6 25/7 42/20
**further [4]** 26/21 42/14 45/16 46/7
**future [2]** 43/25 44/1

## G

**generality [1]** 7/1
**genesis [1]** 44/17
**get [9]** 4/13 17/23 20/13 23/23 23/24 32/4 36/14 43/20 45/9
**gets [2]** 7/12 41/11
**getting [3]** 22/7 25/13 44/8
**give [9]** 3/18 4/3 4/21 11/17 14/16 18/3 19/12 34/25 45/6
**given [1]** 24/23
**gives [2]** 29/8 35/2
**go [18]** 3/24 8/2 8/10 12/18 12/21 12/23 12/24 13/1 17/19 17/22 18/15 18/16 20/7 20/25 27/13 42/14 44/21 45/11
**goal [1]** 32/4
**goes [3]** 14/8 45/5 45/14
**going [14]** 11/1 14/7 14/15 14/16 17/10 17/23 17/24 18/3 24/3 25/9 26/13 29/13 43/18 44/23
**good [2]** 3/12 30/10

**goodwill [29]** 5/8 5/14 5/16 5/17 8/13 8/13 9/2 9/4 9/8 9/14 9/17 9/20 10/1 10/6 10/9 10/14 10/17 10/18 10/20 10/23 11/1 11/6 11/8 11/9 11/15 11/23 11/24 12/11 13/1
**goodwill/property [1]** 10/20
**Gordon [2]** 2/8 3/10
**got [2]** 33/13 39/14
**government [1]** 25/8
**government's [1]** 25/5
**governs [1]** 23/3
**grant [3]** 14/17 14/24 18/2
**granted [7]** 14/14 14/14 22/23 22/24 23/21 23/21 27/22
**granting [1]** 17/12
**grounded [1]** 44/25
**guess [6]** 5/13 28/9 31/21 34/21 36/6 38/23
**guidance [1]** 40/9

## H

**had [7]** 11/11 11/13 17/2 23/22 26/8 39/12 44/21
**hadn't [1]** 26/7
**hand [1]** 13/23
**Handing [1]** 21/1
**handled [2]** 3/9 3/13
**hands [1]** 45/15
**happen [3]** 39/2 41/10 43/10
**happened [2]** 38/25 44/16
**happens [1]** 43/5
**happy [1]** 29/16
**has [39]** 3/20 5/5 8/14

**has... [36]** 9/13 11/10 13/24 15/1 15/5 15/20 18/19 21/15 21/25 22/25 23/1 23/10 23/16 25/17 25/25 27/14 27/15 27/22 28/10 29/21 30/7 31/5 31/12 31/14 31/16 32/5 38/18 38/20 38/25 41/13 43/13 44/7 44/9 44/15 44/17 45/4

**have [80]**

**haven't [1]** 36/12

**having [1]** 36/25

**he [12]** 19/9 19/9 20/2 20/15 21/3 21/3 22/6 22/6 22/8 22/10 22/10 42/5

**he's [2]** 22/6 22/8

**head [2]** 8/9 22/1

**HEALTH [5]** 1/6 1/9 1/12 2/12 3/6

**hear [3]** 5/12 14/11 38/21

**heard [2]** 19/14 42/6

**hearing [4]** 17/15 18/22 19/25 27/6

**heat [1]** 3/25

**heightened [1]** 18/11

**held [5]** 9/3 10/5 20/21 31/16 42/16

**help [1]** 41/3

**helpful [5]** 4/13 4/17 6/18 8/20 45/9

**helping [2]** 21/18 29/14

**helps [3]** 28/14 38/6 41/7

**Herbold [1]** 2/14

**here [67]**

**here's [2]** 6/16 13/18

**HHS [3]** 14/19 15/1 24/6

**HHS-approved [1]** 24/6

**high [5]** 12/1 31/3 35/12 35/17 36/24

**high-quality [1]** 12/1

**higher [1]** 44/12

**highlighted [3]** 6/7 6/8 8/13

**him [1]** 42/6

**hinge [1]** 29/20

**hinges [1]** 29/25

**hired [1]** 24/16

**his [3]** 1/8 1/11 22/1

**history [3]** 11/21 44/23 45/1

**hold [2]** 30/5 30/7

**holding [6]** 4/1 9/8 29/23 38/21 39/10 39/16

**holdings [1]** 38/17

**Honor [27]** 3/3 3/9 3/12 8/4 8/11 8/23 11/20 12/6 17/4 18/17 19/2 20/24 22/12 22/14 24/15 28/24 29/11 31/11 35/8 36/16 36/18 37/24 41/25 42/25 45/17 46/2 46/8

**HONORABLE [1]** 1/22

**horribles [4]** 43/8 43/9 44/25 45/3

**hour [1]** 19/11

**hours [1]** 19/9

**how [10]** 5/24 7/17 7/20 30/14 33/13 37/10 37/12 39/13 40/9 44/25

**hundreds [3]** 18/19 39/1 39/2

**I**

**I'd [11]** 3/17 7/20 8/1 8/12 14/11 18/13 22/15 26/15 28/9 39/9 41/1

**I'll [13]** 3/18 5/12 7/13 14/22 17/2 17/11 18/16 31/8 38/4 39/8 42/15 45/3 45/24

**I'm [31]** 11/3 11/4 14/11 14/15 14/16 14/16 15/6 16/11 17/9 17/10 18/3 19/23 20/10 20/10 20/11 21/18 24/3 26/20 27/6 28/19 29/10 29/14 29/16 34/12 34/13 34/21 35/24 44/19 45/11 45/19 46/2

**I've [4]** 4/22 6/15 15/6 36/2

**idea [4]** 21/9 21/21 22/1 27/9

**identified [2]** 31/14 31/14

**if [60]**

**iii [1]** 23/7

**immunity [8]** 6/16 7/18 7/25 9/3 10/15 19/23 21/10 27/25

**implementing [1]** 19/10

**implicit [1]** 23/19

**implicitly [1]** 39/17

**implied [1]** 22/22

**importance [1]** 20/9

**important [3]** 4/10 33/11 36/19

**importantly [2]** 17/25 42/16

**impose [1]** 29/12

**impose this [1]** 29/12

**imposed [2]** 22/22 22/23

**in [188]**

**inadequate [1]** 18/22

**I**

**INC [5]** 1/3 1/15 2/4 3/5 3/5
**included [1]** 23/11
**includes [3]** 9/25 16/18 23/2
**including [4]** 14/3 24/22 28/20 31/17
**incorporate [1]** 15/11
**incorporated [1]** 24/20
**incorporates [1]** 15/25
**independent [2]** 15/21 15/21
**indicate [1]** 35/12
**indicates [1]** 36/9
**indicating [1]** 36/7
**indication [1]** 35/1
**individually [2]** 1/8 43/3
**inferentially [1]** 4/4
**information [1]** 34/15
**informed [2]** 34/16 34/17
**initial [3]** 3/21 4/11 40/23
**inquiry [4]** 13/19 31/6 35/3 38/1
**inquiry into [1]** 31/6
**instance [1]** 15/23
**instead [3]** 7/2 29/24 37/5
**intangible [2]** 9/21 9/25
**intended [1]** 40/13
**intent [4]** 31/13 36/9 40/14 42/4
**intention [2]** 45/18 45/21
**interest [34]** 5/3 5/6 5/10 5/18 5/19 5/21 5/22 5/25 6/2 6/4 6/6 6/9 8/14 9/8 9/14 9/18

