

March 12, 2016

David L. Meacham
Associate Reginal Administrator
Centers for Medicare and Medicaid Services
Seattle Regional Office
701 Fifth Avenue, Suite 1600, MS/R-X-200
Seattle, WA 98104

Via Email

Dear Mr. Meacham,

Thank you for your correspondence dated March 4, 2016, in response to FamilyCare's letter to CMS dated March 1, 2016.

FamilyCare has been, and remains, committed to resolving the issues between it and the Oregon Health Authority (OHA) related to OHA's rate development process. OHA has publicly stated that it is committed to working with FamilyCare to resolve these issues, including its most recent public statement on February 25, 2016 (provided to CMS with FamilyCare's March 1, 2016 correspondence). Unfortunately, OHA has not engaged in any discussions with FamilyCare for months despite FamilyCare's willingness to do so.

Late on March 10, 2016, OHA notified FamilyCare by email (copy attached) that "OHA does not believe further settlement discussions based on FamilyCare's current proposal will be productive." The email indicates that OHA does not intend to pursue *any* discussions with FamilyCare. Instead, it announces that, this coming Monday, OHA will deliver a notice of breach (for yet to be disclosed reasons) and will terminate FamilyCare's contract if it does not accede to OHA's demands. OHA's conduct is neither collaborative nor transparent.

As explained in FamilyCare's March 1, 2016 correspondence, FamilyCare will accept and execute a contract amendment relating to the 2015 rates that includes capitation rates for each of the three individual ACA expansion population rate groups set at the corresponding average regional tri-county rate, as determined by the OHA actuary and within the actuarially certified tri-county region rate ranges for the corresponding ACA expansion population rate groups. Such capitation rates would meet the requirements clearly articulated in CMS's correspondence of February 24, 2016, to OHA which states,

FCI0088553

David L Meacham
March 12, 2016

"if the Oregon Health Authority submits a contract action with
FamilyCare including calendar year 2015 capitation rates that are
consistent with the approved rate ranges included in the August
2015 certification, CMS will consider the rates in those contract
actions to be actuarially sound."

To provide further specific detail regarding the calculation of FamilyCare's proposal, please see
Attachment A. In summary, FamilyCare's proposal to revise the 2015 and 2016 ACA capitation
rates to reflect the tri-county average regional rate would result in the following financial
adjustments:

- For 2015, FamilyCare would pay back approximately $26.7 million.
- For 2016, FamilyCare would receive an increase over the year of $31.3 million.
- These adjustments would result in a net increase to FamilyCare of $4.6 million, or the
difference between the $55.8 million that FamilyCare has received under the original
2015 ACA rates and FamilyCare's proposal to accept revised ACA capitation rates for
2015 and 2016 calculated at the tri-county average regional rate.

OHA ignores this plan and provides three stated reasons in its March 10 email for rejecting
FamilyCare's plan. OHA's claims are baseless and inaccurate.

- False OHA Claim: The plan will "violate CMS-Approved 2015 and 2016 rate
methodologies."

    o FamilyCare Response: As explained above and as detailed in Attachment A,
    FamilyCare's proposal meets the CMS requirement that the rates be within the
    certified rate ranges. This also makes OHA's claim in the March 10 email that
    FamilyCare has refused to accept rates approved by CMS false. In reality, OHA
    has the authority and sound policy justification for agreeing to FamilyCare's plan.

- False OHA Claim: The plan will "treat FamilyCare differently in regard to payment,
violating trust and transparency with other CCOs and CMS."

    o Family Care Response: OHA has intentionally treated FamilyCare differently than
    other CCOs throughout the rate setting process and OHA has been punitive in its
    treatment of FamilyCare owing to FamilyCare's whistleblowing with regard to
    OHA's actions. FamilyCare supports full transparency between CCOs, OHA, and
    CMS. FamilyCare has already disclosed to the other CCOs, to CMS, and to the
    public its proposal for settling its rates issues with OHA. OHA has never
    meaningfully addressed that plan. FamilyCare would have no objection if OHA
    would like to share any settlement terms with all CCOs and with CMS; in fact, it is
    FamilyCare's understanding that Oregon law requires such disclosure.

