Stephen F. English, OSB No. 730843
SEnglish@perkinscoie.com
Thomas R. Johnson, OSB No. 010645
TRJohnson@perkinscoie.com
Alletta Brenner, OSB No. 142844
ABrenner@perkinscoie.com
Brian Samuelson, OSB No. 165476
BSamuelson@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Matthew Gordon, *pro hac vice*
MGordon@perkinscoie.com
Nicholas Hesterberg, *pro hac vice*
NHesterberg@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

*Attorneys for Plaintiff FamilyCare, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PATRICK ALLEN, in his official Capacity as DIRECTOR OF OREGON HEALTH AUTHORITY, an agency of the State of Oregon,<br><br>Plaintiff,<br><br>v.<br><br>FAMILYCARE, INC., an Oregon non-profit corporation,<br><br>Defendant. | No. 3:18−cv−00212−MO (LEAD)<br>No. 6:18−cv−00296−MO<br><br><br>FAMILYCARE, INC.'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART OREGON HEALTH AUTHORITY'S MOTIONS TO DISMISS<br><br><br>ORAL ARGUMENT REQUESTED |

FAMILYCARE, INC.'S MOTION FOR
RECONSIDERATION

FAMILYCARE, INC., an Oregon non-profit corporation,

                    Plaintiff,

     v.

OREGON HEALTH AUTHORITY, an agency of the State of Oregon, and PATRICK ALLEN, both individually and in his official capacity as director of the Oregon Health Authority,

                    Defendants.

FAMILYCARE, INC.'S MOTION FOR RECONSIDERATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**TABLE OF CONTENTS**

**Page**

LOCAL RULE 7-1 CERTIFICATION ........................................................................................ 1

ORAL ARGUMENT REQUESTED......................................................................................... 1

MOTION.................................................................................................................................. 1

POINTS AND AUTHORITIES ............................................................................................... 1

    I.     INTRODUCTION ....................................................................................... 1

    II.    BACKGROUND ........................................................................................ 2

    III.   LEGAL STANDARD.................................................................................. 6

    IV.   ARGUMENT ............................................................................................... 8

         A.    The Court Should Rescind Its Order and Deny OHA's Motion to Dismiss the Contract Claim or, at Minimum, Afford FamilyCare the Opportunity to Respond to Arguments First Raised by OHA in Reply ...................................................................................................... 8

         B.    FamilyCare Had a Reasonable Contractual Expectation that the Capitation Rates Set Annually by OHA Would Be Actuarially Sound ................................................................................................... 10

             1.    Oregon Law Safeguards a Party's Objectively Reasonable Contractual Expectations ............................................... 10

             2.    FamilyCare's Expectation of Actuarially Sound Capitation Rates Was Objectively Reasonable ........................................... 12

             3.    The Arguments Raised in OHA's Reply Brief are Without Merit.................................................................................... 17

         C.    The Court Erred by Failing to Consider Other Alleged Bases for Breach of FamilyCare's Reasonable Expectations Under the Five-Year Contract ........................................................................................... 19

CONCLUSION........................................................................................................................ 20

140119282.4

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES
## (continued)

**Page**

### CASES

*Armstrong v. Exceptional Child Center, Inc.*,
135 S. Ct 1378 (2015)..................................................................................................5

*Arnett v. Bank of Am., N.A.*,
874 F. Supp. 2d 1021 (D. Or. 2012) ........................................................................10

*Best v. U.S. Nat. Bank of Oregon*,
739 P.2d 554 (Or. 1987) .......................................................................................10, 11

*Brown v. Rawson-Neal Psychiatric Hospital*,
840 F.3d 1146 (9th Cir. 2016) ...................................................................................9

*Campero USA Corp. v. ADS Foodservice, LLC*,
916 F. Supp. 2d 1284 (S.D. Fla. 2012) ................................................................6, 17

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) .....................................................................................6

*Complete Distribution Servs., Inc. v. All States Transp., LLC*,
No. 3:13-CV-00800-SI, 2015 WL 5764421 (D. Or. Sept. 30, 2015) ......................11

*Davis v. Tri-Cty. Metro. Transp. Dist. of Or.*,
No. 3:12-cv-0808-SI, 2015 WL 4199965 (D. Or. July 10, 2015)..............................6

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) .................................................................................10

*Graves v. Arpaio*,
623 F.3d 1043 (9th Cir. 2010) ................................................................................7, 8

*Gregory Funding LLC v. Saksoft, Inc.*,
No. 3:16-cv-480-SI, 2016 WL 4480693 (D. Or. Aug. 24, 2016) ...........................11

*Iron Horse Eng'g Co. v. Nw. Rubber Extruders, Inc.*,
89 P.3d 1249 (Or. Ct. App. 2004)............................................................................11

*June v. Thomasson*,
No. CV GLR-14-2450, 2017 WL 3642944 (D. Md. Aug. 24, 2017) .......................7

*Lopez v. Vaquera*,
No. EP-12-CV-00427-DCG, 2013 WL 8297541 (W.D. Tex. July 8, 2013) ............7

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .................................................................................10

i-    TABLE OF AUTHORITIES

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

140119282.4

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Medford Pacific v. Danmor Construction, Inc.*,
2 F. Supp. 2d 1322 (D. Or. 1998) ................................................................................6

*Pollock v. D.R. Horton Inc.-Portland*,
77 P.3d 1120 (Or. Ct. App. 2003) ..............................................................................10

*Pouyeh v. University of Alabama/Dept. of Opthamology*,
66 F. Supp. 3d 1375 (N.D. Ala. 2014) .........................................................................7

*Pyramid Lake Paiute Tribe of Indians v. Hodel*,
882 F.2d 364 (9th Cir. 1989) .......................................................................................6

*Ri Ky Roofing & Sheet Metal, LLC v. DTL Builders, Inc.*,
No. 6:17-CV-01251-JR, 2018 WL 2336756 (D. Or. May 23, 2018) ........................11

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .....................................................................................13

**STATUTES**

ORS 30.320.........................................................................................................................4

**RULES**

District of Oregon Local Rule 7-1 .....................................................................................1

Federal Rule of Civil Procedure 8(a)(2) .........................................................................11

Federal Rule of Civil Procedure 12(b)(6) .......................................................................11

Federal Rule of Civil Procedure 54(b).........................................................................1, 7

**REGULATIONS**

42 C.F.R. § 438 et seq................................................................................................ *passim*

81 Fed. Reg. 27,537 (May 6, 2016) .................................................................................14

ii-   TABLE OF AUTHORITIES

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

140119282.4

## LOCAL RULE 7-1 CERTIFICATION

In compliance with Local Rule 7-1, the parties have conferred in good faith with respect to the subject matter of this motion but were unable to resolve the issue.

