

ELLEN F. ROSENBLUM
Attorney General

FREDERICK M. BOSS
Deputy Attorney General

**DEPARTMENT OF JUSTICE**
GENERAL COUNSEL DIVISION

**This document has been prepared for public release**

## MEMORANDUM

DATE:        May 17, 2017

TO:          Rhonda Busek
             Provider Services Director
             Oregon Health Authority
             Health Systems Division

FROM:        Deanna Laidler, Senior Assistant Attorney General
             Health and Human Services Section

SUBJECT:     Mental Health Parity and CCO Reporting Requirements

Over the past few weeks, the Oregon Health Authority (OHA) received communications from several Coordinated Care Organizations (CCO) objecting to requests for information regarding services provided to Oregon Health Plan (OHP) members, including information relating to Mental Health Parity, Notices of Action, Quality Plan Review, Supplemental Rate Reports, and Provider Accessibility Standards.[1] The CCOs assert that OHA does not have the authority to request this information under either applicable law or the terms of the CCO Contract[2] and that these requests for information amount to extra-contractual requirements.

## BACKGROUND

### I.    Mental Health Parity

In March 2016, CMS issued final rules incorporating mental health parity requirements into its Medicaid regulations.[3] Mental health parity prohibits a CCO from applying a financial

---

[1] The CCOs also objected to OHA's request for additional data elements to be submitted as part of their 2017 Delivery System Network report. It is our understanding that OHA is withdrawing its request for the reporting of these additional elements, rendering this issue moot.

[2] Oregon Health Plan Amended and Restated Health Plan Services Coordinated Care Organization Contract, effective January 1, 2017 (the "CCO Contract").

[3] Medicaid and Children's Health Insurance Programs; Mental Health Parity and Addiction Equity Act of 2008; the Application of Mental Health Parity Requirements to Coverage Offered by Medicaid Managed Care Organizations,

OHA_LIT_00829077

Exhibit 3
Page 1 of 12

Rhonda Busek
May 17, 2017
Mental Health Parity and CCO Reporting Requirements

requirement or treatment limitation to mental health/substance use disorders in any classification that is more restrictive than the predominant treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification.[4] Parity also prohibits the use of nonquantitative treatment limitations for mental health or substance use disorder benefits in any classification unless the application of nonquantitative treatment limitations to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation for medical/surgical benefits in the same classification.

To ensure that the treatment and financial limitations used by a Medicaid plan comply with parity requirements, plans are required to conduct a parity analysis, comparing limitations imposed on medical/surgical benefits to those applicable to mental health or substance use disorder benefits. As set forth in the CMS Final Rules, the entity required to complete the parity analysis varies depending upon whether the Managed Care Organization (MCO) provides all or only a portion of the medical/surgical and mental health/substance use disorder benefits:

> In states where the MCO has responsibility for offering all medical/ surgical and MH/SUD benefits, we noted in the proposed rule that compliance with our proposal would mean that the MCO is responsible for undertaking the parity analysis and working with the state on changes found to be necessary to the MCO contract for it to be compliant with parity requirements. Underlying our proposal was an anticipation that states would need to include contract provisions in these MCO contracts to make sure they can see the results of the parity analysis completed by the MCO and have adequate oversight of the program to ensure that enrollees are receiving services in compliance with these rules so they can be in compliance with the rules as amended in § 438.920(b)(2).

> In states where some or all MH/SUD benefits are provided to MCO enrollees through PIHPs, PAHPs, or FFS, we proposed in § 438.920(b)(1) that the state would have the responsibility for undertaking the parity analysis across these delivery systems and determining if the existing benefits and any financial or treatment limitations are consistent with MHPAEA. The state, based on this analysis, would have to make the necessary changes to ensure compliance with parity requirements for its Medicaid MCO enrollees.[5]

The parity analysis is an essential step in determining compliance with federal laws and identifying changes necessary to the underlying contract between the MCO and the state Medicaid plan. While the regulations were not explicitly modified to reference the completion of the parity analysis by the MCOs, according to CMS, when the MCO provides all medical/ surgical and mental health/substance use disorder benefits, "the statute imposes the parity

---

the Children's Health Insurance Program (CHIP), and Alternative Benefits Plans; Final Rule, 81 Fed. Reg. 18390 (March 30, 2016)("CMS Final Rules").
[4]  29 USC 1185a; See also 42 CFR 438.905 and 42 CFR 438.910.
[5] CMS Final Rules at 18413.

