# EXHIBIT 1

in his head to the idea that this not only violates state law, it violates the Constitution.  Otherwise, you don't have a 1983 claim.

MR. GORDON:  I don't agree with that necessarily.  I don't think that -- the point about the violation of the state statute is that he knows he's violating the law when he does this.  The question is -- that you're, I think, getting at is does he know that he's also violating the constitutionally protected property interest.  And *Chalkboard* is the case that establishes that he is or he should have known.

THE COURT:  All right. thank you.

MR. GORDON:  Thank you, Your Honor.

THE COURT:  Mr. Markowitz?

MR. MARKOWITZ:  Thank you, Your Honor.

I'd like to start with the issue of whether there is a constitutionally protected property interest in actuarially sound rates, because I believe that all of the FamilyCare claims are based on that premise, and it is a false premise that there is any such right.

We've raised in our briefs several times the argument that there is no federal or state statute, rule or regulation, and no contract, express or implied, which imposed that right or granted that right, imposed that obligation on the state or granted that right to the CCO -- in this case FamilyCare -- and none in response to that argument has been cited.

the point Mr. Markowitz raised, because it's relevant here to the actuarial soundness piece.

So Mr. Markowitz said that all of our claims are based on the notion that we have a constitutional right in actuarially sound rates. That's not accurate. The Section 1983 claim is based in part on that, but more to the point, counsel said that there is no provision in the contract or in the law that gives us a right to actuarially sound rates. As I understood the argument, it was that we only have a right to rates that have been approved by Medicaid -- I'm sorry, by CMS.

And that's not accurate, Your Honor. The federal regulations -- the federal regulations on point impose this --

THE COURT: This is going to come up on your contract claims. I'm not sure it's helping me a lot on preemption.

MR. GORDON: I can save it if you'd like. I thought it was relevant but I'm happy to move on.

THE COURT: Let's talk about preemption.

MR. GORDON: So preemption, I agree with the Court that on both our motion to dismiss for the declaratory judgment and their motion to dismiss APA claims both hinge on OHA's argument about preemption. What is notable is that OHA has cited no case where there's a preemption of a state APA action or any case holding that the provision of the Medicaid Act preempts state law. Instead, their argument is -- basically hinges on *Armstrong* and uses the language of *Armstrong* in a

almost definitional. If the secretary is supposed to make the final decision and I make a different decision, then we're in trouble.

But if it's, as you assert, that that's not a congressional purpose that is evidenced here, instead that it's something more like the secretary will simply make the rate determination in regards to OHA and others with no mention of its exclusivity, then we don't have conflict, right?

MR. GORDON: And there's also --

THE COURT: A lot of it depends on how you frame the congressional purpose.

MR. GORDON: I think it does depend on how you frame the congressional purpose.

THE COURT: What do you think the congressional purpose is in play here?

MR. GORDON: I think the congressional purpose is to make sure that the state set actuarially sound rates.

And to the point that I was starting with, there is -- there is a contractual right to these actuarially sound rates, and it's not just about a contractual right or a right to rates that have been approved by CMS. And it's two sides of the same coin, I think.

THE COURT: All right. Thank you.

MR. GORDON: If I may, Your Honor. The one other thing is my understanding is that CMS really looks at the rates