12/10 12/16 13/5 13/6 13/7 13/15 13/16 18/11 18/14 18/17 22/9 22/16 24/7 25/14 25/15 25/16 26/6 26/16
**interested [1]** 18/13
**interesting [1]** 35/17
**Interestingly [1]** 5/15
**interests [6]** 5/3 5/4 5/8 16/23 17/13 18/10
**interim [1]** 18/5
**interpretation [1]** 42/11
**interrupt [1]** 14/6
**into [14]** 7/12 16/14 16/16 23/13 23/25 24/20 25/18 25/21 25/23 26/24 31/6 35/4 38/1 44/4
**invitation [1]** 17/6
**involve [1]** 15/5
**involved [1]** 25/5
**involves [1]** 20/19
**is [235]**
**isn't [7]** 5/11 12/17 18/1 32/14 32/17 35/5 35/18
**issue [17]** 16/25 17/10 17/10 17/12 17/12 17/21 18/10 19/19 19/22 19/23 21/2 22/15 28/5 28/25 35/16 41/2 46/3
**it [100]**
**it's [47]** 4/10 4/13 4/16 5/14 6/10 7/3 7/19 10/4 11/22 12/10 13/23 14/8 14/15 14/19 14/19 15/3 15/13 15/14 15/22 19/24 20/1 21/5 26/3 26/7 27/17 28/11 28/14 29/1 29/14 31/5 32/18

32/24 33/14 34/4 34/12 35/7 36/23 36/25 37/4 37/5 37/20 37/21 41/14 41/16 43/15 43/20 44/16
**its [8]** 3/20 4/15 13/17 23/2 24/22 25/10 27/22 37/8
**itself [6]** 4/7 27/12 31/17 31/18 31/19 42/20

**J**

**January [1]** 11/11
**jeopardy [1]** 18/10
**JUDGE [1]** 1/23
**judgment [2]** 29/19 41/13
**judicial [3]** 28/20 31/5 31/20
**jumped [1]** 36/24
**just [31]** 6/15 7/19 8/2 10/21 12/12 14/6 14/8 14/15 16/4 16/4 17/9 17/11 17/18 18/15 18/21 20/3 21/18 26/1 26/19 31/1 31/25 32/12 33/14 37/20 38/4 42/2 42/13 42/23 44/24 45/14 45/24
**Justice [4]** 2/17 3/15 27/2 27/3
**justicia [1]** 45/4

**K**

**keep [2]** 42/14 43/11
**key [1]** 20/7
**kids [1]** 7/19
**kind [4]** 10/25 36/13 41/20 43/8
**knew [2]** 20/6 34/18
**know [25]** 6/3 6/20

**know... [23]** 7/15 11/1 14/13 15/1 15/3 19/25 20/4 21/6 22/8 26/19 31/22 31/24 33/1 33/1 33/2 33/4 34/6 34/7 34/7 35/5 38/18 45/19 45/24
**know that [1]** 11/1
**knowing [1]** 21/7
**knowingly [4]** 21/11 21/13 21/16 21/21
**known [6]** 6/21 7/5 7/17 7/22 7/23 22/10
**knows [1]** 22/6

## L

**lacked [1]** 34/15
**laid [1]** 28/7
**Lance [4]** 8/17 8/23 9/16 10/15
**language [7]** 6/17 6/18 13/17 29/25 40/21 40/22 45/24
**last [5]** 6/14 19/22 27/1 32/12 35/11
**law [36]** 4/25 5/9 8/14 9/1 9/5 9/5 9/7 9/13 9/17 10/8 13/15 13/22 15/14 15/17 15/25 18/8 21/11 21/13 21/16 21/21 22/1 22/6 28/19 28/20 28/21 29/8 29/24 30/10 30/21 32/6 32/15 35/13 35/19 36/2 39/12 41/15
**lawfully [1]** 23/15
**laws [3]** 9/24 15/12 15/13
**least [8]** 4/11 6/4 6/12 6/18 7/17 14/19 35/9

36/9
**Ledges [10]** 5/24 13/18 13/20 14/9 14/12 14/23 16/3 16/12 25/1 25/2
**legion [1]** 38/13
**legitimate [1]** 26/8
**legs [1]** 24/12
**less [1]** 15/4
**let [4]** 4/21 14/8 32/12 32/13
**let's [4]** 18/15 28/5 29/17 31/23
**letter [1]** 33/3
**letting [1]** 16/10
**level [3]** 6/25 10/22 43/6
**Levin [2]** 2/13 3/12
**liberty [4]** 5/3 5/3 18/11 18/14
**license [8]** 14/15 14/16 14/25 16/5 18/2 18/3 18/5 18/5
**licensing [4]** 14/12 14/13 14/23 16/4
**like [24]** 3/17 4/3 4/5 6/13 6/23 7/11 7/20 8/1 8/4 8/12 9/23 14/11 17/13 18/16 22/15 24/7 26/15 28/9 29/15 31/7 31/21 37/6 39/9 41/1
**limitation [1]** 25/2
**limited [2]** 9/25 13/22
**limiting [1]** 25/1
**line [1]** 32/4
**list [1]** 7/9
**litigated [1]** 32/22
**litigation [1]** 38/16
**little [3]** 5/20 21/19 28/10
**LLP [2]** 2/5 2/8
**look [5]** 4/23 5/4 5/8 28/8 28/16

looked [3] 9/9 9/10 34/7
**looking [6]** 5/4 7/3 7/4 7/13 19/23 38/2
**looks [2]** 28/7 37/25
**lose [1]** 17/11
**lost [1]** 34/21
**lot [3]** 29/14 31/7 37/10
**low [1]** 12/1
**low-cost [1]** 12/1
**lowest [1]** 44/8
**Lujan [1]** 19/3