2

FCI0088554

David L Meacham
March 12, 2016

Furthermore, FamilyCare is willing to waive confidentiality of its mediation with OHA and share publicly all mediation documents exchanged between the parties.

The method used by OHA to establish the revised 2015 rates was unfair to FamilyCare, effectively punishing it for not hiding profits in related entities. Since December 2014, FamilyCare has provided OHA with information and identified concerns over OHA's lack of process for identification and assessment of related-party entities and transactions on the base data used to develop the capitation rates and the adverse impact on the development of capitation rates paid to CCO's with related-party arrangements compared to CCO's without related party arrangements. CCO related party arrangements are significant; *known* transactions exceeded $1.5 billion for calendar year 2014 based on related-party disclosures contained in CCO audited financial statements, with not all CCOs reporting. Other than nominal transactions principally with medical service providers that serve on FamilyCare's board, FamilyCare has no related party arrangements.

OHA has responded to two CMS questions on related-party transactions which are attached to this letter. Both responses are inaccurate, omit pertinent information known to OHA at the time of their submission and demonstrate OHA's intent to allow related party arrangements to inappropriately influence the capitation rate development process. Subcapitation payments, along with other related-party medical service payment arrangements, are recorded as an expense to the CCO. A "pass-through" profit is then generated by the related party entity to the extent it does not expend all the funds it receives. As a result, a CCO may show minimal profit while the related party it has a subcapitation agreement with may show a significant profit. Although OHA has not provided FamilyCare with requested data that would allow FamilyCare to analyze the impact of related party arrangements, FamilyCare estimates that based on available information that approximately $411 million per year in pass-through profits to related entities was included in medical service costs in calculating the 2015 and 2016 capitation rates.

Finally, FamilyCare's independent actuary, Milliman, has calculated a premium deficiency reserve liability of $31.6 for projected losses in 2016 resulting from the proposed 2016 rates; such rates cannot be actuarially sound for FamilyCare.

- False OHA Claim: The plan will *"increase the budget and put the state at risk for failing to achieve the sustainable rate of growth required by OHA's Section 1115 waiver agreement with CMS."*

3

FCI0088555

David L Meacham
March 12, 2016

      o   <u>FamilyCare Response:</u> FamilyCare's plan will have *no effect* on the state general fund budget. FamilyCare's proposal relates only to the ACA population which, at this point in time, is 100% funded by the federal government. FamilyCare is unable to comment with authority regarding OHA's claim about the waiver requirement; OHA's comment itself is not definitive that the proposed payments to FamilyCare would cause OHA to fail the waiver requirement. It seems highly unlikely that the small net increase resulting from the FamilyCare plan (totaling about $4.6 million over 2015 and 2016, collectively) would have a material effect on OHA's ability to satisfy its commitment to achieve a sustainable rate of growth to CMS across entire term of the waiver.

OHA's summary dismissal of FamilyCare's plan; its failure to acknowledge, address and engage in discussions to resolve issues; its promise to deliver to FamilyCare a notice of breach; and its threat to terminate FamilyCare's contract demonstrate that OHA is not fulfilling its obligations to CMS in the best interest of the state's Medicaid members.

FamilyCare's plan costs the state nothing and protects it from the risk of loss of significant federal financial participation funding. OHA is refusing to submit FamilyCare's plan to CMS for one reason: to punish FamilyCare for exercising is first amendment rights and its right to petition government when FamilyCare (correctly) raised concerns about OHA's original 2015 rate methodology to OHA, CMS, Oregon legislators, and the courts.

As the March 10 email makes clear, OHA has chosen to conclude its discussions with FamilyCare. FamilyCare will forward additional information and concerns it has gathered for CMS's consideration and follow-up. Out of courtesy, we will forward a copy of the information to OHA.

FamilyCare is available to meet and discuss this issue with CMS at any time, in person or via telephone conference, and would appreciate an opportunity to do so.

FamilyCare has proudly and passionately served Oregon's Medicaid members for over 30 years and looks forward to the opportunity to do so for many years to come.