## ORAL ARGUMENT REQUESTED

Oral argument is requested.  FamilyCare estimates that 30 minutes will be required.

## MOTION

Pursuant to Federal Rule of Civil Procedure 54(b) and the Court's inherent authority to rescind or modify any interlocutory order, FamilyCare, Inc. ("FamilyCare") moves for reconsideration of portions of the Court's order granting in part Oregon Health Authority's ("OHA") motion to dismiss.  This motion is supported by the points and authorities set forth below and the Declaration of Nicholas H. Hesterberg.

## POINTS AND AUTHORITIES

## I.    INTRODUCTION

FamilyCare respectfully requests that the Court reconsider portions of its June 1, 2018 Order granting in part OHA's motions to dismiss.  Specifically, FamilyCare requests that the Court rescind its order dismissing FamilyCare's claim for breach of the five-year contract--and enter an order denying OHA's motion as to that claim--because OHA's motion did not challenge the sufficiency of FamilyCare's allegations that it had a reasonable expectation of actuarially sound capitation rates.  Because this issue was first raised by OHA on reply, it was not properly before the Court and should not have been decided in the Court's order.  And because the Court rejected the argument raised in the motion--that FamilyCare had no *right of action* involving a challenge to actuarial soundness--the Court should have denied the motion to dismiss the breach of contract claim outright.

Although dismissal of OHA's motion to dismiss the contract claim would be appropriate, the Court should, at minimum, afford FamilyCare the opportunity to respond to OHA's argument,

1-    FAMILYCARE, INC.'S MOTION FOR
      RECONSIDERATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

first raised in reply, that FamilyCare lacked a reasonable expectation of actuarially sound capitation rates.  As detailed below, the terms of Oregon's contracts with the federal government and with FamilyCare led FamilyCare to reasonably expect that OHA would comply with federal regulations governing the content and performance of contracts between states and managed care organizations.  And those regulations, particularly when read in conjunction with representations made by OHA, led FamilyCare to reasonably expect that the annual rate amendments developed and paid by OHA pursuant to the five-year contract with FamilyCare would be actuarially sound.  Moreover, even if the Court could determine that FamilyCare's expectation of actuarially sound rates was unreasonable as a matter of law, the Court should have denied the motion to dismiss based on the other grounds for FamilyCare's breach of contract claim, none of which were addressed in the parties' briefing or the Court's order.  As such, reconsideration is warranted.

## II.    BACKGROUND

FamilyCare's third amended complaint ("TAC") alleges that OHA has taken a number of actions with the purpose and effect of driving FamilyCare out of the market for the provision of managed Medicaid services in Oregon.  Among other things, FamilyCare contends that OHA has utilized actuarially unsound and otherwise improper methods in calculating the per-person capitation rates that are developed annually pursuant to the five-year contract between FamilyCare and OHA (the "Contract").  Several of the claims asserted in the TAC take issue with the propriety of the process and results of OHA's rate setting process on a variety of grounds, including on the basis that the rates are not actuarially sound.  In particular, FamilyCare's Tenth Claim for Relief contends that OHA breached the Contract's "implied covenant of good faith and fair dealing" by violating FamilyCare's "objectively reasonable expectation, based on the Contract and applicable law" that OHA "would present annual Rate Amendments that were reasonable, unbiased, actuarially sound, and free of errors in underlying data and methodology."  TAC ¶¶ 148-49.  The breach of contract claim also alleges that by

2-  FAMILYCARE, INC.'S MOTION FOR
     RECONSIDERATION

utilizing erroneous eligibility and enrollment data in determining the amount of the capitation payments made to FamilyCare, OHA failed to pay FamilyCare the amount actually due under the express terms of the Contract. TAC ¶ 150.

On March 15, 2018, OHA moved to "dismiss each claim that depends upon [FamilyCare's] allegation that it *has a right or entitlement to sue OHA* because it believes its contract rates are actuarily unsound *in violation of federal Medicaid law*." Dkt. 24 ("Motion" or "Mot.") at 1 (emphasis added). According to OHA, the Motion raised "a question of significant federal importance: does a managed care organization like FamilyCare have the same *rights and entitlements* as the federal government *to enforce Medicaid regulations*? More specifically framed, does FamilyCare have *the authority* to sue OHA because it believes that its contracts contain actuarially unsound rates?" *Id.* at 1-2 (emphasis added). By OHA's own formulation, the issue presented was not whether the specific Contract between FamilyCare and OHA contained an express or implied requirement that rates be actuarially sound, but rather whether federal law operated to preclude *any* claim by *any* managed care organization based on a failure to provide actuarially sound rates. OHA contended that the Medicaid Act deprived all managed care organizations of any right of action premised on actuarial soundness and thus that "FamilyCare has *no right* to sue OHA to enforce Medicaid laws; that *right* rests exclusively with the federal government." *Id.* at 3 (emphasis added); *see also id.* at 7 ("State law does not provide a *right of action* to FamilyCare") (emphasis added).