Page 2

OHA_LIT_00829078

Exhibit 3
Page 2 of 12

Rhonda Busek
May 17, 2017
Mental Health Parity and CCO Reporting Requirements

compliance on the MCO."[6]  According to CMS, in such circumstances, "[i]t is implicit in our final rule, at § 438.920(a), that the MCO perform the analysis."[7]

The CMS Final Rules address the possibility that states will need to amend their contracts to require the MCO to submit a copy of the parity analysis to the state, but did not require such an amendment in each instance.  CMS also declined to include any additional regulatory reporting requirements in the CMS Final Rules as it determined that states should have the discretion to collect the reports they deem necessary for the oversight and implementation of their Medicaid programs.

## II.     Applied Behavioral Analysis and Hepatitis C Reporting and Notice of Action

Whenever a CCO denies or limits a request for services, or suspends or terminates previously authorized services, the CCO must issue a Notice of Action (NOA).  The NOA notifies the member as to the reason for the denial and informs the member of appeal rights relating to such denial.   Pursuant to Exhibit I, Section 8.c. of the CCO Contract, CCOs are required to submit samples of NOAs or other information about the Contractor's NOA processes to OHA, upon request.  The CCO Contact references a sample size of 20 NOAs per quarter as a general framework for this routine submission but does not limit OHA's ability to request additional NOAs to determine the CCOs compliance with the terms of the CCO Contract and state and federal law.

In recent years, OHA identified several instances where CCOs did not provide coverage for Applied Behavioral Analysis (ABA) and Hepatitis C in the same amount, duration, and scope that these same services are furnished to beneficiaries under the Oregon fee-for-service (FFS) plan.  Such coverage decisions by the CCOs relating to ABA and Hepatitis C resulted in a disproportionate number of denials, administrative hearings, and consumer complaints, and represent significant legal risk to both OHA and the CCOs.  Given the nature of the risk and heightened CMS scrutiny on these services, and consistent with its authority under the CCO Contract to request additional information, OHA deemed it necessary to increase its oversight of the NOAs issued in association with ABA and Hepatitis C.

## III.    Quality Plan Review

The CCO Contract contains provisions relating to the CCO's quality improvement program.  These provisions include the following requirements:

Quality Assurance and Performance Improvement Program Requirements

a.      Contractor shall develop and operate a Quality Assurance and Performance Improvement Program (QAPI) for the services it furnishes to its

---

[6] CMS Final Rules at 18414.
[7] Id.

Page 3

OHA_LIT_00829079

Exhibit 3
Page 3 of 12

Rhonda Busek
May 17, 2017
Mental Health Parity and CCO Reporting Requirements

Members in accordance with 42 CFR 438.240[8] under an annual quality strategy and work plan. The annual quality strategy identifies the goals, objectives and intended outcomes for the annual QAPI program, setting the structure for and guiding the work plan. The work plan flows from the strategic plan and identifies each project and the goal of the project with enough detail to demonstrate its connection to a quality strategy and its performance improvement.

b.      Contractor shall have in effect a process for its own evaluation of the impact and effectiveness of its systems interventions of its QAPI program. The quality strategy, work plan and QAPI program evaluation must be reported to OHA by March 16 of each year.

c.      Contractor shall include Subsections (1) through (9) of paragraph d. below, in the annual QAPI program evaluation; however, these are not intended to be the only QAPI activities reported. Contractor shall include in its annual QAPI program evaluation all system activities utilized to implement and ensure quality coordinated health care, including behavioral health and dental care.[9]

Federal regulations provide additional context to the use of the QAPI information referenced in the CCO Contract. Pursuant to 42 CFR 438.340, state Medicaid plans are required to assess the quality of health care and services provided by the MCOs, and to arrange for external review of the quality outcomes and timeliness of, and access to, the covered services provided under the MCO contract.[10]

## IV.    Supplemental Rate Reports

Pursuant to 42 CFR 438.4, capitation rates paid by a state Medicaid plan to an MCO must be actuarially sound. As defined by CMS, "actuarially sound" means that the capitation rates are expected to provide for all reasonable and appropriate costs that are required under the terms of the contract and for the operation of the managed care plan. Actuarial soundness also requires that the capitation rates are developed in accordance with the relevant requirements of 42 CFR 438.4(b). The rate certification process utilized by CMS requires the state Medicaid plan to provide documentation to explain material changes to the data, assumptions, and methodologies used to develop projected benefits from the previous certification.