## M

**made [5]** 27/22 33/10 33/10 34/16 41/11
**main [2]** 35/11 40/19
**make [15]** 10/20 12/12 15/8 24/2 32/9 32/10 32/13 36/22 37/1 37/2 37/6 37/17 39/19 40/10 43/7
**maker [2]** 24/23 34/18
**makers [1]** 6/1
**makes [3]** 14/20 15/17 34/17
**making [5]** 15/4 24/14 33/1 33/2 40/16
**managed [1]** 23/5
**mandate [1]** 14/2
**mandated [1]** 15/24
**many [2]** 7/18 38/16
**Market [1]** 2/18
**Markowitz [6]** 2/13 2/14 3/14 22/13 29/1 29/3
**Marriage [1]** 10/9
**Matt [2]** 3/10 3/12
**matter [13]** 14/11 15/7 15/9 28/17 33/6 33/7 33/14 36/3 36/8 36/12 38/22 41/9 44/24

**M**

**matters [3]** 26/5 34/23 34/24
**Matthew [2]** 2/8 2/13
**may [13]** 18/8 18/8 24/11 27/12 28/25 31/18 33/22 34/13 34/25 34/25 37/24 38/1 47/9
**maybe [5]** 4/5 17/10 35/25 36/24 42/14
**McDuffy [1]** 10/9
**me [20]** 3/13 4/18 4/21 8/4 11/17 13/9 14/8 14/21 23/21 26/17 26/20 28/8 28/14 29/14 32/12 33/24 34/2 35/18 41/3 45/6
**mean [6]** 10/20 18/5 43/25 44/2 44/3 44/11
**meaningful [1]** 17/16
**means [4]** 30/3 31/8 32/2 43/17
**meant [2]** 35/3 42/10
**measurement [1]** 24/13
**Medicaid [18]** 4/3 4/7 4/15 25/25 29/10 29/23 30/15 30/19 32/10 38/14 39/11 39/12 39/16 40/3 40/5 40/13 42/16 43/1
**Medicare [1]** 23/3
**member [1]** 23/9
**members [3]** 11/24 18/20 19/11
**memorandum [1]** 8/24
**mention [1]** 37/7
**mere [1]** 35/1
**methodology [1]** 28/6
**MICHAEL [1]** 1/22

**microphone [1]** 8/6
**middle [1]** 45/12
**might [11]** 3/21 24/3 30/25 30/25 31/3 33/9 33/9 36/2 38/24 42/20 43/20
**Mik [1]** 30/11
**million [2]** 40/13 41/19
**mind [1]** 43/11
**mine [2]** 34/11 34/16
**minute [1]** 38/6
**misunderstood [1]** 42/6
**MO [4]** 1/4 1/13 3/4 3/5
**moment [6]** 11/17 14/6 26/15 31/23 36/16 41/1
**money [2]** 25/5 25/8
**month [1]** 23/9
**more [13]** 4/10 4/13 4/16 5/12 5/20 11/4 17/25 25/6 28/15 29/6 34/18 37/6 39/18
**morning [4]** 3/12 26/20 27/6 31/9
**morning's [1]** 6/7
**MOSMAN [1]** 1/22
**most [4]** 6/7 11/19 12/3 20/17
**motion [2]** 29/19 29/20
**motto [1]** 45/4
**Mountain [1]** 32/20
**move [3]** 29/16 45/23 46/4
**moved [1]** 3/20
**moving [1]** 31/5
**Mr [5]** 2/4 2/4 2/8 2/13 2/13
**Mr. [12]** 3/13 3/14 7/22 20/1 20/5 20/15 21/3 21/5 21/25 22/13 29/1 29/3
**Mr. Allen [8]** 3/13 7/22

20/1 20/5 20/15 21/3 21/5 21/25
**Mr. Markowitz [4]** 3/14 22/13 29/1 29/3
**Ms [2]** 2/5 2/17
**Ms. [1]** 8/8
**Ms. Shumway [1]** 8/8
**much [7]** 11/4 26/3 28/14 33/14 39/17 44/17 45/4
**multiyear [1]** 16/17
**mushy [2]** 6/17 6/18
**must [1]** 25/6
**my [16]** 3/9 3/14 3/18 4/8 4/21 5/13 7/19 14/8 18/4 20/10 28/2 35/11 35/11 37/25 45/4 45/25

**N**

**N.W [1]** 2/6
**name [1]** 3/7
**national [2]** 40/16 43/5
**nationally [3]** 40/11 43/1 43/2
**nature [2]** 26/8 33/10
**NCOs [1]** 38/13
**near [2]** 8/6 8/7
**nearly [1]** 41/19
**neatly [1]** 26/24
**necessarily [6]** 22/4 30/8 34/12 43/16 43/20 44/11
**need [4]** 12/12 18/15 38/10 40/18
**neither [2]** 4/1 5/15
**Nevada [9]** 9/5 9/5 9/7 9/17 9/20 9/24 10/2 10/5 10/12
**never [1]** 6/25
**next [3]** 17/10 17/12 20/10
**Ninth [7]** 8/17 8/24

Case 6:18-cv-00296-MO Document 89 Filed 05/08/19 Page 61 of 69

**Ninth... [5]** 9/10 9/15 10/13 19/16 39/15

**no [37]** 1/4 1/13 3/4 3/5 5/3 6/13 13/5 13/6 13/23 17/22 19/7 19/13 19/13 19/13 21/12 21/21 22/21 22/22 23/18 23/23 25/19 25/24 27/12 27/17 28/2 29/7 29/22 34/11 34/19 35/1 35/7 35/14 37/7 38/11 42/5 43/4 46/8

**Nods [1]** 8/9

**non [3]** 1/3 1/16 4/15

**non-profit [2]** 1/3 1/16

**none [2]** 4/8 22/25

**not [102]**

**notable [2]** 9/15 29/21

**note [1]** 4/11

**noted [1]** 13/18

**nothing [3]** 31/14 35/12 35/14

**notice [4]** 19/13 19/25 20/20 21/5

**notion [3]** 29/4 35/13 38/23

**novel [1]** 32/19

**now [2]** 8/21 41/13

**nuanced [1]** 34/11

**number [2]** 14/18 42/13

**numerous [1]** 31/16

**O**

**o0o [1]** 47/2

**obligation [5]** 14/24 15/21 15/23 22/23 23/23

**obtained [1]** 25/11

**occupy [1]** 31/24

**occurred [1]** 4/25

**Office [3]** 24/22 40/10 40/17

**official [3]** 1/8 1/11 47/11

**often [2]** 18/1 20/15

**OHA [34]** 3/13 3/20 6/7 6/20 6/20 7/9 7/21 9/11 15/3 15/12 15/17 15/20 16/9 16/9 16/11 16/13 16/19 19/3 19/6 19/12 20/5 21/4 24/5 24/10 24/16 28/10 29/21 31/14 32/25 37/7 44/7 44/9 44/19 44/21