Sincerely,

William H. Murray, CPA
Chief Operating Officer
W:    503.734.3147
C:    503.858.0426
billm@familycareinc.org

4

David L Meacham
March 12, 2016

Enclosures:     March 10, 2016 email from OHA to FamilyCare (via legal counsel)
Attachment A – FamilyCare Calculation of Proposed Revised ACA Rate Group
Capitation Rates
Oregon's Response to CMS Questions Submitted May 1, 2015 – Question 88
Oregon's Response to CMS Questions Submitted October 29, 2015 – Question 53

CC:     CMS SEARODMCH         Bill Vehrs                    Walter Neal
        Cecile T. Greenway      Frank A. Schneider          Susan Johnson
        James. I Golden, PhD     Christopher J. Truffer      Rebecca Burch Marck

5

FCI0088557

From: Lippold Steve M <Steve.Lippold@doj.state.or.us<mailto:Steve.Lippold@doj.state.or.us>>
Date: March 10, 2016 at 4:41:16 PM PST
To: "'jdsacks@stoel.com<mailto:jdsacks@stoel.com>'"
<jdsacks@stoel.com<mailto:jdsacks@stoel.com>>, "'kknivila@stoel.com<mailto:kknivila@stoel.com>'"
<kknivila@stoel.com<mailto:kknivila@stoel.com>>
Cc: Stineman Renee <renee.stineman@doj.state.or.us<mailto:renee.stineman@doj.state.or.us>>,
Weston Sarah <Sarah.Weston@doj.state.or.us<mailto:Sarah.Weston@doj.state.or.us>>
Subject: OHA/FamilyCare

Dear Jeremy,

Both Renee and Sarah are out of the office today. OHA wanted to get this email out by the end of the
day today, given the meeting that is scheduled for Monday.

We thank you for FamilyCare's proposal. In consultation with its actuaries, OHA has concluded that
FamilyCare's proposal would (1) violate CMS-Approved 2015 and 2016 rate methodologies, (2) treat
FamilyCare differently in regard to payment, violating trust and transparency with other CCOs and CMS,
and (3) increase the budget and put the state at risk for failing to achieve the sustainable rate of growth
required by OHA's Section 1115 waiver agreement with CMS. For these actuarial, financial, and policy
reasons, OHA cannot accept FamilyCare's proposal.

OHA looks forward to the in-person meeting on Monday March 14 between Jeff Heatherington and
Lynne Saxton, with members of their respective teams. However, OHA does not believe further
settlement discussions based on FamilyCare's current proposal will be productive.

CMS's recent letters regarding FamilyCare's unapproved and unapprovable 2015 and 2016 contracts,
and FamilyCare's refusal to accept the rates approved by CMS, have put at risk the State's ability to draw
down federal funds for 2015 and 2016. Accordingly, at the conclusion of the meeting on Monday March
14, OHA intends to deliver to FamilyCare a notice of breach, with a letter outlining the steps OHA will
expect FamilyCare to take within 14 days of that date in order to cure the breach and resolve the
parties' differences. These steps will include FamilyCare:

1) Signing the 2015 rate amendment without further delay.
2) Withdrawing its pending lawsuit regarding the original 2015 rates.
3) Withdrawing its notices of breach regarding the 2014, 2015 and 2016 contracts.
4) Agreeing to repay the overpayment it received in 2015 by the end of 2018. OHA hopes this extended
repayment schedule will minimize cash-flow impacts to FamilyCare.

OHA hopes that, now that CMS has weighed in on the rates, the parties can put this dispute behind
them and move forward under the rates that CMS has approved as actuarially sound. If that is not
possible, however, OHA needs to protect its financial interests and the interests of its Medicaid
members. To do so, OHA intends to pursue its legal remedies, including potential termination of
FamilyCare's contract if FamilyCare does not meet the conditions that OHA's letter will specifically
describe.

Sincerely,

Steve Lippold

Chief Trial Counsel | Trial Division
Oregon Department of Justice
1162 Court St NE, Salem, OR 97301-4096
503.947.4700

*****CONFIDENTIALITY NOTICE*****

This e-mail may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this e-mail in error, please advise me immediately by reply e-mail, keep the contents confidential, and immediately delete the message and any attachments from your system.