Although the Motion sought to dismiss claims including FamilyCare's Tenth Claim for Relief, the Motion said nothing about the express or implied terms of the Contract itself. *See generally* Mot. The Motion did not challenge the sufficiency of FamilyCare's allegations of breach of contract, including breach of the implied covenant of good faith and fair dealing, nor did it speak to FamilyCare's reasonable expectations under the Contract. *See id.* Indeed, the term "reasonable expectation" appears only once in the Motion, as part of a list of claims that

3- FAMILYCARE, INC.'S MOTION FOR RECONSIDERATION

OHA requested be dismissed.  *Id.* at 5.  The Motion contained no discussion whatsoever of the terms of the Contract.  It contained no discussion of substantive contract law.  Nor did it discuss the pleading standard applicable to claims for breach of express or implied contract terms, much less whether the TAC's allegations satisfied that standard.  In sum, the Motion made no argument about what the specific Contract at issue here did and did not require.

FamilyCare's response in opposition to the Motion (Dkt. 42, "Opposition" or "Opp.") addressed the issue presented by the Motion:  whether federal law operates to preempt or otherwise preclude FamilyCare (or any other managed care organization) from asserting any claim premised on the actuarial soundness requirement.  *See* Opp. at 11-20.  The issue at hand, and the issue addressed in the Opposition, was whether federal law "forecloses remedies provided by state law to ensure that the state agencies follow the law and live up to their contractual obligations."  Opp. at 12.  FamilyCare argued that, contrary to OHA's claim, state law does provide a *right of action* to managed care organizations.  *See id.* at 13-16.  In doing so, FamilyCare noted that its "contract claims do not depend on a federally-conferred right" but rather are born out of ORS 30.320, which guarantee's a contractor's right to sue the state for breach of contract.  *Id.* at 15.  FamilyCare noted in passing the TAC's allegation that the Contract's "terms that created the reasonable expectation that OHA would set actuarially sound rates in future years," but provided no legal or factual analysis on this point because it was not at issue in the Motion.  *See id.*  The focus of the Opposition was appropriately directed to whether FamilyCare had a right of action, not whether FamilyCare satisfactorily pleaded a claim under that right of action.

In its reply in support of the Motion (Dkt. 81, "Reply"), OHA raised a new argument not addressed in the Motion:  whether the Contract's express or implied terms included the requirement that the rates be actuarially sound.  *See* Reply at 3-6.  For first time, OHA contended that FamilyCare's complaint failed to adequately allege "which parts of the over 300-page

4-  FAMILYCARE, INC.'S MOTION FOR
RECONSIDERATION

contract give rise to such an expectation." *Id.* at 3. And for the first time, OHA discussed the terms to the Contract itself, including by submitting a five-page excerpt of the Contract. *See* Declaration of Harry B. Wilson in Support of Reply (Dkt. 82), Ex. 1.[1] OHA attempted to justify its new arguments on the basis of the Opposition's reference to FamilyCare's "reasonable expectation to actuarially sound rates," Reply at 4, neglecting to note that the TAC itself sets forth FamilyCare's theory of breach of the implied covenant of good faith and fair dealing. *See* TAC ¶¶ 146-151. In sum, OHA's only argument regarding whether the terms of the Contract included the requirement of actuarial soundness was made on reply. And as in the briefing, FamilyCare's contractual expectation of actuarially sound rates was not squarely addressed at oral argument on the motion to dismiss.

The Court's Opinion and Order on the Motion (Dkt. 106, "Order") properly rejected OHA's argument that FamilyCare's contract claims "fail because FamilyCare lacks a right to actuarially sound rates." Order at 7. The Court agreed with FamilyCare that the key case discussed in OHA's Motion merely addressed whether federal law itself creates a right of action to enforce a provision of the Medicaid Act. *See id.* at 7-8 (discussing *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct 1378 (2015)). And the Court concluded that "[t]here is no question that FamilyCare has a *right of action*," including by way of its "state law contract remedies." *Id.* at 8 (emphasis added). As the Court explained, "FamilyCare's contract claims rise and fall with the terms of the contract--not with whether FamilyCare has an independent right to actuarially sound rates. If a contract gives FamilyCare a right to actuarially-sound rates, then FamilyCare can state a claim for breach of that right." *Id.* at 24.

However, after noting that "OHA's basis for dismissal is slightly off the mark," *id.* at 24, the Court nevertheless proceeded to assess whether the Contract expressly or impliedly required

---

[1] Notably, OHA did not submit a version of the Contract at issue here, but rather submitted an excerpt of the version of the Contract containing the 2014 capitation rates.

5-    FAMILYCARE, INC.'S MOTION FOR
      RECONSIDERATION

OHA to furnish actuarially sound rates--an issue not raised in OHA's Motion and thus not squarely addressed in FamilyCare's Opposition. *See id.* at 25-26. Despite the fact that the issue was not properly raised in OHA's Motion--and notwithstanding the lack of briefing on the issue, save for in OHA's Reply--the Court held that "no provision in the Contract explicitly gives FamilyCare a right to actuarially sound rates," that "nothing in the words of the Contract gives FamilyCare a reasonable expectation to actuarially sound rates," and that federal and state law did not give FamilyCare a reasonable contractual expectation in actuarially sound rates." *Id.* This motion for reconsideration followed.