Under the CCO Contract, CCOs are required to submit certain reports for use by OHA in the rate setting process.[11] The required reports provide information on several items, including enrollment, medical costs, and quality pool payments. The CCO Contract does not specifically

---

[8] This citation is incorrect and should instead reference 42 CFR 340.
[9] CCO Contract, Exhibit B –Statement of Work - Part 9 – Quality Performance Outcomes and Accountability, Section 2, Quality Assurance and Performance Improvement Program Requirements.
[10] 42 CFR 438.340(a) and (b)(4).
[11] CCO Contract, Exhibit L.

Page 4

OHA_LIT_00829080

Exhibit 3
Page 4 of 12

Rhonda Busek
May 17, 2017
Mental Health Parity and CCO Reporting Requirements

address OHA's ability to require other reports as needed in association with the rate setting process.

## V.     Provider Directory Accessibility Standards

Pursuant to 42 CFR 438.206(b)(1), each MCO must maintain and monitor a network of providers that is supported by written agreements and is sufficient to provide adequate access to all services under the contract.[12]  In establishing and maintaining the network, each MCO must consider several factors, including whether the network provider's location provides physical access for members with disabilities.  Pursuant to 42 CFR 438.206(c), the MCO must monitor providers regularly to determine compliance with requirements related to the provision of services.

Effective with the rating period for contracts beginning on or after July 1, 2017, each MCO must ensure that its provider directory includes the following minimum information about specific network providers:

(i)      The provider's name as well as any group affiliation.
(ii)     Street address(es);
(iii)    Telephone number(s);
(iv)    Web site URL, as appropriate;
(v)     Specialty, as appropriate;
(vi)    Whether the provider will accept new enrollees;
(vii)   The provider's cultural and linguistic capabilities, including languages (including American Sign Language) offered by the provider or a skilled medical interpreter at the provider's office, and whether the provider has completed cultural competence training.
(viii)  Whether the provider's office/facility has accommodations for people with physical disabilities, including offices, exam room(s) and equipment.

## VI.    OHA Oversight of CCOs

Each CCO must comply with all applicable federal and state laws and regulations, state plan requirements, and contract provisions applicable to its participation in the Oregon Health Plan and in the provision of services to Medicaid members.[13]  As the single-state Medicaid agency for Oregon, OHA is responsible for monitoring CCOs to ensure their compliance with these requirements and to audit and verify the accuracy and appropriateness of payment, utilization of services, medical necessity, medial appropriateness, grievances, quality of care, and access to care.[14]

---

[12] Effective with the rating period for contracts beginning on or after July 1, 2018, 42 CFR 438.206(c) is revised to include subsection (3): "Each MCO, PIHP and PAHP must ensure that network providers provide physical access, reasonable accommodations, and accessible equipment for Medicaid enrollees with physical or mental disabilities."
[13] OAR 410-141-3010(15); OAR 410-141-3020(2)(a).
[14] See, e.g., 42 CFR 438.66; 42 CFR 438.206.

Page 5

OHA_LIT_00829081

Exhibit 3
Page 5 of 12

Rhonda Busek
May 17, 2017
Mental Health Parity and CCO Reporting Requirements

In recognition of this oversight role, OHA has broad authority under the CCO Contract to perform audits and request information as necessary to determine the CCOs' compliance with the terms of the CCO Contract, as well as compliance with applicable state and federal laws. The relevant CCO Contract provisions include the following:

Exhibit B –Statement of Work - Part 8 – Operations, Section 1, Accountability and Transparency of Operations

b.        Contractor shall provide…timely access to records and facilities and cooperate with OHA in collection of information through consumer surveys, on-site reviews, medical chart reviews, financial reporting and financial record reviews, interviews with staff, and other information for the purposes of monitoring compliance with this Contract, including but not limited to verification of services actually provided, and for developing and monitoring performance and outcomes.

Exhibit D - Standard Terms and Conditions, Section 13, Access to Records and Facilities

All Clinical Records, financial records, other records, books, documents, papers, plans, records of shipments and payments and writings of Contractor whether in paper, electronic or other form, that are pertinent to this Contract, are collectively referred to as "Records." Contractor acknowledges and agrees that OHA, the Secretary of State's Office, DHHS, the Comptroller General of the United States, the Oregon Department of Justice Medicaid Fraud Control Unit and their duly authorized representatives shall have access to all Records to perform examinations and audits and make excerpts and transcripts and to evaluate the quality, appropriateness and timeliness of services.