**OHA's [4]** 6/10 10/25 15/22 29/20

**okay [2]** 17/8 46/4

**Old [2]** 19/15 19/17

**on [65]**

**once [1]** 14/23

**one [26]** 3/20 4/20 4/23 5/8 5/18 6/2 6/3 10/2 10/3 12/12 13/10 14/12 14/18 14/19 14/25 20/13 20/14 24/23 28/7 28/8 30/17 36/16 37/24 38/10 38/14 45/6

**ongoing [1]** 11/11

**only [11]** 12/12 22/1 23/1 23/12 23/14 24/23 25/3 25/9 26/9 29/9 41/22

**opinion [5]** 26/25 26/25 27/3 39/21 39/25

**opportunity [5]** 17/15 17/17 17/22 19/13 27/10

**opposed [1]** 20/3

**opposing [1]** 8/20

**Optumas [2]** 24/17 24/19

**or [61]**

**oral [4]** 1/20 3/3 3/17 45/9

**order [4]** 23/8 23/15 24/19 27/14

**OREGON [24]** 1/2 1/3 1/6 1/7 1/9 1/11 1/12 1/15 1/17 2/12 2/17 3/5 5/9 5/10 5/14 8/14 9/22 10/8 10/13 10/14 11/22 15/11 15/25 41/19

**organizations [1]** 23/5

**original [2]** 34/18 47/6

**ORS [1]** 9/23

**other [29]** 5/11 6/5 11/25 12/12 12/17 13/3 13/10 13/23 16/20 19/5 21/2 24/1 24/1 24/12 25/24 26/5 32/23 33/15 33/20 35/3 37/24 38/12 41/17 43/21 43/23 44/5 44/12 44/15 44/20

**others [4]** 15/2 15/3 37/7 38/16

**otherwise [3]** 22/2 24/12 27/9

**ought [1]** 45/13

**our [12]** 4/8 9/11 10/4 15/8 17/23 22/20 29/3 29/19 30/11 34/22 45/18 45/20

**ours [3]** 4/5 14/10 14/18

**out [18]** 16/10 16/17 17/21 18/6 18/8 18/23 19/2 19/17 20/7 20/20 21/18 27/7 27/11 27/13 28/7 31/11 40/12 44/10

**outcome [1]** 34/19

**outline [1]** 45/13

**outside [1]** 24/16

**over [6]** 3/25 6/16

**over... [4]** 11/22 23/6 32/4 36/24
**overlay [1]** 6/16
**own [2]** 24/22 25/22

**P**

**page [1]** 40/8
**paid [7]** 23/15 25/20 26/13 41/15 44/5 44/12 44/12
**parade [4]** 43/8 43/8 44/24 45/3
**paragraph [3]** 11/22 11/23 45/18
**paragraphs [3]** 11/14 11/19 12/3
**part [3]** 23/23 27/1 29/6
**parte [2]** 30/14 30/16
**particular [8]** 7/5 7/22 10/18 12/5 21/13 23/6 30/20 39/13
**parties [1]** 44/18
**party [1]** 24/1
**passed [1]** 43/13
**past [2]** 11/22 44/2
**path [1]** 10/25
**PATRICK [3]** 1/7 1/11 2/12
**pause [3]** 11/18 36/17 45/7
**pay [1]** 23/19
**payment [2]** 23/9 23/16
**payments [3]** 23/4 23/5 41/12
**PC [1]** 2/14
**people [3]** 21/10 21/12 41/19
**per [2]** 23/9 23/9
**per-member [1]** 23/9
**per-month [1]** 23/9

**percent [1]** 25/6
**perhaps [2]** 16/9 16/10
**period [1]** 19/11
**Perkins [2]** 2/5 2/8
**permissible [2]** 23/4 23/5
**person [1]** 24/4
**personal [2]** 9/21 9/25
**phase [1]** 6/2
**phrased [1]** 7/4
**piece [1]** 29/2
**pieces [2]** 3/17 3/18
**placed [1]** 26/12
**plaintiff [4]** 1/4 1/13 7/9 8/3
**plaintiff-defendant [1]** 8/3
**plaintiffs [4]** 4/3 4/3 4/5 45/16
**plan [1]** 19/10
**play [6]** 5/6 28/16 36/5 37/15 40/3 43/14
**pleadings [2]** 23/20 24/16
**please [2]** 3/7 8/21
**plugged [1]** 7/12
**plus [1]** 11/10
**podium [1]** 8/5
**point [30]** 10/9 11/20 12/3 16/2 16/16 18/18 21/25 22/5 29/1 29/6 29/12 31/12 32/6 32/23 35/7 35/11 35/12 36/1 36/19 37/18 38/10 38/19 38/20 38/23 42/6 42/25 43/7 43/23 44/15 45/22
**point is [1]** 38/19
**points [2]** 40/12 42/2
**portion [1]** 25/7
**Portland [5]** 1/17 2/6 2/15 2/18 2/23

**position [2]** 24/4 40/8
**possibility [2]** 11/5 30/18
**possible [3]** 5/17 45/10 45/14
**post [10]** 6/11 7/24 17/15 17/15 17/17 18/22 19/3 26/17 26/18 27/9
**post-deprivation [8]** 6/11 7/24 17/15 17/17 18/22 26/17 26/18 27/9
**post-hearing [1]** 17/15
**postdate [1]** 30/12
**potential [1]** 5/7
**power [2]** 24/23 42/24
**powers [3]** 4/2 4/6 39/20
**precisely [1]** 23/22
**preclude [6]** 28/11 30/15 35/3 36/21 42/20 42/24
**precluded [1]** 31/20
**precludes [4]** 39/17 40/5 41/15 42/17
**precluding [1]** 39/24
**predicate [2]** 4/24 12/9
**predicated [1]** 13/7
**preempted [2]** 30/21 32/3
**preempting [1]** 35/13
**preemption [32]** 28/6 28/7 28/19 28/23 28/25 29/14 29/17 29/18 29/21 29/22 30/6 30/21 30/25 31/4 31/4 31/13 31/24 31/25 32/8 32/14 32/17 32/18 35/13 35/16 38/17 38/18 38/20 38/21 39/3 39/7 39/9 41/8
**preempts [1]** 29/24