************************************

FCI0088559

Attachment A
## FamilyCare Calculation of Proposed Revised ACA Rate Group Capitation Rates

| 2015 | Rate Group (CCO-A) | | | Note |
|---|---|---|---|---|
| | ACA Ages 19-44 | ACA Ages 45-54 | ACA Ages 55-64 | |
| OHA Revised 2015 Capitation Rate for FamilyCare | $ 337.96 | $ 553.69 | $ 604.83 | A. |
| **Adjustment:** | | | | |
| Deduct- "FamilyCare" Base  PMPM (included in above rate) | (238.46) | (403.74) | (443.02) | B. |
| Add- "Tri-county Regional" Base PMPM | 263.94 | 474.76 | 512.76 | C. |
| Net Adjustment | 25.48 | 71.02 | 69.74 | B.+C.=D. |
| **FamilyCare Proposed Revised 2015 Capitation Rate** | $ 363.44 | $ 624.71 | $ 674.57 | A.+D.=E. |
| ***Comparison of FamilyCare Proposed Revised 2015 Capitation Rate to CMS-Approved 2015 Rates for Other Tri-County CCO:*** | $ 386.23 | $ 689.90 | $ 729.72 | F. |

| Note | Source of Information / Description |
|---|---|
| A. | Per page 83 of the Optumas August 2016 CCO Rate Development Certification for 2015; amounts also tie to the rates contained in the 2015 revised rate amendment that FamilyCare did not sign; amounts represent the total capitation rate, which includes the "base rate" plus add-on services and the HRA/hospital provider tax. |
| B. | Per page 82 of the Optumas August 2016 CCO Rate Development Certification for 2015; amounts reflect the tri-county regional base adjusted by a "relativity cost factor" described on page 28 of the Optumas report; the base rates for each of the three ACA rate groups should be set at the average regional rate (see C. below) due to the lack of credible data and significant unknowns surrounding these new populations; the "relativity cost factor" used by OHA is unfair to FamilyCare and punishes it for not hiding profits in related entities. |
| C. | Per page 62 of the Optumas August 2016 CCO Rate Development Certification for 2015; the exhibit on this page contains actuary's certified rate ranges for the tri-county region by rate group and the actuary's corresponding selected average tri-county regional rate for each rate group.  **THESE AVERAGE TRI-COUNTY REGIONAL RATES FOR EACH ACA RATE GROUP FALL WITHIN THE CORRESPONDING RATE RANGES CERTIFIED BY OPTUMAS AND DETERMINED BY CMS TO BE ACTUARIALLY SOUND.** |
| D. | Amounts represent the net change proposed to FamilyCare's ACA capitation rates. |
| E. | Amounts represent the FamilyCare proposed total capitation rate, including the  "base rate" plus add-on services and the HRA/hospital provider tax.  (Minor adjustment to the HRA/hospital provider tax has not been reflected on this schedule.) |
| F. | Per page 85 of the Optumas August 2016 CCO Rate Development Certification for 2015; amounts reflect the 2015 revised capitation rates for the other tri-county CCO (Health Share of Oregon) .  **FAMILYCARE'S PROPOSED REVISED 2015 CAPITATION RATES WILL STILL BE LESS THAN THE 2015 CAPITATION RATES BEING PAID TO THE OTHER TRI-COUNTY CCO AND FOR WHICH CMS HAS DETERMINED THE RATES TO BE ACTUARIALLY SOUND.** |
| - | FamilyCare proposed revised capitation rates for other service benefit packages (like "CCO-B") for the ACA rate groups for 2015 and 2016 would be calculated in the same manner as set forth in this Attachment. |

Oregon's Response to CMS Questions  *(SUBMITTED MAY 1, 2015 TO CMS)*

> We do not have applicable sanctions, liquidated damages or other financial penalties for 2015 rate range setting.

## Question 87

- 03/12/2015 Question: Section AA.3.14 of the completed rate setting checklist states that "projected managed care plan loss ratios are considered in evaluating capitation rates submitted by plans"

  a. Please provide the average managed care plan loss ratios each year for the last three years.