## III.    LEGAL STANDARD

A motion for reconsideration should be granted when doing so is necessary to "correct a clear error or prevent manifest injustice." *See Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478 at 790); *see also Medford Pacific v. Danmor Construction, Inc.*, 2 F. Supp. 2d 1322, 1323 (D. Or. 1998) ("Courts have distilled three major grounds justifying reconsideration:  1) an intervening change in controlling law; 2) the availability of new evidence; and 3) the need to correct clear error or prevent manifest injustice."); *Davis v. Tri-Cty. Metro. Transp. Dist. of Or.*, No. 3:12-cv-0808-SI, 2015 WL 4199965, at *1 (D. Or. July 10, 2015) ("Reconsideration may be appropriate when . . . it is necessary to correct clear error or prevent manifest injustice.").[2]  "Clear error or manifest injustice occurs where the Court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the

---

[2] "Federal Rule of Civil Procedure 54(b) provides that any interlocutory order 'may be revised at any time before the entry of a judgment adjudicating all claims and all the parties' rights and liabilities.'" *Davis v. Tri-Cty. Metro. Transp. Dist. of Or.*, No. 3:12-cv-0808-SI, 2015 WL 4199965, at *1 (D. Or. July 10, 2015). However, the Rules do not expressly address motions for reconsideration, and as the Ninth Circuit has noted, "[a] district court's power to rescind, reconsider, or modify an interlocutory order is derived from the common law, not from the Federal Rules of Civil Procedure." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001).

6-  FAMILYCARE, INC.'S MOTION FOR
     RECONSIDERATION

Court by the parties, or has made an error not of reasoning but of apprehension." *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012) (quoting *Compania de Elaborados de Cafe v. Cardinal Capital Mgmt., Inc.*, 401 F.Supp.2d 1270, 1283 (S.D. Fla. 2003)).

Although "[r]aising arguments or providing evidence in a motion for reconsideration that could have been included when litigating the original motion are not proper grounds for reconsideration," *Davis v. Tri-Cty. Metro. Transp. Dist. of Oregon*, No. 3:12-CV-0808-SI, 2015 WL 4199965, at *1 (D. Or. July 10, 2015) (citing *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)), a party is only required to respond to arguments actually made in a motion; "arguments raised for the first time in a reply brief are waived." *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (citing *United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 n. 1 (9th Cir. 2009)). Indeed, courts grant motions for reconsideration where failing to do so would deprive a party of the opportunity to address issues and thus cause manifest injustice. *See Lopez v. Vaquera*, No. EP-12-CV-00427-DCG, 2013 WL 8297541, at *2 (W.D. Tex. July 8, 2013), *aff'd sub nom. Lopez v. Sentrillon Corp.*, 749 F.3d 347 (5th Cir. 2014) (granting motion for reconsideration on basis that party "would be subject to a manifest injustice" unless it were "afforded the opportunity to address and to expound on the Court's reasoning set forth in its order denying the [party's] motion to dismiss"); *Pouyeh v. University of Alabama/Dept. of Opthamology*, 66 F. Supp. 3d 1375, 1379-80 (N.D. Ala. 2014) (granting motion for reconsideration to provide party its "first opportunity to address [an] issue" raised *sua sponte* by the court); *cf. June v. Thomasson*, No. CV GLR-14-2450, 2017 WL 3642944, at *5 (D. Md. Aug. 24, 2017) (granting motion for consideration because it was manifestly unjust to fail to decide issue that had been "fully briefed").

7- FAMILYCARE, INC.'S MOTION FOR RECONSIDERATION

IV.    ARGUMENT

A.    **The Court Should Rescind Its Order and Deny OHA's Motion to Dismiss the Contract Claim or, at Minimum, Afford FamilyCare the Opportunity to Respond to Arguments First Raised by OHA in Reply**

FamilyCare respectfully submits that the Court's order granting OHA's motion to dismiss the breach of contract claim was erroneous and manifestly unjust because it was based on arguments not raised in OHA's motion to dismiss.  OHA's only argument regarding whether FamilyCare had a reasonable contractual expectation of actuarially sound capitation rates was raised in OHA's Reply.  As such, the issue of the contours of FamilyCare's reasonable contractual expectations was not properly before the Court and should not have been decided by the Court.  Instead, because the Court rejected the argument raised in OHA's motion--that FamilyCare had no right of action involving a challenge to actuarial soundness--the Court should have denied the motion to dismiss the contract claims outright.  At minimum, the Court should afford FamilyCare the opportunity to respond to OHA's argument, first raised in reply, that FamilyCare did not have a reasonable expectation of actuarially sound capitation rates.

As detailed above, OHA's Motion focused exclusively on the issue of whether the Medicaid Act operated to deprive FamilyCare (or any other managed care organization operating anywhere in the country) of a cause of action involving a challenge to the actuarial soundness of capitation rates.  *See generally* Mot.; *see also* Part II, *supra*.  The Motion did not challenge the sufficiency of the complaint's allegations of breach of contract, including FamilyCare's reasonable expectation that rates set and paid pursuant to the Contract would be actuarially sound.  *See id.*  As such, FamilyCare's Opposition responded only to the issue raised in the Motion: whether federal law precluded all private rights of action pertaining to actuarial soundness.  *See generally* Opp.; *see also* Part II, *supra*.  And the Court agreed with FamilyCare, holding that "there is no question that FamilyCare has a right of action," including by way of its "state law contract remedies."  Order at 8.

8-    FAMILYCARE, INC.'S MOTION FOR
RECONSIDERATION

Because the Motion made no argument regarding FamilyCare's reasonable expectations under the Contract, and because the only such argument was presented in the Reply, OHA waived the argument, and the Court should not have considered it. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010). And because the Court agreed with FamilyCare as to the only argument properly raised as to the Tenth Claim for Relief--whether FamilyCare had a right of action--the Court should have denied OHA's motion to dismiss the breach of contract claim. FamilyCare therefore requests that the Court rescind its Order on the Tenth Claim for Relief and deny OHA's motion to dismiss this claim in order to correct the Court's error and prevent manifest injustice to FamilyCare.

FamilyCare strongly believes that denial is warranted and that OHA should not be permitted to present yet another motion to dismiss through the new arguments it made in reply. However, at the very least the Court should permit FamilyCare an opportunity to respond to those new arguments regarding FamilyCare's contractual expectation of actuarially sound capitation rates. As detailed above, FamilyCare did not address those issues in its Opposition because they were not raised in OHA's Motion.[3] It would thus be manifestly unjust to dismiss FamilyCare's claim on basis of arguments that were not properly raised and thus not briefed. As such, the Court should grant FamilyCare's motion for reconsideration.