Exhibit D - Standard Terms and Conditions, Section 32, OHA Compliance Review

OHA is authorized to monitor compliance with the requirements in the Statement of Work. Methods of monitoring compliance may include review of documentation submitted by Contractor, Contract performance review, Grievances, on-site review of documentation or any other source of relevant information, including Contractor and Subcontractor information and cooperation required under Exhibit B, Part 8 (Operations). Contractor agrees to cooperate to make records and facilities available for compliance review, consistent with Exhibit D, Section 13 of this Contract.

OHA_LIT_00829082

Exhibit 3
Page 6 of 12

Rhonda Busek
May 17, 2017
Mental Health Parity and CCO Reporting Requirements

> Exhibit E - Required Federal Terms and Conditions, Section 8, Audits
>
> a.     Contractor shall comply, and require all subcontractors to comply, with applicable audit requirements and responsibilities set forth in this Contract and applicable state or federal law.

To the extent OHA requests information necessary to determine the CCO's compliance with the terms of the CCO Contract or applicable laws, such request is permitted under the CCO Contract. A CCO's failure to provide the requested information constitutes a breach and subjects the CCO to sanctions as specified in the CCO Contract.

## ANALYSIS

### I.     Mental Health Parity

#### A.     Mental Health Parity Analysis

The CCO Contract requires the CCOs to comply with the terms of the Mental Health Parity and Addiction Equity Act of 2008 (Parity Act), as well as with all applicable provisions of state and federal law and relevant guidance. A small number of CCOs have taken the position that these laws do not require the CCOs to perform an assessment to ensure they are in compliance with the Parity Act.

The CMS Final Rules and related guidance contain several references to the requirement of the MCO to perform the parity analysis when the full array of benefits – medical/surgical and mental health/substance use disorder – are provided by the MCO:

> When the MCO provides all medical/ surgical and MH/SUD benefits, the statute imposes the parity compliance on the MCO. It is implicit in our final rule, at §438.920(a), that the MCO perform the analysis in those circumstances.[15]

In frequently asked questions relating to Mental Health parity, CMS clarified this requirement even further:

> In states where the Medicaid managed care organization has sole responsibility for offering medical/surgical and mental health/substance use disorder services, the Medicaid managed care organization is responsible for undertaking the parity analysis and informing the state what changes are needed to the Medicaid

---

[15] CMS Final Rules at 18414.

Page 7

OHA_LIT_00829083

Exhibit 3
Page 7 of 12

Rhonda Busek
May 17, 2017
Mental Health Parity and CCO Reporting Requirements

managed care organization contract to comply with the provisions of this final rule.[16]

There is no question that the CCO is responsible for completing a parity analysis when it provides medical/surgical and mental health/substance use disorder benefits to OHP members. A CCO's failure to complete the required parity analysis would be a violation of federal law and constitute non-compliance with the CCO Contact. As such, OHA would have the ability to take corrective action against the non-compliant CCO, including termination.

      B.    <u>Contract Amendment</u>

The same CCOs objecting to the completion of the parity analysis also assert that, by failing to amend the CCO Contract to specifically address completion of the parity analysis, OHA is precluded from requesting the parity analysis from the CCOs. This, too, is incorrect.

As a preliminary matter, it is important to note that CMS' comments regarding contract amendments arise in two separate contexts. The first relates to changes to the underlying contract as necessary for the state to see the results of the parity analysis completed by the MCO.[17] Such an amendment is not per se required by CMS, and is needed only if the current contract does not include sufficient provisions under which the state Medicaid plan can obtain a copy of the parity analysis.

Under the terms of the CCO Contract, OHA has the right to request records and other information to determine compliance with the terms of the CCO Contract itself or state and federal law. OHA's request for a copy of the parity analysis prepared by the CCO is needed to determine compliance with the general mental health parity provisions in the CCO Contract, as well as specific CMS regulations regarding mental health parity and the completion of the parity analysis.[18] The only way for OHA to verify that the CCO completed the parity analysis is to review the document itself.