**premise [2]** 22/18 22/18
**presence [1]** 15/14
**present [3]** 41/8 43/25 44/1
**presumption [1]** 31/4
**pretty [1]** 36/24
**preventive [1]** 12/2
**previously [1]** 4/22
**prior [1]** 11/11
**private [9]** 4/4 4/5 28/12 36/21 39/17 39/21 39/24 40/5 42/17
**probable [1]** 6/25
**probably [1]** 38/10
**problem [1]** 39/4
**problematic [1]** 44/13
**procedural [4]** 5/25 6/11 6/22 13/20
**procedures [1]** 27/22
**proceeding [2]** 10/7 10/10
**proceedings [6]** 1/21 11/18 36/17 45/7 46/11 47/5
**process [21]** 5/1 6/12 7/11 7/25 13/23 18/23 19/6 19/7 19/8 19/19 19/20 20/22 25/21 26/17 26/18 34/9 34/22 34/23 34/25 41/21 44/9
**product [1]** 11/25
**profit [2]** 1/3 1/16
**program [5]** 25/5 32/11 38/2 41/18 45/1
**promise [1]** 31/8
**promulgation [1]** 33/1
**properly [1]** 5/14
**property [60]**
**proposal [1]** 24/21

**proposed [2]** 34/10 45/24
**proposition [2]** 9/16 26/3
**protected [7]** 13/4 13/5 13/6 22/9 22/16 27/16 27/18
**protection [1]** 5/2
**protections [2]** 5/25 6/22
**protects [3]** 21/10 21/12 21/16
**provided [6]** 25/18 25/25 30/2 30/7 31/15 31/18
**provider [1]** 27/5
**providers [4]** 11/12 11/25 12/2 38/13
**providing [1]** 12/1
**provision [7]** 29/7 29/23 30/14 40/4 42/19 42/22 42/23
**provisions [1]** 4/16
**purpose [24]** 28/9 28/10 28/11 28/16 28/17 28/18 28/22 31/1 35/23 36/2 36/5 36/7 36/20 37/5 37/11 37/13 37/15 37/16 38/5 38/6 38/9 39/24 40/18 40/20
**purposes [5]** 9/3 9/21 21/22 31/22 35/21
**pursuant [3]** 23/10 41/12 41/16
**put [1]** 27/11
**puts [3]** 17/21 18/23 27/7
**putting [1]** 20/19

## Q

**QI [1]** 20/14
**qualified [8]** 6/15 7/17

7/25 9/2 10/14 19/22 21/10 27/24
**qualifies [1]** 10/19
**quality [1]** 12/1
**question [27]** 4/14 6/3 6/20 6/23 6/25 7/6 7/7 7/8 8/12 8/16 9/1 9/4 10/15 11/4 12/14 13/14 20/1 20/10 21/13 22/7 28/19 30/20 30/24 31/2 32/12 36/11 44/4
**question about [1]** 12/14
**questions [7]** 6/5 7/24 8/1 17/5 20/13 20/14 39/9
**quickly [2]** 42/2 45/14
**quite [1]** 3/25
**quote [1]** 31/7

## R

**raise [1]** 14/8
**raised [6]** 22/20 29/1 38/19 38/21 38/22 42/2
**raising [1]** 46/3
**rate [16]** 23/9 23/16 23/19 25/15 25/16 25/24 34/23 37/6 38/24 39/11 39/13 40/3 41/14 41/14 43/5 44/9
**rate-approving [1]** 34/23
**rate-setting [2]** 39/11 44/9
**rates [71]**
**rather [2]** 26/8 28/15
**reach [1]** 38/24
**reaches [1]** 33/21
**read [1]** 17/2
**reading [1]** 39/21
**real [1]** 7/8
**realized [1]** 44/21

## R

**really [10]** 4/10 7/2 11/4 13/19 13/23 18/13 31/7 34/8 37/25 44/25
**reason [4]** 8/23 12/17 16/20 17/17
**reasonable [1]** 12/2
**reasons [4]** 14/1 14/16 15/10 44/21
**receiving [1]** 41/12
**recess [2]** 46/9 46/10
**recipients [1]** 40/13
**recognized [2]** 5/9 5/16
**recognizes [1]** 5/14
**record [3]** 3/7 32/24 47/5
**reformulate [1]** 28/10
**refused [1]** 19/12
**regards [1]** 37/7
**regulation [2]** 22/21 23/13
**regulations [4]** 29/12 29/12 36/10 36/13
**regulator [1]** 15/18
**reimburse [1]** 23/15
**reimbursement [3]** 12/2 23/4 23/8
**related [1]** 15/13
**relates [2]** 45/20 46/3
**relationship [3]** 14/15 15/19 16/19
**relationships [1]** 11/12
**relevant [3]** 8/16 29/1 29/16
**relied [1]** 19/3
**relief [5]** 27/4 27/21 30/15 41/7 42/21
**relying [1]** 42/3
**remedies [6]** 30/18 30/19 31/19 31/20 35/13 42/24

**remedy [12]** 18/4 27/4 30/2 30/3 30/4 30/7 30/9 30/15 31/15 31/18 32/3 40/4
**remember [2]** 19/7 44/7
**repeating [1]** 43/19
**REPORTER [2]** 2/22 47/11
**representation [1]** 39/10
**require [1]** 15/12
**required [2]** 12/10 17/13
**requirement [3]** 23/7 25/10 28/13
**requirements [2]** 14/2 38/15
**requires [2]** 21/4 28/8
**respect [2]** 19/8 45/17
**respond [1]** 39/8
**respondents [1]** 39/19
**response [2]** 22/25 41/25
**result [4]** 4/10 20/11 35/19 38/24
**reversed [1]** 39/15
**review [8]** 24/22 32/25 33/5 34/5 36/10 36/11 41/21 43/4
**reviewed [2]** 24/18 33/3
**reviews [2]** 15/22 35/1
**revisit [1]** 44/17
**right [74]**
**right. [1]** 22/11
**right. thank [1]** 22/11
**rights [5]** 7/11 20/22 20/22 36/21 39/24
**rise [1]** 10/22
**RMR [2]** 2/22 47/10
**Rocky [1]** 32/19