  > CCOs were established in the latter half of 2012 in waves; consequently, medical loss ratios are not available for 2012. Medical loss ratios are available for 2013, please see report #34.
  >
  > Medical loss ratios for 2014 will be available after June 30, 2015.

  b. Please describe how the loss ratios were considered in evaluating the capitation rates submitted by plans.

  > We used loss ratios to ascertain the feasibility of financial submission total cost. It helped us provide corroborating evidence that some financial submission by CCOs overstated total cost due to technical issues. In these cases, we conducted extensive data reconciliation analysis to avoid double counting of the costs in calculating under reporting adjustments.

## Question 88

- 03/12/2015 Question: Are there any related party transactions?

  > We collected detailed qualitative and quantitative data on the CCO's and their sub-capitation arrangements through the audited financial reports and supplemental questionnaire. This information provides us with details regarding their contractor, contractual arrangement, compensation and consideration. OHA reviews this information and reserves the right to review the actual contractual agreements and audit CCO expenditures if we suspect a related party transaction exists. We have not performed an audit of this nature at this time. Please see report 8 for more information about supplemental payment arrangements.

## Newly Eligible Adults
### Question 89

- 03/12/2015 Question: The certification states, "The ACA rates will be set using 2013 encounter data and CCO's financial submissions".

  a. Please describe the specific population and services that are used for the base encounter data for the ACA population rates.

  > Two 2013 rate cohorts – OHP Family and OHP Adults and Couples – were used for the base encounter data for the ACA population. These two rate groups make up the OHP Standard population, which was covered with a limited benefit package before 2014 (see question 30 for information about the benefit increase adjustment). The OHP Standard population

39

Sent to CMS on 5/1/2015

FCI0088561

(SUBMITTED OCTOBER 29, 2015 TO CMS)

In-lieu of services and State Plan services are included in the target and/or adjusted expenses for the settlement for both SNRG measurement periods. The SNRG settlement template distributed to CCOs is attached *SNRG Settlement Template Final_Nov2012-Dec2014.pdf* file to provide an example of how this risk sharing arrangement is operationalized.

Question 52

* 10/8/2015 Question: How are sanctions, liquidated damages or other financial penalties assessed during the rate setting data period factored into the rate setting process?

  10/28/2015 Response - CCOs are asked to report any type of subrogation as part of the financial template. There was no subrogation reported.

Question 53

* 10/8/2015 Question: Are there any related party transactions?

  10/28/2015 Response - Upon review of the subcapitation arrangements, all reimbursement amounts were deemed reasonable and consistent with reimbursement for same services that are not subcapitated across the program. Since CCOs are in part owned by physician groups, there are related party transactions within the CCO business model. **Optumas** and OHA have started to monitor the underlying reimbursement for covered services within each CCO and will continue to monitor such arrangements. If reimbursement for these types of transactions are abnormal for a specific CCO, OHA will take appropriate action and **Optumas** will make adjustments within the rate development.

Question 54

* 10/8/2015 Question: Page 27 of the certification states, "four diagnosis codes from encounter claims were used in producing the risk score for specific members." Please clarify this statement. Does this mean that only four diagnosis codes were used for risk adjustment purposes?

  10/28/2015 Response - Only four diagnosis codes were readily available within the encounter data, therefore the risk score tool only uses the four diagnosis when calculating the risk score.

**Newly Eligible Adults**

Question 52

* 10/8/2015 Question: Please confirm that the base data used for the ACA adults was CY14 financial data. If so, please explain why CY14 encounter data was not used.

  10/28/2015 Response - CY14 encounter data was not available at beginning of CY15 rate development. Because of this, initially CY14 financial data was used to evaluate emerging data. Optumas was able to work with CCOs and OHA to receive CY14 encounters for ACA that were validated against the CY14 financials to ensure that the amount reported in financials was appropriate and reasonable.

Question 53

* 10/8/2015 Question: Please describe the data, assumptions, and methodologies used to develop the low and high endpoints of the durational adjustment. Furthermore, please justify including this

25

FCI0088562