---

[3] OHA may contend that the Opposition's fleeting reference to FamilyCare's implied contractual right to actuarially sound rates opened the door to the new arguments made in the Reply, but such an argument would be untenable: the TAC itself presents FamilyCare's implied covenant claim, and any argument about the sufficiency of that claim could have been made in the Motion. *See* TAC ¶¶ 146-151. Nor does the Opposition's passing reference to FamilyCare's contract claim somehow mean that FamilyCare has had the opportunity to address the issue and thus would not be prejudiced. As the Ninth Circuit has recognized, even where a party has "the foresight to attempt to address the issue unprompted" and thus squarely addresses an issue in its answering brief, the party should be afforded an opportunity to respond to new arguments made in reply, lest it suffer prejudice by being limited to the arguments it made "without the benefit of anything to argue against." *Brown v. Rawson-Neal Psychiatric Hospital*, 840 F.3d 1146, 1148-49 (9th Cir. 2016) (refusing to consider argument first raised in reply brief because the argument was waived, notwithstanding the fact that opposing party addressed the issue in its response brief).

9- FAMILYCARE, INC.'S MOTION FOR
RECONSIDERATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**B.    FamilyCare Had a Reasonable Contractual Expectation that the Capitation Rates Set Annually by OHA Would Be Actuarially Sound**

If the Court elects to decide whether FamilyCare had a reasonable expectation of actuarially sound capitation rates, it should deny OHA's motion to dismiss the contract claims because the TAC adequately alleges that OHA's failure to pay FamilyCare actuarially sound rates ran contrary to FamilyCare's objectively reasonable contractual expectations and thus breached the contracts' implied covenant of good faith and fair dealing.

**1.    Oregon Law Safeguards a Party's Objectively Reasonable Contractual Expectations**

The heart of the good faith requirement present in every contract is "each party's obligation to perform the contract, including exercising any discretion that the contract provides, in a way that will effectuate the objectively reasonable contractual expectations of the parties." *Pollock v. D.R. Horton Inc.-Portland*, 77 P.3d 1120, 1127 (Or. Ct. App. 2003); *see also Best v. U.S. Nat. Bank of Oregon*, 739 P.2d 554, 558 (Or. 1987) ("[I]n line with the Restatement and traditional principles of contract law, the court has sought through the good faith doctrine to effectuate the reasonable contractual expectations of the parties.").[4]  "Determination of the parties' reasonable expectations raises a question of fact and may include evidence from outside the terms of the contract." *Arnett v. Bank of Am., N.A.*, 874 F. Supp. 2d 1021, 1034–35 (D. Or.

---

[4] Tellingly, the "Legal Standards" section of OHA's motion did not address the standard applicable to a motion to dismiss based on the sufficiency of allegations in the complaint--further confirming that FamilyCare could not have read the motion as challenging whether FamilyCare had adequately pled its contract claims. *See* Mot. at 4.  Although the Court is no doubt familiar with the applicable standard, FamilyCare notes that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," and on a motion to dismiss under Rule 12(b)(6), courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Accordingly, "[a] motion to dismiss will only be granted if the complaint fails to allege 'enough facts to state a claim to relief that is plausible on its face.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citations omitted)).

10-  FAMILYCARE, INC.'S MOTION FOR
      RECONSIDERATION

2012). As such, disputes regarding the reasonableness of the parties' expectations often cannot be resolved at the summary judgment stage, much less on a motion to dismiss. *See, e.g., Best*, 739 P.2d at 559 (holding that trial court erred in granting the bank summary judgment given genuine issues of material fact with respect to the depositors' breach of good faith claim).

As the Oregon Supreme Court has recognized, "[w]hen one party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that that discretion will be exercised for particular purposes. If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith." *Best*, 739 P.2d at 558. In *Best*, the contract between the defendant bank and plaintiff depositor granted the bank the discretion to set certain fees, which plaintiffs contended were set unreasonably high. 739 P.2d at 558. The bank argued that because it had "acted honestly" in setting the fees and the "fees were similar to those of other banks," the bank could not have breached the implied covenant of good faith and fair dealing. *Id.* The Supreme Court disagreed. Noting that "the reasonable expectations of the parties need not be so limited," the Court examined the evidence related to the plaintiffs' expectation as to the amount of the fees, including evidence suggesting that the fees would be priced similarly to other fees discussed at the time plaintiffs opened their account and that fees would be set in accordance with the bank's costs and ordinary profit margin. *Id.* at 559. On the basis of this evidence, the Court held that there were genuine issues of material fact as to whether the fees set by the bank breached the implied covenant of good faith and fair dealing by setting fees that "were contrary to the reasonable expectations of the [plaintiffs]." *Id.* Courts within this District have likewise recognized that where a contract provides for discretion, but does not expressly provide a method of exercising that discretion, the duty of good faith and fair dealing applies. *See, e.g., Gregory Funding LLC v. Saksoft, Inc.,* No. 3:16-cv-480-SI, 2016 WL 4480693, *3 (D. Or. Aug. 24,

11- FAMILYCARE, INC.'S MOTION FOR
RECONSIDERATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

2016); *Ri Ky Roofing & Sheet Metal, LLC v. DTL Builders, Inc.*, No. 6:17-CV-01251-JR, 2018 WL 2336756, at *2 (D. Or. May 23, 2018).