OHA has taken the position that existing CCO Contract provisions provide a sufficient basis for OHA to request the parity analysis from each CCO. If OHA accepts the CCOs interpretation that an amendment is required to facilitate the sharing of the parity analyses prepared by the CCOs, then the CCO Contract as written conflicts with federal Medicaid regulations, and the parties are required to amend the CCO Contract to conform to the provisions of those laws. If an amendment is required due to changes in federal law, and the CCO fails to sign the amendment in a timely manner, such failure constitutes a default under the CCO Contract, subjecting the CCO to sanctions.[19]

---

[16] CMS, Frequently Asked Questions: Mental Health and Substance Use Disorder Parity Final Rule for Medicaid and CHIP (March 29, 2016), available at https://www.medicaid.gov/medicaid/benefits/downloads/faq-cms-2333-f.pdf.
[17] CMS Final Rules at 18413.
[18] See 42 CFR 438.905 and 42 CFR 438.910.
[19] Exhibit D – Standard Terms and Conditions, Section 10.a(6). Default; Remedies; and Termination.

Page 8

OHA_LIT_00829084

Exhibit 3
Page 8 of 12

Rhonda Busek
May 17, 2017
Mental Health Parity and CCO Reporting Requirements


As federal law requires the CCOs to complete the parity analysis, the amendment would not need to address this requirement. However, in the course of amending the CCO Contract to address the parity analysis submission, OHA should consider including a provision requiring the CCOs to complete the analysis in a manner that is consistent with the approach taken by OHA in its analysis of the FFS plan, thus ensuring greater consistency among the reports.

The second contract amendment referenced in the CMS guidance relates to contract and benefit changes required to bring the CCO Contract into compliance with mental health parity. Such amendments are only required if the parity analysis reveals non-compliance. Any such changes to the CCO Contract would be required by law and, therefore, the CCOs would again face sanctions, including termination, for any failure to sign such amendment. However, it is premature to discuss whether an amendment is required to bring the CCO Contract into compliance until the parity analyses are complete and the findings reviewed by OHA.

## II.    Applied Behavioral Analysis and Hepatitis C Reporting and Notice of Action

CCOs are prohibited from adopting more restrictive coverage criteria than those used by the FFS plan. In the course of reviewing plan policies relevant to ABA and Hepatitis C, OHA identified several instances where CCOs did not provide coverage for ABA and Hepatitis C in the same amount, duration, and scope that that these same services are furnished to beneficiaries under the Oregon FFS plan. Accordingly, consistent with its authority under the CCO Contract to request additional information, and its requirements under federal law to ensure that benefits provided by the CCOs are not less than benefits provided under the FFS plan, OHA increased its oversight of the NOAs issued in association with such services.

The CCOs claim that OHA is prohibited from requesting all NOAs with respect to certain benefits and, instead, OHA may only require submission of a limited number of samples. This assertion is incorrect. The requested NOAs allow OHA to determine the number of denials for ABA and Hepatitis C, and the basis relied upon by the CCO in making such determinations. In addition to the specific NOA provision, the CCO Contract contains numerous provisions requiring the CCO to submit documentation to OHA for the purpose of monitoring compliance with the terms of the CCO Contract, as well as compliance with provisions of state and federal law. These provisions permit OHA to request documentation as needed to determine compliance. Accordingly, OHA has the right and the obligation to request information necessary to assess a CCO's compliance with applicable requirements.

## III.    Quality Plan Review

The CCOs also object to OHA's evaluation of the Quality Strategies submitted to OHA. According to the CCOs, they were unaware that OHA would evaluate the annual review of the Quality Strategy or that the CCO would be asked to submit a revised document if OHA deemed it deficient.

Page 9

OHA_LIT_00829085

Exhibit 3
Page 9 of 12

Rhonda Busek
May 17, 2017
Mental Health Parity and CCO Reporting Requirements

As noted above, OHA has broad oversight authority to determine whether a CCO is complying with applicable state and federal law and the terms of the CCO Contract. When a report or other submission is required by the terms of the CCO Contract, it is ridiculous to claim, that absent a specific contractual provision, OHA cannot review or assess the completeness and adequacy of the reports. Where a deficiency or non-compliance is noted, pursuant to the sanctions available under the CCO Contract, OHA has the ability to request a written corrective action plan. While it is unclear whether the communication from OHA was identified as a request for revision or a corrective action, in any event, OHA has authority to review and identify needed changes to the Quality Strategy reviews.