**Room [1]** 2/23
**row [1]** 18/2
**ruat [1]** 45/4
**rubric [1]** 4/17
**rule [4]** 22/21 23/13 27/7 32/7
**ruled [1]** 32/20
**rules [1]** 33/2
**ruling [4]** 32/15 32/16 33/22 45/20
**run [2]** 28/21 30/25

## S

**S.W [3]** 2/14 2/18 2/23
**safeguards [2]** 13/21 13/21
**said [13]** 4/18 4/24 15/6 19/10 21/16 29/3 29/7 31/5 42/18 42/19 44/19 44/20 46/2
**same [5]** 25/21 25/22 37/22 40/7 43/19
**Samuelson [2]** 2/4 3/10
**satisfied [1]** 11/6
**save [1]** 29/15
**say [17]** 5/13 10/5 12/9 17/12 17/23 18/3 24/8 26/7 27/3 27/18 28/23 30/1 32/24 33/13 42/5 43/1 44/3
**saying [5]** 9/12 33/3 35/22 36/14 41/14
**says [10]** 7/9 9/23 14/4 18/14 18/22 23/14 27/20 31/17 33/13 42/22
**scheme [1]** 14/12
**School [1]** 19/1
**Scott [2]** 2/17 3/15
**Seattle [1]** 2/9
**second [7]** 5/20 9/19

**second... [5]** 14/22 14/23 16/2 42/25 45/6

**secretary [12]** 28/17 32/5 33/12 36/3 36/7 36/9 36/10 36/22 36/25 37/1 37/6 40/9

**secretary's [4]** 32/16 34/3 35/20 42/19

**section [9]** 4/12 12/20 29/5 40/2 40/3 40/4 40/8 42/18 42/18

**see [2]** 45/5 45/25

**seeking [1]** 14/19

**seen [4]** 32/19 32/19 36/6 36/12

**serious [1]** 31/9

**services [1]** 27/5

**set [15]** 3/3 15/21 15/23 37/17 38/6 38/25 39/13 41/21 43/1 43/3 43/15 43/16 43/18 43/21 44/19

**setting [7]** 6/13 14/3 14/4 39/11 40/9 43/5 44/9

**setting actuarially [1]** 14/4

**Seventh [1]** 19/2

**several [2]** 22/20 42/2

**sheer [1]** 40/1

**should [13]** 3/24 6/20 6/20 7/5 7/15 7/21 10/5 22/10 32/24 35/25 39/13 41/22 45/19

**shouldn't [1]** 13/10

**show [3]** 10/16 10/17 11/8

**shown [1]** 11/10

**shows [1]** 40/4

**Shumway [4]** 2/22 8/8

**sides [1]** 37/21

**sign [1]** 20/6

**signaling [1]** 31/13

**signature [2]** 47/7 47/7

**signing [1]** 47/4

**silly [2]** 6/19 6/23

**similarly [1]** 44/13

**simple [1]** 17/18

**simply [6]** 3/22 4/1 16/13 25/15 27/13 37/6

**since [1]** 19/25

**single [2]** 41/20 44/10

**sit [2]** 26/3 45/15

**sits [1]** 26/4

**situation [4]** 13/25 14/1 16/8 40/7

**situations [1]** 19/18

**size [1]** 23/6

**sloppy [2]** 34/11 34/13

**so [74]**

**sober [1]** 31/9

**sole [2]** 30/2 30/8

**solid [1]** 14/8

**some [12]** 3/17 3/19 12/17 14/20 15/2 15/3 24/12 25/6 41/14 44/19 45/11 46/3

**somebody [1]** 39/3

**someone [2]** 6/24 14/14

**someone's [2]** 6/21 19/24

**something [13]** 7/10 7/13 11/7 14/19 20/4 24/7 26/16 28/13 34/2 37/6 38/25 40/19 45/21

**sometimes [2]** 6/17 7/4

**soon [1]** 45/10

**Soranno's [4]** 9/10 9/12 9/12 10/11

**sorry [3]** 16/11 29/10

**sort [3]** 3/21 4/24 45/15

**sought [1]** 41/7

**sound [34]** 3/23 4/16 5/22 12/7 12/11 12/16 13/6 14/3 14/4 15/22 22/17 23/3 23/11 23/12 23/17 24/13 24/20 25/15 26/10 29/5 29/8 32/6 32/7 32/16 32/21 33/4 33/18 33/19 33/22 35/4 37/17 37/19 43/22 44/20

**soundness [11]** 14/2 15/13 23/25 28/12 28/18 29/2 34/10 36/4 36/22 38/15 41/9

**source [1]** 40/19

**sources [2]** 9/9 42/13

**space [1]** 18/12

**speak [2]** 6/17 20/18

**specific [10]** 10/12 11/14 13/14 15/24 28/9 38/2 38/15 39/16 39/18 42/17

**specifically [4]** 5/21 12/14 44/7 44/10

**Speed's [2]** 5/11 5/15

**spend [1]** 41/1

**sprinkled [1]** 11/20

**stand [1]** 8/4

**start [6]** 8/3 8/12 8/23 22/15 28/25 39/9

**started [1]** 10/25

**starting [2]** 36/1 37/18

**state [50]**

**state-by-state [1]** 43/6

**stated [3]** 31/1 36/3 39/18

**statement [1]** 40/1

**states [7]** 1/1 1/23 2/22 5/1 5/24 23/7 43/2

**statute [20]** 9/13 9/20 9/22 9/24 15/25 21/3 21/4 21/7 21/25 22/6 22/21 23/13 25/25 36/12 40/8 41/22 42/7 42/9 42/11 42/12
**statutes [1]** 15/11
**statutory [1]** 13/15
**Stephen [2]** 2/4 3/8
**still [7]** 12/20 20/11 30/17 30/19 32/4 34/19 34/21
**stop [1]** 42/15
**Street [2]** 2/6 2/18
**subject [1]** 41/21
**submit [5]** 17/5 17/6 43/4 45/21 45/23
**submitted [6]** 26/16 26/22 28/1 34/5 35/2 43/4
**subsection [4]** 23/3 23/6 23/6 25/10
**substantial [1]** 11/24
**substantially [1]** 25/8
**such [8]** 5/15 7/6 22/19 24/5 27/8 35/20 35/22 41/17
**sufficient [4]** 27/10 28/3 31/16 42/23
**sufficiently [2]** 9/2 10/22
**suggesting [4]** 31/10 34/9 34/13 34/13
**Suite [2]** 2/9 2/14
**supposed [1]** 37/1
**supremacy [2]** 4/1 4/6
**Supreme [6]** 10/5 21/15 21/18 30/13 32/20 39/15
**sure [11]** 14/11 15/7