Oregon courts have also recognized that "holding the parties to industry standards and practices effectuates the reasonable contractual expectations of the parties." *Iron Horse Eng'g Co. v. Nw. Rubber Extruders, Inc.*, 89 P.3d 1249, 1259 (Or. Ct. App. 2004). The court in *Iron Horse* found that the plaintiff stated a claim for breach of the implied covenant of good faith and fair dealing on the basis that industry standards and practices "controlled the manner in which Iron Horse's designs for the die could be used by Northwest," and that Northwest "acted in a manner inconsistent with those industry standards and practices" by failing to disclose certain information about the die to Iron Horse and by intending to use the die for other jobs in the future. *Id.* at 1259-60; *see also Complete Distribution Servs., Inc. v. All States Transp., LLC*, No. 3:13-CV-00800-SI, 2015 WL 5764421, at *9 (D. Or. Sept. 30, 2015) (noting that "[w]here the parties reasonably expect that the implied duty of good faith incorporates industry standards and practices, Oregon courts will hold the parties to these standards and practices" and denying summary judgment on implied duty claim based on dispute about whether motor carrier industry practice included requirement that a broker inform the carrier of the value of a load prior to transport).

### 2. FamilyCare's Expectation of Actuarially Sound Capitation Rates Was Objectively Reasonable

The five-year Contract between OHA and FamilyCare gave OHA the discretion to set the capitation rates that would be amended on an annual basis. *See* TAC ¶ 20; *see also* Hesterberg Decl., Ex. 1 at 7 (reflecting five-year term with original effective adoption date of January 1, 2014 and expiration date of December 31, 2018); *id.* at 147-48 (providing that "[p]er capita rates are actuarially certified annually. Rates will be amended annually . . . .").[5] But that discretion

---

[5] As noted in OHA's Reply, on a motion to dismiss the court may consider "a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the

12- FAMILYCARE, INC.'S MOTION FOR RECONSIDERATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

was not unbridled.  Rather, it was constrained by the requirement that the rates be set in such a way as to meet the reasonable expectations of the parties, as informed by the language of the contract, applicable regulations, and extrinsic evidence, including standards and practices in the Medicaid business.  For several reasons, "FamilyCare had an objectively reasonable expectation, based on the Contract and applicable law, that OHA would present annual Rate Amendments that were . . . actuarially sound."  TAC ¶ 148.

First, FamilyCare reasonably expected that OHA would comply with regulations governing the content and performance of contracts between states and managed care organizations like FamilyCare.  In 2012, the federal Centers for Medicare and Medicaid Studies ("CMS") approved an amendment and extension of Oregon's Section 1115 Demonstration Project, a five-year health system transformation proposal that relied on CCOs to manage the health care of Oregon Medicaid recipients.  *See* TAC ¶¶ 9-10.  In entering the Section 1115 Medicaid waiver, Oregon elected to receive $1.9 billion in federal funds and in turn expressly agreed to comply with all Medicaid laws and regulations, unless those laws and regulations were expressly waived by the federal government.  *See id.*; *see also* Hesterberg Decl. Ex. 2 (excerpts of CMS Amended Section 1115 Waiver List for Oregon Health Plan).  Among the regulations with which Oregon expressly agreed to comply was 42 C.F.R. Part 438, which governs managed care systems and, among other things, sets numerous requirements for states' contracts with managed care organizations like FamilyCare.  *See* Hesterberg Decl. Ex. 2 (providing that "[a]ll requirements of the Medicaid program expressed in law, regulation and policy statement, not expressly waived in this list, shall apply to the demonstration project" and expressly requiring Oregon's "Compliance with Managed Care Requirements" and that "[t]he state must meet the requirements of 42 CFR Part 438 . . .").  Thus, at the time FamilyCare entered the operative five-

document and its authenticity is unquestioned."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also* Reply at 4.  The parties' Contract and the Section 1115 Waiver conditions document cited below are such documents.

13-  FAMILYCARE, INC.'S MOTION FOR RECONSIDERATION

year Contract with OHA, it reasonably expected that the contract would conform in all respects with the requirements of 42 C.F.R. Part 438.

FamilyCare's expectation of regulatory compliance was supported by the language of the Contract itself, which requires that none of its provisions be "in conflict with federal or State statues or regulations," and specifically that no provision be "in conflict with applicable Medicaid or CHIP statutes or regulations that CMS has not waived for the OHP." *See* Hesterberg Decl. Ex. 1 at 10. This requirement of conformance with the Medicaid Act and regulations extends to the annual rate amendments themselves. *See id.* at 8 (stating that Contract includes exhibits incorporated by reference, including Exhibit C); *id.* at 121 (Exhibit C, requiring that OHA pay FamilyCare "a monthly CCO Payment for each Member enrolled under the Contract" in the "amount indicated in Attachment 1"); *id.* at 217-266 (Attachment 1 to Exhibit C, setting forth FamilyCare-specific capitation rates at the rate cell level).[6] As such, it was objectively reasonable for FamilyCare to expect that the rates set by OHA each year would comport with the requirements imposed by the Medicaid Act and implementing regulations.

Second, FamilyCare reasonably expected that the applicable regulations required that the annual rate amendments developed and paid by OHA pursuant to the Contract would in fact be actuarially sound. As an initial matter, 42 C.F.R. § 438.3 establishes "Standard contract requirements," including requirements for "the final capitation rate and the *receipt of capitation payments* under the contract," including that "the final capitation rate for *each* [contractor] must . . . represent a payment amount that is adequate to allow the [contractor] to efficiently deliver covered services to Medicaid-eligible individuals in a manner complaint with contractual

---

[6] Multiple rates are established for each CCO, corresponding to the various categories of aid. So, for example, FamilyCare's "rates" include a specific "rate cell" for members who fall into the blind and disabled category, another rate cell for members in the TANF category, and so on.

14- FAMILYCARE, INC.'S MOTION FOR
RECONSIDERATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

requirements."  42 C.F.R. § 438.3(c) (emphasis added).[7]  "Capitation payment," in turn, is defined as payment made to a managed care organization "under a contract and based on the *actuarially sound capitation rate* for the provision of services under the state plan."  42 C.F.R. § 438.2 (emphasis added).  These regulations, which set requirements for the content and performance of contracts between states and managed care organizations, mandate that capitation rates paid to each individual contractor will be actuarially sound and adequate to permit that contractor to deliver covered services.  It was thus entirely reasonable for FamilyCare to expect that the rates set and paid by OHA were in fact actuarially sound.