## IV.   Supplemental Rate Reports

In the course of the 2018 rate development process, OHA requested that the CCOs complete a Supplementary Rate Template and a CCO-Specific Rate of Growth template. The CCOs objected to providing these documents, claiming that the request for information amounted to an extra-contractual requirement. The CCOs further claim that their reporting obligations are limited solely to those reports identified in Exhibit L. This latter claim can be readily disposed of by again referencing OHA's oversight authority, but also noting that the CCO Contract contains numerous reporting requirements that are not contained within Exhibit L.

The data requested allows OHA to obtain additional information regarding the quality pool payment breakdown and Hepatitis C costs, and to determine each CCOs growth based on change in membership. These elements are necessary for OHA to develop actuarially sound rates and, specifically with reference to Hepatitis C and the increased costs incurred by both OHA and the CCOs in providing services to such members, allows OHA to include these increased costs in its rate submission to CMS.

While these specific reports are not identified by name in the CCO Contract, the contract requires CCOs to submit information as necessary to the rate setting process. The majority of the information requested is readily available to the CCOs. In fact, the Rate of Growth template indicates that the information requested is to be cut and pasted from another report required to be submitted under Exhibit L. As the CCO Contract permits additional reports or information to be requested as part of the rate setting process, and recognizing that much of the information requested has already been compiled or has the potential to benefit the CCOs if submitted, it is unclear why these reports are objectionable.

## V.   Provider Directory Accessibility Standards

In March 2017, OHA provided the CCOs with a 2018 Provider Directory Survey: Supplemental Disability and Language Access Requirements. The survey requires provider offices to complete a self-assessment of their accessibility for individuals with disabilities and Limited English Proficiency. The results of the self-assessment would be used to inform members as to the accessibility and accommodations of a particular provider.

OHA_LIT_00829086

Exhibit 3
Page 10 of 12

Rhonda Busek
May 17, 2017
Mental Health Parity and CCO Reporting Requirements

The CCOs objected to the use of this survey as they claim that there is no requirement for the provider completion of a self-assessment. The CCOs further argue that while there is a requirement for provider directories to include information on accessibility for members with disabilities, this requirement is satisfied by simply indicating, with a yes or no answer, as to whether the provider is accessible.

The CCOs are correct in part. While the CCOs are required to obtain information regarding the accessibility and accommodations offered by a particular provider, neither federal regulation nor state law requires the completion of a provider self-assessment. OHA has the ability to revise its rules to include such a requirement. However, unless and until it does, the survey should be identified as an optional tool.

The CCOs are incorrect, however, in their assertion that the provider directory requirements are met with a simple statement as to whether the provider is accessible to individuals with disabilities. According to CMS, the information in the provider directory must be presented "with sufficient specificity to be useful to readers."[20] In addressing specific information, CMS referenced several accommodations, including wide entries, wheelchair access, accessible exam tables and grab bars.[21] OHA may wish to revise its rules to include specificity as to the information that must be included in the directories. However, even absent such rule changes, the CCOs are still required to ensure that their provider directories include greater detail regarding the accessibility of their network providers.

## CONCLUSION

The CCOs claim that the information requested by OHA as referenced above is extra-contractual and not required under the terms of the CCO Contract. However, this is incorrect. Given OHA's oversight authority and the requirements imposed upon both OHA and the CCOs by federal law and the terms of the CCO Contract, except where noted above, OHA is authorized to require submission of the requested information.

It seems that the issue of greatest concern relates to the completion of the parity analysis and the timelines associated with submission of the findings. In terms of the completion of the parity analysis, while OHA has the right to request records from the CCO to conduct the analysis itself, this does not excuse the CCO from complying with federal law. It is my understanding that OHA has discussed extending the due date for submission of each analysis by approximately one month, which may alleviate concerns related to the timing.

---

[20] Medicaid and Children's Health Insurance Program (CHIP) Programs; Medicaid Managed Care, CHIP Delivered in Managed Care, and Revisions Related to Third Party Liability; Final Rule, 81 Fed. Reg. 27497, 27653 (May 6, 2016).
[21] Id.

OHA_LIT_00829087

Exhibit 3
Page 11 of 12

Rhonda Busek
May 17, 2017
Mental Health Parity and CCO Reporting Requirements


       Please contact me with any follow-up questions that may arise.  I can be reached by telephone at (503) 947-4323 or via email at deanna.p.laidler@doj.state.or.us.  Pursuant to ORS 180.060(3), persons other than state officers may not rely upon this letter.



Regards,

*Deanna*
Deanna P. Laidler
Senior Assistant Attorney General

OHA_LIT_00829088

Exhibit 3
Page 12 of 12