20/10 20/11 24/2 29/14 32/1 35/25 37/17 45/20 46/3
**survival [2]** 18/9 19/19
**survive [2]** 13/2 25/23
**survives [1]** 13/10
**system [1]** 39/19

# T

**table [1]** 32/14
**take [6]** 3/17 4/17 6/21 8/1 19/24 27/8
**talk [4]** 6/17 11/1 11/21 29/17
**talked [1]** 43/7
**talking [7]** 17/18 18/18 30/13 31/21 41/1 42/14 42/15
**talks [6]** 9/14 11/23 11/23 13/20 25/2 30/2
**targeted [1]** 44/7
**tax [1]** 9/24
**taxation [1]** 9/21
**tell [3]** 20/1 20/15 38/4
**telling [1]** 13/9
**tells [2]** 7/16 21/3
**tension [3]** 33/9 33/23 34/4
**tentative [4]** 3/18 3/18 4/21 5/13
**tentatively [1]** 38/5
**terms [2]** 15/1 15/4
**than [7]** 14/10 24/13 25/24 30/1 34/18 36/25 39/18
**thank [19]** 3/11 3/16 8/11 12/4 16/22 22/11 22/12 22/14 26/14 28/4 28/24 37/23 39/6 41/24 44/14 45/8 46/2 46/6 46/9
**that [388]**

that review [1] 33/5
**that's [40]** 6/2 6/12 6/15 6/23 6/23 7/13 7/17 7/19 7/20 9/16 10/8 12/22 14/25 15/14 15/20 15/24 16/23 18/11 18/19 20/7 20/19 24/8 24/11 29/5 29/11 32/3 33/24 35/3 35/14 36/13 36/19 37/4 38/15 38/24 38/25 39/23 42/8 42/8 43/2 43/13
**the following [1]** 15/9
**the purpose [1]** 35/23
**their [10]** 20/22 23/20 25/22 25/22 26/9 29/20 29/24 40/15 41/12 45/15
**them [7]** 8/21 15/8 19/9 19/9 19/12 35/2 43/4
**then [44]** 4/19 4/21 6/4 6/12 6/14 7/12 7/18 8/2 9/19 10/2 10/11 10/17 11/23 12/18 13/7 17/9 17/19 18/3 18/21 19/5 19/22 20/10 23/15 24/20 25/1 26/15 32/6 32/13 33/13 34/17 34/21 36/23 37/2 37/8 38/10 38/21 38/22 39/2 39/4 42/6 42/15 43/3 44/4 45/24
**theoretically [2]** 21/23 26/6
**theory [7]** 3/21 12/18 12/23 12/25 13/1 13/10 26/7
**there [55]**
**there's [32]** 3/25 10/8 12/25 13/5 13/6 16/18 17/14 17/22 17/25 19/5 21/2 27/12 27/17 29/22

**there's... [18]** 30/10 30/10 30/13 31/3 31/4 31/24 34/11 35/1 35/12 35/12 35/14 36/9 37/9 38/16 38/16 39/3 43/4 44/23

**therefore [4]** 3/23 4/9 4/12 6/13

**these [12]** 4/17 4/19 5/6 15/12 16/11 18/20 19/18 32/21 37/19 40/10 43/1 44/20

**they [35]** 4/17 9/12 9/16 9/19 9/20 14/11 15/1 15/2 15/9 15/12 16/4 19/11 20/6 24/8 24/9 24/12 25/14 25/17 25/18 25/21 25/23 26/3 26/5 26/8 26/11 26/12 27/3 32/16 40/13 43/3 43/4 44/3 44/11 44/21 44/21

**they're [6]** 26/13 32/7 33/4 38/2 42/3 43/19

**they've [1]** 31/14

**thing [4]** 9/19 23/14 37/25 38/12

**things [9]** 7/8 7/10 10/16 11/25 14/3 14/4 28/8 43/11 44/9

**think [64]**

**thinking [1]** 20/11

**third [6]** 2/9 2/23 16/25 17/9 17/10 43/7

**this [64]**

**thorough [1]** 34/14

**thoroughness [1]** 34/23

**those [23]** 3/18 4/6 4/9 4/20 5/16 7/24 10/3

10/11 10/12 12/3 14/10 15/6 15/22 15/23 19/18 20/7 21/16 24/18 24/20 25/19 25/19 26/23 33/19

**though [4]** 4/13 7/3 27/7 41/6

**thought [1]** 29/15

**thoughts [1]** 4/21

**three [7]** 4/6 4/9 4/11 4/20 4/23 8/1 18/2

**threshold [1]** 3/21

**through [12]** 3/23 3/24 5/2 5/6 27/19 27/20 30/8 32/22 40/9 40/10 40/15 40/16

**throughout [1]** 11/21

**thumbs [2]** 35/2 35/3

**thwart [2]** 35/21 35/23

**time [7]** 3/3 4/20 16/9 16/16 23/12 43/14 45/15

**times [3]** 22/20 39/1 39/2

**today [6]** 3/9 4/19 7/20 26/16 45/16 46/4

**today's [1]** 17/1

**told [2]** 7/14 19/9

**too [1]** 45/4

**topic [1]** 12/5

**track [1]** 17/11

**traction [1]** 39/14

**transcript [3]** 1/21 47/5 47/6

**transformed [1]** 23/24

**transition [2]** 19/10 19/11

**treated [2]** 10/5 10/6

**treats [1]** 10/9

**trial [1]** 43/14

**tries [1]** 9/11

**trilateral [2]** 14/20

**triliteral [1]** 15/15

**trouble [1]** 37/3

**true [2]** 15/1 33/12

**try [3]** 17/11 45/3 45/9

**trying [1]** 36/14

**turn [1]** 28/5

**two [10]** 5/7 6/5 9/9 10/2 10/16 14/8 15/6 16/23 31/22 37/21

**type [2]** 33/2 35/15

**types [2]** 19/18 32/21

**U**

**ultimate [1]** 34/19

**ultimately [2]** 24/18 39/15

**ultimatum [1]** 19/9

**unapproved [1]** 24/10

**uncertainty [1]** 34/22

**unconstitutional [1]** 20/16

**under [28]** 4/6 4/8 4/15 4/17 4/18 4/25 8/1 8/14 9/4 9/6 9/7 13/1 14/24 19/21 24/1 24/5 24/12 25/5 26/7 30/15 30/15 30/19 30/21 32/15 39/20 42/24 43/12 43/13