The "Actuarial soundness" regulation itself further supports FamilyCare's belief that the capitation rates paid under the Contract would be actuarially sound.  The regulation requires the payment of "actuarially sound capitation rates" that are "projected to provide for all reasonable, appropriate, and attainable costs that are required under the terms of the contract" between the state and the managed care organization.  *See* 42 C.F.R. § 438.4(a).  These payments are required "for the operation of the [CCO] for the time period and the population covered under the contract."  *Id.*  Moreover, the regulation provides that to be actuarially sound, capitation rates must, among other things, "be adequate to meet the requirements on [contractors]," and "be specific to payments for each rate cell under the contract."  42 C.F.R. § 438.4(b)(3), (4).  On the whole, the actuarial soundness regulation focuses on ensuring that each individual CCO is paid rates appropriate to meet its specific operational needs by requiring that each individual rate paid to each individual contractor be actuarially sound.

Moreover, OHA's own statements and conduct contributed to FamilyCare's reasonable expectation that the annual rate amendments were in fact actuarially sound.  *See, e.g.,* TAC ¶ 25

---

[7] The commentary accompanying the final rule embodied in 438.3(c) confirmed CMS's intent to "reiterate in this paragraph that the final capitation rates must be . . . adequate to allow the [contractor] to efficiently deliver covered services in a manner compliant with contractual standards."  81 Fed. Reg. 27,537 (May 6, 2016).

15-  FAMILYCARE, INC.'S MOTION FOR
      RECONSIDERATION

("OHA acknowledged that the rate development methodology must comply with CMS regulations"); *id.* ¶ 33 (settlement agreement requirement that OHA establish process for independent verification of soundness of CCO capitation rates).  Indeed, as the Oregon Department of Justice itself communicated to CCOs, "[p]ursuant to 42 CFR 438.4, capitation rates paid by a state Medicaid plan to an MCO must be actuarially sound." Hesterberg Decl. Ex. 3 at 4; *see also id.* Ex. 4 (Legislative Opinion confirming that pursuant to federal regulations, "capitation rates for each rate cell must be actuarially sound for each CCO contract"); *id.* Ex. 5 (excerpt of report prepared for OHA by outside law firm addressing questions "posed to the Legislature regarding the CCO rate-setting process," including "Do federal regulations (Medicaid Managed Care Rule - 42 CFR 438) require that capitation rates developed for managed care organizations (Oregon's coordinated care organizations) be actuarially sound for each rate cell for each CCO contract?" and answering "Yes.  Rates must be actuarially sound for each rate cell for each CCO . . . .").[8]

In sum, contrary to the Court's finding that "the law . . . does not tell CCOs like FamilyCare that they get [actuarially sound] rates," Order at 13, the regulations *do tell* CCOs that contracts entered with the State of Oregon will contain capitation rates that are actuarially sound as to the specific CCO in question.  When FamilyCare entered the five-year Contract with OHA, it knew that Oregon's own contract with the federal government (the Section 1115 waiver) obligated OHA to comply with the detailed CCO contracting requirements set forth in 42 C.F.R. Part 438.  FamilyCare also knew that the five-year Contract expressly required OHA to adhere to those requirements.  For those reasons, FamilyCare reasonably expected that the capitation rates

---

[8] Although FamilyCare has stated a claim for breach of the implied covenant of good faith and fair dealing for the reasons discussed above, FamilyCare includes the extrinsic evidence cited here to illustrate that this fact-intensive inquiry is inappropriate for resolution on a motion for summary judgment, much less on a motion to dismiss.  And although OHA's motion to dismiss did not challenge the sufficiency of FamilyCare's allegations in this regarding, should the Court determine that additional allegations regarding the cited evidence are necessary, FamilyCare would welcome the opportunity to amend the TAC accordingly.

16- FAMILYCARE, INC.'S MOTION FOR RECONSIDERATION

developed by OHA for FamilyCare each year pursuant to the Contract would in fact be actuarially sound.  At minimum, there are disputed issues of fact that are inappropriate for resolution at this stage of the proceedings.

### 3. The Arguments Raised in OHA's Reply Brief are Without Merit

The contentions in OHA's Reply do not establish as a matter of law that FamilyCare lacked a reasonable expectation of actuarially sound rates.  OHA argues that because a party cannot have a reasonable expectation to a contract right that contradicts an express term, and because the Contract sets forth the "total consideration payable" under the Contract, FamilyCare could not expect that the rates were calculated in an actuarially sound manner.  But as explained above, the five-year Contract did not have a fixed payment amount for the life of the Contract, but rather permitted OHA to set the rates on an annual basis.  As a result, FamilyCare was entitled to expect that the rate amendments would be developed in good faith and consistent with the expectation of actuarial soundness.  Moreover, FamilyCare signed the Contract containing the 2017 rate amendment at issue under protest, expressly reserving its rights to contest the rate amounts.  *See* TAC ¶ 39.  FamilyCare refused to sign the Contract containing the full 2018 rate amendment, *id.* ¶ 74, and the one-month agreement it did sign reserved all rights "relating to the rate-setting process for rates in 2018, as well as any claim for the loss of enterprise or value as a result of OHA's or others' actions with respect to the rate-setting process in those years." Hesterberg Decl. Ex. 6 (excerpt of one-month contract executed December 22, 2017).  As such, there is no basis for the Court to determine at this stage that the "total consideration" term defeats FamilyCare's good faith and fair dealing claim as a matter of law.