**underlying [3]** 25/16 27/15 27/17

**understand [7]** 6/10 14/7 24/2 26/1 28/6 32/23 35/10

**understanding [1]** 37/25

**understood [4]** 29/9 38/8 39/5 42/25

**unfettered [1]** 13/24

**unimportant [3]** 15/11 15/15 16/21

## U

**UNITED [4]** 1/1 1/23 2/22 19/1
**unless [1]** 41/16
**unsound [2]** 43/19 44/4
**up [8]** 4/17 8/2 25/3 29/13 32/22 35/2 36/25 42/14
**upcoming [1]** 16/18
**us [4]** 6/17 17/21 29/8 45/21
**used [2]** 9/24 13/17
**usefulness [1]** 38/5
**uses [1]** 29/25
**utilize [1]** 39/19

## V

**value [2]** 10/23 10/24
**various [1]** 28/7
**vel [1]** 4/14
**vendor [1]** 18/9
**versus [1]** 15/10
**very [6]** 8/16 13/22 13/22 15/24 40/10 45/8
**viability [1]** 4/19
**view [3]** 4/1 4/8 34/14
**views [1]** 3/19
**violate [5]** 7/5 7/23 21/11 21/13 21/21
**violates [9]** 6/22 6/24 7/6 7/11 7/16 20/21 20/22 22/1 22/2
**violating [6]** 21/6 21/7 21/16 21/22 22/6 22/8
**violation [4]** 4/24 4/25 19/20 22/5
**voice [2]** 41/21 41/22

## W

**WA [1]** 2/9
**want [8]** 4/19 24/2

33/24 34/3 35/18 38/21 45/15 45/21
**wanted [2]** 8/15 43/7
**Warren [1]** 19/1
**was [44]** 5/17 6/9 6/21 7/21 9/2 9/3 9/9 9/11 10/14 11/11 11/25 13/4 13/16 14/13 14/24 16/3 16/4 16/6 16/9 16/13 16/25 17/14 19/6 19/7 19/13 19/13 20/6 20/16 23/10 29/9 29/16 30/11 30/21 34/11 34/13 36/14 37/18 38/23 39/12 39/15 39/16 40/1 40/2 42/17
**was specific [1]** 42/17
**wasn't [3]** 17/7 31/10 38/22
**way [9]** 7/4 15/4 23/23 30/1 31/11 35/19 35/20 35/22 45/25
**ways [2]** 7/18 14/9
**we [51]**
**we'll [6]** 4/13 4/14 8/2 45/5 45/13 46/9
**we're [15]** 5/4 7/2 7/4 13/25 13/25 16/8 16/16 17/18 17/23 18/12 18/18 19/10 31/21 37/2 45/12
**we've [6]** 20/5 22/20 32/18 32/19 36/24 42/13
**Wedges [10]** 5/24 13/18 13/20 14/9 14/12 14/23 16/3 16/12 25/1 25/2
**Wedges/Ledges [10]** 5/24 13/18 13/20 14/9 14/12 14/23 16/3 16/12 25/1 25/2

**well [19]** 5/21 7/17 7/23 10/9 10/24 12/20 18/7 18/8 19/16 20/19 21/15 27/6 27/11 32/12 34/4 34/24 35/9 35/17 42/8
**well-known [2]** 7/17 7/23
**went [3]** 10/25 16/9 24/21
**were [19]** 9/12 16/4 21/21 23/11 24/18 24/19 24/20 25/19 32/20 33/22 34/5 39/4 41/8 43/21 43/21 44/3 44/11 44/12 44/21
**Westwood [3]** 5/10 5/15 11/5
**what [51]**
**what's [4]** 9/15 17/13 27/8 28/23
**whatever [2]** 7/9 31/8
**when [7]** 16/9 18/9 20/13 22/6 30/1 39/14 41/10
**where [18]** 6/16 10/4 13/21 13/23 14/7 16/9 18/23 19/18 24/21 26/3 26/4 27/7 29/22 38/13 39/23 41/20 45/5 45/19
**Wherever [1]** 8/6
**whether [25]** 5/5 5/9 5/11 7/4 8/13 9/1 13/14 14/10 14/20 16/5 19/24 22/15 26/21 27/8 28/19 30/21 30/24 31/3 31/6 33/8 34/7 35/4 36/11 38/1 45/25
**which [25]** 4/1 8/13 9/11 10/12 11/14 14/2 14/9 15/6 16/25 19/3 19/16 20/18 22/22 23/3 23/10 23/24 24/11 25/5

**which... [7]**  25/16 25/24 27/2 28/7 34/10 34/25 40/2

**who [4]**  14/14 21/10 21/12 21/16

**whole [4]**  21/9 32/13 38/1 38/3

**whom [1]**  41/11

**why [12]**  12/22 13/18 15/14 33/6 33/7 33/12 33/19 34/21 34/22 34/22 41/7 45/23

**why does [1]**  34/21

**Wigod [1]**  30/12

**will [14]**  3/9 3/13 23/4 23/5 24/9 32/13 36/10 37/6 41/3 42/14 43/14 45/9 45/11 46/4

**win [2]**  18/15 44/3

**wish [1]**  27/25

**withholding [1]**  42/20

**within [3]**  23/11 23/20 41/18

**without [8]**  6/22 6/24 19/25 20/20 21/7 21/17 41/15 47/6

**won't [1]**  24/9

**words [1]**  26/5

**worry [1]**  45/3

**would [37]**  6/19 7/14 7/22 8/4 8/20 12/9 12/20 12/23 12/24 13/1 13/2 13/2 13/8 16/10 19/12 20/1 20/2 20/7 20/15 20/17 24/4 24/6 25/23 26/2 28/21 32/7 32/7 33/12 34/2 34/15 35/19 35/21 35/22 38/12 41/16 43/17 45/20

**wouldn't [4]**  12/18 12/24 30/17 30/19

**writing [1]**  26/22

**wrong [2]**  7/9 39/4

**Y**

**yeah [2]**  7/14 31/7

**year [5]**  16/17 16/18 18/3 18/4 43/15

**years [8]**  11/10 11/22 16/16 18/2 18/19 25/18 43/25 44/1

**yes [11]**  13/17 15/20 16/7 18/7 21/24 24/15 26/18 26/23 30/22 34/5 42/1

**you [117]**

**you'd [2]**  18/16 29/15

**you're [10]**  10/19 13/9 18/6 21/6 21/7 22/7 24/14 35/7 35/22 46/3

**you've [4]**  5/10 17/2 26/16 27/25

**Young [2]**  30/14 30/16

**your [49]**

**Z**

**zero [1]**  38/5