OHA's Reply also points to a portion of the Contract stating that the actuarial report containing the methodology used to calculate rates is available on OHA's website but itself is "not part of this Contract[.]"  Reply at 5.  But the report merely contains OHA's actuary's explanation of how it developed the rates.  It is immaterial that the actuary's explanatory report

17- FAMILYCARE, INC.'S MOTION FOR RECONSIDERATION

is not part of the contract because the annually redeveloped rates--which are specific to FamilyCare down to the rate cell level--are themselves part of the contract. *See supra.* The only issue is whether FamilyCare had an objectively reasonable expectation that those rates were in fact actuarially sound. It did.

Next, citing the provision requiring that the Contract conform with federal law, OHA claims that FamilyCare's effort "to obtain rates greater than those approved by CMS runs directly contrary to 'applicable federal Medicaid' laws and regulations." Reply at 5. Not so. To the contrary, the applicable regulations expressly permit CMS to approve retroactive changes to rates that were previously certified by CMS. *See* 42 C.F.R. § 438.7(c)(2) (permitting "retroactive adjustment to the capitation rate"). Moreover, CMS has not yet signed off on the 2018 capitation rates. In any event, the federal regulations require OHA to furnish FamilyCare with actuarially sound capitation rates, and OHA's failure to do so is itself contrary to applicable federal Medicaid laws and regulations.

Finally, and critically, OHA is flat wrong in contending throughout its Reply that "Medicaid law does not require states to set actuarially sound rates; states may set whatever rates they choose." Reply at 1; *see also id.* ("[F]ederal law does not require OHA to set actuarially sound rates and, therefore, Oregon law does not, by adoption, impose the same requirement"); *id.* at 2 ("federal Medicaid law does not require OHA to set actuarially sound rates"). As explained above, in entering the Section 1115 Medicaid waiver in 2012, Oregon expressly agreed to comply with all Medicaid laws and regulations, unless those laws and regulations were expressly waived by the federal government. *See* Part II.B, *supra.* Among other things, Oregon committed to comply with regulations governing state contracts with and payments to managed care organizations, as detailed above. *See id.* OHA thus could not "set whatever rates" it chose. Instead, it was (and is) obligated to set actuarially sound rates and to otherwise comply with the regulations that OHA acknowledges "dictate many aspects of the contract." *See* Reply at 5. This

18- FAMILYCARE, INC.'S MOTION FOR
RECONSIDERATION

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

expectation of regulatory compliance informed FamilyCare's decision to enter the Contract, and was confirmed by the language of the Contract itself. Because the applicable regulations mandated that rates set and paid by OHA to FamilyCare be actuarially sound, it was reasonable for FamilyCare to expect no less.

## C.  The Court Erred by Failing to Consider Other Alleged Bases for Breach of FamilyCare's Reasonable Expectations Under the Five-Year Contract

Even if the Court were to stand by its ruling that FamilyCare does not have a reasonable expectation of actuarially sound rates, rescission of the Court's order would be warranted because OHA did not contest the other bases of FamilyCare's breach of contract claims.

As the Court acknowledged, "FamilyCare alleges that OHA violated its objectively reasonable contractual expectations, under the implied duty, that OHA would set rates that were 'reasonable, unbiased, actuarially sound, and free of errors in underlying data and methodology.'" Order at 25 (quoting TAC ¶ 149). But neither in its opening brief nor on reply did OHA argue that FamilyCare lacked a reasonable expectation of rates that were reasonable, unbiased, and free of errors in underlying data and methodology. *See generally* Motion and Reply. Similarly, the Court's ruling solely addressed whether FamilyCare had "a reasonable expectation *to actuarially sound rates*" and did not discuss the other bases for FamilyCare's claim. Order at 25. Because the Court's dismissal of FamilyCare's breach of contract claim in its entirety was "a decision outside the adversarial issues presented to the Court by the parties," it was erroneous and should be rescinded. *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012). In any event, FamilyCare's expectation that the annual rate amendments would be reasonable, unbiased, and free from errors is adequately pled in the complaint and is hardly disputable, thus providing another basis for reconsideration.

Dismissal of the claim was also improper in light of FamilyCare's contention that OHA failed to pay FamilyCare amounts owed under the Contract as a result of data and methodological errors, including errors relating to eligibility and enrollment data. *See* TAC ¶

19- FAMILYCARE, INC.'S MOTION FOR
RECONSIDERATION

150. Unlike the theories addressed above, which all turn on FamilyCare's reasonable contractual expectations, this theory alleges that OHA breached the express payment terms set forth in the Contract by relying on erroneous data in determining the amounts actually paid to FamilyCare pursuant to the Contract. This breach of contract theory was not discussed in OHA's briefing or the Court's order. As such, dismissal of the breach of contract claim in its entirety was improper.

## CONCLUSION

For the foregoing reasons, the Court should grant FamilyCare's motion for reconsideration.

DATED: June 13, 2018                     **PERKINS COIE LLP**


                                         By: *s/ Stephen F. English*
                                             Stephen F. English, OSB No. 730843
                                             SEnglish@perkinscoie.com
                                             Thomas R. Johnson, OSB No. 010645
                                             TRJohnson@perkinscoie.com
                                             Alletta Brenner, OSB No. 142844
                                             ABrenner@perkinscoie.com
                                             Brian Samuelson, OSB No. 165476
                                             BSamuelson@perkinscoie.com
                                             PERKINS COIE LLP
                                             1120 N.W. Couch Street, 10th Floor
                                             Portland, OR  97209-4128
                                             Telephone:  503.727.2000
                                             Facsimile:  503.727.2222

                                             Matthew Gordon, *pro hac vice*
                                             MGordon@perkinscoie.com
                                             Nicholas Hesterberg, *pro hac vice*
                                             NHesterberg@perkinscoie.com
                                             PERKINS COIE LLP
                                             1201 Third Avenue, Suite 4900
                                             Seattle, WA 98101-3099
                                             Telephone:  206.359.8000
                                             Facsimile:  206.359.9000

                                             *Attorneys for Plaintiff FamilyCare, Inc.*

20- FAMILYCARE, INC.'S MOTION FOR
    RECONSIDERATION